UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

JAMES BAKER,

Plaintiff,

v. 3:26-cv-1257 (AJB/CBF)

JOSEPH CAWLEY, et al,

Defendants.

---

APPEARANCES:

JAMES BAKER
*Plaintiff, pro se*
26-B-1015
Auburn Correctional Facility
P.O. Box 618
Auburn, NY 13021

**CARLA B. FREEDMAN**, United States Magistrate Judge

## REPORT-RECOMMENDATION AND ORDER

## I. INTRODUCTION

The Clerk has sent to the Court for review a complaint, Dkt. No. 1, an amended complaint, Dkt. No. 9, and a second amended complaint, Dkt. No. 10, submitted by *pro se* plaintiff James Baker ("Plaintiff"), asserting claims pursuant to 42 U.S.C. § 1983. Plaintiff has been granted permission to proceed in this matter *in forma pauperis*. Dkt. No. 12. He has also filed a motion to appoint counsel. Dkt. No. 4. For the reasons set forth below, the undersigned recommends Plaintiff's claims be dismissed.

## II. BACKGROUND

Plaintiff commenced this action by filing a complaint dated June 3, 2026, utilizing this District's form civil rights complaint pursuant to 42 U.S.C. § 1983. *See generally*, Dkt. No. 1. Plaintiff listed Broome County Court Judge Joseph Cawley and Pretrial Services Officer Maria Tambassio as Defendants. *Id.* at 2. Plaintiff also filed a motion to appoint counsel. Dkt. No. 4.

On August 7, 2026, Plaintiff filed a letter requesting "information and forms required to file an amended complaint" to add additional "issues" and "defendants." Dkt. No. 7 at 1.[1] On August 10, 2026, Plaintiff filed an amended complaint. *See generally*, Dkt. No. 9. The amended pleading added Defendants "State of New York" and "Broome County Probation Dept." *Id.* at 2.

Plaintiff filed a second amended complaint on August 28, 2026. *See generally*, Dkt. No. 10. The pleading lists five Defendants: (1) State of New York, (2) Broome County Probation Dept., (3) "Broome County Probation Officer" Maria Tambascio, (4) Broome County Judge Joseph Cawley, and (5) Broome County Public Defender Nathan Shwartzman. *Id.* at 2. From what the Court can glean, Plaintiff alleges at a bail hearing on May 12, 2025, Defendant Judge Cawley ordered Plaintiff to "home confinement" and to report to "pre-trial services to be fitted with an ankle monitor." *Id.* at 4. After being released to home confinement, Plaintiff explained to Defendant Maria Tambascio that the "copper pipes for the water and all of the copper wires for the electric" had been stolen from Plaintiff's home, and Tambascio told Plaintiff that he "could not move to [his] friends' house, that it was [his] responsibility to keep the home

---

[1] Citations to Plaintiff's submissions will refer to the pagination generated by CM/ECF, the Court's electronic filing system. Unless otherwise indicated, excerpts from the record are reproduced exactly as they appear in the original and errors in spelling, punctuation, and grammar have not been corrected.

confinement equipment charged and that [Plaintiff] would be allowed to go to [his] friends house once a week to shower." *Id*.

At a later point in time during Plaintiff's five months of home confinement, he "started complaining about [his] situation to [Defendant Tambascio]," who told Plaintiff she had spoken with Defendant Judge Cawley and the Judge advised that Plaintiff's bail could be revoked and he could be "returned to jail." *Id*. at 6. Plaintiff "told [Defendant Tambascio he] had no water or electricity and she told [Plaintiff he] couldn't move in with [his] friend." *Id*. Plaintiff avers "Judge Cawley failed to intervene in [Plaintiff's] constitutional deprivation, by telling [Defendant Tambascio] to tell [Plaintiff] that if [he] wanted to continue to complain, [his] bail would be revoked and [he] would be returned to jail." *Id*. at 7.

Plaintiff alleges he "went days at a time without water or food, all while in the custody of New York State . . . ." *Id*. at 8. Plaintiff's "conditions" were "never addressed" "in court, on the record" by Plaintiff or Defendant Shwartzman. *Id*. at 9. Plaintiff also alleges Defendant Shwartzman was contacted by an attorney "requesting information in regards to [Plaintiff's] claim and Shwartzman refused to send the information requested, instead choosing to call the attorney, giving him information that was not true, which led to that attorney declining to represent [Plaintiff], in furtherance of the conspiracy." *Id*. at 9. "As a result of being on home confinement for over 5 months with no water to drink, bathe, or flush toilets [Plaintiff] suffered . . . nausea, dehydration, dizziness, diarrhea, headaches, loss of appetite, rash and a severe toenail fungal infection as well as depression and suicidal thoughts." *Id*. at 10.

The second amended complaint lists four claims: (1) "unconstitutional conditions of confinement Maria Tambascio acted with deliberate indifference to [Plaintiff's] confinement with no water to drink, bathe, or flush toilets;" (2) "impermissible pretrial punishment deliberate

indifference to unconstitutional conditions of confinement is punishment Maria Tambascio;" (3) "failure to intervene, Judge Cawley failed to intervene when he was told by Maria Tambascio that she was subjecting [Plaintiff] to constitutional deprivations;" and (4) "conspiracy, Nathan Schartzman, a non-state actor conspired with Maria Tambascio and Judge Cawley to keep [Plaintiff] confined with no water to drink, bathe, or flush toilets." *Id*. at 3 (cleaned up). Regarding relief, Plaintiff seeks "10 million dollars and whatever relief the Court may deem appropriate and attorneys costs and fees." *Id*. (cleaned up).

## III. STANDARD OF REVIEW

Section 1915 of Title 28 requires a district court to dismiss an *in forma pauperis* complaint if the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. *See* 28 U.S.C. § 1915A(b)(1)-(2); § 1915(e)(2)(B)(i)-(iii); *Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998). The Court must also dismiss a complaint, or portion thereof, when the Court lacks subject matter jurisdiction. *See* Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action.").

While the law mandates dismissal on any of these grounds, the Court is obliged to construe *pro se* pleadings liberally, *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009), and interpret them to raise the "strongest arguments that they *suggest*." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474-75 (2d Cir. 2006) (internal quotation marks and citation omitted, emphasis in original). A claim is frivolous when it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989), *abrogated on other grounds Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007).

Additionally, when reviewing a complaint, a court may look to the Federal Rules of Civil Procedure. *See*, *e.g.*, *Cole v. Smrtic*, No. 1:24-CV-00847 (MAD/CFH), 2024 WL 4870495, at *2 (N.D.N.Y. Nov. 21, 2024), *report and recommendation adopted*, 2025 WL 247901 (N.D.N.Y. Jan. 21, 2025). To survive dismissal for failure to state a claim, a complaint must contain a short and plain statement of the claim showing that the pleader is entitled to relief. Fed. R. Civ. P. 8(a)(2). This short and plain statement of the claim must be "plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In determining whether a complaint states a claim upon which relief may be granted, "the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor." *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir. 1994) (citations omitted). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

Moreover, a court should not dismiss a *pro se* complaint "without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 795 (2d Cir. 1999) (citation and internal quotation marks omitted). However, an opportunity to amend is not required where "the problem with [the plaintiff's] causes of action is substantive" such that "better pleading will not cure it." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000).

## IV. DISCUSSION

Upon review, Plaintiff's complaint, amended complaint, and second amended complaint fail to comply with the pleading requirements set forth in the Federal Rules of Civil Procedure, and multiple Defendants are not proper parties to this action or are immune from suit. Therefore, the undersigned recommends dismissal of Plaintiff's pleadings.

"The [Second Circuit]'s 'special solicitude' for *pro se* pleadings has its limits, because *pro se* pleadings still must comply with . . . the Federal Rules of Civil Procedure." *Lewis v. New York State Bd. of Elections*, No. 8:24-CV-00849 (GTS/CFH), 2024 WL 4910561, at *4 (N.D.N.Y. Sept. 30, 2024) (additional quotations and citations omitted), *report and recommendation adopted*, 2024 WL 4689022 (N.D.N.Y. Nov. 6, 2024). A complaint that fails to comply with the Federal Rules' pleading requirements "presents far too a heavy burden in terms of defendants' duty to shape a comprehensive defense and provides no meaningful basis for the Court to assess the sufficiency of their claims," and may properly be dismissed by the Court. *Gonzales v. Wing*, 167 F.R.D. 352, 355 (N.D.N.Y. 1996); *see also*, *e.g.*, *Gosier v. Collins*, No. 6:23-CV-1485 (DNH/TWD), 2024 WL 1016392, at *2 (N.D.N.Y. Mar. 8, 2024), *report and recommendation adopted*, 2024 WL 1307035 (N.D.N.Y. Mar. 27, 2024).

First, Rule 8 of the Federal Rules of Civil Procedure requires a pleading contain, *inter alia*, "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2). "The purpose of [Rule 8] is to give fair notice of the claim being asserted so as to permit the adverse party the opportunity to file a responsive answer, prepare an adequate defense and determine whether the doctrine of res judicata is applicable." *Flores v. Graphtex*, 189 F.R.D. 54, 55 (N.D.N.Y. 1999) (internal quotations and citations omitted). "Although 'no technical form is required,' the Federal Rules make clear that each allegation contained in the

pleading 'must be simple, concise, and direct.'" *Cole*, 2024 WL 4870495, at *2 (quoting Fed. R. Civ. P. 8(d)). In other words, allegations "so vague as to fail to give the defendants adequate notice of the claims against them" are subject to dismissal. *Sheehy v. Brown*, 335 F. App'x 102, 104 (2d Cir. 2009) (summary order).

Next, as relevant here, Rule 10 of the Federal Rules of Civil Procedure provides "[a] party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances . . . . If doing so would promote clarity, each claim founded on a separate transaction or occurrence—and each defense other than a denial—must be stated in a separate count or defense." Fed. R. Civ. P. 10. Rule 10 serves "to provide an easy mode of identification for referring to a particular paragraph in a prior pleading[.]" *Flores*, 189 F.R.D. at 55 (internal quotations and citation omitted).

Here, Plaintiff's second amended complaint does not provide a "short and plain statement of the claim showing that the pleader is entitled to relief" and lacks numbered paragraphs, limited as far as practicable to a single set of circumstances. Fed. R. Civ. P. 8(a), 10; *see generally*, Dkt. No. 10. Therefore, the undersigned recommends Plaintiff's second amended complaint be dismissed. *See*, *e.g.*, *Levesque v. People of the United States*, No. 8:25-CV-1259 (MAD/PJE), 2026 WL 1660470, at *3 (N.D.N.Y. June 8, 2026) (recommending dismissal of the plaintiff's complaint which failed to "meet the pleading requirements of Rules 8 and 10" and amounted to "pages of indecipherable assertions that provide no factual or legal context, detail, support, or explanation of" the plaintiff's claims), *report and recommendation adopted*, 2026 WL 2227973 (N.D.N.Y. Aug. 3, 2026).

In any event, the parties Plaintiff seeks to proceed against are not proper parties to this action and/or are immune from suit.

First, "[i]t is well-settled that municipal departments and offices which have no separate legal identity and cannot sue or be sued are not 'persons' under Section 1983." *Hill v. New York*, No. 9:18-CV-0005 (MAD/CFH), 2018 WL 10246976, at *5 (N.D.N.Y. Mar. 1, 2018) (collecting cases). It is similarly well-established that "that a county probation department falls into this category of municipal departments that cannot be sued." *Kelly v. Albany Cnty. Prob. Dep't*, No. 8:20-CV-0722 (GLS/DJS), 2020 WL 4458929, at *2 (N.D.N.Y. July 9, 2020) (citing *Hill*, 2018 WL 10246976, at *5; *Gilmore v. Schenectady Cnty. Sheriffs*, No. 9:17-CV-1349 (DNH/TWD), 2018 WL 794579, at *4 (N.D.N.Y. Feb. 8, 2018), *report and recommendation adopted*, 2020 WL 4432711 (N.D.N.Y. July 31, 2020)). Accordingly, the Broome County Probation Department is "not a proper party to this action," therefore, Plaintiff's claims against the entity are also subject to dismissal on this basis. *Kelly*, 2020 WL 4458929, at *2.[2]

Turning to Defendant State of New York, the Eleventh Amendment has long been construed as barring a citizen from bringing a suit against his or her own state in federal court, under the fundamental principle of "sovereign immunity." *See* U.S. Const. amend. XI ("The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."); *see also Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 267 (1997); *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984);

---

[2] Insofar as Plaintiff's pleadings can be construed as asserting claims against Broome County, any such claim should be dismissed for failure to state a claim under *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978). "'[T]o hold a municipality liable under § 1983 . . . a plaintiff is required to plead and prove three elements: (1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right.'" *Adams v. City of Syracuse*, 5:21-CV-0650, 2025 WL 2772081, at *28 (N.D.N.Y. Sept. 29, 2025) (quoting *Lucente v. Cnty. of Suffolk*, 980 F.3d 284, 297 (2d Cir. 2020)) (internal brackets omitted). Here, Plaintiff's pleadings are entirely devoid of any allegations regarding the existence of a municipal policy or custom causing the alleged deprivation of his constitutional rights.

*Hans v. Louisiana*, 134 U.S. 1, 10-21 (1890). Eleventh Amendment immunity is lost only if Congress unequivocally abrogates states' immunity or a state expressly consents to suit. *Gollomp v. Spitzer*, 568 F.3d 355, 365-66 (2d Cir. 2009). It is well-settled that Congress did not abrogate states' immunity through Section 1983, *see Quern v. Jordan*, 440 U.S. 332, 343-45 (1979), and New York State has not waived its immunity from suit on the type of claims asserted in the Complaint. *See generally*, *Trotman v. Palisades Interstate Park Comm'n*, 557 F.2d 35, 38-40 (2d Cir. 1977); *see also Dawkins v. State of New York*, No. 93-CV-1298 (RSP/GJD), 1996 WL 156764 at *2 (N.D.N.Y. Mar. 28, 1996). Therefore, "the Court recommends that all claims against the State of New York should be dismissed with prejudice as Plaintiff seeks relief from a defendant immune from suit under Section 1983." *Moore v. Rinaldi*, No. 6:22-CV-1125 (TJM/TWD), 2022 WL 17669428, at *3 (N.D.N.Y. Dec. 13, 2022) (citing *LeGrand v. Evan*, 702 F.2d 415, 417 (2d Cir. 1983)) (additional citations omitted), *report and recommendation adopted*, 2023 WL 2726508 (N.D.N.Y. Mar. 31, 2023).

Next, "[a]bsolute immunity for judges is 'firmly established' for acts 'committed within their judicial jurisdiction.'" *Peoples v. Leon*, 63 F.4th 132, 138 (2d Cir. 2023) (citing *Cleavinger v. Saxner*, 474 U.S. 193, 199-200 (1985)). Generally, "acts arising out of, or related to, individual cases before the judge are considered judicial in nature." *Bliven v. Hunt*, 579 F.3d 204, 210 (2d Cir. 2009). This absolute immunity for judges "is conferred in order to insure 'that a judicial officer, in exercising the authority vested in him, shall be free to act upon his own convictions, without apprehension of personal consequences to himself.'" *Id*. at 209 (2d Cir. 2009) (quoting *Bradley v. Fisher*, 80 U.S. 335, 347 (1871)). Accordingly, "even allegations of bad faith or malice cannot overcome judicial immunity." *Id*. (citing *Pierson v. Ray*, 386 U.S. 547, 554 (1967); *Tucker v. Outwater*, 118 F.3d 930, 932 (2d Cir.), *cert. denied*, 522 U.S. 997

(1997)). "The absolute immunity of a judge applies 'however erroneous the act may have been, and however injurious in its consequences it may have proved to the plaintiff.'" *Young v. Selsky*, 41 F.3d 47, 51 (2d Cir. 1994) (quoting *Cleavinger v. Saxner*, 474 U.S. 193, 199-200 (1985)) (additional quotations and citation omitted). Here, Plaintiff's claims against Defendant Cawley arise from the Defendant's actions in his capacity as a Broome County Court Judge. *See* Dkt. No. 10 at 3-10. As such, Defendant Cawley is entitled to absolute judicial immunity. *See*, *e.g.*, *Griffin v. Smith*, No. 3:16-CV-0519 (LEK/DEP), 2016 WL 5874991, at *4 (N.D.N.Y. June 16, 2016) (recommending dismissal of the plaintiff's claims against a retired Broome County Judge on the basis of judicial immunity), *report and recommendation adopted*, 2016 WL 5875017 (N.D.N.Y. Oct. 7, 2016); *Dudley v. Hochul*, No. 5:24-CV-0048 (DNH/ML), 2024 WL 1906594, at *6 (N.D.N.Y. May 1, 2024), *report and recommendation adopted*, 2024 WL 2399913 (N.D.N.Y. May 23, 2024). Accordingly, insofar as Plaintiff seeks relief against Defendant Cawley in his individual capacity, dismissal on the basis of judicial immunity is proper. *See*, *e.g.*, *Amato v. McGinty*, No. 1:21-CV-0860 (GLS/TWD), 2022 WL 226798, at *7 n.7 (N.D.N.Y. Jan. 26, 2022) (explaining, "[j]udicial immunity shields judges from suit to the extent that they are sued in their individual capacities.").

Furthermore, as previously stated, "States are immune from suit under the terms of the Eleventh Amendment and the doctrine of sovereign immunity." *Whole Woman's Health v. Jackson*, 595 U.S. 30, 39 (2021) (citation omitted). "The immunity recognized by the Eleventh Amendment extends beyond the states themselves to 'state agents and state instrumentalities' that are, effectively, arms of a state." *Woods v. Rondout Valley Cent. Sch. Dist. Bd of Educ.*, 466 F.3d 232, 236 (2d Cir. 2006) (citing *Regents of the Univ. of Cal. v. Doe*, 519 U.S. 425, 429 (1997)) (additional citation omitted). Accordingly, "Eleventh Amendment immunity has been

extended to judges of the New York State Unified Court System." *Scott v. Crossway*, No. 1:22-CV-0500 (BKS/CFH), 2022 WL 16646531, at *7 (N.D.N.Y. Nov. 3, 2022) (citing *Gollomp*, 568 F.3d at 368 ("the New York State Unified Court System is unquestionably an arm of the State . . . and is entitled to Eleventh Amendment sovereign immunity.")), *report and recommendation adopted*, 2023 WL 34543 (N.D.N.Y. Jan. 4, 2023). Broome County Court is a part of the New York State Unified Court System, therefore, to the extent Plaintiff seeks to proceed against Defendant Cawley in his official capacity, dismissal of such claims as barred by Eleventh Amendment immunity is warranted. *See*, *e.g.*, *Treistman v. McGinty*, No. 1:16-CV-1403, 2018 WL 4078262, at *1 (N.D.N.Y. Aug. 27, 2018) (concluding the plaintiff's claims against the defendants in their official capacity as court employees were barred by the Eleventh Amendment). Therefore, Plaintiff's claims against Defendant Cawley should be dismissed with prejudice.

Similarly, "[a]s a general matter, probation officers are entitled to immunity in the performance of their duties . . . ." *Dettelis v. Sharbaugh*, 919 F.3d 161, 164 (2d Cir. 2019). To that end,

> probation officers are entitled to absolute immunity from suit in connection with their "preparing and furnishing presentence reports to the court." They are also entitled to absolute immunity in "initiating parole revocation proceedings and in presenting the case for revocation to hearing officers." By contrast, in performing investigatory duties, for example, the filing of a violation report or recommending the issuance of an arrest warrant, a parole officer is entitled only to qualified immunity.

*Id*. (first quoting *Dorman v. Higgins*, 821 F.2d 133, 137 (2d Cir. 1987); then quoting *Scotto v. Almenas*, 143 F.3d 105, 111-12 (2d Cir. 1998)) (additional citations omitted). Here, Plaintiff's allegations about Defendant Maria Tambascio, a Broome County Probation Officer or Pretrial Services Officer lack sufficient detail for this Court to determine whether she is immune from

suit. *See generally*, Dkt. No. 10. Accordingly, dismissal of Plaintiff's claims against Defendant Tambascio is also warranted on this basis, but without prejudice to amend. *See*, *e.g.*, *Jarvis v. Duell*, No. 5:25-CV-0843 (LEK/MJK), 2025 WL 2467484, at *3 (N.D.N.Y. Aug. 26, 2025).

Finally, Plaintiff's sole allegations against Defendant Broome County Public Defender Nathan Shwartzman are that Defendant Shwartzman did not address the conditions of Plaintiff's home "in court, on the record," and "refused to send" unspecified "information requested" by another attorney, which Plaintiff contends was "in furtherance of the conspiracy." Dkt. No. 10 at 10-12.[3] Such allegations are "insufficient to plausibly suggest a conspiracy that would qualify Defendant [Shwartzman, a] Public Defender[] . . . as [a] state actor[.]" *Hendricks v. Utica Pub. Defs.*, No. 6:23-CV-0431 (LEK/ML), 2023 WL 3344236, at *5 n.5 (N.D.N.Y. May 10, 2023) (citations omitted), *report and recommendation adopted*, 2023 WL 6356645 (N.D.N.Y. Sept. 29, 2023); *see also Browdy v. Karpe*, 131 F. App'x 751, 753 (2d Cir. 2005) (Summary Order) (explaining, "public defenders and court-appointed attorneys 'performing a lawyer's traditional functions as counsel' to a defendant do not act 'under color of state law' and, therefore, are not subject to suit under 42 U.S.C. § 1983.") (quoting *Rodriguez v. Weprin*, 116 F.3d 62, 65-66 (2d Cir. 1997) (citing *Polk Cnty. v. Dodson*, 454 U.S. 312, 325 (1981))). Therefore, dismissal of Plaintiff's claims against the public defender for lack of state action is also warranted.

The Court advises Plaintiff that should he be permitted to amend, the pleading must comply with Rules 8 and 10 of the Federal Rules of Civil Procedure. Plaintiff must set forth all of the claims he intends to assert and must demonstrate that a case or controversy exists between the Plaintiff and the Defendant(s) which Plaintiff has a legal right to pursue and over which this

---

[3] To be sure, Plaintiff does not *explicitly* state Defendant Shwartzman represented *him* in any civil or criminal proceedings. *See generally*, Dkt. No. 10.

Court has jurisdiction. He must clearly set forth the facts that give rise to the claims, including the dates, times, and places of the alleged underlying acts. Any amended complaint must be a wholly integrated and complete pleading that does not rely upon or incorporate by reference any pleading or document previously filed with the Court. *See Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994) ("It is well established that an amended complaint ordinarily supersedes the original, and renders it of no legal effect.") (internal quotation marks omitted). Piecemeal pleadings are not permitted. Of course, Plaintiff may also pursue his claims in state court if appropriate.

## V. MOTION TO APPOINT COUNCIL

Finally, Plaintiff has filed a motion to appoint counsel. Dkt. No. 4. Plaintiff argues appointment of counsel is necessary because he is "mentally disabled and ha[s] been unable to find anyone to help" him. *Id*. at 1.

"A party has no constitutionally guaranteed right to the assistance of counsel in a civil case." *Leftridge v. Connecticut State Trooper Officer No. 1283*, 640 F.3d 62, 68 (2d Cir. 2011) (citing *United States v. Coven*, 662 F.2d 162, 176 (2d Cir. 1981), *cert. denied*, 456 U.S. 916 (1982)). Before evaluating a request for appointment of counsel, a party must first demonstrate that he is unable to obtain counsel through the private sector or public interest firms. *Cooper v. A. Sargenti Co., Inc.*, 877 F.2d 170, 173-74 (2d Cir. 1989) (citing *Hodge v. Police Officers*, 802 F.2d 58, 61 (2d Cir. 1986)). Next, courts cannot utilize a bright-line test in determining whether counsel should be appointed on behalf of an indigent party. *Hendricks v. Coughlin*, 114 F.3d 390, 392-93 (2d Cir. 1997). Instead, a number of factors must be carefully considered by the Court in ruling upon such a motion.

As a threshold matter, the Court should ascertain whether the indigent's claims seem likely to be of substance. *See Leftridge*, 640 F.3d at 69. If the Court finds the claims have substance, the Court should then consider:

> the indigent's ability to investigate the crucial facts, whether conflicting evidence implicating the need for cross-examination will be the major proof presented to the fact finder, the indigent's ability to present the case, the complexity of the legal issues and any special reason in th[e] case why appointment of counsel would be more likely to lead to a just determination.

*Terminate Control Corp. v. Horowitz*, 28 F.3d 1335, 1341 (2d Cir. 1994) (quoting *Hodge*, 802 F.2d at 61-62). This is not to say that all, or indeed any, of these factors are controlling in a particular case. Rather, each case must be decided on its own facts. *Velasquez v. O'Keefe*, 899 F. Supp. 972, 974 (N.D.N.Y. 1995) (citing *Hodge*, 802 F.2d at 61).

For purposes of Plaintiff's application, the Court will assume, without deciding, that the case may be of substance. Plaintiff has contacted one law firm in an effort to obtain counsel. *See* Dkt. No. 4 at 1; *see also* Dkt. No. 4-1. However, a review of the issues in dispute are not overly complex, indeed, this case is at the beginning stage of the litigation process. Additionally, while it is possible there will be conflicting evidence implicating the need for cross-examination at the time of the trial of this matter, as is the case in many actions brought by *pro se* litigants, "this factor alone is not determinative of a motion for appointment of counsel." *Velasquez*, 899 F. Supp. at 974. The undersigned is unaware of any special reason why appointment of counsel at this time would be more likely to lead to a just determination of this litigation. Moreover, it is highly probable that this Court will appoint trial counsel at the final pretrial conference if this case survives dispositive motions.

In sum, appointment of counsel at this time is not warranted. Therefore, the undersigned recommends Plaintiff's motion to appoint counsel be denied without prejudice. *See, e.g.*, *Israel*

*v. City of Syracuse*, No. 5:21-CV-0915 (DNH/ML), 2021 WL 7161914, at *9 (N.D.N.Y. Dec. 9, 2021), *report and recommendation adopted*, 2022 WL 18587 (N.D.N.Y. Jan. 3, 2022); *Lawrence v. Shattick*, No. 8:24-CV-656 (MAD/DJS), 2025 WL 542587, at *9 (N.D.N.Y. Feb. 19, 2025) (denying the plaintiff's motion to appoint counsel "particularly in light of the early stage of this action.") (citing *Gervasio v. Diaz*, No. 9:20-CV-0346 (TJM/DJS), 2020 WL 3496423, at *2 (N.D.N.Y. June 29, 2020)).

## VI. CONCLUSION

**WHEREFORE**, it is hereby

**RECOMMENDED** that Plaintiff's complaint (Dkt. No. 1), amended complaint (Dkt. No 9), and second amended complaint (Dkt. No. 10) be **DISMISSED**; and it is further

**RECOMMENDED** that Plaintiff's motion to appoint counsel (Dkt. No. 4) be **DENIED**; and it is further

**ORDERED** that the Clerk provide to Plaintiff a copy of this Report-Recommendation and Order, along with copies of the unpublished decisions cited herein in accordance with the Second Circuit decision in *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen (14) days within which to file written objections to the foregoing report.[4] Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW**. *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993)

[4] If you are proceeding *pro se* and are served with this Report-Recommendation and Order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the Report-Recommendation and Order was mailed to you to serve and file objections. Fed. R. Civ. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. Fed. R. Civ. P. 6(a)(1)(C).

(citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

**IT IS SO ORDERED.**

Dated: September 28, 2026
Syracuse, New York

Carla B. Freedman
U.S. Magistrate Judge

2024 WL 4870495
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Matthew H. COLE, Plaintiff,
v.
Honorable Michael W. SMRTIC, et al. Defendants.

No. 1:24-CV-00847 (MAD/CFH)
|
Signed November 21, 2024

**Attorneys and Law Firms**

MATTHEW H. COLE, 271 Market Street, Amsterdam, New York 12010, Plaintiff pro se.

**REPORT-RECOMMENDATION & ORDER**

CHRISTIAN F. HUMMEL, United States Magistrate Judge

## I. In Forma Pauperis

***1** Plaintiff pro se Matthew H. Cole ("plaintiff") commenced this action (No. 1:24-CV-00623) on May 6, 2024, by filing a complaint. See Dkt. No. 1 ("Compl."). On September 26, 2024, plaintiff submitted what the Court construes to be a supplement to the complaint. [1] See Dkt. No. 7. In lieu of paying this Court's filing fees, he submitted an application for leave to proceed in forma pauperis ("IFP"). See Dkt. No. 2. The undersigned has reviewed plaintiff's IFP application and determines that he financially qualifies to proceed IFP. [2] Thus, the Court proceeds to its review of the complaint pursuant to 28 U.S.C. § 1915. Plaintiff has also submitted for the Court's review a Pro Se Application for Permission to File Electronically and a Motion to Appoint Counsel. See Dkt. Nos. 4, 5.

1 The submission includes a letter addressed to District Judge D'Agostino, titled, "Requirements for Cases Removed From State Court," Dkt. No. 7; a receipt from Montgomery County Clerk dated December 8, 2022; and a "Notice of Claim" with the caption of Cole v. County of Montgomery, dated December 7, 2022. See Dkt. No. 7. The undersigned has reviewed this submission in connection with the initial review of plaintiff's complaint. See Sira v. Morton, 380 F. 3d 57, 67 (2d Cir. 2004).

2 Plaintiff is advised that, although he has been granted IFP status, he is still required to pay all fees and costs he may incur in this action, including, but not limited to, copying fees, transcript fees, and witness fees.

## II. Initial Review

### A. Legal Standards

Section 1915 of Title 28 of the United States Code directs that, when a plaintiff seeks to proceed IFP, "the court shall dismiss the case at any time if the court determines that ... the action or appeal (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C.

 © 2026 Thomson Reuters. No claim to original U.S. Government Works. 

§ 1915(e)(2)(B). Thus, it is a court's responsibility to determine that a plaintiff may properly maintain his complaint before permitting him to proceed with his action.

Where, as here, the plaintiff proceeds pro se, "the court must construe his submissions liberally and interpret them to raise the strongest arguments that they suggest." Kirkland v. Cablevision Sys., 760 F.3d 223, 224 (2d Cir. 2014) (per curiam) (internal quotation marks omitted); see also Hernandez v. Coughlin, 18 F.3d 133, 136 (2d Cir. 1994). As the Second Circuit stated,

> There are many cases in which we have said that a pro se litigant is entitled to "special solicitude," that a pro se litigant's submissions must be construed "liberally," and that such submissions must be read to raise the strongest arguments that they "suggest[.]" At the same time, our cases have also indicated that we cannot read into pro se submissions claims that are not "consistent" with the pro se litigant's allegations, or arguments that the submissions themselves do not "suggest," that we should not "excuse frivolous or vexatious filings by pro se litigants," and that pro se status "does not exempt a party from compliance with relevant rules of procedural and substantive law[.]"

***2** Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 477 (2d Cir. 2006) (citations and footnote omitted); see also Sealed Plaintiff v. Sealed Defendant, 537 F.3d 185, 191-92 (2d Cir. 2008).

"The [Second Circuit]'s 'special solicitude' for pro se pleadings has its limits, because pro se pleadings still must comply with ... the Federal Rules of Civil Procedure [('Fed. R. Civ. P.')]." Kastner v. Tri State Eye, No. 19-CV-10668 (CM), 2019 WL 6841952, at *2 (S.D.N.Y. Dec. 13, 2019) (quoting Ruotolo v. IRS, 28 F.3d 6, 8 (2d Cir. 1994)). Pleading guidelines are provided in the Federal Rules of Civil Procedure. Specifically, Rule 8 requires the pleading to include:

> (1) a short and plain statement of the grounds for the court's jurisdiction ...;
>
> (2) a short and plain statement of the claim showing that the pleader is entitled to relief; and
>
> (3) a demand for the relief sought...

FED. R. CIV. P. 8(a). Although "[n]o technical form is required," the Federal Rules make clear that each allegation contained in the pleading "must be simple, concise, and direct." Id. at 8(d). "The purpose ... is to give fair notice of the claim being asserted so as to permit the adverse party the opportunity to file a responsive answer, prepare an adequate defense and determine whether the doctrine of res judicata is applicable." Flores v. Graphtex, 189 F.R.D. 54, 54 (N.D.N.Y. 1999) (internal quotation marks and citations omitted). Allegations that "are so vague as to fail to give the defendants adequate notice of the claims against them" are subject to dismissal. Sheehy v. Brown, 335 F. App'x 102, 104 (2d Cir. 2009) (summary order).

Further, Fed. R. Civ. P. 10 provides:

> [a] party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances. A later pleading may refer by number to a paragraph in an earlier pleading. If doing so would promote clarity, each claim founded on a separate transaction or occurrence – and each defense other than a denial – must be stated in a separate count or defense.

FED. R. CIV. P. 10(b). This serves the purpose of "provid[ing] an easy mode of identification for referring to a particular paragraph in a prior pleading[.]" Flores, 189 F.R.D. at 54 (internal quotation marks and citations omitted). A complaint that fails to comply with the pleading requirements "presents far too a heavy burden in terms of a defendant's duty to shape a comprehensive defense and provides no meaningful basis for the Court to assess the sufficiency of their claims." Gonzales v. Wing, 167 F.R.D. 352, 355 (N.D.N.Y. 1996). As the Second Circuit has held, "[w]hen a complaint does not comply with the requirement that it be short and plain, the court has the power, on its own initiative ... to dismiss the complaint." Salahuddin v. Cuomo, 861 F.2d 40, 42 (2d Cir. 1988) (citations omitted). However, "[d]ismissal ... is usually reserved for those cases in which

 © 2026 Thomson Reuters. No claim to original U.S. Government Works. 

the complaint is so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised." Id. (citations omitted).

***3** This Court also has an overarching obligation to determine that a claim is not legally frivolous before permitting a pro se plaintiff's complaint to proceed. See, e.g., Fitzgerald v. First East Seventh St. Tenants Corp., 221 F.3d 362, 363 (2d Cir. 2000). "Legal frivolity ... occurs where 'the claim is based on an indisputably meritless legal theory [such as] when either the claim lacks an arguable basis in law, or a dispositive defense clearly exists on the face of the complaint.' " Aguilar v. United States, Nos. 99-MC-0304, 99-MC-0408, 1999 WL 1067841, at *2 (D. Conn. Nov. 8, 1999) [3] (quoting Livingston v. Adirondack Beverage Co., 141 F.3d 434, 437 (2d Cir. 1998)); see also Neitzke v. Williams, 490 U.S. 319, 325 (1989) ("[D]ismissal is proper only if the legal theory ... or factual contentions lack an arguable basis.").

3 Any unpublished cases cited within this Report-Recommendation & Order have been provided to plaintiff.

## B. Complaint

Plaintiff's civil cover sheet indicates that he seeks to bring this action pursuant to "Title U.S.C. 18 Section 241, Conspiracy Against Rights & Title U.S.C. 18 Section 242 Deprivation of rights Under Color of Law." Dkt. No. 1-1 at 1. The civil cover sheet further provides that his cause of action involves, "Violation of Due process, Speedy Trial Rights, Ineffective Assistance of Counsel. I feel I am being targeted for being black and gay." Id.

Plaintiff's form complaint checks the box indicating that he seeks to bring this case pursuant to 42 U.S.C. § 1983. See Compl. at 3. In response to the question in the form complaint asking in "what federal constitutional or statutory right(s) do you claim is/are being violated by state or local officials," plaintiff responds, "Due Process, 30.30 Speedy Trial Violation, Ineffective Assistance of counsel." [4] Id. In response to a question asking him to explain "how each defendant acted under color of state or local law," plaintiff states "Each judge deliberately denied me due process, and refused to look into the paperwork to see that i was improperly denied my speedy trial rights. It was a tean [sic] effort. The ADA/Special Prosecutor withheld potential exculpatory material which was usd [sic] against me. All mentioned actions were done and upheld even after I showed federal law with supportive case law as a pro se litigant." Id.

4 Although plaintiff generally references ineffective assistance of counsel, Compl. at 4, he does not name any attorney who may have represented him. Any claims against the prosecutor would not be considered ineffective assistance of counsel because Mr. Maxwell, as the prosecutor, was not plaintiff's attorney.

Plaintiff provides that his "case is still on appeakl [sic] in Appellate Court Third Department. I feel they are guilty, or part of what I call a scandal. I went to them from the very start with a complaint to the grievance committee, where they denied any wrongdoing. It must be ok to violate Constitutional rights there. This is from March 2019 to present" Id.

In response to a question that asks plaintiff to state the facts underlying his claims, plaintiff states, "Please see attached Article 78 that is attached. It was dismissed being in the wrong court, but is on point." Id. at 4. Plaintiff did not provide the Court with any such attachment and has not submitted any Article 78 materials. See Compl., Dkt. No. 7.

In response to the form complaint's question asking about any injuries suffered as a result of the conduct he complains of, plaintiff states, "Sever [sic] depression over 20 years, irreperable [sic] harm, defamation of charcter [sic] by arguments not legally allowed to give. Loss of income, inability to gain and keep employment, mental trauma, instilled disbelief in justice in the legal system, familial traumam [sic] due to my legal battles." Id. Indicating the relief sought, plaintiff states

 © 2026 Thomson Reuters. No claim to original U.S. Government Works. 

> ***4** Petitioner seeks reinstatement of driving priveldges [sic], and 10 million dollars for damages caused by conflict of interest, deliberate violation of Due Process, Speedy Trial rights, Ineffective assistance of counsel, malice, Brady Violation, Petitioner claims deliberate misconduct and malice in Montgomery County Court, the Saratoga Disrict Attorney's Office, and the Supreme Court Appellate Division Third department. ** This is subject to change if an attorney agrees to represent.

Compl. at 5. Although he typed his name, plaintiff does not sign the complaint where a signature is indicated. See id. at 8.

Plaintiff provides in his supplement that he "removed this action to district court asserting jurisdiction pursuant to 42 U.S.C. 1983, and § 1441." Dkt. No. 7. at 1. Plaintiff states that he removed this case from Montgomery County Supreme Court. See id. He states that he seeks or sought the removal because he was told he was "not guarantee counsel" at the state, but that "[i]n Federal Court, there is that option, pending qualification, and I am told, if a lawyer agrees to take it, then I really have something. I am in dire need of counsel." Id.

Plaintiff states, "[t]he ineffective assistance of counsel and The County Court are a matter already mentioned in the appeal." Dkt. No. 7 at 2. Plaintiff states that "[t]o get my conviction, I allege judicial and prosecutorial misconduct, and ineffective assistance of counsel × 4. That is why I am pro se. I had to protect myself when appointed counsel did not. It also went through a couple judges which is why they are mentioned in the preliminary complaint/paperwork, and why I mention bias." Id. Plaintiff states he can "prove each thing I saw not just with my words, but with transcripts [5] from the County Court, and the Adult Drug Court." Id. Plaintiff refers to being drug free for four and a half years and having academic success in college. Id. at 3. He states that he wishes this Court to hear his case because he believes he will not "see bias" in federal court "like I saw in others." Id. Plaintiff states that he "also put in a Notice of Removal in the Federal Court for those criminal charges that led to the Complaint. I do not trust the assigned appellate attorney. That case too has Constitutional violations. That case number is 1:24-CR-301 (AMN)." Id.

5 Plaintiff did not provide any transcripts.

### C. Discussion [6]

6 As a courtesy, the Court has provided plaintiff with copies of any unpublished cases cited within this Report-Recommendation & Order.

#### 1. Rule 8

As a threshold issue, plaintiff's complaint fails to meet the requirements of Rule 8. See FED. R. CIV. P. 8(a)(2). He does not provide a short and plain statement of the claim demonstrating why he is entitled to relief. Although he makes general references to both an Article 78 proceeding and a criminal proceeding and unexplained references to "Due Process, 30.30 Speedy Trial Violation, Ineffective of Counsel," he does not provide factual support or context. Thus, his complaint does not provide "fair notice" to defendants of the claims against them. See FED. R. CIV. P. 8(a)(2).

#### 2. Heck v. Humphrey

However, there are several substantive concerns that further lead the undersigned to recommend dismissal. First, in referencing to "Due Process, 30.30 Speedy Trial Violation, Ineffective of Counsel" and explicitly referencing a criminal conviction, it is clear that plaintiff is attempting to seek some kind of review of a criminal proceeding or conviction. See Compl. at 3. Plaintiff also accuses all named judges of denying him due process and contends that an unnamed "ADA/Special Prosecutor withheld potential exculpatory material which was usd [sic] against me." Compl. at 4. Plaintiff also references a conviction. See Dkt. No. 7 at 4. Such claims would be barred by Heck v. Humphrey.

***5** As this Court, citing the District of Connecticut, has set forth:

> In Heck, the Supreme Court held that in order for a plaintiff "to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." Id. at 486-87. The court further held that "[a] claim for damages bearing that relationship to a conviction or sentence that has not been so invalidated is not cognizable under § 1983." Id. at 487 (emphasis in original).
>
> [ ]
>
> Thus, under Heck and its progeny, if a conviction has not been invalidated previously, a "§ 1983 action is barred ... no matter the target of the prisoner's suit ... if success in that action would necessarily demonstrate the invalidity of confinement or its duration." Wilkinson v. Dotson, 544 U.S. 74, 81-82 (2005) (emphasis in original).

Ali v. Shattuck, No. 8:24-CV-0128 (DNH/CFH), 2024 WL 2747619, at *3 (N.D.N.Y. May 29, 2024), report-recommendation adopted sub nom. Ali v. Dow, No. 8:24-CV-128, 2024 WL 3460745 (N.D.N.Y. July 18, 2024) (quoting Zografidis v. Richards, No. 3:22-CV-00631 (AVC), 2022 WL 21756775, at *7 (D. Conn. July 6, 2022), report and recommendation adopted (Oct. 7, 2022), aff'd, No. 22-3197, 2023 WL 7538211 (2d Cir. Nov. 14, 2023)).

Plaintiff has failed to demonstrate that any criminal charge(s), conviction, or sentence has been "reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." Zografidis, 2022 WL 21756775, at *7. Although plaintiff's complaint wants for detail, the undersigned can clearly determine that plaintiff seeks review of his criminal proceedings, conviction, and/or sentence. The claims plaintiff seeks to pursue relate to allegations that he was denied due process, denied speedy trial rights, and experienced ineffective assistance of counsel. Accordingly, plaintiff's claims are barred by Heck unless and until he can demonstrate favorable termination of his criminal conviction. [7]

7 The undersigned recognizes that claims that are determined to be barred by Heck are dismissed without prejudice. However, the undersigned has recommended dismissal with prejudice because plaintiff has only named defendants who are immune from relief. Accordingly, the undersigned is recommending dismissal of the claims based on these immunities, rather than a Heck dismissal. The undersigned has included the Heck review for sake of completeness.

### 3. Immunities

Plaintiff names as defendants several defendants who are immune from suit. Insofar as plaintiff names Hon. Michael W. Smrtic, Interim Montgomery County Judge and Tatiana N. Coffinger, "County/Family/Surrogate's Court Judge" [8] such claims would be barred by judicial immunity.

8 Although plaintiff provides no facts regarding any family court proceedings, that he named a family court judge and makes general reference to that he seeks review over actions taken by a family court judge. Even if plaintiff were to amend his complaint to provide facts about any possible family court proceedings and details about any alleged

violations of his rights that he believes he faced in that Court, if plaintiff seeks this Court's review of an order of the family court, such review would be barred by Rooker-Feldman, and if plaintiff seeks this Court's review or intervention of a currently pending/ongoing Family Court proceeding, such review would be barred by Younger. See Porter v. Nasci, No. 5:24-CV-0033 (GTS/TWD), 2024 WL 1142144, at *4 (N.D.N.Y. Mar. 15, 2024) (citations omitted), report and recommendation adopted, 2024 WL 3158645 (N.D.N.Y. June 25, 2024) ("Under the Rooker-Feldman doctrine, a federal district court lacks authority to review a final state court order or judgment where a litigant seeks relief that invites the federal district court to reject or overturn such a final state court order or judgment."); see also Diamond "D" Constr. Corp. v. McGowan, 282 F.3d 191, 198 (2d Cir. 2002) ("[F]ederal courts [must] abstain from taking jurisdiction over federal constitutional claims that involve or call into question ongoing state proceedings.").

***6** "With minor exceptions, judges are entitled to absolute immunity for actions relating to the exercise of their judicial functions." Zavalidroga v. Girouard, No. 6:17-CV-682 (BKS/ATB), 2017 WL 8777370, at *8 (N.D.N.Y. July 7, 2017) (citing Mireles v. Waco, 502 U.S. 9, 9-10 (1991) (per curiam)). "Judicial immunity has been created for the public interest in having judges who are 'at liberty to exercise their functions with independence and without fear of consequences.' " Id. (quoting Huminski v. Corsones, 396 F.3d 53, 74 (2d Cir. 2004)). "Judicial immunity applies even when the judge is accused of acting maliciously or corruptly." Id. (citation omitted); see Positano v. New York, No. 12-CV-2288 (ADS/AKT), 2013 WL 880329, at *4 (E.D.N.Y. Mar. 7, 2013) (explaining that the plaintiff may not bring action against a judge for actions taken in his judicial capacity, even when the actions violated the ADA).

"Judicial immunity is immunity from suit, not just immunity from the assessment of damages." Zavalidroga, 2017 WL 8777370, at *8 (citing Mitchell v. Forsyth, 472 U.S. 511, 526 (1985)). "The only two circumstances in which judicial immunity does not apply is when he or she takes action 'outside' his or her judicial capacity and when the judge takes action that, although judicial in nature, is taken 'in absence of jurisdiction.' " Id. (quoting Mireles, 502 U.S. at 11-12). "In determining whether or not a judge acted in the clear absence of all jurisdiction, the judge's jurisdiction is 'to be construed broadly, and the asserted immunity will only be overcome when the judge clearly lacks jurisdiction over the subject matter.' " Pacherille v. Burns, 30 F. Supp. 3d 159, 163 (N.D.N.Y. 2014) (quoting Ceparano v. Southampton Just. Ct., 404 F. App'x 537, 539 (2d Cir. 2011) (summary order)). "Whether a judge acted in a judicial capacity depends on the nature of the act [complained of] itself, i.e., whether it is a function normally performed by a judge, and [on] the expectations of the parties, i.e., whether they dealt with the judge in his judicial capacity." Ceparano, 404 F. App'x at 539 (internal quotation marks and citation omitted). "Further, if the judge is performing in his judicial capacity," he " 'will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority; rather, he will be subject to liability only when he has acted in the clear absence of all jurisdiction.' " Ceparano, 404 F. App'x at 539 (quoting Stump v. Sparkman, 435 U.S. 349, 362 (1978)). "Judges are not, however, absolutely 'immune from liability for nonjudicial actions, i.e., actions not taken in the judge's judicial capacity.' " Bliven v. Hunt, 579 F.3d 204, 209 (2d Cir. 2009) (quoting Mireles, 502 U.S. at 11).

Thus, as plaintiff names the judicial defendants in relation to actions or omissions that they took in their roles as judges, their actions are protected by absolute judicial immunity. To the extent plaintiff names Hon. Felix Catena, "Retired Administrative Law Judge," Judge Catena is also protected by absolute judicial immunity as a judge's retirement, "does not impact [his or] her immunity for acts taken in [his or] her official capacity before her retirement." McCray v. Lewis, No. 16-CV-3855 (WFK/VMS), 2016 WL 4579081, at *2 (E.D.N.Y. Aug. 31, 2016). To the extent plaintiff may seek to sue the judges their official capacities, the suit is barred by the Eleventh Amendment. See Pacherille v. Burns, 30 F. Supp. 3d 159, 163 n.5 (N.D.N.Y. 2014) ("The Eleventh Amendment shields judges from suit to the extent that they are sued in their official capacities.").

***7** In addition, plaintiff also references, exclusively in his "relief" section of the form complaint, "the Supreme Court Appellate Division, Third Department" when stating that he experienced "deliberate misconduct and malice." Compl. at 7. He does not name this Court as a defendant anywhere in the complaint. However, even if plaintiff were to have named the Appellate Division, Third Department as a defendant, such defendant would also need to be dismissed based on Eleventh Amendment immunity as the Appellate Division "is merely an agency or arm of New York State." Benyi v. New York, No. 3:20-CV-1463 (DNH/ML), 2021 WL 1406649, at *5 (N.D.N.Y. Mar. 23, 2021), report and recommendation adopted, No. 3:20-CV-1463, 2021 WL 1404555 (N.D.N.Y. Apr. 13, 2021) (citation omitted). Accordingly, to the extent a liberal reading of the complaint may suggest

that plaintiff seeks to name the Appellate Division as a defendant, such claims are barred by Eleventh Amendment immunity. See Compl.

Finally, insofar as plaintiff seeks to sue Prosecutor Samuel V. Maxwell, Esq., Assistant District Attorney, in addition to the Heck issues noted above, he would be protected by absolute prosecutorial immunity. As this Court has recently reiterated,

> Prosecutors enjoy "absolute immunity from § 1983 liability for those prosecutorial activities 'intimately associated with the judicial phase of the criminal process.' " Barr v. Abrams, 810 F.2d 358, 360-61 (2d Cir. 1987) (citing Imbler v. Pachtman, 424 U.S. 409, 430 (1976)). This immunity encompasses "virtually all acts, regardless of motivation, associated with [the prosecutor's] function as an advocate." Hill v. City of New York, 45 F.3d 653, 661 (2d Cir. 1995) (internal quotations and citation omitted). Absolute immunity applies when a prosecutor's conduct, acting as an advocate during the judicial phase of the criminal process, "involves the exercise of discretion." Flagler v. Trainor, 663 F.3d 543, 547 (2d Cir. 2011) (citing Kalina v. Fletcher, 522 U.S. 118, 127 (1997)).
>
> Accordingly, absolute immunity extends to functions such as "deciding whether to bring charges and presenting a case to a grand jury or a court, along with the tasks generally considered adjunct to those functions, such as witness preparation, witness selection, and issuing subpoenas." Simon v. City of New York, 727 F.3d 167, 171 (2d Cir. 2013) (citing Imbler, 424 U.S. at 431 n.33); see also Flagler, 663 F.3d at 547 (explaining, "the Supreme Court has found prosecutors absolutely immune from suit for alleged misconduct during a probable cause hearing, in initiating a prosecution, and in presenting the State's case ... [but] withheld absolute immunity for conduct unrelated to advocacy, such as giving legal advice, holding a press conference, or acting as a complaining witness."). "[O]nce a court determines that challenged conduct involves a function covered by absolute immunity, the actor is shielded from liability for damages regardless of the wrongfulness of his motive or the degree of injury caused ...." Bernard v. Cnty. of Suffolk, 356 F.3d 495, 503 (2d Cir. 2004) (citing Cleavinger v. Saxner, 474 U.S. 193, 199-200 (1985)).

Williams v. Atkins, No. 5:24-CV-0573 (DNH/TWD), 2024 WL 3649849, at *5 (N.D.N.Y. June 11, 2024), report and recommendation adopted, No. 5:24-CV-573, 2024 WL 3548760 (N.D.N.Y. July 26, 2024).

Plaintiff appears to suggest that Mr. Maxwell "withheld potentially exculpatory material" that was used against him. Compl. at 4. Beyond the Heck barriers already discussed, even if plaintiff could amend to provide greater detail, absolute immunity would extent to even this alleged misconduct as such allegations clearly fall within the scope of prosecutorial immunity. Accordingly, it is recommended that any claims against ADA Samuel V. Maxwell be dismissed for absolute prosecutorial immunity. "Furthermore, because the District Attorney's prosecutorial immunity is substantive and not something that can be corrected by a better pleading, I recommend that the dismissal be with prejudice." Phillips v. New York, No. 5:13-CV-927, 2013 WL 5703629, at *5 (N.D.N.Y. Oct. 17, 2013) (quoting Cuoco v. Moritsugu, 222 F.3d 99, 223 (2d Cir. 2000)).[9]

9 Plaintiff appears to characterize his submissions as a purported removal to federal court or suggests that he seeks to remove his case from Montgomery County Court to this Court. See Dkt. No. 7 (citing 28 U.S.C. § 1441). However, in addition to the infirmities mentioned above, plaintiff has not demonstrated that any proceeding related to this complaint has been properly removed to, or is subject to removal to, this Court. See, e.g., 28 U.S.C. § 1446. Indeed, plaintiff's submissions appear to indicate that plaintiff is the plaintiff in the County Court action. See id. § 1446(a).

### III. Conclusion

***8** It is **ORDERED**, that plaintiff's in forma pauperis application (dkt. no. 2) be **GRANTED**; and it is

**RECOMMENDED**, that plaintiff's section 1983 claims against Honorable Michael W. Smrtic; Tatiana N. Coffinger, County/Family/Surrogate's Court Judge; and Felix Catena, Retired Administrative Law Judge (Dkt. Nos. 1, 7) be **DISMISSED WITH**


© 2026 Thomson Reuters. No claim to original U.S. Government Works.

**PREJUDICE** as follows: (1) claims brought against them in their personal/individual capacities for judicial immunity, and (2) claims brought against them in their official capacities for Eleventh Amendment immunity; and it is further

**RECOMMENDED**, that plaintiff's section 1983 claims against Assistant District Attorney Samuel V. Maxwell (Dkt. Nos. 1, 7) be **DISMISSED WITH PREJUDICE** due to absolute prosecutorial immunity; and it is further

**RECOMMENDED**, that, to the extent a liberal reading of the complaint may suggest that plaintiff seeks to name the Appellate Division, Third Department, as a defendant (Dkt. Nos. 1, 7), such claims be **DISMISSED WITH PREJUDICE** as barred by Eleventh Amendment immunity, and it is

**RECOMMENDED**, that plaintiff's pro se motion for permission to file electronically (dkt. no. 4) and motion to appoint counsel [10] (dkt. no. 5) be **DISMISSED AS MOOT** based on the above recommendations, and it is

10 The undersigned also notes that plaintiff did not contend that he made any efforts to obtain counsel on his own, show proof of any attorneys he contacted. See Terminate Control Corp v. Horowitz, 28 F.3d 1335 (2d Cir. 1994). See Dkt. No. 5.

**ORDERED**, that the Clerk serve this Report-Recommendation & Order on plaintiff in accordance with the Local Rules.

**IT IS SO ORDERED**.

Pursuant to 28 U.S.C. § 636(b)(1), parties have
**FOURTEEN (14)** days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW**. Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993) (citing Small v. Sec'y of Health and Human Servs., 892 F.2d 15 (2d Cir. 1989)); see also 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 6(a), 72. [11]

11 If you are proceeding pro se and are served with this Report-Recommendation and Order by mail, three (3) additional days will be added to the fourteen (14) day period, meaning that you have seventeen (17) days from the date the Report-Recommendation and Order was mailed to you to serve and file objections. FED. R. CIV. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. Id. § 6(a)(1)(c).

**All Citations**

Not Reported in Fed. Supp., 2024 WL 4870495

**End of Document**

© 2026 Thomson Reuters. No claim to original U.S. Government Works.

2025 WL 247901
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Matthew H. COLE, Plaintiff,
v.
Honorable Michael W. SMRTIC, Interim Montgomery County Judge; Tatiana N. Coffinger, County/Family/Surrogate's Court Judge; Honorable Felix Catena, Retired Administrative Law Judge; and Samuel V. Maxwell, Esq., Assistant District Attorney, Defendants.

1:24-CV-847 (MAD/PJE)
|
Signed January 21, 2025

**Attorneys and Law Firms**

MATTHEW H. COLE, 271 Market Street, Amsterdam, New York 12010, Plaintiff pro se.

## ORDER

Mae A. D'Agostino, United States District Judge:

***1** Plaintiff commenced this action on May 6, 2024, asserting that Defendants violated his due process and speedy trial rights, and that he received ineffective assistance of counsel in an underlying state criminal action. *See* Dkt. No. 1. In a Report-Recommendation and Order dated November 21, 2024, Magistrate Judge Hummel granted Plaintiff's request to proceed *in forma pauperis* and conducted an initial review of the complaint. *See* Dkt. No. 8. In the Report-Recommendation and Order, Magistrate Judge Hummel concluded that, in addition to the complaint being subject to dismissal for failure to comply with Rule 8 of the Federal Rules of Civil Procedure, Plaintiff's due process, speedy trial, and ineffective assistance of counsel claims are barred by *Heck v. Humphrey*, 512 U.S. 477 (1994), because Plaintiff's underlying state court conviction has not been reversed on direct appeal or otherwise expunged. *See id.* at 8-10. Moreover, the Report-Recommendation and Order recommended dismissal of the claims against Defendants Smrtic, Coffinger, and Catena since they are barred by absolute judicial immunity. *See id.* at 10-12. To the extent Plaintiff is attempting to assert a claim against the Appellate Division, Third Department, Magistrate Judge Hummel found that the claim is barred by Eleventh Amendment immunity because the Appellate Division " 'is merely an agency or arm of New York State." *Id.* at 12-13 (quotation omitted). Finally, Magistrate Judge Hummel recommended that the claims against Defendant Maxwell be dismissed because he is protected by prosecutorial immunity. *See id.* at 13-14. Plaintiff has not objected to the Report-Recommendation and Order.

When a party files specific objections to a magistrate judge's report-recommendation, the district court "make[s] a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1)(C). However, when a party files "[g]eneral or conclusory objections, or objections which merely recite the same arguments [that he] presented to the magistrate judge," the court reviews those recommendations for clear error only. *O'Diah v. Mawhir*, No. 9:08-CV-322, 2011 WL 933846, *2 (N.D.N.Y. Mar. 16, 2011) (citations and footnote omitted). After the appropriate review, "the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C).

In the present matter, the Court finds that Magistrate Judge Hummel correctly determined that Plaintiff's complaint must be dismissed. Plaintiff's complaint makes clear that his claims stem from alleged violations of his rights that occurred during an underlying state criminal case. *See* Dkt. No. 1 at 3-4; Dkt. No. 7 at 4. Since Plaintiff's criminal conviction has not been reversed,

expunged by executive order, or called into question by a federal court's issuance of a writ of habeas corpus, Plaintiff's claims brought pursuant to Section 1983 are barred by *Heck v. Humphrey*, 512 U.S. 477 (1994). *See Strong v. Watson*, No. 1:22-cv-552, 2023 WL 8439445, *14-15 (W.D.N.Y. Sept. 26, 2023) (dismissing the plaintiff's claims of malicious prosecution, conspiracy, speedy trial violations, denial of due process, and denial of equal protection under *Heck* because the claims “all seek to impugn the validity of his underlying state court criminal charges”).

***2** Magistrate Judge Hummel also correctly determined that, in the alternative, the claims against the named Defendants are subject to dismissal based on absolute judicial and prosecutorial immunity. The allegations against Defendants Smrtic, Coffinger, and Catena make clear that these individuals were acting in their judicial capacities and that their actions were not taken in the absence of jurisdiction. Accordingly, they are entitled to absolute judicial immunity. *See Ceparano v. Southampton Just. Ct.*, 404 Fed. Appx. 537, 539 (2d Cir. 2011). As to Defendant Maxwell, Plaintiff has alleged that he withheld exculpatory evidence in the underlying criminal matter. Since this conduct clearly involves “prosecutorial activities ‘intimately associated with the judicial phase of the criminal process,’ ” Defendant Maxwell is entitled to absolute prosecutorial immunity. *See Barr v. Abrams*, 810 F.2d 358, 360-61 (2d Cir. 1987) (quoting *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976)). Additionally, to the extent Plaintiff has attempted to assert claims against the Appellate Division, Third Department, the claims must be dismissed because the Third Department is an arm of New York State and is entitled to Eleventh Amendment immunity. *See Benyi v. New York*, No. 3:20-cv-1463, 2021 WL 1406649, *5 (N.D.N.Y. Mar. 23, 2021) (citation omitted).

Finally, the Court agrees with Magistrate Judge Hummel that, because it is clear that the issues with Plaintiff's complaint are substantive and not something that can be corrected by better pleading, Plaintiff will not be afforded an opportunity to amend his complaint. *See Phillips v. New York*, No. 5:13-cv-927, 2013 WL 5703629, *5 (N.D.N.Y. Oct. 17, 2013) (quoting *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000)).

Accordingly, the Court hereby

**ORDERS** that Magistrate Judge Hummel's November 21, 2024, Report-Recommendation and Order (Dkt. No. 8) is **ADOPTED in its entirety** for the reasons set forth herein; and the Court further

**ORDERS** that Plaintiff's complaint (Dkt. No. 1) is **DISMISSED without leave to amend**; and the Court further

**ORDERS** that Plaintiff's motion for permission to file electronically (Dkt. No. 4) and motion to appoint counsel (Dkt. No. 5) are **DENIED as moot**; and the Court further

**ORDERS** that the Clerk of the Court shall enter judgment in Defendants’ favor and close this case; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Order on Plaintiff in accordance with the Local Rules.

**IT IS SO ORDERED.**

**All Citations**

Not Reported in Fed. Supp., 2025 WL 247901

**End of Document** © 2026 Thomson Reuters. No claim to original U.S. Government Works.

2024 WL 4910561
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Scott Phillip LEWIS, Plaintiff,
v.
NEW YORK STATE BOARD OF ELECTIONS, Defendant.
Scott Phillip Lewis, Plaintiff,
v.
New York State Board of Elections, Defendant.

No. 8:24-CV-00849 (GTS/CFH), No. 8:24-CV-01036 (GTS/CFH)
|
Signed September 30, 2024

**Attorneys and Law Firms**

Scott Phillip Lewis, 1936 Saranac Avenue, #3, PMB 411, Lake Placid, New York 12946, Plaintiff pro se.

## REPORT-RECOMMENDATION AND ORDER

CHRISTIAN F. HUMMEL, UNITED STATES MAGISTRATE JUDGE

## I. In Forma Pauperis

***1** Plaintiff pro se Scott Lewis ("plaintiff")[1] purported to commence this action on July 4, 2024, by filing a complaint. See Dkt. No. 1 ("Compl."). In lieu of paying this Court's filing fee, he submitted an application for leave to proceed in forma pauperis ("IFP"). See Dkt. No. 2. The undersigned has reviewed plaintiff's IFP application and determines that he financially qualifies to proceed IFP.[2]

1 The undersigned notes that plaintiff is a particularly litigious individual who has filed numerous other actions that are presently pending in this District, as well as others. See, e.g., Lewis v. Town of Elizabethtown, 8:24-CV-00535 (AMN/DJS) (N.D.N.Y. filed Apr. 18, 2024), Dkt. No. 9 (dismissing complaint with leave to amend); Lewis v. Adirondack Med. Ctr., 1:24-CV-00376 (BKS/TWD) (N.D.N.Y. filed Mar. 19, 2024), Dkt. No. 4 (Report-Recommendation recommending dismissal pending review); Lewis v. Paymaster Payroll Sys., Inc., 8:24-CV-00121 (MAD/DJS) (N.D.N.Y. filed Jan. 25, 2024), Dkt. No. 9 (dismissing complaint and entering judgment in favor of the defendants); Lewis v. Walsh, 8:24-CV-00098 (GTS/CFH) (N.D.N.Y. filed Jan. 21, 2024), Dkt. No. 5 (Report-Recommendation recommending dismissal pending review); Lewis v. Essex Cnty., 8:24-CV-00100 (MAD/CFH) (N.D.N.Y. filed Jan. 19, 2024), Dkt. No. 9 (Report-Recommendation recommending dismissal pending review); Lewis v. Despos, LLC, 8:24-CV-00079 (AMN/CFH) (N.D.N.Y. filed Jan. 17, 2024), Dkt. No. 12 (dismissing complaint without leave to amend); Lewis v. R. L. Vallee, Inc., 8:24-CV-00069 (AMN/DJS) (N.D.N.Y. filed Jan. 16, 2024), Dkt. No. 17 (dismissing complaint with leave to amend); Lewis v. Affiliated Enter. Sol., LLC, 8:24-CV-00061 (BKS/DJS) (N.D.N.Y. filed Jan. 15, 2024), Dkt. No. 17 (dismissing complaint with leave to amend); Lewis v. Redline Hockey, LLC, 8:24-CV-00068 (BKS/DJS) (N.D.N.Y. filed Jan. 15, 2024), Dkt. No. 17 (dismissing complaint with leave to amend); Lewis v. Citizens United, Inc., 8:24-CV-00029 (TJM/DJS) (N.D.N.Y. filed Jan. 8, 2024), Dkt. No. 25 (dismissing amended complaint); Lewis v. Adirondack Med. Ctr., 8:24-CV-00027 (BKS/DJS) (N.D.N.Y. filed Jan. 7, 2024), Dkt. No. 17 (dismissing complaint with leave to amend); Lewis v.

Onondaga Cnty., 8:24-CV-00013 (GTS/DJS) (N.D.N.Y. filed Jan. 3, 2024), Dkt. No. 21 (dismissing complaint with leave to amend); Lewis v. Franklin Cnty., 8:23-CV-01647 (DNH/CFH) (N.D.N.Y. filed Dec. 28, 2023), Dkt. No. 15 (partially dismissing complaint, permitting one claim to proceed); Lewis v. Essex Cnty., 8:23-CV-01636 (TJM/CFH) (N.D.N.Y. filed Dec. 26, 2023), Dkt. No. 9 (Report-Recommendation recommending dismissal pending review); Lewis v. State of Texas, 1:24-CV-00461 (ADA) (W.D. Tex. filed Apr. 25, 2024), Dkt. No. 3 (dismissing all claims with prejudice as malicious); Lewis v. Williamson Cnty., 1:24-CV-03092 (LTS) (S.D.N.Y. filed Apr. 20, 2024); Lewis v. Williamson Cnty., 1:24-CV-00118 (ADA) (W.D. Tex. filed Jan. 29, 2024), Dkt. No. 3 (dismissing all claims with prejudice as malicious); Lewis v. Williamson Cnty., 1:21-CV-00074 (ADA/SH) (W.D. Tex. filed Jan. 25, 2021), Dkt. No. 152 (granting summary judgment in favor of the defendants and dismissing the plaintiff's claims with prejudice).

2 Plaintiff is advised that although he has been granted IFP status, he is still required to pay any fees and costs he may incur in this action, including but not limited to copying fees, transcript fees, and witness fees.

## II. Consolidation

***2** "Rule 42(a) of the Federal Rules of Civil Procedure provides for the consolidation of actions pending before the court which involve 'a common question of law or fact.' " Boyde v. Uzunoff, No. 9:21-CV-0741 (TJM/ATB), 2021 WL 3185472, at *1 (N.D.N.Y. July 28, 2021) (quoting FED. R. CIV. P. 42(a)(2)). "As the Second Circuit has recognized, '[t]he trial court has broad discretion to determine whether consolidation is appropriate,' and may consolidate actions sua sponte." Id. (quoting Johnson v. Celotex Corp., 899 F.2d 1281, 1284-85 (2d Cir. 1990), and citing Devlin v. Transp. Commc'ns Intern. Union, 175 F.3d 121, 130 (2d Cir. 1999)); see Innovation Ventures v. Ultimate One Distrib. Corp., No. 12-CV-5354 (KAM/RLM), 2014 WL 824304, at *2 (E.D.N.Y. Mar. 3, 2014) ("A court may consolidate related cases sua sponte under Rule 42(a).") (citation omitted). "The Court must consider in each case the possible risks and benefits of consolidation." Boyde, 2021 WL 3185472, at *1; see Jacobs v. Castillo, 612 F. Supp. 2d 369, 373 (S.D.N.Y. 2009) ("Consolidation ... further[s] the goal of 'judicial economy' because discovery in each case is likely to be identical, motion practice and trial in the two cases would most likely cover the same facts and some identical issues of law."). "The paramount concern is whether savings of expense and gains of efficiency can be accomplished without sacrifice of justice." Wolm v. Ahern, No. 14-CV-3978 (JFB/GRB), 2014 WL 5171763, at *1 (E.D.N.Y. Oct. 8, 2014) (citing Johnson, 899 F.2d at 1285).

Here, plaintiff commenced the instant case, 8:24-CV-00849, Lewis v. New York State Board of Elections (hereinafter "Lewis I"), on July 4, 2024. See Compl. (hereinafter "Compl. I"). Nearly seven weeks later, on August 21, 2024, plaintiff commenced a second action, 8:24-CV-01036, Lewis v. New York State Board of Elections (hereinafter "Lewis II"), with the filing of a separate complaint (hereinafter "Compl. II"). The undersigned has reviewed both complaints in each action, and has determined "that common questions of law and fact exist in these cases." Boyde, 2021 WL 3185472, at *1. "Plaintiff appears to name the same defendant[, the New York State Board of Elections,] and to the extent it can be determined, the cases arise out of the same facts and circumstances and raise the same claims in [both] of these ... actions." Lamothe v. Brown, No. 5:22-CV-161 (TJM/CFH), 2023 WL 316013, at *1 (D. Vt. Jan. 19, 2023), report and recommendation adopted, 2023 WL 3301220 (D. Vt. May 8, 2023). Notably, both of the complaints filed by plaintiff challenge the constitutionality of New York State's election laws,[3] and his claims derive from his "run to represent New York State's 21st Congressional District" in the upcoming November 2024 general election. Compl. I at 3; Compl. II at 5.[4] Thus, "[c]onsolidating these actions will avoid 'unnecessary repetition and confusion.' " Royal v. Shulkin, No. 1:17-CV-1251 (GTS/CFH), 2018 WL 1229701, at *1 (N.D.N.Y. Jan. 5, 2018) (quoting Miller v. U.S. Postal Serv., 729 F.2d 1033, 1036 (5th Cir. 1984)), report and recommendation adopted, 2018 WL 1229822 (N.D.N.Y. Mar. 8, 2018); see Morales v. Pallito, No. 1:13-CV-141, 2013 WL 3148411, at *1 (D. Vt. June 19, 2013) ("[The plaintiff] is bringing the same claim against the same [d]efendant in both cases. [The defendant] has not yet been served and, consequently, there has been no responsive pleading and no discovery. The Court thus finds that the interests of justice will be best served by consolidation, as carrying these two actions forward as one enhances judicial economy, with no prejudice to any party.").

3 In Lewis I, plaintiff challenges the constitutionality of sections 6-132, 6-134, 6-136, 6-140, 6-142, and 6-158 of the New York Election Law. See generally Compl. I. In Lewis II, plaintiff challenges the constitutionality of section 16-102 of the New York Election Law. See generally Compl. II.

4 Citations are to the pagination generated by CM/ECF, located in the header of each page.

***3** Accordingly, it is recommended that these two cases be consolidated, with Lewis I as the lead case, and Lewis II as a member case.

## III. Initial Review

### A. Legal Standard

28 U.S.C. § 1915 directs that, when a plaintiff seeks to proceed IFP, "the court shall dismiss the case at any time if the court determines that ... the action or appeal (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief."[5] 28 U.S.C. § 1915(e)(2)(B).[6] "Thus, it is a court's responsibility to determine that a plaintiff may properly maintain his complaint before permitting him to proceed further with his action." Praileau v. Fischer, 930 F. Supp. 2d 383, 394 (N.D.N.Y. 2013).

5 " 'A case is malicious if it was filed with the intention or desire to harm another.' " Tafari v. Hues, 473 F.3d 440, 442 (2d Cir. 2007) (quoting Andrews v. King, 398 F.3d 1113, 1121 (9th Cir. 2005)). A case "is frivolous when it 'lacks an arguable basis either in law or in fact' " and "advances 'inarguable legal conclusion[s]' or 'fanciful factual allegation[s].' " Id. (quoting Neitzke v. Williams, 490 U.S. 319, 325 (1989)).

6 These requirements apply to non-prisoner pro se litigants. See N.D.N.Y. L.R. 72.3(d) ("Unless the Court orders otherwise, any civil action that a non-prisoner pro se litigant commences shall be referred to a Magistrate Judge for the purpose of review under 28 U.S.C. § 1915(e)(2) and 28 U.S.C. § 1915A when an application to proceed in forma pauperis is filed.").

Where, as here, the plaintiff proceeds pro se, "the court must construe his submissions liberally and interpret them to raise the strongest arguments that they suggest." Kirkland v. Cablevision Sys., 760 F.3d 223, 224 (2d Cir. 2014) (per curiam) (internal quotation marks omitted). As the Second Circuit stated,

> [t]here are many cases in which we have said that a pro se litigant is entitled to special solicitude, that a pro se litigant's submissions must be construed liberally, and that such submissions must be read to raise the strongest arguments that they suggest. At the same time, our cases have also indicated that we cannot read into pro se submissions claims that are not consistent with the pro se litigant's allegations, or arguments that the submissions themselves do not suggest, that we should not excuse frivolous or vexatious filings by pro se litigants, and that pro se status does not exempt a party from compliance with relevant rules of procedural and substantive law ....

Id. (internal quotation marks, citations, and footnote omitted); see also Sealed Plaintiff v. Sealed Defendant, 537 F.3d 185, 191 (2d Cir. 2008) ("On occasions too numerous to count, we have reminded district courts that when [a] plaintiff proceeds pro se, ... a court is obligated to construe his pleadings liberally.") (internal quotation marks and citations omitted).[7] Thus, the Court is not required to accept unsupported allegations that are devoid of sufficient facts or claims. Although detailed allegations are not required at the pleading stage, the complaint must still include enough facts to provide the defendants with notice of the

claims against them and the grounds upon which these claims are based. See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); see also Bell Atlantic v. Twombly, 550 U.S. 544, 555-56 (2007). Ultimately, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570; see Iqbal, 556 U.S. at 678 ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.").

7 The undersigned notes, however, that the Second Circuit has "occasionally endorsed some limited forms of this practice, and ha[s] suggested that it may be appropriate 'to charge a pro se litigant with knowledge of, and therefore withdraw special status in relation to, particular requirements [of the legal system] with which he is familiar as a result of his extensive prior experience in the courts.' " Tracy v. Freshwater, 623 F.3d 90, 101 (2d Cir. 2010) (quoting Sledge v. Kooi, 564 F.3d 105, 109 (2d Cir. 2009), and citing Davidson v. Flynn, 32 F.3d 27, 31 (2d Cir. 1994) (denying a pro se plaintiff an opportunity to replead on the ground that he was "an extremely litigious inmate who [wa]s quite familiar with the legal system and with pleading requirements")); see Shomo v. Furco, No. 18-CV-8523 (VB), 2020 WL 4194941, at *4 (S.D.N.Y. July 20, 2020) (determining that "the deference usually granted to pro se plaintiffs need not be expansively drawn in this case," given that the pro se plaintiff previously filed "at least ten lawsuits and appeals [and] was familiar with court procedure") (citations omitted).

***4** "The [Second Circuit]'s 'special solicitude' for pro se pleadings has its limits, because pro se pleadings still must comply with ... the Federal Rules of Civil Procedure." Kastner v. Tri State Eye, No. 19-CV-10668 (CM), 2019 WL 6841952, at *2 (S.D.N.Y. Dec. 13, 2019) (quoting Ruotolo v. IRS, 28 F.3d 6, 8 (2d Cir. 1994)).[8] Notably, Rule 8 provides that a pleading which sets forth a claim for relief shall contain, among other things, "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). "The purpose ... is to give fair notice of the claim being asserted so as to permit the adverse party the opportunity to file a responsive answer, prepare an adequate defense and determine whether the doctrine of res judicata is applicable." Flores v. Graphtex, 189 F.R.D. 54, 55 (N.D.N.Y. 1999) (internal quotation marks and citations omitted). Rule 8 also requires the pleading to include "(1) a short and plain statement of the grounds for the court's jurisdiction ... and (3) a demand for the relief sought ...." FED. R. CIV. P. 8(a). Although "[n]o technical form is required," the Federal Rules make clear that each allegation contained in the pleading "must be simple, concise, and direct." FED. R. CIV. P. 8(d).

8 All unpublished opinions cited in this Report-Recommendation and Order, unless otherwise noted, have been provided to plaintiff.

Further, Rule 10 provides in pertinent part that:

> [a] party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances. A later pleading may refer by number to a paragraph in an earlier pleading. If doing so would promote clarity, each claim founded on a separate transaction or occurrence—and each defense other than a denial—must be stated in a separate count or defense.

FED. R. CIV. P. 10(b). This serves the purpose of "provid[ing] an easy mode of identification for referring to a particular paragraph in a prior pleading[.]" Flores, 189 F.R.D. at 55 (internal quotation marks and citations omitted). A complaint that fails to comply with the pleading requirements "presents far too a heavy burden in terms of defendants' duty to shape a comprehensive defense and provides no meaningful basis for the Court to assess the sufficiency of their claims." Gonzales v. Wing, 167 F.R.D. 352, 355 (N.D.N.Y. 1996). As the Second Circuit has held, "[w]hen a complaint does not comply with the requirement that it be short and plain, the court has the power, on its own initiative ... to dismiss the complaint." Salahuddin v. Cuomo, 861 F.2d 40, 42 (2d Cir. 1988) (citations omitted). However, "[d]ismissal ... is usually reserved for those cases in which the complaint is so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised." Id. (citations omitted).

 © 2026 Thomson Reuters. No claim to original U.S. Government Works. 

### B. Plaintiff's Complaint

Plaintiff offers us a brief history lesson on the two-party political system in the United States. See Compl. I at 1-3. As relevant here, plaintiff claims that "[i]n New York State, Republican and Democrat lawmakers alike have created unconstitutional additional requirements in attempts to subvert an individual's Constitution[al] right to candidacy, such as [p]laintiff's, by drafting and passing laws with undue burdens, with the goal of preventing the emergence of any new or independent political party." Id. at 2, ¶4. Plaintiff complains that George Washington "warned of such a scenario," quoting Washington's September 17, 1796, farewell address. Id. at 2, ¶5. Plaintiff then reiterates that

> [election] laws in New York State ... [are] unconstitutional [and] continue to subvert the power of the people [because i]ndividuals who are not aligned with any political party and seeking access to the ballot, such as [p]laintiff, are subjected to a barrage of unconstitutional additional requirements which consequently create undue burdens and unfair circumstances to the would-be independent candidate.

Id. at 2, ¶6.

***5** Plaintiff asserts that he is "an individual over the age of twenty-five, a citizen of the United States for over seven years and a resident of New York State, thus qualified to be elected to Congress pursuant to the United States Constitution." Compl. I at 3, ¶8. Plaintiff "announced a run to represent New York State's 21st Congressional District on or around March 13, 2024." Id. at 3, ¶12. "Plaintiff began circulating an independent nominating petition on April 16, 2024."[9, 10] Id. at 3, ¶13. "The deadline to file three thousand five hundred (3,500) signatures for an independent nominating petition was May 28, 2024."[11] Id. at 4, ¶14. "Plaintiff filed approximately three thousand eight hundred twenty eight (3,828) signatures on May 28, 2024." Id. at 4, ¶15. Two individuals, including Margaret Bartley, the chair of the Essex County Democratic Committee, "filed general objections and specifications challenging the petition on various grounds." Compl. II at 56-59. After conducting a prima facie examination of the petition, the New York State Board of Elections "invalidated [p]laintiff's independent nominating petition on or around June 13, 2024, claiming [p]laintiff only submitted three thousand four hundred ninety three (3,493) signatures, leaving [p]laintiff seven (7) signatures short of the unconstitutional requirement." Compl. I at 4, ¶16; see Compl. II at 2, ¶10, 59.

9 Plaintiff claims that "[t]hose running for a political party [were] able to circulate petitions from February 27, 2024 until April 4, 2024," but "[i]ndependent petitions were circulated between April 16, 2024 and May 28, 2024." Compl. I at 5, ¶¶24-25.

10 Plaintiff alleges that he "was unlawfully evicted on or around May 10, 2024." Compl. I at 5, ¶30. Plaintiff does not specify what he means by "unlawfully evicted," or otherwise explain how this relates to the instant action. Id.

11 Plaintiff contends that "petitions for political parties have a filing deadline of Thursday, April 4, 2024 while independent nominating petitions have a deadline of Tuesday, May 28, 2024." Compl. I at 7, ¶37.

On June 13, 2024, "[p]laintiff filed a lawsuit in the Albany County Supreme Court challenging [the New York State Board of Elections'] determination." Compl. I at 4, ¶17; see Compl. II at 2, ¶11. Specifically, plaintiff "filed a proposed order to show cause and petition commencing [a special] proceeding pursuant to Election Law § 6-102 seeking to validate his petition." Compl. II at 59. After plaintiff filed multiple amended petitions, "Honorable Christina L. Ryba signed an order to show cause on June 17, 2024 permitting service by overnight mailing on or before June 19, 2024." Id. at 2, ¶12. "Plaintiff served all parties via overnight mailing by June 19, 2024." Id. at 3, ¶13. However, Ms. Bartley and Paula Collins, plaintiff's political opponent in the upcoming election, "had refused 'actual delivery' of the overnight mailing." Id. at 3, ¶15. "Oral arguments were heard on June 28, 2024[,]" when plaintiff explained "that service was completed timely and thus, the special proceeding was initiated

timely."[12] Id. at 3, ¶¶15-16. However, Ms. Bartley argued that the proceeding should be dismissed as untimely because, under N.Y. Elec. Law § 16-102, plaintiff needed to serve all parties by June 18, 2024, and he failed to do so. See id. at 58-61. Following oral arguments, on July 3, 2024, Hon. Ryba dismissed the proceeding as untimely. See Compl. II. at 58-62.

12 However, in Lewis I, plaintiff claims the hearing took place "on or around June 11, 2024." Compl. I at 6, ¶32.

Plaintiff now seeks to "challeng[e] the constitutionality of New York State's election laws[,]" including (1) "§ 6-136 and § 6-142, which dictate the number of signatures required for nominating petitions"; (2) "§ 6-158 which mandates the deadlines imposed for filing nominating petitions"; (3) "§ 6-134 which outlines the rules for nominating petitions"; (4) "§ 6-132 and 6-140, laws governing the required form of nominating petitions"; and (5) "16-102 which dictate[s] the institution of a special proceeding." Compl. I at 1 (citing N.Y. ELEC. LAW §§ 6-132, 6-134, 6-136, 6-140, 6-142, 6-158); Compl. II at 1 (citing N.Y. ELEC. LAW § 16-102). Plaintiff alleges that these laws violate "the First and Fourteenth Amendment of the United States Constitution" and he "requests this court to issue declaratory and injunctive relief preventing the New York State Board of Elections ... from enforcing restrictive and unconstitutional laws and ordering [p]laintiff's name on the ballot for the 2024 general election." Compl. I at 3, ¶7; see Compl. II at 1.

## C. Analysis

***6** Liberally construing plaintiff's complaint, he brings claims under 42 U.S.C. § 1983 against the New York State Board of Elections,[13] alleging violations of his First and Fourteenth Amendment rights.[14] See Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 475 (2d Cir. 2006) ("This policy of liberally construing pro se submissions is driven by the understanding that '[i]mplicit in the right of self-representation is an obligation on the part of the court to make reasonable allowances to protect pro se litigants from inadvertent forfeiture of important rights because of their lack of legal training.' ") (quoting Traguth v. Zuck, 710 F.2d 90, 95 (2d Cir. 1983)); cf. Tracy v. Freshwater, 623 F.3d 90, 101-02 (2d Cir. 2010) ("The solicitude afforded to pro se litigants ... most often consists of liberal construction of pleadings, ... [however,] the degree of solicitude may be lessened where the particular pro se litigant is experienced in litigation and familiar with the procedural setting presented.").

13 "Under New York law, the [New York State Board of Elections] is responsible for, the execution and enforcement of ... statutes governing campaigns, elections and related procedures." Schulz v. Williams, 44 F.3d 48, 61 n.13 (2d Cir. 1994) (citing N.Y. ELEC. LAW § 3-104).

14 Although plaintiff refers to various individuals throughout Compl. I and Compl. II, including Ms. Bartley and Ms. Collins, he does not appear to pursue any claims against them in these actions, as he has made clear that he is solely "challenging the constitutionality of New York State's election laws." Compl. I at 1; Compl. II at 1. Moreover, as indicated previously, plaintiff appears to be an experienced litigator. See supra note 1, 7. Earlier this year, the undersigned reviewed a separate complaint filed by plaintiff in a separate action, and added parties that were mentioned in the complaint but not specifically identified in the "parties" section, in efforts to liberally construe plaintiff's submissions and interpret them to raise the strongest arguments that they suggest. See Lewis v. Franklin Cnty., 8:23-CV-01647 (DNH/CFH) (N.D.N.Y. filed Dec. 28, 2023), Dkt. No. 10. Plaintiff was extremely unappreciative of this, as he "explicitly object[ed] to the addition of parties," claimed that the undersigned's actions were "improper," and argued that he correctly pleaded the proper parties in the "parties" section of his complaint. Id., Dkt. No. 13 at 1-2. Thus, because the only party identified in the "parties" section of Compl. I and II is the New York State Board of Elections, and given plaintiff's litigation history, it appears that he does not intend to pursue claims against any other parties. See generally Compl. I, Compl. II. In any event, plaintiff's claims regarding Ms. Bartley and Ms. Collins "amount to nothing more than a rant more fitting of an editorial than a legal pleading." Dillon v. Bush, No. 3:05-CV-188 (LAC/MD), 2005 WL 8163072, at *5 (N.D. Fla. Aug. 12, 2005).

The Eleventh Amendment to the United States Constitution states that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. CONST. AMEND. XI. Thus, "[a]s a general rule, state governments and their agencies may not be sued in federal court unless they have waived their Eleventh Amendment immunity or there has been a valid abrogation of that immunity by Congress." Kisembo v. N.Y.S. Off. of Child. & Fam. Servs., 285 F. Supp. 3d 509, 519 (N.D.N.Y. 2018) (quoting Jackson v. Battaglia, 63 F. Supp. 3d 214, 219-20 (N.D.N.Y. 2014)); see Garcia v. Paylock, No. 13-CV-2868 (KAM), 2014 WL 298593, at *3 (E.D.N.Y. Jan. 28, 2014) ("Plaintiff's equal protection claims also may not be brought directly under the Fourteenth Amendment because the State has not waived its immunity or had that immunity abrogated pursuant to that constitutional amendment.") (citation omitted). "This jurisdictional bar applies regardless of the nature of the relief sought." Murawski v. N.Y. State Bd. of Elections, 285 F. Supp. 3d 691, 695 (S.D.N.Y. 2018) (quoting Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 100 (1984)); see Torres v. Off. of Adult Prob., No. 3:22-CV-00883 (SALM), 2023 WL 3259781, at *4 (D. Conn. May 4, 2023) (explaining that, although the plaintiff may bring a claim for injunctive relief against individual state officials, the plaintiff may not bring such a claim against the state itself or its agencies) (citing Off. of Consumer Couns. v. S. New Eng. Tel. Co., 502 F. Supp. 2d 277, 291 (D. Conn. 2007)).

***7** " '[T]he immunity recognized by the Eleventh Amendment extends beyond the states themselves to state agents and state instrumentalities that are, effectively, arms of a state.' " Gollomp v. Spitzer, 568 F.3d 355, 366 (2d Cir. 2009) (quoting Woods v. Rondout Valley Cent. Sch. Dist. Bd. of Educ., 466 F.3d 232, 236 (2d Cir. 2006)); see Marino v. City Univ. of New York, 18 F. Supp. 3d 320, 329 (E.D.N.Y. 2014) (explaining that sovereign immunity bars "direct constitutional claim[s] brought directly against a state entity") (citing Santiago v. N.Y. State Dep't of Corr. Servs., 945 F.2d 25, 30-32 (2d Cir. 1991)); see also Rubin v. N.Y. State Dep't of Motor Vehicles, No. 10-CV-4119 (NGG), 2010 WL 3842011, at *1 (E.D.N.Y. Sept. 28, 2010) ("The Eleventh Amendment bars suits against states, their agencies whether the [p]laintiff seeks relief at law or in equity, absent the state's consent to suit or an express or statutory waiver of immunity.") (citing Pennhurst State School & Hosp., 465 U.S. at 99-102). "[T]he Board of Elections is a state agency for the purposes of the Eleventh Amendment[.]" Credico v. N.Y. State Bd. of Elections, 751 F. Supp. 2d 417, 420 (E.D.N.Y. 2010) (citing McMillan v. N.Y. State Bd. of Elections, No. 10-CV-2502 (JG/VVP), 2010 WL 4065434, at *3 (E.D.N.Y. Oct. 15, 2010), aff'd, 449 F. App'x 79 (2d Cir. 2011) (summary order)); see Murawski, 285 F. Supp. 3d at 696 (collecting cases); see also Tiraco v. N.Y. State Bd. of Elections, 963 F. Supp. 2d 184, 191 n.7 (E.D.N.Y. 2013) ("It is undisputed that the State Board [of Elections], a New York state executive agency, is an 'arm of the state' entitled to sovereign immunity.") (citations omitted). Specifically, "common sense and the rationale of the [E]leventh [A]mendment require that sovereign immunity attach" to the New York State Board of Elections. Hess v. Port Auth. Trans-Hudson Corp., 513 U.S. 30, 50 (1994).

"There are three limited exceptions to state sovereign immunity." Tiraco, 963 F. Supp. 2d at 191. "First, a state may waive its sovereign immunity by consenting to suit in federal court." Id. at 191-92 (citing Iwachiw v. N.Y.C. Bd. of Elections, 217 F. Supp. 2d 374, 379 (E.D.N.Y. 2002), aff'd, 126 F. App'x 27 (2d Cir. 2005) (summary order)) (additional citation omitted). "Second, Congress may abrogate state sovereign immunity by acting pursuant to a grant of constitutional authority." Leibovitz v. Barry, No. 15-CV-1722 (KAM), 2016 WL 5107064, at *5 (E.D.N.Y. Sept. 20, 2016) (citing Kimel v. Fl. Bd. of Regents, 528 U.S. 62, 80 (2000)). "Third, under the Ex parte Young doctrine, sovereign immunity does not preclude a plaintiff from seeking prospective injunctive relief or declaratory relief against a state official acting in his or her official capacity for ongoing violations of federal law." Tiraco, 963 F. Supp. 2d at 192 (citing State Emps. Bargaining Agent Coal. v. Rowland, 494 F.3d 71, 95 (2d Cir. 2007)); see Anghel v. N.Y. State Dep't of Health, 947 F. Supp. 2d 284, 298 (E.D.N.Y. 2013) ("[T]he doctrine of Ex Parte Young, ... 'allows a suit for injunctive [or declaratory] relief challenging the constitutionality of a state official's actions in enforcing state law.' ") (quoting CSX Transp., Inc. v. N.Y. State Off. of Real Prop. Servs., 306 F.3d 87, 98 (2d Cir. 2002)), aff'd, 589 F. App'x 28 (2d Cir. 2015) (summary order).

However, none of these exceptions apply here. First, New York has not expressly waived its sovereign immunity with respect to the claims asserted in plaintiff's complaints. See Edelman v. Jordan, 415 U.S. 651, 673 (1974) ("[W]e will find waiver only where stated 'by the most express language or by such overwhelming implications from the text as (will) leave no room for any other reasonable construction.' ") (quoting Murray v. Wilson Distilling Co., 213 U.S. 151, 171 (1909)). "It is well-established

that New York has not consented to § 1983 lawsuits in federal court[.]" Mamot v. Bd. of Regents, 367 F. App'x 191, 192 (2d Cir. 2010) (summary order) (citation omitted); see Iwachiw, 217 F. Supp. 2d at 379-80 ("New York State has not waived its Eleventh Amendment [immunity] in claims involving write-in candidates in United States Senatorial Primaries[.]"); see also Dekom v. New York, No. 12-CV-1318 (JS/ARL), 2013 WL 3095010, at *10 (E.D.N.Y. June 18, 2013) (dismissing § 1983 claims against the New York State Board of Elections on Eleventh Amendment immunity grounds), aff'd, 583 F. App'x 15 (2d Cir. 2014) (summary order).

***8** Second, Congress has not "abrogated New York's sovereign immunity from suit by acting pursuant to a grant of constitutional authority." Tiraco, 963 F. Supp. 2d at 192. Indeed, 42 U.S.C. § 1983 does not override New York's sovereign immunity. See Mayo v. Doe, 480 F. Supp. 3d 395, 402 (D. Conn. 2020) ("Section 1983 does not abrogate state sovereign immunity") (citing Quern v. Jordan, 440 U.S. 332, 342 (1979)); see also Sierotowicz v. N.Y. Div. of Hous. & Cmty. Renewal, No. 04-CV-3886 (NGG/LB), 2005 WL 1397950, at *1 (E.D.N.Y. June 14, 2005) (holding that 42 U.S.C. § 1983 does not override New York's Eleventh Amendment sovereign immunity).

Third, the Ex Parte Young doctrine does not appear to salvage plaintiff's claims for injunctive and declaratory relief against the New York State Board of Elections. See Tiraco, 963 F. Supp. 2d at 192; see Ex parte Young, 209 U.S. 123 (1908). Indeed, plaintiff "does not follow the requirement, established in Ex Parte Young, that a plaintiff seeking prospective relief from the state must name as defendant a state official rather than the state or a state agency directly." Santiago, 945 F.2d at 32 (citing Pennhurst State Sch. & Hosp., 465 U.S. at 102); see Melrose v. N.Y. State Dep't of Health Off. of Pro. Med. Conduct, No. 05-CV-8778 (SCR/LMS), 2009 WL 211029, at *5 (S.D.N.Y. Jan. 26, 2009) ("[T]he Second Circuit still requires that state officers be named in order for the Ex Parte Young exception to apply.") (citations omitted); see also Harris v. N.Y. State Educ. Dep't, 419 F. Supp. 2d 530, 534 (S.D.N.Y. 2006) ("Actions for injunctive relief under the Ex parte Young exception to [sovereign immunity] constitute suits against state officials, not against the state or state agency itself.").

Specifically, although plaintiff seeks injunctive relief, he has only named the New York State Board of Elections and has failed to name any individual state official as a defendant. See Tiraco, 963 F. Supp. 2d at 192 (dismissing the plaintiff's claims asserted against the New York State Board of Elections based on sovereign immunity, notwithstanding that the plaintiff sought prospective injunctive and declaratory relief, because he "failed to name any state official as a defendant"); cf. Gallagher v. New York State Bd. of Elections, 477 F. Supp. 3d 19, 37 (S.D.N.Y. 2020) ("Plaintiffs' ... claims against the [New York State Board of Elections], therefore, are barred by sovereign immunity. But their federal claims against the [Board's] officers and Governor Cuomo ... are not barred.") (citations omitted); Cohen v. Richardson, No. 1:23-CV-00224 (AMN/CFH), 2024 WL 418788, at *3 (N.D.N.Y. Feb. 5, 2024) (concluding that the Eleventh Amendment did not bar the plaintiff's suit, where the plaintiff "only [sought] declaratory and prospective injunctive relief" against named individuals employed by the New York State Board of Elections) (citing Cecos Int'l, Inc. v. Jorling, 706 F. Supp. 1006, 1024 (N.D.N.Y. 1989) ("[T]he [E]leventh [A]mendment does not forbid federal courts from granting injunctive relief against a state official acting contrary to the United States Constitution."), aff'd, 895 F.2d 66 (2d Cir. 1990)), reconsideration denied, 2024 WL 3653801 (N.D.N.Y. Aug. 5, 2024).

Consequently, the New York State Board of Elections is entitled to sovereign immunity. See Yang v. Kellner, 458 F. Supp. 3d 199, 208 (S.D.N.Y.) ("Because New York has not consented to be sued, and because Congress has not enacted legislation abrogating New York's Eleventh Amendment immunity with regard to [the p]laintiffs' ... causes of action, the claims against the [Board of Elections] as a state agency are barred by sovereign immunity."), aff'd sub nom. Yang v. Kosinski, 960 F.3d 119 (2d Cir. 2020); see also McMillan, 449 F. App'x at 80 (affirming dismissal of the plaintiff's claims against the New York State Board of Elections as barred by the Eleventh Amendment); Ulanov v. N.Y. State Bd. of Elections, No. 22-CV-193 (AMD/LB), 2022 WL 173112, at *2 (E.D.N.Y. Jan. 19, 2022) ("Accordingly, the New York State Board of Elections is immune from suit, and the plaintiff's claims against it must be dismissed."), reconsideration denied, 2022 WL 767865 (E.D.N.Y. Mar. 14, 2022).

***9** "The undersigned notes that a dismissal based on the doctrine of sovereign immunity, is consequently a dismissal for lack of subject matter jurisdiction." Griffith v. New York State, No. 5:23-CV-1266 (DNH/ML), 2024 WL 1641587, at *5 n.4 (N.D.N.Y. Mar. 20, 2024) (citing Crumble v. United States, No. 1:23-CV-4427 (LTS), 2023 WL 5102907, at *7 (S.D.N.Y. Aug.

 © 2026 Thomson Reuters. No claim to original U.S. Government Works. 

7, 2023), and Nguyen v. Kijakazi, No. 20-CV-0607 (MKB), 2022 WL 542265, at *8 (E.D.N.Y. Feb. 23, 2022)), report and recommendation adopted, 2024 WL 1639856 (N.D.N.Y. Apr. 16, 2024); see Wang v. Delphin-Rittmon, 664 F. Supp. 3d 205, 217 (D. Conn. 2023) ("[S]overeign immunity strips the court of jurisdiction[.]") (citing Smith v. Scalia, 44 F. Supp. 3d 28, 40 n.10 (D.D.C. 2014), aff'd, 2015 WL 13710107 (D.C. Cir. 2015)); see Iwachiw, 217 F. Supp. 2d at 383 (dismissing the plaintiff's section 1983 action against the New York State Board of Elections for lack of subject matter jurisdiction under the Eleventh Amendment, noting "[t]he Eleventh Amendment is an explicit limitation on federal jurisdiction") (internal quotation marks and citations omitted). Thus, it is recommended that plaintiff's claims against the New York State Board of Elections be dismissed without prejudice for lack of subject matter jurisdiction. See Abadi v. City of New York, 22-CV-1560, 2023 WL 3295949, at *3 n.3 (2d Cir. May 8, 2023) (summary order) ("Because the Court lacks subject matter jurisdiction ... the amended complaint should be dismissed without prejudice.") (citing Katz v. Donna Karan Co., L.L.C., 872 F.3d 114, 116 (2d Cir. 2017) ("[A] complaint must be dismissed without prejudice where the dismissal is due to the court's lack of subject matter jurisdiction[.]")).

## IV. Leave to Amend

Generally, "[a] pro se complaint should not be dismissed without the Court granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." Nielsen v. Rabin, 746 F.3d 58, 62 (2d Cir. 2014) (citation omitted). "However, if the problems with a complaint are 'substantive' rather than the result of an 'inadequately or inartfully pleaded' complaint, an opportunity to re-plead would be 'futile' and 'should be denied.' " Edwards v. Penix, 388 F. Supp. 3d 135, 144-45 (N.D.N.Y. 2019) (quoting Cuoco v. Moritsugu, 222 F.3d 99, 112 (2d Cir. 2000)).

Here, it is not an entirely foregone conclusion that plaintiff could amend his complaint to state a claim. See Meyers v. Becker, No. 1:23-CV-173 (DNH/CFH), 2023 WL 3079611, at *6 (N.D.N.Y. Apr. 5, 2023), report and recommendation adopted, 2023 WL 3073495 (N.D.N.Y. Apr. 25, 2023); see also Stiegman v. New York State Off. of Info. Tech. Servs., No. 1:19-CV-18 (GTS/CFH), 2019 WL 1762900, at *5 (N.D.N.Y. Apr. 22, 2019) (dismissing the plaintiff's claims against a New York state agency as barred by sovereign immunity, but granting the plaintiff leave to amend should the plaintiff wish to name an individual state official pursuant to the Ex Parte Young exception), report and recommendation adopted, 2019 WL 4727444 (N.D.N.Y. Sept. 27, 2019). Thus, it is recommended that plaintiff's complaint be dismissed without prejudice and with leave to amend should plaintiff wish to name a proper party or plead a proper claim. [15]

15 Any amended pleading supersedes and replaces a prior pleading in its entirety. In the event the District Judge adopts the undersigned's recommendation and plaintiff amends his complaint, plaintiff is advised that any amended pleading cannot incorporate a prior pleading by reference. See, e.g., Anthony v. Fein, Such & Crane, LLC, No. 5:15-CV-00452 (DNH/TWD), 2015 WL 7749894, at *5 (N.D.N.Y. Sept. 22, 2015) ("[I]n the event Plaintiff is granted leave to amend, he be instructed that the amended complaint will take the place of and effectively invalidate Plaintiff's second amended complaint"), report and recommendation adopted, 2015 WL 7738048 (N.D.N.Y. Dec. 1, 2015). Further, an amended complaint may not replead any claims or defendants dismissed by this Court with prejudice. An amended pleading must establish this Court's jurisdiction and state a claim for relief against each named defendant for which leave to replead was granted according to Rules 8 and 10 of the Federal Rules of Civil Procedure.

## V. Conclusion

***10 WHEREFORE**, for the reasons set forth herein, it is hereby

**ORDERED**, that plaintiff's application for leave to proceed in forma pauperis (Dkt. No. 2) is **GRANTED**; and it is further

**RECOMMENDED**, that plaintiff's claims against the New York State Board of Elections be **DISMISSED WITHOUT PREJUDICE and WITH LEAVE TO AMEND**; and it is

**RECOMMENDED**, that this matter (8:24-CV-00849, "Lewis I") be **CONSOLIDATED** with 8:24-CV-01036 ("Lewis II"), with the lead case being 8:24-CV-00849, and the member case being 8:24-CV-01036; and it is further

**RECOMMENDED**, that, if consolidation is granted, this Report-Recommendation and Order be docketed and served in all cases, with future filings to be docketed in only the lead case; and it is

**RECOMMENDED**, that, if the District Judge adopts this Report-Recommendation and Order, plaintiff be given thirty (30) days from the date of the Order adopting this Report-Recommendation and Order to file an amended complaint, and if plaintiff does not file an amended complaint within that time frame, the case be closed without further order by the Court; and it is

**ORDERED**, that the Clerk serve a copy of this Report-Recommendation and Order in accordance with Local Rules.

**IT IS SO ORDERED**.

Pursuant to 28 U.S.C. § 636(b)(1), plaintiff has **FOURTEEN (14)** days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW**. Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993) (citing Small v. Sec'y of Health and Human Servs., 892 F.2d 15 (2d Cir. 1989)); see also 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 6(a), 72.[16]

16 If you are proceeding pro se and are served with this Report-Recommendation and Order by mail, three (3) additional days will be added to the fourteen (14) day period, meaning that you have seventeen (17) days from the date the Report-Recommendation and Order was mailed to you to serve and file objections. FED. R. CIV. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. Id. § 6(a)(1)(c).

**All Citations**

Not Reported in Fed. Supp., 2024 WL 4910561

**End of Document** © 2026 Thomson Reuters. No claim to original U.S. Government Works.

2024 WL 1016392
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Willie Thomas GOSIER, Plaintiff,
v.
David J. COLLINS, et al., Defendants.

6:23-cv-1485 (DNH/TWD)
|
Signed March 8, 2024

**Attorneys and Law Firms**

WILLIE THOMAS GOSIER, Plaintiff, pro se, 22-B-2574, Elmira Correctional Facility, P.O. Box 500, Elmira, NY 14902.

## ORDER AND REPORT-RECOMMENDATION

THÉRÈSE WILEY DANCKS, United States Magistrate Judge

### I. INTRODUCTION

***1** The Clerk has sent to the Court for review a *pro se* civil rights complaint filed by Willie Thomas Gosier ("Plaintiff") pursuant to 42 U.S.C. § 1983 ("Section 1983"), asserting claims arising out of June 11, 2023, traffic stop in Rome, New York. (Dkt. No. 1.) Plaintiff has not paid the filing fee for this action and seeks leave to proceed *in forma pauperis* ("IFP"). (Dkt. No. 2.)

### II. IFP APPLICATION

"28 U.S.C. § 1915 permits an indigent litigant to commence an action in a federal court without prepayment of the filing fee that would ordinarily be charged." *Cash v. Bernstein*, No. 09-CV-1922, 2010 WL 5185047, at *1 (S.D.N.Y. Oct. 26, 2010). "Although an indigent, incarcerated individual need not prepay the filing fee at the time of filing, he must subsequently pay the fee, to the extent he is able to do so, through periodic withdrawals from his inmate accounts." *Id.* (citing 28 U.S.C. § 1915(b) and *Harris v. City of New York*, 607 F.3d 18, 21 (2d Cir. 2010)).

At the time Plaintiff commenced this action, he was an inmate at the Oneida County Correctional Facility. (Dkt. Nos. 1, 2.) Section 1915(g) prohibits a prisoner from proceeding IFP where, absent a showing of "imminent danger of serious physical injury," a prisoner has filed three or more actions that were subsequently dismissed as frivolous, malicious, or failing to state a claim upon which relief may be granted. *See* 28 U.S.C. § 1915(g). The Court has reviewed Plaintiff's litigation history on the Federal Judiciary's Public Access to Court Electronic Records ("PACER") Service. [1] Based on that review, it does not appear Plaintiff had acquired three strikes for purposes of Section 1915(g) as of the date this action was commenced. [2]

1 *See* http://pacer.uspci.uscourts.gov (last visited Mar. 8, 2024).

2 *See Gosier v. Oneida Cnty. District Atty's Office*, No. 6:23-cv-01118 (DNH/TWD) (N.D.N.Y. filed on Sept. 1, 2023; closed on Nov. 2, 2023) ("*Gosier I*"); *Gosier v. Utica Police Dep't*, No. 6:23-cv-01119 (DNH/TWD) (N.D.N.Y. filed on Sept. 1, 2023) ("*Gosier II*"); *Gosier v. Oneida Cnty. Corr. Fac.*, No. 9:23-cv-01134 (DNH/CFH) (N.D.N.Y. filed on Sept. 5, 2023) ("*Gosier III*"); *Gosier v. Paolozzi*, No. 9:23-cv-01135 (GTS/TWD) (N.D.N.Y. filed on Sept. 5, 2023;

 © 2026 Thomson Reuters. No claim to original U.S. Government Works. 

closed on Jan. 30, 2024) ("*Gosier IV*"). The Court notes *Gosier I* and *Gosier IV* were *sua sponte* dismissed on initial review and Plaintiff has been granted leave to file amended complaints in *Gosier II* and *Gosier III*.

Upon review of Plaintiff's IFP application, the Court finds Plaintiff has demonstrated sufficient economic need and filed the inmate authorization form required in this District. (Dkt. Nos. 2, 3.) Accordingly, Plaintiff's IFP application is granted. [3]

3 "Although an indigent, incarcerated individual need not prepay the filing fee at the time ... of filing, he must subsequently pay the fee, to the extent he is able to do so, through periodic withdrawals from his inmate accounts." *Cash*, 2010 WL 5185047, at *1 (citing 28 U.S.C. § 1915(b); *Harris v. City of New York*, 607 F.3d 18, 21 (2d Cir. 2010)). Plaintiff should also note that although his motion to proceed IFP has been granted, he will still be required to pay fees that he may incur in this action, including copying and/or witness fees.

## III. SUFFICENCY OF THE COMPLAINT

### A. Standard of Review

***2** Having found Plaintiff meets the financial criteria for commencing this action IFP, and because Plaintiff seeks relief from an officer or employee of a governmental entity, the Court must consider the sufficiency of the allegations set forth in the complaint in light of 28 U.S.C. §§ 1915(e) and 1915A. Section 1915(e) of Title 28 of the United States Code directs that, when a plaintiff seeks to proceed IFP, "the court shall dismiss the case at any time if the court determines that ... (B) the action ... (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). [4]

4 To determine whether an action is frivolous, a court must look to see whether the complaint "lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).

Similarly, under 28 U.S.C. § 1915A, a court must review any "complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity" and must "identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint ... is frivolous, malicious, or fails to state a claim upon which relief may be granted; or ... seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b); *see also Carr v. Dvorin*, 171 F.3d 115, 116 (2d Cir. 1999) (per curiam) (noting Section 1915A applies to all actions brought by prisoners against government officials even when plaintiff paid the filing fee).

Additionally, when reviewing a complaint, the Court looks to the Federal Rules of Civil Procedure. Rule 8 provides that a pleading which sets forth a claim for relief shall contain, *inter alia*, "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Rule 10 provides in pertinent part that: "[a] party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances." Fed. R. Civ. P. 10(b). Rule 10's purpose is to "provide an easy mode of identification for referring to a particular paragraph in a prior pleading[.]" *Clervrain v. Robbins*, No. 22-CV-1248 (MAD/DJS), 2022 WL 17517312, at *2 (N.D.N.Y. Dec. 8, 2022) (citation omitted), *report and recommendation adopted*, 2023 WL 3170384 (N.D.N.Y. May 1, 2023). A complaint that does not comply with these Rules "presents far too heavy a burden in terms of defendants' duty to shape a comprehensive defense and provides no meaningful basis for the Court to assess the sufficiency of [the plaintiff's] claims," and may properly be dismissed by the Court. *Gonzales v. Wing*, 167 F.R.D. 352, 355 (N.D.N.Y. 1996).

A court should not dismiss a complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While the court should construe the factual allegations in the light most favorable to the plaintiff, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing

 © 2026 Thomson Reuters. No claim to original U.S. Government Works. 

*Twombly*, 550 U.S. at 555). Thus, a pleading that contains only allegations which "are so vague as to fail to give the defendants adequate notice of the claims against them" is subject to dismissal. *Sheehy v. Brown*, 335 F. App'x 102, 104 (2d Cir. 2009).

**B. Background**

***3** The complaint in this action, brought against defendants David J. Collins, Chief of Police of the Rome Police Department, and two unknown police officers, consists of two form complaints—one on the form complaint for civil rights violations pursuant to 42 U.S.C. § 1983 and one on the form complaint for *pro se* prisoner complaints—and four attached narrative pages. (Dkt. No. 1.) The narrative section spans five handwritten pages and is essentially one paragraph with limited punctuation. *See id.* at 8-13.[5] The Court will construe the allegations in the complaint with the utmost leniency. *See Haines v. Kerner*, 404 U.S. 519, 520 (1972) (holding that a *pro se* litigant's complaint is to be held "to less stringent standards than formal pleadings drafted by lawyers"). The following facts are taken from Plaintiff's complaint.

5 The Court will refer to the CM/ECF pagination when citing to the complaint. Unless otherwise indicated, excerpts from the complaint are reproduced exactly as they appear in the original and errors in spelling, punctuation, and grammar have not been corrected.

On June 11, 2023, between the hours of 6:00 a.m. and 5:00 p.m., Plaintiff was "stopped" by Rome Police Officers "John Doee and John Doee" (the "defendant police officers") in the City of Rome for "speeding" near the Colonial Laundromat. *Id.* at 8. The defendant police officers claimed Plaintiff was going "50 in a 30 zone." *Id.* But Plaintiff "was only doing 35 in a 30 zone which is legal." *Id.* Plaintiff believes he was "targeted and labeled" because he is a young "black mixed person." *Id.* at 11. Plaintiff claims when a "person of color" has "valuable things" like a car, "they ... label you as a drug dealer or a person who conduct's crime." *Id.*

During the traffic stop, the defendant police officers "searched" Plaintiff's name, told Plaintiff he "was under suspention," and instructed him to "get out of [the] car." *Id.* at 8. Plaintiff was "unlawfully" handcuffed, and the defendant police officers conducted a "patdown search" and "searched" the car. *Id.* He was "placed" in the back of the patrol car and "witntnessed" the defendant police officers "pull" his female friend out of the car. *Id.* at 8-9. While holding her arms, "one officer pulled her pant's/panties a way from her body" and "the other reached into her pant's/panties and pulled some thing out completely illegal search." *Id.* at 9. They then took Plaintiff's "book bag's out of the car and trunk 1 book bag was her's with personal paper's, document's item's and looked thru it all[.]" *Id.* "They even took our cell phones" and "searched thru them with no warrent." *Id.* "Still to this date have not gotten my property back none of it they impounded my car.[6] *Id.*

6 Plaintiff was able to "get" his car "out" but it "cost me a lot" on a Sunday. (Dkt. No. 1 at 9.) But when he picked up his car, he "had a flat tire and a dent on the passenger side .. [and] had to pay to get inside of car done due to coffiee being spilt on ... swade seats and glitter being all over." *Id.*

Plaintiff claims "driving under a suspention is a misdemeaner and dose not justify handcuffing or conducting a pat down search." *Id.* at 12. "It was a complete unlawful stop and all evidence need's to be suppressed." *Id.*

When Plaintiff "arrived at RPD" on June 11, 2023, the "RPD" did not read Plaintiff his *Miranda* rights, and he was "interrogated" without a lawyer being present and without being told he could have a lawyer. *Id.* at 9-12. "They" asked him questions like, "why was i in Rome what was i doing where did i go in rome why how long ect." *Id.* at 12.

A "couple" of months later, Plaintiff was "charged with what they found in her pant's/panties." *Id.* at 9. On July 15, 2023, he also was "charged with criminal possession of weapon 2nd: loaded firearm-other than person's home/business which charge is still pending against me till this day." *Id.* at 9-10.

***4** Plaintiff alleges the "Rome Police Officers and Chief of Police all took part in such conduct and letting such conduct commence" and violated his constitutional rights. *Id.* at 10. Plaintiff claims "they" had "no ground's to pull me over" and the

defendant police officers "should have had a female cop come and conduct that search" of his female friend. *Id.* at 9. "But even so it would still have been unlawful due to them not having probable cause to search me, my car, or my friend what so ever." *Id.* According to Plaintiff, "it is 100% legal" to drive "35 in a 30 zone" therefore, the stop was "1000% not a valid traffic stop at all" and that he "did not [break] any traffic violations or rule/law's." *Id.* at 10. Plaintiff further claims "it is said in supreme and other higher courts that you do not need a license to drive a car, SUV, truck in the United States ... it is protected by my con. Amendment right travel 4 th , 5 th amendment rights's." *Id.*

In his prayer for relief, Plaintiff seeks $2,000,000 and "for the officer's to be charged and procicuted for act's and investigate RPD misconduct." *Id.* at 4,13.

### C. Nature of Action

Plaintiff seeks relief pursuant to 42 U.S.C. § 1983, which establishes a cause of action for " 'the deprivation of any rights, privileges, or immunities secured by the Constitution and laws' of the United States." *Wilder v. Virginia Hosp. Ass'n*, 496 U.S. 498, 508 (1990) (citations omitted); *see also Myers v. Wollowitz*, No. 95-CV-0272, 1995 WL 236245, at *2 (N.D.N.Y. Apr. 10, 1995) (finding that "§ 1983 is the vehicle by which individuals may seek redress for alleged violations of their constitutional rights").

"Section 1983 itself creates no substantive rights, [but] ... only a procedure for redress for the deprivation of rights established elsewhere." *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993). To establish liability against a government official under section 1983, "a plaintiff must plead and prove 'that each Government-official defendant, through the official's own individual actions, has violated the Constitution.' " *Tangreti v. Bachmann*, 983 F.3d 609, 618 (2d Cir. 2020) (quoting *Iqbal*, 556 U.S. at 676). Moreover, the theory of respondeat superior is not available in a section 1983 action. *See Hernandez v. Keane*, 341 F.3d 137, 144 (2d Cir. 2003). Instead, "[t]he violation must be established against the supervisory official directly." *Tangreti*, 983 F.3d at 618.

## IV. ANALYSIS

The Court construes the allegations in the complaint with the utmost leniency. *See, e.g.*, *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (holding that a *pro se* litigant's complaint is to be held "to less stringent standards than formal pleadings drafted by lawyers."). Upon review and for the reasons below, the Court finds Plaintiff's complaint fails to comply with the basic pleading requirements and fails to state a claim. Accordingly, the Court recommends dismissal of the complaint in its entirety pursuant to 28 U.S.C. §§ 1915(e)(2)(B), 1915A(b) for failure to state a claim.

### A. Rules 8 and 10

A complaint is subject to dismissal if its "form or substance prevents the defendant from forming a 'fair understanding' of the plaintiff's allegations or otherwise prejudices the defendant in responding to the complaint." *Ong v. Park Manor (Middletown Park) Rehab. & Healthcare Ctr.*, 51 F. Supp. 3d 319, 345 (S.D.N.Y. 2014). Ultimately, a complaint must give "fair notice" to the defendants. *See Simmons v. Abruzzo*, 49 F.3d 83, 86 (2d Cir. 1995) ("The function of pleadings under the Federal Rules is to give fair notice of the claims asserted." (internal quotation marks omitted)). Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678.

In this instance, Plaintiff's rambling complaint consists almost entirely of legal conclusions, rather than well-pleaded factual allegations. As explained in more detail below, Plaintiff's complaint does not comply with Rule 8 because Plaintiff does not make a short and plain statement showing that he is entitled to relief from the named defendants. Additionally, Plaintiff's complaint does not comply with Rule 10 because it lacks numbered paragraphs, each limited as far as practicable to a single set of circumstances.

### B. Official Capacity Claims

***5** Plaintiff's complaint does not specify whether he intends to bring claims against the named defendants in their individual or official capacities. “A claim asserted against an individual in his official capacity ... is in effect a claim against the governmental entity itself, rather than a suit against the individual personally, for ‘official-capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent.’ ” *Lore v. City of Syracuse*, 670 F.3d 127, 164 (2d Cir. 2012) (quoting *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 691 n.55 (1978)); *Bryant v. Maffucci*, 923 F.2d 979, 986 (2d Cir. 1991) (“In bringing suit against defendants in their official capacities, Bryant has effectively brought suit against the governmental unit that employs them, Westchester County[.]”). Thus, the Court considers whether Plaintiff has stated constitutional claims against the City of Rome, who is the real party in interest.

“A municipality is liable under section 1983 only if the deprivation of the plaintiff's rights under federal law is caused by a governmental custom, policy, or usage of the municipality.” *Matusick v. Erie Cnty. Water Auth.*, 757 F.3d 31, 62 (2d Cir. 2014) (citing *Monell*, 436 U.S. at 691). Thus, to hold a municipality liable under Section 1983 for the unconstitutional actions of its employees, “a plaintiff is required to plead and prove three elements: (1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right.” *Wray v. City of New York*, 490 F.3d 189, 195 (2d Cir. 2007) (quoting *Batista v. Rodriguez*, 702 F.2d 393, 397 (2d Cir. 1983)).

Here, Plaintiff's claim construed against the City of Rome appears to stem from an isolated instance of alleged unconstitutional conduct by the defendant police officers in the course of a traffic stop. Such an isolated act by a non-policymaking municipal employee is “generally not sufficient to demonstrate a municipal custom, policy, or usage that would justify liability.” *Matusick*, 757 F.3d 31 at 62 (2d Cir. 2014) (quoting *Jones v. Town of E. Haven*, 691 F.3d 72, 82 (2d Cir. 2012)). But such isolated instances would be a basis for municipal liability if they were done

> pursuant to municipal policy, or were sufficiently widespread and persistent to support a finding that they constituted a custom, policy, or usage of which supervisory authorities must have been aware, or if a municipal custom, policy, or usage would be inferred from evidence of deliberate indifference of supervisory officials to such abuses.

*Jones*, 691 F.3d at 81. The only factual allegations potentially bearing on any such basis for municipal liability are the allegations that Plaintiff is “being targeted” for being a “young and black mixed person of color.” (Dkt. No. 1 at 11.) Plaintiff states:

> i feel this is at most descrimination at it's finest and racel profiling. That's a huge violation of my con. Amendment right's. it's not okay or right one bit. Just because im a young black mixed person of color. it is not right that RPD get's a way with thing's like this all the time, nothing ever get's done about it. They do as they please and they find it okay to do such conduct's its completely not okay or right for such act's. This need's to change it's not right at all, right is right wrong is wrong.”

*Id.* at 12. The Court infers this is an allegation of racially motivated police conduct. Plaintiff also list “harassment” as a cause of action.[7] *Id.* at 13.

7 To the extent the complaint could be construed as asserting a verbal harassment claim, allegations of verbal harassment are insufficient to support a Section 1983 claim. *See Johnson v. Eggersdorf*, 8 F. App'x 140, 143 (2d Cir. 2001) (citing *Purcell v. Coughlin*, 790 F.2d 263, 265 (2d Cir. 1986) (“allegations of verbal harassment are insufficient to base a § 1983 claim if no specific injury is alleged”)); *Shabazz v. Pico*, 994 F. Supp. 460, 474 (S.D.N.Y. 1998) (holding that “verbal harassment or profanity alone, unaccompanied by any injury no matter how inappropriate, unprofessional,

or reprehensible it might seem, does not constitute the violation of any federally protected right and therefore is not actionable under 42 U.S.C. § 1983") (quotation omitted); *see also Rivera v. Goord*, 119 F. Supp. 2d 327, 342 (S.D.N.Y. 2000) (collecting cases).

***6** "The Second Circuit has admonished that courts should 'not condone racially motivated police behavior' and must 'take seriously an allegation of racial profiling.' " *Floyd v. City of New York*, 959 F. Supp. 2d 540, 660 (S.D.N.Y. 2013) (quoting *United States v. Davis*, 11 F. App'x 16, 18 (2d Cir. 2001)). In this case, however, Plaintiff's "general and conclusory" allegations are insufficient to establish any plausible claim of municipal liability. *Littlejohn v. City of New York*, 795 F.3d 297, 315 (2d Cir. 2015). Plaintiff alleges no other specific conduct by City of Rome officials, nor does he cite any other facts or circumstances in support of any claim that a policy of racial profiling or racial animus exists in the City. Moreover, insofar as the complaint may allege that employees of the Rome Police Department violated Plaintiff's constitutional rights, those allegations fail to state a claim against the City of Rome because a municipality may not be liable on the basis of respondeat superior. *See Monell*, 436 U.S. at 691.

Accordingly, it is recommended that Plaintiff's official capacity claims be dismissed pursuant to 28 U.S.C. §§ 1915(e)(2)(B), 1915A(b) for failure to state a claim. If Plaintiff intends to pursue claims against the City of Rome, he must name the City of Rome as a defendant in the list of parties and state facts suggesting that a City policy, custom, or practice caused the violation of his rights during or after the traffic stop.

### C. Individual Capacity Claims Against Defendant David J. Collins

It is well-settled that "[d]ismissal is appropriate where a defendant is listed in the caption, but the body of the complaint fails to indicate what the defendant did to the plaintiff." *Cipriani v. Buffardi*, No. 9:06-CV-889 (GTS/DRH), 2007 WL 607341, at *1 (N.D.N.Y. Feb. 20, 2007) (citing *Gonzalez v. City of New York*, No. 97-CV-2246, 1998 WL 382055, at *2 (S.D.N.Y. July 9, 1998)); *see also Crown v. Wagenstein*, No. 96-CV-3895, 1998 WL 118169, at *1 (S.D.N.Y. Mar. 16, 1998) (mere inclusion of warden's name in complaint insufficient to allege personal involvement); *Taylor v. City of New York*, 953 F. Supp. 95, 99 (S.D.N.Y. 1997) (same).

In this case, Plaintiff names David J. Collins as a defendant in the recitation of parties, but the complaint lacks any specific allegations of wrongdoing by this defendant. Rather, it appears Plaintiff has sued defendant Collins due to the supervisory position he holds. The only reference to defendant Collins in the body of the complaint is as follows, "Rome Police Officers and Chief of Police all took part in such conduct and letting such conduct commence violated my Con. Amendment right's 2nd, 4th, 5th, 14th. So i Willie T. Gosier's Jr's right's have been violated due to an illegal/unlawful stop they had no ground's to pull me over." (Dkt. No. 1 at 10.) Thus, the complaint does not include any plausible allegations of personal involvement by defendant Collins.

Accordingly, it is recommended that Plaintiff's Section 1983 claims against defendant Collins be dismissed pursuant to 28 U.S.C. §§ 1915(e)(2)(B), 1915A(b) for failure to state a claim. If Plaintiff intends to pursue Section 1983 claims against defendant Collins, Plaintiff must sufficiently alleged defendant Collins' personal involvement in the claimed violations.

### D. Individual Capacity Claims Against Defendants John Doee # 1 and # 2

#### 1. Unlawful Search and Seizure

The Fourth Amendment protects "against unreasonable searches and seizures." U.S. Const. amend. IV. A police officer may briefly detain a suspect, consistent with the Fourth Amendment, when the officer has a reasonable suspicion that "criminal activity may be afoot." *Terry v. Ohio*, 392 U.S. 1, 30 (1968).

In the context of traffic laws, "reasonable suspicion of a traffic violation provides a sufficient basis under the Fourth Amendment for law enforcement officers to make a traffic stop." *United States v. Stewart*, 551 F.3d 187, 193 (2d Cir. 2009). Even a "minor" traffic violation meets this standard and provides probable cause for a stop. *United States v. Scopo*, 19 F.3d 777, 782 (2d Cir. 1994) (finding police had probable cause to arrest defendant for "not signaling lane changes"), *cert. denied*, 513 U.S. 877 (1994).

***7** Here, Plaintiff's claims alleging violations of constitutional rights arising from the traffic stop are undermined by his own admissions in the complaint.[8] Specifically, Plaintiff claims he was pulled over for speeding. (Dkt. No. 1 at 8.) Contrary to Plaintiff's assertion, travelling over maximum speed limits is a violation of New York State Vehicle and Traffic Law, thus providing probable cause for the traffic stop. *See* N.Y. Veh. & Traf. Law § 1180(d).

8 As described above, Plaintiff also takes issue with the June 11, 2023, search of his female friend. However, a *pro se* plaintiff cannot bring any claims on behalf of any other plaintiff. *See Iannaccone v. Law*, 142 F.3d 553, 558 (2d Cir. 1998) (because *pro se* means to appear for oneself, a person may not appear on another person's behalf in the other's cause).

Though Plaintiff contends the reason cited by the defendant police officers was pretextual, the subjective intent of an officer performing a traffic stop is irrelevant. *United States v. Dhinsa*, 171 F.3d 721, 724-25 (2d Cir. 1998) ("[A]n officer's use of a traffic violation as a pretext to stop a car in order to obtain evidence for some more serious crime is of no constitutional significance."); *see, e.g.*, *Aikman v. Cnty. of Westchester*, 491 F. Supp. 2d 374, 381 (S.D.N.Y. 2007) (dismissing the plaintiff's Fourth Amendment "racial profile claim" where the officers "had probable cause to believe [the plaintiff] violated New York traffic laws").

Once a lawful traffic stop based on probable cause has occurred, a police officer may make "ordinary inquiries incident to the traffic stop," and "[t]ypically such inquiries involve checking the driver's license, determining whether there are outstanding warrants against the driver, and inspecting the automobile's registration and proof of insurance." *Rodriguez v. United States*, 575 U.S. 348, 355 (2015) (alterations omitted). Additionally, if the traffic stop is lawful, neither the driver nor any passengers have a "Fourth Amendment interest in not being ordered out of the stopped vehicle." *Mollica v. Volker*, 229 F.3d 366, 369 (2d Cir. 2000). Indeed, "a police officer may as a matter of course, order" a passenger or a driver out of "a lawfully stopped car." *Maryland v. Wilson*, 519 U.S. 408, 410 (1997) (citing *Pennsylvania v. Mimms*, 434 U.S. 106, 108-09 (1977) (per curiam)).

Based on the information provided in the complaint, it appears the defendant police officers learned Plaintiff did not have a valid driver's license. Plaintiff alleges after the stop, the defendant police officers "searched my name they then returned told me i was under suspention which i was not under suspention told me get out of my car and unlawfully handcuffed me conducted a patdown search of me searched my car with out probable cause place me in the back of the patrole car." (Dkt. No. 1 at 8.) The defendant police officers also searched Plaintiff's friend and "some thing" was "pulled" from her "pant's/panties." *Id.* at 8-9. Plaintiff also accuses the defendant police officers of invading his "privacy" when they conducted a "pat down search," searched his car, and "took" his personal belongings including paperwork, documents, cell phones, and book bags without consent or a warrant. (Dkt. No. 1 at 3.) Plaintiff was then apparently taken to the Rome Police Department. *Id.* at 11-12. There are no allegations that the stop lasted any longer than necessary. As such, Plaintiff has not stated a constitutional claim concerning a prolonged and unconstitutional seizure. *See Rodriguez*, 575 U.S. at 354.

***8** Insofar as Plaintiff claims that "driving under a suspention is a misdemeanor" and does "not justify handcuffing and or conducting a patdown search," and "you do not need a license to drive a car ... in the United States of America," Plaintiff is mistaken. (Dkt. No. 1 at 10, 12.) Under New York's Vehicle & Traffic Laws, a valid driver's license is required to operate a motor vehicle. *See* N.Y. Veh. & Traf. Law § 509; *see also id.* § 511 (prohibiting operating a car without a valid license). Thus, while the precise details are unclear, it appears the defendant police officers likely had probable cause to believe Plaintiff had committed a criminal offense. And a search incident to an arrest, "constitutes an exception to the warrant requirement" imposed by the Fourth Amendment.[9] *Riley v. California*, 573 U.S. 373, 382 (2014).

9 In New York a person is guilty of Criminal Possession of a Weapon in the second degree if he or she possesses a loaded firearm and does not have a license to possess such a firearm. *See Bannister v. Luis*, No. 18-CV-7285, 2022 WL 19402512, at *45 (E.D.N.Y. Feb. 16, 2022) (citing N.Y. Penal Law § 265.03), *report and recommendation adopted as modified*, 2023 WL 2325680 (E.D.N.Y. Mar. 2, 2023). Under New York law, the existence of a firearm in an automobile creates a permissive presumption that all occupants of the vehicle have common constructive possession of the firearm, absent certain statutory exceptions which are inapplicable here. *Id.* "If a jury may make a presumption of possession under the law, it is reasonable for a police officer to do the same." *Id.* Thus, regardless of whether the firearm was found on the Plaintiff's person or in his car, the officers had probable cause for his arrest.

Additionally, the automobile exception to the warrant requirement of the Fourth Amendment permits officers to "conduct a warrantless search of a vehicle if they have probable cause to believe it contains contraband or other evidence of a crime." *United States v. Wilson*, 699 F.3d 235, 245 (2d Cir. 2012). Probable cause requires only a "fair probability" that evidence of a relevant violation will be found in the place to be searched. *Illinois v. Gates*, 462 U.S. 213, 238 (1983). When the exception applies, officers may search any area of the vehicle in which they have "probable cause to believe contraband or evidence is contained." *California v. Acevedo*, 500 U.S. 565, 580 (1991); *see also United States v. Ross*, 456 U.S. 798, 825 (1982) ("If probable cause justifies the search of a lawfully stopped vehicle, it justifies the search of every part of the vehicle and its contents that may conceal the object of the search."); *see also United States v. Harris*, No. 21-CR-376, 2022 WL 13798289, at *2 (E.D.N.Y. Oct. 21, 2022).

In sum, based on the information provided in Plaintiff's complaint, it appears the defendant police officers likely had probable cause to stop and arrest Plaintiff. Armed with probable cause, the search of Plaintiff's person and vehicle appears to have been a lawful search incident to arrest. *See United States v. Jenkins*, 496 F.2d 57, 79 (2d Cir. 1974) (finding search prior to arrest to be lawful "as long as probable cause to arrest existed at the time of the search"); *see generally Thornton v. United States*, 541 U.S. 615, 617 (2004) (holding search of vehicle's passenger compartment to be contemporaneous incident of arrest, though driver arrested outside vehicle).

Accordingly, it is recommended that Plaintiff's Section 1983 illegal search and seizure claim against the defendant police officers be dismissed pursuant to 28 U.S.C. §§ 1915(e)(2)(B), 1915A(b) for failure to state a claim. [10]

10 Plaintiff claims he was "charged" with "what they found" on his friend's person and also charged with "possession of a weapon 2nd: loaded firearm-other than person's home/business." (Dkt. No. 1 at 9-10.) Plaintiff states "the loaded firearm charge" is "still pending against me till this day." *Id.* at 10. The Court notes, however, that under abstention principles, the Court typically refrains from intervening in a state-court criminal proceeding. *See, e.g.*, *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 73 (2013). Moreover, to the extent that Plaintiff seeks the remedy of "suppression" of any items seized during the search, that remedy is simply inapplicable in a § 1983 suit. *See Townes v. City of New York*, 176 F.3d 138, 145 (2d Cir. 1999) ("The fruit of the poisonous tree doctrine ... is inapplicable to civil § 1983 actions.").

### 2. False Arrest

***9** "A [Section] 1983 claim for false arrest[ ] resting on the Fourth Amendment ... is substantially the same as a claim for false arrest under New York law." *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996) (citations omitted). "Under New York law, a plaintiff claiming false arrest must show, inter alia, that the defendant intentionally confined him without his consent and without justification." *Id.* Probable cause "is a complete defense to an action for false arrest" brought under New York law or section 1983. *Id.* (citation omitted). Police officers have probable cause to arrest when they possess "knowledge of, or reasonably trustworthy information as to, facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that an offense has been or is being committed by the person to be arrested." *Zellner v. Summerlin*, 494 F.3d 344, 368 (2d Cir. 2007) (collecting cases); *see, e.g.*, *Johnson v. Harron*, No. 91 Civ. 1460, 1995 WL 319943, at *9 (N.D.N.Y. May 23, 1995) (concluding that DMV computer information showing driver's license was suspended established probable cause for arrest).

Read liberally, the complaint may raise a claim for false arrest. Plaintiff claims he was handcuffed, placed in the patrol car, was taken to the Rome Police Department, and was not read his *Miranda* rights. (Dkt. No. 1 at 8-12.) But the complaint focuses on the initial traffic stop and search and does not include details about the basis for the arrest that would allow the Court to evaluate whether he was arrested without justification. Accordingly, it is recommended that Plaintiff's Section 1983 false arrest claim be dismissed pursuant to 28 U.S.C. §§ 1915(e)(2)(B), 1915A(b) for failure to state a claim. [11]

11 If Plaintiff intends to bring such a claim, he should amend his complaint to add facts establishing that he was arrested without justification and the disposition of any charges.

### 3. Excessive Force

"The Fourth Amendment prohibits the use of unreasonable and therefore excessive force by a police officer in the course of effecting an arrest." *Tracy v. Freshwater*, 623 F.3d 90, 96 (2d Cir. 2010). To succeed on an excessive force claim, "a plaintiff must ultimately demonstrate that the defendant's use of force was objectively unreasonable in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Hulett v. City of Syracuse*, 253 F. Supp. 3d 462, 491 (N.D.N.Y. 2017) (internal quotations omitted). The "objective reasonableness" inquiry is "case and fact specific and requires balancing the nature and quality of the intrusion on the plaintiff's Fourth Amendment interests against the countervailing governmental interests at stake." *Tracy*, 623 F.3d at 96 (citing *Amnesty America v. Town of West Hartford*, 361 F.3d 113, 123 (2d Cir. 2004)).

Here, "excessive force" is listed as a cause of action. (Dkt. No. 1 at 13.) Plaintiff claims he was "unlawfully pulled out of [his] car," "handcuffed" and subjected to a "pat down search." *Id.* at 8. With this allegation and nothing more, there are simply not enough facts present to establish a plausible excessive force claim. *See Burroughs v. Petrone*, 138 F. Supp. 3d 182, 214 (N.D.N.Y. 2015) (excessive force claim based on rough pat and frisk and push by officers, without other facts or injury alleged, dismissed); *see also Bancroft v. City of Mount Vernon*, 672 F. Supp. 2d 391, 406 (S.D.N.Y. 2009) (declining to find any constitutional violation from plaintiff's allegations of officers' forceful behavior, including a "single push," during the time he was handcuffed).

Accordingly, it is recommended that Plaintiff's Section 1983 excessive force claim be dismissed pursuant to 28 U.S.C. §§ 1915(e)(2)(B), 1915A(b) for failure to state a claim.

### 4. Due Process

The complaint lists "5th Due Prosses" as a claim and Plaintiff states "I also have a privilege aganced self incrimination suspect's statement's, comment's remark's before *Miranda* rights cant be used in court." (Dkt. No. 1 at 12, 13.) "While a defendant has a constitutional right not to have a coerced statement used against him, the failure to provide *Miranda* warnings does not constitute a Fifth Amendment violation or a violation of federal law." *Jallow v. Geffner*, No. 23-CV-3969, 2024 WL 37073, at *10 (S.D.N.Y. Jan. 2, 2024) (citing *Vega v. Tekoh*, 597 U.S. 134, 142-152 (2022)); *see also Deshawn E. by Charlotte E. v. Safir*, 156 F.3d 340, 346 (2d Cir. 1998) (relying on *New York v. Quarles*, 467 U.S. 649, 654 (1984) (a defendant does not have a constitutional right to receive *Miranda* warnings because warnings are only a procedural safeguard designed to protect a person's right against self-incrimination)).

***10** Generally, "no cause of action exists under 42 U.S.C. § 1983 for *Miranda* violations." *Gentry v. New York*, No. 1:21-CV-319 (GTS/ML), 2021 WL 3037709, at *7-8 (N.D.N.Y. June 14, 2021), *report and recommendation adopted*, 2021 WL 3032691 (N.D.N.Y. July 19, 2021) (quoting *Hernandez v. Llukaci*, No. 16-CV-1030, 2019 WL 1427429, at *7 (N.D.N.Y. Mar. 29, 2019) (Hurd, J.) (citing *Chavez v. Martinez*, 538 U.S. 760, 767 (2003))). "The failure to inform a plaintiff of his rights under *Miranda*, 'does not, without more, result in § 1983 liability.' " *Id.* (quoting *Deshawn E. v. Safir*, 156 F.3d at 346). "The

remedy for a violation of the right against self-incrimination is 'the exclusion from evidence of any ensuing self-incriminating statements' and 'not a § 1983 action.' " *Id.* (quoting *Neighbour v. Covert*, 68 F.3d 1508, 1510 (2d Cir. 1995)) (internal quotations omitted). However, " '[a] *Miranda* violation that amounts to actual coercion based on outrageous government misconduct is a deprivation of a constitutional right that can be the basis for a § 1983 suit, even when a confession is not used against the declarant in any fashion.' " *Id.* (quoting *Deshawn E. v. Safir*, 156 F.3d at 348 (internal citations omitted)).

Here, the complaint does not allege any facts that would plausibly suggest police coercion led to inculpatory statements. As a result, it is recommended that Plaintiff's Section 1983 due process claim be dismissed pursuant to 28 U.S.C. §§ 1915(e)(2)(B), 1915A(b) for failure to state a claim.

## 5. Right to Travel

The complaint lists "5th right to travel" as a claim. (Dkt. No. 1 at 3, 13.) "The Constitution protects a fundamental right to travel within the United States," *Selevan v. N.Y. Thruway Auth.*, 584 F.3d 82, 99 (2d Cir. 2009), but "travelers do not have a constitutional right to the most convenient form of travel, and minor restrictions on that travel simply do not amount to the denial of a fundamental right[.]" *Scott v. Crossway*, No. 1:22-CV-500 (BKS/CFH), 2022 WL 16646531, at *10 (N.D.N.Y. Nov. 3, 2022) (quoting *Town of Southold v. Town of E. Hampton*, 477 F.3d 38, 54 (2d Cir. 2007) (alterations, citations, and quotation marks omitted)), *report and recommendation adopted*, 2023 WL 34543 (N.D.N.Y. Jan. 4, 2023);

Even liberally construed, Plaintiff has not alleged any facts to suggest a violation of his constitutional right to travel. Plaintiff's allegations regarding his right to travel relate to the traffic stop and seizure of his vehicle, which is akin to his illegal search and seizure claim. *See, e.g.*, *Wellington v. Foland*, No. 3:19-CV-0615 (GTS/ML), 2019 WL 3315181, at *6 (N.D.N.Y. July 24, 2019), *report and recommendation adopted*, 2019 WL 6485157 (N.D.N.Y. Dec. 3, 2019); *Bey v. D.C.*, No. 17-CV-6203, 2018 WL 5777021, at *6 (E.D.N.Y. Nov. 1, 2018) (dismissing the plaintiff's "right to travel claim" where the plaintiff retained his ability and constitutional right to travel even if "inconvenienced" by the seizure of his motor vehicle."); [12] *see also Johnson El v. Bird*, No. 19-CV-5102, 2020 WL 5124920, at *5 n.8 (S.D.N.Y. Aug. 31, 2020) ("To the extent Plaintiff means to argue that traffic enforcement violates his right to travel, that claim is dismissed as frivolous.") (citing *Annan v. State of N.Y. Dep't of Motor Vehicles*, No. 15-CV-1058, 2016 WL 8189269, at *5 (E.D.N.Y. Mar. 2, 2016), *aff'd*, 662 F. App'x 85 (2d Cir. 2016) (summary order)).

12 To the extent Plaintiff claims the defendant police officers deprived him of a property interest by impounding his car, Plaintiff has not pled facts sufficient to establish that he was deprived of that interest without due process. *See, e.g.*, *Hawthorne by Hawthorne v. Cnty. of Putnam*, 492 F. Supp. 3d 281, 304 (S.D.N.Y. 2020) (noting that where the defendants' impounded the plaintiff's car following a traffic stop the conduct did not implicate procedural due process concerns); *Vasquez v. Yadali*, No. 16-CV-895, 2020 WL 1082786, at *12 (S.D.N.Y. Mar. 5, 2020) (noting that the plaintiff fails to allege the inadequacy of any post-deprivation hearings following the impoundment of his vehicle); *Domeneck v. City of New York*, No. 18-CV-7419, 2019 WL 5727409, at *10 (S.D.N.Y. Nov. 5, 2019) (dismissing plaintiff's Fourteenth Amendment claim regarding the deprivation of his vehicle because the plaintiff has not plausibly alleged that the process he received was insufficient).

***11** The Court therefore recommends dismissing Plaintiff's Section 1983 right to travel claim pursuant to 28 U.S.C. §§ 1915(e)(2)(B), 1915A(b) for failure to state a claim.

## 6. Right to Bear Arms

The complaint lists "2nd Bear Arm's" as a claim. (Dkt. No. 1 at 13.) The "Second Amendment protects 'an individual right to keep and bear arms.' " *District of Columbia v. Heller D.C. v. Heller*, 554 U.S. 570, 595 (2008). But "[l]ike most rights, the right

secured by the Second Amendment is not unlimited" and is "not a right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose." *Id.* at 626. For example, the Second Amendment allows "prohibitions on the possession of firearms by felons and the mentally ill, or laws forbidding the carrying of firearms in sensitive places such as schools and government buildings, or laws imposing conditions and qualifications on the commercial sale of arms." *Id.* at 627-28.

Here, Plaintiff's conclusory allegation regarding his right to "Bear Arm's" provided by the Second Amendment is insufficient to state a plausible claim for relief given the numerous limitations on an individual's right to bear arms. *See, e.g.*, *McClenic v. Shmettan*, No. 15-CV-00705, 2016 WL 3920219, at *8 (E.D.N.Y. July 15, 2016) (dismissing the plaintiff's conclusory allegation that defendant detectives violated his Second Amendment right "to keep and bear arms" where, *inter alia*, was charged with criminal possession of a weapon second degree in a felony complaint); *see also Partin v. Gevatoski*, No. 6:19-CV-1948-AA, 2020 WL 4587386, at *4 (D. Or. Aug. 10, 2020) ("The mere occurrence of a firearm seizure during a traffic stop, however, is not enough to establish a Second Amendment violation. Police seize and confiscate firearms routinely, and this Court will not presume that each and every one of those seizures is an automatic Second Amendment violation without specific facts indicating such.").

Accordingly, the Court recommends dismissing Plaintiff's Section 1983 right to bear arms claim pursuant to 28 U.S.C. §§ 1915(e)(2)(B), 1915A(b) for failure to state a claim. [13]

13 *See also supra* note 10 and accompanying text.

**E. Private Prosecution**

To the extent Plaintiff seeks an order from this Court directing the defendants to be "charged and prosicuted for Act's and investigate RPD misconduct," (Dkt. No. 1 at 3, 13), he is not entitled to such as order because "the decision to prosecute is solely within the discretion of the prosecutor." *Leeke v. Timmerman*, 454 U.S. 83, 87 (1981). Neither Plaintiff nor the Court can direct prosecutors to initiate a criminal proceeding against any defendant because prosecutors possess discretionary authority to bring criminal actions and they are "immune from control or interference by citizen or court[.]" *Conn. Action Now, Inc. v. Roberts Plating Co.*, 457 F.2d 81, 87 (2d Cir. 1972).

**F. Supplemental Jurisdiction**

A district court may decline to exercise supplemental jurisdiction over state law claims when it "has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). Generally, "when the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain, the federal court should decline the exercise of jurisdiction." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988). Having recommended dismissal of the federal claims of which the Court has original jurisdiction, it is also recommended that the District Court decline to exercise its supplemental jurisdiction of any state law claims Plaintiff may be asserting. *See Kolari v. New York-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006) ("Subsection (c) of § 1367 'confirms the discretionary nature of supplemental jurisdiction by enumerating the circumstances in which district courts can refuse its exercise.' ") (quoting *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 173 (1997)).

**V. OPPORTUNITY TO AMEND**

***12** Generally, before the Court dismisses a *pro se* complaint or any part of the complaint *sua sponte*, the Court should afford the plaintiff the opportunity to amend at least once; however, leave to re-plead may be denied where any amendment would be futile. *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993). Futility is present when the problem with plaintiff's causes of action is substantive such that better pleading will not cure it. *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (citation omitted).

For reasons set forth above, the Court finds Plaintiff's complaint is subject to dismissal in its entirety pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii), 1915A(b)(1) for failure to state a claim. However, in light of his *pro se* status, prior to outright dismissal of this action, the Court recommends that Plaintiff be given an opportunity to amend his pleading.

Plaintiff is advised that, should the District Court permit Plaintiff to file an amended complaint, and if he chooses to avail himself of an opportunity to amend, such amended pleading must cure the defects set forth above. [14] Specifically, the pleading must set forth a short and plain statement of the facts on which he relies to support any legal claims asserted. Fed. R. Civ. P. 8(a). The body of the pleading must contain sequentially numbered paragraphs containing only one act of alleged misconduct per paragraph. Fed. R. Civ. 10. No portion of any prior complaint shall be incorporated into the amended complaint and piecemeal pleadings are not permitted.

14 Plaintiff should not submit an amended complaint before the District Court issues a Decision and Order on this Report-Recommendation. As noted below, however, Plaintiff may file written objections to this Court's Report-Recommendations.

The Court notes that in *Gosier II*, Plaintiff alleged he was "pulled over" on June 11, 2023, by officers of the Utica Police Department "without probable cause and proceeded to illegally search [his] vehicle." *Gosier II*, No. 6:23-cv-01119 (DNH/TWD), ECF Dkt. No. 1 at 9. Plaintiff also alleged he was "maliciously prosecuted" and "arrested and charged with Criminal Possession of a Controlled Substance 7th and Aggravated Unlicensed Operation of Motor Vehicle 3rd." *Id.* Plaintiff's original complaint was *sua sponte* dismissed on initial review with leave to amend. *Id.*, ECF Dkt. Nos. 10, 12. On February 5, 2024, Plaintiff's request for an extension of time until March 16, 2024, to submit his amended complaint was granted. *Id.*, ECF Dkt. No. 19. At this juncture, it is unclear whether the subject traffic stop in *Gosier II* is the same traffic stop at issue in this action. Plaintiff should explain the relationship, if any, between the June 11, 2023, traffic stop at issue in this action and the June 11, 2023, traffic stop at issue in *Gosier II*.

**VI. CHANGE OF ADDRESS**

According to information publicly available on the website maintained by the New York State Department of Corrections and Community Supervision ("DOCCS"), Willie Gosier (DIN 22B2574) was released from custody on parole on February 26, 2024. [15] Plaintiff is reminded that he must update his address with the Court immediately upon relocating. For the orderly disposition of cases, it is essential that litigants honor their continuing obligation to keep the Court informed of address changes. "Failure to notify the Court of a change of address in accordance with L.R. 10.1(c)(2) may result in the dismissal of any pending action." L.R. 41.2(b).

15 *See* http://nysdoccslookup.doccs.ny.gov (last visited Mar. 8, 2024).

**VII. CONCLUSION**

***13 WHEREFORE**, it is hereby

**ORDERED** that Plaintiff's IFP application (Dkt. No. 2) is **GRANTED**, and it is further

**RECOMMENDED** that Plaintiff's complaint be **DISMISSED** pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) with **LEAVE TO AMEND**; and it is further

**RECOMMENDED** that the District Court decline to exercise its supplemental jurisdiction of any state law claims Plaintiff may be asserting; and it is further

**ORDERED** that the Clerk provide Plaintiff with a copy of this Order and Report Recommendation, along with copies of the unpublished decisions cited herein in accordance with *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam); and it is further

**ORDERED** that Plaintiff is required to promptly notify the Clerk's Office and all parties or their counsel, in writing, of any change in his address; the failure to do so will result in the dismissal of his action.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report.[16] Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**. *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a).

16 If you are proceeding *pro se* and are served with this Order and Report-Recommendation by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the Order and Report-Recommendation was mailed to you to serve and file objections. Fed. R. Civ. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. Fed. R. Civ. P. 6(a)(1)(C).

**IT IS SO ORDERED.**

**All Citations**

Not Reported in Fed. Supp., 2024 WL 1016392

End of Document © 2026 Thomson Reuters. No claim to original U.S. Government Works.

2024 WL 1307035
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Willie Thomas GOSIER, Plaintiff,
v.
David J. COLLINS et al., Defendants.

6:23-CV-1485
|
Signed March 27, 2024

**Attorneys and Law Firms**

WILLIE THOMAS GOSIER, Plaintiff, Pro Se, 22-B-2574, Elmira Correctional Facility, P.O. Box 500, Elmira, NY 14902.

## ORDER ON REPORT & RECOMMENDATION

DAVID N. HURD, United States District Judge

***1** On November 29, 2023, *pro se* plaintiff Willie Thomas Gosier ("plaintiff"), who was recently released to State parole, filed this 42 U.S.C. § 1983 action alleging that the defendants violated his civil rights during a traffic stop in Rome, New York. Dkt. No. 1. Along with his complaint, plaintiff moved for leave to proceed *in forma pauperis* ("IFP Application"). Dkt. Nos. 2, 3.

On March 8, 2024, U.S. Magistrate Judge Thérèse Wiley Dancks granted plaintiff's IFP Application and advised by Report & Recommendation ("R&R") that plaintiff's complaint be dismissed with leave to amend. Dkt. No. 4.

Plaintiff has not filed objections, and the time period in which to do so has expired. *See* Dkt. No. 4. Upon *de novo* review, the R&R is accepted and will be adopted. *See* 28 U.S.C. § 636(b)(1)(C).

Therefore, it is

ORDERED that

1. The Report & Recommendation is ACCEPTED;

2. Plaintiff's complaint is DISMISSED with leave to amend;

3. Plaintiff shall have thirty (30) days in which to file an amended complaint that conforms with the specific instructions set forth in the R&R;

4. If plaintiff timely files an amended pleading, the Clerk is directed to return the matter to Judge Dancks for further review as appropriate;

5. If plaintiff does not timely file an amended pleading, the Clerk is directed to close this matter without further Order of the Court.

IT IS SO ORDERED.

**All Citations**

Not Reported in Fed. Supp., 2024 WL 1307035

**End of Document** © 2026 Thomson Reuters. No claim to original U.S. Government Works.

2026 WL 1660470
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Andre Rene LEVESQUE, Plaintiff,
v.
The PEOPLE OF THE UNITED STATES, Defendants.

No. 8:25-CV-1259 (MAD/PJE)
|
Signed June 8, 2026

**Attorneys and Law Firms**

Andre Rene Levesque, 35A Smithfield Blvd., #149, Plattsburgh, New York 12901, Plaintiff pro se.

## REPORT-RECOMMENDATION AND ORDER [1]

1 This matter was referred to the undersigned for Report-Recommendation and Order pursuant to 28 U.S.C. § 636(b) and N.D.N.Y. L.R. 72.3(c).

PAUL J. EVANGELISTA, UNITED STATES MAGISTRATE JUDGE

## I. In Forma Pauperis

***1** Plaintiff pro se Andre Rene Levesque ("plaintiff") commenced this action on September 8, 2025, by filing a complaint. [2] *See* Dkt. No. 1. In lieu of paying this Court's filing fee, plaintiff submitted an application for leave to proceed in forma pauperis ("IFP"). *See* Dkt. No. 2. Plaintiff also filed a motion seeking to have the U.S. Marshals copy and serve defendants with "evidence" and the Court provide a computer so defendants can review the "evidence." Dkt. No. 3. The undersigned has reviewed plaintiff's IFP application and determines that he financially qualifies to proceed IFP. [3] This Court must now assess the merits of plaintiff's complaint pursuant to 28 U.S.C. §§ 1915; 1915A. [4]

2 The undersigned notes that plaintiff has filed at least nineteen other civil actions in this District.

3 Plaintiff is advised that although he has been granted IFP status, he is still required to pay any fees and costs they may incur in this action, including, but not limited to, copying fees, transcript fees, and witness fees.

4 These requirements apply equally to non-prisoner pro se litigants. *See* N.D.N.Y. L.R. 72.3(d) ("Unless the Court orders otherwise, any civil action that a non-prisoner pro se litigant commences shall be referred to a Magistrate Judge for the purpose of review under 28 U.S.C. § 1915(e)(2) and 28 U.S.C. § 1915A when an application to proceed in forma pauperis is filed.").

## II. Initial Review

### A. **Legal Standards**

28 U.S.C. § 1915 directs that, when a plaintiff seeks to proceed IFP, "the court shall dismiss the case at any time if the court determines that ... the action or appeal (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). "Thus, it is a court's responsibility to determine that a plaintiff may properly maintain his complaint before permitting him to proceed further with his action." *Praileau v. Fischer*, 930 F. Supp. 2d 383, 394 (N.D.N.Y. 2013).

The Second Circuit affords pro se litigants a "special solicitude" such "that a pro se litigant's submissions must be construed liberally, and that such submissions must be read to raise the strongest arguments that they suggest." *Triestman v. Fed. Bureau of Prisons,* 470 F.3d 471, 477 (2d Cir. 2006) (internal quotation marks, citations, and footnote omitted); *Kirkland v. Cablevision Sys.*, 760 F.3d 223, 224 (2d Cir. 2014) (same). "In reviewing a complaint ... the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor." *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir. 1994) (citation omitted).

Conversely, the Second Circuit has stated that the Court "cannot read into pro se submissions claims that are not consistent with the pro se litigant's allegations, or arguments that the submissions themselves do not suggest, [and] that we should not excuse frivolous or vexatious filings by pro se litigants." *Triestman,* 470 F.3d at 477 (citations omitted). Stated another way, the Court is not required to accept unsupported allegations that are devoid of sufficient facts or claims. Although detailed allegations are not required at the pleading stage, a complaint must still include enough facts to provide the defendants with notice of the claims against them and the grounds upon which the claims are based. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."); *Bell Atlantic v. Twombly*, 550 U.S. 544, 570 (2007) (Noting that a plaintiff bringing suit must plead "enough facts to state a claim to relief that is plausible on its face.").

***2** Further, "pro se status does not exempt a party from compliance with relevant rules of procedural and substantive law ...." *Triestman,* 470 F.3d at 477 (additional quotation omitted); *Kastner v. Tri State Eye*, No. 19-CV-10668 (CM), 2019 WL 6841952, at *2 (S.D.N.Y. Dec. 13, 2019) (quoting *Ruotolo v. IRS*, 28 F.3d 6, 8 (2d Cir. 1994)) ("The [Second Circuit]'s 'special solicitude' for pro se pleadings has its limits, because pro se pleadings still must comply with ... the Federal Rules of Civil Procedure." [5] ). [6] Rule 8 provides that a pleading which sets forth a claim for relief shall contain, among other things, "a short and plain statement of the grounds for the court's jurisdiction ... and ... a demand for the relief sought ...." FED. R. CIV. P. 8(a). "The purpose ... is to give fair notice of the claim being asserted so as to permit the adverse party the opportunity to file a responsive answer, prepare an adequate defense and determine whether the doctrine of res judicata is applicable." *Flores v. Graphtex*, 189 F.R.D. 54, 55 (N.D.N.Y. 1999) (internal quotation marks and citations omitted). Although "[n]o technical form is required," the Federal Rules make clear that each allegation contained in the pleading "must be simple, concise, and direct." FED. R. CIV. P. 8(d). Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). Thus, a pleading that only "tenders naked assertions devoid of further factual enhancement" does not suffice." *Id.* (internal quotation marks and alterations omitted).

5 Hereafter, "Fed. R. Civ. P."

6 All unpublished decisions cited in this Report-Recommendation and Order, unless otherwise noted, have been provided to plaintiff.

Rule 10 provides in pertinent part that:

> [a] party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances. A later pleading may refer by number to a paragraph in an earlier pleading. If doing so would promote clarity, each claim founded on a separate transaction or occurrence—and each defense other than a denial—must be stated in a separate count or defense.

FED. R. CIV. P. 10(b). This serves the purpose of "provid[ing] an easy mode of identification for referring to a particular paragraph in a prior pleading[.]" *Flores*, 189 F.R.D. at 55 (internal quotation marks and citations omitted).

Allegations that "are so vague as to fail to give the defendants adequate notice of the claims against them" are subject to dismissal. *Sheehy v. Brown*, 335 F. App'x 102, 104 (2d Cir. 2009) (summary order). A complaint that fails to comply with the pleading requirements "presents far too a heavy burden in terms of defendants' duty to shape a comprehensive defense and provides no meaningful basis for the Court to assess the sufficiency of their claims." *Gonzales v. Wing*, 167 F.R.D. 352, 355 (N.D.N.Y. 1996). As the Second Circuit has held, "[w]hen a complaint does not comply with the requirement that it be short and plain, the court has the power, on its own initiative ... to dismiss the complaint." *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988) (citations omitted). However, "[d]ismissal ... is usually reserved for those cases in which the complaint is so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised." *Id.* (citations omitted).

Generally, "[a] pro se complaint should not be dismissed without the Court granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Romano v. Lisson*, 711 F. App'x 17, 19 (2d Cir. 2017) (summary order) (quoting *Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014)) *Rich v. Akwesasne Mohawk Casino Resort*, No. 8:24-CV-0255 (AMN/CFH), 2024 WL 3677262, at *2 (N.D.N.Y. Aug. 6, 2024), *report and recommendation adopted,* No. 8:24-CV-0255 (AMN/PJE), 2025 WL 286937 (N.D.N.Y. Jan. 24, 2025) (citing *Simmons v. Abruzzo*, 49 F.3d 83, 86-87 (2d Cir. 1995)) ("If dismissal is warranted and the plaintiff is pro se, the court generally affords the plaintiff leave to amend the complaint."). "However, if the problems with a complaint are 'substantive' rather than the result of an 'inadequately or inartfully pleaded' complaint, an opportunity to re-plead would be 'futile' and 'should be denied.' " *Edwards v. Penix*, 388 F. Supp. 3d 135, 144-45 (N.D.N.Y. 2019) (quoting *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000)).

## III. **Discussion**

### A. **Plaintiff Complaint**

***3** In a two-page, handwritten complaint, plaintiff alleges the following:

> After 400 address changes and blatant denial of due process repeatedly (sic) I insist the U.S. Marshalls personally deliver my fucking court correspondence anere443@gmail.com The good people intentionally prevented me from accessing the computer while I was beaten and tortured repeatedly making prosecuting my claims impossible along with pre postaged (sic) envelope return....
>
> The defendants systematically denied me due process and allowed people to abduct me while trying to ste[al] from me. They all got me to chant ["]Death to America murder mutilate maul maime (sic) destroy them all["] 200 million x.

Dkt. No. 1 at 1-2. Plaintiff asserts that his "pain and suffering is enormous" and has "caused immense distress [and] irreparable harms." *Id*. at 2.

Plaintiff states that he seeks to proceed against the People of the United States and all of their foreign and domestic trading partners, as well as the United States Supreme Court, the United States Congress, and all forty-seven Presidents of the United States. *See* Dkt. No. 1 at 1-2. Plaintiff also demands "4 trillion 671 billion 285 million dollars" in monetary damages. *See id*. at 2.

Attached to plaintiff's complaint is a motion seeking to have the U.S. Marshals "make a copy" and "hand deliver" his complaint to defendants, "enclose a form to have the judge appoint an attorney," and "enclose a disk or USB card with each document the federal court received from me in all 50 states and state filings (sic) as evidence [of] both what I sent and allegedly received. Along with a 20″ × 16″ computer to actually review the evidence." Dkt. No. 3.

B. **Analysis**

The undersigned concludes that plaintiff's complaint is frivolous and fails to satisfy the liberal pleading requirements for pro se plaintiffs such that plaintiff's complaint should be dismissed without prejudice and without leave to amend. *See* FED. R. CIV. P. 8, 10; *Salahuddin*, 861 F.2d at 42; *Edwards*, 388 F. Supp. 3d at 144-45 (quoting *Cuoco*, 222 F.3d at 112).

As an initial matter, plaintiff's complaint fails to meet the pleading requirements of Rules 8 and 10. Plaintiff's complaint does not provide a "short and plain statement of the claim showing that the pleader is entitled to relief[.]" FED. R. CIV. P. 8(a). Rather, plaintiff's complaint amounts to two pages of indecipherable assertions that provide no factual or legal context, detail, support, or explanation of any purported claim. *See* Dkt. No. 1; *see also Story v. Fort Gordon, United States Mil.*, No. 1:24-CV-0626 (MAD/CFH), 2024 WL 4818523, at *2 (N.D.N.Y. Nov. 18, 2024) ("The Court agrees that Plaintiff's complaint, which consists of only one or two sentences, provides no factual context or support for Plaintiff's claims."). The undersigned is unable to make sense of any potential claim and plaintiff's complaint fails to give any proposed defendant "fair notice of [any potential] claim being asserted" such that any individual defendant would have an "opportunity to file a responsive answer, prepare an adequate defense and determine whether the doctrine of res judicata is applicable." *Flores*, 189 F.R.D. at 55. Further, plaintiff does not provide a "short and plain statement of the grounds for the court's jurisdiction" or state his claims in a single set of numbered paragraphs. FED. R. CIV. P. 8(a); *see also* FED. R. CIV. P. 10(b).

***4** "Moreover ... in addition to failing to meet the pleading requirements contemplated by Rules 8 and 10, the complaint is subject to dismissal because it is frivolous and fails to state a claim." *Story*, 2024 WL 4818523, at *2. "The Supreme Court has repeatedly held that the federal courts are without power to entertain claims that are so attenuated and unsubstantial as to be absolutely devoid of merit[,]" "wholly insubstantial," "obviously frivolous[,]" or "plainly insubstantial[.]" *Hines v. United States*, No. 6:19-CV-06837 (MAT), 2020 WL 570605, at *2 (W.D.N.Y. Feb. 5, 2020) (quoting *Hagans v. Lavine*, 415 U.S. 528, 536-37 (1974)) (internal quotation marks omitted). "No federal question jurisdiction exists when the complaint is ... essentially fictitious." *Story*, 2024 WL 4818523, at *2 (quoting *Hines*, 2020 WL 570605, at *2 (quoting *Best v. Kelly*, 39 F.3d 328, 330 (D.C. Cir. 1994))). "Claims that are 'essentially fictitious' include those that allege 'bizarre conspiracy theories" and "any fantastic government manipulations of [the plaintiff's] will or mind." *Id*. (quoting *Hines*, 2020 WL 570605, at *2 (quoting *Best*, 39 F.3d at 330).

Even affording plaintiff great solicitude and reading his complaint liberally, "plaintiff sets forth no cognizable avenue for relief." *Georges v. Rathner*, No. 1:17-CV-1246 (DNH/CFH), 2017 WL 8230677, at *2 (N.D.N.Y. Dec. 22, 2017), *report and recommendation adopted,* No. 1:17-CV-1246 (DNH/CFH), 2018 WL 1353058 (N.D.N.Y. Mar. 15, 2018); *see* Dkt. No. 1. Although plaintiff's complaint mentions that he was denied due process "281 x" and that he was abducted, manipulated, and physically and financially harmed, plaintiff has not provided any factual or legal basis that can be interpreted as claiming that he was denied due process or that any of his other constitutional rights were violated. *See Georges*, 2018 WL 816846, at *3 ("[The] plaintiff has not provided sufficient facts for this Court to assess [the] plaintiff's complaint, as plaintiff has given no context for her general statements about violations of the law by parties who are not named in the complaint, nor explanations as to how her constitutional rights were violated ...."); *Ehlers v. C.I.A.*, No. 6:15-CV-387 (MAD/ATB), 2015 WL 3637431, at *3 (N.D.N.Y. June 10, 2015) (concluding that the "Plaintiff's complaint does not state a valid claim for which relief can be

granted and lacks substance ... Plaintiff's complaint is not of substance, but rather conclusory statements and threadbare recitals of elements of a cause of action.") (internal quotation marks and additional citation omitted). Plaintiff does not state how or when he was harmed. *See generally* Dkt. No. 1. Rather, plaintiff refers to those who violated his rights in broad, general terms such as "defendants," "the good people," and "their trading partners." *Id*. at 1-2. Presented in this manner, plaintiff seeks to proceed against an infinite and indefinite number of individuals, institutions, and other nations as proposed unnamed defendants. Similarly, plaintiff describes his physical and financial harm generally as "immense" and "enormous," yet he does not state what actual harm, if any, he suffered. *See id*. at 2.

Plaintiff's complaint, in which he states, without any support, that the United States, its foreign trade partners, and the forty-seven presidents of the United States together denied him due process 281 times, "allowed people to abduct him," and forced him to chant "Death to America[.] Murder mutilate maul maime (sic) destroy them all" two million times, dkt. no.1 at 2, is a "product of delusion or fantasy." *Nance v. Kelly*, 912 F.2d 605, 606 (2d Cir. 1990) (quoting *Neitzke v. Williams*, 490 U.S. 319, 327 (1989)); *see also Khalil v. United States*, No. 17-CV-2652, 2018 WL 443343, at *4 (E.D.N.Y. Jan. 12, 2018) (dismissing complaint where the "[p]laintiff allege[d] a broad conspiracy involving surveillance of and interference with his life by the United States and various government actors" because his allegations were "irrational and wholly incredible"). "Given the implausibility of Plaintiff's allegations, the action cannot proceed. *Khalil*, 2018 WL 443343, at *4 (citing *Kraft v. City of New York*, 823 F. App'x 62, 64 (2d Cir. 2020) (summary order)).

***5** Therefore, the undersigned concludes that plaintiff's claims are frivolous and fail to state a claim upon which relief can be granted. *See Story*, 2024 WL 4818523, at *2; *Hines*, 2020 WL 570605, at *2 ("The Court is mindful that complaints filed by *pro se* litigants are held to less stringent standards than those applied to formal pleadings drafted by lawyers .... Nonetheless, the Court has the discretion to decide whether a complaint is frivolous ..., and such finding is appropriate where the facts alleged are irrational or wholly incredible") (additional citations omitted); *McKie v. Kornegay*, No. 21-1943, 2022 WL 4241355, *3 (2d Cir. Sept. 15, 2022) ("[A]mendment should be denied where the complaint gives no 'indication that a valid claim might be stated.' ") (quoting *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000)). Accordingly, the undersigned recommends that plaintiff's complaint be dismissed without prejudice and without opportunity to amend "because the complaint is so attenuated and unsubstantial as to be absolutely devoid of merit[,] and, as such, no better pleading would cure these defects." *Id*.

## IV. **Conclusion**

**WHEREFORE**, for the reasons set forth herein, it is hereby

**ORDERED**, that plaintiff's application to proceed in forma pauperis (Dkt. No. 2) is **GRANTED**; and it is

**RECOMMENDED**, that plaintiff's complaint (Dkt. No. 1), be **DISMISSED without prejudice and without opportunity to amend**; and it is further

**RECOMMENDED**, that plaintiff's motion seeking to compel the U.S. Marshals to act (Dkt. No. 3), be **DENIED as moot**; it is further

**ORDERED**, that the Clerk serve a copy of this Report-Recommendation and Order on plaintiff in accordance with Local Rules.

**IT IS SO ORDERED**.

Pursuant to 28 U.S.C. § 636(b)(1), plaintiff has **FOURTEEN (14)** days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW**. *See Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir.

1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); *see also* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 6(a), 72.[7]

7 If you are proceeding pro se and are served with this Report-Recommendation and Order by mail, three (3) additional days will be added to the fourteen-day (14) period, meaning that you have seventeen (17) days from the date the Report-Recommendation and Order was mailed to you to serve and file objections. *See* FED. R. CIV. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. *See id.* § 6(a)(1)(c).



2015 WL 3637431
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

Matthew R. EHLERS, Plaintiff,
v.
CENTRAL INTELLIGENCE AGENCY;
David B. Buckley, Director; Michael E.
Horowitz, Inspector General, Defendants.

No. 6:15–cv–387 (MAD/ATB).
|
Signed June 10, 2015.

**Attorneys and Law Firms**

Matthew R. Ehlers, Amsterdam, NY, pro se.

**MEMORANDUM–DECISION AND ORDER**

MAE A. D'AGOSTINO, District Judge.

**I. INTRODUCTION**

***1** Plaintiff commenced this civil rights action asserting claims against the Central Intelligence Agency ("CIA"), the director thereof, and the Inspector General ("IG") of the Department of Justice ("DOJ"). *See* Dkt. No. 1. In an April 6, 2015, Order and Report–Recommendation, Magistrate Judge Baxter conducted an initial review of the complaint and granted Plaintiff's motion for leave to proceed in forma pauperis ("IFP") for filing purposes only, recommended that the complaint be dismissed in its entirety with prejudice, and denied Plaintiff's motion to appoint counsel. *See* Dkt. No. 5 at 11.

Currently before the Court is Magistrate Judge Baxter's Order and Report–Recommendation, Plaintiff's objections thereto, and Plaintiff's amended complaint, which was filed after the issuance of the Order and Report–Recommendation.

**II. BACKGROUND**

Plaintiff's complaint is very short, containing limited facts, but brings this action against the CIA and DOJ under 18 U.S.C. §§ 241–242 & 245 for having failed to investigate alleged reports of harassment that he and his family suffered due to their "whistleblowing" activities. *Id.* at 3, 8. Plaintiff appeared to be requesting injunctive or mandamus relief. *Id.* at 6. The Magistrate Judge found Plaintiff failed to plausibly allege that Defendants denied him due process by failing to conduct an investigation or prosecution and that Plaintiff has no right, constitutional or otherwise, to an investigation or prosecution. *Id.* at 8 (citing *Bernstein v. New York*, 591 F.Supp.2d 448, 460 (S.D.N.Y.2008)). Magistrate Judge Baxter concluded that Plaintiff's complaint amounts to conclusory allegations which are insufficient to state a constitutional claim. *Id.* at 9 (citing *Barr v. Adrams*, 810 F.2d 358, 363 (2d Cir.1987)). The Magistrate Judge then held that any attempt by Plaintiff to amend his complaint would be futile, and he would still be unable to state a federal claim. *Id.* at 10.

Currently before the Court are Magistrate Judge Baxter's Order and Report–Recommendation, and Plaintiff's objections thereto. Additionally pending before the Court is Plaintiff's amended complaint, which was filed after the issuance of the Order and Report–Recommendation.

**III. DISCUSSION**

**A. Initial review**

Section 1915(e) (2)(B) directs that, when a plaintiff seeks to proceed in forma pauperis, "(2) ... the court shall dismiss the case at any time if the court determines that—... (B) the action ... (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B).[1] Thus, although The Court has the duty to show liberality toward pro se litigants, *see Nance v. Kelly*, 912 F.2d 605, 606 (2d Cir.1990) (per curiam), and should exercise "extreme caution ... in ordering sua sponte dismissal of a pro se complaint before the adverse party has been served and both parties (but particularly the plaintiff) have had an opportunity to respond, ..." *Anderson v. Coughlin*, 700 F.2d 37, 41 (2d Cir.1983) (internal citations omitted), the court also has a responsibility to determine that a claim is not frivolous before permitting a plaintiff to proceed with an action in forma pauperis.[2]

***2** When reviewing a complaint, the court may also look to the Federal Rules of Civil Procedure. Rule 8 of the Federal Rules of Civil Procedure provides that a pleading that sets forth a claim for relief shall contain "a short and plain

statement of the claim showing that the pleader is entitled to relief." *See* Fed.R.Civ.P. 8(a)(2). The purpose of Rule 8 "is to give fair notice of the claim being asserted so as to permit the adverse party the opportunity to file a responsive answer, ... prepare an adequate defense," and determine whether the doctrine of res judicata is applicable. *Hudson v. Artuz,* No. 95 CIV. 4768, 1998 WL 832708, *1 (S.D.N.Y. Nov. 30, 1998) (quoting *Powell v. Marine Midland Bank,* 162 F.R.D. 15, 16 (N.D.N.Y.1995) (quoting *Brown v. Califano,* 75 F.R.D. 497, 498 (D.D.C.1977))) (other citation omitted).

A court should not dismiss a complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft,* 556 U.S. at 678 (citation omitted). Although the court should construe the factual allegations in the light most favorable to the plaintiff, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly,* 550 U.S. at 555). Thus, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged —but it has not 'show [n]'—'that the pleader is entitled to relief.' " *Id.* at 679 (quoting Fed.R.Civ.P. 8(a)(2)).

When a party files specific objections to a magistrate judge's report-recommendation, the district court makes a "de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1) (2006). When a party, however, files "[g]eneral or conclusory objections or objections which merely recite the same arguments [that he presented] to the magistrate judge," the court reviews those recommendations for clear error. *O'Diah v. Mawhir,* No. 9:08–CV–322, 2011 WL 933846, *1 (N.D.N.Y. Mar. 16, 2011) (citations and footnote omitted). After the appropriate review, "the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1) (2006).

A litigant's failure to file objections to a magistrate judge's report-recommendation, even when that litigant is proceeding pro se, waives any challenge to the report on appeal. *See Cephas v. Nash,* 328 F.3d 98, 107 (2d Cir.2003) (holding that, "[a]s a rule, a party's failure to object to any purported error or omission in a magistrate judge's report waives further judicial review of the point" (citation omitted)). A pro se litigant must be given notice of this rule; notice is sufficient if it informs the litigant that the failure to timely object will result in the waiver of further judicial review and cites pertinent statutory and civil rules authority. *See Frank v. Johnson,* 968 F.2d 298, 299 (2d Cir.1992); *Small v. Sec'y of Health & Human Servs.,* 892 F.2d 15, 16 (2d Cir.1989) (holding that a pro se party's failure to object to a report and recommendation does not waive his right to appellate review unless the report explicitly states that failure to object will preclude appellate review and specifically cites 28 U.S.C. § 636(b)(1) and Rules 72, 6(a) and former 6(e) of the Federal Rules of Civil Procedure).

***3** As Magistrate Judge Baxter correctly determined, Plaintiff's complaint does not state a valid claim for which relief can be granted and lacks substance. As Magistrate Judge Baxter discussed, Plaintiff's complaint is not of substance, but rather conclusory statements and "threadbare recitals of the elements of a cause of action." *See Twombly,* 550 U.S. at 555.

Plaintiff was not denied due process under 18 U.S.C. § § 241–242 & 245 or when the agencies contacted failed to conduct an investigation. " 'There is ... no constitutional right to an investigation by government officials.' Thus, there is no constitutional violation where the government refuses to investigate a crime...." *Bernstein v. New York,* 591 F.Supp.2d 448, 460 (S.D.N.Y.2008); *Lewis v. Gallivan,* 315 F.Supp.2d 313, 317 (W.D.N.Y.2004). Additionally, it is well established that there is no private right of action under 18 U.S.C § § 241–242 & 245. *See, e.g., Dugar v. Coughlin,* 613 F.Supp. 849, 852 n.1 (S.D.N.Y.1985); *Robinson v. Overseas Military Sales Corp.,* 21 F.3d 502, 511 (2d Cir.N.Y.1994); *Powers v. Karen,* 768 F.Supp. 46, 51 (E .D.N.Y.1991); *Sauls v. Bristol–Myers Co.,* 462 F.Supp. 887, 889 (S.D.N.Y.1978). The Magistrate Judge correctly determined that Plaintiff has no cause of action and properly dismissed the claim because there is no constitutional right to an investigation or a private right of action under 18 U.S.C. 241, 242 & 245.

Furthermore, the doctrine of sovereign immunity bars Plaintiff's suit for damages against the CIA "[b]ecause an action against a federal agency or federal officers in their official capacities is essentially a suit against the United States, such suits are also barred under the doctrine of sovereign immunity." *Robinson v. Overseas Military Sales Corp.,* 21 F.3d 502, 510 (2d Cir.N.Y.1994).

Having reviewed the Report, Recommendation, and Order and Plaintiff's objections thereto, the Court finds that Magistrate Judge Baxter correctly determined that Plaintiff's claims should be dismissed.

**B. Plaintiff's Amended Complaint**

In his amended complaint Plaintiff states that there has been "ongoing choreographed criminal attacks" directed at him and his family, which were arranged by "corrupt Federal agents from the CIA ." *See* Dkt. No. 6 at 3. The amended complaint states these attacks include: "efforts to harass, defame, discredit, sabotage, stalk (including gang stalking), setup, and block many inherent rights." *Id.* It also states there were efforts "to create general chaos," and "to make us feel bad." *Id.* Plaintiff includes a list of incidents and events in his amended complaint that reference occurrences from 2002 to 2011. In this list Plaintiff makes claims including but not limited to: "odd events," "bogus tickets," "chemicals or contaminnets [sic] being put in to [his] food," "sabotage [to his] own consulting/financial services business," "politics and case fixing," "electronic directed energy weapon (dew) attacks," "corrupt gravy train," and "civil rights blackout." *Id.* at 4–10. However, all of the events, occurrences, and claims lack substance and are mere conclusory statements.

***4** In his amended complaint, Plaintiff clarifies he is seeking monetary damages, injunctive monetary relief, punitive damages, and "an immediate and thorough criminal investigation and prosecutions." *Id.* at 10. Plaintiff states that he seeks mandamus relief under 28 U.S.C. § 1361, and restates he seeks relief under 18 U.S.C. §§ 241–242 & 245. *Id.* at 11.

Having reviewed the amended complaint, the Court finds that Plaintiff has failed to plausibly allege that he is entitled to any of the relief he seeks. As discussed above, Plaintiff's claims must be dismissed because they are entirely conclusory, lack an arguable basis in law or fact, and fail to state a claim on which relief may be granted. *See Ashcroft,* 556 U.S. at 678; *Neitzke,* 490 U.S. at 325; 28 U.S.C. § 1915(e)(2)(B)(ii). Additionally, as discussed above, there is no private right of action under 18 U.S.C. §§ 241–242 & 245. *See, e.g., Dugar,* 613 F.Supp. at 852 n.1. Again, there was also no constitutional violation because there is no right to an investigation. *See, e.g., Bernstein,* 591 F.Supp. at 460.

Based on the foregoing, the Court finds that Plaintiff's amended complaint fails to set forth any non-frivolous causes of action. Since permitting additional amendment would be futile, Plaintiff's amended complaint is dismissed with prejudice.

In view of the frivolous nature of Plaintiff's claims, the Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith and, therefore, in forma pauperis status is denied for the purpose of an appeal. *See Coppedge v. United States,* 369 U.S. 438, 444–45 (1962); *see also Slack v. McDaniel,* 529 U.S. 473, 484 (2000).

**IV. CONCLUSION**

After carefully considering Magistrate Judge Baxter's Order and Report–Recommendation, Plaintiff's objections thereto, and the applicable law, and for the reasons stated herein, the Court hereby

**ORDERS** that Magistrate Judge Baxter's April 6, 2015 Order and Report–Recommendation is **ADOPTED;** and the Court further

**ORDERS** that Plaintiff's complaint and amended complaint are **DISMISSED with prejudice;** and the Court further

**ORDERS** that the Clerk of the Court shall enter judgment in Defendants' favor and close this case; and the Court further

**ORDERS** that the Clerk of the Court shall serve Plaintiff with a copy of this Memorandum–Decision and Order.

**IT IS SO ORDERED.**

**ORDER and REPORT–RECOMMENDATION**

ANDREW T. BAXTER, United States Magistrate Judge.

The Clerk has sent to the Court a civil rights complaint filed by pro se plaintiff Matthew R. Ehlers. (Dkt. No. 1) Plaintiff has also filed an application to proceed in forma pauperis ("IFP") and a motion for appointment of counsel. (Dkt.Nos.2, 3). For the following reasons, this court will grant plaintiff's IFP application, but will recommend dismissal pursuant to 28 U.S.C. § 1915(e)(2)(B)(i)-(iii).

**I. *IFP Application***

*5 A review of plaintiff's IFP application shows that he declares he is unable to pay the filing fee. (Dkt. No. 2). Although plaintiff's application is technically incomplete, this court will assume for purposes of this order that plaintiff meets the financial criteria to proceed IFP. [1]

In addition to determining whether plaintiff meets the financial criteria to proceed IFP, the court must also consider the sufficiency of the allegations set forth in the complaint in light of 28 U.S.C. § 1915, which provides that the court shall dismiss the case at any time if the court determines that the action is (i) frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B) (i)-(iii).

In determining whether an action is frivolous, the court must consider whether the complaint lacks an arguable basis in law or in fact. *Neitzke v. Williams,* 490 U.S. 319, 325 (1989). Dismissal of frivolous actions is appropriate to prevent abuses of court process as well as to discourage the waste of judicial resources. *Neitzke,* 490 U.S. at 327; *Harkins v. Eldridge,* 505 F.2d 802, 804 (8th Cir.1974). Although the court has a duty to show liberality toward *pro se* litigants, and must use extreme caution in ordering *sua sponte* dismissal of a *pro se* complaint before the adverse party has been served and has had an opportunity to respond, the court still has a responsibility to determine that a claim is not frivolous before permitting a plaintiff to proceed. *Fitzgerald v. First East Seventh St. Tenants Corp.,* 221 F.3d 362, 363 (2d Cir.2000) (finding that a district court may dismiss a frivolous complaint sua sponte even when plaintiff has paid the filing fee).

To survive dismissal for failure to state a claim, the complaint must contain sufficient factual matter, accepted as true, to state a claim that is "plausible on its face." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Bell Atl. Corp.,* 550 U.S. at 555). The court will now turn to a consideration of the plaintiff's complaint under the above standards.

**II. *Complaint***

The complaint is very short and contains limited facts. (Complaint "Compl.") (Dkt. No. 1). It is divided into three "causes of action." (Compl. at 1–2). Plaintiff names the Central Intelligence Agency ("CIA"); CIA Director, David B. Buckley;[2] and Inspector General ("IG") Michael E. Horowitz.[3] Plaintiff alleges that on May 6, 2011, he sent a letter to defendant Buckley outlining facts and events which he alleges represent

> such serious and aggregious [sic] criminal activity and allegations, that it should have prompted an immediate appropriate response and internal investigation into the associated misconduct, criminal politics, corporate crime and conspiracy against rights (Title 18 section 241 and 242, 245).

*6 (Compl. at 1). Plaintiff claims that he never received a response from defendant Buckley, which plaintiff believes is a violation of due process. (*Id.*) Plaintiff claims that the failure of defendant Buckley to respond "furthered the conspiracy and attacks against [his] family and [him], [his] career, [their] rights as well as general peace and well being." (Compl. at 2).

Plaintiff's second cause of action states that he also contacted the Office of the Inspector General ("OIG") with the same information as reported to the CIA. (*Id.*) Plaintiff states that he filed an "official complaint," but he received an "extremely bizarre" response which "completely ignored the facts and events set forth and declared the matter closed without any due process or investigation whatsoever." (*Id.*)

Plaintiff's third cause of action states that he again contacted OIG on July 17, 2012, August 3, 2012 to request "and demand" an investigation into the "obvious heinous crimes," corruption, and "criminal politics." (*Id.*) Plaintiff also "voiced dismay" over the lack of proper response to his correspondence. Plaintiff states that he received a "similarly neglectful and bizarre response" from OIG on August 10, 2012. On September 4, 2012, he contacted OIG "one final time" to inform "them" of his intent to file a federal action. Plaintiff claims that there is obvious coercion, manipulation, blackmailing, bribery, case-fixing/tampering, corporate bartering, and "cronyism" at several levels. Plaintiff is not sure who is responsible for the handling or mishandling of the correspondence that he and his family have sent over the years, but he is filing this federal action, "having exhausted all other remedies." (Compl. at 2).

Plaintiff requests an "immediate and thorough criminal investigation into the crimes, individuals, entities and allegations set forth in the attached correspondence[4] as well as the associated misconduct, criminal politics and corruption." (*Id.*) Plaintiff also appears to be asking for

monetary relief, due to "lack of due process and lack of enforcement." (*Id.*)

### III. *Venue*

**A. Legal Standards**

Proper venue in civil actions in which the defendants are officers or employees of the United States is as follows:

> (1) In general.—A civil action in which a defendant is an officer or employee of the United States or any agency thereof acting in his official capacity or under color of legal authority, or an agency of the United States, or the United States, may, as otherwise provided by law, be brought in any judicial district in which (A) a defendant in the action resides, (B) a substantial part of property that is the subject of the action is situated, or (C) the plaintiff resides if no real property is involved in the action.

28 U.S.C. § 1391(e)(1). However, venue in actions bringing claims against defendants in their "individual capacities" is governed by 28 U.S.C. § 1391(b) which provides that

> *7 A civil action may be brought in—
>
> (1) a judicial district where any defendant resides, if all defendants are residents of the State in which the district is located;
>
> (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, ... or
>
> (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

*See Atlantic Marine Const. Co., Inc. v. U.S. Dist. Court for the Western District of Texas*, ––– U.S. ––––, 134 S.Ct. 568, 577 (2013).

**B. Application**

In this case, plaintiff has named CIA IG, David B. Buckley and DOJ IG, Michael E. Horowitz. Plaintiff's first request appears to be in the nature of injunctive or mandamus relief. He states that he is requesting "an immediate and thorough criminal investigation." (Compl. at 2). To the extent that he names the IGs in their official capacities for equitable relief, venue is proper in the Northern District of New York based upon 28 U.S.C. § 1391(e)(1)(C) because plaintiff resides in this district, and no real property is alleged to be involved in the action.

To the extent that plaintiff seeks monetary relief from either director individually [5] for constitutional [6] violations, the only basis upon which plaintiff could bring the action is *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971) which allows citizens to file damage claims for constitutional violations committed by federal agents or employees, acting under color of federal law. *See Arar v. Ashcroft*, 585 F.3d 559, 571–72 (2d Cir.2009) (discussing history of *Bivens* actions).

Under section 1391(b), a claim against the defendants "individually" would normally be brought in Washington, D.C., where the alleged unconstitutional acts took place, [7] or where the defendants reside, which is unlikely the Northern District of New York. However, in a case involving multiple claims, dismissal of an improperly venued claim is not warranted if " 'it is factually related to a properly venued claim and the claims could be considered one cause of action with two grounds of relief.' " *Mikhaylov v. United States*, 29 F.Supp.2d 260, 273–74 (E.D.N.Y.2014) (quoting *United States Envtl. Prot. Agency ex rel. McKeown v. Port Auth. of N.Y. & N.J.*, 162 F.Supp.2d 173, 183 (S.D.N.Y.2001), *aff'd sub nom. McKeown v. Del. Bridge Auth.*, 23 F. App'x 81 (2d Cir.2001)).

In this case, the court will consider plaintiff's official capacity and individual capacity claims sufficiently related so that venue is proper in the Northern District of New York. Notwithstanding proper venue, this case must be dismissed.

### IV. *Right to Investigation*

**A. Legal Standards**

Plaintiff has no constitutional right to an investigation of any sort by government officials. *See Bernstein v. New York*, 591 F.Supp.2d 448, 460 (S.D.N.Y.2008); *Lewis v. Gallivan*, 315 F.Supp.2d 313, 317 (W.D.N.Y.2004) (citing cases). In

order for a constitutional violation to have occurred, the investigation itself must have resulted in the deprivation of a constitutional right. *Faison v. Hash*, 03–CV–6475P, 2004 WL 944523, at *6 (W.D.N.Y. April 23, 2004) (citation omitted). It is also well-settled that there is no private right of action under federal criminal statutes such as 18 U.S.C. §§ 241 or 242. *Robinson v. Overseas Mil. Sales Corp.*, 21 F.3d 502, 511 (2d Cir.1994); *Marshall v. Webster Bank, N.A.*, 3:10–CV–908, 2011 WL 219693, *8 (D.Conn. Jan. 21, 2011) (citing cases); *Vasile v. Dean Witter Reynolds, Inc.*, 20 F.Supp.2d 465, 478 (E.D.N.Y.1998), *aff'd*, 205 F.3d 1327 (2d Cir.2000) (citations omitted).

**B. Application**

***8** Plaintiff is suing defendants because the CIA and the DOJ failed to investigate or prosecute after plaintiff allegedly sent them information, reporting the harassment that he and his family have suffered due to their "whistleblowing" activities. Because plaintiff has no right, constitutional or otherwise, to an investigation or prosecution, the defendants did not deny him due process by failing to conduct either one. [8] The court would also point out that the complaint itself does not "detail" any of the specific facts of the alleged harassment. [9] He simply states that in 2011 and 2012, defendants failed to investigate his allegations. Plaintiff makes only general allegations of the corruption he wished to have investigated. He alleges "attacks against his family," conspiracies, case-fixing, bribery, corporate bartering, and the like. (Compl. at 2). Conslusory allegations are insufficient to state a constitutional claim. [10] *Barr v. Abrams*, 810 F.2d 358, 363 (2d Cir.1987).

Thus, this court must recommend dismissal of plaintiff's complaint for failure to state a claim because plaintiff is not entitled to, nor can he "demand" an investigation.

**V. *Opportunity to Amend***

Generally, when the court dismisses a pro se complaint *sua sponte*, the court should afford the plaintiff the opportunity to amend at least once, however, leave to re-plead may be denied where any amendment would be futile. *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir.1993). In this case, the court finds that any attempt by the plaintiff to amend this complaint would be futile, and he would still be unable to state a federal claim.

**VI. *Appointment of Counsel***

**A. Legal Standards**

There is no bright-line test for determining whether counsel should be appointed on behalf of an indigent party. *Hendricks v. Coughlin*, 114 F.3d 390, 392–93 (2d Cir.1997). A number of factors must be carefully considered by the court in ruling upon the motion. The court must first assess whether the indigent's claims seem likely to be of substance. If so, the court then considers:

> [t]he indigent's ability to investigate the crucial facts, whether conflicting evidence implicating the need for cross examination will be the major proof presented to the fact finder, the indigent's ability to present the case, the complexity of the legal issues and any special reason in that case why appointment of counsel would be more likely to lead to a just determination.

*Terminate Control Corp. v. Horowitz*, 28 F.3d 1335, 1341 (2d Cir.1994) (quoting *Hodge v. Police Officers*, 802 F.2d 58, 61 (2d Cir.1986)). Each case must be decided on its own facts, and the court may consider any or all of the above factors in its determination. *Velasquez v. O'Keefe*, 899 F.Supp. 972, 974 (N.D .N.Y.1995) (McAvoy, C.J.) (citing *Hodge*, 802 F.2d at 61).

**B. Application**

Plaintiff has contacted multiple attorneys who have refused to take his case. (Dkt. No. 3). This court finds that plaintiff's complaint does not state a claim, and that he will be unable to amend to state a claim because he simply has no right to the relief that he requests. Therefore, the complaint lacks substance, and the plaintiff cannot meet the first requirement for appointment of counsel. The court need not proceed with the rest of the above analysis. Plaintiff's motion for appointment of counsel is denied.

***9 WHEREFORE,** based on the findings above, it is

**ORDERED,** that plaintiff's application to proceed IFP (Dkt. No. 2) is **GRANTED FOR PURPOSES OF FILING ONLY,** and it is

**RECOMMENDED,** that this action be **DISMISSED IN ITS ENTIRETY WITH PREJUDICE** pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii)-(iii) for failure to state a claim, and it is

**ORDERED,** that plaintiff's motion for appointment of counsel (Dkt. No. 3) is **DENIED.**

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette,* 984 F.2d 85, 89 (2d Cir.1993) (citing *Small v. Sec. of Health & Human Servs.,* 892 F.2d 15 (2d Cir.1989)); 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 6(a), 6(e), 72.

Dated: April 6, 2015.

**All Citations**

Not Reported in F.Supp.3d, 2015 WL 3637431

**Footnotes**

1 To determine whether an action is frivolous, a court must look to see whether the complaint "lacks an arguable basis either in law or in fact." *Neitzke v. Williams,* 490 U.S. 319, 325 (1989).

2 "Dismissal of frivolous actions pursuant to 28 U.S.C. § 1915e is appropriate to prevent abuses of the process of the court," *Nelson v. Spitzer,* No. 9:07–CV–1241, 2008 WL 268215, *1 n.3 (N.D .N.Y. Jan. 29, 2008) (citation omitted), as well as "to discourage the filing of [baseless lawsuits], and [the] waste of judicial ... resources[.]" *Neitzke,* 490 U.S. at 327.

1 In his application, plaintiff states that he is currently unemployed. He then states that in the past twelve months, he has received income from "business, profession or other self employment," but does not state the source of the money, the amount received, or what he expects to receive. (Dkt. No. 2 at 1). He also states that his children "help" him by giving him $25.00 to $30.00 per week, but on the next page, he states that he supports his children by contributing $50.00 to $192.00 per week. (Dkt. No. 2 at 1–2). These omissions and inconsistencies are not explained, but as stated above, the court will find plaintiff financially eligible for the limited purpose of this Order and Report–Recommendation.

2 David Buckley is the CIA's Inspector General, not the Director of the CIA. The current Director of the CIA is John Brennan. https:// www.cia.gov/news-information/pressreleases-statements/index. Plaintiff's error does not affect this court's decision.

3 Michael E. Horowitz is the IG of the Department of Justice ("DOJ"). Plaintiff does not specify defendant Horowitz's agency in the complaint.

4 There is no correspondence attached to the complaint. There are many emails, attached to plaintiff's motion for appointment of counsel. (Dkt. No. 3). The emails appear to be excerpts of correspondence that plaintiff sent to various attorneys in an attempt to encourage counsel to take his case. In one of the emails there is a chronology of events that plaintiff sent to counsel which may further explain the conduct of which plaintiff complains. (Dkt. No. 3 at CM/ECF pp.24–29). I will discuss the facts stated in plaintiff's email below as appropriate to clarify plaintiff's claims.

5 To the extent that plaintiff seeks to name the CIA as a defendant, sovereign immunity would prevent a suit for damages directly against the agency. As a federal agency, the CIA is protected against suit by the sovereign immunity afforded to the United States. *Robinson v. Overseas Military Sales Corp.,* 21 F.3d 502, 510 (2d

Cir.1994). Absent an unequivocal waiver of that sovereign immunity in statutory text, this court would lack subject matter jurisdiction. *Adeleke v. United States,* 355 F.3d 144, 150 (2d Cir.2004); *Marakova v. United States,* 201 F.3d 110, 113 (2d Cir.2000). The United States has not waived its sovereign immunity with respect to constitutional claims seeking money damages that are brought directly against the United States or an agency thereof. *Robinson,* 21 F.3d at 510.

6 Plaintiff claims he was denied due process as a result of the defendants' failure to investigate his allegations. (Compl. at 1–2).

7 The refusal to investigate plaintiff's claims presumably occurred in defendants' offices, neither of which are in the Northern District of New York.

8 In his motion for appointment of counsel, plaintiff also mentions the words "equal protection." (Dkt. No. 3 at 29). The Equal Protection Clause of the Fourteenth Amendment requires that the government treat all similarly situated people alike. *Nicholas v. Tucker,* 114 F.3d 17, 20 (2d Cir.1997). Generally, the equal protection clause has been "concerned with governmental 'classifications that affect some groups of citizens differently than others.' " *Engquist v. Or. Dep't of Agric.,* 553 U.S. 591, 601 (2008). In his complaint, there is absolutely no indication that anyone was treated differently than plaintiff by these defendants. There is no indication that another similarly situated individual obtained an investigation by defendants under similar circumstances. Thus, to the extent that plaintiff's motion for appointment of counsel could be interpreted as in some way raising such an equal protection claim in plaintiff's complaint, the court would still recommend dismissal.

9 The court is merely noting these facts. This recommendation is based *only* upon the fact that plaintiff is not entitled to an investigation of any sort, not that he has not detailed his claims of harassment.

10 The court does note that a review of plaintiff's motion for appointment of counsel (addressed below) does contain a "timeline of events/incidents" that plaintiff sent to one attorney in an effort to obtain counsel. (Dkt. No. 3 at CM/ECF pp.24–29). The incidents described by plaintiff begin in 2002 and span occurrences in various states through 2011. The court will not recite all the facts as stated by plaintiff in his description of the relevant facts, but would only note some of the statements. In 2002, police in New Jersey engaged in "odd behavior." (Dkt. No. 3 at 24). In 2003, references were made to plaintiff that the "mob" was after him, including direct statements from coworkers at "Meow–Mix Company" bragging about their corrupt law enforcement friendships. (*Id.* at 25). In 2004, while working at the Hartz Mountain Corporation, plaintiff's supervisor bragged of CIA connections, how he can "set" plaintiff up, and bragged about "having hacked" plaintiff's email. (*Id.*) There are also allegations of occurrences between 2003 and 2008. In 2008, plaintiff claims that he was offered a job in Albany, which turned out to be a "scam," and the company closed its Albany office within two weeks after plaintiff moved there. (*Id.* at 26). Plaintiff alleged that there was "reason to believe" that this was done to plaintiff "intentionally." (*Id.*) Plaintiff mentions a hit-and-run in 2009 and a DWI in 2010 (although plaintiff concedes that he had too much to drink, but is convinced that "they seemed to be ready for it." (*Id.* at 27). Notwithstanding all these incidents, plaintiff never specifies who may be responsible or to what "criminal group" he is referring. (*Id.* at 28). Even including all the facts as stated in plaintiff's motion for appointment of counsel, his rights would not have been violated when the CIA or any of the three defendants refused to investigate his "case" in 2011 and 2012.

End of Document © 2026 Thomson Reuters. No claim to original U.S. Government Works.

2018 WL 816846
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Agnes GEORGES, Plaintiff,
v.
Joel HATSER, Advisor Lawyer; Joseph Ciavanitti, US Attorney Lawyer; Kurt Bratten Brian, Bar Association 518-445-7691, Defendants.

No. 1:17-CV-1243 (GTS/CFH)
|
Signed 01/02/2018

**Attorneys and Law Firms**

Agnes Georges, Albany, NY, pro se.

**REPORT-RECOMMENDATION AND ORDER**[1]

Christian F. Hummel, U.S Magistrate Judge

***1** Plaintiff pro se Agnes Georges commenced this action on November 13, 2017 with the filing of a complaint. Dkt. No. 1 ("Compl."). In lieu of paying this Court's filing fee, plaintiff filed a Motion to Proceed In Forma Pauperis ("IFP"). Dkt. No. 2. Plaintiff also filed a Motion for Appointment of Counsel. Dkt. No. 3. After reviewing plaintiff's IFP application, Dkt. No. 2, the undersigned determines that plaintiff qualifies to proceed IFP for purposes of filing.[2]

**I. Initial Review**

Section 1915(e) of Title 28 of the United States Code directs that, when a plaintiff seeks to proceed IFP, "the court shall dismiss the case at any time if the court determines that ... the action or appeal (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). Thus, it is a court's responsibility to determine that a plaintiff may properly maintain his complaint before permitting him to proceed with his action. As plaintiff is representing herself, the Court is to consider her claims "liberally" and "interpret them 'to raise the strongest arguments that they suggest.' " Cold Stone Creamery, Inc. v. Gorman, 361 Fed.Appx. 282, 286 (summary order) (quoting Brownell v. Krom, 446 F.3d 305, 310 (2d Cir. 2006)).

**II. Plaintiff's Complaint**

Plaintiff's complaint in this action consists of a form civil rights complaint. Plaintiff states that each named defendant, who she identifies as lawyers, "refuse to help me." Compl. at 1-2. It appears that plaintiff contacted all of these defendants for some form of assistance, and was denied such assistance. See id. She suggests that these defendants are aware of a conspiracy involving Levy Rathner, "a US Gov Commander Chief" and the police, but defendants "prefer to protect him not me." Id. at 2. It appears that plaintiff sought to file a report with police about certain crimes committed against her, but was not allowed to file a report or provide an order of protection. Id. at 4. Plaintiff has not named any police officer or police department as a defendant in this action.

As indicated above, plaintiff's complaint makes unexplained references to "Levy Rathner," who is not a named defendant, and also refers to a "crime" or a "network," "corruption, stealing cards, use fake ID, fake credit card, steal my identity, use them for somebody else, a damage for life." Compl. at 3. Plaintiff provides that she "feel[s] unsafe wherever I go, federal police keep follow [sic] me, I am an [sic] spy." Id. at 4. However, plaintiff does not explain any of these allegations. Her complaint does not detail to any degree how the named defendants were personally involved in these alleged wrongs. Moreover, the complaint does not explain how any of the named defendants violated any federal law or any of her constitutional rights. To the extent that plaintiff suggests that she sought legal assistance from the named defendants, and that defendants either declined to represent her or declined to prosecute certain alleged crimes, a prosecutor's decision not to prosecute[3] a case[4] or a lawyer's decision not to represent an individual[5] does not amount to a violation of the law. Id. at 3. Plaintiff's complaint also does not provide a clear demand for relief. Id. at 6.

***2** Pleading guidelines are set forth in the Federal Rules of Civil Procedure. Specifically, Rule 8 provides that a pleading which sets forth a claim for relief shall contain, inter alia, "a short and plain statement of the claim showing that the pleader is entitled to relief." See FED. R. CIV. P. 8(a)(2). "The purpose ... is to give fair notice of the claim being asserted so as to permit the adverse party the opportunity to file a responsive answer, prepare an adequate defense and

determine whether the doctrine of res judicata is applicable." Flores v. Graphtex, 189 F.R.D. 54, 54 (N.D.N.Y. 1999) (internal quotation marks and citations omitted). Rule 8 requires:

(1) a short and plain statement of the grounds for the court's jurisdiction ...;

(2) a short and plain statement of the claim showing that the pleader is entitled to relief; and

(3) a demand for the relief sought....

FED. R. CIV. P. 8(a). Although "[n]o technical form is required," the Federal Rules make clear that each allegation contained in the pleading "must be simple, concise, and direct." Id. at 8(d).

Further, Rule 10 of the Federal Rules provides in pertinent part that:

> [a] party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances. A later pleading may refer by number to a paragraph in an earlier pleading. If doing so would promote clarity, each claim founded on a separate transaction or occurrence—and each defense other than a denial—must be stated in a separate count or defense.

FED. R. CIV. P. 10(b). This serves the purpose of "provid[ing] an easy mode of identification for referring to a particular paragraph in a prior pleading[.]" Flores, 189 F.R.D. at 54 (internal quotation marks and citations omitted). A complaint that fails to comply with the pleading requirements "presents far too a heavy burden in terms of defendants' duty to shape a comprehensive defense and provides no meaningful basis for the Court to assess the sufficiency of their claims." Gonzales v. Wing, 167 F.R.D. 352, 355 (N.D.N.Y. 1996).

As the Second Circuit has held, "[w]hen a complaint does not comply with the requirement that it be short and plain, the court has the power, on its own initiative ... to dismiss the complaint." Salahuddin v. Cuomo, 861 F.2d 40, 42 (2d Cir. 1988) (citations omitted). However, "[d]ismissal ... is usually reserved for those cases in which the complaint is so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised." Id. (citations omitted). In such cases of dismissal, especially with respect to a pro se complaint, the court generally affords the plaintiff leave to amend the complaint to state a nonfrivolous claim. See Simmons v. Abruzzo, 49 F.3d 83, 86-87 (2d Cir. 1995). A court should not dismiss a complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). Although detailed allegations are not required, the complaint must still include sufficient facts to afford the defendants fair notice of the claims and the grounds upon which they are based and to demonstrate a right to relief. Id. at 555-56. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citation omitted). In reviewing a pro se complaint, the Court must "liberally construe [the] pleadings," and interpret the complaint to "raise the strongest arguments it suggests." Abbas v. Dixon, 480 F.3d 636, 639 (2d Cir. 2007). However, conclusory allegations are not sufficient. See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

***3** Plaintiff's complaint does not comply with the pleading requirements, and it is not possible, for the Court to assess how any named defendant was personally involved in any violation of federal law, what federal laws or constitutional rights she alleges were violated, or whether this action is properly in federal court. See, e.g., Williams v. Smith, 781 F.2d 319, 323 ("[P]ersonal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.") (citation and internal quotation marks omitted). Ultimately, plaintiff has not provided sufficient facts for this Court to assess plaintiff's complaint, as plaintiff has given no context for her general statements about violations of the law by parties who are not named in the complaint, nor explanations as to how her constitutional rights were violated by either these unnamed parties or by the named defendants. See Compl.

The undersigned further recommends that the complaint be dismissed with prejudice. Although the district court generally is to afford a pro se plaintiff at least one opportunity to amend prior to outright dismissal, Dolan v. Connolly, 794 F.3d 290, 295 (2d Cir. 2015), it is clear to the undersigned that any attempt by plaintiff to amend her complaint would be futile. See Cuoco v. Moritsugu, 222 F.3d 99, 112 (2d

Cir. 2000). Plaintiff's complaint is clearly "a case[ ] in which the complaint is so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised." Salahuddin v. Cuomo, 861 F.2d 40, 42 (2d Cir. 1988) (citations omitted). Plaintiff has submitted at least seven other actions in this Court, many of which were submitted on the same day, and all of these complaints have either been dismissed for failure to comply with pleading standards or a recommendation for dismissal is pending for review before the assigned District Judge.[6] Further, in matters where plaintiff was given an opportunity to amend her complaint, those cases were eventually dismissed for failure to properly comply with the Court's order. See Georges v. Duchene (DNH/DJS), 17-CV-86, Dkt. No. 9; Georges v. Schneiderman (BKS/DJS), 17-CV-524, Dkt. No. 16. Even in light of the special solicitude to be accorded to pro se plaintiffs' complaints, "courts cannot read into pro se submissions claims that are not consistent with the pro se litigant's allegations[.]" Giamattista v. Am. Airlines, Inc., 584 Fed.Appx. 23, 25 (2d Cir. 2010) (summary order).

Finally, as the undersigned is recommending dismissal of plaintiff's complaint, it is also recommended that her motion for appointment of counsel be denied as moot. See Leftridge v. Connecticut State Trooper Officer No. 1283, 640 F.3d 62, 68 (2d Cir. 2011).[7]

### III. Anti-Filing Injunction Order

*4 As indicated herein, plaintiff has commenced at least seven actions in this Court in the past year, several of which were filed in November 2017. See n.6, supra. All of plaintiff's cases have either been dismissed or are pending with a recommendation for dismissal and all appear to involve similar unintelligible claims about a "network," Levy Rathner, and unspecified and/or crimes committed against herself and her family. In the cases where plaintiff was given an opportunity to amend, she did not submit any responsive or intelligible filing that adequately addressed the Court's concerns.

"District courts possess the authority to issue injunctive sanctions under Rule 11." Colida v. Nokia Inc., No. 07 CIV.8056 KMW HBP, 2008 WL 4517188, at *13 (S.D.N.Y. May 6, 2008), report and recommendation adopted as modified, No. 07 CIV 8056 KMW HBP, 2008 WL 4449419 (S.D.N.Y. Sept. 29, 2008), aff'd, 347 Fed.Appx. 568 (Fed. Cir. 2009) (quoting In re Martin-Trigona, 737 F.2d 1254, 1261-62 (2d Cir. 1984)). "Federal courts have ... the constitutional obligation to protect their jurisdiction from conduct which impairs their ability to carry out Article III functions." Martin-Trigona, 737 F. Supp. 2d at 1261. The Court must consider the following factors in drtermining whether to issue an anti-filing injunction:

> (1) the litigant's history of litigation and in particular whether it entailed vexatious, harassing or duplicative lawsuits; (2) the litigant's motive in pursuing the litigation, e.g., does the litigant have an objective good faith expectation of prevailing?; (3) whether the litigant is represented by counsel; (4) whether the litigant has caused needless expense to other parties or has posed an unnecessary burden on the courts and their personnel; and (5) whether other sanctions would be adequate to protect the courts and other parties.

Safir v. U.S. Lines Inc., 792 F.2d 19, 24 (2d Cir. 1986). "Ultimately, the question the court must answer is whether a litigant who has a history of vexatious litigation is likely to continue to abuse the judicial process and harass other parties." Id. at 24.

The first factor, plaintiff's history of litigation, weighs in favor of granting the anti-filing injunction. All of the lawsuits plaintiff has commenced in this District appear to be reiterations of the same claims. Although the complaints in each case are very difficult to interpret, it can be gathered that in each complaint, plaintiff seeks review of issues related to a "network" that appears to be a conspiracy to commit crimes against her and spy on her. However, in each case, the assigned Judge has determined that plaintiff's complaint failed to meet the pleading requirements. See n.6, supra. Further, plaintiff has been unable to set forth claims that meet basic pleading standards even where plaintiff has been given an opportunity to amend. See, e.g., Georges v. Duchene (DNH/DJS), 1:17-CV-86; Georges v. Schneiderman (BKS/DJS), 1:17-CV-524. In addition, although not dispositive of the issue, it is noteworthy that plaintiff has also attempted to commence at least one similar action in another district, and that action was dismissed without prejudice as the complaint

"fails to meet the minimal pleading requirements of Rule 8(a) of the Federal Rules of Civil Procedure." See Georges v. Doctor Dalmacy, 17-CV-00017 (D.D.C. filed Jan. 4, 2017).

As to the second factor, it cannot be said that plaintiff has a good faith motive in pursuing this litigation. Although plaintiff is proceeding pro se, and it appears she experiences difficulty in complying with this Court's pleading standards, this Court has repeatedly explained that her complaints do not supply sufficient coherent facts or claims for the Court to assess her claim, yet she continues to file very similar complaints with the same defects. Safir, 792 F.2d at 24. Although plaintiff is not represented by counsel, the third factor this Court is to consider, this factor does not weigh against granting an injunction, as it is unlikely that even if represented, plaintiff would be able to state a claim. Safir, 792 F.2d at 24. As for the fourth factor, plaintiff has not caused "needless expense to other parties," as plaintiff's complaints have not been served on the defendants; however, plaintiff has "posed an unnecessary burden on the courts and their personnel," as she has filed multiple actions involving what appears to be the same or similar claims, and has not been able to amend her complaint or properly comply with Court orders in those cases, despite being provided with such opportunities. As to the final factor, it does not appear to the undersigned that lesser sanctions would suffice, as plaintiff does not appear to understand, or perhaps have regard for, the Federal Rules of Civil Procedure, the Local Rules of the Northern District of New York, or the basic facts necessary to provide a sufficient background of her claims before this Court. Id. The undersigned is of the belief that plaintiff will continue to file frivolous lawsuits about the same matters. Accordingly, it is recommended that an anti-filing injunction be issued against this plaintiff requiring plaintiff to obtain permission of the Court prior to filing any actions in this District.

***5** Although anti-filing injunctions are to be narrowly tailored, because plaintiff repeatedly names a variety of defendants, providing little or any information about how defendants are personally involved in the alleged wrongdoings, it is unlikely that attempting to tailor an anti-filing injunction that would be limited to certain claims or defendants would be of utility. Accordingly, it is recommended that the anti-filing injunction enjoin plaintiff from commencing *any* new action in this district without first obtaining leave of the Court. Finally, as a litigant must be given an opportunity to be heard before an anti-filing injunction is entered against her, it is also recommended that the Court provide such opportunity to plaintiff. See Moates v Barkley, 147 F.3d 207, 208 (1998).

**IV. Conclusion**

**WHEREFORE**, for the reasons stated herein, it is hereby

**ORDERED**, that plaintiff's motion to proceed IFP (Dkt. No. 2) be **GRANTED** for purposes of filing only; and it is

**RECOMMENDED**, that plaintiff's complaint (Dkt. No. 1) be **dismissed sua sponte** *with prejudice*, and it is

**RECOMMENDED**, pursuant to 28 U.S.C. § 1651(a), this Court issue an Anti-Filing Injunction, ordering that plaintiff be enjoined from further filings in the Northern District of New York without leave of Court; and it is

**ORDERED**, that plaintiff's Motion for Appointment of Counsel (Dkt. No. 3) be **DENIED** as moot; and it is

**ORDERED**, that the Clerk of the Court serve this Report-Recommendation and Order on plaintiff in accordance with the Local Rules.

**IT IS SO ORDERED.**

Pursuant to 28 U.S.C. § 636(b)(1), parties may lodge written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court "within fourteen (14) days after being served with a copy of the ... recommendation." N.Y.N.D. L.R. 72.1(c) (citing 28 U.S.C. § 636(b)(1)(B)-(C)). **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.** Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993); Small v. Sec'y of HHS, 892 F.2d 15 (2d Cir. 1989); 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72, 6(a), 6(e).

**All Citations**

Not Reported in Fed. Supp., 2018 WL 816846

## Footnotes

1 This matter was referred to the undersigned for Report-Recommendation and Order pursuant to 28 U.S.C. § 636(b) and N.D.N.Y. L.R. 72.3(c).

2 Although she has been granted IFP status in connection with filing this complaint, plaintiff will still be required to pay any fees she may incur in this action.

3 " '[P]rosecutors are absolutely immune from liability under § 1983' in matters involving the prosecution—or failure to prosecute—individuals." Wagner v. Mollen, 5:05-CV-1290 (NAM/DEP), 2005 WL 2592417, at *1 (N.D.N.Y. Oct. 13, 2005) (quoting Dory v. Ryan, 25 F.3d 81, 83 (2d Cir. 1994)).

4 Plaintiff may arguably be arguing that one of the named defendants, who she identified as a "US Attorney Lawyer," improperly declined to prosecute certain unnamed persons or entities.

5 Plaintiff does not contend that she paid any of these attorneys a retainer fee to represent her as her attorney.

6 See Georges v. Rathner (DNH/DJS), 1:17-CV-1276 (filed Nov. 13, 2017); Georges v. Duchene (DNH/DJS), 1:17-CV-86 (dismissed for failure to comply with Court's Order) (filed Jan. 26, 2017); Georges v. Schneiderman (BKS/DJS), 1:17-CV-524 (dismissed for failure to state a claim) (filed May 11, 2017); Georges v. Gov. Tower VA, 1:17-CV-1244 (TJM/ATB) (filed Nov. 13, 2017); (recommendation pending for dismissal with prejudice for failure to state a claim and frivolity); Georges v. Rathner (BKS/DJS) 1:17-CV-1245 (recommendation for dismissal with prejudice pending) (filed Nov. 13, 2017); Georges v. Cuomo (TJM/DJS), 1:17-CV-1247 (recommendation for dismissal with prejudice pending) (filed Nov. 13, 2017); Georges v. Rathner, 1:17-CV-1246 (DNH/CFH)(recommendation for dismissal with prejudice pending)(filed Nov. 13, 2017).

7 It is also noted that plaintiff has not provided evidence of any efforts she has taken in an attempt to obtain counsel on her own from either the public or private sectors. Terminate Control Corp. v. Horowitz, 28 F.3d 1135 (2d Cir. 1994). She has further failed to demonstrate that her claims are likely to be of substance —a consideration this Court must weigh in assessing requests for appointment of counsel. Leftridge v. Connecticut State Trooper Officer No. 1283, 640 F.3d 62, 68 (2d Cir. 2011).

End of Document

© 2026 Thomson Reuters. No claim to original U.S. Government Works.

2017 WL 8230677
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Agnes GEORGES, Plaintiff,
v.
Levy RATHNER and Felix Phillipe, Defendants.

No. 1:17-CV-1246 (DNH/CFH)
|
Signed 12/22/2017

**Attorneys and Law Firms**

Agnes Georges, Baldwin, NY, pro se.

**REPORT-RECOMMENDATION AND ORDER** [1]

Christian F. Hummel, U.S. Magistrate Judge

***1** Plaintiff pro se Agnes Georges commenced this action on November 13, 2017 with the filing of a complaint. Dkt. No. 1 ("Compl."). In lieu of paying this Court's filing fee, plaintiff filed a Motion to Proceed In Forma Pauperis ("IFP"). Dkt. No. 2. Plaintiff also filed a Motion for Appointment of Counsel. Dkt. No. 3. After reviewing plaintiff's IFP application, Dkt. No. 2, the undersigned determines that plaintiff qualifies to proceed IFP. [2]

**I. Initial Review**

**A. Legal Standards**

Section 1915(e) of Title 28 of the United States Code directs that, when a plaintiff seeks to proceed IFP, "the court shall dismiss the case at any time if the court determines that ... the action or appeal (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). It is a court's responsibility to determine that a plaintiff may properly maintain his complaint before permitting her to proceed with her action. As plaintiff is representing himself, the court must afford plaintiff special solicitude; thus, it is to consider her claims "liberally" and "interpret them 'to raise the strongest arguments that they suggest.' " Cold Stone Creamery, Inc. v. Gorman, 361 Fed.Appx. 282, 286 (summary order) (quoting Brownell v. Krom, 446 F.3d 305, 310 (2d Cir. 2006)).

Pleading guidelines are set forth in the Federal Rules of Civil Procedure. Specifically, Rule 8 provides that a pleading which sets forth a claim for relief shall contain, inter alia, "a short and plain statement of the claim showing that the pleader is entitled to relief." See FED. R. CIV. P. 8(a)(2). "The purpose ... is to give fair notice of the claim being asserted so as to permit the adverse party the opportunity to file a responsive answer, prepare an adequate defense and determine whether the doctrine of res judicata is applicable." Flores v. Graphtex, 189 F.R.D. 54, 54 (N.D.N.Y. 1999) (internal quotation marks and citations omitted). Rule 8 also requires the pleading to include:

> (1) a short and plain statement of the grounds for the court's jurisdiction ...;
>
> (2) a short and plain statement of the claim showing that the pleader is entitled to relief; and
>
> (3) a demand for the relief sought ....

FED. R. CIV. P. 8(a). Although "[n]o technical form is required," the Federal Rules make clear that each allegation contained in the pleading "must be simple, concise, and direct." Id. at 8(d).

Further, Rule 10 of the Federal Rules provides in pertinent part that:

> [a] party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances. A later pleading may refer by number to a paragraph in an earlier pleading. If doing so would promote clarity, each claim founded on a separate transaction or occurrence—and each defense other than a denial—must be stated in a separate count or defense.

***2** FED. R. CIV. P. 10(b). This serves the purpose of "provid[ing] an easy mode of identification for referring to a particular paragraph in a prior pleading[.]" Flores, 189 F.R.D. at 54 (internal quotation marks and citations omitted). A complaint that fails to comply with the pleading requirements "presents far too a heavy burden in terms of defendants' duty to shape a comprehensive defense and provides no meaningful basis for the Court to assess the sufficiency of their claims." Gonzales v. Wing, 167 F.R.D. 352, 355 (N.D.N.Y. 1996). As the Second Circuit has held, "[w]hen a complaint does not comply with the requirement that it

be short and plain, the court has the power, on its own initiative ... to dismiss the complaint." Salahuddin v. Cuomo, 861 F.2d 40, 42 (2d Cir. 1988) (citations omitted). However, "[d]ismissal ... is usually reserved for those cases in which the complaint is so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised." Id. (citations omitted). In such cases of dismissal, particularly when reviewing a pro se complaint, the court generally affords the plaintiff leave to amend the complaint. Simmons v. Abruzzo, 49 F.3d 83, 86-87 (2d Cir. 1995). A court should not dismiss a complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citation omitted).

**B. Plaintiff's Complaint**

Plaintiff's complaint in this action is written on a form for complaints filed pursuant to the Americans with Disabilities Act ("ADA"). See Compl. Plaintiff's complaint is a difficult to follow stream of consciousness. See id. Although plaintiff checks the boxes on the form complaint that her claims involve a failure to employ, termination of employment, and retaliation, it is entirely unclear how defendants discriminated against her on the basis of a disability. Plaintiff does not identify that she is a "person with a disability within the meaning of the ADA". Id. at 3; Shannon v. N.Y. City Transit Auth., 332 F.3d 95, 99 (2d Cir. 2003). Further, she does not contend that she was ever employed by any of the named defendants or explain how she suffered an adverse employment action due to her disability at the hands of defendants. Id. Moreover, plaintiff indicates, through checking boxes on the Civil Cover sheet, that her case involves several additional areas of the law, but does not explain how her case involves any of these areas of the law. Dkt. No. 1-1. Plaintiff checks the boxes indicating that her lawsuit also involves: (1) contract: recovery of defaulted student loans; (2) personal injury: assault, libel, slander, motor vehicle, motor vehicle product liability, health care/pharmaceutical personal injury; (3) personal property: other fraud, truth in lending; (4) civil rights: other civil rights, employment, education; (5) labor: labor/management relations, Family and Medical Leave Act; (6) Bankruptcy: Appeal 28 USC 158, Withdrawal 28 USC 157; and (7) Other Statutes: False Claims Act, Racketeer Influenced and Corrupt Organizations, Cable/Sat TV, Environmental Matters, Freedom of Information Act. Id. at 1.

Plaintiff's complaint completely fails to meet the pleading guidelines of Federal Rules of Civil Procedure 8 and 10. Plaintiff makes unexplained references to a "network" which appears to be involved in a conspiracy against her to improperly label her as HIV positive, cause her to be dismissed from school, suspend her passport to her native country, and commit various crimes against her. Id. at 3-4. Plaintiff names as defendants in the caption Levy Rathner and Felix Phillpe, but lists as defendants within the form complaint "Police Headquarter two of them" and "212-777-777 PC Company in NY City." Compl. at 2. However, plaintiff does not explain how any of these defendants are personally involved in any violation of a federal law or right. Further, plaintiff sets forth no cognizable avenue for relief. In her prayer for relief, plaintiff makes states:

> I will be back to social service to see what they have on file for me, break my disability request, go back to work even if I don't feel like it until I hear from US Attorney/District in Albany, you know why is because all crime made in Albany, NY, unemployment, child maltreatment, Discrimination, Divorce + elses.

***3** Id. at 4. As plaintiff's complaint fully fails to permit this Court to assess the nature of her claims, it is the undersigned's opinion that it must be dismissed.

Plaintiff has commenced at least seven other actions within this district in the last year. The undersigned's review of those cases reveal that all of them have either been dismissed or recommendations for dismissal are pending.[3] In addition, review of these cases suggest that they are all about the same or related matters, as they appear to reference similar defendants, discuss "networks," and defendants committing various crimes against plaintiff and/or her family. See n.3, supra. Thus, although pro se plaintiffs generally are to be accorded an opportunity to amend prior to outright dismissal, such opportunity is not recommended here, as it is clear from plaintiff's complaint and her previous filings, that any attempt at an amended complaint would be futile. Accordingly, it

is recommended that plaintiff's complaint be dismissed with prejudice, and that her motion for appointment of counsel (dkt. no. 3) be denied as moot.

### II. Conclusion

**WHEREFORE**, for the reasons stated herein, it is hereby

**ORDERED**, that plaintiff's motion to proceed IFP (Dkt. No. 2) be **GRANTED** for purposes of filing only; and it is

**RECOMMENDED**, that plaintiff's complaint (Dkt. No. 1) be **dismissed sua sponte with prejudice**, and it is

**ORDERED**, that plaintiff's Motion for Appointment of Counsel (Dkt. No. 3) be **DENIED** as moot; and it is further

**ORDERED**, that the Clerk of the Court serve this Report-Recommendation and Order on plaintiff in accordance with the Local Rules.

**IT IS SO ORDERED.**

Pursuant to 28 U.S.C. § 636(b)(1), parties may lodge written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court "within fourteen (14) days after being served with a copy of the ... recommendation." N.Y.N.D. L.R. 72.1(c) (citing 28 U.S.C. § 636(b)(1)(B)-(C)). **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.** Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993); Small v. Sec'y of HHS, 892 F.2d 15 (2d Cir. 1989); 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72, 6(a), 6(e).

**All Citations**

Not Reported in Fed. Supp., 2017 WL 8230677

**Footnotes**

1 This matter was referred to the undersigned for report and recommendation pursuant to 28 U.S.C. § 636(b) and N.D.N.Y. L.R. 72.3(c).

2 Plaintiff is advised that, despite being granted IFP status, she will still be required to pay any costs she incurs in this action, such as copying fees or witness fees.

3 See Georges v. Rathner (DNH/DJS), 1:17-CV-1276; Georges v. Duchene (DNH/DJS), 1:17-CV-86 (dismissed for failure to comply with Court's Order); Georges v. Schneiderman (BKS/DJS), 1:17-CV-524 (dismissed for failure to state a claim); Georges v. Gov. Tower VA, 1:17-CV-1244 (TJM/ATB); (recommendation pending for dismissal with prejudice for failure to state a claim and frivolity); Georges v. Rathner (BKS/DJS) 1:17-CV-1245 (recommendation for dismissal with prejudice pending); Georges v. Cuomo (TJM/DJS), 1:17-CV-1247 (recommendation for dismissal with prejudice pending); Georges v. Hatser, 1:17-CV-1242 (GTS/CFH) (recommendation for dismissal with prejudice pending).

End of Document © 2026 Thomson Reuters. No claim to original U.S. Government Works.

2020 WL 570605
Only the Westlaw citation is currently available.
United States District Court, W.D. New York.

Sherell Ann HINES, Plaintiff,
v.
UNITED STATES of America; Monroe County Government; Municipality Maricarola Center; Monroe Developmental Center; Sarah Sanders, Law Guardian; Minner, Law Guardian; Lamar Jackson, Law Guardian; Unity Health Center, Defendants.

No. 6:19-cv-06837(MAT)
|
Signed 02/05/2020

**Attorneys and Law Firms**

Sherell A. Hines, Rochester, NY, pro se.

**DECISION and ORDER**

HON. MICHAEL A. TELESCA, United States District Judge

**I. Introduction**

*1 Pro se plaintiff Sherell Ann Hines ("Hines") has filed a complaint (Docket No. 1), a motion for leave to proceed in forma pauperis (Docket No. 2), and a motion for miscellaneous relief. For the reasons discussed below, leave to proceed in forma pauperis is granted, but the complaint is dismissed with prejudice as frivolous. The motion for miscellaneous relief is denied as moot in light of the dismissal of the complaint.

**II. Motion to Proceed In Forma Pauperis**

"The decision of whether to grant a request to proceed in forma pauperis is left to the District Court's discretion under [28 U.S.C.] § 1915." Fridman v. City of New York, 195 F. Supp.2d 534, 536 (S.D.N.Y. 2002) (citing Potnick v. Eastern State Hospital, 701 F.2d 243 (2d Cir. 1983); other citations omitted). The Court finds that Hines's supporting affirmation sufficiently establishes her inability to pay for the prosecution of her case. Accordingly, Hines's motion for in forma pauperis status is granted.

**III. Screening of the Complaint under Section 1915(e)(2)**

Because the Court has granted in forma pauperis status to Hines, it must review her complaint under 28 U.S.C. § 1915(e)(2)(B) ("Section 1915(e)(2)").

**A. Section 1915(e)(2) Standard**

In enacting the original in forma pauperis statute, Congress recognized that a "litigant whose filing fees and court costs are assumed by the public, unlike a paying litigant, lacks an economic incentive to refrain from filing frivolous, malicious, or repetitive lawsuits." Denton v. Hernandez, 504 U.S. 25, 31 (1992) (quoting Neitzke v. Williams, 490 U.S. 319, 324 (1989)). To foreclose this type of abusive litigation, Congress authorized federal courts to dismiss a complaint filed by a plaintiff who has received in forma pauperis status if the courts are satisfied that the action is frivolous or malicious. Id.; see also 28 U.S.C. § 1915(e)(2)(B)(i)-(iii) (Under Section 1915(e)(2), the Court must conduct an initial screening of a pro se litigant's complaint and must it if it is "frivolous or malicious"; "fails to state a claim upon which relief may be granted"; or "seeks monetary relief from a defendant who is immune from such relief."). The screening obligation "applies equally to prisoner and nonprisoner in forma pauperis cases." S.B. ex rel. J.B. v. Suffolk Cty., No. 13-CV-446 JS AKT, 2013 WL 1668313, at *1 (E.D.N.Y. Apr. 17, 2013) (citing Awan v. Awan, No. 10–CV–0635, 2010 WL 1265820, at *1 (E.D.N.Y. Mar. 26, 2010)); Burns v. Goodwill Indus., No. 01–CV–11311, 2002 WL 1431704, at *2 (S.D.N.Y. 2002).

Section 1915(e), which permits dismissal of a complaint on the basis that it is frivolous, gives "judges not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless." Neitzke, 490 U.S. at 327. "An action is 'frivolous' for § 1915(e) purposes if it has no arguable basis in law or fact, as is the case if it is based on an 'indisputably meritless legal theory.' " Montero v. Travis, 171 F.3d 757, 759 (2d Cir. 1999) (quoting Neitzke, 490 U.S. at 325). A claim is considered factually frivolous where "the facts alleged are 'clearly baseless,' ... a category encompassing allegations that are 'fanciful,' ... 'fantastic,' ... and 'delusional[.]' " Denton, 504 U.S. at 32–33 (citing Neitzke, 490 U.S. at 325, 327–28). An action can be said to have no arguable legal basis when, for example, the defendant is immune from suit or when the plaintiff claims a violation of a legal interest which clearly does not exist. Neitzke, 490 U.S. at 327.

*2 The Court need not accept as true factual allegations that are "fantastic or delusional" in reviewing a complaint for frivolousness. Neitzke, 490 U.S. at 328.

**B. Summary of the Complaint's Allegations**

Hines describes the "nature of suit" as including premeditated murder, child rape, child molestation, personal injury through medical malpractice, as well as identity theft and discrimination. She accuses all of the defendants of taking custody of her 13 year-old son based on a crime he never committed, and then murdering him while he was in their custody.

For her First Claim, Hines asserts

> Child Slave Sex Acts Murder of Dale E Cooper Abuse & Rape Violation of Civil Rights while in custody of Monroe County Developmental Service Medical Malpractice & injury through health care provider Strong Hospital and Injury to Sherell Hines. Sara Sanders law guardian Chuck Schumer Lamar Jackson Law Guardian Maricariola Center Monroe Development Service Center Minner Law Guardian Strong Hospital Monroe Health Unity Monroe Health Services Hid Records of AB Sues Child molestation Rape Malpractice Child Molestation Hid Whereabouts of Dale E Cooper to this Date. Child Sex Sex with a minor or Incapacitated Person Premeditated Murder False Imprisonment Identity Theft.

Complaint (Docket No. 1), pp. 5-6 of 8. There are no dates specified as to when the foregoing acts allegedly occurred.

For her Second Claim, Hines states

> Malpractice Misrepresentation of Identity false imprisonment assult [sic] sex act towards minor Incarceration wrongful [illegible] without any consent from parent Sherell Hines the municipality took my son when he was 13 yr old and my family has not seen him since and he was atustic [sic] and unable to defend himself verbally I have a court order to visit with him 1 a week the Monroe County Government officials murdered my son and cover up for personal social and financial gain.

Complaint (Docket No. 1), p. 6 of 8.

**C. The Complaint Is Factually Frivolous**

The Supreme Court "has repeatedly held that the federal courts are without power to entertain claims that are 'so attenuated and unsubstantial as to be absolutely devoid of merit[,]' " Hagans v. Lavine, 415 U.S. 528, 536–37 (1974) (quotation omitted), " 'wholly insubstantial,' " id. (quotation omitted); 'obviously frivolous,' " id. (quotation omitted); " 'plainly insubstantial,' " id. (quotation omitted); "or 'no longer open to discussion[.]' " id. (quotation omitted). No federal question jurisdiction exists "when the complaint is 'patently insubstantial[,]' " Best v. Kelly, 39 F.3d 328, 330 (D.C. Cir. 1994) (quoting Neitzke v. William, 490 U.S. 319, 327 n.6 (1989); other citation omitted), in other words, " 'essentially fictitious.' " Id. (quoting Hagans, 415 U.S. at 536–37). Claims that are "essentially fictitious" include those that allege "bizarre conspiracy theories, any fantastic government manipulations of [the plaintiff's] will or mind [or] any sort of supernatural intervention." Id. at 330 (footnote omitted).

The Court is mindful that complaints filed by pro se litigants are held to less stringent standards than those applied to formal pleadings drafted by lawyers. Haines v. Kerner, 404 U.S. 519, 520 (1972). Nonetheless, the Court has the discretion to decide whether a complaint is frivolous, Neitzke, 490 U.S. at 327, and such finding is appropriate where the facts alleged are irrational or wholly incredible. Denton, 504 U.S. at 33.

*3 As was the case with her previous complaint, the instant complaint consists of incoherent, bizarre allegations about violent crimes perpetrated by a host of entities and individuals against her son during a family court proceeding. The Court again concludes that what factual contentions are

identifiable are "fantastic or delusional," Neitzke, 490 U.S. at 328. Accordingly, dismissal of the complaint as factually frivolous is appropriate. See Cortez v. Alsabah, No. CIV.A. 12 1874, 2012 WL 5941386, at *1 (D.D.C. Nov. 19, 2012) (finding complaint to be "baseless" and "wholly incredible" where pro se plaintiff alleged that defendants " 'have 'plotted against the lives of the plaintiff and her children, to steal the plaintiff's children from her, and to use her children ... to get billions of dollars in wealth from the father, and to get control of the billions of dollars in wealth the father has for his children....''); Awan v. Awan, No. 10-CV-0635 JSARL, 2010 WL 1265820, at *2 (E.D.N.Y. Mar. 26, 2010) (dismissing as factually frivolous seventy-seven paragraph complaint, comprised largely of conclusory and repetitive allegations, that plaintiff's ex-wife's "murder attempt" of his daughter has caused him severe mental anguish such that his work on the U.S. Excalibur was interrupted).

**D. Alternatively, the Complaint Fails to State a Claim on Which Relief May Be Granted**

**1. No Cause of Action Under 42 U.S.C. § 1983 Against Monroe County**

"Section 1983 provides a cause of action for 'the deprivation of any rights, privileges, or immunities secured by the Constitution and laws' of the United States." Wilder v. Virginia Hosp. Ass'n, 496 U.S. 498, 508 (1990) (quoting 42 U.S.C. § 1983; citing Maine v. Thiboutot, 448 U.S. 1, 4 (1980)). "Section 1983 itself creates no substantive rights; it provides only a procedure for redress for the deprivation of rights established elsewhere." Sykes v. James, 13 F.3d 515, 519 (2d Cir. 1993) (citing City of Oklahoma City v. Tuttle, 471 U.S. 808, 816 (1985)). "In order to prevail on a section 1983 claim, the plaintiff must show that the defendant's conduct deprived him of a federal right." Id. (citations omitted). It is well established that " 'personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.' " Farrell v. Burke, 449 F.3d 470, 484 (2d Cir. 2006) (quotation omitted).

In Ashcroft v. Iqbal, 129 S. Ct. 1937 (2009), the Supreme Court held that "[u]nder Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a 'short and plain statement of the claim showing that the pleader is entitled to relief.'" 129 S. Ct. at 1949. While "the pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Id. (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' " Id. (quoting Twombly, 550 U.S. at 555). "Nor does a complaint suffice if it tenders 'naked assertion [s]' devoid of 'further factual enhancement.' " Id. (quoting Twombly, 550 U.S. at 557).

Claims for municipal liability under Section 1983 are determined with reference to Monell v. Department of Social Services, 436 U.S. 658 (1978). "Monell does not provide a separate cause of action for the failure by the government to train its employees; it extends liability to a municipal organization where that organization's failure to train, or the policies or customs that it has sanctioned, led to an independent constitutional violation." Segal v. City of New York, 459 F.3d 207, 219 (2d Cir. 2006).

Therefore, "a municipality cannot be held liable solely because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a respondeat superior theory." Monell, 436 U.S. at 691. Only when the municipality, through the "execution of [its] policies or custom," actually deprives an individual of his constitutional rights, is it liable for the injury. Id. at 694.

***4** As an initial matter, Hines has not identified the constitutional rights of which she was deprived by the County. Moreover, Hines has not made "factual allegations that support a plausible inference that the constitutional violation took place pursuant either to a formal course of action officially promulgated by the municipality's governing authority or the act of a person with policymaking authority for the municipality." Missel v. Cty. of Monroe, 351 Fed. App'x 543, 545 (2d Cir. 2009) (citing Vives v. City of New York, 524 F.3d 346, 350 (2d Cir. 2008)).

In contrast to her previous complaint, where Hines failed to provide a hint as to the identities of any of the employees, representatives, or officials of Monroe County and the United States she seeks to hold liable, she here has provided some names (U.S. Senator Chuck Schumer and law guardians Sarah Sanders, Lamar Jackson, and F/N/U Minner). However, she has failed to set forth any specific, non-frivolous allegations about what they allegedly did that was unlawful. A complaint that fails to allege the defendants' personal involvement is "fatally defective on its face." Alfaro Motors, Inc. v. Ward, 814 F.2d 883, 886 (2d Cir. 1987) (internal quotations and citation omitted); see also Costello v. City of Burlington,

632 F.3d 41, 48–49 (2d Cir. 2011) ("The complaint does not allege facts establishing the personal involvement of any of the individual Defendants.... This defect is fatal to [plaintiff's] claim under 42 U.S.C. § 1983."). In sum, Hines's allegations consist of vague, conclusory, and wholly incredible assertions that the named individuals and entities harmed her and committed a host of violent crimes against her son. They are plainly insufficient to meet the "plausibility" standard set forth in Iqbal and Twombly.

### 2. No Cause of Action Against the United States

#### a. Any Constitutional Tort Claims Against the United States Are Barred

In her complaint, Hines also names the United States as a defendant, apparently because Monroe County is located within the United States. "Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit." F.D.I.C. v. Meyer, 510 U.S. 471, 475 (1994) (citations omitted). "Because an action against a federal agency or federal officers in their official capacities is essentially a suit against the United States, such suits are also barred under the doctrine of sovereign immunity, unless such immunity is waived." Robinson v. Overseas Mil. Sales Corp., 21 F.3d 502, 510 (2d Cir. 1994).

The "terms of [the United States'] consent to be sued in any court define that court's jurisdiction to entertain the suit." United States v. Sherwood, 312 U.S. 584, 586 (1941); accord Meyer, 510 U.S. at 475 (citing United States v. Mitchell, 463 U.S. 206, 212 (1983) ("It is axiomatic that the United States may not be sued without its consent and that the existence of consent is a prerequisite for jurisdiction")). The United States has not consented to be sued based on claims that its employees or officials have committed constitutional violations. See Castro v. United States, 34 F.3d 106, 110 (2d Cir. 1994) (finding that the "district court correctly held that the United States has not waived its sovereign immunity with respect to claims that its employees have committed constitutional torts"). Because the United States has not waived its sovereign immunity by consenting to be sued, the Court lacks jurisdiction over any allegations by Hines that the United States committed constitutional torts. The United States must be dismissed as a defendant.

### 3. Any Non-Constitutional Tort Claims Are Barred

*5 Although Hines has not identified the Federal Tort Claims Act ("FTCA") as the basis for her lawsuit, the Court has construed her pro se complaint liberally. The FTCA provides a limited waiver of the United States' sovereign immunity, and the United States may be liable for certain non-constitutional torts committed by Federal employees. See 28 U.S.C. § 2671, et seq. "The intentional tort exception in 28 U.S.C. § 2680(h) preserves the government's sovereign immunity for 'assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights.' " Gonzalez v. United States, No. 16-CV-1494(KAM), 2018 WL 1597384, at *7 (E.D.N.Y. Mar. 31, 2018) (quoting 28 U.S.C. § 2580(h)). Hines accuses the United States of committing various intentional torts, and therefore her complaint is barred, on its face, by the intentional torts exception in the FTCA.

In addition, Hines's claims under the FTCA warrant dismissal because there is no indication that she exhausted her administrative remedies, as required by the statute. As a corollary to its waiver of sovereign immunity, the FTCA has express, strict administrative exhaustion requirements that cannot be waived. Celestine v. Mt. Vernon Neighborhood Health Ctr., 403 F.3d 76, 82 (2d Cir. 2005) (citing McNeil v. United States, 508 U.S. 106, 113 (1993)). "[T]he United States has not consented to be sued on a tort claim unless the claim was first presented to the appropriate federal agency in writing, was so presented within two years after the claim accrued, and specified the amount of the claim in writing." Millares Guiraldes de Tineo v. United States, 137 F.3d 715, 719–20 (2d Cir. 1998).

### E. Leave to Amend the Federal Claims Is Denied

In general, "a pro se plaintiff who is proceeding in forma pauperis should be afforded [an] opportunity ... to amend [her] complaint prior to its dismissal for failure to state a claim, unless the court can rule out any possibility, however unlikely it might be, than an amended complaint would succeed in stating a claim." Gomez v. United States Auto. Assoc. Fed. Savs. Bank, 171 F.3d 794, 796 (2d Cir. 1999). The Second Circuit has stated that when "the problem with [a plaintiff]'s causes of action is substantive[,]" and "better pleading will not cure it[,]" "[r]epleading would thus be futile." Cuoco v. Moritsugu, 222 F.3d 99, 112 (2d Cir. 2000). In such a

circumstance, "a futile request to replead should be denied." Id. (citing Hunt v. Alliance N. Am. Gov't Income Trust, 159 F.3d 723, 728 (2d Cir. 1998)).

As discussed above, and as was the case with the previous complaint, the defects in Hines's current complaint are substantive insofar as the complaint rests solely on factually frivolous, wholly incredible allegations. Because such allegations cannot be ameliorated by better pleading, leave to replead is denied as futile. See Miller v. Kohl's Dep't Stores, Inc., No. 17-CV-6081-CJS, 2017 WL 4890199, at *4 (W.D.N.Y. Oct. 30, 2017) (finding that "any attempt to replead would be futile" where "the factual allegations of discrimination in the complaint are plainly delusional") (citing Igarashi v. Skulls & Bones, 438 F. App'x 58 (2d Cir. 2011)) (unpublished opn.) ("Even a well-pleaded complaint may be dismissed as factually frivolous 'if the sufficiently well-pleaded facts are clearly baseless—that is, if they are fanciful, fantastic, or delusional.' ") (quoting Gallop v. Cheney, 642 F.3d 364, 368 (2d Cir. 2011)).

**IV. Conclusion**

***6** For the foregoing reasons, the motion to proceed in forma pauperis (Docket No. 2) is granted. It is further ordered that the complaint (Docket No. 1) is dismissed with prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B) (i), (ii), and (iii). The motion for miscellaneous relief (Docket No. 3) is denied as moot in light of the dismissal of the complaint. The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this decision and order would not be taken in good faith. Therefore, in forma pauperis status is denied for purpose of an appeal. See Coppedge v. United States, 369 U.S. 438, 444-45 (1962). The Clerk of Court is directed to close this case.

**IT IS SO ORDERED.**

**All Citations**

Not Reported in Fed. Supp., 2020 WL 570605

End of Document

© 2026 Thomson Reuters. No claim to original U.S. Government Works.

2019 WL 6841952
Only the Westlaw citation is currently available.
United States District Court, S.D. New York.

Joseph KASTNER, et al., Plaintiffs,
v.
TRI STATE EYE, et al., Defendants.

19-CV-10668 (CM)
|
Signed 12/13/2019

**Attorneys and Law Firms**

Joseph Kastner, Monticello, NY, pro se.

John and Jane Doe 1-20, pro se.

ORDER TO AMEND

COLLEEN McMAHON, Chief United States District Judge:

***1** Plaintiff brings this *pro se* action, for which the filing fee has been paid, alleging that Defendants violated his rights. For the reasons set forth below, the Court grants Plaintiff leave to file an amended complaint within thirty days of the date of this order.

**STANDARD OF REVIEW**

The Court has the authority to dismiss a complaint, even when the plaintiff has paid the filing fee, if it determines that the action is frivolous, *Fitzgerald v. First E. Seventh Tenants Corp.*, 221 F.3d 362, 363-64 (2d Cir. 2000) (*per curiam*) (citing *Pillay v. INS*, 45 F.3d 14, 16-17 (2d Cir. 1995) (*per curiam*) (holding that Court of Appeals has inherent authority to dismiss frivolous appeal)), or that the Court lacks subject matter jurisdiction, *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 583 (1999). The Court is obliged, however, to construe *pro se* pleadings liberally, *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009), and interpret them to raise the "strongest [claims] that they *suggest*," *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474-75 (2d Cir. 2006) (internal quotation marks and citations omitted) (emphasis in original).

**BACKGROUND**

Plaintiff brings this 154-page, single-spaced complaint, most of which contains bold text in all caps, against: (1) Tri State Eye; (2) Crystal Run Healthcare; (3) Coverys RFG, Inc.; (4) Douglas Sansted; (5) Feldman, Kleidman, Coffey & Sappe; (6) Orange Regional Medical Center (OMRC); (7) New York State; (8) Town of Newburgh New York Police; (9) Town of Middletown New York Police Department; (10) "The US Attorney"; (11) "The FDA"; (12) "USA"; (13) "The EEOC"; (14) "The SSA-USA"; (15) "The US Inspector General"; (16) "The US Department of Justice"; (17) "The US Department of Health & Human Services "HHS-HIPAA" Office of Civil Rights Enforcements"; (18) "The US Department of the Attorney General Office of Civil Rights Enforcements"; and (19) CIGNA.

Plaintiff asserts that he is

> innocent of all [his] non violent past frivolous offenses and will prove it on examination: if asked: about how NYS, "SSA," et al. and others railroaded me all my life to ruin my name, because; I complain and protect, But some of the doctors in this case: are guilty of my physical harm and are violent criminal offenders: who are on the loose and are: a front: for their employers,' not including other employers and/in their 49 other states: through; proven not needed: blinking laser shots to myself and some of the entire trusted public in the USA.

(ECF No. 1, at 4.)[1] He brings:

> claims for: malpractices, negligence, sheer greed by their 5 referred doctor's for, lying, cover-ups, threats, false truths (false medical histories,) lies, and assaults from each laser short that is {un-necessary that is a proven criminal assault} and conspiracy and

> the misuse/abuse of laser eye surgery equipment at ORMC with FDA violations, holding binding/blinding a patient against their/my will and wishes. Failure to inject and administer proper needed eye medicines/and future litigations. 30 day expired notice to cure violations and future laser changed procedures/laws are needed: attempted 2019 insurance fraud/extortion botched false NYS arrests for: Joseph rec Kastner and also for 2018.

***2** (*Id.*) In short, Plaintiff asserts that a doctor associated with ORMC "destroyed [his] left eye's eye sight." (*Id.* at 35.)

Plaintiff filed two prior cases in this Court where he sued multiple unrelated defendants. *See Kastner v. State Farm Mutual Automobile Co. Corp.*, ECF 1:15-CV-2757, 8 (S.D.N.Y. Oct. 22, 2015); *The Homeless Patrol, Kastner v. Joseph Volpe Family*, ECF 1:09-CV-3628, 63 (S.D.N.Y. July 22, 2010). In the 15-CV-2757 action, Judge Loretta A. Preska noted that Plaintiff failed to comply with the pleading requirements under Rule 8 and Rule 20 of the Federal Rules of Civil Procedure because he (1) failed to make a short and plain statement showing he was entitled to relief, and (2) asserted unrelated claims against multiple defendants. Judge Preska granted Plaintiff leave to amend to cure this deficiency, but in his amended complaint, he failed to comply with Rule 8 and Rule 20, naming multiple defendants and asserting unrelated claims. Judge Preska dismissed the amended complaint for failure to state a claim.

## DISCUSSION

The Court's "special solicitude" for *pro se* pleadings, *Ruotolo v. IRS*, 28 F.3d 6, 8 (2d Cir. 1994), has its limits, because *pro se* pleadings still must comply with Rule 8(a) of the Federal Rules of Civil Procedure. Under Rule 8(a)(2), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Thus, a complaint's statement of claim should not be prolix (lengthy) or contain unnecessary details. *See Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988) (noting that under Rule 8(a)(2), the statement of claim "should be short because '[u]nnecessary prolixity in a pleading places an unjustified burden on the court and the party who must respond to it because they are forced to select the relevant material from a mass of verbiage' ") (citation omitted); *Prezzi v. Schelter*, 469 F.2d 691, 692 (2d Cir. 1972) (holding that complaint did not comply with Rule 8 because "it contained a labyrinthian prolixity of unrelated and vituperative charges that defied comprehension"); *see also The Annuity, Welfare and Apprenticeship Skill Improvement & Safety Funds of the Int'l Union of Operating Eng'rs Local 15, 15A, 15C & 15D, AFL-CIO v. Tightseal Constr. Inc.*, No. 17-CV-3670 (KPF), 2018 WL 3910827, at *12 (S.D.N.Y. Aug. 14, 2018) ("[C]ourts in this Circuit have dismissed complaints that are unnecessarily long-winded, unclear, or conclusory.")

Under Rule 20 of the Federal Rules of Civil Procedure, a plaintiff may not pursue unrelated claims against multiple defendants. *See* Fed. R. Civ. P. 20(a)(2) ("Persons ... may be joined in one action as defendants if: (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the *same transaction, occurrence, or series of transactions or occurrences*; and (B) any question of law or fact *common to all defendants* will arise in the action.") (emphasis added); *e.g.*, *Peterson v. Regina*, 935 F. Supp. 2d 628, 638 (S.D.N.Y. 2013) ("Case law makes clear that '[i]n the absence of a connection between Defendants' alleged misconduct, the mere allegation that Plaintiff was injured by all Defendants is not sufficient [by itself] to join unrelated parties as defendants in the same lawsuit pursuant to Rule 20(a).' ") (alterations in original) (quoting *Deskovic v. City of Peekskill*, 673 F. Supp. 2d 154, 167 (S.D.N.Y. 2009)).

***3** Generally, district courts must construe *pro se* complaints liberally, but "even a *pro se* litigant cannot simply dump a stack of exhibits on the court and expect the court to sift through them to determine if some nugget is buried somewhere in that mountain of papers, waiting to be unearthed and refined into a cognizable claim." *Carmel v. CSH & C*, 32 F. Supp. 3d 434, 436 (W.D.N.Y. 2014).

Plaintiff fails to make a short and plain statement showing that he is entitled to relief. Rather, he submits an unreadable 154-page complaint, apparently expecting the Court "to sift through" it to find Plaintiff's claims. *Carmel*, 32 F. Supp. 3d at 436. Moreover, the complaint does not suggest that any questions of law or fact are common to the 19 named defendants.

In recognition of the "special solicitude" afforded *pro se* litigants, the Court grants Plaintiff 30 days' leave to submit an amended complaint that complies with Rules 8 and 20 of the Federal Rules of Civil Procedure. The amended complaint must contain a short and plain statement showing that he is entitled to relief and may not contain unrelated claims against multiple defendants. Plaintiff's amended complaint must be limited to 20 pages. The Court strongly encourages Plaintiff to use the Court's amended complaint form.

## CONCLUSION

The Clerk of Court is directed to assign this matter to my docket, mail a copy of this order to Plaintiff, and note service on the docket. Plaintiff is granted leave to file an amended complaint that complies with the standards set forth above. Plaintiff must submit the amended complaint to this Court's Pro Se Intake Unit within thirty days of the date of this order, caption the document as an "Amended Complaint," and label the document with docket number 19-CV-10668 (CM). An Amended Complaint form is attached to this order. No summons will issue at this time. If Plaintiff fails to comply within the time allowed, and he cannot show good cause to excuse such failure, the complaint will be dismissed for failure to state a claim upon which relief may be granted.

The Court certifies under 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith, and therefore *in forma pauperis* status is denied for the purpose of an appeal. *Cf. Coppedge v. United States*, 369 U.S. 438, 444-45 (1962) (holding that an appellant demonstrates good faith when he seeks review of a nonfrivolous issue).

SO ORDERED.

Attachment

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

Write the full name of each plaintiff.

____CV__________
(Include case number if one has been assigned)

-against-

AMENDED COMPLAINT

Do you want a jury trial?
☐ Yes ☐ No

Write the full name of each defendant. If you need more space, please write "see attached" in the space above and attach an additional sheet of paper with the full list of names. The names listed above must be identical to those contained in Section II.

**NOTICE**

The public can access electronic court files. For privacy and security reasons, papers filed with the court should therefore not contain: an individual's full social security number or full birth date; the full name of a person known to be a minor; or a complete financial account number. A filing may include only: the last four digits of a social security number; the year of an individual's birth; a minor's initials; and the last four digits of a financial account number. See Federal Rule of Civil Procedure 5.2.

Rev. 2/10/17

I. BASIS FOR JURISDICTION

Federal courts are courts of limited jurisdiction (limited power). Generally, only two types of cases can be heard in federal court: cases involving a federal question and cases involving diversity of citizenship of the parties. Under 28 U.S.C. § 1331, a case arising under the United States Constitution or federal laws or treaties is a federal question case. Under 28 U.S.C. § 1332, a case in which a citizen of one State sues a citizen of another State or nation, and the amount in controversy is more than $75,000, is a diversity case. In a diversity case, no defendant may be a citizen of the same State as any plaintiff.

What is the basis for federal-court jurisdiction in your case?

☐ Federal Question

☐ Diversity of Citizenship

A. If you checked Federal Question

Which of your federal constitutional or federal statutory rights have been violated?

B. If you checked Diversity of Citizenship

1. Citizenship of the parties

Of what State is each party a citizen?

The plaintiff , ________________ , is a citizen of the State of
(Plaintiff's name)

(State in which the person resides and intends to remain.)

or, if not lawfully admitted for permanent residence in the United States, a citizen or subject of the foreign state of

If more than one plaintiff is named in the complaint, attach additional pages providing information for each additional plaintiff.

Page 2

If the defendant is an individual:

The defendant, ______________________ (Defendant's name), is a citizen of the State of ______________________

or, if not lawfully admitted for permanent residence in the United States, a citizen or subject of the foreign state of ______________________.

If the defendant is a corporation:

The defendant, ______________________, is incorporated under the laws of the State of ______________________

and has its principal place of business in the State of ______________________

or is incorporated under the laws of (foreign state) ______________________

and has its principal place of business in ______________________.

If more than one defendant is named in the complaint, attach additional pages providing information for each additional defendant.

**II. PARTIES**

**A. Plaintiff Information**

Provide the following information for each plaintiff named in the complaint. Attach additional pages if needed.

First Name Middle Initial Last Name

Street Address

County, City State Zip Code

Telephone Number Email Address (if available)

Page 3

**B. Defendant Information**

To the best of your ability, provide addresses where each defendant may be served. If the correct information is not provided, it could delay or prevent service of the complaint on the defendant. Make sure that the defendants listed below are the same as those listed in the caption. Attach additional pages if needed.

Defendant 1:
First Name Last Name
Current Job Title (or other identifying information)
Current Work Address (or other address where defendant may be served)
County, City State Zip Code

Defendant 2:
First Name Last Name
Current Job Title (or other identifying information)
Current Work Address (or other address where defendant may be served)
County, City State Zip Code

Defendant 3:
First Name Last Name
Current Job Title (or other identifying information)
Current Work Address (or other address where defendant may be served)
County, City State Zip Code

Page 4

Defendant 4:
First Name Last Name
Current Job Title (or other identifying information)
Current Work Address (or other address where defendant may be served)
County, City State Zip Code

**III. STATEMENT OF CLAIM**

Place(s) of occurrence: ______________________

Date(s) of occurrence: ______________________

**FACTS:**

State here briefly the FACTS that support your case. Describe what happened, how you were harmed, and what each defendant personally did or failed to do that harmed you. Attach additional pages if needed.

Page 5

**INJURIES:**

If you were injured as a result of these actions, describe your injuries and what medical treatment, if any, you required and received.

**IV. RELIEF**

State briefly what money damages or other relief you want the court to order.

Page 6

WESTLAW © 2026 Thomson Reuters. No claim to original U.S. Government Works. 4

V. PLAINTIFF'S CERTIFICATION AND WARNINGS

By signing below, I certify to the best of my knowledge, information, and belief that: (1) the complaint is not being presented for an improper purpose (such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation); (2) the claims are supported by existing law or by a nonfrivolous argument to change existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Federal Rule of Civil Procedure 11.

I agree to notify the Clerk's Office in writing of any changes to my mailing address. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Each Plaintiff must sign and date the complaint. Attach additional pages if necessary. If seeking to proceed without prepayment of fees, each plaintiff must also submit an IFP application.

Dated Plaintiff's Signature

First Name Middle Initial Last Name

Street Address

County, City State Zip Code

Telephone Number Email Address (if available)

I have read the Pro Se (Nonprisoner) Consent to Receive Documents Electronically:

☐ Yes ☐ No

If you do consent to receive documents electronically, submit the completed form with your complaint. If you do not consent, please do not attach the form.

Page 7

**All Citations**

Not Reported in Fed. Supp., 2019 WL 6841952

## Footnotes

1 The Court notes that in the quoted sections of the complaint, it does not omit Plaintiff's unique use of punctuation.

End of Document © 2026 Thomson Reuters. No claim to original U.S. Government Works.

2018 WL 443343
Only the Westlaw citation is currently available.
United States District Court, E.D. New York.

Adil KHALIL, Plaintiff,
v.
UNITED STATES of America, Four Unknown Federal Agents, United States Air Force General Council [sic] Joseph M. McDade, Jr., United States Air Force General Council [sic] Unknown Federal Agent United States Air Force Attorney General, United States Air Force Unknown Federal Agent, United States Air Force Inspector General, and Federal Agent Natalie P. Becerra, Defendants.
Adil Khalil, Plaintiff,
v.
Governor Andrew M. Cuomo, Ann M. Sullivan, Commissioner, NYS Office of Mental Health; New York State Trooper John Does 1-3, the State of New York, Defendants.

17-CV-2652 (JFB) (SIL)
|
17-CV-5458 (JFB) (SIL)
|
Signed 01/12/2018

**Attorneys and Law Firms**

Adil Khalil, Shirley, NY, pro se.

Robert B. Kambic, United States Attorneys Office, Central Islip, NY, for Defendants.

ORDER

Joseph F. Bianco, United States District Judge

***1** On June 2, 2017, *pro se* plaintiff Adil Khalil ("plaintiff") filed a complaint against the United States Air Force and the Federal Bureau of Investigations ("defendants") as well as an application to proceed *in forma pauperis. Khalil v. United States Air Force*, 17-cv-2652 (E.D.N.Y. June 2, 2017) ("*Khalil I*"), Dkt. Nos. 1, 2. On July 17, 2017, plaintiff moved to transfer the action to the United States Court of Federal Claims (*id.* Dkt. No. 6), where plaintiff had filed a related action on July 13, 2017, *Khalil v. United States of America*, 17-cv-0962 (Fed. Cl. July 13, 2017). On August 1, 2017, defendants requested that the Court dismiss the complaint on subject matter jurisdiction grounds. (*See Khalil I*, Dkt. No. 7.) However, because 28 U.S.C. § 1292(d)(4), which governs the transfer of actions to the Court of Federal Claims, prevents courts from taking any action when a transfer motion is filed until sixty (60) days after that court has ruled upon the motion, the undersigned requested that defendants submit any opposition to the motion to transfer by August 31, 2017. (*See id.* Dkt. No. 8.) On August 19, 2017, before defendants responded to that Order, plaintiff opposed defendants' request for dismissal on subject matter grounds and filed an amended complaint. (*See id.* Dkt. No. 9). The amended complaint names as defendants: the United States of America, four unknown federal agents (John Does 1-4), United States Air Force General Council Joseph M. McDade, Jr., "United States Air Force General Council unknown Federal Agent United States Air Force Attorney General", "United States Air Force unknown Federal Agent", United States Air Force Inspector General, and Federal Agent Natalie P. Becerra ("Becerra" and collectively, "defendants"). By letter dated September 11, 2017, defendants indicated that they did not object to the request to transfer. (*See id.* Dkt. No. 10.) In response, by motion dated September 18, 2017, plaintiff requested that the Court: (1) find defendants in contempt for responding to the Court's Order on September 11, 2017, when their response was due August 31, 2017; and (2) enter default judgment in plaintiff's favor. (*See id.* Dkt. No. 14.)

On August 2, 2017, the Court of Federal Claims issued an Order that: (1) dismissed the complaint, (2) denied plaintiff's motion to transfer that case to this Court (which he filed on the same day he moved to transfer the instant action), and (3) denied plaintiff's motion for leave to proceed *in forma pauperis. See Khalil v. United States*, No. 17-CV-0962 (Fed. Cl. Aug. 2, 2017), Dkt. No. 7. Given the dismissal, by Order dated September 27, 2017, the undersigned denied plaintiff's motion to transfer. (*Khalil I*, Dkt. No. 15.) In addition, in light of 28 U.S.C. § 1292(d)(4)'s prohibition on any action in a case in which a motion to transfer to the Court of Federal Claims is filed until sixty (60) days after the court has ruled upon the motion, the undersigned stayed all pending motions in the instant action for sixty (60) days. (*Id.*) On November 28, 2017, defendants renewed their request for a pre-motion conference in order to establish a briefing schedule for their motion pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) to dismiss the complaint for lack of subject matter jurisdiction and failure to state a cause

of action. (*Khalil I*, Dkt. 16.) To date, plaintiff has not opposed defendants' request.

***2** In addition, on September 18, 2017, plaintiff filed another *in forma pauperis* complaint. *Khalil v. Cuomo*, 17-CV-5458 (E.D.N.Y. Sept. 18, 2017) ("*Khalil II*"), Dkt. Nos. 1, 2. *Khalil II* is against the State of New York, Governor Cuomo, Ann M. Sullivan, Commissioner of the New York State Office of Mental Health, and three unidentified New York State Troopers, John Does 1-3. For the reasons stated below, plaintiff's motions to proceed *in forma pauperis* are granted; however, because neither the amended complaint in *Khalil I*, nor the complaint in *Khalil II* alleges a plausible claim, the complaints are *sua sponte* dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B).

## BACKGROUND

### I. *Khalil I*

Plaintiff's amended complaint is submitted on the Court's complaint form and purports to allege *Bivens* claims against defendants. (*See Khalil I*, Dkt. No. 9, Compl. ¶ II.) Plaintiff claims that the defendants have deprived him of his First, Fourth, Fifth, Eighth, Ninth, and Fourteenth Amendment rights, and have conspired to do so, in connection with their "covert or overt" surveillance of plaintiff's activities on the "world wide web (internet/electronic) and telephone conversation[s]." (*Id.* ¶¶ II.B-D., III.A.) According to the amended complaint, from June 16, 2011 to the present, plaintiff has suffered "a denial of service attack on [his] personal computer" and "the federal government has failed to protect [his] internet rights." (*Id.* ¶ 13.) Plaintiff also complains that the government has violated his rights by "intruding [his] private computer or iPhone and monopolizing or compromising his internet privacy and rights to free expression." (*Id.*) Plaintiff further complains that the government has "allowed a schizophrenic bipolar federal employee [to] violate[ ] online impersonation laws and cyber stalking laws." (*Id.* ¶ 14.)

Plaintiff alleges that, since his filing of the original complaint in this case on June 2, 2017, "the federal government continues to restrict [his] internet access" and "continues to allow the federal employee female stalker to threaten the plaintiff's mental well-being." (*Id.* ¶ 20.) Plaintiff claims that Becerra is being used by the FBI "as an informant/asset/operative against [him] in an attempted entrapment sting" and, since 2010, the "FBI has monopolized and [taken] total control of [his] computer and internet." (*Id.* ¶ 25). As evidence, plaintiff describes that "frequent Goggle [sic] search results and pop up ads on [his] computer has resulted in [a] surge of conspiracy theorists who, otherwise, without the FBI influence, would be unknown to [plaintiff.]" (*Id.*) Thus, plaintiff claims the "FBI in controlling advertisement and search results in an attempted brainwashing scheme, and is a violation of the plaintiff's fourth amendment right." (*Id.*) Plaintiff also claims that the "FBI was working in conspiracy with the NYPD" to designate plaintiff as a mentally disturbed person and that such conduct has caused plaintiff to suffer a "mental breakdown from internet stalking." (*Id.* ¶¶ 27, 28-29.)

As a result, plaintiff claims to have suffered "mental illness (adjustment disorder), complications and metastasis of an auto-immune disease, loss of employment (adjustment disorder)" and seeks to recover a damages award in total sum of $550,000,000.00. (*Id.* ¶¶ IV-V.)

### II. *Khalil II*

As noted above, on September 18, 2017, plaintiff filed an additional complaint and application to proceed *in forma pauperis* against the State of New York, Governor Andrew M. Cuomo, Ann M. Sullivan, Commissioner of the New York State Office of Mental Health, and three unidentified New York State Troopers (John Does 1-3). Like *Khalil I*, the complaint in *Khalil II* is difficult to comprehend. Plaintiff appears to complain that, on December 26, 2015 and September 7, 2017, New York State police troopers did not assist him during telephone calls he made to them. (*Khalil II*, Dkt. No. 1, Compl. ¶ 1.) Plaintiff claims he called the police to report internet harassment by "a mentally ill female stalker" he identifies as Becerra, a defendant in *Khalil I*. (*Id.* ¶ 2.) Plaintiff alleges that the State of New York has "inflict[ed] mental illness through a series of continued adjustment disorders[,] [a]nd with the filing of this instant action against the State of New York, progressing to Axis 1 major mental illness which resulted in a complete collapse of my immune system through the auto immune disease and psychological disorder Sarcoidosis." (*Id.*) Plaintiff also complains that the State of New York "has failed to enforce several laws" and cites various sections of the New York Penal Law relating to stalking and harassment. (*Id.* ¶ 4.) Plaintiff further alleges that "[t]he State of New York continues to use me as a scapegoat for their anger and frustration for the terrorist attacks on 911." (*Id.* ¶ 5.) Based on the foregoing, plaintiff claims to have suffered "mental illness (adjustment disorder), complications and metastasis of an auto-immune disease, loss

of employment (adjustment disorder). (*Id.* ¶ IV.) For relief, plaintiff seeks damages totaling $13 million. (*Id.* ¶ V.)

## DISCUSSION

I. *In Forma Pauperis* Applications

***3** Upon review of plaintiff's declarations in support of the applications to proceed *in forma pauperis*, the Court finds that plaintiff is qualified to commence these actions without prepayment of the filing fees. 28 U.S.C. § 1915(a)(1). Therefore, plaintiff's applications to proceed *in forma pauperis* are granted.

II. Sufficiency of the Pleadings

A. Legal Standard

It is axiomatic that district courts are required to read *pro se* complaints liberally, *see Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)), and to construe them "to raise the strongest arguments that [they] suggest," *Chavis*, 618 F.3d at 170 (quoting *Harris v. City of New York*, 607 F.3d 18, 24 (2d Cir. 2010)). Moreover, at the pleadings stage, the Court must assume the truth of "all well-pleaded, non-conclusory factual allegations" in the complaint. *Kiobel v. Royal Dutch Petroleum Co.*, 621 F.3d 111, 123 (2d Cir. 2010), *aff'd*, 133 S. Ct. 1659 (2013) (citing *Ashcroft v. Iqbal*, 556 U.S. 662 (2009)). However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 678 (citation omitted).

Notwithstanding a plaintiff's *pro se* status, a complaint must plead sufficient facts to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. The plausibility standard requires "more than a sheer possibility that a defendant has acted unlawfully." *Id.*; *accord Wilson v. Merrill Lynch & Co.*, 671 F.3d 120, 128 (2d Cir. 2011). While "detailed factual allegations" are not required, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' " *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

Further, a district court has the inherent power to dismiss a case *sua sponte* if it determines that the action is frivolous. *See Fitzgerald v. First East Seventh St. Tenants Corp.*, 221 F.3d 362, 363 (2d Cir. 2000). An action is "frivolous" when "the factual contentions are clearly baseless, such as when allegations are the product of delusion or fantasy." *Livingston v. Adirondack Beverage* Co., 141 F.3d 434, 437 (2d Cir. 1998) (internal citations omitted). "[A] finding of factual frivolousness is appropriate when the facts alleged rise to the level of the irrational or the wholly incredible, whether or not there are judicially noticeable facts available to contradict them." *Denton v. Hernandez*, 504 U.S. 25, 33 (1992); *see also Scanlon v. Vermont*, 423 Fed.Appx. 78, 79 (2d Cir. 2011) (summary order) ("An action is frivolous if it lacks an arguable basis in law and fact—i.e., where it is 'based on an indisputably meritless legal theory' or presents 'factual contentions [which] are clearly baseless.' " (quoting *Neitzke v. Williams*, 490 U.S. 319,327 (1989), *abrogated on other grounds by Twombly*, 550 U.S. at 544)); *Gallop v. Cheney*, 642 F.3d 364, 368 (2d Cir. 2011) ("A court may dismiss a claim as 'factually frivolous' if the sufficiently well-pleaded facts are 'clearly baseless'—that is, if they are 'fanciful,' 'fantastic,' or 'delusional.' " (quoting *Denton*, 504 U.S. at 32-33)).

B. Application

***4** As is readily apparent from the amended complaint in *Khalil I* and the complaint in *Khalil II*, plaintiff's claims "rise to the level of the irrational or the wholly incredible." *Denton*, 504 U.S. at 33. Plaintiff alleges a broad conspiracy involving surveillance of and interference with his life by the United States and various government actors.[1] Upon a careful reading of plaintiff's pleadings, the allegations presented appear wholly incredible and can only be described as the "product of delusion or fantasy." *Livingston*, 141 F.3d at 437. Construing plaintiff's pleadings liberally and raising the strongest arguments they suggest, the Court finds that plaintiff's allegations rise to the level of irrational and wholly incredible.

In short, having reviewed the amended complaint in *Khalil I* and complaint in *Khalil II*, it is clear that plaintiff's claims are factually frivolous, "rising to the level of the irrational or wholly incredible," *Denton*, 504 U.S. at 26, and they are therefore dismissed. *Mecca v. U.S. Gov't*, 232 Fed.Appx. 66, 677 (2d Cir. 2007) (affirming district court dismissal of complaint that was "replete with fantastic and delusional scenarios"); *Gonzales v. Wright*, 9:06-CV-1424, 2010 WL 681323, at * 12 (N.D.N.Y. Feb. 23, 2010) ("As the

Second Circuit and New York District Courts have steadily recognized, it is utterly unjust to haul people into federal court to defend against, and disprove, delusions.") (collecting cases). The Court has considered affording plaintiff an opportunity to amend the complaints, *Foman v. Davis*, 371 U.S. 178, 182 (1962), but declines to do so because the deficiencies therein could not be cured by amendment. *O'Hara v. Weeks Marine, Inc.*, 294 F.3d 55, 69 (2d Cir. 2002).

CONCLUSION

For the reasons above, plaintiff's *in forma pauperis* applications are granted. However, the amended complaint in *Khalil I and* the complaint in *Khalil II are sua sponte* dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B). The Clerk of the Court is directed to mail a copy of this order to the plaintiff at his last known address and to close the cases. The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that, should plaintiff seek leave to appeal *in forma pauperis*, any appeal from this Order would not be taken in good faith, and *in forma pauperis* status is therefore denied for the purpose of any appeal. *See* *Coppedge v. United States*, 369 U.S. 438, 444-45 (1962).

SO ORDERED.

**All Citations**

Not Reported in Fed. Supp., 2018 WL 443343

**Footnotes**

1 In addition, given that sovereign immunity shields the United States, its agencies, and government officials acting in their official capacity, *FDIC v. Meyer*, 510 U.S. 471, 475 (1994), and that the Eleventh Amendment precludes suit in this Court against New York State, and against state officials in their official capacities seeking monetary damages, *State Employees Bargaining Agent Coalition v. Rowland*, 494 F.3d 71, 95 (2d Cir. 2007), the Court likely lacks subject matter jurisdiction to adjudicate these claims. However, because the nature of the claims set forth in plaintiff's submissions is far from clear, the Court declines to determine at this juncture that it lacks subject matter jurisdiction.

End of Document

© 2026 Thomson Reuters. No claim to original U.S. Government Works.

2022 WL 4241355
Only the Westlaw citation is currently available.
United States Court of Appeals, Second Circuit.

Christopher MCKIE, Plaintiff-Appellant,
v.
Charles KORNEGAY, Irene Kornegay, Defendants-Appellees.[1]

21-1943
|
September 15, 2022

Appeal from a judgment of the United States District Court for the Eastern District of New York (Matsumoto, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **VACATED IN PART** and **AFFIRMED IN PART,** and the appeal is **DISMISSED IN PART**.

**Attorneys and Law Firms**

For Plaintiff-Appellant: Christopher McKie, pro se, Brooklyn, New York.

For Defendants-Appellees: William V. DeCandido, William V. DeCandido, PC, Forest Hills, New York.

Present: Debra Ann Livingston, Chief Judge, Barrington D. Parker, Eunice C. Lee, Circuit Judges.

**SUMMARY ORDER**

***1** Appellant Christopher McKie, proceeding pro se, appeals from the August 2, 2021 order of the United States District Court for the Eastern District of New York (Matsumoto, *J.*), dismissing his claims with prejudice. McKie brought claims against the estate of Doris Dickinson, Charles Kornegay ("Charles") in his official capacity as administrator of the estate and in his individual capacity, and Irene Kornegay ("Irene"), asserting common law tort and contract claims premised on McKie's allegation that he was entitled to estate assets. The district court found that it lacked subject matter jurisdiction because the parties were not diverse, that it would also lack subject matter jurisdiction over many claims under the probate exception to federal diversity jurisdiction, and that the complaint in any event failed to state a claim. For the following reasons, the judgment of the district court is **VACATED IN PART** and **AFFIRMED IN PART,** and the appeal is **DISMISSED IN PART**. We assume the parties' familiarity with the underlying facts, the procedural history, and the issues on appeal, which we reference here only as necessary to explain our decision.

**I. Subject Matter Jurisdiction**

On appeal from a dismissal for lack of subject matter jurisdiction, we review the district court's factual findings for clear error and its legal conclusions *de novo*. *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). We "have an independent obligation to determine whether subject-matter jurisdiction exists, even when no party challenges it." *Hertz Corp. v. Friend*, 559 U.S. 77, 94 (2010). Federal subject matter jurisdiction is available when a federal question is presented, or when the parties are diverse and the amount in controversy exceeds $75,000. 28 U.S.C. §§ 1331, 1332.

McKie's complaint cites the statutes for both federal question and diversity jurisdiction.[2] However, McKie's brief does not identify any basis for federal question jurisdiction, and none is apparent—McKie's causes of action are state law tort and contract claims.

Diversity jurisdiction requires that the case be between "citizens of different States," 28 U.S.C. § 1332(a)(1), meaning "that there must be complete diversity, *i.e.*, that each plaintiff's citizenship must be different from the citizenship of each defendant," *Hallingby v. Hallingby*, 574 F.3d 51, 56 (2d Cir. 2009). "An individual's citizenship, within the meaning of the diversity statute, is determined by his domicile." *Van Buskirk v. United Grp. of Cos., Inc.*, 935 F.3d 49, 53 (2d Cir. 2019) (quotation marks and citations omitted). The diversity statute specifies that "the legal representative of the estate of a decedent shall be deemed to be a citizen only of the same State as the decedent." 28 U.S.C. § 1332(c)(2). The citizenship of the estate itself is, likewise, established by the citizenship of the decedent. *See Moore v. N. Am. Sports, Inc.*, 623 F.3d 1325, 1327 n.2 (11th Cir. 2010) (citing § 1332(c)(2)).

***2** McKie does not dispute that he is domiciled in New York, nor that Dickinson was domiciled in New York when she died. Instead, he argues that the district court overlooked that he also sued Irene and Charles, both South Carolina residents, individually. However, because McKie shared citizenship

with any of the defendants, the district court lacked subject matter jurisdiction. *See Hallingby*, 574 F.3d at 56.

Having properly concluded that it lacked subject matter jurisdiction, the district court proceeded to consider the merits and dismiss the complaint with prejudice for failure to state a claim. That was error. A dismissal for lack of subject matter jurisdiction must be without prejudice, because "without jurisdiction, the district court lacks the power to adjudicate the merits of the case." *Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 54–55 (2d Cir. 2016). Accordingly, the district court's dismissal with prejudice of claims over which it found it lacked subject matter jurisdiction must be vacated.

Nevertheless, since the district court has already issued a final judgment over the remaining claims, we cure part of the jurisdictional defect here in the interest of finality, efficiency, and economy. *See United Republic Ins. Co., in Receivership v. Chase Manhattan Bank*, 315 F.3d 168, 170 (2d Cir. 2003) ("Once a district court has proceeded to final judgment, considerations of finality, efficiency, and economy become overwhelming, and federal courts must salvage jurisdiction where possible." (quotation marks and citations omitted)). To salvage jurisdiction, we dismiss the nondiverse defendants (i.e., the estate and Charles in his official capacity as administrator). *See* Fed. R. Civ. P. 21 ("On motion or on its own, the court may at any time, on just terms, add or drop a party."); *Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 837 (1989) (recognizing that "courts of appeals have the authority to dismiss a dispensable nondiverse party" under Rule 21); *E.R. Squibb & Sons, Inc. v. Lloyd's & Cos.*, 241 F.3d 154, 163 (2d Cir. 2001) ("[W]here a change in parties, necessary to the existence of jurisdiction, is appropriate and is made (even on or after appeal), appellate courts have acted as if the trial court had jurisdiction from the beginning of the litigation.").

To the extent that McKie seeks damages from Charles and Irene for their personal tortious conduct, the estate and its administrator are not necessary because the case can proceed "in equity and good conscience" without them. Fed. R. Civ. P. 19(b). The Supreme Court has cautioned that the appellate courts' authority to dismiss parties "should be exercised sparingly," and that remand may be required to resolve factual disputes as to whether the dismissal of a nondiverse party will prejudice other parties. *Newman-Green*, 490 U.S. at 837. Here, Charles and Irene will only benefit from the finality of a dismissal with prejudice, and McKie and the nondiverse defendants would be in the same position whether those defendants are severed from this case or this case is dismissed in its entirety without prejudice.

Still, we agree with the district court that the probate exception to diversity jurisdiction bars some of McKie's claims against Irene and Charles in their individual capacities. Under the probate exception, a federal court cannot exercise diversity jurisdiction over a complaint that seeks to (1) "administer an estate, probate a will, or do any other purely probate matter" or (2) "to reach a res in the custody of a state court." *Lefkowitz v. Bank of N.Y.*, 528 F.3d 102, 106 (2d Cir. 2007) (quotation marks, alterations, and emphasis omitted). The exception does not apply to actions that "seek[ ] damages from Defendants personally rather than assets or distributions from [the] estate," even if they are "intertwine[d]" with a probate action. *Id.* at 107–08. We agree with the district court's analysis that McKie's claims for breach of fiduciary duty, aiding and abetting breach of fiduciary duty, conversion, unjust enrichment, quantum meruit, and indebitatus assumpsit are barred by the probate exception because they essentially "seek[ ] to mask in claims for federal relief ... complaints about the maladministration of [the estate]" and "[t]o provide the relief Plaintiff seeks ... the federal court would have to assert control over property that remains under the control of the state courts." *Id.* at 107. However, the probate exception does not bar McKie's claims for fraudulent misrepresentation, fraudulent concealment, and tortious interference, which seek compensatory and punitive damages from Charles and Irene in their individual capacities.

***3** We therefore dismiss the estate and Charles in his official capacity from this action and proceed to consider the merits of the remaining claims against Charles and Irene in their individual capacities.

### II. Merits

"We review a district court's grant of a motion to dismiss *de novo*, accepting as true all factual claims in the complaint and drawing all reasonable inferences in the plaintiff's favor." *Altimeo Asset Mgmt. v. Qihoo 360 Tech. Co.*, 19 F.4th 145, 147 (2d Cir. 2021) (quotation marks and citation omitted). Upon review of the record and relevant case law, we conclude that the district court's dismissal with prejudice of the remaining claims was correct. We affirm for substantially the same reasons stated by the district court in its August 2, 2021 memorandum and order, where it considered McKie's claims

for fraudulent misrepresentation, fraudulent concealment, and tortious interference.

### III. Denial of Leave to Amend

Finally, the district court did not err in denying leave to amend. We review such denials for abuse of discretion, unless the denial is "based on an interpretation of law." *Allen v. Credit Suisse Sec. (USA) LLC*, 895 F.3d 214, 227 (2d Cir. 2018) (quotation marks and citation omitted). A district court generally should not dismiss a pro se complaint without granting at least one opportunity to amend, but amendment should be denied where the complaint gives no "indication that a valid claim might be stated." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (citation omitted).

McKie does not explicitly challenge the denial of leave to amend in his appellate brief, but he does argue that the district court erred in denying a claim for an accounting, which he had identified as a claim that might be raised in an amended complaint. Such a claim relates to the estate and its administrator, and raising it would destroy the federal courts' diversity jurisdiction.

* * *

Accordingly, the district court's dismissal with prejudice is **VACATED** in part and we **DISMISS**, without prejudice, all claims against the estate of Doris Dickinson and its administrator in his official capacity and all claims against Charles and Irene Kornegay that fall under the probate exception. As to the remaining claims against Charles and Irene Kornegay in their individual capacities, we have considered all of McKie's arguments and find them to be without merit. Accordingly, we **AFFIRM** the judgment of the district court in remaining part to dismiss those claims with prejudice.

**All Citations**

Not Reported in Fed. Rptr., 2022 WL 4241355

## Footnotes

1 The Clerk of Court is respectfully directed to amend the caption as set forth above.

2 On appeal, McKie also argues that the district court should have considered whether jurisdiction existed under 28 U.S.C. §§ 1335 and 1343(a), but he fails to explain how either statute is applicable to this case. *See* 28 U.S.C. §§ 1343(a), 1335 (jurisdiction over certain civil rights and interpleader actions).

End of Document © 2026 Thomson Reuters. No claim to original U.S. Government Works.

2024 WL 3677262
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Gabriel M. RICH, Plaintiff,
v.
AKWESASNE MOHAWK CASINO RESORT, Defendant.

No. 8:24-CV-00255 (AMN/CFH)
|
Signed August 6, 2024

**Attorneys and Law Firms**

Gabriel M. Rich, 23-B-3674, Green Correctional Facility, P.O. Box 975, Coxsackie, New York 12051, Plaintiff pro se.

**REPORT-RECOMMENDATION AND ORDER**

CHRISTIAN F. HUMMEL, United States Magistrate Judge

**I. In Forma Pauperis**

***1** Plaintiff pro se Gabriel M. Rich ("plaintiff") purported to commence this action on February 21, 2024, by filing a complaint. See Dkt. No. 1 ("Compl."). In lieu of paying this Court's filing fee, he submitted an application for leave to proceed in forma pauperis ("IFP"). See Dkt. No. 2. The undersigned has reviewed plaintiff's IFP application and determines that he financially qualifies to proceed IFP.[1]

**II. Initial Review**

**A. Legal Standard**

28 U.S.C. § 1915 directs that, when a plaintiff seeks to proceed IFP, "the court shall dismiss the case at any time if the court determines that ... the action or appeal (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). "Thus, it is a court's responsibility to determine that a plaintiff may properly maintain his complaint before permitting him to proceed further with his action." Praileau v. Fischer, 930 F. Supp. 2d 383, 394 (N.D.N.Y. 2013).

Where, as here, the plaintiff proceeds pro se, "the court must construe his submissions liberally and interpret them to raise the strongest arguments that they suggest." Kirkland v. Cablevision Sys., 760 F.3d 223, 224 (2d Cir. 2014) (per curiam) (internal quotation marks and citation omitted). As the Second Circuit stated,

> [t]here are many cases in which we have said that a pro se litigant is entitled to special solicitude, that a pro se litigant's submissions must be construed liberally, and that such submissions must be read to raise the strongest arguments that they suggest[.] At the same time, our cases have also indicated that we cannot read into pro se submissions claims that are not consistent with the pro se litigant's allegations, or arguments that the submissions themselves do not suggest, that we should not excuse frivolous or vexatious filings by pro se litigants, and that pro se status does not exempt a party from compliance with relevant rules of procedural and substantive law[.]

Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 477 (2d Cir. 2006) (internal quotation marks, citations, and footnote omitted); see Sealed Plaintiff v. Sealed Defendant, 537 F.3d 185, 191 (2d Cir. 2008) ("On occasions too numerous to count, we have reminded district courts that when [a] plaintiff proceeds pro se, ... a court is obliged to construe his pleadings liberally.") (internal quotation marks and citations omitted).

"The [Second Circuit]'s 'special solicitude' for pro se pleadings has its limits, because pro se pleadings still must comply with ... the Federal Rules of Civil Procedure [('Fed. R. Civ. P.')]." Kastner v. Tri State Eye, No. 19-CV-10668 (CM), 2019 WL 6841952, at *2 (S.D.N.Y. Dec. 13, 2019) (quoting Ruotolo v. IRS, 28 F.3d 6, 8 (2d Cir. 1994)).[2] Specifically, Rule 8 provides that a pleading which sets forth a claim for relief shall contain "a short and plain statement of the grounds for the court's jurisdiction[,]" and "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" FED. R. CIV. P. 8(a). Although detailed allegations

are not required at the pleading stage, the complaint must still include enough facts to provide the defendant with notice of the claims against them and the grounds upon which these claims are based. See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); see also Bell Atlantic v. Twombly, 550 U.S. 544, 555-56 (2007). "The purpose ... is to give fair notice of the claim being asserted so as to permit the adverse party the opportunity to file a responsive answer, prepare an adequate defense and determine whether the doctrine of res judicata is applicable." Flores v. Graphtex, 189 F.R.D. 54, 55 (N.D.N.Y. 1999) (internal quotation marks and citations omitted).

***2** Further, Rule 10 provides in pertinent part that:

> [a] party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances. A later pleading may refer by number to a paragraph in an earlier pleading. If doing so would promote clarity, each claim founded on a separate transaction or occurrence—and each defense other than a denial—must be stated in a separate count or defense.

FED. R. CIV. P. 10(b). This serves the purpose of "provid[ing] an easy mode of identification for referring to a particular paragraph in a prior pleading[.]" Flores, 189 F.R.D. at 55 (internal quotation marks and citations omitted). A complaint that fails to comply with the pleading requirements "presents far too a heavy burden in terms of defendants' duty to shape a comprehensive defense and provides no meaningful basis for the Court to assess the sufficiency of their claims." Gonzales v. Wing, 167 F.R.D. 352, 355 (N.D.N.Y. 1996).

As the Second Circuit has held, "[w]hen a complaint does not comply with the requirement that it be short and plain, the court has the power, on its own initiative ... to dismiss the complaint." Salahuddin v. Cuomo, 861 F.2d 40, 42 (2d Cir. 1988) (citations omitted). However, "[d]ismissal ... is usually reserved for those cases in which the complaint is so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised." Id. (citations omitted). If dismissal is warranted and the plaintiff is pro se, the court generally affords the plaintiff leave to amend the complaint. See Simmons v. Abruzzo, 49 F.3d 83, 86-87 (2d Cir. 1995). However, an opportunity to amend is not required where "the problem with [the plaintiff's] causes of action is substantive" such that "better pleading will not cure it." Cuoco v. Moritsugu, 222 F.3d 99, 112 (2d Cir. 2000).

**B. Plaintiff's Complaint**

Plaintiff brings this action against Akwesasne Mohawk Casino Resort ("defendant").[3] See Compl. at 1.[4] Plaintiff alleges that, on "September 11, 2022[,]" he "purchased a [$250] casino ticket for a sports bet." Id. at 4. While "on [his] way to go cash the ticket[,]" on "September 26, 2022[,]" plaintiff "was pulled over by [a] state trooper." Id. Plaintiff "was subsequently arrested and all [of his] property [was] seized[,] including [his] car ... [and the] casino ticket." Id. Plaintiff was then "incarcerated at the St. Lawrence County Correctional [F]acility from September 26, 2022[,] until October 29, 2022." Id.; see id. at 11 (demonstrating that the police took the "casino ticket" into possession at the time of plaintiff's incarceration).

***3** Upon plaintiff's release on "October 29, 2022[,]" he "made multiple calls to" defendant "regarding [his] winning ticket" and eventually "spoke with a woman[,]"[5] who informed him that, "you have to have the physical ticket present in order to cash it[,]" per casino policy. Compl. at 4. The "woman" proceeded to "look[ ] up [plaintiff's] bet" and found that "it was already cashed in late [S]eptember, which was while [plaintiff] was incarcerated." Id. at 4-5. Plaintiff eventually found out that "a man named Jay McKinney" ("Mr. McKinney") had taken "a picture of the ticket ... and while [plaintiff] was incarcerated[, Mr. McKinney] was allowed to cash the ticket with [the] picture on his phone." Id. at 5. When plaintiff confronted him, Mr. McKinney confirmed that he had cashed the ticket. See id. This information was "alarming" to plaintiff because "it was cashed against [defendant's] own policy." Id.

Plaintiff then "made a police report [with] the St. Regio [sic] Mohawk Police and the[y] contacted [Mr. McKinney]," who "made a full statement admitting ... that he took a picture of the ticket[,] and when [plaintiff] was in jail[,] he used that photo to cash it at the casino[.]" Compl. at 5. Plaintiff "made multiple attempts for help from [defendant]" because he was "struggling really bad and needed that money for [his] kids." Id. "The ticket winnings were worth $1,150." Id.

Plaintiff brings this complaint pursuant to "Tort Claim 370 Other fraud[,]" alleging that defendant fraudulently "cashed [his casino ticket] without the physical ticket being present ... against [his] authorization and against [defendant's] own policy." Compl. at 1, 6. Plaintiff also claims "[o]ther civil rights to due process were violated." Id. at 6. Plaintiff alleges that defendant's actions were "fraudulent, neglectful[,] and caused financial hardship and emotional distress[,]" and requests "compensation for the pain [he] endured[,]" in the amount of "$3 million dollars ($3,000,000)[.]" Id. at 5-6.

### C. Analysis

The undersigned has liberally construed plaintiff's allegations in light of his pro se status. See, e.g., Torres v. Carry, 800 F. Supp. 2d 577, 582 (S.D.N.Y. 2011) ("[W]here, as here, a party appears pro se, courts must construe pro se pleadings broadly and interpret them to 'raise the strongest arguments that they suggest.' ") (quoting Graham v. Henderson, 89 F.3d 75, 79 (2d Cir. 1996), and citing Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir. 1994)). As asserted in his complaint, plaintiff brings this action against defendant[6] pursuant to "Tort Claim 370 Other fraud[.]" Compl. at 1. Plaintiff also alleges that defendant violated "other civil rights to due process" under 42 U.S.C. § 1983. Id. at 6. Additionally, plaintiff appears to raise state law claims against defendant. See id.

#### 1. Jurisdiction

*4 Federal courts exercise limited jurisdiction pursuant to Article III of the Constitution. See Trustees of New York State Nurses Assoc. Pension Plan v. White Oak Glob. Advisors, LLC, 102 F.4th 572, 593-94 (2d Cir. 2024); see also Durant, Nichols, Houston, Hodgson & Cortese-Costa P.C. v. Dupont, 565 F.3d 56, 62 (2d Cir. 2009) (" 'It is a fundamental precept that federal courts are courts of limited jurisdiction' and lack the power to disregard such limits as have been imposed by the Constitution or Congress.") (quoting Owen Equip. & Erection Co. v. Kroger, 437 U.S. 365, 374 (1978)). "Federal jurisdiction is only available when a 'federal question' is presented, or the plaintiff and defendant are of diverse citizenship and the amount in controversy exceeds $75,000." Hamza v. Midas, Inc., No. 1:23-CV-0543 (MAD/CFH), 2023 WL 5932942, at *4 (N.D.N.Y. Sep. 11, 2023) (citations omitted), report and recommendation adopted, 2024 WL 980095 (N.D.N.Y. Mar. 7, 2024). "When a court lacks subject matter jurisdiction, dismissal is mandatory." Id. (citing Arbaugh v. Y & H Corp., 546 U.S. 500, 514 (2006)). Therefore, although courts "construe a pro se litigant's complaint liberally, a plaintiff attempting to bring a case in federal court must still comply with the relevant rules of procedural and substantive law, including establishing that the court has subject matter jurisdiction over the action." Ally v. Sukkar, 128 F. App'x 194, 195 (2d Cir. 2005) (summary order) (citations omitted).

##### a. Federal Question Jurisdiction

28 U.S.C. § 1331 provides that "[t]he district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." "Federal question jurisdiction exists where a well-pleaded complaint establishes either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law." Perpetual Sec., Inc. v. Tang, 290 F.3d 132, 137 (2d Cir. 2002) (internal quotation marks and citations omitted); see Empire HealthChoice Assur., Inc. v. McVeigh, 396 F.3d 136, 140 (2d Cir. 2005) ("[A] plaintiff cannot create federal jurisdiction ... simply by alleging a federal claim where in reality none exists. Subject matter jurisdiction will lie only where the court determines that the substance of [the plaintiff's] allegations raises a federal question.") (internal quotation marks and citations omitted); see also Edwards v. Foxwoods Resort Casino, No. 17-CV-05869 (JMA/SIL), 2019 WL 486077, at *2 (E.D.N.Y. Feb. 7, 2019) ("Section 1331 can be invoked when the plaintiff pleads a 'colorable claim' arising under the Constitution or federal law.") (quoting Arbaugh, 546 U.S. at 513 n.10). To retain federal question jurisdiction, the plaintiff has the burden of proving that the action is arising out of a federal question. See Perpetual Sec., Inc., 290 F.3d at 137.

Here, plaintiff alleges "[t]hat fraud occurred when a ticket was cashed without the physical ticket being present and against [his] authorization and against [the casino's] own policy." Compl. at 6. He claims that this is a violation of "Tort Claim 370 Other fraud."[7] Id. at 1. However, he does not cite to any specific federal tort or fraud law. See generally id.; see also Gaston v. Shelter, No. 24-CV-04386 (NCM/LB), 2024 WL 3360365, at *2 (E.D.N.Y. July 10, 2024) ("Liberally construing [the] plaintiff's allegations to raise the strongest arguments they suggest, the complaint does not suggest any basis for the exercise of federal question jurisdiction [because the p]laintiff's claim does not arise under the Constitution or any federal laws.") (citing 28 U.S.C. § 1331). Thus, it

is unclear if plaintiff is claiming a violation of federal law. See generally Compl. Accordingly, because plaintiff did not sufficiently "identify [any] federal right or rights allegedly at issue[,]" he has failed to properly allege a valid basis for the Court's federal question jurisdiction. Jones v. Farney, No. 1:23-CV-563 (BKS/DJS), 2023 WL 7688457, at *2 (N.D.N.Y. May 19, 2023); see Khiger v. Nevada, No. 13-CV-6057 (WFK/LB), 2013 WL 12323919, at *2 (E.D.N.Y. Nov. 12, 2013) ("Moreover, because of the vague nature of [the p]laintiff's complaint, it is unclear whether [the p]laintiff can properly invoke federal question jurisdiction against any named defendant.").

***5** Additionally, plaintiff alleges that "[o]ther civil rights to due process were violated." See Compl. at 6. Liberally construing his complaint, he appears to be raising a Fourteenth Amendment claim under 42 U.S.C. § 1983. See generally id. However, "[b]ecause Tribal Nations are seen as 'separate sovereigns pre-existing the Constitution, tribes have historically been regarded as unconstrained by those constitutional provisions framed specifically as limitations on federal or state authority.' " Edwards, 2019 WL 486077, at *2 (quoting Santa Clara Pueblo v. Martinez, 436 U.S. 49, 56 (1978)). "Accordingly, the Bill of Rights and the Fourteenth Amendment do not apply to Indian tribes." Id. (citation omitted); see, e.g., Colebut v. Mashantucket Pequot Tribal Nation Tribal Elders Council, 3:05-CV-00247 (DJS), 2007 WL 174384, at *5 (D. Conn. Jan. 19, 2007) (" '[T]he protections of the United States Constitution are generally inapplicable to Indian tribes, Indian courts and Indians on the reservation.' ") (quoting United States v. Percy, 250 F.3d 720, 725 (9th Cir. 2001)).

Here, defendant is a commercial enterprise, owned and operated by the Saint Regis Mohawk Tribe ("St. Regis"), a federally recognized Indian Tribe. See Indian Entities Recognized by and Eligible To Receive Services From the United States Bureau of Indian Affairs, 89 Fed. Reg. 944-02 (Jan. 8, 2024), 2024 WL 68476. Thus, it appears that defendant is an arm of St. Regis. See Edwards, 2019 WL 486077, at *2 (holding that the defendant, a Gaming Enterprise owned and operated by a Tribal Nation, is not subject to suit under the Bill of Rights or Fourteenth Amendment). As such, a Fourteenth Amendment claim cannot apply to defendant.[8] See Frazier v. Turning Stone Casino, 254 F. Supp. 2d 295, 314 (N.D.N.Y. 2003) ("[T]he Fourteenth Amendment by its terms applies to States, not Indian Tribes. Indian Tribes are exempt[ ] ... from constitutional provisions addressed specifically to State or Federal Governments[.]") (internal quotation marks and citations omitted). Thus, plaintiff has failed to state a colorable federal claim. See Arbaugh, 546 U.S. at 513 n.10 ("A claim invoking federal-question jurisdiction ... may be dismissed ... if it is not colorable, i.e., if it is 'immaterial and made solely for the purpose of obtaining jurisdiction' or is 'wholly insubstantial and frivolous.' ") (citations omitted).

**b. Diversity Jurisdiction**

28 U.S.C. § 1332 provides that federal courts have "original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs[,]" and where there is complete diversity of the parties. See Handelsman v. Bedford Village Assocs. Ltd. P'ship, 213 F.3d 48, 51 (2d Cir. 2000) ("Diversity jurisdiction requires that 'all of the adverse parties in a suit ... be completely diverse with regard to citizenship.' ") (quoting E.R. Squibb & Sons, Inc. v. Accident & Cas. Ins. Co., 160 F.3d 925, 930 (2d Cir. 1998) (additional citations omitted)).

***6** "A party invoking the jurisdiction of the federal court has the burden of proving that it appears to a reasonable probability that the claim is in excess of the statutory jurisdictional amount." Scherer v. Equitable Life Assurance Soc'y of U.S., 347 F.3d 394, 397 (2d Cir. 2003) (internal quotation marks and citations omitted). "This burden is hardly onerous, however, for we recognize 'a rebuttable presumption that the face of the complaint is a good faith representation of the actual amount in controversy.' " Id. (quoting Wolde-Meskel v. Vocational Instruction Project Cmty. Servs., Inc., 166 F.3d 59, 63 (2d Cir. 1999)). "[E]ven where th[e] allegations leave grave doubt about the likelihood of a recovery of the requisite amount, dismissal is not warranted." Zacharia v. Harbor Island Spa, Inc., 684 F.2d 199, 202 (2d Cir. 1982) (citing Deutsch v. Hewes Street Realty Corp., 359 F.2d 96 (2d Cir. 1966)). "[D]ismissal is appropriate only if the legal impossibility of recovering above the threshold amount is 'so certain as virtually to negat[e] the plaintiff's good faith in asserting the claim.' " Peoples Club of Nigeria Int'l, Inc. v. Peoples Club of Nigeria Int'l – New York Branch, Inc., 821 F. App'x 32, 34 (2d Cir. 2020) (summary order) (quoting Chase Manhattan Bank, N.A. v. Am. Nat. Bank and Trust Co. of Chicago, 93 F.3d 1064, 1070-71 (2d Cir. 1996)).

Here, although plaintiff's casino ticket allegedly won $1,150, he is requesting relief in the sum of $3,000,000. See Compl. at 5-6. Even if there is "grave doubt" regarding plaintiff's ability

to fully recover his requested relief, this Court recognizes "a rebuttable presumption that the face of the complaint is a good faith representation of the actual amount in controversy." Zacharia, 684 F.2d at 202 (citation omitted); Wolde-Meskel, 166 F.3d at 63 (citations omitted). Therefore, for purposes of this review, plaintiff has sufficiently alleged that his damages satisfy the amount in controversy requirement for diversity jurisdiction. See generally Compl. at 6; see, e.g., Brown v. Twitter, Automattic Inc., No. 19-CV-6328 (KPF), 2021 WL 3887611, at *6 (S.D.N.Y. Aug. 31, 2021) ("Affording [the p]laintiff particular leniency as a pro se litigant, the Court finds that [the p]laintiff has adequately pleaded facts indicating that" "her claim exceeds the $75,000 threshold requirement.").

However, plaintiff does not meet the complete diversity requirement. See Owen Equip. & Erection Co., 437 U.S. at 373 ("[D]iversity jurisdiction does not exist unless each defendant is a citizen of a different State from each plaintiff."). "An Indian Tribe is not a citizen of any state for the purposes of diversity jurisdiction."[9] Frazier v. Brophy, 358 F. App'x 212, 213 (2d Cir. 2009) (summary order) (citing Romanella v. Hayward, 114 F.3d 15, 16 (2d Cir. 1997) (per curiam), and Frazier v. Turning Stone Casino, 254 F. Supp. 2d at 304). Given their "unique status as ... aboriginal entit[ies] antedating the federal government[,]" Indian Tribes are "distinct, independent political communities, retaining their original natural rights[.]" Romanella, 114 F.3d at 16 (internal quotation marks and citations omitted). The Second Circuit has consistently held that Indian Tribes are akin to "other domestic sovereigns, such as states, which cannot sue or be sued in diversity." Brophy, 358 F. App'x at 213 (citing Romanella, 114 F.3d at 16). "These principles extend to tribal entities that are arms of the tribe." Worrall v. Mashantucket Pequot Gaming Enter., 131 F. Supp. 2d 328, 329 (D. Conn. 2001) (citing Ninigret Dev. Corp. v. Narragansett Indian Wetuomuck Hous. Auth., 207 F.3d 21, 27 (2d Cir. 2000) ("We see no reason why the Authority (an arm of the Tribe, not separately incorporated) should be treated any differently [than the Tribe itself] for jurisdictional purposes.")). Thus, plaintiff cannot assert diversity jurisdiction over defendant, as defendant appears to be an arm of St. Regis. See Brophy, 358 F. App'x at 213; see also Iowa Mut. Ins. Co. v. LaPlante, 480 U.S. 9, 17-18 (1987) ("In the absence of any indication that Congress intended the diversity statute to limit the jurisdiction of the tribal courts, we decline petitioner's invitation to hold that tribal sovereignty can be impaired in this fashion.").

*7 Accordingly, although plaintiff may meet the amount in controversy requirement, he fails to meet the complete diversity requirement, and, thus, fails to demonstrate diversity jurisdiction. Therefore, because plaintiff has failed to establish either federal question jurisdiction or diversity jurisdiction, it is recommended that his complaint be dismissed for lack of subject matter jurisdiction.

### 2. Tribal Sovereign Immunity

"As a matter of federal law, an Indian tribe is subject to suit only where Congress has authorized the suit or the tribe has waived its immunity." Kiowa Tribe of Okla. v. Mfg. Techs., Inc., 523 U.S. 751, 754 (1998) (citations omitted); see Bassett v. Mashantucket Pequot Tribe, 204 F.3d 343, 356 (2d Cir. 2000) ("It is by now well established that Indian tribes possess the common-law immunity from suit traditionally enjoyed by sovereign powers.") (citations omitted). "[C]ongressional abrogation of tribal immunity ... 'cannot be implied but must be unequivocally expressed.' " Bassett, 204 F.3d at 356 (quoting Santa Clara Pueblo, 436 U.S. at 98). Similarly, for a tribe to "relinquish its immunity, a tribe's waiver must be 'clear.' " C & L Enters., Inc. v. Citizen Band Potawatomi Indian Tribe of Okla., 532 U.S. 411, 412 (2001) (quoting Okla. Tax Comm'n v. Citizen Band Potawatomi Tribe of Okla., 498 U.S. 505, 509 (1991)). "Courts lack subject matter jurisdiction to determine claims barred by tribal sovereign immunity." Frazier v. Turning Stone Casino, 254 F. Supp. 2d at 305 (citing Garcia v. Akwesasne Hous. Auth., 268 F.3d 76, 84 (2d Cir. 2001)); see Laake v. Turning Stone Resort Casino, 740 F. App'x 744, 745 (2d Cir. 2018) (summary order) (holding that "the district court properly concluded that it lacked subject matter jurisdiction over the complaint against [the defendant because] Indian tribes have sovereign immunity from suit" absent congressional abrogation or waiver) (citations omitted).

A tribe's immunity extends to both their commercial and non-commercial activities. See Kiowa Tribe of Okla., 523 U.S. at 760 (declining to draw a distinction between commercial and non-commercial activities for the purposes of restricting tribal immunity); see also Allegany Cap. Enters., LLC v. Cox, No. 19-CV-160S, 2021 WL 534803, at *5 (W.D.N.Y. Feb. 12, 2021) ("[Tribal] immunity applies when the plaintiff seeks judicial relief from the sovereign entity, [including] the native nation or its corporate entities.") (citations omitted). Accordingly, "[t]ribal immunity extends to tribal commercial

enterprises, such as gambling venues." Laake, 740 F. App'x at 745 (citing Kiowa Tribe of Okla., 523 U.S. at 754-55).

As discussed, defendant is a commercial enterprise owned and operated by St. Regis, a federally recognized Indian Tribe. See discussion supra Subsection II.C.1.a; see also Indian Entities Recognized by and Eligible To Receive Services From the United States Bureau of Indian Affairs, 89 Fed. Reg. 944-02 (Jan. 8, 2024), 2024 WL 68476. Thus, defendant is entitled to tribal immunity.[10] See Laake, 740 F. App'x at 745 (extending tribal immunity to a gambling venue owned and operated by an Indian Tribe). Therefore, it is alternatively recommended that plaintiff's complaint be dismissed as barred by tribal immunity.

### 3. Tribal Court Exhaustion of Remedies

***8** The Supreme Court established the tribal court exhaustion rule in National Farmers Union Insurance Company v. Crow Tribe of Indians, 471 U.S. 845, 855-57 (1985), which "requires that federal courts abstain from hearing certain claims relating to Indian tribes until the plaintiff has first exhausted those claims in a tribal court." Garcia, 268 F.3d at 79. The federal government maintains a "policy of supporting tribal self-government and self-determination[,]" which "[a] federal court's exercise of jurisdiction over matters relating to reservation affairs can [ ] impair[.]" National Farmers, 471 U.S. at 856; LaPlante, 480 U.S. at 15; see Garcia, 268 F.3d at 82 (explaining that the underlying policies for the tribal exhaustion rule include "the policy of supporting tribal self-government and self-determination, the recognition that a federal court's exercise of jurisdiction over matters relating to reservation affairs can ... impair the authority of tribal courts, and the view that tribal courts play a vital role in tribal self-government") (internal quotation marks and citations omitted). Thus, "[e]ven when the jurisdiction of the tribal court is challenged, 'the Tribal Court itself' must be permitted to determine the issue 'in the first instance.' " Bowen v. Doyle, 230 F.3d 525, 529 (2d. Cir. 2000) (quoting National Farmers, 471 U.S. at 856); see Basil Cook Enters., Inc. v. St. Regis Mohawk Tribe, 117 F.3d 61, 65 (2d Cir. 1997) ("[P]arties who challenge, under federal law, the jurisdiction of a tribal court to entertain a cause of action must first present their claim to the tribal court before seeking to defeat tribal jurisdiction in any collateral or parallel federal court proceeding."). "The exhaustion requirement is a 'prudential rule' based on principles of comity; it is not a jurisdictional prerequisite." Bowen, 230 F.3d at 530 (quoting Strate v. A-1 Contractors, 520 U.S. 438, 453 (1997), and LaPlante, 480 U.S. at 16 n.8).

There are a few exceptions to the exhaustion mandate. See Garcia, 268 F.3d at 84; see also National Farmers, 471 U.S. at 856 n.21. In Garcia v. Akwesasne Housing Authority, the Second Circuit noted that there were "[s]everal circumstances ... considered together, [that can] militate against abstention ... and suggest deference instead to the competing doctrine that a federal court must fulfill its 'virtually unflagging obligation ... to exercise [its] jurisdiction.' " Garcia, 268 F.3d at 82 (quoting Colorado River Water Conservation Dist. v. United States, 424 U.S. 800, 817 (1976)); see Cayuga Nation v. Parker, 605 F. Supp. 3d 414, 429 (N.D.N.Y. 2022). The Second Circuit held that these "circumstances" include:

> the absence of a pursuit in a tribal forum and lack of challenge by either party to the authority of the tribal court to act; the absence of an intra-tribal dispute, noting that the party seeking relief in federal court was not a member of the tribe that she is suing; and the presence of theories of liability grounded (if anywhere) on federal and state law, not tribal law.

Cayuga Nation, 605 F. Supp. 3d at 429 (citing Garcia, 268 F.3d at 83 (explaining that, in the absence of a tribal proceeding, the "federal proceeding does not implicate or in any way impair the authority of the tribal court to proceed," but noting that "[i]f a tribal court proceeding were pending, our analysis might well be different")) (internal quotation marks omitted). Thus, the Second Circuit held that "where no ongoing tribal proceeding exists, and a non-member of the tribe properly invokes the jurisdiction of a federal court to litigate non-tribal law, the tribal exhaustion rule does not mandate abstention[.]" Garcia, 268 F.3d at 84.

Additionally, in National Farmers, the Supreme Court of the United States held that

> [e]xhaustion is not required in situations where the assertion of tribal jurisdiction (1) "is motivated by a desire to harass or is conducted in bad faith," or (2) "where the action is patently violative of express jurisdictional

> prohibitions," or (3) "where exhaustion would be futile because of the lack of an adequate opportunity to challenge the court's jurisdiction."

MacEwen Petroleum, Inc. v. Tarbell, 173 F.R.D. 36, 41 (N.D.N.Y. 1997) (quoting National Farmers, 471 U.S. at 856 n.21). "In the absence of one or more of these circumstances, however, exhaustion is required." Basil Cook Enters., 117 F.3d at 66 (citing Reservation Tel. Coop. v. Three Affiliated Tribes of the Fort Berthold Reservation, 76 F.3d 181, 184 (8th Cir. 1996)).

*9 Here, plaintiff has not claimed that he brought this matter to the St. Regis Tribal Court before filing this action. See Compl. at 4-5. Instead, he has only alleged that he made a police report with the St. Regis Police, who brought Mr. McKinney in for a statement. See id. at 5. However, filing a claim with the tribe's police department does not suffice to establish exhaustion. See LaPlante, 480 U.S. at 17 (explaining that full exhaustion of tribal court remedies specifically includes an "initial determination" from the Tribal Court and, "[a]t a minimum[,]" review from tribal appellate courts); see also National Farmers, 471 U.S. at 857 ("Until petitioners have exhausted the remedies available to them in the Tribal Court system, it would be premature for a federal court to consider any relief.") (internal citation omitted). Thus, plaintiff has failed to demonstrate that he exhausted his remedies. See Basil Cook Enters., 117 F.3d at 66; see also National Farmers, 471 U.S. at 857.

Moreover, plaintiff has not established that he was excused from exhaustion. See Basil Cook Enters., 117 F.3d at 66-69 (rejecting the plaintiffs' argument that "the facts of [their] dispute placed it within an exception to the exhaustion requirement," and instructing them to bring their complaint first to the Tribal Court). Plaintiff has not alleged that any of the Garcia circumstances are present here. See Garcia, 268 F.3d at 82-84; see also Compl. Although it appears that plaintiff is a "non-member of the tribe[,]" and there is "no ongoing tribal proceeding[,]" or "intra-tribal dispute[,]" it is unclear what "theor[y] of liability" plaintiff is attempting to recover from and whether such theory is grounded on federal and state law or tribal law. Garcia, 268 F.3d at 83-84; see generally Compl. at 4-5. Thus, even liberally construing plaintiff's claims, it is unclear whether plaintiff has "properly invoke[d] the jurisdiction of a federal court to litigate non-tribal law[.]" Garcia, 268 F.3d at 84. Accordingly, these factors "militate in favor of the application of the tribal exhaustion rule." Cayuga Nation, 605 F. Supp. 3d at 430 (holding that the presence of a proceeding in tribal court, a tribal member owning and operating the business in dispute, and the business being on tribal land and governed by the tribe, "militate in favor of the application of the tribal exhaustion rule[.]" and therefore, "it would be premature for this Court to act until the ... [Tribal] Court action ... is exhausted") (citations omitted).

Additionally, plaintiff has not claimed to be excused from exhaustion due to any of the exceptions discussed in National Farmers. See 471 U.S. at 856 n.21; see generally Compl. First, plaintiff has not sufficiently alleged that defendant is "motivated by a desire to harass or is conducted in bad faith."[11] National Farmers, 471 U.S. at 856 n.21. Second, plaintiff has not claimed that defendant's actions were "patently violative of express jurisdictional prohibitions[.]" Id.; see Basil Cook Enters., 117 F.3d at 67 ("[E]xhaustion will be excused under the 'patently violative of express jurisdictional prohibitions' exception only in those rare cases when a tribal court's civil jurisdiction is found by a federal court to be in patent violation of express federal law.") (citations omitted); see also AG Organic, Inc. v. John, 892 F. Supp. 466, 475 (W.D.N.Y. 1995) (finding that the language of the federal or state statute in question must "expressly prohibit the tribal courts from exercising jurisdiction" and, "[i]n the absence of such an express prohibition, th[e] court must presume that tribal sovereign power remains intact"). Last, plaintiff has not established that exhaustion would have been "futile because of the lack of an adequate opportunity to challenge the court's jurisdiction." National Farmers, 471 U.S. at 856 n.21; see Comstock Oil & Gas Inc. v. Alabama and Coushatta Indian Tribes of Texas, 261 F.3d 567, 572-73 (5th Cir. 2001) (affirming the district court's ruling that exhaustion was not required before proceeding in federal court where exhaustion would have been futile, as the tribe had no tribal court).

*10 Thus, plaintiff has failed to demonstrate that he exhausted his tribal court remedies, or that he was excused from exhaustion. See Cayuga Nation, 605 F. Supp. at 431 (holding that where the plaintiff did not establish exhaustion and had failed to meet the exceptions, "it would be premature for this Court to act until the ... [Tribal] Court action ... is exhausted."). Accordingly, the undersigned also recommends plaintiff's complaint be dismissed for failure to exhaust.

**4. State Law Claims**

Plaintiff alleges that defendant caused "willful neglect, emotional distress, [and] financial hardship[.]" Compl. at 6. Liberally construing his complaint, he appears to bring state law claims for fraud and negligence, as well as negligent and intentional infliction of emotional distress. See id. "Although, generally, this Court has the discretion to exercise its supplemental jurisdiction to review state law claims in some cases, where there is no meritorious federal claim before the Court, the district court should decline to exercise its supplemental jurisdiction to review any related state law claims." Passero v. Schulz, No. 1:17-CV-1296 (TJM/CFH), 2018 WL 2926292, at *4 (N.D.N.Y. Feb. 1, 2018) (citing Block v. First Blood Assocs., 988 F.2d 344, 351 (2d Cir. 1993), and Purgess v. Sharrock, 33 F.3d 134 (2d Cir. 1994)), report and recommendation adopted sub nom. Passero v. Schultz, 2018 WL 2926295 (N.D.N. Y June 7, 2018); see Lawler v. ViaPort New York, LLC, No. 1:19-CV-548 (GLS/CFH), 2019 WL 2717900, at *3 (N.D.N.Y. June 28, 2019) (recommending, upon § 1915 review, that the Court decline to exercise supplemental jurisdiction over the plaintiff's state law claim where the plaintiff failed to "set forth a valid federal law claim"), report and recommendation adopted, 2019 WL 6134180 (N.D.N.Y. Nov. 19, 2019).

Thus, as there exists no valid federal claim, it is recommended that the Court decline to exercise supplemental jurisdiction over plaintiff's state law claims. See Passero, 2018 WL 2926292, at *4 ("As [the] plaintiff's complaint currently fails to demonstrate the involvement of a federal question, and, thus, fails to demonstrate this Court's jurisdiction, it is recommended that this Court also decline to exercise jurisdiction over [the] plaintiff's potential state law claim.") (citing Kaminski v. Comm'r of Oneida Cnty. Dep't of Soc. Servs., 804 F. Supp. 2d 100, 107 (N.D.N.Y. 2011), and 28 U.S.C. § 1367(3)(c)).

### III. Leave to Amend

Generally, in cases involving pro se plaintiffs, a court should not dismiss a complaint without granting leave to amend "at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." Branum v. Clark, 927 F.2d 698, 705 (2d Cir. 1991) (citations omitted). However, an opportunity to amend is not required where "the problem with [the plaintiff's] causes of action is substantive" such that "better pleading will not cure it." Cuoco, 222 F.3d at 112; see also Cortec Indus. Inc. v. Sum Holding L.P., 949 F.2d 42, 48 (2d Cir. 1991) ("Of course, where a plaintiff is unable to allege any fact sufficient to support its claim, a complaint should be dismissed with prejudice."). "[L]ack of subject-matter jurisdiction is generally viewed as a substantive defect." Planck v. Schenectady Cnty., No. 1:12-CV-0336 (GTS/DRH), 2012 WL 1977972, at *6 (N.D.N.Y. June 1, 2012) (footnote omitted); see Laake v. Turning Stone Resort Casino, No. 6:17-CV-00249, 2017 WL 6626677, at *4 (N.D.N.Y. Oct. 25, 2017) ("Because better pleading would not cure the lack of subject matter jurisdiction, [the p]laintiff is not given leave to replead."), aff'd, 740 F. App'x 744 (2d Cir. 2018) (summary order).

***11** As plaintiff has not established subject matter jurisdiction, it is recommended that his complaint be dismissed without prejudice.[12] See McKie v. Kornegay, No. 21-1943, 2022 WL 4241355, at *2 (2d Cir. Sept. 15, 2022) (summary order) ("A dismissal for lack of subject matter jurisdiction must be without prejudice, because 'without jurisdiction, the district court lacks the power to adjudicate the merits of the case.' ") (quoting Carter v. HealthPort Techs., LLC, 822 F.3d 47, 54-55 (2d Cir. 2016)). However, as "leave to amend would be futile as the defects in plaintiff's claims cannot be cured with a better pleading as the problems are substantive,"[13] it is further recommended that his complaint be dismissed without leave to amend. Vazquez v. Times Union Newspaper, No. 1:21-CV-1359 (DNH/CFH), 2022 WL 837474, at *4 (N.D.N.Y. Mar. 1, 2022) (citing Cuoco, 222 F.3d at 112, and Ruffolo v. Oppenheimer & Co., 987 F.2d 129, 131 (2d Cir. 1993)), report and recommendation adopted, 2022 WL 833370 (N.D.N. Y Mar. 21, 2022); see, e.g., Koziel v. City Ct. of Yonkers, 351 F. App'x 470, 471 (2d Cir. 2009) (summary order) (affirming sua sponte dismissal of the pro se plaintiff's complaint without leave to amend due to lack of subject matter jurisdiction and, alternatively, for failure to state a claim, finding "no possibility in this case that even an amended complaint would succeed in stating a valid claim"); Shidagis v. Citgo Gas Station, No. 3:23-CV-0192 (DNH/ML), 2023 WL 2634067, at *4 (N.D.N.Y. Mar. 6, 2023) (recommending dismissal without prejudice and without leave to amend, because plaintiff failed to establish subject matter jurisdiction and "leave to amend would be futile"), report and recommendation adopted, 2023 WL 2631890 (N.D.N.Y. Mar. 24, 2023).

### IV. Conclusion

**WHEREFORE**, for the reasons set forth herein, it is hereby

**ORDERED**, that plaintiff's application to proceed in forma pauperis (Dkt. No. 2) is **GRANTED**; and it is further

**RECOMMENDED**, that plaintiff's claims against defendant Akwesasne Mohawk Casino Resort (Dkt. No. 1) be **DISMISSED WITHOUT PREJUDICE BUT WITHOUT LEAVE TO AMEND**; and it is

**ORDERED**, that the Clerk serve a copy of this Report-Recommendation and Order in accordance with Local Rules.

**IT IS SO ORDERED.**

Pursuant to 28 U.S.C. § 636(b)(1), plaintiff has **FOURTEEN (14)** days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW**. Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993) (citing Small v. Sec'y of Health and Human Servs., 892 F.2d 15 (2d Cir. 1989)); see also 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72 & 6(a). [14]

**All Citations**

Not Reported in Fed. Supp., 2024 WL 3677262

## Footnotes

1 Plaintiff is advised that although he has been granted IFP status, he is still required to pay any fees and costs he may incur in this action, including but not limited to copying fees, transcript fees, and witness fees.

2 All unpublished opinions cited in this Report-Recommendation and Order, unless otherwise noted, have been provided to plaintiff.

3 On April 1, 2024, prior to this Court's initial review of plaintiff's complaint, defendant filed a motion to dismiss for lack of subject matter jurisdiction and for failure to exhaust. See generally Dkt. No. 6. However, as the Court has yet to conduct initial review or authorize service in this case, the undersigned declines to consider the defendant's motion in this Report-Recommendation and Order. See 28 U.S.C. §§ 1915, 1915(a).

4 The Court's citations to plaintiff's complaint reflect the pagination generated by the Court's electronic filing program, CM/ECF, located at the header of each page, rather than to the individual pagination of each submission.

5 Plaintiff does not specify who this "woman" is, or whether she is an employee of defendant. See generally Compl.

6 The undersigned notes that, although plaintiff names "Jay McKinney" in his statement of the facts, his claims focus solely on the actions and policies of Akwesasne Mohawk Casino Resort. See generally Compl. Thus, even liberally construing his complaint, it appears that plaintiff intends to bring this action solely against Akwesasne Mohawk Casino Resort ("defendant"). See generally id. In any event, to the extent plaintiff may seek to raise a due process claim against Mr. McKinney pursuant to 42 U.S.C. § 1983, such a claim would fail as plaintiff has not alleged that Mr. McKinney is a state actor. See id. at 6; see also Flagg v. Younkers Sav. & Loan Ass'n, 396 F.3d 178, 186 (2d Cir. 2005) ("Because the United States Constitution regulates only the Government, not private parties, [with respect to a claim brought under § 1983,] a litigant claiming that his constitutional rights have been violated must first establish that the challenged conduct constitutes 'state action.' ") (quoting United States v. Int'l Brotherhood of Teamsters, 941 F.2d 1292, 1295 (2d Cir. 1991)); Yi Sun v. Saslovsky, No. 1:19-CV-10858 (LTS), 2020 WL 6828666, at *7 (S.D.N.Y. Aug. 6, 2020) ("Private parties generally are not state actors and therefore are not usually liable under [§] 1983.") (citing Sykes v. Bank of America, 723 F.3d 399, 406 (2d Cir. 2013)) (additional citations omitted). Further, plaintiff has not

asserted that Mr. McKinney conspired with a state actor to violate his constitutional rights. See Pangburn v. Culbertson, 200 F.3d 65, 72 (2d Cir. 1999) (explaining that, to sufficiently allege "a § 1983 conspiracy, a plaintiff must show: (1) an agreement between two or more state actors or between a state actor and a private entity; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages.") (citations omitted).

7 Liberally construing his allegations, plaintiff appears to be referring to a nature of suit code, as defined on the Civil Cover Sheet (Form JS-44). See CIVIL COVER SHEET, https://www.uscourts.gov/forms/civil-forms/civil-cover-sheet (last visited July 24, 2024). However, "370 Other Fraud" is not a federal statute and, therefore, reference to it alone does not establish federal question jurisdiction.

8 Moreover, " '[t]he proper vehicle for relief for constitutional deprivations stemming from tribal action is [the Indian Civil Rights Act ("ICRA")].' " Edwards, 2019 WL 486077, at *2 (quoting Pitre v. Shenandoah, 633 F. App'x 44, 45 (2d Cir. 2016) (summary order)). "In ICRA, Congress imposed 'certain restrictions upon tribal governments similar, but not identical, to those contained in the Bill of Rights and the Fourteenth Amendment.' " Id. (quoting Santa Clara Pueblo, 436 U.S. at 57). However, plaintiff does not seek relief under ICRA and, even if he did, " 'ICRA provides no private right of action against a tribe or tribal officials and may only be enforced in tribal court or by means of a petition for habeas corpus in federal court.' " Id. (quoting Pitre, 633 F. App'x at 45).

9 Moreover, Indian Tribes are not considered to be unincorporated associations for the purposes of diversity jurisdiction. See Romanella, 114 F.3d at 16.

10 As mentioned above, tribal immunity applies unless "Congress has authorized the suit or the tribe has waived its immunity." Kiowa Tribe of Okla., 523 U.S. at 754 (citations omitted). The undersigned notes that plaintiff has not alleged that Congress has abrogated defendant's immunity. See generally Compl. Nor has plaintiff claimed that defendant waived its tribal immunity. See id.; see also Long v. Barrett, No. 2:17-CV-5741 (KM/SCM), 2018 WL 1617702, at *4 (D.N.J. Apr. 3, 2018) (dismissing the plaintiff's claims against the defendant where tribal immunity applied and the plaintiff did not "indicat[e] that the tribe [ ] waived its sovereign immunity or that Congress [ ] authorized a legal action").

11 The test regarding what constitutes harassment and bad faith is not well defined. See, e.g., Grand Canyon Skywalk Dev., LLC v. 'Sa' Nyu Wa Inc., 715 F.3d 1196, 1201 (9th Cir. 2013) (noting that "Black's Law Dictionary defines bad faith as dishonesty of belief or purpose[,]" and holding that where "a tribal court has asserted jurisdiction and is entertaining a suit, the tribal court must have acted in bad faith for exhaustion to be excused.") (internal quotation marks and citations omitted). The undersigned notes that plaintiff has not sufficiently alleged that the tribe acted with "dishonesty of belief or purpose," or that the tribe is biased or incompetent in any way. See generally Compl. at 4-5. To the extent that plaintiff argues that the ticket was cashed "against [defendant's] own policy" and that he "made multiple attempts for help[,]" these contentions do not sufficiently allege that defendant acted in bad faith. Compl. at 5; see AG Organic, Inc. v. John, 892 F. Supp. 466, 477 (W.D.N.Y. 1995) (finding "no compelling reason to excuse exhaustion on the basis of the 'bad faith' exception" because "except in the most unusual circumstances, claims of bias or incompetence be raised first and fully litigated in the tribal court system").

12 Specifically, it is recommended that the dismissal be without prejudice to plaintiff's ability to commence an action in an appropriate state or tribal court, should he wish to do so. The undersigned makes no comment as to the success of the claim, or the ability to bring such a claim, in state or tribal court. See Vazquez v. Times Union Newspaper, No. 1:21-CV-1359 (DNH/CFH), 2022 WL 837474, at *4 n.5 (N.D.N.Y. Mar. 1, 2022), report and recommendation adopted, 2022 WL 833370 (N.D.N.Y. Mar. 21, 2022).

13 Amendment would be futile because, as discussed, plaintiff cannot establish subject matter jurisdiction over defendant. See discussion supra Subsection II.C.1; see also Frazier v. Turning Stone Casino, 254 F. Supp. 2d at 314 (denying the plaintiff leave to amend because amendment would be futile). Moreover, defendant is entitled to tribal immunity. See Laake, 2017 WL 6626677, at *4 (holding that the court lacked subject matter jurisdiction due to tribal immunity and, thus, amendment would be futile). Further, plaintiff has failed to establish that he exhausted his tribal remedies or that an exception would apply and, as such, he needs to bring this matter first to St. Regis Tribal Council. See National Farmers, 471 U.S. at 857. Finally, a § 1983 claim against defendant fails because the "Bill of Rights and the Fourteenth Amendment do not apply to Indian tribes[.]" Edwards, 2019 WL 486077, at *2.

14 If you are proceeding pro se and are served with this Report-Recommendation and Order by mail, three (3) additional days will be added to the fourteen (14) day period, meaning that you have seventeen (17) days from the date the Report-Recommendation and Order was mailed to you to serve and file objections. FED R. CIV. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. Id. § 6(a)(1)(c).

End of Document

© 2026 Thomson Reuters. No claim to original U.S. Government Works.

711 Fed.Appx. 17
This case was not selected for
publication in West's Federal Reporter.
RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.
United States Court of Appeals, Second Circuit.

Anthony ROMANO, Plaintiff-Appellant,
v.
Lisa LISSON, K. Crowley, T. Campbell, Scarvani, Evertt, Stirk, Scarelli, Captain, Blask, Sergeant, Hayes, Sergeant, The Johnson Law Group LLP, Napoli Bern Ripkash Kolnik LLP, Defendants.

16-2708
|
October 3, 2017

**Synopsis**
**Background:** State prisoner brought pro se § 1983 action against nine prison officials alleging violations of his constitutional rights, based on officials' alleged deprivation of his access to the phone and his legal mail. The United States District Court for the Western District of New York, Arcara, J., sua sponte dismissed the case with prejudice on grounds that prisoner failed to state a claim upon which relief could be granted. Prisoner appealed.

**Holdings:** The Court of Appeals held that:

[1] district court erred by sua sponte dismissing prisoner's claim alleging tampering with all legal mail without affording prisoner opportunity to amend, and

[2] district court erred by sua sponte dismissing prisoner's claim alleging deprivation of phone calls without affording prisoner opportunity to amend.

Vacated and remanded.

**Procedural Posture(s):** Other.

West Headnotes (2)

[1] **Costs, Fees, and Sanctions** ⟜ Claims by prisoners

District court erred by sua sponte dismissing, for failure to state a claim, state prisoner's pro se claim against prison officials alleging that a correctional officer tampered with all legal mail, in violation of his First, Eighth, and Fourteenth Amendment rights, without affording prisoner opportunity to amend; although prisoner's allegations that officials interfered with "all legal mail" was too conclusory to be plausible, prisoner's pro se complaint was entitled to amend as a liberal reading of the complaint gave indication that a valid claim might be stated. U.S. Const. Amends. 1, 8, 14; 28 U.S.C.A. § 1915(e)(2)(B).

16 Cases that cite this headnote

[2] **Costs, Fees, and Sanctions** ⟜ Claims by prisoners

District court erred by sua sponte dismissing, for failure to state a claim, state prisoner's pro se claim against prison officials, alleging that they deprived him of his phone, without affording prisoner opportunity to amend; while court had not previously addressed whether prisoners enjoyed a First Amendment right to make and receive phone calls, it was conceivable that such claim could be made since other courts in other jurisdictions had held that prisoners do have such rights in at least some circumstances, and so prisoner should have been offered the opportunity to amend so as to reasonably set forth his claim. U.S. Const. Amend. 1; 28 U.S.C.A. § 1915(e)(2)(B).

2 Cases that cite this headnote
More cases on this issue

***18** Appeal from a judgment of the United States District Court for the Western District of New York (Arcara, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court entered on June 16, 2016 is **VACATED to the extent set forth below**, and the case is **REMANDED** for further proceedings consistent with this order.

**Attorneys and Law Firms**

For Plaintiff-Appellant: Benjamin A. Fleming (Ira M. Feinberg, Alan M. Mendelsohn, on the brief), Hogan Lovells, New York, NY

Present: Debra Ann Livingston, Gerard E. Lynch, Denny Chin, Circuit Judges,

**SUMMARY ORDER**

Anthony Romano ("Romano") is a prisoner who was incarcerated at the Wende Correctional Facility, a maximum-security prison located in Alden, New York. On February 1, 2016, Romano filed a handwritten § 1983 action against nine Wende officials and two law firms alleging violations of his constitutional rights.

The complaint alleges that the prison officials deprived Romano of his access to the phone and his legal mail and that the law firms improperly settled a civil suit on his behalf and dropped him from another. More specifically regarding the allegations against the prison officials, the complaint alleges that Evertt, a correctional officer, "tampered with all legal mail." Pl.-Appellant App. at 12. Additionally, eight Wende officials are alleged to have deprived him of his phone privileges (or conspired to do so) from late November 2013 through 2014, cutting off Romano's contact with his attorneys (although it is not clear from the complaint which attorneys he is referring to). The complaint specifies that Romano is raising Free Speech, Due Process, Access to the Courts, and Right to Counsel claims, and that the officials' and law firms' conduct violated his First, Eighth, and Fourteenth Amendment rights. Romano sought permission to proceed *in forma pauperis* before the district court and moved for service of process on the defendants.

On June 16, 2016, the District Court for the Western District of New York (Arcara, *J.*) granted Romano's motion to proceed *in forma pauperis* and *sua sponte* dismissed the case with prejudice pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b) on the grounds that Romano failed to state a claim upon which relief can be granted. The court dismissed the § 1983 claims against the two law firms because neither were state actors and the claims against the prison officials on the grounds that granting leave to amend would be futile.

Romano filed a timely notice of appeal and moved to proceed *in forma pauperis* and for appointment of counsel. On December 8, 2016, we granted both motions and affirmed the judgment of the district court with respect to Romano's claims against his private attorneys. As to the remaining claims addressed herein, we assume the parties' familiarity with the underlying facts, procedural history, and issues ***19** before this Court, and discuss only those facts relevant to our decision.

***

We review *de novo* both "a district court's *sua sponte* dismissal of an *in forma pauperis* complaint pursuant to 28 U.S.C. § 1915(e)(2)(B)," *Fowlkes v. Ironworkers Local 40*, 790 F.3d 378, 384 n.8 (2d Cir. 2015), and a district court's denial of leave to amend on futility grounds, *Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014). We conclude that the district court erred in denying Romano leave to amend as to his remaining claims. We therefore vacate the judgment below as to these claims and remand to the district court for further proceedings consistent with this opinion.

A complaint must state a plausible claim for relief to survive dismissal. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). "In addressing the sufficiency of a complaint we accept as true all factual allegations and draw from them all reasonable inferences; but we are not required to credit conclusory allegations or legal conclusions couched as factual allegations." *Nielsen*, 746 F.3d at 62 (quoting *Rothstein v. UBS AG*, 708 F.3d 82, 94 (2d Cir. 2013)). Even if a complaint fails to state a claim, "leave to amend should be freely given, and a *pro se* litigant in particular should be afforded every reasonable opportunity to demonstrate that he has a valid claim." *Nielsen*, 746 F.3d at

62 (quoting *Matima v. Celli*, 228 F.3d 68, 81 (2d Cir. 2000) (internal quotation marks and citation omitted)).

**[1]** We have held that "a prisoner's right to the free flow of incoming and outgoing mail is protected by the First Amendment." *Davis v. Goord*, 320 F.3d 346, 351 (2d Cir. 2003). A prison may not "regularly and unjustifiably" interfere with a prisoner's mail. *Ahlers v. Rabinowitz*, 684 F.3d 53, 64 (2d Cir. 2012) (quoting *Davis*, 320 F.3d at 351). The complaint makes only one reference to mail tampering: that Evertt "tampered with all legal mail." Pl.-Appellant App. at 12. Romano argues on appeal that the word "all" suggests the prison systematically interfered with his legal mail. But without more specifics, an allegation that prison officials interfered with "all legal mail" is too conclusory to be plausible. The district court erred, however, in dismissing this claim with prejudice. As we have said, "[a] *pro se* complaint should not be dismissed without the Court granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Nielsen*, 746 F.3d at 62 (quoting *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010) (internal brackets and quotation marks omitted)).

**[2]** The district court erred in dismissing Romano's phone-related allegations with prejudice for the same reason. Although this Court has not addressed whether prisoners enjoy a First Amendment right to make and receive phone calls, other Circuits have held they do in at least some circumstances. *See Johnson v. State of Cal.*, 207 F.3d 650, 656 (9th Cir. 2000); *Tucker v. Randall*, 948 F.2d 388, 390–91 (7th Cir. 1991); *see also Birth v. Pepe*, No. 98 CV 1291 (RR), 1999 WL 684162, at *2 (E.D.N.Y. July 21, 1999) (Raggi, J.). Romano lists eight officials who either deprived him of his phone privileges or conspired to do so from November 2013 through 2014. While Romano's allegations are sparse and we take no position here on the viability of a claim grounded in these allegations, we conclude that Romano should have been offered the opportunity to amend so as reasonably to set forth this claim.

Accordingly, we **VACATE** the judgment below to the extent that it dismissed with prejudice Romano's claims against the prison officials. We **REMAND** to the district ***20** court so that Romano may be provided the opportunity to amend the complaint as to the aforementioned claims and any related claims against the officials that the district court identifies as suitable for amendment. In light of Romano's asserted history of mental illness and the complexity of the telephone access issue, which is a matter of first impression in this Circuit, we recommend that the district court consider appointing counsel for Romano to help him prosecute this action. *See, e.g.*, *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 476 (2d Cir. 2006); *see also Hodge v. Police Officers*, 802 F.2d 58, 60 (2d Cir. 1986).

**All Citations**

711 Fed.Appx. 17

End of Document

© 2026 Thomson Reuters. No claim to original U.S. Government Works.

335 Fed.Appx. 102
This case was not selected for publication in West's Federal Reporter.
United States Court of Appeals, Second Circuit.

Sandra SHEEHY, et al., Plaintiffs–Appellants,
v.
Thomas P. BROWN, et al., Defendants–Appellees.

No. 08–0102–cv.
|
June 23, 2009.

**Synopsis**
**Background:** Plaintiffs appealed, pro se, a judgment of the United States District Court for the Western District of New York, Telesca, J., sua sponte dismissing their complaint.

**Holdings:** The Court of Appeals held that:

[1] plaintiffs failed to establish § 1983 claims arising out of their allegedly false prosecutions, and

[2] plaintiffs failed to state a claim for conspiracy to interfere with civil rights.

Affirmed.

West Headnotes (2)

**[1] Civil Rights** ⇐ Criminal prosecutions

Plaintiffs failed to allege that their convictions or sentences were invalidated or otherwise expunged, as required to establish § 1983 claims arising out of their allegedly false prosecutions. 42 U.S.C.A. § 1983.

62 Cases that cite this headnote

**[2] Conspiracy** ⇐ Civil rights conspiracies

Plaintiffs failed to allege the formation of a conspiracy, and overt acts in furtherance of such conspiracy, as required to state a claim for conspiracy to interfere with civil rights. 42 U.S.C.A. § 1985.

431 Cases that cite this headnote

***103 UPON DUE CONSIDERATION,** it is hereby **ORDERED, ADJUDGED AND DECREED** that the judgment of the district court is **AFFIRMED.**

**Attorneys and Law Firms**

Sandra Sheehy, pro se.

Robert Sheehy, pro se.

Patrick Sheehy, pro se.

Bobbi Sheehy, pro se.

Billie Sheehy, pro se.

Casey Sheehy, pro se.

Sherry Sheehy, pro se.

PRESENT: Hon. PIERRE N. LEVAL, Hon. ROSEMARY S. POOLER and Hon. B.D. PARKER, Circuit Judges.

***SUMMARY ORDER***

****1** Plaintiffs–Appellants Sandra, Robert, Patrick, Bobbi, Billie, Casey, and Sherri Sheehy, *pro se*, appeal from the judgment of the United States District Court for the Western District of New York (Telesca, J.), *sua sponte* dismissing the complaint, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii). We assume the parties' familiarity with the facts, procedural history and issues on appeal.

Having reviewed *de novo* the district court's *sua sponte* dismissal under § 1915(e), *see Giano v. Goord,* 250 F.3d 146, 149–50 (2d Cir.2001), we conclude that the district court did not err in dismissing Appellants' complaint.

**[1]** First, any 42 U.S.C. § 1981 or § 1983 claim against Appellees Lucy or Edward Sherwood, Thomas Fuoco, Mark Wattenberg, or Steve Presutti was properly dismissed, as private actors and institutions generally are not proper § 1983 defendants. *See American Mfrs. Mut. Ins. Co. v.*

*Sullivan,* 526 U.S. 40, 49–50, 119 S.Ct. 977, 143 L.Ed.2d 130 (1999) (§ 1983 actions do not reach purely private conduct). Additionally, for an individual to recover damages for an allegedly unconstitutional conviction or imprisonment, he or she "must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal ... or called into question by a federal court's issuance of a writ of habeas corpus...." *Heck v. Humphrey,* 512 U.S. 477, 486–87, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994). Thus, any § 1983 claims arising out of the allegedly false prosecutions of Sandra, Patrick, or Robert Sheehy were appropriately dismissed, as Appellants did not allege that their convictions or sentences were invalidated or otherwise expunged. *Id.*

***104** As for the American Society for the Prevention of Cruelty to Animals, the Allegany County Society for the Prevention of Cruelty to Animals, and Appellee Presutti, claims against these defendants were properly dismissed, as Appellants did not allege any wrongdoing on their part or specify how they were involved in the constitutional violations alleged. *See* 28 U.S.C. § 1915(e)(2). Next, to the extent that Appellants challenge the conduct of county district attorneys or state court judges, such actors are entitled to immunity. *Nixon v. Fitzgerald,* 457 U.S. 731, 766, 102 S.Ct. 2690, 73 L.Ed.2d 349 (1982); *Imbler v. Pachtman,* 424 U.S. 409, 430–31, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976); *Buckley v. Fitzsimmons,* 509 U.S. 259, 273, 113 S.Ct. 2606, 125 L.Ed.2d 209 (1993).

Appellants also assert § 1983 claims against: (1) county sanitation workers for entering the Sheehys' property, in violation of their property and privacy rights; (2) state troopers for use of excessive force and retaliation; and (3) Allegany County Department of Social Services employees for entering the Sheehys' property and removing the Sheehy children from their homes, in violation of their First, Fourth, and Ninth Amendment rights. Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal,* — U.S. ——, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009). Thus, a pleading that only "tenders naked assertions devoid of further factual enhancement" will not suffice. *Id.* (internal citations and alterations omitted). We conclude that because the Appellants' § 1983 allegations are so vague as to fail to give the defendants adequate notice of the claims against them, the district court did not err in dismissing them.

****2 [2]** Appellants also assert claims under § 1985, for which a plaintiff must allege: (1) a conspiracy, (2) which has an intent or purpose to deprive a person of equal protection of the law; (3) an act in furtherance of the conspiracy; (4) which results in an injury to a person, or a person's property, or the deprivation of a federal constitutional right. *See Mian v. Donaldson, Lufkin & Jenrette Securities Corp.,* 7 F.3d 1085, 1087 (2d Cir.1993) (per curiam). Here, the Appellants' claims of conspiracy failed to specifically allege (1) the formation of a conspiracy; or (2) overt acts in furtherance of such conspiracy. Thus, the district court correctly dismissed any claims brought pursuant to §§ 1985 and 1986.

To the extent that Appellants assert claims based on the violation of federal criminal statutes, such as 18 U.S.C. §§ 241–242, these claims are not cognizable, as federal criminal statutes do not provide private causes of action. *See Robinson v. Overseas Military Sales Corp.,* 21 F.3d 502, 511 (2d Cir.1994). In addition, any claim brought under 42 U.S.C. § 2000d, which prohibits the exclusion of individuals from a federally funded program or activity on the basis of race, color, or national origin, properly was dismissed, as Appellants did not allege that they were excluded from a federally funded program or activity and, thus, no claim exists under that statute. Similarly, although former 42 U.S.C. § 13981 authorized a cause of action arising out of a crime of violence motivated by gender, the Supreme Court has held that statute unconstitutional. *See United States v. Morrison,* 529 U.S. 598, 601, 120 S.Ct. 1740, 146 L.Ed.2d 658 (2000).

We have reviewed Appellants' remaining arguments and find them to be without merit. We also note here that we see no ***105** indication in the record that Appellants perfected service on any of the defendants in this case.

Therefore, for the reasons stated above, the judgment of the district court is AFFIRMED.

**All Citations**

335 Fed.Appx. 102, 2009 WL 1762856

End of Document

© 2026 Thomson Reuters. No claim to original U.S. Government Works.

2024 WL 4818523
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Michael Brandon STORY, Plaintiff,
v.
FORT GORDON, UNITED STATES MILITARY, Defendant.

1:24-CV-00626 (MAD/CFH)
|
Signed November 18, 2024

**Attorneys and Law Firms**

MICHAEL BRANDON STORY, 56 Shelterwood Rd, Apt A, East Greenbush, New York 12061, Plaintiff Pro Se.

**ORDER**

Mae A. D'Agostino, United States District Judge:

***1** On May 6, 2024, *pro se* Plaintiff Michael Brandon Story ("Plaintiff") filed a complaint, purporting to bring claims against Defendant Fort Gordon, United States Miliary ("Defendant"), *see* Dkt. No. 1, and a motion for leave to proceed *in forma pauperis* ("IFP"), Dkt. No. 2.[1] Plaintiff indicates that the basis for this Court's jurisdiction is a federal question and, in reference to "the specific federal statutes, federal treaties, and/or provisions of the United States Constitution that are at issue in this case," Plaintiff states, "[e]lectronic [h]arrasment [sic] from miltary [sic] towers/SINCGARS." Dkt. No. 1 at 3. In the statement of the claim, Plaintiff alleges that he is "hearing [e]lectronic harrassment [sic] from miltary [sic] towers having to do with SINCGARS." *Id.* at 4. Plaintiff also states that the amount in controversy is $500,000,000. *Id.*

On September 26, 2024, Magistrate Judge Hummel issued a Report-Recommendation & Order granting Plaintiff leave to proceed IFP and recommending that Plaintiff's complaint be dismissed without prejudice and without leave to amend, pursuant to 28 U.S.C. § 1915(e)(2)(B). *See* Dkt. No. 6.

Plaintiff has not filed any objections to the Report-Recommendation & Order. When a party declines to file an objection, the Court reviews a recommendation for clear error. *See O'Diah v. Mawhir*, No. 9:08-CV-322, 2011 WL 933846, *1 (N.D.N.Y. Mar. 16, 2011) (citations and footnote omitted); *see also McAllan v. Von Essen*, 517 F. Supp. 2d 672, 679 (S.D.N.Y. 2007). After the appropriate review, "the court may accept, reject or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). Because Plaintiff has not filed an objection, the Court will review the recommendation for clear error.

"[I]n a *pro se* case, the court must view the submissions by a more lenient standard than that accorded to 'formal pleadings drafted by lawyers.' " *Govan v. Campbell*, 289 F. Supp. 2d 289, 295 (N.D.N.Y. 2007) (quoting *Haines v. Kerner*, 404 U.S. 519, 520 (1972)) (other citations omitted). The Second Circuit has stated that the court is obligated to "make reasonable allowances to protect *pro se* litigants" from inadvertently forfeiting legal rights merely "because of their lack of legal training." *Id.* (quoting *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983)).

The Court finds no clear error in Magistrate Judge Hummel's Report-Recommendation & Order. As Magistrate Judge Hummel notes, the complaint filed in this action is nearly identical to the complaint Plaintiff filed, on the same day, against the Federal Communications Commission ("FCC"). *See* Dkt. No. 6 at 6 (citing *Story v. FCC*, 1:24-CV-00625). This Court adopted, in full, Judge Hummel's recommendation that Plaintiff's claims in *Story v. FCC* be dismissed without prejudice and without leave to amend. *See Story v. FCC*, 1:24-CV-00625, at Dkt. No. 7. Here, the Court again adopts Magistrate Judge Hummel's Report-Recommendation & Order in full.

***2** Magistrate Judge Hummel recommends that the complaint be dismissed because it fails to meet the requirements of Rules 8 and 10 of the Federal Rules of Civil Procedure. *See* Dkt. No. 6 at 6. The Court agrees that Plaintiff's complaint, which consists of only one or two sentences, provides no factual context or support for Plaintiff's claims. *See id.* Plaintiff has also failed to provide a " 'short and plain statement of the grounds for the [C]ourt's jurisdiction' " and the complaint does not provide sufficient notice to Defendant of the claims against it. *Id.* (quoting Fed. R. Civ. P. 8) (other citations omitted).

Moreover, Magistrate Judge Hummel correctly determined that, in addition to failing to meet the pleading requirements contemplated by Rules 8 and 10, the complaint is subject to dismissal because it is frivolous and fails to state a claim. *See*

*id.* at 6-7. This Court is " 'without power to entertain claims that are so attenuated and unsubstantial as to be absolutely devoid of merit[,]' " *Hines v. United States*, No. 6:19-CV-06837, 2020 WL 570605, *2 (W.D.N.Y. Feb. 5, 2020) (quoting *Hagans v. Lavine*, 415 U.S. 528, 536-37 (1974)), and "[n]o federal question jurisdiction exists when the complaint is ... essentially fictitious," *id.* (quoting *Best v. Kelly*, 39 F.3d 328, 330 (D.C. Cir. 1994)) (internal quotation marks omitted). "Claims that are 'essentially fictitious' include those that allege 'bizarre conspiracy theories, any fantastic government manipulations of [the plaintiff's] will or mind [or] any sort of supernatural intervention.' " *Id.* (quoting *Best*, 39 F.3d at 330).

Plaintiff has not articulated how the alleged conduct was committed, how he was harmed, how his allegations of "harassment" by "SINCGARS" and/or "military towers" is connected to any claim for legal relief, or how Defendant was involved in the alleged violations. *See id.* at 8-9 ("Even employing its best efforts—in due deference to plaintiff *pro se* status—the Court is unable to discern coherent factual allegations or legal claims"); *see also*, *Hines*, 2020 WL 570605, at *2 ("The Court is mindful that complaints filed by *pro se* litigants are held to less stringent standards than those applied to formal pleadings drafted by lawyers .... Nonetheless, the Court has the discretion to decide whether a complaint is frivolous ..., and such finding is appropriate where the facts alleged are irrational or wholly incredible") (internal citations omitted). For these reasons, the Court adopts the recommendation that Plaintiff's claims be dismissed because they are frivolous and because Plaintiff has failed to state a claim upon which relief can be granted.

Finally, the Court finds no clear error in Magistrate Judge Hummel's conclusion that, although leave to amend would normally be appropriate, leave to amend should not be granted here because the complaint is "so attenuated and unsubstantial as to be absolutely devoid of merit[,]" and, as such, "no better pleading would cure these defects." *Id.* at 9-10 (quotations and internal quotation marks omitted).

After carefully reviewing the Report-Recommendation & Order, the entire record in this matter, and the applicable law, the Court hereby

**ORDERS** that Magistrate Judge Hummel's Report-Recommendation & Order (Dkt. No. 6) is **ADOPTED** in its entirety for the reasons set forth herein; and the Court further

**ORDERS** that Plaintiff's complaint (Dkt. No. 1) is **DISMISSED WITHOUT PREJUDICE and WITHOUT LEAVE TO AMEND**; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Order on the parties in accordance with the Local Rules; and the Court further

***3 ORDERS** that the Clerk of Court shall enter judgment in Defendant's favor close this case.

**IT IS SO ORDERED.**

**All Citations**

Not Reported in Fed. Supp., 2024 WL 4818523

**Footnotes**

1 The following cases, also filed by Plaintiff, have been deemed related by the Court: 1:24-CV-00623, 1:24-CV-00625, 1:24-CV-00627, 1:24-CV-00631; 1:24-CV-00632; 1:24-CV-01346. *See* Dkt. No. 5; *Story v. Central Intelligence Agency*, 1:24-CV-00631, at Dkt. No. 5; *Story v. United States*, 1:24-CV-01346, at Dkt. No. 5.

End of Document © 2026 Thomson Reuters. No claim to original U.S. Government Works.

WESTLAW © 2026 Thomson Reuters. No claim to original U.S. Government Works. 2

## All Citations

Slip Copy, 2026 WL 1660470

## Footnotes

End of Document © 2026 Thomson Reuters. No claim to original U.S. Government Works.

2026 WL 2227973
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Andre Rene LEVESQUE, Plaintiff,
v.
The PEOPLE OF THE UNITED STATES, Defendants.

8:25-CV-1259 (MAD/PJE)
|
Signed 08/03/2026

**Attorneys and Law Firms**

Andre Rene Levesque, Plattsburgh, NY, Pro Se.

**ORDER**

Mae A. D'Agostino, United States District Judge

***1** Plaintiff Andre Rene Levesque commenced this action on September 8, 2025. *See* Dkt. No. 1. In the caption of Plaintiff's two-page handwritten complaint, he identifies Defendants as "[t]he People of the United States and all their foreign and domestic trading partners." *Id.* at 1. Plaintiff also filed a single-page motion which ostensibly seeks an order requiring the U.S. Marshals hand deliver to Defendants "each document the federal court received from [Plaintiff] in all 50 states and state filings as evidence" as well as a computer for Defendants to "actually review the evidence." *See* Dkt. No. 3.

On June 8, 2026, Magistrate Judge Paul J. Evangelista issued a Report-Recommendation and Order, granting Plaintiff's motion to proceed *in forma pauperis* and recommending that (1) Plaintiff's complaint be dismissed without prejudice and without leave to amend; and (2) Plaintiff's motion seeking to compel the U.S. Marshals to act be denied as moot. *See* Dkt. No. 5.

Plaintiff has not filed objections to the Report-Recommendation and Order. When a party declines to file objections, the Court reviews a recommendation for clear error. *See O'Diah v. Mawhir*, No. 9:08-CV-322, 2011 WL 933846, *1 (N.D.N.Y. Mar. 16, 2011) (citations and footnote omitted); *see also McAllan v. Von Essen*, 517 F. Supp. 2d 672, 679 (S.D.N.Y. 2007). After the appropriate review, "the court may accept, reject or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). Because Plaintiff has not filed objections, the Court will review the Report-Recommendation and Order for clear error. [1]

1 On July 27, 2026, the Court received a letter from Plaintiff updating his address and asking that he be provided a "copy" of another case he brought in the Northern District of New York so that he can "refile the case." *See* Dkt. No. 7 at 1. Plaintiff also requested the "R&R." *Id.* On June 16, 2026, the docket indicates that the Report-Recommendation and Order sent to Plaintiff was returned as undeliverable at the address Plaintiff provided. Dkt. No. 6. The Local Rules require Plaintiff to update the address listed on the docket within 14 days of a change of address or risk dismissal of the action. *See* N.D.N.Y. L.R. 41.2(b). Plaintiff did not update his address in the nearly two months between the issuance of the Report-Recommendation and Order on June 8, 2026, and his recent letter on July 27, 2026. As such, Plaintiff has forfeited his opportunity to object, and the failure to update his address constitutes an independent ground for dismissal of the action.

"[I]n a *pro se* case, the court must view the submissions by a more lenient standard than that accorded to 'formal pleadings drafted by lawyers.' " *Govan v. Campbell*, 289 F. Supp. 2d 289, 295 (N.D.N.Y. 2003) (quoting *Haines v. Kerner*, 404 U.S. 519, 520 (1972)) (other citations omitted). The Second Circuit has stated that the court is obligated to "make reasonable allowances to protect *pro se* litigants" from inadvertently forfeiting legal rights merely "because of their lack of legal training." *Id.* (quoting *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983)).

***2** Here, the Court finds no clear error in Magistrate Judge Evangelista's Report-Recommendation and Order. Magistrate Judge Evangelista employed the proper standards, accurately recited the facts, and reasonably applied the law to those facts. *See* Dkt. No. 5 at 2-10.

First, Magistrate Judge Evangelista recommends that the complaint be dismissed for failure to meet the pleading requirements contemplated by Rules 8 and 10 of the Federal Rules of Civil Procedure. *See id.* at 6-7. The Court agrees that Plaintiff's complaint, which consists of two pages of broad assertions with little-to-no clarity or explanation, provides no factual context or legal support for any purported claim. *See id.* at 7. Plaintiff has also failed to provide a " 'short and plain statement of the grounds for the [C]ourt's jurisdiction' " and the complaint does not provide sufficient notice to Defendants of any cognizable the claims. *See id.* (quoting Fed. R. Civ. P. 8). For these reasons, the Court discerns no clear error in Magistrate Judge Evangelista's recommendation that the complaint be dismissed for failure to comply with Rules 8 and 10. *See Flores v. Graphtex*, 189 F.R.D. 54, 55 (N.D.N.Y. 1999) ("A complaint that fails to comply with [Rules 8 and 10] 'presents far too a heavy burden in terms of defendants' duty to shape a comprehensive defense and provides no meaningful basis for the Court to assess the sufficiency of' a plaintiff's claims, and may properly be dismissed by the Court") (quoting *Gonzales v. Wing*, 167 F.R.D. 352, 355 (N.D.N.Y.1996)).

Moreover, Magistrate Judge Evangelista correctly determined that, in addition to failing to meet the pleading requirements of Rules 8 and 10, the complaint is subject to dismissal because it is frivolous and fails to state a claim. *See id.* at 7-10. This Court is " 'without power to entertain claims that are so attenuated and unsubstantial as to be absolutely devoid of merit[,]' " *Hines v. United States*, No. 6:19-CV-06837, 2020 WL 570605, *2 (W.D.N.Y. Feb. 5, 2020) (quoting *Hagans v. Lavine*, 415 U.S. 528, 536-37 (1974)), and "[n]o federal question jurisdiction exists when the complaint is ... essentially fictitious," *id.* (quoting *Best v. Kelly*, 39 F.3d 328, 330 (D.C. Cir. 1994)) (internal quotation marks omitted). "Claims that are 'essentially fictitious' include those that allege 'bizarre conspiracy theories, any fantastic government manipulations of [the plaintiff's] will or mind[, or] any sort of supernatural intervention.' " *Id.* (quoting *Best*, 39 F.3d at 330).

Plaintiff alleges that the People of the United States "systematically denied [him] due process and allowed people to abduct [him] while trying to ste[al] from [him,]" "got [him] to chant [']Death to America murder mutilate maul maime [sic] destroy them all['] 200 million x[,]" and "intentionally prevented [him] from accessing the computer while [he] was beaten and tortured repeatedly." Dkt. No. 1 at 1-2. As Magistrate Judge Evangelista observed, in addition to naming the People of the United States and all foreign and domestic trading partners as Defendants, Plaintiff also appears to express his intent to proceed against the United States Supreme Court, the United States Congress, and all forty-seven Presidents of the United States. *See* Dkt. No. 5 at 6. As for monetary damages, Plaintiff demands "4 trillion 671 billion 285 million dollars U.S. currency." Dkt. No. 1 at 2.

***3** Even in light of the deference afforded to *pro se* parties, the Court cannot discern from Plaintiff's complaint how the alleged conduct was committed, who committed it, nor how these allegations are connected to any legitimate claim for relief. *See Gallop v. Cheney*, 642 F.3d 364, 368 (2d Cir. 2011) ("A court may dismiss a claim as 'factually frivolous' if the sufficiently well-pleaded facts are 'clearly baseless'—that is, if they are 'fanciful,' 'fantastic[,]' or 'delusional' ") (quoting *Denton v. Hernandez*, 504 U.S. 25, 32-33 (1992)); *Hines*, 2020 WL 570605, at *2 ("The Court is mindful that complaints filed by *pro se* litigants are held to less stringent standards than those applied to formal pleadings drafted by lawyers .... Nonetheless, the Court has the discretion to decide whether a complaint is frivolous ..., and such finding is appropriate where the facts alleged are irrational or wholly incredible") (internal citations omitted). Accordingly, the Court finds no clear error in the recommendation that Plaintiff's claims be dismissed because they are frivolous.

Finally, the Court finds no clear error in Magistrate Judge Evangelista's recommendation that leave to amend should not be granted because no better pleading could cure the defects in the complaint. *See* Dkt. No. 5 at 10. "A district court generally should not dismiss a *pro se* complaint without granting at least one opportunity to amend, but amendment should be denied where the complaint gives no 'indication that a valid claim might be stated.' " *McKie v. Kornegay*, No. 21-1943, 2022 WL 4241355, *3 (2d Cir. Sept. 15, 2022) (summary order) (quoting *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000)). Indeed, because the allegations in the complaint are factually frivolous and better pleading cannot cure these defects, granting leave to replead would be futile. *See Igarashi v. Skulls & Bones*, 438 Fed. Appx. 58 (2d Cir. 2011) (summary order) ("[L]eave to amend is not necessary when it would be futile, as when the complaint, even read liberally, does not 'suggest[ ] that the plaintiff has a claim that [he] has inadequately or inartfully pleaded and that [he] should therefore be given a chance to reframe' ") (citation omitted).

As the complaint is subject to dismissal, Plaintiff's motion seeking to compel the U.S. marshals to deliver certain evidence to Defendants is denied as moot. *See* Dkt. No. 3.

After carefully reviewing the Report-Recommendation and Order, the entire record in this matter, and the applicable law, the Court hereby

**ORDERS** that Magistrate Judge Evangelista's Report-Recommendation and Order (Dkt. No. 5) is **ADOPTED** in its entirety; and the Court further

**ORDERS** that Plaintiff's complaint (Dkt. No. 1) is **DISMISSED WITHOUT PREJUDICE and WITHOUT LEAVE TO AMEND**; and the Court further

**ORDERS** that Plaintiff's motion seeking to compel the U.S. Marshals to act (Dkt. No. 3), is **DENIED** as moot; and the Court further

**ORDERS** that the Clerk of the Court is directed to close this case; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

**All Citations**

Slip Copy, 2026 WL 2227973

End of Document

© 2026 Thomson Reuters. No claim to original U.S. Government Works.

2018 WL 10246976
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Derrick Troy HILL, Plaintiff,
v.
The People of the State of NEW YORK, et al., Defendants.

9:18-CV-0005 (MAD/CFH)
|
Signed 03/01/2018

**Attorneys and Law Firms**

DERRICK TROY HILL, 18-A-0259, Plaintiff, pro se, Ulster Correctional Facility, P.O. Box 800, Berme Road, Napanoch, NY 12458.

**DECISION and ORDER**

MAE A. D'AGOSTINO, United States District Judge

**I. INTRODUCTION**

***1** The Clerk has sent to the Court for review a civil rights complaint brought pro se by plaintiff Derrick Troy Hill. Dkt. No. 2 ("Compl."). This action, commenced by plaintiff in the United States District Court for the Southern District of New York, was transferred to this District by Order of Southern District Chief Judge Colleen McMahon. Dkt. No. 3. Plaintiff, who is presently confined at Ulster Correctional Facility and has not paid the filing fee, seeks leave to proceed with this action in forma pauperis. Dkt. No. 8 ("IFP Application").[1]

1 On January 3, 2018, the Court administratively closed this case due to plaintiff's failure to submit a completed and certified application for in forma pauperis status and the required inmate authorization form. Dkt. No. 5. The case was reopened on January 11, 2018, upon receipt from plaintiff of these filings. Dkt. No. 9.

**II. IFP APPLICATION**

"28 U.S.C. § 1915 permits an indigent litigant to commence an action in a federal court without prepayment of the filing fee that would ordinarily be charged." *Cash v. Bernstein*, No. 09-CV-1922, 2010 WL 5185047, at *1 (S.D.N.Y. Oct. 26, 2010). "Although an indigent, incarcerated individual need not prepay the filing fee at the time of filing, he must subsequently pay the fee, to the extent he is able to do so, through periodic withdrawals from his inmate accounts." *Id.* (citing 28 U.S.C. § 1915(b) and *Harris v. City of New York*, 607 F.3d 18, 21 (2d Cir. 2010)).

Upon review of plaintiff's IFP Application, the Court finds that he has demonstrated economic need. Plaintiff has also filed the inmate authorization required in the Northern District of New York. Dkt. No. 7. As a result, the Court grants plaintiff's IFP Application.[2]

2 Plaintiff's earlier filed application for in forma pauperis status, Dkt. No. 6, is denied as unnecessary.

**III. SUFFICIENCY OF THE COMPLAINT**

**A. Governing Standard**

Having found that plaintiff meets the financial criteria for commencing this action in forma pauperis, and because he seeks relief from governmental entities and officials and employees thereof, the Court must now consider the sufficiency of the allegations set forth in the complaint in light of 28 U.S.C. § 1915(e) and 28 U.S.C. § 1915A. Section 1915(e)(2) directs that, when a plaintiff seeks to proceed in forma pauperis, "the court shall dismiss the case at any time if the court determines that – ... (B) the action ... (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). Similarly, Section 1915A directs that a court must review any "complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity" and must "identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint (1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A; *see also Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007) (stating that both Sections 1915 and 1915A are available to evaluate prisoner pro se complaints). Thus, although the court has the duty to show liberality toward pro se litigants, *see Nance v. Kelly*, 912 F.2d 605, 606 (2d Cir. 1990) (per curiam), and should exercise "extreme caution ... in ordering *sua sponte* dismissal of a *pro se* complaint *before* the adverse party has been served and both parties (but particularly the plaintiff) have had an opportunity to respond," *Anderson v. Coughlin*, 700 F.2d 37, 41 (2d Cir. 1983) (internal citations omitted), the court also has a responsibility to determine whether plaintiff may properly proceed with this action.

***2** When reviewing a complaint, the court may also look to the Federal Rules of Civil Procedure. Rule 8 of the Federal Rules of Civil Procedure provides that a pleading that sets forth a claim for relief shall contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The purpose of Rule 8 " 'is to give fair notice of the claim being asserted so as to permit the adverse party the opportunity to file a responsive answer, ... prepare an adequate defense' " and determine whether the doctrine of res judicata is applicable. *Hudson v. Artuz*, No. 95 CIV. 4768, 1998 WL 832708, at *1 (S.D.N.Y. Nov. 30, 1998) (quoting *Powell v. Marine Midland Bank*, 162 F.R.D. 15, 16 (N.D.N.Y. 1995)).

A court should not dismiss a complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although the court should construe the factual allegations in the light most favorable to the plaintiff, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555). Thus, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.' " *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

**B. Summary of the Complaint**

The following facts are set forth as alleged in the complaint.[3] On approximately September 13, 2017, plaintiff was falsely arrested by officers from the Schenectady Police Department, who were acting on an "invalid warrant." Compl. at 2, 4. Plaintiff was identified by a witness through a police line-up or photographic array which was "impermissibly suggestive." *Id.* at 2. During the course of the criminal proceedings, the "prosecution" improperly withheld evidence "which could have helped [plaintiff's] case." *Id.* Several adverse evidentiary rulings were made by the presiding judge, who was "biased" against plaintiff because plaintiff "did not bribe him." *Id.*

3 The submission docketed as plaintiff's complaint consists of a two page pleading (Dkt. No. 2 at 1-2) and a three page "second amended complaint" (Dkt. No. 2 at 3-5), both of which have been reviewed.

Liberally construed, plaintiff asserts false arrest and malicious prosecution claims. In addition to the Schenectady Police Department, plaintiff names as defendants "The People of the State of New York," Schenectady County Court Acting Justice

Sypniewski, Schenectady County District Attorney ("DA") Carney, and Schenectady County Assistant District Attorney ("ADA") Hughes. Compl. at 1. Plaintiff seeks an award of money damages. *Id.* at 5. For a complete statement of plaintiff's claims, reference is made to the complaint.

**C. Analysis**

Plaintiff brings this action pursuant to Section 1983 of Title 42 of the United States Code ("Section 1983"), which establishes a cause of action for " 'the deprivation of any rights, privileges, or immunities secured by the Constitution and laws' of the United States." *German v. Fed. Home Loan Mortg. Corp.*, 885 F. Supp. 537, 573 (S.D.N.Y. 1995) (citing *Wilder v. Virginia Hosp. Ass'n*, 496 U.S. 498, 508 (1990) (quoting 42 U.S.C. § 1983)) (footnote omitted); *see also Myers v. Wollowitz*, No. 95-CV-0272, 1995 WL 236245, at *2 (N.D.N.Y. Apr. 10, 1995) (stating that "§ 1983 is the vehicle by which individuals may seek redress for alleged violations of their constitutional rights." (citation omitted)). "Section 1983 itself creates no substantive rights, [but] ... only a procedure for redress for the deprivation of rights established elsewhere." *Sykes v. James,* 13 F.3d 515, 519 (2d Cir. 1993).

**1. Claims Against "The People of the State of New York"**

***3** The Eleventh Amendment has long been construed as barring a citizen from bringing a suit against his or her own state in federal court, under the fundamental principle of "sovereign immunity." U.S. Const. amend. XI ("The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."); *Hans v. Louisiana*, 134 U.S. 1, 10-21 (1890); *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 267 (1997); *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984). Eleventh Amendment immunity is lost only if Congress unequivocally abrogates states' immunity or a state expressly consents to suit. *Gollomp v. Spitzer*, 568 F.3d 355, 365-66 (2d Cir. 2009). It is well-settled that Congress did not abrogate states' immunity through 42 U.S.C. § 1983, *see Quern v. Jordan*, 440 U.S. 332, 343-45 (1979), and that New York State has not waived its immunity from suit on the claims asserted in plaintiff's complaint. *See generally Trotman v. Palisades Interstate Park Commission*, 557 F.2d 35, 38-40 (2d Cir. 1977); *Dawkins v. State of New York*, No. 93-CV-1298 (RSP/GJD), 1996 WL 156764 at *2 (N.D.N.Y. 1996).

Based upon the foregoing, plaintiff's claims against "The People of the State of New York" are barred by the Eleventh Amendment and are dismissed with prejudice. *See* 28 U.S.C. § 1915(e)(2)(B)(iii) and 28 U.S.C. § 1915A(b)(2).

**2. Claims Against Acting Justice Sypniewski**

Judges are entitled to absolute immunity for actions relating to the exercise of their judicial functions. *Mireless v. Waco*, 502 U.S. 9, 9-10 (1991). "Judicial immunity has been created both by statute and by judicial decision 'for the benefit of the public, whose interest it is that the judges should be at liberty to exercise their functions with independence and without fear of the consequences.' " *Huminski v. Corsones*, 396 F.3d 53, 74 (2d Cir. 2005) (quoting *Pierson v. Ray*, 386 U.S. 547, 554 (1967) (citation and internal quotation marks omitted)). The law in this Circuit clearly provides that "[j]udges enjoy absolute immunity from personal liability under Section 1983 for 'acts committed within their judicial jurisdiction.' " *Young v. Selsky*, 41 F.3d 47, 51 (2d Cir. 1994) (quoting *Pierson*, 386 U.S. at 554). "The absolute immunity of a judge applies however erroneous the act may have been, and however injurious in its consequences it may have proved to the plaintiff." *Id.* at 51 (internal quotations omitted). Thus, under the common law doctrine of judicial immunity, a judge is absolutely immune from a suit for monetary damages unless (1) the actions giving rise to the suit were "not taken in the judge's judicial capacity" or (2) the suit arises from actions taken by the judge "in the complete absence of all jurisdiction." *Huminski v. Corsones*, 386 F.3d 116, 137-38 (2d Cir. 2004) (citations omitted). [4]

4 Similarly, injunctive relief is not available in an action pursuant to Section 1983 against a judicial officer for acts taken in that official's judicial capacity "unless a declaratory decree was violated or declaratory relief was unavailable." 42 U.S.C. § 1983. Plaintiff's allegations do not plausibly suggest that such relief is available here.

In short, the proper avenue for challenging a judicial determination is on direct appeal, not by seeking a declaration that the presiding judge's decision violated the litigant's constitutional rights. *Montesano v. State of New York*, No. 05 CV 9574, 2006 WL 944285, at *4 (S.D.N.Y. Apr. 12, 2006). "Neither damages, injunctive nor declaratory relief is available to be used as a vehicle for disgruntled litigants to reverse adverse judgments." *Id.*

Upon review of the complaint and with due regard for plaintiff's status as a pro se litigant, it appears that any claims plaintiff may have against Acting Justice Sypniewski arise solely out of the performance of his judicial duties in presiding over plaintiff's criminal proceedings and determining the issues presented therein. As a result, Acting Justice Sypniewski is absolutely immune from liability for money damages and plaintiff's claims against him are dismissed with prejudice. *See* 28 U.S.C. § 1915(e)(2)(B)(iii) and 28 U.S.C. § 1915A(b)(2).

### 3. Claims Against DA Carney and ADA Hughes

***4** Like judges, prosecutors also enjoy absolute immunity from suit under Section 1983 in matters associated with their prosecutorial functions, regardless of motivation. *Dory v. Ryan*, 25 F.3d 81, 83 (2d Cir. 1994) (prosecutorial immunity covers virtually all acts associated with the prosecutor's function, including conspiracies to present false evidence); *Bernard v. County of Suffolk*, 356 F.3d 495 (2d Cir. 2004) (absolute immunity shields prosecutors from suit pursuant to Section 1983 for their alleged malicious or selective prosecution, as well as for any misconduct in the presentation of evidence to the Grand Jury); *Shmueli v. City of New York*, 424 F.3d 231, 239 (2d Cir. 2005) (prosecutors are absolutely immune from claims for damages caused by allegedly malicious prosecution on charges known to be false). Absolute immunity is defeated only when the prosecutor is engaging in investigative functions. *Bernard*, 356 F.3d at 502-03. The initiation and pursuit of prosecution, regardless of any alleged illegality, is protected by absolute prosecutorial immunity. *Peay v. Ajello*, 470 F.3d 65, 67-68 (2d Cir. 2006).

Here, plaintiff names DA Carney and ADA Hughes as defendants and complains of prosecutorial misconduct during his criminal proceedings. Compl. at 1-3. While the complaint clearly associates these defendants with plaintiff's criminal prosecution, the complaint does not allege facts with respect to the specific actions taken by them. As a result, it is not clear what role each defendant played in plaintiff's prosecution and whether, for example, DA Carney is named as a defendant solely by virtue of his supervisory position.

Upon review, while it appears that plaintiff's claims against DA Carney and ADA Hughes are barred by the doctrine of prosecutorial immunity, the complete absence of supporting factual allegations makes it impossible for the Court to make this finding. However, because for the reasons discussed below, the Court finds that plaintiff's malicious prosecution claim is not cognizable in this Section 1983 action, the claims against DA Carney and ADA Hughes are hereby dismissed without prejudice for failure to state a claim upon which relief may be granted. *See* 28 U.S.C. § 1915(e)(2)(B)(ii) and 28 U.S.C. § 1915A(b)(1).

The Fourth Amendment provides the source for Section 1983 claims related to a plaintiff's arrest, detention and prosecution. *See Caidor v. M&T Bank*, No. 5:05-CV-297 (FJS/GJD), 2006 WL 839547, at *3 (N.D.N.Y. Mar. 27, 2006); *Danielak v. City of N. Y.*, No. 02-CV-2349, 2005 WL 2347095, at *11 (E.D.N.Y. Sept. 26, 2005). To make out a federal claim of malicious prosecution cognizable under Section 1983, "a plaintiff must show a violation of his rights under the Fourth Amendment and must establish the elements of a malicious prosecution claim under state law." *Willey v. Kirkpatrick*, 801 F.3d 51, 70 (2d Cir. 2015) (quoting *Manganiello v. City of New York*, 612 F.3d 149, 160-61 (2d Cir. 2010)). "To establish a malicious prosecution claim under New York law, a plaintiff must prove '(1) the initiation or continuation of a criminal proceeding against plaintiff; (2) termination of the proceeding in plaintiff's favor; (3) lack of probable cause for commencing the proceeding; and (4) actual malice as a motivation for defendant's actions.' " *Manganiello*, 612 F.3d at 161 (quoting *Murphy v. Lynn*, 118 F.3d 938, 947 (2d

Cir. 1997)). It is well-established in this Circuit that "the plaintiff can under no circumstances recover [on a claim of false arrest or malicious prosecution] if he was convicted of the offense for which he was arrested." *Cameron v. Fogarty*, 806 F.2d 380, 387 (2d Cir. 1986); *see also Southerland v. City of New York*, 681 F.3d 122, 124-25 (2d Cir. 2012) ("the law does not permit a convicted defendant to challenge the sufficiency of the evidence supporting his arrest") (citing *Cameron*).

***5** Here, because it appears that plaintiff was convicted of criminal charges against him in Schenectady County and is currently in DOCCS custody serving a sentence of up to three and one-half years, there is no basis in the record upon which the Court could conclude that he has a viable malicious prosecution claim.

### 4. Claims Against Schenectady Police Department

It is well-settled that municipal departments and offices which have no separate legal identity and cannot sue or be sued are not "persons" under Section 1983. *See Jenkins v. City of New York*, 478 F.3d 76, 93 n.19 (2d Cir. 2007) (affirming the district court's dismissal of claims against the NYPD as a non-suable entity); *Sanchez-Martin v. Allegany Cnty. Jail*, No. 11-CV-0568, 2012 WL 360014, at *2 (W.D.N.Y. Feb. 1, 2012) (county correctional facilities do not have legal identities separate and apart from the counties and are not subject to suit under Section 1983); *Ceparano v. Suffolk County*, No. 10-CV-2030, 2010 WL 5437212, at *6 (E.D.N.Y. Dec. 15, 2010) (dismissing claims against Suffolk County Police Dep't, Suffolk County District Attorney's Office, Suffolk County Sheriff's Dep't and Suffolk County Probation Dep't because these entities are not amenable to suit).

Based upon the foregoing, plaintiff's claims against "Schenectady Police Department" are dismissed for failure to state a claim upon which relief may be granted. *See* 28 U.S.C. § 1915(e)(2)(B)(ii) and 28 U.S.C. § 1915A(b)(1).

In light of plaintiff's pro se status, the Court has considered whether the complaint alleges facts sufficient to plausibly suggest that plaintiff has a viable false arrest claim against Schenectady County, the real party interest, and concludes that it does not. [5]

5 "A municipality or other local government may be liable under [Section 1983] if the governmental body itself 'subjects' a person to a deprivation of rights or 'causes' a person 'to be subjected' to such deprivation." *Connick v. Thompson*, 563 U.S. 51, 60 (2011) (citing *Monell v. Dep't of Soc. Servs. of the City of New York*, 436 U.S. 658 (1978)). However, local governments "are not vicariously liable under § 1983 for their employees' actions;" rather "local governments are responsible only for 'their *own* illegal acts.' " *Id.* (quoting *Pembaur v. Cincinnati*, 475 U.S. 469, 479 (1986)). "To plead a *Monell* claim, a plaintiff must allege the existence of a formal policy which is officially endorsed by the municipality, or a practice so persistent and widespread that it constitutes a custom or usage of which supervisory authorities must have been aware, or that a municipal custom, policy, or usage can be inferred from evidence of deliberate indifference of supervisory officials to such abuses." *Iacovangelo v. Corr. Med. Care, Inc.*, 624 F. App'x 10, 13 (2d Cir. 2015) (summary order).

"A § 1983 claim for false arrest, resting on the Fourth Amendment right of an individual to be free from unreasonable seizures, including arrest without probable cause, ... is substantially the same as a claim for false arrest under New York law." *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996). "To establish a claim under § 1983 for false arrest a plaintiff must show that: (1) the defendant intended to confine the plaintiff; (2) the plaintiff was conscious of the confinement; (3) the plaintiff did not consent to the confinement; and (4) the confinement was not otherwise privileged." *Jackson v. City of New York*, 939 F. Supp.2d 235, 248 (E.D.N.Y. 2013). Under both federal and New York law, the existence of probable cause " 'including probable cause based on an outstanding warrant' " is a complete defense to a false arrest claim. *Torres v. City of N.Y.*, No. 09 CIV. 9357, 2016 WL 3748492, at *3 (S.D.N.Y. July 11, 2016) (citing *Weyant*). In addition, plaintiff's false arrest claim (like his malicious prosecution claim) appears to be barred by his subsequent conviction. *See Cameron*, 806 F.2d at 387; *Southerland,* 681 F.3d at 124-25.

### D. Opportunity to Amend

***6** The Second Circuit has held that a district court "should not dismiss [a pro se plaintiff's complaint] without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 795 (2d Cir. 1999) (internal quotation omitted). Although the complaint does not necessarily indicate that plaintiff might be able to state a valid claim, the Court will nonetheless give him an opportunity to present a proposed amended complaint.

Any amended complaint submitted by plaintiff in response to this Decision and Order must set forth a short and plain statement of the facts he relies on in support of his claim that defendants named in that pleading engaged in acts of misconduct or wrongdoing which violated his constitutional rights. Plaintiff's amended complaint, which shall supersede and replace in its entirety the original complaint, must be a complete pleading which sets forth all of the claims that plaintiff wants this Court to consider as a basis for awarding relief herein. Claims dismissed with prejudice shall not be reasserted in any amended complaint.

Plaintiff is advised that his failure to file an amended complaint **within thirty (30) days** of the filing date of this Decision and Order will result in dismissal of this action without prejudice without further Order of the Court.

## IV. CONCLUSION

**WHEREFORE**, it is hereby

**ORDERED** that plaintiff's IFP Application (Dkt. No. 8) is **GRANTED**;[6] and it is further

6 Plaintiff should note that he will still be required to pay fees that he may incur in this action, including but not limited to copying and/or witness fees.

**ORDERED** that the Clerk provide the Superintendent of the facility, designated by plaintiff as his current location, with a copy of plaintiff's authorization form (Dkt. No. 7), and notify the official that this action has been filed and that plaintiff is required to pay to the Northern District the entire statutory filing fee of $350.00 pursuant to 28 U.S.C. § 1915; and it is further

**ORDERED** that the Clerk provide a copy of plaintiff's authorization form (Dkt. No. 7) to the Financial Deputy of the Clerk's Office; and it is further

**ORDERED** that plaintiff's earlier filed application for in forma pauperis status (Dkt. No. 6) is **DENIED as unnecessary**; and it is further

**ORDERED** the plaintiff's claims for money damages against "The People of the State of New York" and Schenectady County Court Acting Justice Sypniewski are **DISMISSED with prejudice** in accordance with 28 U.S.C. § 1915(e)(2)(B)(iii) and 28 U.S.C. § 1915A(b)(2); the Clerk shall terminate "The People of the State of New York" and Schenectady County Court Acting Justice Sypniewski as defendants in this action; and it is further

**ORDERED** that plaintiff's remaining claims are **DISMISSED without prejudice** for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and 28 U.S.C. § 1915A(b)(1); and it is further

**ORDERED** that if plaintiff wishes to proceed with this action he must file an amended complaint **within thirty (30) days** of the filing date of this Decision and Order; and it is further

**ORDERED** that upon the filing of an amended complaint as directed above, the Clerk shall return the file to this Court for further review; and it is further

**ORDERED** that in the event plaintiff fails to file a signed amended complaint **within thirty (30) days** of the filing date of this Decision and Order, the Clerk shall enter judgment dismissing this action without prejudice pursuant to 28 U.S.C. § 1915(e)(2)

(B)(ii) and 28 U.S.C. § 1915A(b)(1) due to plaintiff's failure to state a claim upon which relief can be granted and to comply with the terms of this Decision and Order, without further order of this Court; and it is further

***7 ORDERED** that the Clerk serve a copy of this Decision and Order on plaintiff.

**IT IS SO ORDERED.**

**All Citations**

Not Reported in Fed. Supp., 2018 WL 10246976

**End of Document**

© 2026 Thomson Reuters. No claim to original U.S. Government Works.

2020 WL 4458929
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Stephen KELLY, Plaintiff,
v.
ALBANY COUNTY PROBATION DEPARTMENT, Defendant.

Civ. No. 8:20-CV-722 (GLS/DJS)
|
Signed 07/09/2020

**Attorneys and Law Firms**

STEPHEN KELLY, Plaintiff Pro Se, 18-A-3202, Gouverneur Correctional Facility, Scotch Settlement Road, P.O. Box 480, Gouverneur, New York 13642.

**REPORT-RECOMMENDATION and ORDER**

DANIEL J. STEWART, United States Magistrate Judge

***1** The Clerk has sent for review a civil Complaint filed by Plaintiff *pro se* Stephen Kelly. Dkt. No. 1, Compl. Plaintiff has not paid the filing fee, but instead submitted a Motion to Proceed *in forma pauperis* ("IFP"). Dkt. No. 2, IFP App. By separate Order, this Court granted Plaintiff's Application to Proceed IFP. Now, in accordance with 28 U.S.C. §§ 1915(e) and 1915A, the Court will *sua sponte* review the sufficiency of the Complaint.

## I. DISCUSSION

### A. Pleading Requirements

Section 1915(e) of Title 28 of the United States Code directs that, when a plaintiff seeks to proceed *in forma pauperis*, "the court shall dismiss the case at any time if the court determines that ... the action or appeal (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). Similarly, under 28 U.S.C. § 1915A, a court must review "a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity" and must "identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint (1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." *Id.* at § 1915A(a) & (b). Thus, it is a court's responsibility to determine that a plaintiff may properly maintain his complaint before permitting him to proceed further with his action.

In reviewing a *pro se* complaint, this Court has a duty to show liberality toward *pro se* litigants, *see Nance v. Kelly*, 912 F.2d 605, 606 (2d Cir. 1990), and should exercise "extreme caution ... in ordering *sua sponte* dismissal of a *pro se* complaint *before* the adverse party has been served and both parties (but particularly the plaintiff) have had an opportunity to respond." *Anderson v. Coughlin*, 700 F.2d 37, 41 (2d Cir. 1983) (emphasis in original) (citations omitted). Therefore, a court should not dismiss a complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the

court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. at 556). Although the court should construe the factual allegations in the light most favorable to the plaintiff, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. at 555). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]'–'that the pleader is entitled to relief.' " *Id.* at 679 (quoting FED. R. CIV. P. 8(a)(2)). A pleading that only "tenders naked assertions devoid of further factual enhancement" will not suffice. *Id.* at 678 (further citing *Bell Atl. Corp. v. Twombly*, 550 U.S. at 555, for the proposition that Federal Rule of Civil Procedure 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation"). Allegations that "are so vague as to fail to give the defendants adequate notice of the claims against them" are subject to dismissal. *Sheehy v. Brown*, 335 Fed. Appx. 102, 104 (2d Cir. 2009).

### B. Allegations Contained in Plaintiff's Complaint

***2** The *pro se* Complaint asserts a single cause of action alleging false arrest. Compl. at p. 4. [1] The Complaint relates to events surrounding an alleged probation violation committed by Plaintiff. *Id.* at p. 3. Plaintiff's Complaint alleges that the facts asserted did not support the alleged probation violation. *Id.* The Complaint references an unidentified probation officer, but the sole named Defendant is the Albany County Probation Department. *Id.* at pp. 1 & 3.

1 Citation to page numbers are to page numbers assigned by the Court's CM/ECF system.

### C. Sufficiency of the Pleading

"It is well-settled that municipal departments and offices which have no separate legal identity and cannot sue or be sued are not 'persons' under Section 1983." *Hill v. New York*, 2018 WL 10246976, at *5 (N.D.N.Y. Mar. 1, 2018) (citing cases); *see also Gilmore v. Schenectady Cty. Sheriffs*, 2018 WL 794579, at *4 (N.D.N.Y. Feb. 8, 2018). *Hill* and *Gilmore* both recognize that a county probation department falls into this category of municipal departments that cannot be sued. *Id.* (citing cases). Other courts have reached the same conclusion. *Ceparano v. Suffolk Cty.*, 2010 WL 5437212, at *6 (E.D.N.Y. Dec. 15, 2010); *Coleman v. City of New York*, 2009 WL 909742, at *2 (E.D.N.Y. Apr. 1, 2009) (citing cases). Defendant, therefore, must be dismissed as not a proper party to this action.

"Ordinarily, a court should not dismiss a complaint filed by a *pro se* litigant without granting leave to amend at least once 'when a liberal reading of the complaint gives any indication that a valid claim might be stated.' " *Bruce v. Tompkins Cty. Dep't of Soc. Servs. ex rel. Kephart*, 2015 WL 151029, at *4 (N.D.N.Y. Jan. 7, 2015) (quoting *Branum v. Clark*, 927 F.2d 698, 704-05 (2d Cir. 1991)). The Complaint does reference, but not name, an individual probation officer who might be amenable to suit, although it is unclear whether the Complaint might nonetheless be barred by the rule enunciated in *Heck v. Humphrey*, 512 U.S. 477 (1994). "*Heck* and its favorable termination rule applies to actions pursuant to section 1983 that challenge the fact or duration of confinement based on the revocation of parole." *Perry v. City of Albany*, 2020 WL 3405636, at *4 (N.D.N.Y. May 6, 2020), *report and recommendation adopted*, 2020 WL 3403080 (N.D.N.Y. June 19, 2020) (internal quotation and citation omitted). Should Plaintiff name a proper Defendant, he may be able to address the *Heck* bar through more detailed pleading regarding the status of his parole revocation, or by demonstrating that his claims do not implicate the invalidity of his parole revocation. *See Heck v. Humphrey*, 512 U.S. at 487. Given Plaintiff's *pro se* status, therefore, the Court recommends that the Complaint be dismissed as to the only Defendant currently named, but that Plaintiff be granted leave to amend to name a proper defendant.

## II. CONCLUSION

**WHEREFORE**, it is hereby

**RECOMMENDED**, that the Complaint be **DISMISSED with prejudice** as to the Albany County Probation Department, but that Plaintiff be provided leave to amend; and it is

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order upon the parties to this action.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen (14) days [2] within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); *see also* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72 & 6(a).

2 If you are proceeding *pro se* and are served with this Report-Recommendation and Order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the Report-Recommendation and Order was mailed to you to serve and file objections. FED. R. CIV. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. FED. R. CIV. P. 6(a)(1)(C).

**All Citations**

Not Reported in Fed. Supp., 2020 WL 4458929

End of Document © 2026 Thomson Reuters. No claim to original U.S. Government Works.

2018 WL 794579
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Dale GILMORE, Plaintiff,
v.
SCHENECTADY COUNTY SHERIFFS, Smith, Badge #287, Sergeant Guido, Sergeant Gangurem, Sergeant Cellino, and Captain Dean, Defendants.

9:17-CV-1349 (DNH/TWD)
|
Signed 02/08/2018

**Attorneys and Law Firms**

DALE GILMORE, 53017, Schenectady County Jail, 320 Veeder Avenue, Schenectady, New York 12307, pro se.

**DECISION and ORDER**

DAVID N. HURD, United States District Judge

## I. INTRODUCTION

***1** Pro se plaintiff Dale Gilmore ("Gilmore" or "plaintiff") filed this complaint asserting claims arising out of his confinement in the custody of Schenectady County. Dkt. No. 1 ("Compl."). [1] Although plaintiff initially commenced this action in the United States District Court for the Eastern District of New York, it was transferred to this District by Order of Eastern District Judge Pamela K. Chen. Dkt. No. 7. Plaintiff has not paid the filing fee for this action and seeks leave to proceed in forma pauperis. Dkt. No. 10 ("IFP Application"). In addition, plaintiff has filed motions seeking appointment of counsel and preliminary injunctive relief. Dkt. Nos. 5, 6.

1 On January 4, 2018, plaintiff commenced a second civil rights action in this District. *Gilmore v. State of New York*, No. 9:18-CV-0013 (GLS/ATB) (N.D.N.Y. Jan. 4, 2018).

## II. IFP APPLICATION

"28 U.S.C. § 1915 permits an indigent litigant to commence an action in a federal court without prepayment of the filing fee that would ordinarily be charged." *Cash v. Bernstein*, No. 09-CV-1922, 2010 WL 5185047, at *1 (S.D.N.Y. Oct. 26, 2010). [2] "Although an indigent, incarcerated individual need not prepay the filing fee at the time of filing, he must subsequently pay the fee, to the extent he is able to do so, through periodic withdrawals from his inmate accounts." *Id.* (citing 28 U.S.C. § 1915(b) and *Harris v. City of New York*, 607 F.3d 18, 21 (2d Cir. 2010)).

2 Section 1915(g) prohibits a prisoner from proceeding in forma pauperis where, absent a showing of "imminent danger of serious physical injury," a prisoner has filed three or more actions or appeals that were subsequently dismissed as frivolous, malicious, or failing to state a claim upon which relief may be granted. *See* 28 U.S.C. § 1915(g). Based upon a review of plaintiff's litigation history on the Federal Judiciary's Public Access to Court Electronic Records ("PACER") Service, it does not appear that plaintiff has accumulated three strikes for purposes of 28 U.S.C. § 1915(g).

Upon review of Gilmore's IFP Application, he has demonstrated sufficient economic need. Plaintiff has also filed the inmate authorization required in the Northern District of New York. *See* Dkt. No. 11. Accordingly, plaintiff's IFP Application is granted.

## III. SUFFICIENCY OF THE COMPLAINT

### A. Governing Standard

Having found that Gilmore meets the financial criteria for commencing this action in forma pauperis, and because he seeks relief from a governmental entity and from governmental officials and employees, the sufficiency of the allegations set forth in his complaint must be considered in light of 28 U.S.C. § 1915(e) and 28 U.S.C. § 1915A.

Section 1915(e) directs that, when a plaintiff seeks to proceed in forma pauperis, "(2) ... the court shall dismiss the case at any time if the court determines that—... (B) the action ... (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B).

***2** Similarly, Section 1915A directs that a court must review any "complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity" and must "identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint (1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b); *see also Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007) (stating that both sections 1915 and 1915A are available to evaluate prisoner pro se complaints).

Thus, although the court has the duty to show liberality toward pro se litigants, *see Nance v. Kelly*, 912 F.2d 605, 606 (2d Cir. 1990) (per curiam), and should exercise "extreme caution ... in ordering *sua sponte* dismissal of a *pro se* complaint *before* the adverse party has been served and both parties (but particularly the plaintiff) have had an opportunity to respond," *Anderson v. Coughlin*, 700 F.2d 37, 41 (2d Cir. 1983) (internal citations omitted), the court also has a responsibility to determine whether plaintiff may properly proceed with this action.

A court should not dismiss a complaint if the plaintiff has alleged "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). Although the court should construe the factual allegations in the light most favorable to the plaintiff, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555). Thus, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.' " *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

### B. Summary of the Complaint

The following facts are set forth as alleged in the complaint. During his confinement at Schenectady County Jail, Gilmore has been denied timely access to requested legal materials and supplies, and his legal mail has been interfered with and denied. *See* Compl. at 4, 6-8. These legal resources and materials were requested in connection with plaintiff's preparation of his criminal defense. *Id.* As plaintiff explains, he proceeded with his defense pro se. *Id.*

During the period May through July 2017, C.O. Smith "continually denied [Gilmore] access to notary." Compl. at 7. Officer "Doe" denied plaintiff "free legal mail" and refused to send mail directed to the "Attorney General." *Id.* [3] Sgt. Guido (identified as the "law clerk Sgt."), denied plaintiff access to requested legal materials. *Id*. "I was told no to access to the courts law library, law books." *Id.* Plaintiff's requests for free paper and envelopes for legal mailings were denied by Sgt. Gangurem, notwithstanding plaintiff's indigency. *Id.* Plaintiff's request to Capt. Dean that he be housed closer to the law library was ignored. *Id.* The "Schenectady County Sheriff's" collaborated with the district attorneys to hinder plaintiff's criminal defense by denying him access to the courts. *Id.* at 4.

3 Although Officer "Doe" is not listed in the caption of the complaint, he is included in the listing of defendants provided on page 8. *See* Compl. at 8. The Clerk is directed to add "Officer "Doe' " to the docket as a defendant.

***3** Gilmore was convicted on September 6, 2017. Compl. at 6. On November 20, 2017, plaintiff told Sgt. Guido, Sgt. Gangurem, and Sgt. Cellino that he needed "paper, notary, copies and time with the law library" in order to prepare for his sentencing. *Id.* Plaintiff's requests were denied; he was told to file a grievance, which he did. *Id.* at 6, 8.

Liberally construed, Gilmore claims that he was (1) denied access to the courts and (2) maliciously prosecuted in violation of his constitutional rights. Plaintiff seeks an award of money damages as well as declaratory and injunctive relief. *Id.* at 3, 5. For a complete statement of plaintiff's claims and the facts he relies on in support of those claims, reference is made to the complaint.

### C. Analysis

Section 1983 of Title 42 of the United States Code ("Section 1983") establishes a cause of action for " 'the deprivation of any rights, privileges, or immunities secured by the Constitution and laws' of the United States." *Wilder v. Virginia Hosp. Ass'n*, 496 U.S. 498, 508 (1990) (quoting Section 1983). "Section 1983 itself creates no substantive rights, [but] ... only a procedure for redress for the deprivation of rights established elsewhere." *Sykes v. James,* 13 F.3d 515, 519 (2d Cir. 1993).

#### 1. Access to the Courts

"Prisoners, including pretrial detainees, 'have a constitutional right of access to the courts.' " *Bourdon v. Loughren,* 386 F.3d 88, 92 (2d Cir. 2004) (quoting *Bounds v. Smith*, 430 U.S. 817, 821 (1977)). This fundamental right requires prison authorities to "assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." *Bounds*, 430 U.S. at 828.

"The right of access to the courts requires that prisoners defending against criminal charges or convictions (either directly or collaterally) or challenging the conditions of their confinement ... not be impeded from presenting those defenses and claims for formal adjudication by a court." *Bourdon*, 386 F.3d at 96. Inmate access to the court must be "adequate, effective, and meaningful." *Bounds*, 430 U.S. at 822.

An inmate alleging a denial of access to courts must show "actual injury" as a result of the deficient access to the courts; that is, that he was "hindered [in] his efforts to pursue a legal claim." *Lewis v. Casey*, 518 U.S. 343, 351 (1995). The *Lewis* Court explained that an inmate cannot demonstrate an actual injury "simply by establishing that his prison's law library or legal assistance program is sub-par in some theoretical sense." *Id.* at 351.[4] "Prison officials may only be held liable for such injury if they frustrated or impeded a prisoner's efforts to pursue a non-frivolous legal claim." *Konigsberg v. Lefevre*, 267 F. Supp. 2d 255, 261 (N.D.N.Y. 2003).

4 Additionally, a law library is only one way for inmates to be provided with access to the courts. *See Bounds*, 430 U.S. at 830-31. Thus, if an inmate is afforded counsel there is no constitutional requirement that he also be afforded access to law books. *Id.*; *Bourdon v. Loughren*, 386 F.3d 88, 93 (2d Cir. 2004) ("we confirm that the appointment of counsel can be a valid means of satisfying a prisoner's right of access to the courts."). As noted, plaintiff states that he proceeded with his criminal defense pro se.

At this early stage of the proceedings and mindful of the Second Circuit's direction that a pro se plaintiff's pleadings must be liberally construed, *see e.g. Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185,191 (2d Cir. 2008), Gilmore's First Amendment access to the courts claims against Officer Smith, Officer "Doe," Sgt. Guido, Sgt. Gangurem, Sgt. Cellino, and Capt. Dean survive sua sponte review and require a response.[5]

5 Plaintiff is advised that the U.S. Marshals Service can not effect service of a summons and complaint on an individual who has not been identified by name. Plaintiff is therefore directed to take reasonable steps through discovery to ascertain the name of Officer "Doe." If plaintiff fails to ascertain this defendant's name so as to permit the timely amendment of the complaint and service of process on this individual, this action will be dismissed as against Officer "Doe."

**2. Malicious Prosecution**

***4** However, Gilmore's malicious prosecution claims are insufficient to survive initial review. To make out a federal claim of malicious prosecution cognizable under Section 1983, "a plaintiff must show a violation of his rights under the Fourth Amendment and must establish the elements of a malicious prosecution claim under state law." *Willey v. Kirkpatrick*, 801 F.3d 51, 70 (2d Cir. 2015) (quoting *Manganiello v. City of New York*, 612 F.3d 149, 160-61 (2d Cir. 2010)).

"To establish a malicious prosecution claim under New York law, a plaintiff must prove '(1) the initiation or continuation of a criminal proceeding against plaintiff; (2) termination of the proceeding in plaintiff's favor; (3) lack of probable cause for commencing the proceeding; and (4) actual malice as a motivation for defendant's actions.' " *Manganiello*, 612 F.3d at 161 (quoting *Murphy v. Lynn*, 118 F.3d 938, 947 (2d Cir. 1997)).

Here, because Gilmore states that he was convicted of criminal charges against him there is no basis in the record upon which to conclude, inter alia, that the proceeding terminated in his favor. As a result, this claim is dismissed without prejudice for failure to state a claim. *See* 28 U.S.C. § 1915(e)(2)(B)(ii) and 28 U.S.C. § 1915A(b)(1).

**3. Other Matters**

Finally, it is noted that "Schenectady County Sheriff's" is listed as a defendant in the caption of the complaint. Compl. at 1. While it is not entirely clear whether Gilmore intended this as a collective reference to the individual defendants or whether he seeks to assert claims against the Sheriff's Department, the Schenectady Sheriff's Department is not a proper defendant.

It is well-settled that municipal departments and offices which have no separate legal identity and cannot sue or be sued are not "persons" under Section 1983. *See Jenkins v. City of New York*, 478 F.3d 76, 93 n.19 (2d Cir. 2007) (affirming the district court's dismissal of claims against the NYPD as a non-suable entity); *Sanchez-Martin v. Allegany Cnty. Jail*, No. 11-CV-0568, 2012 WL 360014, at *2 (W.D.N.Y. Feb. 1, 2012) (county correctional facilities do not have legal identities separate and apart from the counties and are not subject to suit under Section 1983); *Ceparano v. Suffolk County*, No. 10-CV-2030, 2010 WL 5437212, at *6 (E.D.N.Y. Dec. 15, 2010) (dismissing claims against Suffolk County Police Dep't, Suffolk County District Attorney's Office, Suffolk County Sheriff's Dep't and Suffolk County Probation Dep't because these entities are not amenable to suit).

As a result, "Schenectady County Sheriff's" is dismissed as a defendant in this action. *See* 28 U.S.C. § 1915(e)(2)(B)(ii) and 28 U.S.C. § 1915A(b)(1).

**IV. APPOINTMENT OF COUNSEL**

Courts cannot utilize a bright-line test in determining whether counsel should be appointed on behalf of an indigent party. *Hendricks v. Coughlin,* 114 F.3d 390, 392-93 (2d Cir. 1997). Instead, the Court must carefully consider a number of factors in ruling upon such a motion.

As the Second Circuit stated in *Hodge v. Police Officers,* 802 F.2d 58, 61 (2d Cir. 1986), "the district judge should first determine whether the indigent's position seems likely to be of substance." If the claim satisfies that threshold requirement, the court must then consider

> the indigent's ability to investigate the crucial facts, whether conflicting evidence implicating the need for cross examination will be the major proof presented to the fact finder, the indigent's ability to present the case, the complexity of the legal issues and any special reason in that case why appointment of counsel would be more likely to lead to a just determination.

***5** *Id.* at 61-62. None of these factors are controlling in any particular case. Rather, the court must decide each case on its own facts. *Id.* at 61.

At this early stage of the litigation, it is difficult to assess the likely merits of Gilmore's surviving claims. Moreover, there is nothing in the record which demonstrates that plaintiff is not able to effectively pursue this action at this time. While it is possible that there will be conflicting evidence implicating the need for cross-examination if this case proceeds to trial, "this factor alone is not determinative of a motion for appointment of counsel." *Velasquez v. O'Keefe*, 899 F. Supp. 972, 974 (N.D.N.Y. 1995) (McAvoy, C.J.) (citing *Hodge,* 802 F.2d at 61). Further, if this case survives a dispositive motion filed by defendant, it is highly probable that trial counsel will be appointed at the final pretrial conference. Finally, there is no special reason why appointment of counsel **at this time** would be more likely to lead to a just determination of this litigation. Accordingly, plaintiff's request for appointment of counsel (Dkt. No. 5) is denied without prejudice.

## V. INJUNCTIVE RELIEF

"In general, district courts may grant a preliminary injunction where a plaintiff demonstrates 'irreparable harm' and meets one of two related standards: 'either (a) a likelihood of success on the merits, or (b) sufficiently serious questions going to the merits of its claims to make them fair ground for litigation, plus a balance of the hardships tipping decidedly in favor of the moving party.' " *Otoe-Missouria Tribe of Indians v. New York State Dep't of Fin. Servs.*, 769 F.3d 105, 110 (2d Cir. 2014) (quoting *Lynch v. City of N.Y.*, 589 F.3d 94, 98 (2d Cir. 2009) (internal quotation marks omitted)).

However, when the moving party seeks a "mandatory injunction that alters the status quo by commanding a positive act," the burden is "even higher." *Cacchillo v. Insmed, Inc.*, 638 F.3d 401, 406 (2d Cir. 2011) (citing *Citigroup Global Mkts., Inc. v. VCG Special Opportunities Master Fund Ltd.*, 598 F.3d 30, 35 n.4 (2d Cir. 2010) (internal quotation marks omitted)).

A mandatory preliminary injunction "should issue only upon a clear showing that the moving party is entitled to the relief requested, or where extreme or very serious damage will result from a denial of preliminary relief." *Cacchillo*, 638 F.3d at 406 (citing *Citigroup Global Mkts.*, 598 F.3d at 35 n.4) (internal quotation marks omitted); *see also Tom Doherty Assocs., Inc. v. Saban Entertainment, Inc.*, 60 F.3d 27, 33-34 (2d Cir. 1995) (a plaintiff seeking a mandatory injunction must make a "clear" or "substantial" showing of a likelihood of success on the merits of his claim).

The same standards used to review a request for a preliminary injunction govern consideration of an application for a temporary restraining order. *Local 1814, Int'l Longshoremen's Ass'n, AFL-CIO v. New York Shipping Ass'n, Inc.*, 965 F.2d 1224, 1228 (2d Cir. 1992); *Perri v. Bloomberg*, No. 06-CV-0403, 2008 WL 2944642, at * 2 (E.D.N.Y. Jul. 31, 2008). The district court has wide discretion in determining whether to grant preliminary injunctive relief. *Moore v. Consol. Edison Co. of New York, Inc.*, 409 F.3d 506, 510 (2d Cir. 2005).

***6** In this case, Gilmore seeks preliminary injunctive relief and the issuance of a temporary restraining order prohibiting defendants from "hindering inmates due process of law" and "denying access to the courts." Dkt. No. 6.

Upon review, Gilmore's request for injunctive relief must be denied. Injunctions directing a party to refrain from misconduct or other wrongdoing (often referred to as "obey the law injunctions") are generally disfavored by courts because they are vague,

 © 2026 Thomson Reuters. No claim to original U.S. Government Works. 

not readily enforceable, and would not subject defendants to any requirement not already imposed by law. *See Rowe v. New York State Div. of the Budget*, No. 1:11-CV-1150 (LEK/DRH), 2012 WL 4092856, at *7 (N.D.N.Y. Sept. 17, 2012) (citing *N.L.R.B. v. Express Pub. Co.*, 312 U.S. 426, 435-36 (1941)).

In addition, Gilmore has failed to demonstrate with evidence, a likelihood of success on the merits of his underlying claims, or sufficiently serious questions going to the merits and a balance of hardships tipping decidedly in his favor. *See Ivy Mar Co. v. C.R. Seasons Ltd.*, 907 F. Supp. 547, 561 (E.D.N.Y. 1995) ("[B]are allegations, without more, are insufficient for the issuance of a preliminary injunction."); *Hancock v. Essential Res., Inc.*, 792 F. Supp. 924, 928 (S.D.N.Y. 1992) ("Preliminary injunctive relief cannot rest on mere hypotheticals."). Accordingly, plaintiff's motion for preliminary injunctive relief (Dkt. No. 6) is denied.

## VI. CONCLUSION

Therefore, it is

ORDERED that

1. Plaintiff's IFP Application (Dkt. No. 10) is **GRANTED**; [6]

6 Plaintiff should note that he will still be required to pay fees that he may incur in this action, including but not limited to copying and/or witness fees.

2. The Clerk of the Court shall provide the superintendent of the facility designated by plaintiff as his current location with a copy of plaintiff's Inmate Authorization (Dkt. No. 11), and notify the official that this action has been filed and that plaintiff is required to pay to the Northern District of New York the statutory filing fee of $350 in installments, over time, pursuant to 28 U.S.C. § 1915;

3. The Clerk shall provide a copy of plaintiff's Inmate Authorization (Dkt. No. 11) to the Financial Deputy of the Clerk's Office;

4. Plaintiff's denial of access to the courts claims **SURVIVE** initial review and require a response from the individual defendants;

5. Plaintiff's remaining claims are **DISMISSED without prejudice for** failure to state a claim in accordance with 28 U.S.C. § 1915(e)(2)(B)(ii) and 28 U.S.C. § 1915A(b)(1);

6. The Clerk shall terminate "Schenectady County Sheriff's" as a defendant in this action;

7. The Clerk is directed to add "Officer "Doe' " to the docket as a defendant;

8. The Clerk shall issue summonses and forward them to the U.S. Marshal for service of process upon Officer Smith, Sgt. Guido, Sgt. Gangurem, Sgt. Cellino, and Capt. Dean; the Clerk shall forward a copy of the summons and complaint by mail to the Office of the Schenectady County Attorney, together with a copy of this Decision and Order;

9. A response to the complaint shall be filed by defendants or their counsel as provided for in the Federal Rules of Civil Procedure;

10. Plaintiff must take reasonable steps through discovery to ascertain the identity of Officer "Doe";

***7** 11. Plaintiff's motion for appointment of counsel (Dkt. No. 5) is **DENIED without prejudice** to renew at a later stage of this proceeding;

12. Plaintiff's motion seeking preliminary injunctive relief (Dkt. No. 6) is **DENIED**;

13. All pleadings, motions and other documents relating to this action must bear the case number assigned to this action and be filed with the Clerk of the United States District Court, Northern District of New York, 7th Floor, Federal Building, 100 S. Clinton St., Syracuse, New York 13261-7367;

14. Plaintiff must comply with requests by the Clerk's Office for any documents that are necessary to maintain this action;

15. All parties must comply with Local Rule 7.1 of the Northern District of New York in filing motions; motions will be decided on submitted papers, without oral argument, unless otherwise ordered by this Court;

16. **Plaintiff is also required to promptly notify the Clerk's Office and all parties or their counsel, in writing, of any change in his address; his failure to do so will result in the dismissal of this action**; and

17. The Clerk shall serve a copy of this Decision and Order on plaintiff.

IT IS SO ORDERED.

**All Citations**

Not Reported in Fed. Supp., 2018 WL 794579

**End of Document**

© 2026 Thomson Reuters. No claim to original U.S. Government Works.

2020 WL 4432711
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Stephen KELLY, Plaintiff,
v.
ALBANY COUNT PROBATION DEPARTMENT, Defendant.

8:20-cv-722 (GLS/DJS)
|
Signed 07/31/2020

**Attorneys and Law Firms**

FOR THE PLAINTIFF: Stephen Kelly, Pro Se, 18-A-3202, Gouverneur Correctional Facility, Scotch Settlement Road, P.O. Box 480, Gouverneur, NY 13642.

**ORDER**

Gary L. Sharpe, Senior District Judge

***1** The above-captioned matter comes to this court following an Report-Recommendation and Order (R&R) by Magistrate Judge Daniel J. Stewart duly filed on July 9, 2020. (Dkt. No. 6.) Following fourteen days from the service thereof, the Clerk has sent the file, including any and all objections filed by the parties herein.

No objections having been filed, and the court having reviewed the R&R for clear error, it is hereby

**ORDERED** that the Report-Recommendation and Order (Dkt. No. 6) is **ADOPTED** in its entirety; and it is further

**ORDERED** that the Complaint is **DISMISSED** with prejudice as to the Albany County Probation Department; and it is further

**ORDERED** that plaintiff is granted leave to file an amended complaint to name a proper defendant within thirty (30) days of this court's order; [1] and it is further

1 Plaintiff filed an amended complaint on July 29, 2020 before the court had an opportunity to review the R&R. (Dkt. No. 7.)

**ORDERED** that plaintiff's amended complaint, filed on July 29, 2020, (Dkt. No. 7), is referred to the Magistrate Judge for further review; and it is further

**ORDERED** that the Clerk provide a copy of this Order to plaintiff in accordance with the Local Rules of Practice.

**IT IS SO ORDERED.**

**All Citations**

Not Reported in Fed. Supp., 2020 WL 4432711

**End of Document**

© 2026 Thomson Reuters. No claim to original U.S. Government Works.

1996 WL 156764
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Emon DAWKINS, Plaintiff,
v.
The STATE OF NEW YORK, Trooper Antone R. Irwin of the New York State Police and The New York State Police Department, Defendants.

No. 93-CV-1298 (RSP/GJD).
|
March 28, 1996.

**Attorneys and Law Firms**

Emon Dawkins, Liverpool, New York, Plaintiff, Pro Se.

Dennis C. Vacco, Attorney General of the State of New York, Syracuse, New York, for Defendants; G. Robert McAllister, Assistant Attorney General, of counsel.

*MEMORANDUM, DECISION AND ORDER*

POOLER, District Judge.

INTRODUCTION

***1** On June 13, 1992, defendant New York State police officer Antone R. Irwin ("Trooper Irwin") stopped and ticketed plaintiff Emon Dawkins for speeding on the New York State Thruway. Dawkins pled not guilty and elected trial in the Town Court of Dewitt, New York. When Dawkins appeared for trial, he received an additional ticket [1] for driving an unregistered vehicle. The Town Court found Dawkins not guilty of both charges. Dawkins then filed this lawsuit claiming that Trooper Irwin (1) stopped him without probable cause and on racial grounds, and (2) issued the unregistered vehicle citation in retaliation for electing trial on the speeding charge. Dawkins alleges that his Fourth, Sixth, Eighth, and Fourteenth Amendment rights have been violated and seeks redress under 42 U.S.C. §§ 1983 and 1985. Defendants all move for summary judgment pursuant to Fed. R. Civ. P. 56, arguing that Dawkins' claims are barred by the Eleventh Amendment to the United States Constitution.

Because I find that the Eleventh Amendment provides immunity for some defendants on some claims, I grant in part and deny in part, defendants' motion for summary judgment.

DISCUSSION

I. Summary Judgment Standard
Summary judgment is granted when viewing the evidence in a light most favorable to the nonmovant, the court determines that there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Eastman Kodak Co. v. Image Technical Servs., Inc.,* 504 U.S. 451, 456 (1992). A party seeking summary judgment must demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). If the movant satisfies this initial burden, then the burden shifts to the nonmovant to proffer evidence demonstrating that a trial is required

because a disputed issue of fact exists. *Weg v. Macchiarola,* 995 F.2d 15, 18 (2d Cir. 1993). The nonmovant must do more than present evidence that is merely colorable, conclusory, or speculative and must present “concrete evidence from which a reasonable juror could return a verdict in his favor.” *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256 (1986). In short, the nonmovant must demonstrate to the court that issues of fact exist that must be decided by a factfinder, because “they may reasonably be decided in favor of either party.” *Thompson v. Gjivoje,* 896 F.2d 716, 720 (2nd Cir. 1990).

II. Pro Se Plaintiff

Because Dawkins is a *pro se* plaintiff, his complaint must be construed liberally and should be dismissed only “if it appears beyond doubt that [he] can prove no set of facts in support of his claim which would entitle him to relief.” *Estelle v. Gamble,* 429 U.S. 97, 106 (1976) (quotations omitted).

III. Defendants New York State and the New York State Police Department

It is well settled that “[a]bsent a waiver on the part of the state, or a valid congressional override, the eleventh amendment prohibits federal courts from entertaining suits by private parties against the states.” *Farid v. Smith,* 850 F.2d 917, 920-21 (2d Cir. 1988) (citing *Kentucky v. Graham,* 473 U.S. 159 (1985)). When Congress enacted Sections 1983 and 1985, it did not abrogate the state's Eleventh Amendment immunity. *United States v. City of Yonkers,* 880 F. Supp 212, 231 (S.D.N.Y. 1995) (citing *Quern v. Jordan,* 440 U.S. 332 (1979). Because New York State has Eleventh Amendment immunity from suit, Dawkins' claims against defendant New York State are dismissed.

***2** It is equally well established that the “Eleventh Amendment's containment of federal judicial power is not restricted to actions where the state is a named defendant, but extends further to those actions where liability, if imposed, must be paid from the state fisc.” *New York City Health & Hosp. Corp. v. Perales,* 50 F.3d 129, 134 (2d Cir. 1995). For Eleventh Amendment purposes, governmental entities of a state that are considered “arms of the state” receive Eleventh Amendment immunity. *Will v. Michigan Dep't of Police,* 491 U.S. 58, 70 (1989). Because defendant New York State Police Department is a division of the executive department of New York State, Dawkins claims against the department are dismissed. *See* N.Y.Exec.Law § 210 (McKinney 1993); *Komlosi v. New York State OMRDD,* 64 F.3d 810 (2d Cir. 1995) (holding that OMRDD is an arm of the state and thus cannot be sued under §1983); *see also Oliver Schools, Inc. v. Foley,* 930 F.2d 248, 252 (2d Cir. 1991).

Moreover, New York State and the New York State Police Department are not “person[s]” within the meaning of Sections 1983 and 1985. *See Howlett v. Rose,* 496 U.S. 356, 365 (1990); *see also, Thompson v. State of New York,* 487 F. Supp. 212, 228 (N.D.N.Y. 1979, Munson, J.) (holding that the State of New York and the New York State Police Department are not “persons” for purposes of the threshold requirement of a cause of action under § 1985).

Because defendants New York State and the New York State Police Department (1) have not consented either expressly or impliedly to permit this suit to proceed in federal court and (2) are not “persons” within the meaning of the relevant statutes, I dismiss the claims against these two defendants. [2]

IV. Defendant Antone R. Irwin

*A. Section 1985*

Section 1985(3) makes it illegal “[i]f two or more persons ... conspire ... for the purposes of depriving .. any person or class of persons of the equal protection of the laws.” 42 U.S.C. § 1985(3). Trooper Irwin is the only person named or mentioned in Dawkins' complaint. Because Dawkins fails to offer any support for his claim that two or more persons conspired to deny him his rights, I must dismiss his Section 1985 claim against Trooper Irwin.

*B. Section 1983*

 © 2026 Thomson Reuters. No claim to original U.S. Government Works. 

A Section 1983 claim requires that Dawkins prove that (1) Trooper Irwin deprived him of a federal right and (2) Trooper Irwin acted under color of state law. *Gomez v. Toledo,* 446 U.S. 635, 640 (1980).

In his motion for summary judgment, Trooper Irwin spends great energy arguing that a cause of action alleging only that, “harm from official capacity acts is barred by the Eleventh Amendment.” McAllister Aff., at ¶ 5. Trooper Irwin is only partially correct.

A suit against Trooper Irwin in his official capacity, is a suit against the state and he is “entitled to invoke the Eleventh Amendment immunity belonging to the state.” *Ying Jing Gan v. City of New York,* 996 F.2d 522, 529 (2d Cir. 1993). Therefore, Dawkins' Section 1983 claim made against Trooper Irwin in his official capacity is dismissed.

***3** However, a claim against Trooper Irwin in his individual capacity, even when performing official acts, is not afforded Eleventh Amendment protection. *Id.* [3] Although Dawkins' complaint is silent concerning the capacity in which he sues Trooper Irwin, his failure to specify the capacity does not justify an outright dismissal of his claim. *Oliver Schools,* 930 F.2d at 252; *see also Kentucky,* 473 U.S. at 167 n. 14, (1985) (indicating that “in many cases the complaint will not clearly specify whether officials are sued personally, in their official capacity, or both” and “[t]he course of proceedings ... will indicate the nature of the liability sought to be imposed.” (citations and internal quotations omitted)). [4]

During oral argument Dawkins stated that his claims against Trooper Irwin are in both his individual and official capacity. Therefore, I accept that Dawkins intends to proceed against Trooper Irwin in his individual capacity and find that the Eleventh Amendment does not protect Trooper Irwin from Dawkins' individual capacity claims. *Farid,* 850 F.2d at 921 (2d Cir. 1988) (holding that “[t]he eleventh amendment bars recovery against an employee who is sued in his official capacity, but does not protect him from personal liability if he is sued in his ‘individual’ or ‘personal’ capacity.”(quoting *Kentucky,* 473 U.S. at 166-67)).

Defendants' reliance on *Pennhurst State School & Hosp. v. Halderman,* 465 U.S. 89 (1984), is misplaced. *Pennhurst* stands for the proposition that the Eleventh Amendment prohibits federal courts from ordering state officials to conform their conduct to state law. *Id.* at 121 (holding that “a claim that state officials violated state law in carrying out their official responsibilities is a claim against the State that is protected by the Eleventh Amendment.”).

*Pennhurst* bars state claims against state officials in their official capacities. Dawkins claims that his federal constitutional rights were violated by a state employee acting under color of state law in his individual capacity. *Pennhurst* is not applicable. *See Farid,* 850 F.2d at 921 (holding that “the [Supreme Court] has consistently held that the eleventh amendment does not protect state officials from personal liability when their actions violate federal law, even though state law purports to require such actions.”).
Dawkins' Section 1983 claim against Trooper Irwin in his individual capacity is not barred by the Eleventh Amendment.

*2. Qualified Immunity*

Trooper Irwin also argues that “without a showing of a violation of a clearly established right and affirmative proof of some *ultra vires* conduct ... an individual capacity action cannot be maintained.” Def.'s Mem. at 6. Although Irwin makes this statement in support of his Eleventh Amendment argument, it could also be read as a claim of qualified immunity. The doctrine of qualified immunity protects public employees in their individual capacities. *Hafer,* 502 U.S. at 31. Qualified immunity “shields government officials from liability for damages on account of their performance of discretionary official functions insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.” *Rodriguez v. Phillips,* 66 F.3d 470, 475 (2d Cir 1995) (citations and internal quotations omitted). The standard governing the use of a qualified immunity defense “has evolved into one of objective reasonableness, designed to ‘permit the resolution of many insubstantial claims on summary judgment.”' *Robison v. Via,* 821 F.2d 913, 920 (2d Cir. 1987) (quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982)).

***4** However, qualified immunity is an affirmative defense which the individual defendant must plead. The Supreme Court has held that there is "no basis for imposing on the plaintiff an obligation to anticipate such a defense by stating in his complaint that the defendant acted in bad faith." *Gomez,* 446 U.S. at 640. Rather, "[i]t is for the official to claim that his conduct was justified by an objectively reasonable belief that it was lawful." *Id.*

Even if I read Trooper Irwin's answer liberally to include a qualified immunity defense, he fails in this motion to establish that "it was objectively reasonable for [him] to believe that his acts did not violate [Dawkins] rights." *Robison,* 821 F.2d at 921 (2d Cir. 1987).[5]

According to Dawkins he was (1) stopped by officer Irwin while driving at a legal rate of speed, (2) asked to produce his drivers license, vehicle registration, thruway toll card and proof of insurance, (3) ticketed for speeding, and (4) advised, but not ticketed, for an expired vehicle registration. Trooper Irwin had possession of the documents for a total of five minutes. After leaving the scene, Dawkins noticed that the speeding ticket misstated the correct time of day and listed his rate of speed at sixty-eight miles per hour as opposed to Trooper Irwin's oral representation that Dawkins was traveling at fifty-eight miles per hour. At trial, Trooper Irwin issued Dawkins a ticket for driving an unregistered vehicle. Found innocent on both charges, Dawkins alleges that Trooper Irwin (1) illegally stopped and detained him based on race and without probable cause, and (2) ticketed him for the unregistered vehicle in retaliation for electing trial. Compl. at II(c).

In his answer and in his memorandum of law in support of his motion for summary judgment, Trooper Irwin fails to provide any evidence concerning his underlying basis for stopping Dawkins. Nor does he offer any justification for ticketing Dawkins for an unregistered vehicle three months after the initial stop. The record before me does not contain an affidavit or affirmation from Trooper Irwin giving his version of the incident. Moreover, lacking any evidence to the contrary, I accept as true, Dawkins' statement that he was driving at a legal rate of speed, received a second ticket in retaliation for electing trial, and was found innocent of both offenses.[6]

Defendant has done nothing to refute Dawkins' claims. Because Trooper Irwin fails to offer any support concerning the objective reasonableness of stopping Dawkins, ticketing him, and then ticketing him again three months after the initial stop, I deny his motion for summary judgment.[7]

## CONCLUSION

For the foregoing reasons I (1) GRANT defendants motion for summary judgment on behalf of defendants State of New York State and the New York State Police Department, (2) GRANT defendant Antone R. Irwin's motion for summary judgement with respect to claims as they relate to acts in his official capacity, (3) GRANT defendant Antone R. Irwin's motion for summary judgment with respect to the Section 1985 claim, and (4) DENY defendant Irwin's motion for summary judgement with respect to claims against him in his personal capacity under Section 1983.

***5** IT IS SO ORDERED

1 Defendants contend that Trooper Irwin gave Dawkins the additional ticket at the time of the initial stop. Defs.' Answer at ¶ 2.

2 In his responsive papers, Dawkins requests "declaratory or injunctive relief based on the State of New York policies and statutes of New York Civil Rights Law § 50-a, and Public Office (sic) Law § 89(2)(b) and the use thereof." Pl.'s Mem. at 2. However, attempts to secure prospective relief requiring state officials to comply with state law, as opposed to federal law, is barred by the Eleventh Amendment. *Pennhurst State School and Hosp. v. Halderman,* 465 U.S. 89,

 © 2026 Thomson Reuters. No claim to original U.S. Government Works. 

103-106 (1984) Therefore, Dawkins' new claim for prospective relief cannot be sustained and is barred by the Eleventh Amendment.

3 "*Will* itself makes clear that the distinction between official-capacity suits and personal-capacity suits is more than a mere pleading device. State officers sued for damages in their official capacity are not persons for purposes of the suit because they assume the identity of the government that employs them. By contrast, officers sued in their personal capacity come to court as individuals... the Eleventh Amendment does not erect a barrier against suits to impose individual and personal liability on state officials under § 1983." *Hafer v. Melo,* 502 U.S. 21, 27, 31 (1991) (citations and internal quotations omitted).

4 Notwithstanding Dawkins' failure to make clear his intention to state a claim against Trooper Irwin individually, Defendants' memorandum of law acknowledges a cause of action against Trooper Irwin in his individual capacity. Def.'s Mem. at 4.

5 For the purposes of discussing qualified immunity I will read defendants' answer liberally. However, it is not clear from defendants' answer that they have preserved the right to raise a qualified immunity defense. If leave to amend the answer is requested, it might well be granted. *See, Satchell v. Dilworth,* 745 F.2d 781, 784 (2d Cir. 1984).

6 In his complaint, Dawkins alleges violations to his Fourth, Sixth, Eighth, and Fourteenth Amendment Rights. Because defendants focus their motion for summary judgment on their affirmative defenses, I do not *sua sponte* consider the merits of Dawkins' claims. However, I note that, "an ordinary traffic stop constitutes a limited seizure within the meaning of the Fourth and Fourteenth Amendments." *U.S. v. Scopo,* 19 F.3d 777, 781 (2d Cir. 1994) (quoting *U.S. v. Hassan El,* 5 F.3d 726, 729 (4th Cir.1993). Accordingly, Trooper Irwin's stop of Dawkins, "must be justified by probable cause or a reasonable suspicion, based on specific and articulable facts, of unlawful conduct." Id. (citations omitted). Probable cause exist when the police reasonably believe that "an offense has been or is being committed." Id. (citing *United States v. Cruz,* 834 F.2d 47, 50 (2d Cir.1987), *cert. denied,* 484 U.S. 1077 (1988). "When an officer observes a traffic offense--however minor--he has probable cause to stop the driver of the vehicle." Id. at 782 (quoting *United States v. Cummins,* 920 F.2d 498, 500 (8th Cir.1990)).

7 In order to prevail on a qualified immunity defense, the defendant must show either (1) "it was not clear at the time of the official acts that the interest asserted by the plaintiff was protected by a federal statute or the Constitution"; (2) "it was not clear at the time of the acts at issue that an exception did not permit those acts"; or (3) "it was objectively reasonable for [Trooper Irwin] to believe that his acts did not violate [Dawkins'] rights. *Robison,* 821 F.2d at 920-21.

**All Citations**

Not Reported in F.Supp., 1996 WL 156764

**End of Document**

© 2026 Thomson Reuters. No claim to original U.S. Government Works.

2022 WL 17669428
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Robin A. MOORE, Jr., Plaintiff,
v.
Regina A. RINALDI, State of New York, Defendants.

6:22-CV-1125 (TJM/TWD)
|
Signed December 13, 2022

**Attorneys and Law Firms**

ROBIN A. MOORE, JR., Plaintiff, pro se, 4411, Oneida County Correctional Facility, 6075 Judd Road, Oriskany, NY 13424.

**REPORT-RECOMMENDATION AND ORDER**

THÉRÈSE WILEY DANCKS, United States Magistrate Judge

***1** The Clerk has sent the Court a civil rights complaint filed by Robin A. Moore, Jr. ("Plaintiff") pursuant to 42 U.S.C. § 1983. (Dkt. Nos. 1, 1-1. [1] ) Plaintiff has also filed a motion to proceed *in forma pauperis* ("IFP"). (Dkt. No. 4.) For the following reasons, the Court grants Plaintiff's IFP application for purposes of initial review and recommends dismissal of the Complaint in its entirety and without leave to amend.

1 Plaintiff filed two complaints, which the Court considers together. (Dkt. Nos. 1, 1-1).

## I. IFP APPLICATION

Plaintiff has not paid the filing fee for this action and seeks leave to proceed IFP. (Dkt. Nos. 4, 5.) After reviewing Plaintiff's application, this Court finds he is financially eligible for IFP status. Therefore, Plaintiff's IFP application is granted for purposes of initial review.

## II. BACKGROUND

Plaintiff initiated this action against Regina A. Rinaldi, a State Administrative Law Judge, and the State of New York (collectively, "Defendants") on October 31, 2022. (Dkt. Nos. 1, 1-1.) Plaintiff alleges that on July 29, 2022, while at his final parole hearing, Judge Rinaldi "failed to uphold her duty" by denying Plaintiff new counsel after hearing Plaintiff's attorney, Mr. Rettinger, [2] make certain comments to Plaintiff, including telling Plaintiff to shut up; saying Plaintiff sounded like "Johnny Cohern" [3] raised from the dead; saying Plaintiff sounded like someone who takes psychiatric medication; and saying Plaintiff sounded like a psychiatric patient. (Dkt. No. 1 at 3; Dkt. No. 1-1 at 4.) Plaintiff claims that due to all this "negligent" behavior and the "racist slur[ ]", he has suffered "great" mental anguish which is affecting his PTSD, anxiety, and depression and which requires him to see his doctor more. *Id.*

2 Plaintiff's claims against Mr. Rettinger are the subject of another action filed in this District. *See Moore v. Reittinger*, et al. No. 6:22-cv-1083 (LEK/ATB), ECF Dkt. No. 6 (recommending dismissing of the complaint in its entirety with prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim).

 © 2026 Thomson Reuters. No claim to original U.S. Government Works. 

3 It is unclear who Plaintiff is referring to in the complaint. Given the context, the intended reference may be to noted criminal defense attorney Johnnie Cochran.

Plaintiff asserts multiple causes of action against Judge Rinaldi and the State of New York: (1) Judge Rinaldi did not say anything when Mr. Rettinger told Plaintiff to shut up; (2) did not correct Mr. Rettinger for telling him to shut up and that he sounded like a psych patient; (3) failed to do her duty to rule "on such matters as see [sic] properly fit"; (4) violated his First Amendment rights; (5) violated his "free exercise of legal argument"; and (6) violated ethics and code of professional conduct. (Dkt. No. 1 at 3; Dkt. No. 1-1 at 4-5.) Plaintiff requests the termination of Judge Rinaldi and $2.5 million in damages. (Dkt. No. 1 at 4; Dkt. No. 1-1 at 5.)

## III. SUFFICIENCY OF THE COMPLAINT

### A. Legal Standard

This Court must conduct an initial review of complaints filed IFP, and "complaints in which a prisoner[4] seeks redress from a governmental entity or officer or employee of a governmental entity." 28 U.S.C. § 1915(e)(2)(B) (governing complaints filed IFP); 28 U.S.C. § 1915A (governing complaints filed by prisoners against the government). When reviewing these types of complaints, this Court must "identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint ... is frivolous, malicious, or fails to state a claim upon which relief may be granted; or ... seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A; 28 U.S.C. § 1915(e)(2)(B); *see also Allen v. Stringer*, No. 20-3953, 2021 WL 4472667, at *1 (2d Cir. Sept. 30, 2021) (applying Section 1915(e)(2)(B)); *Carr v. Dvorin*, 171 F.3d 115, 116 (2d Cir. 1999)) (applying Section 1915A).

4 Plaintiff is a "prisoner" as that term is used in 28 U.S.C. § 1915A(a). (*See* Dkt. No. 5; *see also* 28 U.S.C. § 1915A(c) (defining "prisoner" as "any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program.").)

***2** This Court must exercise caution when determining whether to *sua sponte* dismiss a *pro se* complaint on the grounds that it is frivolous. *See Thomas v. Scully*, 943 F.2d 259, 260 (2d Cir. 1991); *Anderson v. Coughlin*, 700 F.2d 37, 41 (2d Cir. 1983). "An action is frivolous when either: (1) the factual contentions are clearly baseless such as when the claims are the product of delusion or fantasy; or (2) the claim is based on an indisputably meritless legal theory." *Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998) (internal citations and quotations omitted). "A claim is based on an indisputably meritless legal theory when either the claim lacks an arguable basis in law, or a dispositive defense clearly exists on the face of the complaint." *Id.*

When undertaking this initial review, the Court must construe *pro se* pleadings with the utmost leniency. *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972) (holding that a *pro se* litigant's complaint is to be held "to less stringent standards than formal pleadings drafted by lawyers"); *see also Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008). To survive dismissal for failure to state a claim, a complaint must contain a short and plain statement of the claim showing that the pleader is entitled to relief. Fed. R. Civ. P. 8(a)(2). This short and plain statement of the claim must be "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The statement of the claim must do more than present "an unadorned, the-defendant-harmed-me accusation." *Id.* It must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555; *see also* Fed. R. Civ. P. 8(a)(2).

In determining whether a complaint states a claim upon which relief may be granted, "the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor." *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir. 1994) (citation omitted). "[T]he tenet that a court must accept as true all of the allegations contained in a

complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

**B. Discussion**

Plaintiff purports to bring this action pursuant to 42 U.S.C. 1983. (Dkt. Nos. 1, 1-1.) To state a claim under Section 1983, a plaintiff must " 'allege that (1) the challenged conduct was attributable at least in part to a person who was acting under color of state law and (2) the conduct deprived the plaintiff of a right guaranteed under the Constitution of the United States.' " *Rae v. Cty. of Suffolk*, 693 F. Supp. 2d 217, 223 (E.D.N.Y. 2010) (quoting *Snider v. Dylag*, 188 F. 3d 51, 53 (2d Cir. 1999)).

**1. Claims Against Defendant Judge Rinaldi**

It is well-settled judges are absolutely immune from suit for damages for judicial acts performed in their judicial capacities. *Mireles*, 502 U.S. at 11. Generally, "acts arising out of, or related to, individual cases before the judge are considered judicial in nature." *Bliven v. Hunt*, 579 F.3d 204, 210 (2d Cir. 2009). Absolute immunity protects judges for their judicial acts, even when such acts "are alleged to have been done maliciously or corruptly." *Stump v. Sparkman*, 435 U.S. 349, 356 (1978). This is because "[w]ithout insulation from liability, judges would be subject to harassment and intimidation[.]" *Young v. Selsky*, 41 F.3d 47, 51 (2d Cir. 1994). This is true however erroneous an act may have been and however injurious its consequences were to the plaintiff. *Id.*

***3** Although the allegations in the Complaint do not clarify the context of Plaintiff's claims, Plaintiff appears to complain of Judge Rinaldi's conduct while performing her duties as a State Administrative Law Judge. (*See generally* Dkt. Nos. 1, 1-1.) Claims against judges are barred by the doctrine of judicial immunity. *See Mireles v. Waco*, 502 U.S. 9, 11 (1991). Here, Plaintiff claims Judge Rinaldi failed to act, thus violating his rights, during his final parole hearing. (Dkt. No. 1 at 3; Dkt. No. 1-1 at 4-5.) Plaintiff's allegations against Judge Rinaldi clearly relate to actions that are judicial in nature and, therefore, she is entitled to judicial immunity. *See, e.g.*, *Hardy-Graham v. Southampton Just. Ct.*, No. 20-CV-0981(JS) (SIL), 2021 WL 260102, at *5 (E.D.N.Y. Jan. 25, 2021) (dismissing claims against a New York State court judge on initial review because of judicial immunity); *United States v. Bommer*, No. 1:19-CV-00823 EAW, 2020 WL 1963159, at *4 (W.D.N.Y. Apr. 21, 2020) (same). Thus, Plaintiff's Section 1983 claims against Judge Rinaldi fail as a matter of law.

Consequently, the Court recommends that all claims against Judge Rinaldi be dismissed with prejudice as Plaintiff seeks relief from a defendant immune from suit under Section 1983.

**2. Claims Against Defendant State of New York**

The Eleventh Amendment has long been construed as barring a citizen from bringing a suit against his or her own state in federal court, under the fundamental principle of "sovereign immunity." U.S. Const. amend. XI ("The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."); *see also Idaho v. Coeur d'Alene Tribe of Idaho,* 521 U.S. 261, 267 (1997); *Pennhurst State Sch. & Hosp. v. Halderman,* 465 U.S. 89, 100 (1984); *Hans v. Louisiana*, 134 U.S. 1, 10-21 (1890). Eleventh Amendment immunity is lost only if Congress unequivocally abrogates states' immunity or a state expressly consents to suit. *Gollomp v. Spitzer*, 568 F.3d 355, 365-66 (2d Cir. 2009). It is well-settled that Congress did not abrogate states' immunity through Section 1983, *see Quern v. Jordan*, 440 U.S. 332, 343-45 (1979), and New York State has not waived its immunity from suit on the type of claims asserted in the Complaint. *See generally Trotman v. Palisades Interstate Park Comm'n*, 557 F.2d 35, 38-40 (2d Cir. 1977); *see also Dawkins v. State of New York*, No. 93-CV-1298 (RSP/GJD), 1996 WL 156764 at *2 (N.D.N.Y. Mar. 28, 1996).

Accordingly, the Court recommends that all claims against the State of New York should be dismissed with prejudice as Plaintiff seeks relief from a defendant immune from suit under Section 1983. *See LeGrand v. Evan*, 702 F.2d 415, 417 (2d Cir. 1983); *see also Dicks v. Binding Together, Inc.*, No. 03 CIV 7411, 2007 WL 1462217, at *5 (S.D.N.Y. May 18, 2007) (dismissing the plaintiff's claims for prospective injunctive relief against the State of New York as barred by the Eleventh Amendment) *aff'd in part sub nom. Dicks v. Chow*, 382 Fed. App'x 28 (2d Cir. 2010); *see also deBroize v. New York State*, No. 99-CV-0904 (NAM), 2001 WL 1217192, at *3 (N.D.N.Y. Sept. 21, 2001) (dismissing ADA claims against State of New York).

### C. Opportunity to Amend

Generally, a court should not dismiss claims contained in a complaint filed by a *pro se* litigant without granting leave to amend at least once "when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Branum v. Clark*, 927 F.2d 698, 704-05 (2d Cir. 1991); *see also* Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave when justice so requires."). An opportunity to amend is not required, however, where "the problem with [the plaintiff's] causes of action is substantive" such that "better pleading will not cure it." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000); *see also Cortec Indus. Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) ("Of course, where a plaintiff is unable to allege any fact sufficient to support its claim, a complaint should be dismissed with prejudice."). Stated differently, "[w]here it appears that granting leave to amend is unlikely to be productive, ... it is not an abuse of discretion to deny leave to amend." *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993).

***4** Here, better pleading could not cure the deficiencies described above. Therefore, the Court recommends dismissal without leave to amend.

**ACCORDINGLY**, it is hereby

**ORDERED** that Plaintiff's IFP application (Dkt. No. 4) is **GRANTED** only for purposes of filing and any appeal unless the trial court certifies in writing that the appeal is not taken in good faith per 28 U.S.C. § 1915(a)(3); and it is further

**RECOMMENDED** that Plaintiff's Complaint (Dkt. Nos. 1, 1-1) be **DISMISSED IN ITS ENTIRETY WITHOUT LEAVE TO AMEND** pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b); and it is further

**ORDERED** that the Clerk provide Plaintiff with a copy of this Order and Report-Recommendation, along with copies of the unpublished decisions cited herein in accordance with *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report.[5] Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**. *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1) (Supp. 2013); Fed. R. Civ. P. 72, 6(a).

5 If you are proceeding *pro se* and are served with this Order and Report-Recommendation by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the Order and Report-Recommendation was mailed to you to serve and file objections. Fed. R. Civ. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. Fed. R. Civ. 6(a)(1)(C).

**IT IS SO ORDERED.**

**All Citations**

Not Reported in Fed. Supp., 2022 WL 17669428

**End of Document** © 2026 Thomson Reuters. No claim to original U.S. Government Works.

2023 WL 2726508
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Robin A. MOORE, Jr., Plaintiff,
v.
Regina A. RINALDI, State of New York, Defendants.

6:22-CV-1125
|
Signed March 31, 2023

**Attorneys and Law Firms**

Robin A. Moore, Jr., Sonyea, NY, Pro Se.

**DECISION and ORDER**

THOMAS J. McAVOY, Senior United States District Judge

## I. INTRODUCTION

***1** This *pro se* action was referred to the Hon. Thérèse Wiley Dancks, United States Magistrate Judge, to review Plaintiff's *in forma pauperis* ("IFP") application and for an initial review of his complaint pursuant to 28 U.S.C. § 1915(e). Judge Dancks granted Plaintiff's IFP application for purposes of initial review, and recommends that the claims in the Complaint (Dkt. Nos. 1, 1-1) be dismissed and that Plaintiff be denied an opportunity to amend. *See* Report-Recommendation and Order, Dkt. No. 7. Plaintiff filed an objection to Judge Dancks' recommendations. Dkt. No. 10.

## II. STANDARD OF REVIEW

When objections to a magistrate judge's report and recommendation are lodged, the district court makes a "*de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." *See* 28 U.S.C. § 636(b)(1); *see also United States v. Male Juvenile*, 121 F.3d 34, 38 (2d Cir. 1997) (The Court must make a *de novo* determination to the extent that a party makes specific objections to a magistrate's findings.). "[E]ven a *pro se* party's objections to a Report and Recommendation must be specific and clearly aimed at particular findings in the magistrate's proposal, such that no party be allowed a second bite at the apple by simply relitigating a prior argument." *DiPilato v. 7-Eleven, Inc.*, 662 F. Supp.2d 333, 340 (S.D.N.Y. 2009)(interior quotation marks and citations omitted). General or conclusory objections, or objections which merely recite the same arguments presented to the magistrate judge, are reviewed for clear error. *Farid v. Bouey*, 554 F. Supp. 2d 301, 306 n. 2 (N.D.N.Y. 2008). "A decision is 'clearly erroneous' when the Court is, 'upon review of the entire record, [ ] left with the definite and firm conviction that a mistake has been committed.' " *DiPilato*, 662 F. Supp. 2d at 339–40 (quoting *United States v. Snow*, 462 F.3d 55, 72 (2d Cir. 2006)). After reviewing the report and recommendation, the Court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions." 28 U.S.C. § 636(b).

## III. DISCUSSION

As Judge Dancks explained, Plaintiff initiated this action against Regina A. Rinaldi, a State Administrative Law Judge, and the State of New York (collectively, "Defendants") on October 31, 2022. (Dkt. Nos. 1, 1-1.) Plaintiff alleges that on July 29, 2022, while at his final parole hearing, Judge Rinaldi "failed to uphold her duty" by denying Plaintiff new counsel after hearing Plaintiff's attorney, Mr. Rettinger, make certain comments to Plaintiff, including telling Plaintiff to shut up; saying Plaintiff

sounded like "Johnny Cohern" [1] raised from the dead; saying Plaintiff sounded like someone who takes psychiatric medication; and saying Plaintiff sounded like a psychiatric patient. (Dkt. No. 1 at 3; Dkt. No. 1-1 at 4.) Plaintiff claims that due to all this "negligent" behavior and the "racist slur[ ]", he has suffered "great" mental anguish which is affecting his PTSD, anxiety, and depression and which requires him to see his doctor more. *Id.*

1 As Judge Dancks stated, it is unclear who Plaintiff is referring to in the complaint. Given the context, the intended reference may be to noted criminal defense attorney Johnnie Cochran. Dkt. No. 7, at 2, fn. 3.

***2** Plaintiff asserts multiple causes of action against Judge Rinaldi and the State of New York: (1) Judge Rinaldi did not say anything when Mr. Rettinger told Plaintiff to shut up; (2) did not correct Mr. Rettinger for telling him to shut up and that he sounded like a psych patient; (3) failed to do her duty to rule "on such matters as see [sic] properly fit"; (4) violated his First Amendment rights; (5) violated his "free exercise of legal argument"; and (6) violated ethics and code of professional conduct. (Dkt. No. 1 at 3; Dkt. No. 1-1 at 4-5.) Plaintiff requests the termination of Judge Rinaldi and $2.5 million in damages. (Dkt. No. 1 at 4; Dkt. No. 1-1 at 5.)

Judge Dancks recommends that all claims against Judge Rinaldi be dismissed as barred by absolute judicial immunity, *see* Dkt. No. 7 at 5-6, that all claims against the State of New York be dismissed as barred by the Eleventh Amendment, *see id.* at 6-7, and that Plaintiff be denied the opportunity to amend because better pleading could not cure the deficiencies described by Judge Dancks. *Id.* at 7. Plaintiff merely states that he "object[s]" to Judge Dancks' recommendations, and requests "a virtual hearing due to the lack of knowledge and ... is asking the Courts [sic] to appoint [him] a lawyer to further assist [him]." Dkt. 10.

Plaintiff lodges a general objection that requires only clear error review. After conducting this review, the Court finds no clear error underlying Judge Dancks' recommendations. Further, when conducting a *de novo* review of Judge Dancks' recommendations, the Court adopts those recommendations for the reasons stated in the Report-Recommendation and Order.

## IV. CONCLUSION

The Court **ACCEPTS and ADOPTS** Judge Dancks' Report-Recommendation and Order (Dkt. No. 10) in its entirety for the reasons stated therein. Accordingly, it is hereby

**ORDERED** that Plaintiff's Complaint (Dkt. Nos. 1, 1-1) is **DISMISSED IN ITS ENTIRETY WITHOUT LEAVE TO AMEND** pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b); and it is further

**ORDERED** that Plaintiff's application for a "virtual hearing" and the appointment of counsel is **DENIED AS MOOT.**

The Clerk of the Court may close the file in this matter.

**IT IS SO ORDERED.**

**All Citations**

Not Reported in Fed. Supp., 2023 WL 2726508

**End of Document**

© 2026 Thomson Reuters. No claim to original U.S. Government Works.

2016 WL 5874991
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Rudolph W. GRIFFIN, Plaintiff,
v.
Martin E. SMITH, Gerald F. Mollen, and Robin E. Engler, Defendants.

Civil Action No. 3:16-CV-00519 (LEK/DEP)
|
Signed 06/16/2016

**Attorneys and Law Firms**

Rudolph W. Griffin, Pro se, 05-B-3221, Sing Sing Correctional Facility, 354 Hunter Street, Ossining, NY 10562, FOR PLAINTIFF.

REPORT, RECOMMENDATION, and ORDER

DAVID E. PEEBLES, U.S. CHIEF MAGISTRATE JUDGE

***1** Presently before the court are a civil rights complaint and accompanying *in forma pauperis* ("IFP") application submitted for filing by *pro se* plaintiff Rudolph W. Griffin ("Plaintiff"), a New York State prison inmate. Dkt. Nos. 1 and 5. In his complaint, plaintiff asserts claims pursuant to 42 U.S.C. § 1983 against a retired judge, a former county district attorney, and an assistant district attorney arising out of the criminal conviction that led to his present incarceration. Having reviewed plaintiff's complaint, I conclude that the defendants are entitled to absolute immunity from suit, based upon the nature of the claims made against them, and further that pursuit of the claims in this action are precluded under *Heck v. Humphrey*, 512 U.S. 477 (1994). Accordingly, plaintiff's motion to proceed *in forma pauperis* is granted, and I recommend that plaintiff's complaint be dismissed, without leave to replead.

I. BACKGROUND [1]

1 The following recitation is derived from plaintiff's complaint, the contents of which have been accepted as true for purposes of the court's review. *See Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974) ("In considering Rule 12 motions to dismiss, the Court must accept the facts appearing on the face of the complaint as true, and consider them along with such reasonable inferences as may be drawn in a complainant's favor.").

Plaintiff is a New York State prison inmate currently confined within the Sing Sing Correctional Facility, located in Ossining, New York. *See* Complaint (Dkt. No. 1) at 1. In his complaint, plaintiff alleges he was wrongfully convicted and that the defendants, retired Broome County Supreme Court Judge Martin E. Smith, former Broome County District Attorney Gerald F. Mollen, and Broome County Assistant District Attorney Robin Engler (1) conspired to permit the introduction of false testimony and inadmissible evidence at trial, (2) made material misrepresentations regarding the nature of a plea agreement reached with a witness, and (3) failed to disclose (or allow the introduction of in the case of defendant Smith) potentially exculpatory evidence to him. *Id.* at 1-7. In his complaint, plaintiff appears to assert claims of malicious prosecution, false imprisonment, and fraud against the defendants, and seeks recovery of actual and punitive damages totaling fifteen million dollars.

II. DISCUSSION

A. Plaintiff's IFP Application

After carefully reviewing plaintiff's motion to proceed *in forma pauperis*, and the accompanying inmate authorization form and certified copy of plaintiff's trust fund account statement (Dkt. Nos. 2 and 3), the court finds that plaintiff has sufficiently shown cause for an order permitting him to proceed with this matter without payment of the filing fee. Accordingly, plaintiff's motion to proceed *in forma pauperis* is granted.

B. Sufficiency of Plaintiff's Claims

1. Standard of Review

Because the court has granted plaintiff's motion to proceed *in forma pauperis*, I must now review the sufficiency of the allegations set forth in the complaint in light of 28 U.S.C. § 1915(e)(2)(B). Section 1915(e)(2)(B) directs that when a plaintiff seeks to proceed *in forma pauperis*, the Court:

> ***2** (2) [S]hall dismiss the case at any time if the court determines that – * * *
>
> (B) the action ... (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief.

28 U.S.C. § 1915(e)(2)(B). Thus, it is the court's responsibility to determine that a complaint may properly be maintained before permitting a plaintiff to proceed with an action *in forma pauperis.*

In deciding whether a complaint states a colorable claim, a court must extend a certain measure of deference toward *pro se* litigants, *Nance v. Kelly*, 912 F.2d 605, 606 (2d Cir. 1990) (per curiam), and extreme caution should be exercised in ordering *sua sponte* dismissal of a *pro se* complaint before the adverse party has been served and the parties have had an opportunity to respond, *Anderson v. Coughlin*, 700 F.2d 37, 41 (2d Cir. 1983). There is, nonetheless, an obligation on the part of the court to determine that a claim is not frivolous before permitting a plaintiff to proceed.[2] *See Fitzgerald v. First East Seventh St. Tenants Corp.*, 221 F.3d 362, 363 (2d Cir. 2000) (District Court may dismiss frivolous complaint *sua sponte* notwithstanding fact the plaintiff has paid statutory filing fee); *Wachtler v. County of Herkimer*, 35 F.3d 77, 82 (2d Cir. 1994) (District Court has power to dismiss case *sua sponte* for failure to state a claim).

2 "Legal frivolity ... occurs where 'the claim is based on an indisputably meritless legal theory [such as] when either the claim lacks an arguable basis in law, or a dispositive defense clearly exists on the face of the complaint.' " *Aguilar v. United States*, Nos. 3:99-MC-304, 3:99-MC-408, 1999 WL 1067841, at *2 (D. Conn. Nov. 8, 1999) (Burns J.) (quoting *Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998)); *see also Neitzke v. Williams*, 490 U.S. 319, 325, 109 S. Ct. 1827, 1831 (1989) and *Pino v. Ryan*, 49 F.3d. 51, 53 (2d Cir. 1995) ("[T]he decision that a complaint is based on an indisputably meritless legal theory, for the purposes of dismissal under section 1915(d) [amended subsection e], may be based upon a defense that appears on the face of the complaint.").

When reviewing a complaint under section 1915(e), the court may also look to the Federal Rules of Civil Procedure. Rule 8 of the Federal Rules of Civil Procedure provides that a pleading that sets forth a claim for relief shall contain "a short and plain statement of the claim showing that the pleader is entitled to relief [.]" Fed. R. Civ. P. 8(a)(2). The purpose of Rule 8 " 'is to give fair notice of the claim being asserted so as to permit the adverse party the opportunity to file a responsive answer [and] prepare an adequate defense.' " *Hudson v. Artuz*, No. 95 CIV. 4768, 1998 WL 832708, *1 (S.D.N.Y. Nov. 30, 1998) (quoting *Powell v. Marine Midland Bank*, 162 F.R.D. 15, 16 (N.D.N.Y. 1995) (quoting *Brown v. Califano*, 75 F.R.D. 497, 498 (D.D.C. 1977))) (other citation omitted).

A court should not dismiss a complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (citation omitted). Although the court should construe the factual allegations in the light most favorable to the plaintiff, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555, 127 S. Ct.1955). Thus, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]'-'that the pleader is entitled to relief.' " *Id.* at 1950 (quoting Fed. R. Civ. P. 8(a)(2)).

2. *Heck v. Humphrey*

***3** Plaintiff brings this action pursuant to 42 U.S.C. § 1983, which establishes a cause of action for " 'the deprivation of any rights, privileges, or immunities secured by the Constitution and laws' of the United States." *German v. Fed. Home Loan Mortg. Corp.*, 885 F. Supp. 537, 573 (S.D.N.Y. 1995) (citing *Wilder v. Virginia Hosp. Ass'n*, 496 U.S. 498, 508 (1990) (quoting 42 U.S.C. § 1983)) (footnote omitted); *see also Myers v. Wollowitz*, No. 95-CV-0272, 1995 WL 236245, *2 (N.D.N.Y. Apr. 10, 1995) (stating that "§ 1983 is the vehicle by which individuals may seek redress for alleged violations of their constitutional rights." (citation omitted)). "Section 1983 itself creates no substantive rights, [but] ... only a procedure for redress for the deprivation of rights established elsewhere." *Sykes v. James,* 13 F.3d 515, 519 (2d Cir. 1993) (citation omitted).

Plaintiff's claims appear to be directed to constitutional violations alleged to have occurred in connection with his criminal conviction. In *Heck v. Humphrey*, 512 U.S. 477 (1994), the Supreme Court held that

> in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254.

*Id.* at 486-87, 114 S. Ct. 2372; *see also, Estes v Doe*, No. 97 Civ. 8133, 1999 WL 983886, at *3 (S.D.N.Y. Oct. 29, 1999) (quoting *Heck*). The rule in *Heck* and its progeny applies to claims brought under section 1983 alleging malicious prosecution, and requires that before such claim may be properly raised following a conviction, the plaintiff must show that the conviction has been invalidated. *Estes,* 1999 WL 983886, at *3 (citations omitted). Because there is no indication in plaintiff's complaint that he has successfully overturned his conviction, either on appeal or through collateral challenge, and the court assumes otherwise based upon the fact of his incarceration, his claims in this action are precluded.

3. Absolute Immunity

Plaintiff's claims in this action are asserted against Martin E. Smith, a retired Broome County Court Judge, Gerald Mollen, the former Broome County District Attorney, and Robin Engler, an Assistant District Attorney. *See* Dkt. No. 1, ¶¶ 4-7. By virtue of their positions, and the fact that plaintiff's claims arise out of the performance of their official duties, defendants are entitled to dismissal of plaintiff's claims against them, even if plaintiff is not precluded by *Heck* from pursuing the claims in this action, on the independent ground of absolute immunity.

 © 2026 Thomson Reuters. No claim to original U.S. Government Works. 

It is well-established that "[j]udges enjoy absolute immunity from personal liability for 'acts committed within their judicial jurisdiction.' " *Young v. Selsky*, 41 F.3d 47, 51 (2d Cir. 1994), *cert. denied,* 514 U.S. 1102 (1995) (quoting *Pierson v. Ray*, 386 U.S. 547, 554 (1967)); *see also Mireles v. Waco*, 502 U.S. 9, 10 (1991). "The absolute immunity of a judge applies however erroneous the act may have been, and however injurious in its consequences it may have proved to the plaintiff." *Young*, 41 F.3d at 51. (citation and internal quotations omitted).

It is equally well-established that prosecutors are absolutely immune from liability in matters involving the pursuit of criminal charges against individuals during the judicial phase of the criminal process. *See Dory v. Ryan*, 25 F.3d 81, 83 (2d Cir. 1994) (prosecutorial immunity covers virtually all acts, regardless of motivation, associated with the prosecutor's function, including conspiracies to present false evidence); *Bernard v. County of Suffolk*, 3566 F.3d 495, 505 (2d Cir. 2004) (holding that, regardless of prosecutors' motives, "absolute immunity shields them from suit pursuant to § 1983 for their alleged malicious or selective prosecution of plaintiffs, as well as for any misconduct in the presentation of evidence to grand juries"); *Hill v. City of New York*, 45 F.3d 653, 660-61 (2d Cir. 1995).

***4** Applying these well-established principles, it is clear that plaintiff's claims against defendants are subject to dismissal. The claims against them stem from the criminal trial of the plaintiff, during which it is alleged that defendants participated in the presentation of false testimony and inadmissible evidence, made material misrepresentations regarding the nature of a plea agreement reached with a witness, and failed to disclose (or allow the introduction of in the case of defendant Smith) potentially exculpatory evidence to him. Dkt. No. 1, at 1-7. Since these acts were conducted during the course of defendant Smith's professional duties and while defendants Mollen and Engler were acting as prosecutors during the judicial phase of the criminal process against plaintiff, defendants are protected from suit by absolute immunity. *Castiglione v. Papa,* 09-CV-0967, 2010 U.S. Dist. LEXIS 51277, 2010 WL 2044688, at *11 (N.D.N.Y. 2010) (Kahn, J.); *Sims v. Sue Nichols*, 12-CV-0205, 2012 U.S. Dist. LEXIS 188568, *24-*25 (N.D.N.Y. May 18, 2012), report and recommendation adopted, 2013 U.S. Dist. LEXIS 88242, 2013 WL 3207129 (N.D.N.Y. June 24, 2013); *Combier v. State of New York,* No. 09 Civ. 5314(RJH)(FM), 2010 U.S. Dist. LEXIS 108305, 2010 WL 3785130, at *9 (S.D.N.Y. Aug. 25, 2010), report and recommendation adopted, 2010 U.S. Dist. LEXIS 103251, 2010 WL 3835030 (S.D.N.Y. Oct. 01, 2010); *Dory*, 25 F.3d at 83; *Dove v. Smith*, 13-CV-1315, 2013 U.S. Dist. LEXIS 178220, 2013 WL 6795614, *3 (N.D.N.Y. Dec. 19, 2013), report and recommendation adopted by 2014 U.S. Dist. LEXIS 4442, 2014 WL 132270 (N.D.N.Y. Jan. 14, 2014).

C. Whether to Permit Amendment

Ordinarily, a court should not dismiss a complaint filed by a *pro se* litigant without granting leave to amend at least once if there is any indication that a valid claim might be stated. *Branum v. Clark*, 927 F.2d 698, 704-05 (2d Cir. 1991); *see also* Fed. R. Civ. P. 15(a) (leave to amend "shall be freely given when justice so requires"); *see also Mathon v. Marine Midland Bank, N.A.*, 875 F.Supp. 986, 1003 (E.D.N.Y. 1995) (leave to replead granted where court could not say that under no circumstances would proposed claims provide a basis for relief). However, an opportunity to amend is not required where "the problem with [plaintiff's] causes of action is substantive" such that "[b]etter pleading will not cure it." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (finding that repleading would be futile) (citation omitted); *see also Cortec Indus. Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) ("Of course, where a plaintiff is unable to allege any fact sufficient to support its claim, a complaint should be dismissed with prejudice.") (affirming, in part, dismissal of claim with prejudice) (citation omitted); *cf. Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 796 (2d Cir. 1999) (granting leave to amend is appropriate "unless the court can rule out any possibility, however unlikely it might be, that an amended complaint would succeed in stating a claim."). Stated differently, "[w]here it appears that granting leave to amend is unlikely to be productive, ... it is not an abuse of discretion to deny leave to amend." *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993) (citations omitted); *accord, Brown v. Peters*, 95-CV-1641, 1997 WL 599355, at *1 (N.D.N.Y. Sept. 22, 1997) (Pooler, J.) ("[T]he court need not grant leave to amend where it appears that amendment would prove to be unproductive or futile.") (citation omitted), *aff'd*, 175 F.3d 1007 (2d Cir. 1999).

In this instance the deficiencies discerned, as set forth above, are substantive in nature and extend beyond the mere sufficiency of plaintiff's complaint. Accordingly, I conclude that any amendment that could be offered by the plaintiff would be futile, and therefore recommend against granting him leave to amend.

III. SUMMARY AND RECOMMENDATION

Plaintiff's claims in this action, brought against the judge who presided over his criminal trial and the attorneys who prosecuted the case against him, are precluded both under *Heck v. Humphrey*, based upon his apparent failure to invalidate his conviction before commencing suit, and additionally because the defendants are protected from suit by absolute immunity. It is therefore hereby

***5** ORDERED, that plaintiff's *in forma pauperis* application (Dkt. No. 5), is GRANTED; and it is further hereby respectfully

RECOMMENDED, that plaintiff's claims against defendants Martin E. Smith, Gerald F. Mollen, and Robin Engler be DISMISSED, without leave to replead, pursuant to 28 U.S.C. § 1915(e)(B)(iii) and 28 U.S.C. § 1915A(b)(2), and that the clerk be directed to enter judgment and close the action; and it is further

ORDERED, that the clerk of the court serve a copy of this report and recommendation on plaintiff, by regular mail; and it is further hereby

RECOMMENDED that the court certify, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from the court's decision and order adopting this recommendation would not be taken in good faith, and therefore *in forma pauperis* status be DENIED for purposes of any appeal. *See Coppedge v. United States*, 369 U.S. 438, 444-45 (1962).

NOTICE: Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report. Such objections must be filed with the clerk of the court within FOURTEEN days of service of this report. FAILURE TO SO OBJECT TO THIS REPORT WILL PRECLUDE APPELLATE REVIEW. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72; *Roldan v. Racette,* 984 F.2d 85 (2d Cir. 1993).

Dated: June 16, 2016.

**All Citations**

Not Reported in Fed. Supp., 2016 WL 5874991

**End of Document** © 2026 Thomson Reuters. No claim to original U.S. Government Works.

2016 WL 5875017
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Rudolph W. GRIFFIN, Plaintiff,
v.
Martin E. SMITH, et al., Defendants.

3:16-CV-00519 (LEK/DEP)
|
Signed 10/07/2016

**Attorneys and Law Firms**

Rudolph W. Griffin, Ossining, NY, pro se.

**DECISION AND ORDER**

Lawrence E. Kahn, U.S. District Judge

## I. INTRODUCTION

***1** This matter comes before the Court following a Report-Recommendation filed on June 16, 2016, by the Honorable David E. Peebles, U.S. Magistrate Judge, pursuant to 28 U.S.C. § 636(b) and Local Rule 72.3. Dkt. No. 7 ("Report-Recommendation"). Pro se Plaintiff Rudolph W. Griffin timely filed Objections. Dkt. No. 9 ("Objections").

## II. LEGAL STANDARD

Within fourteen days after a party has been served with a copy of a magistrate judge's report-recommendation, the party "may serve and file specific, written objections to the proposed findings and recommendations." Fed. R. Civ. P. 72(b); L.R. 72.1(c). If no objections are made, or if an objection is general, conclusory, perfunctory, or a mere reiteration of an argument made to the magistrate judge, a district court need review that aspect of a report-recommendation only for clear error. Barnes v. Prack, No. 11-CV-0857, 2013 WL 1121353, at *1 (N.D.N.Y. Mar. 18, 2013); Farid v. Bouey, 554 F. Supp. 2d 301, 306–07, 306 n.2 (N.D.N.Y. 2008); see also Machicote v. Ercole, No. 06-CV-13320, 2011 WL 3809920, at *2 (S.D.N.Y. Aug. 25, 2011) ("[E]ven a *pro se* party's objections to a Report and Recommendation must be specific and clearly aimed at particular findings in the magistrate's proposal, such that no party be allowed a second bite at the apple by simply relitigating a prior argument."). "A [district] judge ... may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b). Otherwise, a court "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." Id.

## III. DISCUSSION

Plaintiff's Objections fail to respond to the two bases upon which Judge Peebles recommended dismissal of the claims. The first ground of Judge Peebles's decision was Plaintiff's failure to follow the rule established by Heck v. Humphrey, 512 U.S. 477, 486–87 (1994), which held that a plaintiff asserting a § 1983 claim that challenges the constitutionality of her conviction "must prove that the conviction ... has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." Judge Peebles also relied on the absolute immunity afforded to prosecutors and judges. Rep.-Rec. at 8–11. Instead of addressing these issues, Plaintiff appears to rehash the allegations in his Complaint regarding the withholding of exculpatory evidence, the introduction of false and/or perjured testimony at trial, and misrepresentations about a plea agreement reached with a witness.

Dkt. No. 1 ("Complaint") at 4–8; Objs. at 1–2. Plaintiff also invokes the Eighth and Fourteenth Amendments and refers to the "Just Compensation doctrine," Objs. at 3, but these statements are not responsive to Judge Peebles's Report-Recommendation, and in any event they are conclusory, see Barnes, 2013 WL 1121353, at *1. Plaintiff quotes from Grooves v. Witherspoon, 379 F. Supp. 52, 60 (E.D. Tenn. 1974), which held that "fraud upon the Court, or fraud which induces an adversary to withdraw his defense or prevents him from presenting an available defense, is the type which equity will relieve." However, Plaintiff fails to show how this broad principle applies to this case, in which prosecutorial and judicial immunity provide Defendants with absolute protection from suit, Rep.-Rec. at 8–11, and which is barred in any event by Heck, id. at 7–8.

***2** Since Plaintiff fails to state any specific objections to the Report-Recommendation, the Court has reviewed the Report-Recommendation for clear error and has found none.

**IV. CONCLUSION**

Accordingly, it is hereby:

**ORDERED**, that the Report-Recommendation (Dkt. No. 7) is **APPROVED and ADOPTED in its entirety**; and it is further

**ORDERED**, that Plaintiff's claims against Defendants Martin E. Smith, Gerald F. Mollen, and Robin Engler be **DISMISSED without leave to replead** pursuant to 28 U.S.C. §§ 1915(e)(B)(iii) and 1915A(b)(2), and that the Clerk of the Court enter judgment and close this action; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Decision and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

DATED: October 07, 2016.

**All Citations**

Not Reported in Fed. Supp., 2016 WL 5875017

---

**End of Document** © 2026 Thomson Reuters. No claim to original U.S. Government Works.

2024 WL 1906594
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Ellis Davon DUDLEY, II, Plaintiff,
v.
Governor Kathy HOCHUL, of New York; New York State; Dr. James V. McDonald; Randal B. Caldwell; Megan Johnson; Christina F. Dejoseph; Sandra Milner; Jeffrey A. Domachowski; Karen Stanislaus; Arlene Bradshaw; Julie A. Cecile; Onondaga County Sheriff; Patricia L. DeRue; Sue Ottaviano; Julie A. Cerio; Katie Boyea; David M. Primo; Martha E. Mulroy; Michelle Pirro Baily; Unkown; Hiscock Legal Aid; and Dep't of Health and Soc. Servs., Defendants.

5:24-CV-0048 (DNH/ML)
|
Signed May 1, 2024

**Attorneys and Law Firms**

ELLIS DAVON DUDLEY, II, Plaintiff, Pro Se, Post Office Box 7124, Syracuse, New York 13261.

## ORDER and REPORT-RECOMMENDATION

MIROSLAV LOVRIC, United States Magistrate Judge

***1** The Clerk has sent this *pro se* Complaint (Dkt. No. 1) together with an application to proceed *in forma pauperis* ("IFP") (Dkt. No. 2) and a motion for permission to file electronically in ECF (Dkt. No. 3) filed by Ellis Davon Dudley, II ("Plaintiff") to the Court for review. For the reasons discussed below, I (1) grant Plaintiff's IFP application (Dkt. No. 2), (2) recommend that Plaintiff's Complaint (Dkt. No. 1) be dismissed in its entirety without leave to amend, and (3) deny without prejudice Plaintiff's motion for permission to file electronically (Dkt. No. 3).

### I. BACKGROUND

Liberally construed, [1] Plaintiff's Complaint asserts that his rights were violated by Defendants Governor Kathy Hochul, New York State, Dr. James V. McDonald, Randal B. Caldwell, Megan Johnson, Christina F. Dejoseph, Sandra Milner, Jeffrey A. Domachowski, Karen Stanislaus, Arlene Bradshaw, Julie A. Cecile, Onondaga County Sheriff, Patricia L. DeRue, Sue Ottaviano, Julie A. Cerio, Katie Boyea, David M. Primo, Martha E. Mulroy, Michelle Pirro Baily, Unknown, Hiscock Legal Aid, and Department of Health and Social Service (collectively "Defendants"), who were all involved in Plaintiff's state court family proceedings. (*See generally* Dkt. No. 1.)

1 The court must interpret *pro se* complaints to raise the strongest arguments they suggest. *Soto v. Walker*, 44 F.3d 169, 173 (2d Cir. 1995) (quoting *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994)).

The Complaint is difficult to decipher (*id.*), but alleges that Plaintiff has two minor children, whom Plaintiff refers to as "blue child" and "pink child" throughout the Complaint. (Dkt. No. 1 at 2.) The Complaint provides a timeline of Plaintiff's experiences with the New York State Family Court system dating back to July 9, 2019. (*Id.*) The crux of Plaintiff's grievance appears to be that (1) the court-ordered child support is excessive, (2) Plaintiff and his family have somehow "lost" their nationality because of the family court proceedings, and (3) Plaintiff's wages were garnished to pay his court-ordered child support and he did not consent to the seizure of his property. (*See generally* Dkt. No. 1.)

The Complaint appears to assert the following nine causes of action: (1) a claim of racketeering, (2) a claim that Plaintiff's rights pursuant to the First Amendment and 42 U.S.C. § 1983 were violated; (3) a claim that Plaintiff's rights pursuant to the Second Amendment and 42 U.S.C. § 1983 were violated; (4) a claim that Plaintiff's rights pursuant to the Fourth Amendment and 42 U.S.C. § 1983 were violated; (5) a claim that Plaintiff's rights pursuant to the Fifth Amendment and 42 U.S.C. § 1983 were violated; (6) a claim that Plaintiff's rights pursuant to the Sixth Amendment and 42 U.S.C. § 1983 were violated; (7) a claim that Plaintiff's rights pursuant to the Eighth Amendment and 42 U.S.C. § 1983 were violated; (8) a claim that Plaintiff's rights pursuant to the Thirteenth Amendment and 42 U.S.C. § 1983 were violated; and (9) a claim that Plaintiff's rights pursuant to the Fourteenth Amendment and 42 U.S.C. § 1983 were violated. (Dkt. No. 1 at 6.) As relief, Plaintiff seeks damages in the "amount of 20 million dollars or a full disclosure of all contract terms for a consideration to acceptance at the agreement of terms of competition. As well [as] an immediate stop to the organization tasks with damaging and seizure [of Plaintiff's] property." (*Id.*)

***2** Plaintiff also filed an application to proceed IFP. (Dkt. No. 2.)

## II. PLAINTIFF'S APPLICATION TO PROCEED *IN FORMA PAUPERIS*

When a civil action is commenced in a federal district court, the statutory filing fee, currently set at $405, must ordinarily be paid. 28 U.S.C. § 1914(a). A court is authorized, however, to permit a litigant to proceed IFP status if a party "is unable to pay" the standard fee for commencing an action. 28 U.S.C. § 1915(a)(1).[2] After reviewing Plaintiff's IFP application (Dkt. No. 2), the Court finds that Plaintiff meets this standard. Therefore, Plaintiff's application to proceed IFP is granted.[3] (*Id.*)

2 The language of that section is ambiguous because it suggests an intent to limit availability of IFP status to prison inmates. *See* 28 U.S.C. § 1915(a)(1) (authorizing the commencement of an action without prepayment of fees "by a person who submits an affidavit that includes a statement of all assets such prisoner possesses"). The courts have construed that section, however, as making IFP status available to any litigant who can meet the governing financial criteria. *Hayes v. United States*, 71 Fed. Cl. 366, 367 (Fed. Cl. 2006); *Fridman v. City of N.Y.*, 195 F. Supp. 2d 534, 536 n.1 (S.D.N.Y. 2002).

3 Plaintiff is reminded that, although his IFP application has been granted, he is still required to pay fees that he may incur in this action, including copying and/or witness fees.

## III. LEGAL STANDARD FOR INITIAL REVIEW OF COMPLAINT

"Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that ... the action ... (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2).

In determining whether an action is frivolous, the court must consider whether the complaint lacks an arguable basis in law or in fact. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Dismissal of frivolous actions is appropriate to prevent abuses of court process as well as to discourage the waste of judicial resources. *Neitzke*, 490 U.S. at 327; *Harkins v. Eldridge*, 505 F.2d 802, 804 (8th Cir. 1974); *see Fitzgerald v. First East Seventh Street Tenants Corp.*, 221 F.3d 362, 364 (2d Cir. 2000) (a district court "may dismiss a frivolous complaint *sua sponte* even when the plaintiff has paid the required filing fee[.]"); *see also Pflaum v. Town of Stuyvesant, Columbia Cnty., N.Y.*, 11-CV-0335, 2016 WL 865296, at *1, n.2 (N.D.N.Y. Mar. 2, 2016) (Suddaby, C.J.) (finding that the Court had the power to address and dismiss additional theories of the plaintiff's retaliation claim *sua sponte* because those theories were so lacking in arguable merit as to be frivolous).

In order to state a claim upon which relief can be granted, a complaint must contain, *inter alia*, "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The requirement that a plaintiff "show" that he or she is entitled to relief means that a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is *plausible* on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (emphasis added) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 [2007]). "Determining whether a complaint states a plausible claim for relief ... requires the ...

court to draw on its judicial experience and common sense.... [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not shown–that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (internal citation and punctuation omitted).

***3** "In reviewing a complaint ... the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor." *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir. 1994) (citation omitted). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

Courts are "obligated to construe a pro se complaint liberally." *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009); *see also Nance v. Kelly*, 912 F.2d 605, 606 (2d Cir. 1990) (per curiam) (reading the plaintiff's *pro se* complaint "broadly, as we must" and holding that the complaint sufficiently raised a cognizable claim). "[E]xtreme caution should be exercised in ordering sua sponte dismissal of a pro se complaint before the adverse party has been served and [the] parties ... have had an opportunity to respond." *Anderson v. Coughlin*, 700 F.2d 37, 41 (2d Cir. 1983).

## IV. ANALYSIS

In addressing the sufficiency of a plaintiff's complaint, the court must construe his pleadings liberally. *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008). Having reviewed Plaintiff's Complaint with this principle in mind, I recommend that all causes of action be dismissed.

### A. Claims Alleging "Racketeering"

To the extent that the Complaint is construed as alleging a claim pursuant to 18 U.S.C. § 1691 et seq., ("RICO") I recommend that it be dismissed.[4]

4 Under General Order #14 and N.D.N.Y. L.R. 9.2, a party who files a RICO claim must also file a Civil RICO statement within thirty days after the filing date of the Complaint. Despite thirty days having elapsed since the filing of his Complaint, Plaintiff has failed to file a Civil RICO statement. (*See generally* docket sheet.) As a result, I recommend that, in the alternative, Plaintiff's RICO claim be dismissed. *See Poole v. Bendixen*, 20-CV-0697, 2021 WL 3737780, *12 (N.D.N.Y. Aug. 24, 2021) (Suddaby, C.J.); *Murphy v. Onondaga Cnty.*, 18-CV-1218, 2022 WL 819281, *6 (N.D.N.Y. Mar. 18, 2022) (Sharpe, J.).

It is "unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity." 18 U.S.C. § 1962(c). Section 1964 establishes a private right of action for individuals who are harmed by racketeering activity. 18 U.S.C. § 1964. This private right of action permits a plaintiff to bring a RICO claim for sustaining injuries "in his business or property by reason of a violation of section 1962." 18 U.S.C. § 1964(c). Generally, a plaintiff bringing a civil RICO claim under "Section 1962(c) must allege that (1) the defendant has violated the substantive RICO statute, and (2) the plaintiff was injured in his business or property 'by reason of a violation of section 1962.' " *Malvar Egerique v. Chowaiki*, 19-CV-3110, 2020 WL 1974228, at *7 (S.D.N.Y. Apr. 24, 2020) (quoting *Moss v. Morgan Stanley, Inc.*, 719 F.2d 5, 17 (2d Cir. 1983) (citing 18 U.S.C. § 1962(c))), *vacated in part on other grounds by Weiss v. David Benrimon Fine Art LLC*, 20-CV-3842, 2021 WL 6128437 (2d Cir. Dec. 28, 2021) (summary order). More specifically, to assert a civil RICO claim under Section 1962(c), a plaintiff must allege the following elements: "(1) conduct, (2) of an enterprise, (3) through a pattern, (4) of racketeering activity." *Sedima, S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479, 496 (1985). Additionally, a plaintiff asserting a civil RICO claim must plead facts plausibly suggesting a resulting "domestic injury" to their business or property. *RJR Nabisco, Inc. v. European Community*, 136 S. Ct. 2090, 2111 (2016).

***4** The Complaint fails to allege facts plausibly suggesting the existence of an "enterprise" within the meaning of RICO. More specifically, Plaintiff fails to allege facts plausibly suggesting that Defendants constitute, control, or participate in any enterprise with a distinguishable existence or purpose. *See Mackin v. Auberger*, 59 F. Supp. 3d 528, 543 (W.D.N.Y. 2014) ("Plaintiff fails to allege that [the defendants] had a common or shared purpose or that they functioned as a continuing unit."). In addition, the Complaint fails to allege any facts plausibly suggesting that Defendants functioned as a continuing unit. "Without such an enterprise, a RICO claim like [Plaintiff]'s must fail." *Liang v. City of New York*, 10-CV-3089, 2013 WL 5366394, at *13 (E.D.N.Y. Sept. 24, 2013); *see also Peterson v. City of New York*, 11-CV-3141, 2012 WL 75029, at *3-4 (S.D.N.Y. Jan. 9, 2012) (dismissing the plaintiff's RICO claim because "[t]he existence of a RICO enterprise is a necessary element for liability" and the plaintiff failed to allege facts plausibly suggesting the existence of a RICO enterprise).

Moreover, the Complaint fails to allege facts plausibly suggesting a pattern of racketeering activity. 18 U.S.C. § 1961(5) (To sufficiently allege a "pattern of racketeering activity," a plaintiff must allege at least two acts of "racketeering activity" that occur within ten years of each other); *Westester Cnty. Indep. Party v. Astorino*, 137 F. Supp. 3d 586, 608 (S.D.N.Y. 2015) (emphasis in original) (quoting *Cofacredit, S.A. v. Windsor Plumbing Supply Co.*, 187 F.3d 229, 242 (2d Cir. 1999)) (To qualify as a "pattern" of racketeering activity, the predicate acts "must be from the crimes listed in [Section] 1961(1) and they must be 'related, *and* ... amount to or pose a threat of continued criminal activity.' "). The Complaint fails to allege any acts of racketeering activity and instead merely uses the word "racketeering" in a conclusory fashion without facts plausibly suggesting the commission of any predicate acts. (*See generally* Dkt. No. 1.)

For each of these alternative reasons, I recommend that Plaintiff's RICO claim be dismissed.

**B. Claims Pursuant to 42 U.S.C. § 1983**

After carefully considering Plaintiff's claims pursuant to 42 U.S.C. § 1983, I recommend that they be dismissed for three reasons.

First, to the extent that there are final state court orders or judgments that Plaintiff asks this Court to overturn, those claims are barred by the *Rooker-Feldman* doctrine. *Porter v. Nasci*, 24-CV-0033, 2024 WL 1142144, at *4 (N.D.N.Y. Mar. 15, 2024) (Dancks, M.J.) (citing *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 291-92 (2005); *Dorce v. City of New York*, 2 F.4th 82, 101 (2d Cir. 2021)) ("Under the *Rooker-Feldman* doctrine, a federal district court lacks authority to review a final state court order or judgment where a litigant seeks relief that invites the federal district court to reject or overturn such a final state court order or judgment."). "This includes when a litigant seeks relief that invites a federal district court to reject or overturn a final decision of a New York Family Court as to a child support dispute brought in that state court." *Porter*, 2024 WL 1142144, at *4 (citing *Sims v. Kaufman*, 23-CV-7927, 2024 WL 757338, at *4 (S.D.N.Y. Feb. 14, 2024)) (additional citation omitted); *see also Fernandez v. Turetsky*, 14-CV-4568, 2014 WL 5823116, at *4 (E.D.N.Y. Nov. 7, 2014) (collecting cases in support of the proposition that "[c]ourts have repeatedly invoked the [*Rooker-Feldman*] doctrine in cases ... in which plaintiffs challenge family court decrees setting child support arrears."), *aff'd*, 645 F. App'x 103 (2d Cir. 2016). Therefore, to the extent Plaintiff seeks to challenge a final judgment of Onondaga County Family Court or the Oneida County Family Court, any such claim is barred by the *Rooker-Feldman* doctrine. *See, e.g., Phillips v. Wagner*, 22-CV-0833, 2022 WL 17406092, at *3 (N.D.N.Y. Nov. 4, 2022) (Lovric, M.J.) ("Plaintiff's claims, while not entirely clear, seem to challenge an order ... in which the Family Court determined that he owes child support .... Plaintiff's claims for relief are barred by the *Rooker-Feldman* doctrine ....") (citation omitted), *report and recommendation adopted*, 2022 WL 17403441 (N.D.N.Y. Dec. 2, 2022) (Hurd, J.), *appeal dismissed*, No. 23-68, 2023 WL 4445323 (2d Cir. Apr. 25, 2023).

***5** Alternatively, "in the event the underlying family court proceedings are pending, such claims are likely barred by the *Younger* abstention doctrine." *Walker v. O'Connor*, 22-CV-0581, 2022 WL 2341420, at *6 (N.D.N.Y. June 29, 2022) (Dancks, M.J.) (citing *Younger v. Harris*, 401 U.S. 37 (1971); *Amato v. McGinty*, 21-CV-0860, 2022 WL 226798, at *11 (N.D.N.Y. Jan. 26, 2022) (Dancks, M.J.)), *report and recommendation adopted*, 2022 WL 2805462 (N.D.N.Y. July 18, 2022) (Hurd, J.). "*Younger* generally requires federal courts to abstain from taking jurisdiction over federal constitutional claims that involve or call into question ongoing state proceedings." *Diamond "D" Const. Corp. v. McGowan*, 282 F.3d 191, 198 (2d Cir. 2002) (citing *Younger*, 401 U.S. at 43-44). "*Younger* abstention is required when three conditions are met: (1) there is an ongoing

state proceeding; (2) an important state interest is implicated in that proceeding; and (3) the state proceeding affords the federal plaintiff an adequate opportunity for judicial review of the federal constitutional claims." *Diamond "D" Const. Corp.*, 282 F.3d at 198 (citing *Grieve v. Tamerin*, 269 F.3d 149, 152 (2d Cir. 2001)). Courts in this circuit have found these conditions to be satisfied in matters involving child support issues. *See, e.g., Cogswell v. Rodriguez*, 304 F. Supp. 2d 350, 357 (E.D.N.Y. 2004) (applying the *Younger* abstention doctrine to dismiss claims which arose from "pending state court proceedings involving child support.") (citation omitted); *Tomczyk v. New York Unified Ct. Sys.*, 19-CV-2753, 2019 WL 2437849, at *3 (E.D.N.Y. June 10, 2019) (citing *Sprint Communications, Inc. v. Jacobs*, 571 U.S. 69, 72-73 (2013) ("[T]his Court abstains under *Younger* from interfering in Plaintiff's ongoing state-court proceedings, involving divorce and child support issues and 'implicat[ing] a State's interest in enforcing the orders and judgments of its courts.' ")). "Accordingly, to the extent that the child support issues are continuing in Family Court, the Court should abstain from interfering with that process." *Bowman v. Morris*, 19-CV-0097, 2019 WL 5150196, at *6 (N.D.N.Y. Apr. 10, 2019) (Stewart, M.J.) (citations omitted), *report and recommendation adopted*, 2019 WL 3759174 (N.D.N.Y. Aug. 9, 2019) (Sannes, J.).

Second, Plaintiff's claims are likely barred pursuant to the domestic relations exception to the jurisdiction of federal courts. *Dudley v. Montaque*, 24-CV-0223, 2024 WL 1464346, at *4 (N.D.N.Y. Apr. 4, 2024) (Dancks, M.J.) (citing *Marshall v. Marshall*, 547 U.S. 293, 308 (2006); *Oliver v. Punter*, 22-CV-3580, 2022 WL 3228272, at *3 (E.D.N.Y. Aug. 10, 2022) ("The domestic relations exception to federal jurisdiction divests the federal courts of power to issue divorce alimony and child custody decrees .... This exception also extends to child support determinations and the enforcement thereof.") (internal quotations and citations omitted)) ("under the domestic relations exception to the jurisdiction of federal courts, cases involving divorce, alimony, and child custody remain outside this Court's jurisdiction."). Accordingly, this Court lacks jurisdiction to adjudicate a claim involving issues of child custody and support. *See Rotondo v. New York*, 17-CV-1065, 2017 WL 5201738, at *4 (N.D.N.Y. Oct. 31, 2017) (Peebles, M.J.) ("[I]t is manifestly clear that plaintiff's claims implicate the domestic-relations exception to federal court jurisdiction. Plaintiff challenges a state-court's determination denying him relief from a family court's child support order, and plaintiff's requests for relief include removal of the family court proceeding to federal court."), *report and recommendation adopted*, 2017 WL 5198194 (N.D.N.Y. Nov. 9, 2017) (Sharpe, J.); *Cruz v. New York*, 17-CV-0510, 2017 WL 6021838, at *7 (N.D.N.Y. Oct. 27, 2017) (Dancks, M.J.), *report and recommendation adopted*, 2017 WL 6001833 (N.D.N.Y. Dec. 4, 2017) (Sannes, J.) (collecting cases in support of the proposition that "[c]laims involving child custody, support, and visitation brought in federal district court in this Circuit have regularly been dismissed for lack of subject matter jurisdiction based on the domestic relations exception to federal jurisdiction.").

Third, the claims against Defendants are not cognizable.

### 1. Claims Against Defendant Hochul

Sovereign immunity bars Plaintiff's claims for damages against Defendant Hochul in her official capacity. Sovereign immunity extends to "actions for the recovery of money from the state" against "state agents." *Leitner v. Westchester Cmty. Coll.*, 779 F.3d 130, 134 (2d Cir. 2015) (citing *Regents of the Univ. of Cal. v. Doe*, 519 U.S. 425, 429 (1997); *Hans v. Louisiana*, 134 U.S. 1, 15 (1890)). A lawsuit brought against officials of a government entity in their official capacities is "in all respects other than name, to be treated as a suit against the entity." *Kentucky v. Graham*, 473 U.S. 159, 166 (1985); *see Garcia v. S.U.N.Y. Health Scis. Ctr. of Brooklyn*, 280 F.3d 98, 107 (2d Cir. 2001). Because Plaintiff's claims for damages against Defendant Hochul in her official capacity is effectively an "action[ ] for the recovery of money from the state," *Leitner*, 779 F.3d at 134, sovereign immunity bars them.

***6** Moreover, to the extent that Plaintiff's claims against Defendant Hochul in her official capacity seek prospective relief and to the extent that Plaintiff's claims are construed as against Defendant Hochul in her individual capacity, I recommend that they be dismissed for failure to allege Defendant Hochul's personal involvement in any constitutional violation. *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (quoting *Moffitt v. Town of Brookfield*, 950 F.2d 880, 885 (2d Cir. 1991)); *see Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986) (holding that in order to prevail on a section 1983 cause of action against an individual, a plaintiff

must show "a tangible connection between the acts of a defendant and the injuries suffered."); *Provost v. City of Newburgh*, 262 F.3d 146, 155 (2d Cir. 2001) (internal quotation marks omitted) ("[D]irect participation as a basis of liability in this context requires intentional participation in the conduct constituting a violation of the victim's rights by one who knew of the facts rendering it illegal."). The Second Circuit has made clear that "there is no special rule for supervisory liability," and a "plaintiff must plead and prove 'that each Government-official defendant, through the official's own individual actions, has violated the Constitution.' " *Tangreti v. Bachmann*, 983 F.3d 609, 618 (2d Cir. 2020). Here, although Plaintiff names Defendant Hochul as a party, the body of the Complaint lacks any allegations of wrongdoing by her. (*See generally* Dkt. No. 1.) As a result, I recommend that Plaintiff's claims against Defendant Hochul be dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B).

### 2. Claims Against Defendant New York State

As set forth above, sovereign immunity pursuant to the Eleventh Amendment bars individuals from suing states in federal court, unless Congress abrogates states' immunity or a state consents to suit. *See* U.S. Const. Amend. XI; *Gollomp v. Spitzer*, 568 F.3d 355, 365-66 (2d Cir. 2009). Accordingly, I recommend that Plaintiff's claims asserted against the New York State be dismissed pursuant to Section 1915(e)(2)(B)(i).

### 3. Claims Against Defendant McDonald

The Complaint identifies Defendant McDonald "as the commissioner of the Department of Health in New York State." (Dkt. No. 1 at 1.) To the extent that the Complaint is construed as asserting claims against Defendant McDonald in his official capacity, he is immune from suit pursuant to the Eleventh Amendment.

Moreover, to the extent that the Complaint is construed as asserting claims against Defendant McDonald in his individual capacity, I recommend that they be dismissed for failure to assert his personal involvement in any constitutional violation.

### 4. Claims Against Defendant Caldwell

Judges are absolutely immune from suit for claims seeking damages for any actions taken within the scope of their judicial responsibilities. *See Mireles v. Waco*, 502 U.S. 9, 11-12 (1991). Generally, "acts arising out of, or related to, individual cases before [a] judge are considered judicial in nature." *Bliven v. Hunt*, 579 F.3d 204, 210 (2d Cir. 2009). "[E]ven allegations of bad faith or malice cannot overcome judicial immunity." *Bliven*, 579 F.3d at 209. Judicial immunity does not apply when a judge takes action outside his or her judicial capacity, or when a judge takes action that, although judicial in nature, is taken "in the complete absence of all jurisdiction." *Mireles* 502 U.S. at 11-12; *see also Bliven,* 579 F.3d at 209-10 (describing actions that are judicial in nature). However, "the scope of [a] judge's jurisdiction must be construed broadly where the issue is the immunity of the judge." *Stump v. Sparkman*, 435 U.S. 349, 356 (1978).

Plaintiff asserts claims that appear to arise from the efforts of Defendant Caldwell, in his capacity as a family court judge in Oneida County. (Dkt. No. 1 at 6.) Defendant Judge Caldwell is therefore immune from suit under the doctrine of judicial immunity. As a result, I recommend that Plaintiff's claims against Defendant Caldwell in his individual capacity be dismissed based on the doctrine of judicial immunity.

Moreover, I recommend that Plaintiff's claims against Defendant Caldwell in his official capacity be dismissed pursuant to the Eleventh Amendment. *See Sundwall v. Leuba*, 28 F. App'x 11, 12 (2d Cir. 2001) (citing *K & A Radiologic Tech. Servs., Inc. v. Comm'r of the Dep't of Health*, 189 F.3d 273, 278 (2d Cir. 1999)) (holding that "state officers, if sued in their official capacities, are immunized from suit by private citizens under the Eleventh Amendment."); *King v. New York State*, 23-CV-3421, 2023 WL 5625440, at *4 (E.D.N.Y. Aug. 31, 2023) (citing *Thomas v. Martin-Gibbons*, 857 F. App'x 36, 37 (2d Cir. 2021) (affirming

 © 2026 Thomson Reuters. No claim to original U.S. Government Works. 

dismissal of *pro se* Section 1983 claims against the State of New York and a state court judge in his official capacity based on Eleventh Amendment immunity)) ("Eleventh Amendment immunity extends to state officials acting in their official capacities, including state court judges."); *Aron v. Becker*, 48 F. Supp. 3d 347, 366-67 (N.D.N.Y. 2014) (McAvoy, J.) (dismissing the plaintiff's claims against a state court judge in his official capacity based on the doctrine of Eleventh Amendment immunity).

**5. Claims Against Defendants Johnson, Ottaviano, Boyea, and Primo**

***7** The Complaint alleges that Defendant Johnson was an "Onondaga Family Court attorney" who was tasked with conducting a "virtual meeting call for the Onondaga County family Courthouse." (Dkt. No. 1 at 2.) The Complaint alleges that Defendant Ottaviano was a court assistant who postponed a hearing that was scheduled for February 15, 2023. (Dkt. No. 1 at ¶ 18.) The Complaint alleges that Defendant Boyea was a "Secretary" who emailed a modified custody order signed by Defendant Cecile. (Dkt. No. 1 at ¶ 23.) Finally, the Complaint alleges that Defendant Primo is the Clerk of the Court in Onondaga County Family Court (Dkt. No. 1 at ¶ 10) and he notified the parties of a hearing scheduled on July 20, 2023 (*id.* at ¶ 22).

"As a general principle, a government attorney is entitled to absolute immunity when functioning as an advocate of the state in a way that is intimately associated with the judicial process." *Mangiafico v. Blumenthal*, 471 F.3d 391, 396 (2d Cir. 2006) (citing *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976)). Judicial immunity has been extended to judicial law clerks, the New York State Chief Administrative Judge, court attorneys, and the chief clerks of several state courts. *Jackson v. Pfau*, 523 F. App'x 736, 737-38 (2d Cir. 2013) (citing *Rodriguez v. Weprin*, 116 F.3d 62, 66 (2d Cir. 1997)).

As a result, I recommend that Plaintiff's claims against Defendants Johnson, Ottaviano, Boyea, and Primo in their individual capacities be dismissed, because they are immune from suit. [5] *See Leftridge v. Judicial Branch*, 22-CV-0411, 2023 WL 4304792, at *9 (D. Conn. June 30, 2023) (dismissing the plaintiff's claims against the state court clerks of court based on the doctrine of quasi-judicial immunity where "their alleged actions arose out of or related to [plaintiff]'s child support and child custody proceedings."); *Braithwaite v. Tropea*, 23-CV-1431, 2023 WL 4207907, at *4 (E.D.N.Y. June 27, 2023) (citing *Jackson v. Pfau*, 523 F. App'x 736, 737-38 (2d Cir. 2013) (affirming dismissal pursuant to Section 1915(e)(2)(B) of pro se plaintiff's Section 1983 claims against the Chief Clerks of several state courts based on the doctrine of judicial immunity)) (dismissing as frivolous the plaintiff's claims against the clerk of the court because he was entitled to absolute immunity); *Mendez v. Johnson*, 22-CV-6811, 2022 WL 3587600, at *2 (S.D.N.Y. Aug. 22, 2022) (citing *inter alia, Chmura v. Norton, Hammersley*, *Lopez & Skokos Inverso PA*, 17-CV-2164, 2018 WL 2138631, at *2 (D. Conn. May 9, 2018) (extending judicial immunity to a clerk of court); *Manko v. Ruchelsman*, 12-CV-4100, 2012 WL 4034038, at *2 (E.D.N.Y. Sept. 10, 2012) (same)) (noting that courts have routinely granted judicial immunity to "government officials, including clerks of court and other court employees, for their acts that assist a judge in the performance of his or her judicial duties.").

5 In the alternative, I recommend that Plaintiff's claims against Defendants Johnson, Ottaviano, Boyea, and Primo be dismissed because the Complaint fails to allege the personal involvement of them in any alleged constitutional deprivation, which is a prerequisite to an award of damages under 42 U.S.C. § 1983. *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (quoting *Moffitt v. Town of Brookfield*, 950 F.2d 880, 885 (2d Cir. 1991)). Here, although Plaintiff names Defendants Johnson, Ottaviano, Boyea, and Primo as parties to the action, the body of the Complaint lacks any allegations of wrongdoing by them. (*See generally* Dkt. No. 1.) As a result, I recommend that, in the alternative, Plaintiff's claims against Defendants Johnson, Ottaviano, Boyea, and Primo be dismissed for failure to state a claim upon which relief may be granted pursuant to 28 U.S.C. § 1915(e)(2)(B).

***8** Moreover, I recommend that Plaintiff's claims against Defendants Johnson, Ottviano, Boyea, and Primo in their official capacities as employees of the Onondaga Family Court be dismissed because the Onondaga Family Court is an arm of the New York state court system and New York State is immune from suit pursuant to the Eleventh Amendment. *Braithwaite*, 2023 WL 4207907, at *4 (collecting cases) (holding that the plaintiff's claims against the Chief Clerk of the Suffolk County Court in his official capacity are barred by the Eleventh Amendment).

### 6. Claims Against Defendants Dejoseph, Cecile, Cerio, Mulroy, and Pirro Baily

Plaintiff's claims against Defendants Dejoseph, Cecile, Cerio, Mulroy, and Pirro Baily relate to their capacities as Onondaga County Family Court judges. (*See generally* Dkt. No. 1.) As set forth above in Part IV.B.4. of this Order and Report-Recommendation, Defendants Dejoseph, Cecile, Cerio, Mulroy, and Pirro Baily in their individual capacities are immune from suit pursuant to the doctrine of absolute judicial immunity. Moreover, as set forth above in Part IV.B.4. of this Order and Report-Recommendation, claims against Defendants Dejoseph, Cecile, Cerio, Mulroy, and Pirro Baily in their official capacities are essentially claims against New York State, which is immune from suit pursuant to the Eleventh Amendment.

### 7. Claims Against Defendants DeRue and Domachowski

Plaintiff's claims against Defendants DeRue and Domachowski relate to their roles as Onondaga County Family Court support magistrates. (*See generally* Dkt. No. 1.) As set forth above in Part IV.B.4. of this Order and Report-Recommendation, Defendants DeRue and Domachowski in their individual capacities are immune from suit pursuant to the doctrine of absolute judicial immunity. *See Miller v. Primo*, 23-CV-1051, 2023 WL 6379325, at *6 (N.D.N.Y. Sept. 29, 2023) (Lovric, M.J.) (recommending dismissal of the plaintiff's claims against "Defendants DeRue and Domachowski, who acted as the support magistrate judges" and finding that such claims "are barred under the doctrine of judicial immunity"), *report and recommendation adopted by* 2023 WL 754323 (N.D.N.Y. Nov. 14, 2023) (Sannes, C.J.). Moreover, as set forth above in Part IV.B.4. of this Order and Report-Recommendation, claims against Defendants DeRue and Domachowski in their official capacities are essentially claims against New York State, and are immune from suit pursuant to the Eleventh Amendment.

### 8. Claims Against Defendant Stanislaus

"The law is clear that court referees are entitled to absolute judicial immunity from liability with respect to acts taken in the scope of their duties." *Khrapko v. Splain*, 389 F. Supp. 3d 199, 205 (W.D.N.Y. 2019) (citing *Green v. Kadilac Mortg. Bankers, Ltd.*, 936 F. Supp. 108, 115 (S.D.N.Y. 1996); *Weiss v. Feigenbaum*, 558 F. Supp. 265, 272 (E.D.N.Y. 1982)); *accord Witcher v. Moriber*, 21-CV-6168, 2022 WL 1085297, at *2 (E.D.N.Y. Apr. 11, 2022) (citing *Wilson v. Wilson-Polson*, 446 F. App'x 330, 331 (2d Cir. 2011) (allegations that a New York State Family Court referee violated plaintiff's procedural due process rights failed in light of the referee's absolute immunity to suit); *Topolski v. Wrobleski*, 13-CV-0872, 2014 WL 2215761, at *3 (N.D.N.Y. May 29, 2014) ("Judicial immunity is so broad that judges and referees 'are not liable to civil actions for their judicial acts, even when such acts ... are alleged to have been done maliciously or corruptly.' "); *Renner v. Stanton*, 13-CV-1676, 2013 WL 1898389, at *3 (E.D.N.Y. May 7, 2013) (dismissing claims against Family Court Referee based on judicial immunity)).

***9** As a result, I recommend that Plaintiff's claim against Defendant Stanislaus in her individual capacity be dismissed based on the doctrine of absolute judicial immunity. *See Miller Ex v. Primo*, 22-CV-0680, 2022 WL 16556060, at *5 (N.D.N.Y. Sept. 29, 2022) (Lovric, M.J.) (recommending dismissal of the plaintiff's claims against Defendant Stanislaus because she was entitled to absolute judicial immunity as a court attorney referee), *report and recommendation adopted by* 2022 WL 16551700 (N.D.N.Y. Oct. 31, 2022) (Sannes, C.J.).

Moreover, as set forth above in Part IV.B.4. of this Order and Report-Recommendation, any claim against Defendant Stanislaus in her official capacity is essentially a claim against New York State, which is immune from suit pursuant to the Eleventh Amendment.

### 9. Claims Against Defendant Bradshaw

Based on the allegations contained in the Complaint, it appears that Defendant Bradshaw was an attorney appointed to represent one of Plaintiff's minor children. (Dkt. No. 1 at ¶ 16.) The Second Circuit has held that "law guardians who act as 'attorney[s] for the child' are not state actors for the purposes of suits filed pursuant to § 1983." *Milan v. Wertheimer*, 808 F.3d 961, 964 (2d Cir. 2015).

As a result, I recommend that Plaintiff's claims against Defendant Bradshaw be dismissed.

### 10. Claims Against Defendant Onondaga County Sheriff

Defendant Onondaga County Sheriff is merely a department of a municipality, and thus, is not amenable to suit. *See White v. Syracuse Police Dep't*, 18-CV-1471, 2019 WL 981850, at *3 (N.D.N.Y. Jan. 7, 2019) (Peebles, M.J.) (citing *Krug v. Cnty. of Rennselaer*, 559 F. Supp. 2d 223, 247 (N.D.N.Y. 2008) (McAvoy, J.); *Turczyn ex rel. McGregor v. City of Utica*, 13-CV-1357, 2014 WL 6685476, at *2 (N.D.N.Y. Nov. 26, 2014) (Sharpe, J.); *Hoisington v. Cnty. of Sullivan*, 55 F. Supp. 2d 212, 214 (S.D.N.Y. 1999) ("Under New York law, a department of a municipal entity is merely a subdivision of the municipality and has no separate legal existence. Therefore, municipal departments like the Department of Social Services are not amenable to suit and no claims lie directly against the Department.")) ("Although a municipality is subject to suit pursuant to section 1983, *see Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978), a municipal ... department does not have the capacity to be sued as an entity separate from the municipality in which it is located."), *report and recommendation adopted*, 2019 WL 974824 (N.D.N.Y. Feb. 28, 2019) (Suddaby, C.J.). As a result, I recommend that Plaintiff's claims against Defendant Onondaga County Sheriff be dismissed because it is not an entity amenable to suit. [6]

6 Even if Plaintiff's claims against Defendant Onondaga County Sheriff were liberally construed as against Onondaga County, I would recommend that they be dismissed. There is no basis for municipal liability alleged in the Complaint. Plaintiff essentially complains of a discrete incident, during which an officer or individual employed by Defendant Onondaga County Sheriff did not act properly. (Dkt. No. 1 at 4.) There is no indication that Plaintiff can assert a policy or custom which would support municipal liability based on these facts. In addition, none of Plaintiff's allegations reflect a failure to train or "deliberate indifference" to the rights of persons who would come into contact with employees of Onondaga County.

### 11. Claims Against Defendant Hiscock Legal Aid

***10** The Complaint alleges that Defendant Hiscock Legal Aid and attorneys employed by it represented the mother of Plaintiff's minor children during the State Family Court proceedings. (Dkt. No. 1 at ¶ 5.) Notwithstanding the appointment of Defendant Hiscock Legal Aid as legal representation, it was not a state actor for purposes of 42 U.S.C. § 1983. "Although [Defendant Hiscock Legal Aid was] supplied and funded by the state, [it] act[ed] according to the best interests of [its] client with 'no obligation to the mission of the state.' " *Milan*, 808 F.3d at 964 (quoting *Meeker v. Kercher*, 782 F.2d 153, 155 (10th Cir. 1986)) (internal quotation omitted).

As a result, I recommend that Plaintiff's claims against Defendant Hiscock Legal Aid be dismissed.

### 12. Claims Against Defendant Department of Health and Social Service

It is unclear based on the allegations in the Complaint if Defendant Department of Health and Social Service is a division of New York State or Onondaga County. To the extent that it is a department of New York State, it is immune from suit pursuant to the Eleventh Amendment as set forth in Part IV.B.1 of this Order and Report-Recommendation. To the extent that Defendant Department of Health and Social Service is a department of Onondaga County, it is not amenable to suit pursuant as set forth above in Part IV.B.10 of this Order and Report-Recommendation. [7]

7 Further, as set forth above in note 6, *supra*, to the extent that the Complaint is liberally construed as alleging a claim against Onondaga County, it fails to allege any basis for municipal liability.

**13. Claims Against Defendants Milner and Unknown**

"Dismissal is appropriate where a defendant is listed in the caption, but the body of the complaint fails to indicate what the defendant did to the plaintiff." *Cipriani v. Buffardi*, 06-CV-0889, 2007 WL 607341, at *1 (N.D.N.Y. Feb. 20, 2007) (Kahn, J.) (citing *Gonzalez v. City of New York*, 97-CV-2246, 1998 WL 382055, at *2 (S.D.N.Y. July 9, 1998)); *see also Crown v. Wagenstein*, 96-CV-3895, 1998 WL 118169, at *1 (S.D.N.Y. Mar. 16, 1998) (mere inclusion of warden's name in complaint insufficient to allege personal involvement); *Taylor v. City of New York*, 953 F. Supp. 95, 99 (S.D.N.Y. 1997) (same).

The Complaint names Milner and Unknown as defendants, but the body lacks any allegations of wrongdoing by these individuals. (*See generally* Dkt. No. 1.) As a result, I recommend that the claims against them be dismissed for failure to state a claim upon which relief may be granted.

For each of these alternative reasons, I recommend that the Complaint be dismissed in its entirety.

## V. OPPORTUNITY TO AMEND

Generally, a court should not dismiss claims contained in a complaint filed by a *pro se* litigant without granting leave to amend at least once "when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Branum v. Clark*, 927 F.2d 698, 704-05 (2d Cir. 1991); *see also* Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave when justice so requires."). An opportunity to amend is not required, however, where "the problem with [the plaintiff's] causes of action is substantive" such that "better pleading will not cure it." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000); *see also Cortec Indus. Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) ("Of course, where a plaintiff is unable to allege any fact sufficient to support its claim, a complaint should be dismissed with prejudice."). Stated differently, "[w]here it appears that granting leave to amend is unlikely to be productive, ... it is not an abuse of discretion to deny leave to amend." *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993); *accord, Brown v. Peters*, 95-CV-1641, 1997 WL 599355, at *1 (N.D.N.Y. Sept. 22, 1997) (Pooler, J.). [8]

8 *See also Carris v. First Student, Inc.*, 132 F. Supp. 3d 321, 340-41 n.1 (N.D.N.Y. 2015) (Suddaby, C.J.) (explaining that the standard set forth in *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 796 (2d Cir. 1999)—that the Court should grant leave to amend "unless the court can rule out any possibility, however unlikely it might be, that an amended complaint would be successful in stating a claim"—is likely not an accurate recitation of the governing law after *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)), *rev'd on other grounds*, 682 F. App'x 30.

***11** Here, better pleading could not cure the deficiencies described above. As a result, I recommend that Plaintiff's Complaint be dismissed without leave to replead.

## VI. PLAINTIFF'S MOTION TO OBTAIN ECF LOGIN AND PASSWORD

In light of the recommended disposition of this case, Plaintiff's motion for ECF login and password is denied without prejudice. (Dkt. No. 3.) "Because this court is recommending dismissal at this time, the court will deny [P]laintiff's motion to obtain ECF privileges without prejudice." *Amato v. McGinty*, 17-CV-0593, 2017 WL 9487185, at *11 (N.D.N.Y. June 6, 2017) (Baxter,


© 2026 Thomson Reuters. No claim to original U.S. Government Works.

M.J.), *report and recommendation adopted*, 2017 WL 4083575 (N.D.N.Y. Sept. 15, 2017) (D'Agostino, J.); *see Mahmood v. United States Gov't*, 20-CV-0207, 2020 WL 3965125, at *3 (N.D.N.Y. Mar. 17, 2020) (Stewart, M.J.) (same), *report and recommendation adopted*, 2020 WL 1808206 (N.D.N.Y. Apr. 9, 2020) (D'Agostino, J.).

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff's IFP application (Dkt. No. 2) is **GRANTED**; and it is further

**ORDERED** that Plaintiff's motion to obtain an ECF login and password (Dkt. No. 3) is **DENIED without prejudice**; and it is further respectfully

**RECOMMENDED** that the **COURT DISMISS WITHOUT PREJUDICE AND WITHOUT LEAVE TO AMEND** Plaintiff's Complaint (Dkt. No. 1) in its entirety pursuant to 28 U.S.C. § 1915(e); and it is further

**ORDERED** that the Clerk of the Court shall file a copy of this Order and Report-Recommendation on Plaintiff, along with copies of the unpublished decisions cited herein in accordance with the Second Circuit's decision in *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

**NOTICE:** Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report.[9] Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**. 28 U.S.C. § 636(b)(1) (Supp. 2013); Fed. R. Civ. P. 6(a), 6(d), 72; *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)).

9 If you are proceeding *pro se* and served with this report, recommendation, and order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date that the report, recommendation, and order was mailed to you to serve and file objections. Fed. R. Civ. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. Fed. R. Civ. P. 6(a)(1)(C).

**All Citations**

Not Reported in Fed. Supp., 2024 WL 1906594

**End of Document**

© 2026 Thomson Reuters. No claim to original U.S. Government Works.

2024 WL 2399913
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Ellis Davon DUDLEY, II, Plaintiff,
v.
Governor Kathy HOCUL et al., Defendants.

5:24-CV-48
|
Signed May 23, 2024

**Attorneys and Law Firms**

ELLIS DAVON DUDLEY, II, Plaintiff, Pro Se, P.O. Box 7124, Syracuse, NY 13261.

## ORDER ON REPORT & RECOMMENDATION

DAVID N. HURD, United States District Judge

***1** On January 11, 2024, *pro se* plaintiff Ellis Javon Dudley, II ("plaintiff") filed this action alleging that the named defendants violated his civil rights in connection with certain family-court proceedings being conducted under New York State law. Dkt. No. 1. Along with his complaint, plaintiff moved for leave to proceed *in forma pauperis* ("IFP Application"), Dkt. No. 2, and for leave to file documents electronically, Dkt. No. 3.

On May 1, 2024, U.S. Magistrate Judge Miroslav Lovric granted plaintiff's IFP Application, denied his request to file electronically, and advised by Report & Recommendation ("R&R") that plaintiff's complaint be dismissed *without* leave to amend. Dkt. No. 5. As Judge Lovric explained, plaintiff's RICO claims were procedurally deficient and substantively meritless, while plaintiff's 42 U.S.C. § 1983 claims were barred by various claim-preclusion principles. *Id.*

Plaintiff has not filed objections, and the time period in which to do so has expired. *See* Dkt. No. 5. Upon review for clear error, the R&R is accepted and will be adopted. *See* FED R. CIV. P. 72(b).

Therefore, it is

ORDERED that

1. The Report & Recommendation is ACCEPTED;

2. Plaintiff's complaint is DISMISSED without leave to amend.

IT IS SO ORDERED.

**All Citations**

Not Reported in Fed. Supp., 2024 WL 2399913

End of Document © 2026 Thomson Reuters. No claim to original U.S. Government Works.

2022 WL 226798
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Francesca AMATO, Plaintiff,
v.
Anthony MCGINTY, Defendant.

1:21-cv-00860 (GLS/TWD)
|
Signed 01/26/2022

**Attorneys and Law Firms**

FRANCESCA AMATO, Plaintiff, pro se, PO Box 774, Marlboro, NY 12542.

**ORDER AND REPORT-RECOMMENDATION**

THÉRÈSE WILEY DANCKS, United States Magistrate Judge

***1** Francesca Amato ("Plaintiff" or "Amato"), proceeding *pro se*, filed an action against Ulster County Family Court Judge Anthony McGinty ("Defendant" or "Judge McGinty"). (Dkt. No. 1.) This case is related to *Orr v. McGinty*, 1:17-cv-1280 (GLS/TWD). (Dkt. No. 5. [1]) Plaintiff has not paid the filing fee, but instead seeks leave to proceed *in forma pauperis* ("IFP"). (Dkt. No. 16.) For the reasons discussed below, the Court grants Plaintiff's fourth IFP application (Dkt. No. 16) and recommends dismissal of the amended complaint (Dkt. No. 6) in its entirety.

1 Amato was terminated as party plaintiff in the related action by Order entered August 7, 2019. *See Orr v. McGinty*, 1:17-cv-1280 (GLS/TWD), ECF Dkt. No. 73. The Court assumes familiarity with the related case.

## I. BACKGROUND

Plaintiff initiated this action and moved to proceed IFP on July 30, 2021. (Dkt. Nos. 1, 2.) However, the initial pleading was not signed and Plaintiff was directed to submit a signed copy of the complaint. (Dkt. No. 5.) On August 13, 2021, Plaintiff submitted a signed copy of the complaint, but also attached five exhibits that were not submitted with the original pleading. (Dkt. No. 6.) As such, the signed pleading was docketed as the amended complaint.

Thereafter, by Orders filed October 28, 2021, November 17, 2021, and December 17, 2021, this Court denied Plaintiff's motions to proceed IFP. (Dkt. Nos. 8, 11, 14.) In the December 17, 2021, Order, Plaintiff was afforded one final opportunity to submit a fully completed IFP application or pay the entire filing fee by January 6, 2022. (Dkt. No. 14.) Despite the foregoing directive, Plaintiff's fourth IFP application was not filed until January 10, 2022. (Dkt. No. 16.)

## II. IFP APPLICATION

Plaintiff declares in her fourth IFP application that she is unable to pay the filing fee. (Dkt. No. 16.) After reviewing the submission, the Court finds Plaintiff meets the requirement for economic need and thus her IFP application is granted.

## III. SUFFICIENCY OF THE AMENDED COMPLAINT

 © 2026 Thomson Reuters. No claim to original U.S. Government Works. 

**A. Legal Standard**

28 U.S.C. § 1915(e) directs that, when a plaintiff seeks to proceed *in forma pauperis*, "the court shall dismiss the case at any time if the court determines that – ... (B) the action ... (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B).

To determine whether an action is frivolous, a court must look to see whether the complaint "lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). To survive dismissal for failure to state a claim, a complaint must plead enough facts to state a claim that is "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While Rule 8(a) of the Federal Rules of Civil Procedure, which sets forth the general rules of pleading, "does not require detailed factual allegations, ... it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.*

***2** In determining whether a complaint states a claim upon which relief may be granted, "the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor." *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir. 1994) (citation omitted). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

A *pro se* litigant's pleadings are held to a less strict standard than attorney drafted pleadings. *See Fed. Express Corp. v. Holowecki*, 552 U.S. 389, 402 (2008) ("Even in the formal litigation context, *pro se* litigants are held to a lesser pleading standard than other parties."). Because Plaintiff is proceeding *pro se*, the Court construes her pleadings "to raise the strongest arguments that they suggest." *See Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 475 (2d Cir. 2006) (per curiam) (internal quotation marks omitted). However, this "does not exempt [Plaintiff] from compliance with relevant rules of procedural and substantive law." *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983).

**B. Summary of the Amended Complaint**

Plaintiff brings this action against Defendant in both his "judicial" and "individual" capacity. (Dkt. No. 6 at 1.[2]) The amended complaint is written on a form complaint brought pursuant to the American with Disabilities Act ("ADA"). *Id.* at 1-4. Plaintiff also lists her minor child, C.A.B., as a plaintiff. *Id.* at 1, 5 ("Plaintiffs Francesca Amato & C.A.B. (hereafter, the 'Plaintiffs')—hereby makes these allegations against Defendant herein as follows[.]").

2 Page references to documents identified by docket number refer to the numbers assigned by the CM/ECF docketing system maintained by the Clerk's Office. Unless otherwise indicated, excerpts from the record are reproduced exactly as they appear in the original and errors in spelling, punctuation, and grammar have not been corrected.

Her disabilities are listed as "ptsd" and "LAS", which she defines as "Legal Abuse Syndrome caused by defendant's actions and inactions." *Id.* at 2. She complains of the following conduct: denial of participation in public service or program, failure to make alterations to accommodate disability, retaliation, and others "in federal suit." *Id.* at 3. However, the section of the form complaint titled "Facts" is blank. *See id.* As to the "Prayer for Relief", Plaintiff states "see attached lawsuit." *Id.* at 4.

The "attached lawsuit" consists of 24 typewritten, single spaced pages, *id.* at 5-29, along with an additional 56 pages of exhibits. (Dkt. Nos. 6-1 through 6-5.) The "attached lawsuit" references the related action, *Orr v. McGinty*, 1:17-cv-1280 (GLS/TWD), and Plaintiff states she is "requesting the right to re plead [and] I am also filing a new verified complaint due to ongoing abuse by the defendant." *Id.* at 5.

Plaintiff's amended complaint also references 42 U.S.C. § 1983. *See id.* at 5-6. Plaintiff claims the "policies, practices, procedures and standards established and/or maintained by Defendant violate the Due Process and Equal Protection Clauses of the

Fourteenth Amendments to the U.S. Constitution." *Id.* at 5. She also claims that "[u]nder color of authority, Anthony McGinty deprived me of my rights to my child, due process, and ADA rights were completely violated." *Id.* Plaintiff seeks compensatory and punitive damages, along with injunctive and declaratory relief. *Id.* at 5-6. She further states:

> ***3** I demand my son's immediate return to his home with me at once and that a permanent restraining order is placed on this highly abusive Judge Anthony McGinty and also in his individual capacity as I feel he is a threat and danger to my family within his political power and lack of professionalism and boundaries. I'm also concerned with his mental state and feel he is unfit and I have overwhelming information and belief that he is an addict.

*Id.* at 26.

According to Plaintiff, "this is also a civil rights action brought pursuant to Title VII of the Civil Rights Acts of 1964" because Defendant authorized "unconstitutional, gender-biased contested Judgment of Custody polices, practices, procedures and standards." *Id.* at 6. Plaintiff contends Judge McGinty's "policies, practices, procedures and standards are gender biased, unconstitutional, have disparate impact on women and violate women's NYS entitled equal economic, property ownership and custody rights in contested Judgement of Custody Orders when domestic violence ("DV") exists." *Id.* at 7. Judge McGinty "has a history of court orders that change custody to abusive fathers and remove them from safe, loving caretakers with an extreme general bias against mothers." *Id.* at 11. Defendant also ignores the ACP address confidentially program of New York State. *Id.*

Generally, Plaintiff alleges that from "February 2019 to Ongoing" Defendant "enforced polices, practices, procedures, and standards that prevented Plaintiff from proving the Custody Orders issued by trial were based on the wrong legal standards, erroneous facts, a biased unconstitutional trial. And prevented me from being able to have my witnesses and my own testimony." *Id.* at 7. Defendant also "denied Plaintiff child access to his Service dogs and home status quo and private bedroom and consistent life needed to heal from past abuse." *Id.*

Plaintiff alleges Judge McGinty denied her "all ADA accommodations requested over and over orally and in writing and further abuse[d] his power by forcing plaintiff to draft own motions and train all parties in the ADA in order to protect my rights that continually are denied." *Id.*

She further claims Judge McGinty is "intentionally practicing and inflicting highly unlawful Discriminatory abuse upon [Plaintiff] due to [her] years of reputable advocacy and exposure of him." *Id.* at 6. He has also retaliated against her because of her "two time best-selling book, *Punished 4 Protecting: The Injustice of Family Court.*" *Id.* [3]

3 Plaintiff explains the book "talks about the ongoing abuse of Anthony McGinty and his ongoing abuse to my family for exposing him. I have been publicly outspoken long before he was put on my case in 2016. I've been exposing him since 2014 and my best selling book was published in 2018. He refuses to recuse from this case which I orally explained pre trial in 2019 that I would not only never receive a fair trial but that having to come before him after the tremendous harm he caused my son...." (Dkt. No. 6 at 14.)

Plaintiff explains that "anytime I enter the Family Court it will be the three of them [4] against me leaving an extremely unfair disadvantage, further harm and suffering and full control. I am constantly bullied and they cooperate together to continue to retaliate against me by using my child as their pawn. McGinty's actions have caused my son and I irreparable injury and each second this continues threatens to harm us indefinitely." *Id.* at 11.

4 Plaintiff appears to be referring to Defendant, along with "Child Attorney Amy Ingram and opposing Counsel Andy Gilday." (Dkt. No. 6 at 11.) The Court notes Amy Ingram was named as a defendant in the related case and all claims asserted against her were dismissed with prejudice. *See Orr v. McGinty*, No. 1:17-cv-1280 (GLS/TWD), ECF Dkt. No. 47 at 13. The Court takes judicial notice that Amato, along with others, also filed suit against Judge McGinty, Amy Ingram, and Attorney Andrew Gilday (for his role as assigned counsel to Patrick Beesmer, C.A.B.'s father), Beesmer, and another individual in a previous action, also captioned *Amato v. McGinty*, 1:17-cv-00593 (MAD/ATB), ECF Dkt. No. 1. In that case, although Amato paid the filing fee, United States Magistrate Judge Baxter recommended, *inter alia*, that Amato's Section 1983 claims against Judge McGinty be dismissed with prejudice as barred by judicial immunity. *See id.*, ECF Dkt. No. 11. United States District Judge D'Agostino adopted the report-recommendation in its entirety and judgment was entered accordingly on September 15, 2017. *See id.* at ECF Dkt. Nos. 19, 20.

***4** Plaintiff claims "having pre diagnosed ptsd and LAS received zero ADA Accommodations requested and missed a court appearance on March 8, 2020." *Id.* at 12. According to Plaintiff, she missed the court appearance "due to stress and denial of rights combined with fear of [the] court causing further harm to my son and family and fear of further McGinty retaliation causing ptsd to be triggered." *Id.* She has "no recollection of being handed a slip" and did not put the March 8, 2020, court date on her calendar. *Id.* Plaintiff claims Defendant:

> refused to give me enough time to get proper expensive counsel needed to fight such a traumatic 3rd trial. I was thrown into trial and discriminated further bc I "did such a good job, I couldn't possibly have ptsd" this only proves that I didn't willfully miss a court date two days before our Country was on COVID quarantine but that with ptsd memory issues occur during high stress moments. McGinty used it as a legal loophole to strip me of all custody giving my son to his estranged father who barely had visits of 8 hours a month and abandoned the child in California after he was released from jail. McGinty was clearly Aware of all of this as he testified to it during the 2020 trial.

*Id.* at 13.

Plaintiff also claims Judge McGinty "intentionally ignores all emergency motions and puts them out months and months at a time; and takes hearsay from the father without any evidence or fact finding violating and taking/ away more rights." *Id.* at 14.

Plaintiff references the related case, and states that her ADA claims against Judge McGinty were dismissed in *Orr v. McGinty*, without prejudice and with leave to replead. *Id.* at 15.[5] According to Plaintiff, she is pursuing her "right to replead and add ongoing violations in current proceedings against Judge Antony McGinty and his ongoing abuse to me and my son C.A.B." *Id.* She explains that she "didn't continue at that time to fight this case because my son was returned to my sole custody on September 17, 2017[,] and we were healing from the damages and severe trauma." *Id.*

5 However, and contrary to Plaintiff's assertion, in the related action she was not afforded the "right to replead and add current ongoing violations" rather, Amato's Section 1983 claims against Judge McGinty were dismissed with prejudice and her Title II ADA claims were dismissed for failure to state a claim upon which relief may be granted. *Orr v. McGinty*, 1:17-CV-01280 (GLS/TWD), ECF Dkt. Nos. 47, 74.

Plaintiff states that she was diagnosed in 2016 and "orally and in writing has requested ADA Accommodations" "numerous" times to "let the court know" that Defendant has "withheld" her child's "full service therapy dogs" since October 2, 2020, amounting to "intentional and deliberate indifference." *Id.* at 15.

According to Plaintiff, "Anthony McGinty continues his abuse in the form of retaliation, abuse of power, extreme harm and pain and suffering, violations of ADA title ii [which resulted] in a final order dated October 2, 2020. Granting Patrick Beesmer sole physical custody [of C.A.B.] and all decision making power...." *Id.*

Plaintiff lists several ways Judge McGinty has "denied" her "reasonable accommodations" and "basic rights." *Id.* at 16-17. For example, she claims Judge McGinty failed to recuse himself and denied her a fair trial. *Id.* at 16. He also denied C.A.B. his "full

service therapy dogs since October 2, 2020." *Id.* Judge McGinty denied and restricted communication between Plaintiff and C.A.B., conspired with C.A.B.'s and Beesmer's attorneys, and omitted "strong evidence off the record," and "pushed several emergency motions out far past their legal requirements." *Id.* at 16-17. She also complains of "ongoing discrimination." *Id.* Plaintiff also alleges Judge McGinty failed to replace C.A.B.'s attorney with an "ethical" attorney. *Id.*

***5** She further alleges Judge McGinty lied in the October 2, 2020, Order which cited "concerns" in Plaintiff's home, without evidence, and falsely stated C.A.B.'s father's home "has no domestic violence." *Id.*

Additionally, on June 3, 2021, Judge McGinty denied C.A.B.'s "rights to his service dog again" and "showed preference to fathers" in that he gave C.A.B.'s father a "courtesy call" when he missed "virtual court" but did not extend the same courtesy to Plaintiff on March 8, 2021, when she failed to appear in court. *Id.* at 16. When she questioned Judge McGinty, he "falsely" explained that "virtual court is different from physical Court when someone doesn't show up we call them." *Id.*

Under a section of the amended complaint labeled "Damages" Plaintiff lists twelve "counts." *Id.* at 17-19. Plaintiff also lists five "counts" under Title II ADA Violations. *Id.* at 19. Plaintiff also devotes several pages to what appears to be excerpts and summaries of what she refers to as "Title II ADA Case Law re: Accommodations." *See id.* at 19-26.

As relief, Plaintiff seeks a temporary restraining order, a permanent restraining order, and preliminary injunction. *Id.* at 26, 28. Plaintiff is "seeking injunctive relief and a permanent restraining order against [Judge McGinty] to stop his abuse and allow us to have a fair trial with an unbiased Judge without any connections to him whatsoever to avoid any further harm." *Id.* at 9. She requests declaratory relief "to the effect" that Defendant's "actions were illegal and violative of Plaintiff's right to due process of the law and to equal protection of the laws." *Id.* at 28.

Plaintiff seeks damages in the amount of at least $3,000,000. *Id.* at 27-28. Plaintiff asks this Court to "assume jurisdiction over this matter." *Id.* Plaintiff also wants this Court to "restore" her sole custody rights over her minor child. *Id.* at 28. She also asks for any further relief as the Court shall deem just and proper. *Id.* [6]

6 Plaintiff also seeks attorneys fees pursuant to 42 U.S.C. § 1988 and the Equal Access to Justice Act. (Dkt. No. 6 at 28.) However, as she was informed in the related action, *pro se* plaintiffs are not entitled to such fees. *Orr v. McGinty*, No. 1:17-cv-01280, ECF Dkt. No. 47 at 3 n.6 (citing *SEC v. Price Waterhouse*, 41 F.3d 805, 808 (2d Cir. 1994)).

For a complete statement of Plaintiff's claims, reference is made to the amended complaint. (*See generally* Dkt. No. 6.)

### C. Discussion

Initially, the Court finds the amended complaint fails to comply with Rules 8 and 10 of the Federal Rules of Civil Procedure. Rule 8 of the Federal Rules of Civil Procedure provides that a pleading which sets forth a claim for relief shall contain, among other things, "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The purpose of this Rule "is to give fair notice of the claim being asserted so as to permit the adverse party the opportunity to file a responsive answer [and] prepare an adequate defense." *Hudson v. Artuz*, No. 95 CIV 4768, 1998 WL 832708, *1 (S.D.N.Y. Nov. 30, 1998) (citations omitted). The statement should be "short and plain" because "[u]nnecessary prolixity in a pleading places an unjustified burden on the court and the party who must respond to it because they are forced to select the relevant material from a mass of verbiage." *Salahuddin v. Cuomo*, 861 F.2d 40, 41-42 (2d Cir. 1998) (quoting 5 C. Wright & A. Miller, Federal Practice and Procedure § 1281, at 365 (1969)). Moreover, Rule 10 of the Federal Rules of Civil Procedure provides, in part:

> ***6** (b) Paragraphs; Separate Statements. A party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances.

Fed. R. Civ. P. 10(b). This serves the purpose of "provid[ing] an easy mode of identification for referring to a particular paragraph in a prior pleading[.]" *Flores v. Graphtex*, 189 F.R.D. 54, 55 (N.D.N.Y. 1999) (quotation marks and citations omitted).

A complaint that does not comply with these Rules "presents far too a heavy burden in terms of defendants' duty to shape a comprehensive defense and provides no meaningful basis for the Court to assess the sufficiency of [the plaintiff's] claims," and may properly be dismissed by the court. *Gonzales v. Wing*, 167 F.R.D. 352, 355 (N.D.N.Y. 1996). "Dismissal, however, is usually reserved for those cases in which the complaint is so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised." *Artuz*, 1998 WL 832708, at *2 (internal quotation marks omitted).

The amended complaint contains rambling legal arguments, numerous disjointed sentences, and repeated conclusory allegations. (Dkt. No. 6.) Moreover, while the amended complaint contains some numbered sections, the numbering is of limited value since some of the numbered sections contain numerous sentences, and/or contain multiple paragraphs, and/or are repeated. *Id.* As a result, it is difficult for the Court to determine the sufficiency of Plaintiff's allegations, and it would be difficult for Defendant to shape a comprehensive defense. As such, the amended complaint fails to comply with Rules 8 and 10 of the Federal Rules of Civil Procedure.

However, the Court refrains from recommending dismissal on this basis alone because the amended complaint does not quite rise to the level of being "so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised." Rather, this action represents yet another lawsuit whereby Plaintiff is complaining of Defendant's handing of and decisions issued in family court proceedings. Construed liberally, Plaintiff seeks to nullify family court and custody determinations issued by Defendant, and asks this Court to restore her sole custody, requests declaratory and injunctive relief, and monetary compensation. As such, in accordance with 28 U.S.C. § 1915(e), the Court will review the sufficiency of the amended complaint.

### 1. Minor Plaintiff

As Plaintiff is aware, an individual "who has not been admitted to the practice of law may not represent anybody other than himself." *Amato v. McGinty*, No. 1:17-CV-00593 (MAD/ATB), 2017 WL 4083575, at *4 (N.D.N.Y. Sept. 15, 2017) (quoting *Guest v. Hansen*, 603 F.3d 15, 20 (2d Cir. 2010) (citing *Lattanzio v. COMTA*, 481 F.3d 137, 139 (2d Cir. 2007))); *see also Orr v. McGinty*, No. 1:17-cv-1280 (GLS/TWD), ECF Dkt. No. 47 at 1 n.1, 13 (plaintiff-mothers cannot bring an action "as next of friend for their minor children" and directing the Clerk to amend the caption to remove all references to the minor children). Similarly, "a non-attorney parent must be represented by counsel in bringing an action on behalf of his or her child." *Amato v. McGinty*, 2017 WL 4083575, at *4 (quoting *Cheung v. Youth Orchestra Found. of Buffalo, Inc.*, 906 F.2d 59, 61 (2d Cir. 1990)).

***7** Therefore, the Court does not construe the amended complaint to include any claims or causes of action brought on behalf of C.A.B. The Court also recommends that the Clerk be directed to amend the docket to remove all references to C.A.B.

### 2. Section 1983

Section 1983 provides redress for a deprivation of federally protected rights by persons acting under color of state law. 42 U.S.C. § 1983; *Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 155-57 (1978). To state a claim under Section 1983, a plaintiff must allege both that: (1) a right secured by the Constitution or laws of the United States was violated, and (2) the right was violated by a person acting under the color of state law, or a "state actor." *West v. Atkins*, 487 U.S. 42, 48-49 (1988).

As noted, Plaintiff has named Judge McGinty as the sole defendant in his "judicial" and "individual" capacity. However, and as Plaintiff was previously informed in the related action, Plaintiff's Section 1983 claims against Judge McGinty are barred by the Eleventh Amendment and judicial immunity.[7] *See Orr v. McGinty*, No. 1:17-cv-1280 (GLS/TWD), ECF Dkt. No. 47 at

 © 2026 Thomson Reuters. No claim to original U.S. Government Works. 

*4 (dismissing Amato's Section 1983 claims against Judge McGinty with prejudice); *Treistman v. McGinty*, No. 1:16-cv-1403, 2018 WL 4078262, at *1 (N.D.N.Y. Aug. 27, 2018) (finding the plaintiff's claims against the individual defendants in their official capacity as Family Court employees are barred by the Eleventh Amendment); *see also Amato v. McGinty*, 2017 WL 4083575, at *4. The same result is required here.

7 Judicial immunity shields judges from suit to the extent that they are sued in their individual capacities. *See Ying Jing Gan v. City of N.Y.*, 996 F.2d 522, 529 (2d Cir. 1993); *Martinez v. Queens Cty. Dist. Attorney*, No. 12-CV-06262, 2014 WL 1011054, at *8 n. 8 (E.D.N.Y. Mar. 17, 2014), *aff'd*, 596 F. App'x 10 (2d Cir. 2015); *McKnight v. Middleton*, 699 F.Supp.2d 507, 521-25 (E.D.N.Y. 2010), *aff'd*, 434 F. App'x 32 (2d Cir. 2011). The Eleventh Amendment, on the other hand, shields judges from suit to the extent that they are sued in their official capacities. *See Ying Jing Gan*, 996 F.2d at 529 ("To the extent that ... a claim is asserted against the state official in his official capacity, he may assert the state's Eleventh Amendment immunity against suit.").

Judges are absolutely immune from suit for damages for any actions taken within the scope of their judicial responsibilities. *Mireles v. Waco*, 502 U.S. 9, 11 (1991). Generally, "acts arising out of, or related to, individual cases before the judge are considered judicial in nature." *Bliven v. Hunt*, 579 F.3d 204, 210 (2d Cir. 2009). "Even allegations of bad faith or malice cannot overcome judicial immunity." *Id.* at 209 (citations omitted). This is because, "[w]ithout insulation from liability, judges would be subject to harassment and intimidation [.]" *Young v. Selsky*, 41 F.3d 47, 51 (2d Cir. 1994). In addition, Section 1983 provides that "in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable." 42 U.S.C. § 1983.

Judicial immunity does not apply when the judge takes action "outside" his judicial capacity, or when the judge takes action that, although judicial in nature, is taken "in absence of jurisdiction." *Mireles*, 502 U.S. at 9-10; *see also Bliven*, 579 F.3d at 209-10 (describing actions that are judicial in nature). But "the scope of [a] judge's jurisdiction must be construed broadly where the issue is the immunity of the judge." *Stump v. Sparkman*, 435 U.S. 349, 356 (1978).

***8** As detailed above, Plaintiff has brought several allegations against Judge McGinty, including that he violated her constitutional rights, conspired with other individuals, endangered the welfare of C.A.B., denied her "accommodations," and retaliated against her for being outspoken about Judge McGinty's purported abuses and discrimination against mothers and children. However, all of the acts described in the amended complaint arise out of family court proceedings before Judge McGinty, the functions complained of were ones normally performed by a judge, and Plaintiff was a party who dealt with Judge McGinty in his judicial capacity. Plaintiff has not alleged that Judge McGinty took nonjudicial actions or that he acted in the absence of jurisdiction. Notwithstanding Plaintiff's allegations that Judge McGinty made improper adverse rulings against Plaintiff during the custody proceedings with malice or in retaliation for her "exposing" abuses in Family Court, Judge McGinty was still performing judicial functions and presiding over Plaintiff's custody action in Ulster County Family Court. As stated above, a judge does not lose his or her judicial immunity because he is accused of acting with malice or corruptly. Accordingly, Judge McGinty is entitled to judicial immunity. *See Mireles*, 502 U.S. at 12-13; *Bliven*, 579 F.3d at 210.

Judge McGinty is also protected under sovereign immunity. In *Gollomp v. Spitzer*, the Court held that the New York Unified Court System is an "arm of the State" and affirmed the dismissal of a Section 1983 claim against a judge under sovereign immunity. 568 F.3d 355, 365-68 (2d Cir. 2009). Likewise, Plaintiff has filed her complaint against Judge McGinty, a member of the Ulster County Family Court, which is part of the New York Unified Court System. N.Y. Const. Art. VI, §§ 1, 13. All of Judge McGinty's alleged constitutional violations occurred while he acted within his official capacity as a Family Court judge in adjudicating a custody dispute. Therefore, all claims against Judge McGinty should be dismissed, because "a suit against a state official in his official capacity is, in effect, a suit against the state itself, which is barred." *Walker v. Fam. Ct. Judge Catherine Cholakis*, No. 1:19-CV-1288 (LEK/CFH), 2020 WL 3503158, at *7 (N.D.N.Y. June 29, 2020) (citations omitted).

Moreover, Plaintiff is not entitled to injunctive relief because she "allege[d] neither the violation of a declaratory decree, nor the unavailability of declaratory relief." *See Montero v. Travis*, 171 F.3d 757, 761 (2d Cir. 1999). Nor is Plaintiff entitled to declaratory relief because she alleges only past conduct and does not seek to prevent an ongoing or future violation of federal

 © 2026 Thomson Reuters. No claim to original U.S. Government Works. 

law. *See Shtrauch v. Dowd*, 651 F. App'x 72, 74 (2d Cir. 2016) (citing *Blanciak v. Allegheny Ludlum Corp.*, 77 F.3d 690, 698 (3d Cir. 1996) (concluding that relief sought was not prospective where the “specific allegations target[ed] past conduct” and the “remedy [was] not intended to halt a present, continuing violation of federal law”)).

The Court therefore recommends dismissing Plaintiff's Section 1983 claims against Judge McGinty under the doctrines of judicial and sovereign immunity and as frivolous. *See* 28 U.S.C. § 1915(e)(2)(B)(i), (iii); *see also Montero*, 171 F.3d at 760 (“A complaint will be dismissed as ‘frivolous’ when ‘it is clear that the defendants are immune from suit.’ ” (quoting *Neitzke*, 490 U.S. at 327)).

### 3. Title VII

Title VII provides that “[i]t shall be unlawful employment practice for an employer ... to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex or national origin.” 42 U.S.C. § 2000e-2(a); *see Vega v. Hempstead Union Sch. Dist.*, 801 F.3d 72, 86 (2d Cir. 2015) (A plaintiff asserting a Title VII discrimination claim must allege facts showing that “(1) the employer took adverse action against him and (2) his race, color, religion, sex, or national origin was a motivating factor in the employment decision.”).

Here, Plaintiff claims in conclusory fashion that Judge McGinty “discriminates” against women in violation of Title VII. Plaintiff does not, however, allege employment discrimination or that she is or was an employee of Judge McGinty and, therefore, the claim is frivolous.[8] *See Jones v. Thomas*, No. 20-CV-5581, 2020 WL 5077026, at *4 (S.D.N.Y. Aug. 27, 2020) (dismissing plaintiff's claims pursuant to Title VII where the plaintiff did not allege that he is or was an employee of any of the defendants); *Basora-Jacobs v. Palevsky*, No. 20-CV-1675, 2020 WL 3868710, at *2 (E.D.N.Y. July 10, 2020) (dismissing the plaintiff's Title VII claims because “[t]he complaint does not list Plaintiff's employer as a defendant in the case caption.”). Since Title VII claims are to be raised against a plaintiff's employer, there is no proper Title VII defendant in this case. *Militinska-Lake v. Kirnon*, No. 1:20-CV-443 (TJM/CFH), 2021 WL 3569807, at *9 (N.D.N.Y. Aug. 11, 2021) (“As a general rule, the proper defendant in a Title VII case against a State entity is the actual department or agency that employs the plaintiff.”) (citation omitted).

8 Moreover, “[i]t is axiomatic that ‘Title VII does not impose liability on individuals.’ ” *Hamlett v. City of Binghamton*, No. 3:20-CV-880 (GLS/ML), 2021 WL 3723091, at *2 (N.D.N.Y. Aug. 23, 2021) (quoting *Lore v. City of Syracuse*, 670 F.3d 127, 169 (2d Cir. 2012) (citations omitted)); *see also Golden v. Syracuse Reg'l Airport Auth.*, No. 5:20-CV-1566 (MAD/TWD), 2021 WL 485731, at *1 (N.D.N.Y. Feb. 10, 2021) (“[I]ndividuals are not subject to liability under Title VII.”) (quotation marks and citation omitted).

***9** Accordingly, the Court recommends that Plaintiff's Title VII claims against Judge McGinty be dismissed.

### 4. ADA

Title II of the ADA provides that “no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.” 42 U.S.C. § 12132. To plead an ADA claim, a plaintiff must allege: “(1) that [s]he is a qualified individual with a disability; (2) that [s]he was excluded from participation in a public entity's services, programs or activities or was otherwise discriminated against by a public entity; and (3) that such exclusion or discrimination was due to [her] disability.” *Fulton v. Goord*, 591 F.3d 37, 43 (2d Cir. 2009) (internal quotation marks and citation omitted).

As discussed, Plaintiff has utilized a form ADA complaint, largely alleges disability due to PTSD, and claims Judge McGinty denied her "accommodations" and "retaliated" against her during family court proceedings. For reasons set forth below, Plaintiff's purported disability-based claims under the ADA must also be dismissed.

First, to the extent Plaintiff asserts ADA claims against Judge McGinty in his individual capacity, such claims fail as a matter of law because there is no individual liability under Title II of the ADA. *See Garcia v. SUNY Health Scis. Ctr. of Brooklyn*, 280 F.3d 98, 107 (2d Cir. 2001) (holding that defendants cannot be sued in their individual capacities for violating Title II of the ADA); *see also Spiegel v. Schulmann*, 604 F.3d 72, 79 (2d Cir. 2010) ("the retaliation provision of the ADA ... cannot provide for individual liability"); *Myers v. N.Y.-Dep't of Motor Vehicles*, No. 06-CV-4583, 2013 WL 3990770, at *9 (E.D.N.Y. Aug. 5, 2013) ("[N]umerous district courts in this [C]ircuit have persuasively held that there is no individual liability under Title I or Title II of the ADA, regardless of whether the claim is brought in an individual or official capacity."); *Netti v. Ayers*, No. 17-CV-976, 2017 WL 7542494, at *18 (Oct. 5, 2017) ("individuals cannot be held liable under the ADA") (citing cases). Thus, Plaintiff's ADA claims against Judge McGinty, insofar as he is sued in his individual capacity, must be dismissed.[9]

9 The Court notes judicial immunity also extends to Plaintiff's ADA claims for damages. *See Orr v. McGinty*, No. 1:17-cv-01280, Dkt. No. 47 at 5 (citing *Brooks v. Onondaga Cty. Dep't of Children & Family Servs.*, 5:17-CV-1186, 2018 WL 2108282, at *4 (N.D.N.Y. Apr. 9, 2018) (collecting cases)).

Even if the Court assumes for purposes of initial review only, that Plaintiff was disabled during the state court proceedings within the meaning of the ADA, and Judge McGinty was a proper defendant in his official capacity,[10] her assertions do not show that Judge McGinty discriminated or retaliated against her because of her PTSD. It is not enough for Plaintiff to state that she is disabled and that bad things happened to her in the state court proceedings; she must allege facts from which a reasonable trier of fact could infer that these things happened to her because of discrimination on the basis of her disability. The use of "buzz words" such as "disability," "accommodation," and "retaliation" does not cure a pleading defect such as the one herein. *See Barr v. Abrams*, 810 F.2d 358, 362 (2d Cir. 1986) (the Second Circuit has repeatedly held, "complaints relying on the civil rights statutes are insufficient unless they contain some specific allegations of fact indicating a deprivation of rights, instead of a litany of general conclusions that shock but have no meaning"). She does not allege any facts suggesting a plausible connection between her alleged PTSD and "LAS" and the actions that were taken against her in the state court proceedings. Rather, Plaintiff merely states she "has no recollection of being handed a slip" regarding the March 8, 2020, court date that she missed. Moreover, Plaintiff's passing reference that she "requested audio of the court hearings so that I can have time to listen to prepare as *pro se* for continuing proceedings" or that Judge McGinty "refused to give me enough time to get proper expensive counsel needed to fight such a traumatic 3rd trial" are insufficient to state a claim. (Dkt. No. 6 at 13, 14.)

10 As observed in the related case, "It is questionable whether defendants, even when sued in their official capacities, are public entities." *Orr v. McGinty*, No. 1:17-cv-01280, Dkt. No. 74 at 4 n.4 (citing *Santiago v. Garcia*, 70 F. Supp. 2d 84, 89 (D. P.R. 1999) (holding state court judge sued in official capacity was not "public entity" under Title II); *but see Shollenberger v. N.Y. State Unified Court Sys.*, 18 CV 9736, 2019 WL 2717211, at *5 (S.D.N.Y. June 28, 2019) (allowing ADA claims seeking prospective injunctive relief to proceed against Chief Judge of the State of New York and Chief Administrator of the New York State Unified Court System because "a plaintiff need only allege the defendant[s] ha[ve] responsibility for the alleged conduct and the ability to redress the alleged violations")).

***10** In light of the foregoing, the Court recommends dismissing Plaintiff's ADA claims, if any, against Judge McGinty. *See* 28 U.S.C. § 1915(e)(2)(B)(ii).

### 5. Domestic Relations Exception, *Rooker-Feldman*[11] Doctrine, and *Younger*[12] Abstention

11 *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983) and *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 414-17 (1923).

12 *Younger v. Harris*, 401 U.S. 37 (1971).

Due to the nature of Plaintiff's amended complaint, it is difficult to precisely determine exactly which doctrines apply, but based upon the relief sought, even if Plaintiff had sued an appropriate defendant, her claims are also likely barred by the *Rooker-Feldman* doctrine, domestic relations exception, and/or *Younger* abstention.

### a. Domestic Relations Exception

Under the domestic relations exception to the jurisdiction of federal courts, cases involving divorce, alimony, and child custody remain outside federal court jurisdiction. *Marshall v. Marshall*, 547 U.S. 293, 308 (2006). This exception is based upon a policy dictating that the states have traditionally adjudicated marital and child custody disputes, developing "competence and expertise in adjudicating such matters, which federal courts lack." *Thomas v. N.Y. City*, 814 F. Supp. 1139, 1146 (E.D.N.Y. 1993).

Here, in order to return custody of C.A.B. to Plaintiff, or to "enjoin" the state court's orders, this Court would have to re-determine Judge McGinty's decision in the custody matter. This would also involve resolving factual disputes regarding custody and visitation. This court is divested of jurisdiction to make such determinations. *See Ankenbrandt v. Richards*, 504 U.S. 689, 703 (1992); *Hernstadt v. Hernstadt*, 373 F.2d 316, 317 (2d Cir. 1967) (it has been uniformly held that federal courts do not adjudicate cases involving the custody of minors and rights of visitation); *Sobel v. Prudenti*, 25 F. Supp. 3d 340, 353 (E.D.N.Y. 2014) (the domestic relations exception "divests the federal courts of power to issue divorce, alimony, and child custody decrees"). Accordingly, to the extent the amended complaint is seeking a child custody decree from the Court, the court lacks jurisdiction to adjudicate such a claim. *See, e.g.*, *Amato v. McGinty*, No. 17-CV-593 (MAD/ATB), 2017 WL 9487185, at *8 (N.D.N.Y. Jun. 6, 2017) *report and recommendation adopted* by 2017 WL 4083575 (N.D.N.Y. Sept. 15. 2017).

### b. *Rooker-Feldman* Doctrine

In the event the relevant underlying state court proceedings are concluded, such claims may be barred by the *Rooker-Feldman* doctrine. This doctrine divests the federal court of jurisdiction to consider actions that seek to overturn state court judgments. *Fernandez v. Turetsky*, No. 12-CV-4092, 2014 WL 5823116, at *3 (E.D.N.Y. Nov. 7, 2014) (citing *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005); *Dorce v. City of New York*, 2 F.4th 82, 101 (2d Cir. 2021) ("The *Rooker-Feldman* doctrine bars federal district courts from hearing cases that in effect are appeals from state court judgments, because the Supreme Court is the only federal court with jurisdiction over such cases.")). The doctrine also bars the federal court from considering claims that are "inextricably intertwined" with a prior state court determination. *Fernandez v. Turetsky*, 2014 WL 5823116, at *3 (quoting *Johnson v. Smithsonian Inst.*, 189 F.3d 180, 185 (2d Cir. 1999)).

***11** The *Rooker-Feldman* doctrine applies where the federal court plaintiff: (1) lost in state court, (2) complains of injuries caused by the state court judgment, (3) invites the district court to review and reject the state court judgment, and (4) commenced the district court proceedings after the state court judgment was rendered. *Vossbrinck v. Accredited Home Lenders, Inc.*, 773 F.3d 423, 426 (2d Cir. 2014).

Here, it appears Plaintiff "lost" in state court, complains of injuries caused by the state court judgments, and asks this Court to invalidate the state court's judgments regarding child custody. *See* Dkt. No. 6 at 29. Thus, as currently drafted, the amended complaint is likely barred under the *Rooker-Feldman* doctrine.

### c. *Younger* Abstention

In the event the underlying state court proceedings remain pending, Plaintiff's request for this Court's involvement may also implicate the *Younger* abstention doctrine. *See generally Younger v. Harris*, 401 U.S. 37 (1971). Under the *Younger* doctrine, "federal courts [must] abstain from taking jurisdiction over federal constitutional claims that involve or call into question ongoing state proceedings." *Diamond "D" Constr. Corp. v. McGowan*, 282 F.3d 191, 198 (2d Cir. 2002); *see also Huffman v. Pursue, Ltd.*, 420 U.S. 592, 602 n.16 (1975) (extending the equitable principles that required abstention with respect to injunctive relief in *Younger* apply to requests for declaratory relief as well).

In *Sprint Communications, Inc. v. Jacobs*, 571 U.S. 69 (2013), the Supreme Court clarified that the *Younger* doctrine is limited to three exceptional circumstances, including (1) state criminal prosecutions; (2) civil enforcement, or "quasi-criminal," proceedings; and (3) "civil proceedings involving certain orders that are uniquely in furtherance of the state courts' ability to perform their judicial functions." *Id.* at 72-73. "[T]here can be no doubt that a custody dispute ... raises important state interests." *Graham v. N.Y. Ctr. for Interpersonal Dev.*, No. 15-CV-459, 2015 WL 1120121, at *2-3 (E.D.N.Y. Mar. 12, 2015) (holding that plaintiff's claim for injunctive relief was barred by *Younger* when the plaintiff sought to challenge an ongoing family court custody proceeding) (citation omitted).

Accordingly, to the extent that the child custody issues are continuing in Family Court, the Court should abstain from interfering with that process. *See, e.g.*, *Cogswell v. Rodriguez*, 304 F. Supp. 2d 350, 357 (E.D.N.Y. 2004) (applying *Younger* abstention in child support matter); *Lomtevas v. New York State*, No. 03-CV-2359, 2003 WL 22937688, at *2 (E.D.N.Y. Nov. 13, 2003) (same).

## IV. LEAVE TO AMEND

Generally, when the court dismisses a *pro se* complaint *sua sponte*, the court should afford the plaintiff the opportunity to amend at least once, however, leave to replead may be denied where any amendment would be futile. *Hill v. Curcione*, 657 F.3d 116, 123-24 (2d Cir. 2011); *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993). Futility is present when the problem with the plaintiff's causes of action is substantive such that better pleading will not cure it. *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (citation omitted).

Here, better pleading could not cure the Court's lack of subject matter jurisdiction based on the immunities described above, which appear to apply to all claims except for Plaintiff's ADA claim seeking prospective injunctive relief.

***12** Nevertheless, in light of Plaintiff's *pro se* status and in an abundance of caution, as was the case in the related action, better pleading—addressing the deficiencies outlined above—could potentially save Plaintiff's ADA claim for prospective injunctive relief against Judge McGinty from being *sua sponte* dismissed on initial review. *See, e.g.*, *Orr v. McGtiny*, No. 1:17-cv-1280 (GLS/TWD), ECF Dkt. No. 47 at 10-11.[13] As such, the Court recommends this claim be dismissed without prejudice and with leave to amend.[14]

13 At this juncture, the Court expresses no opinion on the sufficiency of any such claim.

14 If the District Court adopts this Report-Recommendation, and if Plaintiff chooses to file a second amended complaint, the pleading must comply with Rules 8 and 10 of the Federal Rules. The revised pleading will replace the amended complaint, and must be a wholly integrated and complete pleading that does not rely upon or incorporate by reference any pleading or document previously filed with the Court. *See Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994) ("It is well established that an amended complaint ordinarily supersedes the original and renders it of no legal effect."). The revised pleading should not attempt to resurrect any claims dismissed with prejudice in this action and/or claims brought or could have been brought in the related case. *See Lopez v. Jet Blue Airways*, No. 12-CV-0057,

2012 WL 213831, at *2 (E.D.N.Y. Jan. 24, 2012) ("Under the doctrine of *res judicata*, once a final judgment has been entered on the merits of a case, that judgment will bar any subsequent litigation by the same parties or those in privity with them concerning the transaction, or series of connected transactions, out of which the [first] action arose.").

**V. PLAINTIFF'S ADDRESS**

Under this Court's rules, an unrepresented litigant is under a duty to inform the Court of any address changes in writing. L.R. 10.1(c)(2). For the orderly disposition of cases, it is essential that litigants honor their continuing obligation to keep the Court informed of address changes. To date, all the Court's Orders mailed to Plaintiff's address on file have been returned as undeliverable. (Dkt. Nos. 10, 12, 15.)

In an extraordinary display of special solicitude to Plaintiff as a *pro se* litigant, the Clerk was directed to mail a one-time courtesy copy of each Order at the confidential and redacted address indicated on the envelope of Plaintiff's submissions to the Court and as verbally provided to the Clerk on December 1, 2021. (*See generally* Docket Report; *see* Dkt. Nos. 11, 14. [15] ) However, Plaintiff must file a change of address IN WRITING within thirty days, and she must continue to submit any address changes to the Court as long as her action is pending. "Failure to notify the Court of a change of address in accordance with L.R. 10.1(c)(2) may result in the dismissal of any pending action." L.R. 41.2(b).

15 While not entirely clear to the Court, it appears this "confidential" address differs from Plaintiff's residence, while the PO Box on file is the business address for Plaintiff's "home office" Punished 4 Protecting. (*See* Dkt. No. 16.)

**VI. CONCLUSION**

**WHEREFORE**, after carefully considering this matter, and for the reasons explained above, it is hereby

**ORDERED** that Plaintiff's IFP application (Dkt. No. 16) is **GRANTED**; [16] and it is further

16 Plaintiff should note that although her IFP application has been granted, she will still be required to pay fees that she may incur in this action, including copying and/or witness fees.

***13 RECOMMENDED** that Plaintiff's amended complaint (Dkt. No. 6) be *sua sponte* dismissed in its entirety pursuant to 28 U.S.C. § 1915(e); and it is further

**RECOMMENDED** that all claims be **DISMISSED WITH PREJUDICE** except that Plaintiff's ADA claim for prospective injunctive relief be **DISMISSED WITHOUT PREJUDICE AND WITH LEAVE TO REPLEAD**; and it is further

**RECOMMENDED** that the Clerk be directed to amend the docket to remove all references to C.A.B., and it is further

**ORDERED** that Plaintiff must file a **CHANGE OF ADDRESS** within **THIRTY DAYS** of the date of the Report-Recommendation, and she must continue to submit any address changes to the Court as long as this action is pending; failure to notify the Court of a change of address in accordance with L.R. 10.1(c)(2) may result in the dismissal of any pending action; and it is further

**ORDERED** that the Clerk mail a copy of this Order and Report-Recommendation to Plaintiff at the address listed on the docket and to mail a **FINAL** one-time courtesy copy to the confidential and redacted address indicated on the envelope of Dkt. No. 16 and as verbally provided to the Clerk on December 1, 2021.

Pursuant to 28 U.S.C. § 636(b)(1), Plaintiff has fourteen days within which to file written objections to the foregoing report. [17] Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**. *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing

*Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1) (Supp. 2013); Fed. R. Civ. P. 72, 6(a).

17 If you are proceeding *pro se* and are served with this Order and Report-Recommendation by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the Order and Report-Recommendation was mailed to you to serve and file objections. Fed. R. Civ. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. Fed. R. Civ. 6(a)(1)(C).

**All Citations**

Not Reported in Fed. Supp., 2022 WL 226798

**End of Document**

© 2026 Thomson Reuters. No claim to original U.S. Government Works.

2022 WL 16646531
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

James P. SCOTT, Plaintiff,
v.
Dinah M. CROSSWAY, Esq., et al., Defendants.

No. 1:22-CV-500 (BKS/CFH)
|
Signed November 3, 2022

**Attorneys and Law Firms**

James P. Scott, 8815 Frostwood Court, Tampa, Florida 33634, Plaintiff pro se.

## REPORT-RECOMMENDATION AND ORDER

Christian F. Hummel, United States Magistrate Judge

### I. In Forma Pauperis

***1** Plaintiff pro se James P. Scott ("plaintiff") purported to commence this action on May 13, 2022, by filing a complaint. See Dkt. No. 1 ("Compl."). In lieu of paying this Court's filing fee, he submitted a motion to proceed in forma pauperis ("IFP"). See Dkt. No. 2. The undersigned has reviewed plaintiff's IFP motion and determines that he financially qualifies to proceed IFP for the purpose of filing.[1]

1 Plaintiff is advised that although he has been granted IFP status, he is still required to pay any fees and costs he may incur in this action.

### II. Initial Review

### A. Legal Standard

Section 1915[2] of Title 28 of the United States Code directs that, when a plaintiff seeks to proceed IFP, "the court shall dismiss the case at any time if the court determines that ... the action or appeal (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). It is a court's responsibility to determine that a plaintiff may properly maintain his complaint before permitting him to proceed with his action.

2 The language of 1915 suggests an intent to limit availability of IFP status to prison inmates. See 28 U.S.C. § 1915(a)(1) (authorizing the commencement of an action without prepayment of fees "by a person who submits an affidavit that includes a statement of all assets such prisoner possesses"). The courts have construed that section, however, as making IFP status available to any litigant who can meet the governing financial criteria. See, e.g., Fridman v. City of N.Y., 195 F. Supp. 2d 534, 536 n.1 (S.D.N.Y. 2002).

 © 2026 Thomson Reuters. No claim to original U.S. Government Works. 

Where, as here, the plaintiff proceeds pro se, “the court must construe his [or her] submissions liberally and interpret them to raise the strongest arguments that they suggest.” Kirkland v. Cablevision Sys., 760 F.3d 223, 224 (2d Cir. 2014) (per curiam) (citation and internal quotation marks omitted). This does not mean the Court is required to accept unsupported allegations that are devoid of sufficient facts or claims. Although detailed allegations are not required at the pleading stage, the complaint must still include enough facts to provide the defendants with notice of the claims against them and the grounds on which these claims are based. See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Bell Atlantic v. Twombly, 550 U.S. 544, 555-56 (2007). Pro se litigants are “not exempt ... from compliance with relevant rules of procedural and substantive law[.]” Traguth v. Zuck, 710 F.2d 90, 95 (2d Cir. 1983) (citation omitted). Ultimately, the plaintiff must plead “enough facts to state a claim to relief that is plausible on its face.” Twombly, 550 U.S. at 570. “A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.” Iqbal, 556 U.S. at 678 (citation omitted).

Pleading guidelines are set forth in the Federal Rules of Civil Procedure (“Fed. R. Civ. P.”). Specifically, Rule 8 provides that a pleading which sets forth a claim for relief shall contain “a short and plain statement of the claim showing that the pleader is entitled to relief.” FED. R. CIV. P. 8(a)(2). “The purpose ... is to give fair notice of the claim being asserted so as to permit the adverse party the opportunity to file a responsive answer, prepare an adequate defense and determine whether the doctrine of res judicata is applicable.” Flores v. Graphtex, 189 F.R.D. 54, 55 (N.D.N.Y. 1999) (internal quotation marks and citations omitted). Rule 8 also requires the pleading to include “a short and plain statement of the grounds for the court's jurisdiction” and “a demand for the relief sought....” FED. R. CIV. P. 8(a)(1), (3). Although “[n]o technical form is required,” the Federal Rules make clear that each allegation contained in the pleading “must be simple, concise, and direct.” Id. at 8(d)(1).

***2** Further, Rule 10 provides in pertinent part that:

> [a] party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances. A later pleading may refer by number to a paragraph in an earlier pleading. If doing so would promote clarity, each claim founded on a separate transaction or occurrence – and each defense other than a denial – must be stated in a separate count or defense.

FED. R. CIV. P. 10(b). This serves the purpose of “provid[ing] an easy mode of identification for referring to a particular paragraph in a prior pleading[.]” Flores, 189 F.R.D. at 55 (internal quotation marks and citations omitted). A complaint that fails to comply with the pleading requirements “presents far too [ ] heavy [a] burden in terms of defendants’ duty to shape a comprehensive defense and provides no meaningful basis for the Court to assess the sufficiency of their claims.” Gonzales v. Wing, 167 F.R.D. 352, 355 (N.D.N.Y. 1996). The Second Circuit has held that “[w]hen a complaint does not comply with the requirement that it be short and plain, the court has the power, on its own initiative ... to dismiss the complaint.” Salahuddin v. Cuomo, 861 F.2d 40, 42 (2d Cir. 1988) (citation omitted). However, “[d]ismissal ... is usually reserved for those cases in which the complaint is so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised.” Id. (citation omitted). If dismissal is warranted and the plaintiff is pro se, the court generally affords the plaintiff leave to amend the complaint. See Simmons v. Abruzzo, 49 F.3d 83, 86-87 (2d Cir. 1995).

**B. Plaintiff's Complaint**

Plaintiff purports to bring this action against Dinah M. Crossway, Esq., (“Attorney Crossway”) Counsel for the New York State Department of Motor Vehicles (“DMV”); “Unknown State Actors” in the DMV; and Judge Frank P. Milano of the New York State Court of Claims. Compl. at 2. In 2017, while residing in Florida, plaintiff was informed by the Florida DMV that his driver's license was being temporarily suspended because of “an ineligible status reported to the National Driver Registry” by the New York State DMV's Driver Improvement Unit. Id. at 3. Plaintiff was told that his Florida license would be suspended until

New York State removed the ineligible status. See id. Plaintiff "had not driven in [New York] since the year 2005 and had no knowledge of any issues regarding his [New York] driving privileges." Id. Plaintiff "file[d] an Order to Show Cause and Verified Petition in Albany County Supreme Court seeking primary relief of the removal of the hold in the National Driver Registry [and] ... requested secondary relief of monetary damages in the proceeding." Id. Plaintiff submitted a "certified letter" to the DMV "demanding it remove the hold under his name in the National Driver Registry. Plaintiff enclosed a copy of his Florida Driving Abstract certified by the Director of Motor Vehicles in the State of Florida." Id. at 4. Plaintiff states that, "[t]his abstract, which is the only valid driving record in this case, did not show any driving infractions in [New York] after the year 2005." Id.

***3** On an unspecified date, prior to or during an Article 78 proceeding, plaintiff contends that "Unknown State Actors" in the DMV falsified documents related to his driving record "for the purpose of inducing the court to dismiss the petition for relief." Compl. at 3-4. "The [ ] Article 78 proceeding Decision and Order denied the state agency's motion to dismiss and [p]laintiff's secondary relief for monetary damages with the Supreme Court citing its lack of jurisdiction to award in the special proceeding." Id. at 3. Plaintiff asserts that during the Article 78 proceeding, Attorney Crossway "committed the act of civil fraud by providing false statements and falsified records and/or documents pertaining to [p]laintiff's New York [S]tate driving records ... for the purpose of inducing the court to dismiss [p]laintiff's petition for relief." Id. at 4. Attorney Crossway "provided affirmations in the Article 78 stating that she had not only had personal knowledge of the case as a thirteen-year staff attorney for the NYS DMV Driver Improvement Unit, but had also consulted with unnamed authorities in the NYS DMV and had reviewed the records provided by them." Id. Plaintiff contends that Attorney Crossway was "aware that [p]laintiff did not have any court cases, open revocations or relicensing applications in [New York] when she made these false statements." Id.

"The case ended in a final Judgment entered on April 15, 2019, with [p]laintiff prevailing. The Supreme Court ordered the Driver Improvement Unit to restore [p]laintiff's [New York] driving privileges forthwith. On May 15, 2019, the state agency's appeals period expired and it restored [New York] driving privileges." Compl. at 3. "Plaintiff served Notice of Intention to File Claim on the [New York State] Attorney General's Office on April 26, 2019, 11 days after the final Judgment was entered. The Claim itself was not filed until the state agency complied with the court order to remove the hold from the National Driver Registry." Id.

In adjudicating plaintiff's Court of Claims case, he asserts that Judge Milano "violated [p]laintiff's due process by unlawfully dismissing the claim, preventing him from seeking compensation for losses incurred from the wrongful actions against him." Compl. at 4. Judge Milano's "Decision and Order did not decide on the arguments brought forth by the defense in its motion to dismiss but instead was effectively a review of the administrative agency's actions, which the Court of Claims has no jurisdiction over." Id. at 5. Plaintiff states that Judge Milano's decision contradicted the Supreme Court's "Judgment determining the state agency's actions to be arbitrary and capricious and an error of law. Judge Milano did not address any of the issues settled by the Supreme Court." Id. He also asserts that "[t]he Supreme Court, not the Court of Claims, is the court of original jurisdiction or court of original instance in this case." Id. Plaintiff contends that prior to filing the present complaint, he "exhausted all remedies in [New York State] courts by appealing Judge Milano's Decision and Order to the Third Department and motioning for leave to appeal in the Court of Appeals." Id.

Plaintiff seeks four million dollars "for the wrongful deprivation of his property and for civil fraud committed by the unknown state actors and their counsel Dinah M. Crossway, Esq." Compl. at 6. Plaintiff "does not request relief in the form of monetary damages from Honorable Frank P. Milano in this complaint, but instead asks the Court for relief of all orders made in violation of law, that due process be allowed, and the Court issue further relief as it deems appropriate." Id.

### C. Analysis

Plaintiff's complaint can be construed as raising Fourteenth Amendment substantive and procedural due process claims brought pursuant to 42 U.S.C. § 1983.

 © 2026 Thomson Reuters. No claim to original U.S. Government Works. 

### 1. The Rooker-Feldman Doctrine

As an initial matter, the Court lacks subject matter jurisdiction over the claims against Judge Milano under the Rooker-Feldman doctrine. See Rooker v. Fidelity Trust Co., 263 U.S. 413 (1923); District of Columbia Court of Appeals v. Feldman, 460 U.S. 462 (1983). "The Rooker-Feldman doctrine provides that the lower federal courts lack subject matter jurisdiction over a case if the exercise of jurisdiction over that case would result in the reversal or modification of a state court judgment." Hachamovitch v. DeBuono, 159 F.3d 687, 693 (2d Cir. 1998). For the Rooker-Feldman doctrine to apply: (1) "the federal-court plaintiff must have lost in state court[ ]"; (2) "the plaintiff must complain[ ] of injuries caused by [a] state-court judgment[ ]"; (3) "the plaintiff must invit[e] district court review and rejection of [that] judgment[ ]"; and (4) "the state-court judgment must have been rendered before the district court proceedings commenced[.]" Hoblock v. Albany Cnty. Bd. of Elections, 422 F.3d 77, 85 (2d Cir. 2005) (citations and quotation marks omitted).

***4** All four elements are met here: (1) plaintiff's claim seeking monetary damages for the DMV's actions in the Court of Claims was dismissed by Judge Milano—i.e., he "lost" in state court; (2) plaintiff states that he was "wrongfully denied" the opportunity to seek compensation for the DMV's actions because of the dismissal; (3) he asks this Court for relief from "all orders made in violation of law [and] that due process be allowed"; and (4) Judge Milano's decision was rendered prior to plaintiff filing the present action. Compl. at 6; see also Scott v. State of New York, No. 2019-041-061, slip op. at 1-4 (Ct. Cl. Sept. 30, 2019).[3] Accordingly, the Court is barred from reviewing plaintiff's complaint against Judge Milano and it is recommended that the claim against Judge Milano be dismissed without prejudice. See Fraccola v. Grow, 670 F. App'x 34, 35 (2d Cir. 2016) (summary order) (internal citation omitted) ("The Rooker-Feldman doctrine precludes district court review as a matter of subject matter jurisdiction. When a court lacks subject matter jurisdiction, it lacks the power to dismiss with prejudice[.]").

3 All unpublished opinions cited in this Report-Recommendation and Order, unless otherwise noted, have been provided to plaintiff. New York Court of Claims decisions can be searched online through the following domain: https://ww2.nycourts.gov/COURTS/nyscourtofclaims/overview-decisions.shtml.

The undersigned comes to a different conclusion as to Attorney Crossway and the "Unknown State Actors." The Second Circuit has distinguished between complaints that "alleged injuries were caused by state-court [a] judgment[ ]" and those that complain of "third party's actions [that were] simply ratified, acquiesced in, or left unpunished by it." Sung Cho v. City of New York, 910 F.3d 639, 645-46 (2d Cir. 2018) (quoting Hoblock v. Albany Cty. Bd. of Elections, 422 F.3d 77, 88 (2d Cir. 2005)). The former is barred by the Rooker-Feldman doctrine and the latter is not. See id. at 645-46. Plaintiff's complaint against Attorney Crossway and the "Unknown State Actors" does not allege that their conduct was the result of a state-court judgment, but instead contends that their conduct was left unchecked by the Article 78 proceeding and Judge Milano's decision. See Compl. at 3-5. As plaintiff's claims against them do not "derive" from a state-court judgment, the claims are not barred by the Rooker-Feldman doctrine. Sung Cho, 910 F.3d at 646 (quoting Hoblock, 422 F.3d at 87). Nevertheless, the claims against Attorney Crossway and the "Unknown State Actors" are barred by the statute of limitations.

### 2. Statute of Limitations

"The statute of limitations for claims brought pursuant to § 1983 is determined by state law, and in New York State, the statute of limitations for actions brought pursuant to § 1983 is three years." Johnson v. Fargione, No. 1:20-CV-764 (LEK/CFH), 2021 WL 1406683, at *3 (N.D.N.Y. Feb. 17, 2021). "Under federal law, which governs the accrual of claims brought under § 1983, ... a claim accrues once the plaintiff knows or has reason to know of the injury which is the basis of the action[.]" Veal v. Geraci, 23 F.3d 722, 724 (2d Cir. 1994) (citations and quotation marks omitted). Plaintiff challenges statements made, and documents submitted, during his Article 78 proceeding. See Compl. at 4. Plaintiff does not provide the date of the proceeding. See generally Compl. Instead, plaintiff provides the date of the "final Judgment" on April 15, 2019.[4] Id. at 3. It is likely that plaintiff's claims accrued at the time he heard and observed the alleged falsified statements and documents. See id. The Appellate Division of

the Third Department stated that plaintiff commenced his Article 78 proceeding in August 2018. See Scott v. State, 1217, 149 N.Y.S.3d 297 (2021), appeal dismissed, leave to appeal denied, 184 N.E.3d 889 (2022). However, neither plaintiff, the Court of Claims, or the Third Department have stated the date of the proceeding. Thus, the undersigned cannot perform a more specific analysis. Assuming for the purposes of initial review that the final judgment from the Article 78 proceeding was the time that plaintiff knew of his injuries from the "Unknown State Actors" and Attorney Crossway's conduct, he would have had to file his complaint three years later, by April 15, 2022. Plaintiff filed his claim on May 13, 2022. See generally Compl. Thus, the claims are time-barred. See LaPietra v. City of Albany Police Dep't, No. 9:19-CV-1527 (TJM/TWD), 2020 WL 5891888, at *10 (N.D.N.Y. Oct. 5, 2020) ("[A]lthough the statute of limitations is an affirmative defense, where it is clear from the face of the complaint that a claim is barred by the applicable statute of limitations, the claim is subject to dismissal for failure to state a claim on initial review.") (citing Pino v. Ryan, 49 F.3d 51, 53 (2d Cir. 1995) (holding that dismissal of "a complaint is based on an indisputably meritless legal theory, for purposes of dismissal under section 1915(d), may be based on a defense that appears on the face of the complaint.")), report and recommendation adopted, 2020 WL 7021589 (N.D.N.Y. Nov. 30, 2020).

4 The undersigned notes that in Judge Milano's Court of Claims Decision, he stated that plaintiff's "driving privileges were restored pursuant to a CPLR Article 78 Judgment of the Albany County Supreme Court issued on April 4, 2019." Scott, No. 2019-041-061, slip op. at 1.

***5** To the extent it appears from the only date that plaintiff provided, April 15, 2019, that he filed his complaint less than one month late on May 13, 2022, "[e]quitable tolling permits a plaintiff to avoid the bar of the statute of limitations if despite all due diligence he is unable to obtain vital information bearing on the existence of his claim." Valdez ex rel. Donely v. United States, 518 F.3d 173, 182 (2d Cir. 2008) (citation omitted); see also Johnson v. Nyack Hosp., 86 F.3d 8, 12 (2d Cir. 1996) ("Equitable tolling allows courts to extend the statute of limitations beyond the time of expiration as necessary to avoid inequitable circumstances."). "A litigant seeking equitable tolling bears the burden of establishing two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way." Victorial v. Burge, 477 F. Supp. 2d 652, 654 (S.D.N.Y. 2007) (quotation and citation omitted); see also Boos v. Runyon, 201 F.3d 178, 185 (2d Cir. 2000) ("The burden of demonstrating the appropriateness of equitable tolling ... lies with the plaintiff."). "Equitable tolling is a rare remedy to be applied in unusual circumstances, not a cure-all for an entirely common state of affairs." Wallace v. Kato, 549 U.S. 384, 396 (2007).

There is nothing in plaintiff's complaint to suggest that equitable tolling could save his time-barred claims concerning the actions taken before and during the Article 78 proceeding, or the subsequent final judgment. See generally Compl. First, the undersigned is not aware of anything that prevented plaintiff from simultaneously filing suit in federal court and in the New York Court of Claims. See also Frankel v. J.P. Morgan Chase & Co., 907 N.Y.S.2d 281, 284 (2010) ("[T]here is no strict legal bar to the existence of simultaneous actions concerning the same subject matter in state and federal court[.]"). Rather, the Court of Claims denied jurisdiction over plaintiff's federal and state constitutional challenges which he now brings to this Court. See Scott, No. 2019-041-061, slip op. at 3 (citation omitted) ("To the extent claimant alleges federal or state constitutional causes of action against defendant, the law is settled that 'claims for damages against the State based on alleged deprivations of rights under the US Constitution are beyond the jurisdiction of the Court of Claims[.]' "); cf. Reed v. Medford Fire Dep't, Inc., 806 F. Supp. 2d 594, 613-14 (E.D.N.Y. 2011) (citation omitted) ("[T]he Second Circuit has explicitly held that a plaintiff is not barred from bringing a Section 1983 claim '[even where ... it is based upon the same cause of action as the Article 78 proceeding', if the plaintiff is seeking damages that were unavailable in the Article 78 court.").

To the extent plaintiff was in the process of filing his claim in the Court of Claims and appealing the Court of Claims decision in state court, "[t]he reference to 'knowledge of injury' [in the equitable tolling standard] does not suggest that the statute [of limitations] does not begin to run until the claimant has received judicial verification that the defendants' acts were wrongful." Veal v. Geraci, 23 F.3d 722, 724 (2d Cir. 1995); cf. Abbas v. Dixon, 480 F.3d 636, 641 (2d Cir. 2007) ("We have held ... that a plaintiff's pursuit of a state remedy, such as an Article 78 proceeding, does not toll the statute of limitations for filing a claim pursuant to section 1983."). This suggests that plaintiff's claims are time-barred not by the date of the final judgment, but by the earlier date of the Article 78 proceeding. Moreover, "[c]ongress has neither explicitly nor implicitly required exhaustion of state remedies to bring section 1983 claims under the [ ] Fourteenth Amendment[ ] outside of the context of prisoner suits." Bal

v. Manhattan Democratic Party, No. 16-CV-2416 (PKC), 2018 WL 6528766, at *4 (S.D.N.Y. Dec. 12, 2018); see also Chase Grp. All. LLC v. City of N.Y. Dep't of Fin., 620 F.3d 146, 153 (2d Cir. 2010) (citation omitted) ("This is not by any means to say that valid Section 1983 claims based on due process violations require exhaustion of state remedies. But '[w]hen § 1983 claims allege procedural due process violations, we nonetheless evaluate whether state remedies exist because that inquiry goes to whether a constitutional violation has occurred at all.' ").

***6** Based on the foregoing, it appears that equitable tolling is inapplicable and cannot be applied to save plaintiff's time-barred claims. However, in light of plaintiff's pro se status, the lack of specific information concerning the date of the Article 78 proceeding, and the closeness in time between the expiration of the statute of limitations and the filing of plaintiff's complaint, it is recommended that the claims against Attorney Crossway and the "Unknown State Actors" not be dismissed on statute of limitations grounds but based on immunity and failure to state a claim, respectively. See Abbas, 480 F.3d at 640 (citations omitted) ("[U]nless it is unmistakably clear that the court lacks jurisdiction, or that the complaint lacks merit or is otherwise defective, we believe it is bad practice for a district court to dismiss without affording a plaintiff the opportunity to be heard in opposition. Indeed, failure to afford an opportunity to oppose a contemplated *sua sponte* dismissal may be, by itself, grounds for reversal.").

### 3. Attorney Crossway

Plaintiff does not specify whether he seeks to sue Attorney Crossway in her official or personal capacity. See generally Compl; see also Ying Jing Gan v. City of New York, 996 F.2d 522, 530 (2d Cir. 1993) (citations and quotation marks omitted) ("[I]n many cases, a complaint against public officials will not clearly specify whether officials are sued personally, in their official capacity, or both, and only [t]he course of proceedings ... will indicate the nature of the liability to be imposed[.]"); Green v. Schmelzle, 210 F. Supp. 3d 454, 466 (W.D.N.Y. 2016) (quoting Frank v. Relin, 1 F.3d 1317, 1326 (2d Cir. 1993)) ("[W]hen the face of a complaint fails to state clearly whether a government official is being sued in his official capacity, or his individual capacity, or both, courts look to the course of the proceedings to determine the nature of the liability to be imposed. Thus, a plaintiff who has not clearly identified in her complaint the capacity in which the defendant is sued should not have the complaint automatically construed as focusing on one capacity to the exclusion of the other."). Plaintiff's allegations concern Attorney Crossway's actions taken in her capacity as counsel for the DMV before and during the Article 78 proceeding. See Compl. at 4-5. At this early stage, the undersigned will consider whether either a personal or official capacity claim can survive initial review.

As to an official-capacity suit, "the DMV is an agency acting on behalf of the State of New York and is entitled to sovereign immunity under the Eleventh Amendment in [a] § 1983 claim." Sandoval v. Dep't of Motor Vehicles State of New York, 333 F. Supp. 2d 40, 43 (E.D.N.Y. 2004) (citing Feingold v. State of New York, 366 F.3d 138, 149 (2d Cir. 2004) ("[W]e find that [the plaintiff's] § 1983 claim is clearly barred by the Eleventh Amendment because the DMV is a state agency")). Courts have extended Eleventh Amendment immunity to government attorneys representing state agencies who are sued in their official capacities. See Wolters v. Att'y Gen., N.Y. State, No. 12-CV-1544 (KAM/SMG), 2012 WL 1416706, at *3 (E.D.N.Y. Apr. 24, 2012) ("As officials who represent agencies of the State of New York, the Queens County District Attorney, the Richmond County District Attorney, the New York State DMV Commissioner, and the New York State Attorney General are all entitled to immunity under the Eleventh Amendment."); Clark v. Schroeder, 847 F. App'x 92, 94 (2d Cir.) (summary order) (affirming dismissal of a complaint against the Commissioner of the DMV because of Eleventh Amendment immunity), cert. denied, 142 S. Ct. 341 (2021). To the extent plaintiff seeks to sue Attorney Crossway in her official capacity, she is entitled to Eleventh Amendment immunity as an attorney for the New York State DMV.

Next, to the extent plaintiff seeks to sue Attorney Crossway in her personal capacity, she is entitled to absolute immunity. It is well settled that prosecutors are absolutely immune from suit. See Anilao v. Spota, 27 F.4th 855, 863 (2d Cir. 2022) ("The doctrine of absolute immunity applies broadly to shield a prosecutor from liability for money damages (but not injunctive relief) in a § 1983 lawsuit, even when the result may be that a wronged plaintiff is left without an immediate remedy."). "[T]he Supreme Court extended prosecutorial immunity to government attorneys involved in administrative proceedings." Roache v. Att'y Gen.'s

Off., No. 9:12-CV-1034 (LEK/DEP), 2013 WL 5503151, at *14 (N.D.N.Y. Sept. 30, 2013) (citing Butz v. Economou, 438 U.S. 478, 512-13 (1978) ("We think that adjudication within a federal administrative agency shares enough of the characteristics of the judicial process that those who participate in such adjudication should also be immune from suit for damages.")) "The Second Circuit, in turn, has extended the same immunity to government attorneys prosecuting and defending civil actions." Id. (emphasis added) (citing Barrett v. U.S., 798 F.2d 565, 572 (2d Cir. 1986) ("The controversial nature of the proceeding[s], the risk that a losing defendant will seek to retaliate by a suit attacking the propriety of the government attorney's conduct, and the existence of alternative safeguards against the attorney's misconduct ... militate in favor of absolute immunity."); see also Mangiafico v. Blumenthal, 471 F.3d 391, 396 (2d Cir. 2006) (citation and quotation marks omitted) ("As a general principle, a government attorney is entitled to absolute immunity when functioning as an advocate of the state in a way that is intimately associated with the judicial process.... We have expanded this principle to apply to the functions of a government attorney that can fairly be characterized as closely associated with the conduct of litigation or potential litigation in civil suits—including the defense of such actions.").

***7** Plaintiff seeks to sue Attorney Crossway for representations to the court in plaintiff's Article 78 proceeding concerning his New York driver's license. See Compl. at 4. Specifically, plaintiff asserts that Attorney Crossway "knowingly misrepresented material facts of this case to the court ... [and] maintained that these arbitrary actions were taken with discretion and authority to effectively revoke another state's driver's license." Id. at 5.

As plaintiff's claims concern only Attorney Crossway's actions taken in representing the New York State DMV, she is entitled to absolute immunity. See Hirsch v. Quinones, No. 21-CV-6311 (LTS), 2021 WL 3773640, at *3 (S.D.N.Y. Aug. 23, 2021) ("[The p]laintiff's claims against [the defendant] are based on actions within the scope of her official duties as a government attorney representing the State of New York in the New York State Court of Claims in cases brought by [the p]laintiff against the State of New York. Therefore, these claims are dismissed because they seek monetary relief against a defendant who is immune from suit."). As such, Attorney Crossway is entitled to Eleventh Amendment and absolute immunity whether plaintiff seeks to sue her in her official or personal capacity, respectively. Thus, the undersigned recommends dismissing the claims against her with prejudice and without leave to amend. See Bouchard v. Thomson, No. 1:17-CV-1156 (LEK/CFH), 2018 WL 1665213, at *5 (N.D.N.Y. Apr. 4, 2018) (dismissing amended complaint without leave to amend where "the claims [the p]laintiff asserts against [the d]efendants are irreparable because they are barred either by sovereign or prosecutorial immunity."), aff'd sub nom. Bouchard v. Olmsted, 775 F. App'x 701 (2d Cir. 2019) (summary order).

### 4. Judge Milano

As an alternative to the applicability of the Rooker-Feldman doctrine, were the Court to have subject matter jurisdiction over plaintiff's claims against Judge Milano, Judge Milano would be immune from suit. Cf. Fraccola, 670 F. App'x at 35 n.1 (internal citation omitted) ("We interpret the District Court's memorandum decision and order dismissing [the plaintiff's] claims as resting on the Rooker-Feldman doctrine and in the alternative on judicial immunity grounds. Because the Rooker-Feldman doctrine implicates the subject matter jurisdiction of the District Court, the doctrine's application in this case should have been analyzed first and is dispositive."). Plaintiff asserts that Judge Milano "violated plaintiff's due process by unlawfully dismissing the claim, preventing him from seeking compensation for losses incurred from the wrongful actions taken against him." See Compl. at 4.

"Generally, States are immune from suit under the terms of the Eleventh Amendment and the doctrine of sovereign immunity." Whole Woman's Health v. Jackson, 142 S. Ct. 522, 532 (2021). "The immunity recognized by the Eleventh Amendment extends beyond the states themselves to 'state agents and state instrumentalities' that are, effectively, arms of a state." Woods v. Rondout Valley Cent. Sch. Dist. Bd of Educ., 466 F.3d 232, 236 (2d Cir. 2006) (citation omitted). Eleventh Amendment immunity has been extended to judges of the New York State Unified Court System. See Gollomp v. Spitzer, 568 F.3d 355, 368 (2d Cir. 2009) (citation omitted) ("[T]he New York State Unified Court System is unquestionably an 'arm of the State,' and is entitled to Eleventh Amendment sovereign immunity." (citing N.Y. Const. Art. VI, § 29(a) (emphasis added) ("The legislature shall provide for the allocation of the cost of operating and maintaining the court of appeals, the appellate division of the supreme court in each

judicial department, the supreme court, [and] the court of claims ....")); see also Amato v. McGinty, No. 1:21-CV-00860 (GLS/TWD), 2022 WL 226798, at *8 (N.D.N.Y. Jan. 26, 2022) (dismissing claim against Ulster Family Court judge on sovereign and judicial immunity grounds); Aron v. Becker, 48 F. Supp. 3d 347, 367 (N.D.N.Y. 2014) ("[A]ll claims for monetary damages against ... [County] Judge Becker in [his] official capacities are dismissed with prejudice[ ]" because of Eleventh Amendment immunity); Zeigler v. New York, 948 F. Supp. 2d 271, 282 (N.D.N.Y. 2013) ("All claims against [Administrative] Judge Tormey in his official capacity for money damages will also be dismissed as they are barred by the Eleventh Amendment."). As the Court of Claims is a part of the New York State Unified Court System and to the extent plaintiff seeks to sue Judge Milano in his official capacity, Judge Milano is entitled to Eleventh Amendment immunity.

***8** Plaintiff states that he does not seek monetary damages from Judge Milano "but instead asks the Court for relief from all orders made in violation of law, that due process be allowed, and that the Court issue further relief as it deems appropriate." Compl. at 6. "In Ex parte Young, 209 U.S. 123 (1908), the Supreme Court established an exception to state sovereign immunity in federal actions where an individual brings an action seeking injunctive relief against a state official for an ongoing violation of law or the Constitution." Brown v. New York, 975 F. Supp. 2d 209, 222 (N.D.N.Y. 2013). "Under the doctrine, a suit may proceed against a state official in his or her official capacity, notwithstanding the Eleventh Amendment, when a plaintiff '(a) alleges an ongoing violation of federal law and (b) seeks relief properly characterized as prospective.' " Id. (quoting In re Deposit Ins. Agency, 482 F.3d 612, 618 (2d Cir. 2007)). "[D]eclaratory relief is not permitted under *Ex parte Young* when it would serve to declare only past actions in violation of federal law: retroactive declaratory relief cannot be properly characterized as prospective." Id. at 225.

Plaintiff appears to be asking only for retrospective relief—that this Court determine that Judge Milano's Decision and Order was incorrect, contrary to law, and/or unconstitutional. See id. As plaintiff seeks only declaratory relief concerning Judge Milano's past conduct, the claim "must be dismissed because the Eleventh Amendment 'does not permit judgments against state officers declaring that they violated federal law in the past.' " Brown, 975 F. Supp. 2d at 226 (quoting Finch v. New York State Office of Children & Family Serv., 499 F. Supp. 2d 521, 538, n.138 (S.D.N.Y. 2007)).

It is also "well-established that officials acting in a judicial capacity are entitled to absolute immunity against § 1983 actions, and this immunity acts as a complete shield to claims for money damages." Montero v. Travis, 171 F.3d 757, 760 (2d Cir. 1999) (per curiam). "[J]udicial immunity does not bar a claim for prospective injunctive and declaratory relief." Shtrauch v. Dowd, 651 F. App'x 72, 73 (2d Cir. 2016) (summary order). However, because plaintiff only challenges past conduct and "does not allege that [Judge Milano's] conduct constitutes a continuing constitutional violation, nor does he allege that it may recur[,]" plaintiff's claim is not one for prospective relief and Judge Milano is entitled to absolute immunity. Jackson v. Stanford, No. 16-CV-9702 (AJN), 2019 WL 13166075, at *2 (S.D.N.Y. Jan. 7, 2019) (citation omitted).

To defeat judicial immunity, plaintiff contends that Judge Milano "act[ed] without jurisdiction, power or authority to dismiss [plaintiff's] claim for damages with no basis in law." Compl. at 6. Plaintiff contends that Judge Milano's decision "was effectively a review of the administrative agency's actions, which the Court of Claims has no jurisdiction over.... Judge Milano did not address any of the issues settled by the Supreme Court. The Supreme Court, not the Court of Claims, is the court of original jurisdiction or court of original instance in this case." Id. at 5.

"[A] judge is not immune for actions, though judicial in nature, taken in the complete absence of all jurisdiction." Mireles v. Waco, 502 U.S. 9, 12 (1991) (per curiam). "[T]he Court of Claims has no subject matter jurisdiction to entertain" "review of an administrative agency's determination" "as review of such determinations are properly brought only in Supreme Court in a[n] article 78 proceeding[.]" City of New York v. State, 847 N.Y.S.2d 768, 771 (App. Div. 2007) (citations omitted); see also Madura v. State, 784 N.Y.S.2d 214, 216 (App. Div. 2004) (citation omitted) ("As a court of limited jurisdiction, the Court of Claims has no jurisdiction to grant strictly equitable relief[.]"). Additionally, "the filing requirements of Court of Claims Act § 10 are jurisdictional in nature, and the failure to comply with such requirements deprives the Court of Claims of subject matter jurisdiction[.]" Hughes v. State, 963 N.Y.S.2d 350, 351 (App. Div. 2013); see also Frederick v. State, 874 N.Y.S.2d 762, 765 (Ct. Cl. 2009) (citations omitted) ("Court of Claims Act § 10 is more than a statute of limitations; it is a jurisdictional prerequisite to

bringing and maintaining an action in this Court[.] Failure to timely comply with the statutory filing requirements of the Court of Claims Act constitutes a fatal jurisdictional defect requiring dismissal[.]").

***9** Judge Milano did not exercise jurisdiction over the merits of plaintiff's claim and instead dismissed plaintiff's claim because it was untimely filed under Court of Claims Act § 10(3) and because plaintiff failed to state a cause of action. See Scott, No. 2019-041-061, slip op. at 1-4. Judge Milano did not review the DMV's actions or make any determination as to their lawfulness. See id. at 1-4. Plaintiff states that Judge Milano "did not decide on the arguments brought forth by the defense in its motion to dismiss[.]" Compl. at 5. However, Judge Milano's decision states that "Defendant moves, in lieu of answering, to dismiss the claim ... as untimely ... and because the claim fails to state a cause of action[.]" Scott, No. 2019-041-061, slip op. at 1. It was on those two grounds that Judge Milano dismissed plaintiff's claim. See id. at 2-4. Plaintiff's disagreement with Judge Milano's decision is insufficient to establish that he was acted absent jurisdiction. See McKnight v. Middleton, 699 F. Supp. 2d 507, 524 (E.D.N.Y. 2010) ("[J]udicial immunity is not stripped based on the propriety of her particular rulings, where there is no question as to her subject matter jurisdiction over the case."), aff'd, 434 F. App'x 32 (2d Cir. 2011) (summary order). As Judge Milano was not acting absent all jurisdiction, were this Court to have subject matter jurisdiction over plaintiff's claim against him, Judge Milano would be immune from suit. As the undersigned has determined that this Court lacks subject matter jurisdiction over plaintiff's claim against Judge Milano, the complaint must be dismissed without prejudice. See supra at 8. However, because Judge Milano is immune from suit, amendment would be futile, and the undersigned recommends dismissing the complaint against him without prejudice but without leave to amend. See, e.g., Brady v. Ostrager, 834 F. App'x 616, 619 (2d Cir. 2020) (summary order) ("Given Justice Ostrager's judicial immunity, the district court correctly held that amendment would be futile.").

### 5. "Unknown State Actors"

In addition to plaintiff's claims against the "Unknown State Actors" being barred by the statute of limitations, plaintiff has failed to sufficiently state a claim for relief. See supra at 9-14. Plaintiff states that the "Unknown State Actors" "violated [his] civil rights under the Fourteenth Amendment" and "committed the act of civil fraud[.]" Compl. at 3. Plaintiff states that they "falsified records and/or documents pertaining to [p]laintiff's New York [S]tate driving record for the purpose of inducing the court to dismiss the petition for relief." Id. at 3-4. Plaintiff also asserts that they "deprived him of his vested property" "and acted with intent to harm" him. Id. at 5.

To the extent plaintiff asserts that the "Unknown State Actors" deprived him of his property, "any constitutional procedural due process claim arising from an alleged deprivation of personal property is not cognizable under § 1983 because New York law provides an adequate post-deprivation remedy." Pittman v. Billings, 20-CV-0422 (GLS/ATB), 2020 WL 2079440, at *3 (N.D.N.Y. Apr. 30, 2020) (collecting cases); see Hellenic Am. Neighborhood Action Comm. v. City of New York, 101 F.3d 877, 882 (2d Cir. 1996) ("[T]here is no constitutional violation (and no available Section 1983 action) when there is an adequate state postdeprivation procedure to remedy a random, arbitrary deprivation of property or liberty."). The Second Circuit has held that "an Article 78 proceeding constitutes an adequate postdeprivation procedure under the Due Process Clause[.]" Hellenic, 101 F.3d at 881. "Article 78 proceedings provide an adequate remedy for those who seek to challenge any action or inaction by an administrative agency or officers of state or local government." Chaney v. City of Albany, No. 6:16-CV-1185 (NAM/TWD), 2019 WL 3857995, at *13 (N.D.N.Y. Aug. 16, 2019) (citing Hourihan v. Lafferty, 58 F. Supp. 2d 10, 14-15 (N.D.N.Y. 1999)).

Plaintiff pursued an Article 78 proceeding about the deprivation of his driver's license and does not claim that the remedy was inadequate. See Compl. at 3-4. Rather, plaintiff received some of the relief sought—removal of the hold on his license—through the Article 78 proceeding. See id. at 3; see W.D. v. Rockland Cnty., 521 F. Supp. 3d 358, 390 (S.D.N.Y. 2021) (dismissing a procedural due process claim where "an Article 78 proceeding was available, as [the p]laintiffs pursued this very remedy and obtained the relief they sought...."). Additionally, to the extent plaintiff asserts that the "Unknown State Actors" and Attorney Crossway violated plaintiff's rights during the Article 78 proceeding, he could have instituted a second Article 78 proceeding. See Stubbs v. de Simone, No. 04-CV-5755 (RJH/GWG), 2005 WL 2429913, at *10, *15 (S.D.N.Y. Sept. 30, 2005) (stating

that “[a]n adequate postdeprivation remedy existed because [the plaintiff] was free to institute a new Article 78 proceeding to challenge the alleged[ly]” conduct that occurred through the dismissal and appeal of his first Article 78 proceeding). As there is an adequate postdeprivation state remedy to address plaintiff's claims, plaintiff has failed to state a cognizable claim for a procedural due process violation.

***10** Next, “[t]he Due Process Clause of the Fourteenth Amendment has a substantive component that bars certain government actions regardless of the fairness of the procedures used to implement them.” Johnson v. Rodeway Inn Syracuse, No. 5:22-CV-0396 (GLS/ML), 2022 WL 2308102, at *7 (N.D.N.Y. June 1, 2022) (quoting Cnty. of Sacramento v. Lewis, 523 U.S. 833, 840 (1998)) (quotation marks omitted), report and recommendation adopted, 2022 WL 2292045 (N.D.N.Y. June 24, 2022), appeal dismissed (Sept. 22, 2022). “It is well-settled that when an alleged right is not fundamental, the protections of substantive due process do not apply.” Marino v. City Univ. of New York, 18 F. Supp. 3d 320, 339 (E.D.N.Y. 2014) (citing Tessler v. Paterson, 451 F. App'x 30, 32-33 (2d Cir. 2011) (summary order)). Further, to plead a substantive due process claim, “the defendant's conduct must also be found to be ‘so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience.’ ” Johnson, 2022 WL 2308102, at *7 (quoting Lewis, 523 U.S. at 848 n.8). “[C]onduct intended to injure in some way unjustifiable by any government interest is the sort of official action most likely to rise to the conscience-shocking level.” Lewis, 523 U.S. at 849.

“The Constitution protects a fundamental right to travel within the United States,” Selevan v. N.Y. Thruway Auth., 584 F.3d 82, 99 (2d Cir. 2009), but “travelers do not have a constitutional right to the most convenient form of travel, and minor restrictions on that travel simply do not amount to the denial of a fundamental right[.]” Town of Southold v. Town of E. Hampton, 477 F.3d 38, 54 (2d Cir. 2007) (alterations, citations, and quotation marks omitted). “To the contrary, the Supreme Court has repeatedly affirmed that the states have a paramount interest in highway safety and may summarily suspend or revoke a driver's license with due process.” Annan v. State of New York Dep't of Motor Vehicles, No. 15-CV-1058 (CBA/CLP), 2016 WL 8189269, at *5 (E.D.N.Y. Mar. 2, 2016) (citing Mackey v. Montrym, 443 U.S. 1, 19 (1979) (holding that Massachusetts statute allowing for summary suspension of a driver's license with availability of prompt postsuspension hearing was constitutional); Dixon v. Love, 431 U.S. 105, 115 (1977) (holding that Illinois statute providing for summary suspension of a driver's license with availability of a postdeprivation hearing was constitutional)), aff'd, 662 F. App'x 85 (2d Cir. 2016) (summary order). “[T]he right to maintain a driver's license is substantial and entitled to due process protection, but has not been recognized as the type ‘implicit in the concept of ordered liberty, or deeply rooted in this Nation's history and tradition.’ ” Yandow v. Kronau, No. 1:09-CV-903 (GLS/DRH), 2011 WL 282449, at *5 (N.D.N.Y. Jan. 24, 2011) (quoting Immediato v. Rye Neck Sch. Dist., 73 F.3d 454, 460-61 (2d Cir. 1996)).

Plaintiff's contention that he was deprived of his driver's license through its suspension, therefore, does not establish a fundamental right. Further, the allegations do not constitute conduct that “shocks the conscience.” See generally Compl.; see also Cox v. Warwick Valley Cent. Sch. Dist., 654 F.3d 267, 275 (2d Cir. 2011) (citation omitted) (“It is not enough that the government act be ‘incorrect or ill-advised’; it must be conscience-shocking.”). As such, plaintiff has failed to state a plausible substantive due process claim and it is recommended that plaintiff's claim against the “Unknown State Actors” be dismissed. See Bey v. D.C., No. 17-CV-6203 (MKB), 2018 WL 5777021, at *6 (E.D.N.Y. Nov. 1, 2018) (dismissing the plaintiff's “right to travel claim[ ]” because “[t]he seizure of [the p]laintiff's vehicle alone is insufficient to state a claim for violation of his constitutional right to travel. [The p]laintiff retained his ability and constitutional right to travel even if inconvenienced by the seizure of his motor vehicle.”). Mindful of plaintiff's pro se status, the undersigned nevertheless recommends dismissing plaintiff's complaint against the “Unknown State Actors” with prejudice and without leave to amend as plaintiff cannot state a procedural due process claim where there is an adequate state remedy to address his claims and he cannot state a substantive due process claim where there is no fundamental right to a driver's license.[5] See MacInerney v. Allen, No. 52:1-CV-0818 (LEK/ML), 2022 WL 561649, at *5 (N.D.N.Y. Feb. 24, 2022) (quoting Cuoco v. Moritsugu, 222 F.3d 99, 112 (2d Cir. 2000)), report and recommendation adopted, 2022 WL 1025841 (N.D.N.Y. Apr. 6, 2022) (“An opportunity to amend is not required, however, where ‘the problem with [the plaintiff's] causes of action is substantive’ such that ‘better pleading will not cure it.’ ”); see also Annan, 662 F. App'x at 86 (affirming the district court's dismissal of the complaint—which included the plaintiff's

right to travel claim—“without leave to amend, because, ... [the] allegations failed to state a claim, and an amendment would have been futile.”).

5 It is also likely that the claims against the “Unknown State Actors” are subject to dismissal on immunity grounds. Plaintiff has not identified the “Unknown State Actors”; therefore, the undersigned cannot perform a more specific analysis. Compl. at 3-4. However, Eleventh Amendment immunity extends to state actors. See Gollomp, 568 F.3d at 366 (“The immunity recognized by the Eleventh Amendment extends beyond the states themselves to state agents ... that are, effectively, arms of a state.”); Mullin v. P & R Educ. Servs., Inc., 942 F. Supp. 110, 114 (E.D.N.Y. 1996) (“Because the doctrine of sovereign immunity extends to state officials sued in their official capacity, the complaint is dismissed to the extent that it alleges a § 1983 violation by [the] Commissioner” of the DMV).

### 6. Supplemental Jurisdiction

***11** As to plaintiff's claims against Attorney Crossway and the “Unknown State Actors” for “civil fraud”, the Court may exercise supplemental jurisdiction over state law claims when “a plaintiff's federal and state claims present ‘but one constitutional case’ and ‘derive from a common nucleus of operative fact.’ ” Shepherd v. Nandalawaya, No. 6:19-CV-06406 (EAW), 2020 WL 1963126, at *4 (W.D.N.Y. Apr. 21, 2020) (quoting United Mine Workers v. Gibbs, 383 U.S. 715, 725 (1966)). “When a federal court dismisses federal claims, the court may decline to exercise supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367(c)(3)[.]” Id. (citing Carlsbad Tech., Inc. v. HIF Bio, Inc., 556 U.S. 635, 639 (2009) (“A district court's decision whether to exercise that jurisdiction after dismissing every claim over which it had original jurisdiction is purely discretionary.”)). “Once all federal claims have been dismissed, the balance of factors will ‘usual[ly]’ point toward a declination.” Lundy v. Catholic Health Sys. of Long Island, Inc., 711 F.3d 106, 1118 (2d Cir. 2013). Plaintiff's purported state law claims arise from the same set of facts as his § 1983 claims concerning the documents and statements related to his Article 78 proceeding. See generally Compl. As the undersigned is recommending dismissal of plaintiff's purported federal claims, it is recommended that the Court decline to exercise supplemental jurisdiction over plaintiff's “civil fraud” state law claims.[6] Compl. at 5.

6 In the alternative, the fraud claims could be dismissed because there is a heightened pleading standard for fraud claims that plaintiff's complaint fails to meet. Under Rule 9(b), “[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally.” FED. R. CIV. P. 9(b). “[T]he complaint must ‘(1) detail the statements (or omissions) that the plaintiff contends are fraudulent, (2) identify the speaker, (3) state where and when the statements (or omissions) were made, and (4) explain why the statements (or omissions) are fraudulent.’ ” MacInerney, 2022 WL 561649, at *5 (quoting Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co. of N.Y., 375 F.3d 168, 187 (2d Cir. 2004)). Additionally, “although mental states may be pleaded ‘generally,’ a plaintiff must nonetheless allege facts ‘that give rise to a strong inference of fraudulent intent.’ ” Id. (quoting Lerner v. Fleet Bank, N.A., 459 F.3d 273, 290-91 (2d Cir. 2006)). Plaintiff asserts that Attorney Crossway and the “Unknown State Actors” provided fraudulent documents and statements during the Article 78 proceeding. Compl. at 3-4. Plaintiff does not explain what was stated in the documents or what statements were made during the proceeding that were allegedly false. See id. at 3-4. The only specific statements plaintiff provides are Attorney Crossway's affirmations that “she had not only had personal knowledge of the case as a thirteen-year staff attorney for the NYS DMV Driver Improvement Unit, but had also consulted with unnamed authorities in the NYS DMV and had reviewed the records provided by them.” Id. at 4. Plaintiff does not explain which statement was allegedly false. See id. Plaintiff has also failed to allege facts “that give rise to a strong inference of fraudulent intent.” Lerner, 459 F.3d at 290-91. As such, were the Court to exercise subject matter jurisdiction over the fraud claims, they would likely need to be dismissed for failure to state a claim. See MacInerney, 2022 WL 561649, at *4-5.

### III. Conclusion

**WHEREFORE**, for the reasons set forth herein, it is hereby

**ORDERED**, that plaintiff's application to proceed in forma pauperis (Dkt. No. 2) is **GRANTED** for purposes of filing only; and it is further

**RECOMMENDED**, that plaintiff's complaint (Dkt. No. 1) against Dinah M. Crossway and the "Unknown State Actors" be **DISMISSED WITH PREJUDICE and WITHOUT LEAVE TO AMEND**; and it is further

**RECOMMENDED**, that plaintiff's complaint (Dkt. No. 1) against Frank P. Milano be **DISMISSED WITHOUT PREJUDICE and WITHOUT LEAVE TO AMEND**; and it is

***12 ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order in accordance with Local Rules.

**IT IS SO ORDERED**.

Pursuant to 28 U.S.C. § 636(b)(1), plaintiff has **FOURTEEN (14)** days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW**. Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993) (citing Small v. Sec'y of Health and Human Servs., 892 F.2d 15 (2d Cir. 1989)); see also 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72 & 6(a).[7]

7 If you are proceeding pro se and are served with this Report-Recommendation & Order by mail, three (3) additional days will be added to the fourteen (14) day period, meaning that you have seventeen (17) days from the date the Report-Recommendation & Order was mailed to you to serve and file objections. FED R. CIV. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. Id. § 6(a)(1)(c).

**All Citations**

Not Reported in Fed. Supp., 2022 WL 16646531

**End of Document** © 2026 Thomson Reuters. No claim to original U.S. Government Works.

2023 WL 34543
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

James P. SCOTT, Plaintiff,
v.
Dinah M. CROSSWAY, Esq., et al., Defendants.

1:22-cv-500 (BKS/CFH)
|
Signed January 4, 2023

**Attorneys and Law Firms**

Plaintiff pro se: James P. Scott, Tampa, FL 33635.

**MEMORANDUM-DECISION AND ORDER**

Brenda K. Sannes, Chief United States District Judge:

***1** Plaintiff pro se James P. Scott filed this action asserting causes of action under 42 U.S.C. § 1983 and state law and seeking leave to proceed in forma pauperis ("IFP"). (Dkt. Nos. 1, 2). This matter was referred to United States Magistrate Judge Christian F. Hummel who, on November 3, 2022, issued a Report-Recommendation and Order granting Plaintiff's application to proceed IFP and recommending that: Plaintiff's claims against Defendant, the Honorable Frank P. Milano, be dismissed under the *Rooker-Feldman* doctrine [1] and as barred by sovereign and judicial immunity; Plaintiff's claims against Defendants Dinah M. Crossway, Esq. and the "Unknown State Actors" be dismissed as barred by the statute of limitations; Plaintiff's official and individual capacity claims against Attorney Crossway be dismissed as barred by sovereign immunity and absolute immunity, respectively; Plaintiff's Fourteenth Amendment claims against the "Unknown State Actors" be dismissed for failure to state a claim; and the Court decline to exercise supplemental jurisdiction and dismiss any remaining state law claims. (Dkt. No. 6). Magistrate Judge Hummel advised Plaintiff that under 28 U.S.C. § 636(b)(1), he had fourteen days within which to file written objections to the report, and that the failure to object to the report within fourteen days would preclude appellate review. (*Id.* at 28). Following the issuance of the Report-Recommendation, Plaintiff notified the Court of a change of address and requested an extension of time to file objections, which was granted. (Dkt. Nos. 7, 8, 9). Plaintiff did not file any objections to the Report-Recommendation.

1 *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923); *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983).

As no objections to the Report-Recommendation have been filed, and the time for filing objections has expired, the Court reviews the Report-Recommendation for clear error. *See Petersen v. Astrue*, 2 F. Supp. 3d 223, 228–29 (N.D.N.Y. 2012); Fed. R. Civ. P. 72(b) advisory committee's note to 1983 amendment. Having reviewed the Report-Recommendation for clear error and found none, the Court adopts the Report-Recommendation in its entirety.

For these reasons, it is hereby

**ORDERED** that Magistrate Judge Hummel's Report-Recommendation (Dkt. No. 6) is **ADOPTED**; and it is further

**ORDERED** Plaintiff's federal claims against Dinah M. Crossway and the Unknown State Actors are **DISMISSED with prejudice**; and it is further

 © 2026 Thomson Reuters. No claim to original U.S. Government Works. 

**ORDERED** that Plaintiff's claims against Frank P. Milano are **DISMISSED without prejudice and without leave to amend**; and it is further

**ORDERED** that Plaintiff's state law “civil fraud” claims against Dinah M. Crossway and the Unknown State Actors are **DISMISSED without prejudice**; and it is further

**ORDERED** that the Clerk enter judgment and close this case; it is further

**ORDERED** that the Clerk serve a copy of this Order on Plaintiff in accordance with the Local Rules.

**IT IS SO ORDERED.**

**All Citations**

Not Reported in Fed. Supp., 2023 WL 34543

**End of Document**

© 2026 Thomson Reuters. No claim to original U.S. Government Works.

2018 WL 4078262
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Ben Gary TREISTMAN, Plaintiff,
v.
Anthony MCGINTY et al., Defendants.

1:16-cv-1403 (GLS/CFH)
|
Signed 08/27/2018

**Attorneys and Law Firms**

Ben Gary Treistman, Shady, NY, pro se.

Mark G. Mitchell, New York State Attorney General, Albany, NY, for Defendants.

## SUMMARY ORDER

Gary L. Sharpe, U.S. District Judge

***1** Plaintiff *pro se* Ben Gary Treistman brings this action under 42 U.S.C. §§ 1981, 1983, and 1985(3), alleging that his due process rights were violated in connection with a child custody hearing in Ulster County Family Court. (Compl., Dkt. No. 1.) Specifically, he alleges that defendant Anthony McGinty, the Family Court judge who presided over the custody hearing involving his minor child; defendant Donna Wiener, the court secretary; and various unnamed scheduling clerks who "assist[ed] ... McGinty during [Treistman]'s [custody proceeding] as to scheduling trial dates" violated his due process rights [1] by allowing the hearing to last longer than ninety days. [2] (*Id.* at 2, 6-8.) He alleges that this violation was "motivated in part by a discriminatory purpose of gender discrimination." (*Id.* ¶¶ 26, 29, 32, 35, 38, 41, 44.) Furthermore, he alleges that the "[New York] State Family Court[ ] [System] permitted the other ... defendants to operate in a discriminatory motive and fashion, yet did nothing to correct those actions." (*Id.* ¶ 47.) Treistman seeks monetary damages as well as injunctive and declaratory relief. [3] (*Id.* ¶¶ 58-73.) Pending is defendants' motion to dismiss. (Dkt. No. 16.)

1 Treistman does not specify whether his claims concern his substantive or procedural due process rights (or both). (*See, e.g.*, Compl. ¶¶ 30, 48.)

2 Treistman premises his claims on a violation of a New York State regulation. *See* N.Y. Comp. R. & Regs. tit. 22, § 205.14 ("In any proceeding brought pursuant to section 467, 651 or 652 of the Family Court Act to determine temporary or permanent custody or visitation, once a hearing or trial is commenced, it shall proceed to conclusion within 90 days."). As alleged, the underlying custody hearing, which commenced on July 31, 2013 and ended on February 1, 2016, was clearly in excess of ninety days. (Compl. ¶ 12.) The complaint purports to assert seven counts based on the excessive length of the proceeding; however, that is only because after outlining the aggregate trial duration, (*id.* ¶ 25), Treistman adds a separate count for each "intra-trial" delay exceeding ninety days, (*id.* ¶¶ 28, 31, 34, 37, 40, 43). It is dubious whether these are separate claims.

3 Treistman does not specify whether his claims are against defendants in their personal or official capacities (or both).

### I. Sovereign Immunity


© 2026 Thomson Reuters. No claim to original U.S. Government Works.

Defendants argue that Treistman's official capacity claims are barred by the Eleventh Amendment. (Dkt. No. 16, Attach. 3 at 9-11.)

It is well settled that "absent waiver by the State or valid congressional override, the Eleventh Amendment bars a damages action against a State in federal court." *Kentucky v. Graham*, 473 U.S. 159, 169 (1985). Because New York has not waived its immunity as to any of the claims alleged and the New York State Family Court is part of the New York State Unified Court System, which is an arm of the state, the claims against it are dismissed. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984); *Gollomp v. Spitzer*, 568 F.3d 355, 365-67 (2d Cir. 2009); *Feingold v. New York*, 366 F.3d 138, 149 (2d Cir. 2004); *Robertson v. Allen*, 1:15-cv-11, 2016 WL 205381, at *9 (N.D.N.Y. Jan. 15, 2016); *McKnight v. Middleton*, 699 F. Supp. 2d 507, 521 (E.D.N.Y. 2010); *Jones v. Nat'l Commc'n and Surveillance Networks*, 409 F. Supp. 2d 456, 466-67 (S.D.N.Y. 2006), *aff'd*, 266 F. App'x 31 (2d Cir. 2008). Likewise, Treistman's claims against the remaining defendants in their official capacities as Family Court employees, (Compl. ¶¶ 3-4), are also barred by the Eleventh Amendment. *See Ying Jing Gan v. City of New York*, 996 F.2d 522, 529 (2d Cir. 1993) ("To the extent that ... a claim is asserted against the state official in his official capacity, he may assert the state's Eleventh Amendment immunity against suit."). [4]

4 Treistman attempts to circumvent this bar by arguing that sovereign immunity is abrogated by Title VI of the Civil Rights Act of 1964. (Dkt. No. 21 at 8-9.) However, Title VI only prohibits discrimination based on "race, color, or national origin," in connection with "any program or activity receiving Federal financial assistance." 42 U.S.C. § 2000d; *see Tolbert v. Queens Coll.*, 242 F.3d 58, 69 (2d Cir. 2001) ("In order to establish a claim based on [Title VI], the plaintiff must show, *inter alia*, that the defendant discriminated against him on the basis of race[.]"). Because Treistman alleges that the conduct he complains of was "motivated in part by a discriminatory purpose of gender discrimination," (Compl. ¶ 26), not race, Title VI is inapplicable. Furthermore, Treistman's alternative argument that "New York State has also waived its sovereign immunities for its officials under [Section 8 of] the Court of Claims Act," (Dkt. No. 21 at 9 n.2), is accurate, but misplaced. *See Samuel Adler, Inc., v. Noyes*, 285 N.Y. 34, 35 (1941) ("New York has not consented that any action to recover a sum of money may be brought against it in any of its tribunals other than the Court of Claims.").

## II. Absolute Judicial Immunity

***2** The Eleventh Amendment does not bar Treistman's claims against defendants in their individual capacities. *See Ying Jing Gan*, 996 F.2d at 529 ("To the extent that ... a claim is asserted against [a state official] in his individual capacity, he may assert privileges of absolute or qualified immunity but may not assert immunity under the Eleventh Amendment."). Nonetheless, defendants argue that Judge McGinty and his court clerks are entitled to absolute judicial immunity for the claims against them in their individual capacities. (Dkt. No. 16, Attach. 3 at 7-9.) In response, Treistman argues that neither Judge McGinty nor his court clerks are entitled to judicial immunity, in sum, because "[t]he docketing and scheduling of trial dates was not discretionary, and was constrained by the mandatory statute so as to be scheduled within 90 days of trial commencement." (Dkt. No. 21 at 12-18.)

Judges have absolute immunity from liability for their judicial actions, *see Bliven v. Hunt*, 579 F.3d 204, 209 (2d Cir. 2009), and are subject to liability only for non-judicial actions or judicial actions "taken in the complete absence of all jurisdiction," *Mireles v. Waco*, 502 U.S. 9, 11-12 (1991). Such an immunity "is an immunity from suit, not just from ultimate assessment of damages." *Id.* at 11. Thus, it "operates to shield judges acting in their official capacity and bars claims against [judicial] defendants in their individual capacities," *McKnight*, 699 F. Supp. 2d at 523 (internal quotation marks and citations omitted).

> [T]he necessary inquiry in determining whether a defendant judge is immune from suit is whether at the time he took the challenged action he had jurisdiction over the subject matter before him.... [T]he scope of the judge's jurisdiction must be construed broadly where the issue is the immunity of the judge. A judge will not be deprived of immunity because the action he took was in error, was done maliciously,

> or was in excess of his authority; rather, he will be subject to liability only when he has acted in the clear absence of all jurisdiction.

*Stump v. Sparkman*, 435 U.S. 349, 356-57 (1978) (footnote, internal quotation marks, and citation omitted).

Treistman argues that absolute judicial immunity is inapplicable here because the family court is one of limited jurisdiction and N.Y. Comp. R. & Regs. tit. 22, § 205.14 removes any discretion from the ministerial act of scheduling proceedings in such a way that exceeds ninety days. (Dkt. No. 21 at 15-17.)

Here, it is abundantly clear that Judge McGinty had jurisdiction over the underlying child custody proceedings. *See* N.Y. Fam. Ct. Act § 115. Even if Judge McGinty's conduct in allowing the proceedings to exceed ninety days was motivated by impropriety, as Treistman contends, it does not mean his actions were taken in the complete absence of all jurisdiction. *See Bliven*, 579 F.3d at 209 (holding "allegations of bad faith or malice cannot overcome judicial immunity"). Additionally, any error in extending the custody proceeding beyond ninety days did not affect the court's jurisdiction:

> Where the family court commences a hearing or trial to determine the issue of custody or visitation (whether permanent or temporary), [N.Y. Comp. R. & Regs. tit. 22, § 205.14] requires that the hearing or trial proceed to completion within 90 days. While this administrative rule is most salutary, there is no express provision for enforcement of the rule. If the matter is not completed within 90 days, the court does not lose jurisdiction to decide the matter; indeed, to require the parties to start over again would defeat the very purpose of the rule. Rather, the purpose of the rule would appear to be to give the parties, should the 90-day deadline approach or be exceeded, the opportunity to urge both the assigned judge and the local administrative judge to take steps to assure timely completion of the hearing or trial.

***3** Alan D. Scheinkman, West's McKinney's Forms Matrimonial and Family Law § 20:46 (April 2018) (internal citation omitted). As such, Treistman's claims against Judge McGinty in his individual capacity must fail.

Additionally, judicial immunity extends to non-judges "who perform functions closely associated with the judicial process." *Cleavinger v. Saxner*, 474 U.S. 193, 200 (1985). A clerk's acts that are performed at the direction or under the supervision of a judicial officer come under the ambit of judicial immunity. *See Bliven*, 418 F. Supp. 2d at 138; *Oliva v. Heller*, 839 F.2d 37, 40 (2d Cir. 1988) (finding that court clerks are entitled to absolute immunity where their acts are of a judicial nature). "A court's inherent power to control its docket is part of its function of resolving disputes between parties. This is a function for which judges and their supporting staff are afforded absolute immunity." *Rodriguez v. Weprin*, 116 F.3d 62, 66 (2d Cir. 1997).

Here, the complaint alleges that Weiner and other unnamed clerks "effectuated scheduling of hearing dates" in such a fashion that extended the custody hearing beyond ninety days, in violation of Treistman's due process rights. (Compl. ¶¶ 5, 25.) Treistman's argument that such acts were ministerial in nature, (Dkt. No. 21 at 12-13), is not dispositive: "[e]ven when functions that are more administrative in character have been undertaken pursuant to the explicit direction of a judicial officer, ... that officer's immunity is also available to the subordinate." *Weprin*, 116 F.3d at 67 (internal quotation marks and citation omitted). Accordingly, defendant court clerks are entitled to absolute immunity for their actions in controlling the court's docket, and the claims against them in their individual capacities are dismissed.

### III. Declaratory and Injunctive Relief

Notwithstanding the foregoing, Treistman contends that he is not barred from seeking declaratory or injunctive relief because "the complaint alleges an ongoing ... violation of [a] mandatory statute, leading to [a] continuing federal due process violation." (Dkt. No. 21 at 9 (citing Compl. ¶¶ 63, 65, 70-73).)

Indeed, if a complaint "alleges an ongoing violation of federal law and seeks relief properly characterized as prospective," then injunctive or declaratory relief is not foreclosed by immunity. *See Li v. Lorenzo*, 712 F. App'x. 21, 23-24 (2d Cir. 2017) (internal quotation marks and citations omitted) (collecting cases). However, Treistman concedes that the underlying child custody hearing "has ended with a dispositive decision." (Dkt. No. 21 at 5.) Treistman's alleged injuries stem from past conduct. (*See generally* Compl.) His speculative assertion that he "can re-petition for a similar type trial at any time, and he will face the same statutory violations with similar illegal delays," (*id.* ¶ 73), fails to convince the court that there is a plausible threat of future violations. The relief Treistman seeks is therefore entirely retrospective. *See Lorenzo*, 712 F. App'x. at 23-24. Accordingly, Treistman does not have standing to seek an injunction because there is nothing to enjoin. Likewise, Treistman is not entitled to declaratory relief because he alleges only past conduct and no ongoing or impending violation of federal law. *See Shtrauch v. Dowd*, 651 F. App'x 72, 74 (2d Cir. 2016). Even if a declaration stating that defendants violated the subject state regulation is arguably prospective in nature, the Eleventh Amendment would bar the district court from issuing it. *See Brown v. New York*, 975 F. Supp. 2d 209, 226 (N.D.N.Y. 2013) (finding that the Eleventh Amendment "does not permit judgments against state officers declaring that they violated federal law in the past" and collecting cases) (internal quotation marks and citations omitted).[5] Accordingly, Treistman's claims are not saved by the fact that he seeks injunctive or declaratory relief.

5 As for Treistman's claims against defendants in their individual capacities, claims for prospective relief against a state officer may be asserted only against the officer in his or her official capacity. *See Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 270 (1997) ("[T]o permit a federal-court action to proceed in every case where prospective declaratory and injunctive relief is sought against an officer, named in his individual capacity, would be to adhere to an empty formalism and to undermine the principle ... that Eleventh Amendment immunity represents a real limitation on a federal court's federal-question jurisdiction. The real interests served by the Eleventh Amendment are not to be sacrificed to elementary mechanics of captions and pleading.")

### IV. Leave to Amend

***4** Finally, defendants argue that, in light of the substantive defects discussed above, granting Treistman leave to amend would be futile. (Dkt. No. 16, Attach. 3 at 14.) It should be noted that Treistman does not seek leave to file an amended complaint. (Dkt. No. 21.) However, given his *pro se* status, the court will consider whether to permit amendment in an abundance of caution. Ordinarily, a court should not dismiss a suit filed by a *pro se* litigant without granting leave to amend at least once "when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Branum v. Clark*, 927 F.2d 698, 705 (2d Cir. 1991). However, an opportunity to amend is not required where "the problem with [the plaintiff]'s causes of action is substantive" such that "better pleading will not cure it." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000). Here, permitting Treistman an opportunity to amend would be futile because the deficiencies identified above are substantive in nature, and better pleading could not cure them. As such, the court declines to grant Treistman leave to amend his complaint.[6]

6 Given the dispositive nature of the applicable immunities discussed above, the court need not address defendant's remaining arguments related to Treistman's failure to state a claim, (Dkt. No. 16, Attach. 3 at 11-13), which may have provided alternative avenues for dismissal.

Accordingly, it is hereby

**ORDERED** that defendants' motion to dismiss (Dkt. No. 16) is **GRANTED**; and it is further

**ORDERED** that the Clerk close this case; and it is further

**ORDERED** that the Clerk provide a copy of this Summary Order to the parties.

**IT IS SO ORDERED.**

**All Citations**

Not Reported in Fed. Supp., 2018 WL 4078262

**End of Document**

© 2026 Thomson Reuters. No claim to original U.S. Government Works.

KeyCite Yellow Flag
Dismissed as Moot September 10, 2025

2025 WL 2467484
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Holly JARVIS, Plaintiff,
v.
Probation Officer Jason DUELL, and Probation Officer Phil Philbrick, Defendants.

5:25-CV-843 (LEK/MJK)
|
Signed August 26, 2025

**Attorneys and Law Firms**

HOLLY JARVIS, Plaintiff, pro se.

**ORDER & REPORT-RECOMMENDATION**

Mitchell J. Katz, United States Magistrate Judge

***1** TO THE HONORABLE LAWRENCE E. KAHN, Senior U.S. District Judge:
Plaintiff, Holly Jarvis, commenced this action on June 27, 2025, by filing a Complaint ("Compl."), and moving for leave to proceed *in forma pauperis* ("*IFP*"). (Dkts. 1, 2). Also, attached to the Complaint is a "Subpoena For Employment Records Of Philbrick & Duel" (Subpoena"). (Dkt. 1-2). The Clerk sent the Complaint, Subpoena, and *IFP* application to this Court for review. (Dkts. 1, 2). [1]

1 This case is related to 5:25-CV-228 (LEK/MJK) and 5:25-CV-645 (LEK/MJK), both pending in the Northern District of New York.

## I. BACKGROUND

Jarvis alleges that she submitted a FOIL request seeking surveillance footage within one month of an alleged incident at Funny Bone Comedy Club. (Compl., Dkt. 1, at ¶ 8). Jarvis further alleges that despite her request, Defendants have not provided or preserved the requested surviellance footage. Finally, Jarvis alleges that Defendants, the Syracuse Police Department, and Funny Bone Comedy Club had a "joint responsibility to preserve this critical evidence, knowing its relevance to both criminal and civil claims." (*Id.*).

## II. IFP APPLICATION

Jarvis declares in her *IFP* applications that she is unable to pay the filing fee. (Dkt. 5). After reviewing the *IFP* application, this Court finds that Jarvis is financially eligible for *IFP* status.

## III. STANDARD OF REVIEW

In addition to determining whether a plaintiff meets the financial criteria to proceed *IFP*, courts must also review the sufficiency of the allegations in the complaint under 28 U.S.C. § 1915. That statute requires a court to dismiss a case—at any time—if it

determines that the action is (1) frivolous or malicious; (2) fails to state a claim on which relief may be granted; or (3) seeks monetary relief against a defendant who is immune from such relief. *See* 28 U.S.C. § 1915 (e)(2)(B)(i)-(iii).

When determining whether an action is frivolous, courts must consider whether the complaint lacks an arguable basis in law or in fact. *See Neitzke v. Williams*, 490 U.S. 319, 325 (1989), *abrogated on other grounds by Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) and 28 U.S.C. § 1915. Dismissal of frivolous actions is appropriate to prevent abuses of court process as well as to discourage the waste of judicial resources. *Neitzke*, 490 U.S. at 327; *Harkins v. Eldredge*, 505 F.2d 802, 804 (8th Cir. 1974).

To be sure, courts have a duty to show liberality toward *pro se* litigants and must use extreme caution when *sua sponte* dismissing *pro se* complaints before adverse parties have been served and had an opportunity to respond. *See Fitzgerald v. First E. Seventh St. Tenants Corp.*, 221 F.3d 362, 363 (2d Cir. 2000) (finding that a district court may dismiss a frivolous complaint *sua sponte* even when plaintiff has paid the filing fee). But courts *still* have a responsibility to determine that a claim is not frivolous before permitting a plaintiff to proceed. *See id.*

## IV. DISCUSSION

### A. Fed. R. Civ. P. 8

Pleadings must contain, among other things, "a short and plain statement of the claim showing that the pleader is entitled to relief ..." Fed. R. Civ. P. 8(a)(2). "The purpose of" Rule 8 "is to give fair notice of the claim being asserted so" adverse parties have "the opportunity to file a responsive answer, prepare an adequate defense, and determine whether the doctrine of res judicata is applicable." *Flores v. Graphtex*, 189 F.R.D. 54, 55 (N.D.N.Y. 1999) (cleaned up). The rule also requires the pleading to include "a short and plain statement of the grounds for the court's jurisdiction" and "a demand for the relief sought[.]" Fed. R. Civ. P. 8(a)(1), (3). "Although 'no technical form is required,' the Federal Rules make clear that each allegation contained in the pleading 'must be simple, concise, and direct.' " *Cole v. Smrtic*, No. 1:24-CV-847, 2024 WL 4870495, at *2 (N.D.N.Y. 2024) (quoting Fed. R. Civ. P. 8(d)). Allegations "so vague as to fail to give the defendants adequate notice of the claims against them" are subject to dismissal. *Sheehy v. Brown*, 335 F. App'x 102, 104 (2d Cir. 2009) (summary order).

***2** Indeed, to survive dismissal for failure to state a claim, a complaint must contain sufficient factual matter, accepted as true, to state a claim that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice." *Ashcroft*, 556 U.S. at 678 (cleaned up).

Here, the Complaint is completely devoid of any allegations, specific or otherwise, regarding what, if any, activities Defendants engaged in giving rise to Jarvis's claims against them. As pleaded, there is no logical connection between Jarvis's allegations about her FOIL request and her purported claims against Defendants. Stated differently, the Complaint is a "unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft*, 556 U.S. at 678. And that is not enough to state a claim. *See, e.g., Lesson v. Jane Doe*, No. 1:25-CV-00188 (AMN/TWD), 2025 WL 1291533 (N.D.N.Y. May 5, 2025) (Adopting Report and Recommendation which dismissed a plaintiff's excessive force claim because that plaintiff failed to "identify what force" was used against him or "how it was excessive."). The Court therefore recommends that the Complaint be dismissed without prejudice and with leave to amend, except as to any claims directly related to Jarvis's FOIL request which, for the reasons more fully set forth below, are dismissed without prejudice and without leave to amend. If the District Court accepts this recommendation, and if Jarvis chooses to file an amended pleading, she is directed to plead sufficient facts giving rise to each claim against the named defendants.

### B. New York Freedom of Information Law

Jarvis's claims emanate from her alleged inability to obtain information under the New York Freedom of Information Law ("FOIL"), N.Y. Pub. Off. L. § 89 *et seq.*, which allows individuals to request disclosure of records collected by New York state agencies, subject to certain statutory exemptions. If an initial request is denied, the requester may appeal the denial first

 © 2026 Thomson Reuters. No claim to original U.S. Government Works. 

to the "head, chief executive or governing body" of the entity or agency in possession of the documents, and, thereafter, by commencing a special proceeding in New York State courts under Article 78 of the New York Civil Practice Law and Rules. N.Y. Pub. Off. L. § 89(4)(a) and (b). Federal courts do not have subject matter jurisdiction to enforce state laws regarding public access to official records. *See In re Shelton*, No. 06-CV- 6132, 2006 WL 3463425, at *2 (E.D.N.Y. Nov. 30, 2006) ("To the extent that [the plaintiff] seeks information from state agencies ..., this Court does not have jurisdiction over requests made pursuant to the state FOIL."). The Court therefore recommends that any claims specifically arising out of Plaintiff's FOIL request be dismissed without prejudice and without leave to amend. Those claims, if not time barred, must be pursued in a different forum.

### C. Immunity

"Probation officers are entitled to immunity in the performance of their duties." *Detleelis v. Sharhaugh*, 919 F.3d 161, 164 (2d Cir. 2019) (cleaned up). But the type of immunity afforded depends on whether the probation officer's conduct was judicial or prosecutorial. *Id*. "Probation officers are entitled to absolute immunity from suit in connection with their preparing and furnishing presentence reports to the court." *Id*. (cleaned up). "They are also entitled to absolute immunity" for "initiating parole revocation proceedings" and "presenting the case for revocation to hearing officers." *Id*. (cleaned up). Probation officers are entitled to qualified immunity when they perform investigatory duties like filing a violation report or recommending the issuance of an arrest warrant. *Id*.

***3** Because the Complaint lacks any specific allegations against Defendants, the Court cannot determine whether they are immune from suit. The Court therefore recommends that the Complaint be dismissed without prejudice and with leave to amend.

### D. Subpoena Request

Plaintiff's request for a subpoena is denied for two reasons. First, because the Court is recommending that the Complaint be dismissed in its entirety, there is no case in which a subpoena may be issued. Second, Plaintiff's Subpoena is defective since it does not comply with Fed. R. Civ P. 45.

## V. OPPORTUNITY TO AMEND

Generally, before the court dismisses a *pro se* complaint or any part of the complaint *sua sponte*, the court should afford a plaintiff the opportunity to amend at least once; however, leave to re-plead may be denied where any amendment would be futile. *See Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993). Futility is present when the problem with plaintiff's causes of action is substantive such that better pleading will not cure it. *See Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (citation omitted).

Here, the Court recommends that Jarvis be granted leave to file an amended pleading that does not contain any claims directly related to her FOIL request. Further, if the District Court approves this Report-Recommendation and allows Jarvis to submit a proposed amended complaint, Jarvis should be warned that any amended pleading must be a ***complete and separate pleading***. Jarvis must state all her claims in the new pleading and may not incorporate by reference any part of her original complaint.

**WHEREFORE**, based on the findings above, it is

**ORDERED**, that Plaintiff's motion to proceed IFP (Dkt. 2) is **GRANTED**;[2] and it is further

2 The court notes that although Plaintiff's IFP application has been granted, Plaintiff will still be required to pay fees that she may incur in the future regarding this action, including but not limited to copying and/or witness fees.

**RECOMMENDED,** that the District Court dismiss Plaintiff's Complaint **WITHOUT PREJUDICE** and **WITH LEAVE TO AMEND** except as to any claims directly related to Plaintiff's FOIL request which should be dismissed **WITHOUT PREJUDICE** and **WITHOUT LEAVE TO AMEND**; and it is further

**ORDERED,** that Plaintiff's request for the issuance of a subpoena is **DENIED AS MOOT AND WITHOUT PREJUDICE**, and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Order and Report-Recommendation on Plaintiff by regular mail. [3]

3 The Clerk shall also provide Plaintiff with copies of all unreported decisions cited herein in accordance with *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (*per curiam*).

Under 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have 14 days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN 14 DAYS WILL PRECLUDE APPELLATE REVIEW**. *See Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.

**All Citations**

Slip Copy, 2025 WL 2467484

**End of Document** © 2026 Thomson Reuters. No claim to original U.S. Government Works.

2023 WL 3344236
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Danielle C. HENDRICKS, Plaintiff,
v.
UTICA PUBLIC DEFENDERS; Elizabeth, Last Name Unknown-Utica Public Defender Office; Frank, Last Name Unknown, only handle misdemeanors-Utica Public Defender Office; Judge Sabb, Criminal Court Judge; and Utica District Attorney, Defendants.

6:23-CV-0431 (LEK/ML)
|
Signed May 10, 2023

**Attorneys and Law Firms**

DANIELLE C. HENDRICKS, Plaintiff, Pro Se, 1402 West Street, Room 5, Utica, New York 13502.

**ORDER and REPORT-RECOMMENDATION**

MIROSLAV LOVRIC, United States Magistrate Judge

***1** The Clerk has sent a *pro se* complaint in the above captioned action together with an application to proceed *in forma pauperis* and a motion for appointment of counsel filed by Plaintiff Danielle C. Hendricks ("Plaintiff") to the Court for review. (Dkt. Nos. 1, 6, 8.) For the reasons discussed below, I (1) grant Plaintiff's *in forma pauperis* application (Dkt. No. 6), (2) deny Plaintiff's motion for appointment of counsel (Dkt. No. 8), and (3) recommend that Plaintiff's Complaint (Dkt. No. 1) be dismissed in its entirety in part (1) with leave to amend, and (2) without leave to amend

## I. BACKGROUND

On April 5, 2023, Plaintiff commenced this action by filing a *pro se* Complaint against defendants Utica Public Defenders, Elizabeth, Frank, Judge Sabb, and Utica District Attorney (collectively "Defendants"). (Dkt. No. 1.) In addition, Plaintiff filed a motion for leave to proceed *in forma pauperis* (Dkt. No. 6) and a motion for appointment of counsel (Dkt. No. 8).

The Complaint is on a form complaint, which purports to assert civil rights actions arising under 42 U.S.C. § 1983. (*See generally* Dkt. No. 1.) The Complaint alleges that Plaintiff was represented by Defendant Utica Public Defenders office in a criminal proceeding before Defendant Sabb. (Dkt. No. 1 at 2.) The Complaint alleges that Plaintiff rejected a plea offer but that Defendants Frank, Elizabeth, and Sabb agreed to dismiss the charges on the condition that Plaintiff serve a term of 90 days in a psychiatric hospital. (*Id.* at 1-2.) Plaintiff alleges that Defendants accused her of having schizophrenia. (*Id.* at 2.)

Based on these factual allegations, Plaintiff appears to assert the following two claims: (1) a claim that Defendants violated her right to an attorney pursuant to the Sixth Amendment and 42 U.S.C. § 1983; and (2) a claim that Defendants provided ineffective assistance of counsel. (*See generally* Dkt. No. 1.) As relief, Plaintiff appears to be seeking $2,000,000.00 in compensatory damages, Defendants to be disbarred, and her son to be placed back in her custody. (*Id.*)

For a more complete statement of Plaintiff's claims, refer to the Complaint. (Dkt. No. 1.)

## II. PLAINTIFF'S APPLICATION TO PROCEED *IN FORMA PAUPERIS*

"When a civil action is commenced in a federal district court, the statutory filing fee, currently set at $402, must ordinarily be paid." 28 U.S.C. § 1914(a). A court is authorized, however, to permit a litigant to proceed *in forma pauperis* status if a party "is unable to pay" the standard fee for commencing an action. 28 U.S.C. § 1915(a)(1).[1] After reviewing Plaintiff's *in forma pauperis* application (Dkt. No. 6), the Court finds that Plaintiff meets this standard. Therefore, Plaintiff's application to proceed *in forma pauperis* is granted.[2]

1 The language of that section is ambiguous because it suggests an intent to limit availability of *in forma pauperis* status to prison inmates. *See* 28 U.S.C. § 1915(a)(1) (authorizing the commencement of an action without prepayment of fees "by a person who submits an affidavit that includes a statement of all assets such prisoner possesses"). The courts have construed that section, however, as making *in forma pauperis* status available to any litigant who can meet the governing financial criteria. *Hayes v. United States*, 71 Fed. Cl. 366, 367 (Fed. Cl. 2006); *Fridman v. City of N.Y.*, 195 F. Supp. 2d 534, 536 n.1 (S.D.N.Y. 2002).

2 Plaintiff is reminded that, although her application to proceed *in forma pauperis* has been granted, she is still required to pay fees that she may incur in this action, including copying and/or witness fees.

## III. LEGAL STANDARD FOR REVIEW OF THE COMPLAINT

***2** "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that ... the action ... (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2).

In determining whether an action is frivolous, the court must consider whether the complaint lacks an arguable basis in law or in fact. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Dismissal of frivolous actions is appropriate to prevent abuses of court process as well as to discourage the waste of judicial resources. *Neitzke*, 490 U.S. at 327; *Harkins v. Eldridge*, 505 F.2d 802, 804 (8th Cir. 1974); *see Fitzgerald v. First East Seventh Street Tenants Corp.*, 221 F.3d 362, 364 (2d Cir. 2000) (a district court "may dismiss a frivolous complaint *sua sponte* even when the plaintiff has paid the required filing fee[.]"); *see also Pflaum v. Town of Stuyvesant, Columbia Cnty., N.Y.*, 11-CV-0335, 2016 WL 865296, at *1, n.2 (N.D.N.Y. Mar. 2, 2016) (Suddaby, C.J.) (finding that the Court had the power to address and dismiss additional theories of the plaintiff's retaliation claim *sua sponte* because those theories were so lacking in arguable merit as to be frivolous).

In order to state a claim upon which relief can be granted, a complaint must contain, *inter alia*, "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The requirement that a plaintiff "show" that he or she is entitled to relief means that a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is *plausible* on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (emphasis added) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 [2007]). "Determining whether a complaint states a plausible claim for relief ... requires the ... court to draw on its judicial experience and common sense.... [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not shown–that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (internal citation and punctuation omitted).

"In reviewing a complaint ... the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor." *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir. 1994) (citation omitted). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

Courts are "obligated to construe a pro se complaint liberally." *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009); *see also Nance v. Kelly*, 912 F.2d 605, 606 (2d Cir. 1990) (per curiam) (reading the plaintiff's *pro se* complaint "broadly, as we must" and holding that the complaint sufficiently raised a cognizable claim). "[E]xtreme caution should be exercised in ordering sua sponte

dismissal of a pro se complaint before the adverse party has been served and [the] parties ... have had an opportunity to respond." *Anderson v. Coughlin*, 700 F.2d 37, 41 (2d Cir. 1983).

## IV. ANALYSIS

***3** In addressing the sufficiency of a plaintiff's complaint, the court must construe her pleadings liberally. *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008). Having reviewed Plaintiff's Complaint with this principle in mind, I recommend that all causes of action be dismissed.

### A. Claims Against Defendant Sabb

#### 1. Request for Monetary Relief

Plaintiff's claims under § 1983 seeking monetary damages against Defendant Sabb, who acted as the criminal law judge, are barred under the doctrine of judicial immunity. Under this doctrine, judges are absolutely immune from suit for claims for damages for any actions taken within the scope of their judicial responsibilities. *See Mireles v. Waco*, 502 U.S. 9, 11-12 (1991). Generally, "acts arising out of, or related to, individual cases before [a] judge are considered judicial in nature." *Bliven v. Hunt*, 579 F.3d 204, 210 (2d Cir. 2009). "[E]ven allegations of bad faith or malice cannot overcome judicial immunity." *Bliven*, 579 F.3d at 209. This is because "[w]ithout insulation from liability, judges would be subject to harassment and intimidation." *Young v. Selsky*, 41 F.3d 47, 51 (2d Cir. 1994). Further, as amended in 1996, § 1983 provides that "in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable." 42 U.S.C. § 1983.

Judicial immunity does not apply when a judge takes action outside his or her judicial capacity, or when a judge takes action that, although judicial in nature, is taken "in the complete absence of all jurisdiction." *Mireles*, 502 U.S. at 11-12; *see also Bliven*, 579 F.3d at 209-10 (describing actions that are judicial in nature). However, "the scope of [a] judge's jurisdiction must be construed broadly where the issue is the immunity of the judge." *Stump v. Sparkman*, 435 U.S. 349, 356 (1978).

Plaintiff asserts claims arising from the efforts of Defendant Sabb, in his capacity as a New York State criminal court judge, to address criminal charges pending against Plaintiff. Plaintiff fails to allege facts plausibly suggesting that Defendant Sabb acted beyond the scope of his judicial responsibilities.

As a result, to the extent that the Complaint seeks monetary damages against Defendant Sabb, I recommend that it be dismissed because Defendant Sabb is immune from such relief, 28 U.S.C. § 1915(e)(2)(B)(iii), and, consequently, as frivolous, 28 U.S.C. § 1915(e)(2)(B)(i). *Mills v. Fischer*, 645 F. 3d 176, 177 (2d Cir. 2011) (claims dismissed because of judicial immunity are frivolous for the purpose of the IFP statute, 28 U.S.C. § 1915).

#### 2. Request for Declaratory/Injunctive Relief

Insofar as Plaintiff seeks declaratory or injunctive relief against Defendant Sabb alleging that the representation by Defendants Utica Public Defender, Elizabeth, and Frank violated certain attorney or ethical misconduct rules, disciplinary rules, and/or the New York State Rules of Professional Conduct, "violations of attorney rules of professional conduct or state ethical rules or guidelines for attorneys do not form a basis of a constitutional claim for the same reasons that a legal malpractice claim ... does not suffice to set forth a claim under section 1983." *Caldwell v. Petros*, 22-CV-0567, 2022 WL 15697608, at *3 (N.D.N.Y. Oct. 28, 2022) (Hummel, M.J.), *report and recommendation adopted by*, 2022 WL 16918287 (N.D.N.Y. Nov. 14, 2022) (Sannes, C.J.). Moreover, Plaintiff fails to allege facts plausibly suggesting that Defendant Sabb is liable for any deficiencies in the representation of Plaintiff by other defendants. As a result, I recommend that Plaintiff's claims requesting

declaratory or injunctive relief against Defendant Sabb be dismissed for failure to state a claim upon which relief may be granted. [3]

3 The Court notes that Plaintiff's claims may also be barred by the *Rooker-Feldman* doctrine, to the extent that the state judicial proceedings against Plaintiff terminated before the filing of this action. *See Neroni v. Peebles*, 14-CV-0584, 2014 WL 12768331, at *8 (N.D.N.Y. June 20, 2014) (Suddaby, J.) (citing *Neroni v. Zayas*, 13-CV-0127, 2014 WL 1311560, at *4 (N.D.N.Y. Mar. 31, 2014) (Kahn, J.)) (dismissing the plaintiff's claims and finding that, "[i]n the alternative, to the extent the state judicial proceedings against Plaintiff terminated before the filing of this action ..., the claims challenging those proceedings appear to be barred by the *Rooker-Feldman* doctrine.").

### B. Claims Against Defendant Utica District Attorney

#### 1. Request for Monetary Relief

***4** Plaintiff's claims against Defendant Utica District Attorney—which seek monetary damages—are barred by the Eleventh Amendment to the United States Constitution. "Stated as simply as possible, the Eleventh Amendment means that, as a 'general rule, state governments may not be sued in federal court unless they have waived their Eleventh Amendment immunity,' or unless Congress has 'abrogate[d] the states' Eleventh Amendment immunity when acting pursuant to its authority under Section 5 of the Fourteenth Amendment.' " *Gollomp v. Spitzer*, 568 F.3d 355, 366 (2d Cir. 2009) (quoting *Woods v. Rondout Valley Cent. Sch. Dist. Bd. of Educ.*, 466 F.3d 232, 236 (2d Cir. 2006)). "The immunity recognized by the Eleventh Amendment extends beyond the states themselves to state agents and state instrumentalities that are, effectively, arms of a state." *Woods*, 466 F.3d at 236. " 'When prosecuting a criminal matter, a district attorney in New York State, acting in a quasi-judicial capacity, represents the State not the county.' " *Ying Jing Gan v. City of New York*, 996 F.2d 522, 536 (2d Cir. 1993) (quoting *Baez v. Hennessy*, 853 F.2d 73, 77 (2d Cir. 1988), *cert. denied*, 488 U.S. 1014 (1989)).

As a result, Plaintiff's claims against Defendant Utica District Attorney, seeking monetary damages, are barred by the Eleventh Amendment. *See Best v. Brown*, 19-CV-3724, 2019 WL 3067118, at *2 (E.D.N.Y. July 12, 2019) (dismissing the plaintiff's claim against the Office of the Queens County District Attorney as barred by the Eleventh Amendment); *see also D'Alessandro v. City of New York*, 713 F. App'x 1, 8 (2d Cir. 2017) (citing *Ying Jing Gan v. City of New York*, 996 F.2d 522, 536 (2d Cir. 1993)) ("[I]f a district attorney or an assistant district attorney acts as a prosecutor, she is an agent of the state, and therefore immune from suit in her official capacity."); *Rich v. New York*, 21-CV-3835, 2022 WL 992885, at *5 n.4 (S.D.N.Y. Mar. 31, 20221) ("any claims Plaintiff may raise against the DA Defendants in their 'official capacity' would be precluded by immunity under the Eleventh Amendment."); *Gentry v. New York*, 21-CV-0319, 2021 WL 3037709, at *6 (N.D.N.Y. June 14, 2021) (Lovric, M.J.) (recommending dismissal of the plaintiff's claims against the defendant assistant district attorneys in their official capacities—which were effectively claims against the State of New York—as barred by the Eleventh Amendment), *adopted by Gentry v. New York*, 2021 WL 3032691 (N.D.N.Y. July 19, 2021) (Suddaby, C.J.).

#### 2. Request for Injunctive Relief

For the reason set forth above in Part IV.A.2. of this Order and Report-Recommendation, I recommend that Plaintiff's request for declaratory or injunctive relief against Defendant Utica District Attorney be dismissed for failure to state a claim upon which relief may be granted. [4]

4 As set forth above in note 3, *supra*, Plaintiff's claims may also be barred by the *Rooker-Feldman* doctrine.

### C. Claims Against Defendants Utica Public Defender, Elizabeth, Frank


© 2026 Thomson Reuters. No claim to original U.S. Government Works.

Plaintiff's claims against Defendants Utica Public Defender, Elizabeth, and Frank, in their capacities representing Plaintiff against criminal charges should be dismissed for failure to state a claim upon which relief may be granted.

"[I]t is axiomatic that a 'public defender does not act under color of state law when performing a lawyer's traditional functions as counsel to a defendant in a criminal proceeding.' " *Flores v. Levy*, 07-CV-3753, 2008 WL 4394681, at *7 (E.D.N.Y. Sept. 23, 2008) (citing, *inter alia, Rodriguez v. Weprin*, 116 F.3d 62, 65-66 (2d Cir. 1997) ("it is well-established that court-appointed attorneys performing a lawyer's traditional functions as counsel to defendant do not act 'under color of state law' and therefore are not subject to suit under 42 U.S.C. § 1983")); *Benjamin v. Branden*, 21-CV-4927, 2022 WL 1092681, at *2 (E.D.N.Y. Apr. 12, 2022) (collecting cases). "Section 1983 'was enacted to redress civil rights violations by persons acting under color of State law' and should not be used by clients disappointed with the performance of their attorneys." *Brooks v. New York State Supreme Court*, 02-CV-4183, 2002 WL 31528632, at *3 (E.D.N.Y. Aug. 16, 2002) (citation omitted).

***5** As a result, I recommend that Plaintiff's claims against Defendants Utica Public Defender, Elizabeth, and Frank, for their actions representing Plaintiff in the criminal proceeding, be dismissed for failure to state a claim upon which relief may be granted.[5] 28 U.S.C. § 1915(e)(2)(B)(ii).

5 To the extent that Plaintiff's claims are construed as alleging a conspiracy among Defendants, I recommend that they be dismissed. First, Plaintiff's claim is speculative and conclusory, and the allegations are insufficient to plausibly suggest a conspiracy that would qualify Defendants Utica Public Defender, Elizabeth, and Frank as state actors. *Flores v. Levey*, 07-CV-3753, 2008 WL 4394681, at *10 (E.D.N.Y. Sept. 23, 2008) (collecting cases) (allegations that Legal Aid attorneys engaged in numerous conspiracies with the other defendants "(1) denying plaintiff his right to counsel; (2) preventing plaintiff from testifying before the grand jury; (3) allowing the defendant prosecutors to 'lift' the indictment into the county court; and (4) adding the additional charge of assault in the first degree to the indictment" did not support a plausible claim of conspiracy with the other defendants). Second, even if Plaintiff's conspiracy claim was found to be more than conclusory as pleaded, Plaintiff could not establish a conspiracy among Defendants. As set forth above in Parts IV.A. and IV.B. of this Order and Report-Recommendation, I recommend that the claims against Defendants Sabb and Utica District Attorney be dismissed as they are immune from suit. "Where [the] plaintiff's only conspirators are protected by absolute immunity, 'Plaintiff's defense attorney[ ] therefore had no state actor with whom [he] could have conspired, rend[er]ing Plaintiff's conspiracy claim deficient as a matter of law.' " *Williams v. Cnty. of Onondaga*, 22-CV-1367, 2023 WL 2563181, at *8 (N.D.N.Y. Feb. 21, 2023) (Baxter, M.J.), *report and recommendation adopted by*, 2023 WL 2563210 (N.D.N.Y. Mar. 16, 2023) (McAvoy, J.). Defendants Utica Public Defender, Elizabeth, and Frank are employees of a single entity and thus are legally incapable of conspiring together pursuant to the "intra-agency conspiracy" doctrine. *See Giles v. Fitzgerald*, 20-CV-0980, 2020 WL 6287459, at *6 (N.D.N.Y. Oct. 27, 2020) (Lovric, M.J.) (finding that the intra-agency conspiracy doctrine barred a conspiracy claim among the defendants who were officers employed by the Syracuse Police Department), *report and recommendation adopted by*, 2021 WL 248048 (N.D.N.Y. Jan. 26, 2021) (D'Agostino, J.).

### V. OPPORTUNITY TO REPLEAD

Generally, a court should not dismiss claims contained in a complaint filed by a *pro se* litigant without granting leave to replead at least once "when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Branum v. Clark*, 927 F.2d 698, 704-05 (2d Cir. 1991); *see also* Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave when justice so requires."). An opportunity to replead is not required, however, where "the problem with [the plaintiff's] causes of action is substantive" such that "better pleading will not cure it." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000); *see also Cortec Indus. Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) ("Of course, where a plaintiff is unable to allege any fact sufficient to support its claim, a complaint should be dismissed with prejudice."). Stated differently, "[w]here it appears that granting leave to amend is unlikely to be productive, ... it is not an abuse of discretion to deny leave to amend." *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993); *accord, Brown v. Peters*, 95-CV-1641, 1997 WL 599355, at *1 (N.D.N.Y. Sept. 22, 1997) (Pooler, J.).[6]

 © 2026 Thomson Reuters. No claim to original U.S. Government Works. 

6 *See also Carris v. First Student, Inc.*, 132 F. Supp. 3d 321, 340-41 n.1 (N.D.N.Y. 2015) (Suddaby, C.J.) (explaining that the standard set forth in *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 796 (2d Cir. 1999)—that the Court should grant leave to amend "unless the court can rule out any possibility, however unlikely it might be, that an amended complaint would be successful in stating a claim"—is likely not an accurate recitation of the governing law after *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)), *rev'd on other grounds*, 682 F. App'x 30.

***6** Here, better pleading could not cure the Court's lack of subject matter jurisdiction based on the immunities described above with respect to Plaintiff's claims pursuant to 42 U.S.C. § 1983 against Defendants Sabb and Utica District Attorney seeking monetary damages. *See Britt v. Doe*, 22-CV-0692, 2022 WL 16579207, at *9 (N.D.N.Y. Oct. 13, 2022) (Lovric, M.J.) (recommending dismissal without prejudice and without leave to amend, the plaintiff's claims against defendants who are immune from suit), *report and recommendation adopted by*, 2022 WL 16571391 (N.D.N.Y. Nov. 1, 2022) (Sharpe, J.).

However, it is not clear whether a better pleading would permit Plaintiff to assert a cognizable claim pursuant to 42 U.S.C. § 1983 against (1) Defendants Sabb and Utica District Attorney for declaratory/injunctive relief, and (2) Defendants Utica Public Defender, Elizabeth, and Frank. Out of deference to Plaintiff's *pro se* status, I recommend that Plaintiff be granted leave to amend the Complaint with respect to those claims.

If Plaintiff chooses to avail herself of an opportunity to amend, such amended pleading must set forth a short and plain statement of the facts on which she relies to support any legal claims asserted. Fed. R. Civ. P. 8(a). In addition, the amended complaint must include allegations reflecting how the individuals named as Defendants are involved in the allegedly unlawful activity. Finally, Plaintiff is informed that any amended complaint will replace the existing Complaint, and must be a wholly integrated and complete pleading that does not rely upon or incorporate by reference any pleading or document previously filed with the Court. *See Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994) ("It is well established that an amended complaint ordinarily supersedes the original, and renders it of no legal effect." (internal quotation marks omitted)).

## VI. PLAINTIFF'S MOTION TO APPOINT COUNSEL

Plaintiff has also submitted a request for appointment of counsel. (Dkt. No. 8.)

As an initial matter, "[a] party has no constitutionally guaranteed right to the assistance of counsel in a civil case." *Leftridge v. Connecticut State Trooper Officer No. 1283*, 640 F.3d 62, 68 (2d Cir. 2011) (citations omitted). Courts cannot utilize a bright-line test in determining whether counsel should be appointed on behalf of an indigent party. *Hendricks v. Coughlin*, 114 F.3d 390, 392-93 (2d Cir. 1997). Instead, a number of factors must be carefully considered by the court in ruling upon such a motion. As a threshold matter, the court should ascertain whether the indigent's claims seem likely to be of substance. A motion for appointment of counsel may be properly denied if the court concludes that the plaintiff's "chances of success are highly dubious." *Leftridge*, 640 F.3d at 69. If the court finds that the claims have substance, the court should then consider:

> [T]he indigent's ability to investigate the crucial facts, whether conflicting evidence implicating the need for cross-examination will be the major proof presented to the fact finder, the indigent's ability to present the case, the complexity of the legal issues and any special reason in th[e] case why appointment of counsel would be more likely to lead to a just determination.

*Terminate Control Corp.*, 28 F.3d at 1341 (quoting *Hodge v. Police Officers*, 802 F.2d 58, 61-62 (2d Cir. 1986)). This is not to say that all, or indeed any, of these factors are controlling in a particular case. Rather, each case must be decided on its own facts. *Velasquez v. O'Keefe*, 899 F. Supp. 972, 974 (N.D.N.Y. 1995) (McAvoy, C.J.) (citing *Hodge*, 802 F.2d at 61).

***7** In the present matter, the Court has recommended dismissal of the action. As such, the Court cannot find that Plaintiff's claims are likely to be of substance. Plaintiff's motion (Dkt. No. 8) is therefore denied.

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff's application to proceed *in forma pauperis* (Dkt. No. 6) is **GRANTED only for purposes of filing and any appeal unless the trial court certifies in writing that the appeal is not taken in good faith**; and it is further

**ORDERED** that Plaintiff's motion for appointment of counsel (Dkt. No. 8) is **DENIED** without prejudice; and it is further respectfully

**RECOMMENDED** that the Court **DISMISS WITHOUT PREJUDICE AND WITHOUT LEAVE TO AMEND** the Complaint (Dkt. No. 1) to the extent that it seeks monetary relief from Defendants Sabb and Utica District Attorney, who are immune from such relief pursuant to 28 U.S.C. § 1915(e)(2)(B); and it is further respectfully

**RECOMMENDED** that the Court **DISMISS WITH LEAVE TO AMEND** the Complaint (Dkt. No. 1) to the extent that it (1) seeks declaratory/injunctive relief from Defendants Sabb and Utica District Attorney, and (2) alleges claims pursuant to 42 U.S.C. § 1983 against Defendants Utica Public Defender, Elizabeth, and Frank, for failure to state a claim upon which relief may be granted pursuant to 28 U.S.C. § 1915(e)(2)(B); and it is further respectfully

**ORDERED** that the Clerk of the Court shall file a copy of this order, report, and recommendation on the docket of this case and serve a copy upon the parties in accordance with the local rules. [7]

7 The Clerk shall also provide Plaintiff with copies of all unreported decisions cited herein in accordance with *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

**NOTICE:** Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report. [8] Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**. 28 U.S.C. § 636(b)(1) (Supp. 2013); Fed. R. Civ. P. 6(a), 6(d), 72; *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)).

8 If you are proceeding *pro se* and served with this report, recommendation, and order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date that the report, recommendation, and order was mailed to you to serve and file objections. Fed. R. Civ. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. Fed. R. Civ. P. 6(a)(1)(C).

**All Citations**

Not Reported in Fed. Supp., 2023 WL 3344236

**End of Document**

© 2026 Thomson Reuters. No claim to original U.S. Government Works.

2023 WL 6356645
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Danielle C. HENDRICKS, Plaintiff,
v.
UTICA PUBLIC DEFENDERS, et al., Defendants.

6:23-CV-431 (LEK/ML)
|
Signed September 29, 2023

**Attorneys and Law Firms**

Danielle C. Hendricks, Utica, NY, Pro Se.

**MEMORANDUM-DECISION AND ORDER**

LAWRENCE E. KAHN, United States District Judge

## I. INTRODUCTION

***1** Plaintiff Danielle Hendricks brings this pro se action pursuant to 42 U.S.C. § 1983 against Utica Public Defenders, Elizabeth, Frank, Judge Sabb ("Sabb"), and the Utica District Attorney (collectively, "Defendants"). Plaintiff alleges that Defendants violated her right to an attorney and provided ineffective assistance of counsel in violation of Plaintiff's Sixth Amendment rights. See Dkt. No. 1 ("Complaint") at 2–5. Plaintiff has also filed a motion for leave to proceed in forma pauperis, Dkt. No. 6 ("IFP Application"), and a motion for appointment of counsel, Dkt. No. 8 ("Counsel Motion"). The Honorable Miroslav Lovric, United States Magistrate Judge, issued a report and recommendation regarding the Complaint, IFP Application, and Counsel Motion. Dkt. No. 9 ("Report and Recommendation"). Judge Lovric (1) granted Plaintiff's IFP Application, (2) denied Plaintiff's Counsel Motion, and (3) recommended that this Court dismiss the Complaint in its entirety, in part with leave to amend, and in part without leave to amend. See R. & R. at 13.

No party has filed objections to the Report and Recommendation. For the reasons that follow, the Court adopts the Report and Recommendation in its entirety.

## II. BACKGROUND

The Court assumes familiarity with Judge Lovric's Report and Recommendation, as well as with Plaintiff's factual allegations as detailed therein. See id. at 2.

## III. STANDARD OF REVIEW

"Within fourteen days after being served with a copy [of the Magistrate Judge's report and recommendation], any party may serve and file written objections to such proposed findings and recommendations as provided by rules of the court." 28 U.S.C. § 636(b)(1)(C); see also L.R. 72.1. However, if no objections are made, a district court need only review a report and recommendation for clear error. See DiPilato v. 7-Eleven, Inc., 662 F. Supp. 2d 333, 339 (S.D.N.Y. 2009) ("The district court may adopt those portions of a report and recommendation to which no timely objections have been made, provided no clear error is apparent from the face of the record."). Clear error "is present when upon review of the entire record, the court is left with the definite and firm conviction that a mistake has been committed." Rivera v. Fed. Bureau of Prisons, 368 F. Supp. 3d 741, 744 (S.D.N.Y. 2019). Additionally, a district court will ordinarily refuse to consider an argument that could have been, but was not, presented to

the magistrate judge in the first instance. See Hubbard v. Kelley, 752 F. Supp. 2d 311, 312–13 (W.D.N.Y. 2009) ("In this circuit, it is established law that a district judge will not consider new arguments raised in objections to a magistrate judge's report and recommendation that could have been raised before the magistrate but were not." (internal quotation marks omitted)). Upon review, a court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C).

### IV. DISCUSSION

No party objected to the Report and Recommendation "[w]ithin fourteen days after being served with a copy" of it. 28 U.S.C. § 636(b)(1)(C). Accordingly, the Court reviews the Report and Recommendation for clear error. Having found none, the Court approves and adopts the Report and Recommendation in its entirety.

### V. CONCLUSION

***2** Accordingly, it is hereby:

**ORDERED**, that the Report and Recommendation (Dkt. No. 9) is **APPROVED and ADOPTED in its entirety**; and it is further

**ORDERED**, that Plaintiff's Complaint (Dkt. No. 1) is **DISMISSED without prejudice and without leave to amend** to the extent that it seeks monetary relief from Defendants Sabb and Utica District Attorney, who are immune from such relief pursuant to 28 U.S.C. § 1915(e)(2)(B); and it is further

**ORDERED**, that Plaintiff's Complaint (Dkt. No. 1) is **DISMISSED with leave to amend** to the extent that it (1) seeks declaratory/injunctive relief from Defendants Sabb and Utica District Attorney, and (2) alleges claims pursuant to 42 U.S.C. § 1983 against Defendants Utica Public Defender, Elizabeth, and Frank, for failure to state a claim upon which relief may be granted pursuant to 28 U.S.C. § 1915(e)(2)(B). Furthermore, if Plaintiff wishes to file an amended complaint, he must do so within **forty-five (45) days** of this Memorandum-Decision and Order; and it is further

**ORDERED**, that the Clerk serve a copy of this Memorandum-Decision and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

### All Citations

Not Reported in Fed. Supp., 2023 WL 6356645

**End of Document** © 2026 Thomson Reuters. No claim to original U.S. Government Works.

2021 WL 7161914
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Bishop Abraham S. ISRAEL; and Jesus Christ Ministries, Plaintiffs,
v.
CITY OF SYRACUSE; Sgt. Carleo, Syracuse Police Officer; Sisley, Syracuse Police Officer; Wolfe, Syracuse Police Officer; Kimpel, Syracuse Police Officer; Marcus DeBottis, Jr., Syracuse Police Officer; Lago, Syracuse Police Officer; and Ranette Releford, CRB Administrator, Defendants.

5:21-CV-0915 (DNH/ML)
|
Signed 12/09/2021

**Attorneys and Law Firms**

ABRAHAM S. ISRAEL, Pro se Plaintiff, 1409 South McBride Street, Syracuse, New York 13202.

## ORDER and REPORT-RECOMMENDATION

MIROSLAV LOVRIC, United States Magistrate Judge

***1** The Clerk has sent this *pro se* Amended Complaint (Dkt. No. 5) and motion for appointment of counsel (Dkt. No. 6) filed by Bishop Abraham S. Israel ("Plaintiff") to the Court for review. For the reasons discussed below, I (1) recommend that Plaintiff's Amended Complaint (Dkt. No. 5) be (a) accepted in part for filing, and (b) dismissed in part without leave to amend, and (2) order that Plaintiff's motion for appointment of counsel (Dkt. No. 6) be denied without prejudice.

### I. BACKGROUND

On August 13, 2021, Plaintiff[1] commenced this action by filing a Complaint and a motion to proceed *in forma pauperis.* (Dkt. Nos. 1, 2.)

1 Plaintiff, who is not an attorney, cannot represent other plaintiffs. Although parties have a statutory right to "plead and conduct their own cases," 28 U.S.C. § 1654, unlicensed laypersons may not "represent anyone else other than themselves." *Lattanzio v. COMTA*, 481 F.3d 137, 139 (2d Cir. 2007) (internal quotation marks omitted); *see also Guest v. Hansen*, 603 F.3d 15, 20 (2d Cir. 2010) ("A person who has not been admitted to the practice of law may not represent anybody other than himself."). The Amended Complaint names two plaintiffs—Abraham S. Israel and Jesus Christ Ministries. (Dkt. No. 5 at 1.) However, the IFP application is signed solely by Plaintiff. (Dkt. No. 2.) Accordingly, I reviewed this action with Abraham S. Israel as the sole plaintiff. *See Yerushalayim v. Liecthung*, 19-CV-4101, 2019 WL 3817125, at *2 (E.D.N.Y. Aug. 13, 2019) (reviewing the action as brought by sole plaintiff, Ben-Siyon Ish Yerushalayim, because he was the only signatory on the complaint and IFP application and, as an unlicensed layperson, was incapable of representing the other named plaintiffs).

On September 16, 2021, the undersigned issued an Order and Report-Recommendation, which (1) granted Plaintiff's application for leave to proceed *in forma paupers*, and (2) recommended that the Court (a) accept for filing Plaintiff's claims (i) that his right to free speech/religion was violated pursuant to the First Amendment and 42 U.S.C. § 1983, against Defendants Sisley and Wolfe regarding the incident at Destiny USA on July 17, 2020, (ii) of false arrest pursuant to the Fourth Amendment and 42 U.S.C. § 1983, against Defendants Sisley and Wolfe regarding the incident at Destiny USA on July 17, 2020, (iii) of unreasonable

search and seizure pursuant to the Fourth Amendment and 42 U.S.C. § 1983, against Defendants Sisley and Wolfe regarding the incident at Destiny USA on July 17, 2020, (iv) of unreasonable search and seizure pursuant to the Fourth Amendment and 42 U.S.C. § 1983, against Defendant Kimpel regarding the incident on December 13, 2020, (v) of false arrest pursuant to the Fourth Amendment and 42 U.S.C. § 1983, against Defendant DeBottis regarding the incident on April 23, 2021, (vi) of unreasonable search and seizure pursuant to the Fourth Amendment and 42 U.S.C. § 1983, against Defendant DeBottis regarding the incident on April 23, 2021, and (vii) of negligence pursuant to New York common law against Defendants Carleo and Releford, (b) dismiss with leave to replead Plaintiff's claims (i) pursuant to RICO, against Defendants, (ii) that his right to equal protection was violated pursuant to the Fourteenth Amendment and 42 U.S.C. § 1983, against Defendants, (iii) that his right to free of speech/religion was violated by Defendant Carleo, pursuant to the First Amendment and 42 U.S.C. § 1983, at Destiny USA on July 17, 2020, (iv) of false arrest pursuant to the Fourth Amendment and 42 U.S.C. § 1983, against Defendant Carleo regarding the incident at Destiny USA on July 17, 2020, (v) of unreasonable search and seizure pursuant to the Fourth Amendment and 42 U.S.C. § 1983, against Defendant Carleo regarding the incident at Destiny USA on July 17, 2020, and (vi) of failure to protect against Defendant Kimpel, and (c) dismiss without leave to replead his claims of (i) dereliction of duty pursuant to 10 U.S.C. § 892, against Defendants, (ii) law enforcement misconduct pursuant to 42 U.S.C. § 14141(a) or 34 U.S.C. § 12601, against Defendant City of Syracuse, (iii) harassment in the second degree pursuant to N.Y. Penal Law § 240.26(3), against Defendants, (iv) unlawful imprisonment pursuant to N.Y. Penal Law § 135.05, against Defendants, (v) menacing in the second degree pursuant to N.Y. Penal Law § 120.14(1), against Defendants, (vi) robbery in the second degree pursuant to N.Y. Penal Law § 160.10(1), against Defendants, (vii) criminal tampering in the third degree pursuant to N.Y. Penal Law § 145.14, against Defendants, (viii) kidnapping in the first degree pursuant to N.Y. Penal Law § 135.25(1), against Defendants, and (ix) disruption or disturbance of religious service, burial, or memorial service pursuant to N.Y. Penal Law § 240.21, against Defendants.

***2** On October 12, 2021, Plaintiff filed an amended complaint as of right pursuant to Fed. R. Civ. P. 15(a)(1) and a motion for appointment of counsel. (Dkt. Nos. 5, 6.)

On October 13, 2021, United States District Judge David N. Hurd issued an order adopting the undersigned's Order and Report-Recommendation dated September 16, 2021. (Dkt. No. 7.)

## II. ALLEGATIONS OF THE AMENDED COMPLAINT

Construed as liberally as possible, the Amended Complaint alleges that Plaintiff's civil rights were violated by Defendants City of Syracuse, Sgt. Carleo, Sisley, Wolfe, Kimpel, Marcus DeBottis, Jr., Lago, and Ranette Releford (collectively "Defendants") during his interactions with them. (*See generally* Dkt. No. 5 [Am. Compl.].)

The Amended Complaint appears to assert virtually the same factual allegations as the Complaint did, but with additional legalese. More specifically, the Amended Complaint alleges that on or about July 17, 2020, Plaintiff was at a mall in Syracuse, New York ("Destiny USA") preaching the gospel, when Defendants Sisley and Wolfe approached him, escorted him to a private room, detained him for approximately twenty minutes, then escorted him out of Destiny USA, and served him with an appearance ticket—which was ultimately dismissed. (*Id.* at 11-16.) Plaintiff alleges that during this incident, Defendants Sisley and Wolfe took—without a warrant—Plaintiff's passport, "papers," and $10.00. (*Id.*) Plaintiff alleges that he reported this incident to the Citizen's Review Board ("CRB"), was contacted by Defendant Carleo for an in-person interview in August 2020, but that Defendant Carleo denied Plaintiff a "[f]air [h]earing on the allegations against Carleo's co-workers ... and was negligent by denying the Plaintiff the relief request[ed]" and thus, "knowingly and unlawfully participated in the racketeering activity." (*Id.* at 15-16.)

Plaintiff alleges that on December 13, 2020, the Syracuse Police Department was summoned to 1409 South McBride Street, Syracuse, New York 13202, which is Plaintiff's church ("Jesus Christ Ministries"). (*Id.* at 16-18.) Plaintiff alleges that Defendant Kimpel responded, entered Jesus Christ Ministries without a warrant, searched and seized Plaintiff's sword, and then made Plaintiff and his wife, Natalia Israel, lock up and leave the premises. (*Id.*) Plaintiff alleges that approximately one hour later, at an unidentified location, by an unidentified individual, Plaintiff was assaulted and suffered minor contusions to his face, a swollen, black eye, and was hospitalized. (*Id.*) Plaintiff alleges that he called the Syracuse Police Department, Defendant

Kimpel again responded, Plaintiff reported to Defendant Kimpel who assaulted him, and Defendant Kimpel informed Plaintiff that a warrant would be issued for that person's arrest. (*Id.*) Plaintiff alleges that on December 14, 2020, he called the Syracuse Police Department and discovered that Defendant Kimpel wrote a false report for a missing person, instead of the assault on Plaintiff. (*Id.* at 9-10.)

Plaintiff alleges that on April 23, 2021, he and his wife were engaged in an "alleged [d]omestic dispute" and Defendant DeBottis was the responding officer. (*Id.* at 18-20.) Plaintiff alleges that when Defendant DeBottis arrived on scene, Plaintiff was approximately one block away near his vehicle. (*Id.*) Plaintiff alleges that, without a warrant, Defendant DeBottis approached Plaintiff, placed him under arrest, placed handcuffs on him, seized his personal possessions, and took him to jail. (*Id.*) Plaintiff alleges that he spent seventeen days in jail as a result of this incident. (*Id.*)

***3** Plaintiff alleges that on April 23, 2021, he informed the "City of Syracuse (Erica T. Clarke) ... that his private property was confiscated [without] a warrant" but that, despite this information, he was remanded to jail for seventeen days. (*Id.* at 20-21.)

Plaintiff alleges that on August 12, 2021, he called the police because his wife threatened to shoot him at Jesus Christ Ministries. (*Id.* at 21-22.) Plaintiff alleges that Defendant Lago responded to the call and when he arrived, Plaintiff was alone. (*Id.*) Plaintiff alleges that he signed an accusatory instrument against his wife and indicated that he wanted to press charges against her. (*Id.*) Plaintiff alleges that Defendant Lago informed him that a warrant would be issued for Ms. Israel's arrest. (*Id.*) Plaintiff alleges that after praying, he changed his mind about pressing charges, so he called the Syracuse Police Department and was informed that there was "no trace of his accusatory instrument he had signed ... and there was no record of his formal complaint." (*Id.*)

Plaintiff alleges that on July 27, 2020, he submitted a complaint to the CRB about the unlawful conduct of Defendants Sisley and Wolfe at Destiny USA on July 17, 2020, and that on December 23, 2020, he submitted a complaint to the CRB about the unlawful conduct of Defendant Kimpel on December 13, 2020. (*Id.* at 22-23.) However, Plaintiff alleges that Defendant Releford, the CRB administrator, has failed to provide him with any recourse or means to address the unlawful conduct. (*Id.*)

Plaintiff alleges that he submitted numerous complaints to Syracuse Police Chief Kenton Buckner and received responses but that Chief Buckner has been negligent in his response to the misconduct of Syracuse police officers. (*Id.* at 23-24.)

Based on these factual allegations, the Complaint appears to assert [2] the following fourteen causes of action: (1) a claim against Defendants pursuant to the Racketeer Influenced and Corrupt Organizations statute ("RICO"), 18 U.S.C. Chapter 96; (2) a claim against Defendants for dereliction of duty pursuant to 10 U.S.C. § 892; (3) a claim against Defendants for law enforcement misconduct pursuant to 42 U.S.C. § 14141(a); (4) a claim that Plaintiff's right to equal protection of the laws was violated by Defendants pursuant to the Fourteenth Amendment and 42 U.S.C. § 1983; (5) a claim that Defendants Sisley and Wolfe violated Plaintiff's rights of free speech and freedom of religion pursuant to the First Amendment and 42 U.S.C. § 1983, related to the incident on July 17, 2020; (6) a claim of false arrest against Defendants Sisley and Wolfe in violation of the Fourth Amendment and 42 U.S.C. § 1983, related to the incident on July 17, 2020; (7) a claim of illegal search and seizure against Defendants Sisley and Wolfe in violation of the Fourth Amendment and 42 U.S.C. § 1983, related to the incident on July 17, 2020; (8) a claim of negligence against Defendant Carleo related to Plaintiff's CRB complaint regarding the incident that occurred at Destiny USA on July 17, 2020; (9) a claim of illegal search and seizure against Defendant Kimpel pursuant to the Fourth Amendment and 42 U.S.C. § 1983, related to the incident on December 13, 2020; (10) a claim that Defendant Kimpel failed to protect Plaintiff as a victim of a crime related to the incident on December 13, 2020; (11) a claim of false arrest against Defendant DeBottis pursuant to the Fourth Amendment and 42 U.S.C. § 1983, related to the incident on April 23, 2021; (12) a claim of illegal search and seizure against Defendant DeBottis pursuant to the Fourth Amendment and 42 U.S.C. § 1983, related to the incident on April 23, 2021; (13) a claim of negligence against Defendant Releford for failing to provide Plaintiff "recourse" regarding his CRB complaints; and (14) a claim of defamation/slander/libel against Defendants. (*See generally* Dkt. No. 5.) As relief, Plaintiff seeks an injunction against the City of Syracuse prohibiting any "future Dereliction of Duty" and $3,120,000.00 in damages. (*Id.*)

2 The Amended Complaint (Dkt. No. 5) is brimming with legalese and references to several statutes and purported causes of action without any factual allegations associated that would plausibly suggest a claim. For example, the Amended Complaint lists "40 U.S.C. § 319 Grant of easements" as the ninth cause of action. (Dkt. No. 5 at 6.) "Now codified as 40 U.S.C. section 1314, section 319 permitted the federal government to grant states an easement over property held by the United States and also allowed the federal government to relinquish legislative jurisdiction over the easement area." *State v. Dodson*, 143 Wash. App. 872, 879 (Wash. Ct. App. 2008). Plaintiff's Amended Complaint and Complaint do not appear to allege facts plausibly suggesting any connection with state easements. As a result, based on Plaintiff's factual allegations and construing the Complaint liberally, the Court gleaned the fourteen causes of action cited herein.

## III. LEGAL STANDARD FOR INITIAL REVIEW OF COMPLAINT

***4** "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that ... the action ... (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2).

In order to state a claim upon which relief can be granted, a complaint must contain, *inter alia*, "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The requirement that a plaintiff "show" that he or she is entitled to relief means that a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is *plausible* on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (emphasis added) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Determining whether a complaint states a plausible claim for relief ... requires the ... court to draw on its judicial experience and common sense.... [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not shown–that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (internal citation and punctuation omitted).

"In reviewing a complaint ... the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor." *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir. 1994) (citation omitted). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

"[E]xtreme caution should be exercised in ordering sua sponte dismissal of a ... complaint before the adverse party has been served and [the] parties ... have had an opportunity to respond." *Anderson v. Coughlin*, 700 F.2d 37, 41 (2d Cir. 1983).

The Court, however, also has an overarching obligation to determine that a claim is not legally frivolous before permitting a plaintiff's complaint to proceed. *See, e.g., Fitzgerald v. First East Seventh St. Tenants Corp.*, 221 F.3d 362, 363 (2d Cir. 2000) (holding that a district court may *sua sponte* dismiss a frivolous complaint, notwithstanding the fact that the plaintiff paid the statutory filing fee). "Legal frivolity ... occurs where 'the claim is based on an indisputably meritless legal theory [such as] when either the claim lacks an arguable basis in law, or a dispositive defense clearly exists on the face of the complaint." *Aguilar v. United States*, 99-MC-0304, 99-MC-0408, 1999 WL 1067841, at *2 (D. Conn. Nov. 8, 1999) (quoting *Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998)); *see also Neitzke v. Williams*, 490 U.S. 319, 325 (1989) ("[D]ismissal is proper only if the legal theory ... or factual contentions lack an arguable basis."); *Pino v. Ryan*, 49 F.3d 51, 53 (2d Cir. 1995) ("[T]he decision that a complaint is based on an indisputably meritless legal theory for purposes of dismissal under section 1915(d), may be based upon a defense that appears on the face of the complaint.").

## IV. ANALYSIS

In addressing the sufficiency of a plaintiff's complaint, the court must construe his pleadings liberally. *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008). Having reviewed Plaintiff's Complaint with this principle in mind, I recommend that it be accepted in part for filing and dismissed in part.

 © 2026 Thomson Reuters. No claim to original U.S. Government Works. 

**A. RICO Claims**[3]

3 Under General Order #14 and N.D.N.Y. L.R. 9.2, a party who files a RICO claim must also file a Civil RICO statement within thirty days after the filing date of the complaint. Thirty days after the filing of Plaintiff's Complaint was September 12, 2021. Thirty days after the filing of Plaintiff's Amended Complaint was November 11, 2021. Despite this deficiency being highlighted in the Court's Order and Report-Recommendation dated September 16, 2021, Plaintiff has still noted filed a Civil RICO statement. (*See generally* docket sheet.)

***5** As set forth in the Court's Order and Report-Recommendation dated September 16, 2021, to allege an enterprise for purposes of a RICO claim, a plaintiff must allege an "ongoing organization, formal or informal" and that "the various associates function as a continuing unit." *United States v. Turkette*, 452 U.S. 576, 583 (1981). In particular, a RICO enterprise must be "an entity separate and apart from the pattern of activity in which it engages." *Turkette*, 452 U.S. at 583.

In addition, as stated in the Order and Report-Recommendation dated September 16, 2021, claims to enforce RICO cannot be pursued against Defendant City of Syracuse and the individual Defendants to the extent that they are sued in their official capacities, because the municipality cannot form the requisite criminal intent to establish a predicate act. *Naples v. Stefanelli*, 972 F. Supp. 2d 373, 389 (E.D.N.Y. 2013); *see Liang v. City of New York*, 10-CV-3089, 2013 WL 5366394, at *12 (E.D.N.Y. Sept. 24, 2013) (collecting cases) ("[A]s many previous courts in this Circuit have held, 'a municipal corporation is incapable of having the criminal intent to support RICO's predicate offense requirement.' ").

With respect to Plaintiff's claims against Defendants in their individual capacities, he fails to allege facts plausibly suggesting the existence of an "enterprise" within the meaning of RICO. Although Plaintiff's claims are against individuals employed by the City of Syracuse, he fails to plead any facts plausibly suggesting that Defendants constitute, control, or participate in any enterprise with a distinguishable existence or purpose. *See Mackin v. Auberger*, 59 F. Supp. 3d 528, 543 (W.D.N.Y. 2014) ("Plaintiff fails to allege that [the defendants] had a common or shared purpose or that they functioned as a continuing unit."). In addition, the Amended Complaint fails to allege any facts plausibly suggesting that Defendants functioned as a continuing unit. Plaintiff alleges in a conclusory fashion that "the following named Defendant(s) are an 'ongoing organization, formal or informal' and ... the stated Defendant(s) herein are a corrupt enterprise and/or entity separate and/or apart from the municipal corporation." (Dkt. No. 5 at 9.) However, Plaintiff fails to allege any facts plausibly suggesting those elements of a RICO claim. "Without such an enterprise, a RICO claim like [Plaintiff]'s must fail." *Liang*, 2013 WL 5366394, at *13; *see also Peterson v. City of New York*, 2012 WL 75029, at *3-4 (S.D.N.Y. January 9, 2012) (dismissing the plaintiff's RICO claim because "[t]he existence of a RICO enterprise is a necessary element for liability" and the plaintiff failed to allege facts plausibly suggesting the existence of a RICO enterprise).

As a result, I recommend that Plaintiff's RICO claim be dismissed.

**B. Dereliction of Duty**

As set forth in the Court's Order and Report-Recommendation dated September 16, 2021, 10 U.S.C. § 892, is a violation of the Uniform Code of Military Justice, and is wholly inapplicable here. As a result, I recommend that Plaintiff's claim for dereliction of duty be dismissed.

**C. Law Enforcement Misconduct**

As set forth in the Court's Order and Report-Recommendation dated September 16, 2021, 42 U.S.C. § 14141,[4] contains no private right of action. *See Maretta-Brooks v. Hanuszczak*, 18-CV-0426, 2018 WL 2021480, at *7 (N.D.N.Y. Apr. 26, 2018) (Peebles, M.J.) (citing 34 U.S.C. § 12601(b)) ("Under 34 U.S.C. § 12601, only the United States Attorney General has the authority to bring a civil action."); *see also Steinhardt v. Bernardsville Police Dep't*, 20-2825, 2021 WL 3929321, at *2 n.2 (3d Cir. Sept. 2, 2021) ("[The plaintiff] also referenced ...34 U.S.C. § 12601, but [that] provision[ ] contain[s] no private right of

 © 2026 Thomson Reuters. No claim to original U.S. Government Works. 

action.”); *Gumber v. Fagundes*, 21-CV-3155, 2021 WL 3563065, at *2 (N.D. Cal. Aug. 11, 2021) (“[C]laims under ...34 U.S.C. § 12601 ... must be dismissed because there is no private right of action.”). As a result, I recommend that this claim be dismissed.

4 Effective September 1, 2017, that section was recodified as 34 U.S.C. § 12601.

**D. Equal Protection Claim**

***6** As set forth in the Court's Order and Report-Recommendation dated September 16, 2021, Plaintiff fails to allege any facts plausibly suggesting that he was treated differently from similarly situated individuals or any other individuals. Accordingly, I recommend that Plaintiff's Fourteenth Amendment Equal Protection claims be dismissed for failure to state a claim upon which relief may be granted.

**E. First Amendment Claims**

Out of an abundance of caution, mindful of the Second Circuit's instruction that a *pro se* plaintiff's pleadings must be liberally construed, *see, e.g., Sealed Plaintiff*, 537 F.3d at 191, and without expressing an opinion as to whether Plaintiff can withstand a properly filed motion to dismiss or for summary judgment, I recommend that a response be required to Plaintiff's First Amendment claims against Defendants Sisley and Wolfe.

**F. Fourth Amendment**

The Fourth Amendment guarantees “[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures.” U.S. Const. amend. IV. “By virtue of its incorporation through the Fourteenth Amendment's Due Process Clause, the Fourth Amendment is binding on states and, relevant here, municipalities such as” the City of Syracuse. *Tsinberg v. City of New York,* 20-CV-0749, 2021 WL 1146942, at *10 (S.D.N.Y. Mar. 25, 2021) (citing *City of Ontario v. Quon*, 560 U.S. 746, 750 (2010)). It “applies in the civil context as well” as the criminal. *Sodal v. Cook Cnty.*, 506 U.S. 56, 57 (1992) (collecting cases).

**1. False Arrest**

Out of an abundance of caution, mindful of the Second Circuit's instruction that a *pro se* plaintiff's pleadings must be liberally construed, *see, e.g., Sealed Plaintiff*, 537 F.3d at 191, and without expressing an opinion as to whether Plaintiff can withstand a properly filed motion to dismiss or for summary judgment, I recommend that a response be required to Plaintiff's false arrest claims against Defendants (1) Sisley and Wolfe regarding the incident at Destiny USA on July 17, 2020, and (2) DeBottis regarding the incident on April 23, 2021.

**2. Search and Seizure Claims**

Out of an abundance of caution, mindful of the Second Circuit's instruction that a *pro se* plaintiff's pleadings must be liberally construed, *see, e.g., Sealed Plaintiff*, 537 F.3d at 191, and without expressing an opinion as to whether Plaintiff can withstand a properly filed motion to dismiss or for summary judgment, I recommend that a response be required to Plaintiff's Fourth Amendment deprivation of property claim against Defendants (1) Sisley and Wolfe regarding the incident at Destiny USA on July 17, 2020, (2) Kimpel regarding the incident on December 13, 2020, and (3) DeBottis regarding the incident on April 23, 2021.

**G. Failure to Protect**

Plaintiff appears to allege that Defendant Kimpel failed to protect him because Defendant Kimpel did not secure an arrest warrant for the person who assaulted Plaintiff on December 13, 2020. (Dkt. No. 5 at 16-18.) However, a police officer's alleged failure to protect one citizen from another does not violate due process, absent the existence of a special relationship between the police officer and the victim such as a custodial relationship (which is not present here). *DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 195-96 (1989); *Ying Jing Gan v. City of New York*, 996 F.2d 522, 533 (2d Cir. 1993).

As a result, I recommend that Plaintiff's failure to protect claim be dismissed for failure to state a claim.

### H. State Law Negligence Claims

***7** "In order to prevail on a negligence claim, 'a plaintiff must demonstrate (1) a duty owed by the defendant to the plaintiff, (2) a breach thereof, and (3) injury proximately resulting therefrom.' " *Pasternack v. Lab. Corp. of Am. Holdings*, 27 N.Y.3d 817, 825 (N.Y. 2016) (quoting *Solomon v. City of New York*, 66 N.Y.2d 1026, 1027 (N.Y. 1985)).

Out of an abundance of caution, mindful of the Second Circuit's instruction that a *pro se* plaintiff's pleadings must be liberally construed, *see, e.g., Sealed Plaintiff*, 537 F.3d at 191, and without expressing an opinion as to whether Plaintiff can withstand a properly filed motion to dismiss or for summary judgment, I recommend that a response be required to Plaintiff's negligence claims against Defendants Carleo and Releford.

### I. State Law Defamation/Libel/Slander

Plaintiff appears to assert claims of defamation, libel, and slander against Defendants.

"Defamation, consisting of the twin torts of libel and slander, is the invasion of the interest in a reputation and good name." *Hogan v. Herald Co.*, 84 A.D.2d 470, 474 (N.Y. App. Div. 4th Dep't 1982), *aff'd* 58 N.Y.2d 630 (N.Y. 1982). "Generally, spoken defamatory words are slander; written defamatory words are libel." *Albert v. Loksen*, 239 F.3d 256, 264 (2d Cir. 2001).

"Under New York law a [libel] defamation plaintiff must establish five elements: (1) a written defamatory statement of and concerning the plaintiff, (2) publication to a third party, (3) fault, (4) falsity of the defamatory statement, and (5) special damages or per se actionability." *Palin v. N.Y. Times Co.*, 940 F.3d 804, 809 (2d Cir. 2019). In addition, "[u]nder New York law, to state a cause of action for slander, the plaintiff must allege facts plausibly suggesting (1) a defamatory statement of fact, (2) that is false, (3) published to a third party, (4) of and concerning the plaintiff, (5) made with the applicable level of fault on the part of the speaker, (6) that causes either special harm or constitutes slander per se, and (7) that is not protected by privilege." *Ryle v. Rehrig Pac. Co.*, 19-CV-1478, 2020 WL 6196144, at *8 (N.D.N.Y. Oct. 22, 2020) (Suddaby, C.J.) (citing *Albert*, 239 F.3d at 265-66).

Plaintiff fails to allege facts plausibly suggesting any of the elements for a defamation claim. As a result, I recommend that Plaintiff's defamation claims be dismissed for failure to state a claim.[5] *See Bey ex rel. Dickerson v. Kelly*, 20-CV-2399, 2020 WL 3414612, at *3 (E.D.N.Y. June 22, 2020) (dismissing the plaintiff's defamation claim where he failed to allege facts in support of the five elements of defamation).

5 The Court also notes that Plaintiff's defamation claims may be time-barred. The statute of limitations for defamation claims under New York law is one year. N.Y. C.P.L.R. § 215(3). Some of the allegations in Plaintiff's Amended Complaint relate to incidents that occurred more than one year before the initiation of this action.

### J. Municipal Claims

As set forth above in Parts IV.A., B., C., and D., of this Order and Report-Recommendation, I recommend that all claims against Defendant City of Syracuse be dismissed. However, in the alternative, I also recommend that the claims against Defendant City of Syracuse—a municipality—be dismissed for failure to state a claim against a municipal entity for the reasons set forth in the Court's Order and Report-Recommendation dated September 16, 2021.

**K. Claims Against Defendants in Their Official Capacities**

***8** "An official capacity suit against a municipal employee is a suit against the municipality itself." *Pittman v. Billings*, 20-CV-0422, 2020 WL 2079440, at *9 (N.D.N.Y. Apr. 30, 2020) (Baxter, M.J.), *report and recommendation adopted by* 2020 WL 2574631 (N.D.N.Y. May 21, 2020) (Sharpe, J.). However, for the reasons set forth in Part IV.J. of this Order and Report-Recommendation, I find that Plaintiff in this case has alleged no facts that would state a claim against the City of Syracuse.

As a result, I recommend that to the extent Plaintiff attempts to assert claims against Defendants in their official capacities, those claims be dismissed.

## V. OPPORTUNITY TO AMEND

Generally, a court should not dismiss claims contained in a complaint filed by a *pro se* litigant without granting leave to amend at least once "when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Branum v. Clark*, 927 F.2d 698, 704-05 (2d Cir. 1991); *see also* Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave when justice so requires."). An opportunity to amend is not required, however, where "the problem with [the plaintiff's] causes of action is substantive" such that "better pleading will not cure it." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000); *see also Cortec Indus. Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) ("Of course, where a plaintiff is unable to allege any fact sufficient to support its claim, a complaint should be dismissed with prejudice."). Stated differently, "[w]here it appears that granting leave to amend is unlikely to be productive, ... it is not an abuse of discretion to deny leave to amend." *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993); *accord, Brown v. Peters*, 95-CV-1641, 1997 WL 599355, at *1 (N.D.N.Y. Sept. 22, 1997) (Pooler, J.).[6]

6 *See also Carris v. First Student, Inc.*, 132 F. Supp. 3d 321, 340-41 n.1 (N.D.N.Y. 2015) (Suddaby, C.J.) (explaining that the standard set forth in *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 796 (2d Cir. 1999)—that the Court should grant leave to amend "unless the court can rule out any possibility, however unlikely it might be, that an amended complaint would be successful in stating a claim"—is likely not an accurate recitation of the governing law after *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)), *rev'd on other grounds*, 682 F. App'x 30.

In this case, because the Court has already afforded Plaintiff an opportunity to amend the Complaint, I find that it need not grant Plaintiff another opportunity to amend. *See Official Comm. of Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, LLP*, 322 F.3d 147, 168 (2d Cir. 2003) (quoting *Dluhos v. Floating & Abandoned Vessel, Known as "New York,"* 162 F.3d 63, 69 (2d Cir. 1998)) (finding that the "District Court did not abuse its discretion in denying [the plaintiff] leave to amend the complaint because there was a 'repeated failure to cure deficiencies by amendments previously allowed.' "); *Hall v. Clinton Cnty.*, 18-CV-1405, 2020 WL 1923236, at *7 (N.D.N.Y. Apr. 21, 2020) (Suddaby, C.J.) (dismissing without leave to amend the *pro se* plaintiff's amended complaint where the court "already afforded Plaintiff an opportunity to amend his Complaint"); *Carrasco v. Annucci,* 17-CV-0246, 2017 WL 6492010, at *2 (N.D.N.Y. Dec. 15, 2017) (Suddaby, C.J.) (dismissing a complaint pursuant to 28 U.S.C. § 1915(e)(2)(B) without leave to amend "because plaintiff has already had two opportunities to amend the complaint"); *Salinger v. Projectavision, Inc.*, 972 F. Supp. 222, 236 (S.D.N.Y. 1997) ("Three bites at the apple is enough.").

## VI. MOTION FOR APPOINTMENT OF COUNSEL

***9** Plaintiff has also submitted a request for appointment of counsel. (Dkt. No. 6.)

In *Terminate Control Corp. v. Horowitz*, 28 F.3d 1335 (2d Cir. 1994), the Second Circuit reiterated the factors that a court must consider in ruling upon such a motion. In deciding whether to appoint counsel, the court should first determine whether the indigent's position seems likely to be of substance. If the claim meets this threshold requirement, the court should then consider a number of other factors in making its determination. *Terminate Control*, 28 F.3d at 1341 (citing *Hodge v. Police Officers*, 802 F.2d 58, 61 (2d Cir. 1986)).

Before evaluating a request for appointment of counsel, a party must first demonstrate that he is unable to obtain counsel through the private sector or public interest firms. *Cooper v. A. Sargenti Co., Inc.*, 877 F.2d 170, 173-74 (2d Cir. 1989) (citing *Hodge*, 802 F.2d at 61).

Courts cannot utilize a bright-line test in determining whether counsel should be appointed on behalf of an indigent party. *Hendricks v. Coughlin*, 114 F.3d 390, 392-93 (2d Cir. 1997). Instead, a number of factors must be carefully considered by the court in ruling upon such a motion. As a threshold matter, as noted above, the court should ascertain whether the indigent's claims seem likely to be of substance. If so, the court should then consider:

> The indigent's ability to investigate the crucial facts, whether conflicting evidence implicating the need for cross examination will be the major proof presented to the fact finder, the indigent's ability to present the case, the complexity of the legal issues and any special reason in that case why appointment of counsel would be more likely to lead to a just determination.

*Terminate Control*, 28 F.3d at 1341 (quoting *Hodge*, 802 F.2d at 61). This is not to say that all, or indeed any, of these factors are controlling in a particular case. Rather, each case must be decided on its own facts. *Velasquez v. O'Keefe*, 899 F. Supp. 972, 974 (N.D.N.Y. 1995) (McAvoy, C.J.) (citing *Hodge*, 802 F.2d at 61).

For purposes of Plaintiff's application, the Court will assume, without deciding, that the case may be of substance. Plaintiff's motion fails to make the requisite showing that he has been unable to obtain counsel through the private sector or public interest firms. (*See generally* Dkt. No. 6.) Plaintiff indicates that he contacted Everett Stern, who is the "CEO/Intelligence Director" of Tactical Rabbit Inc. (Dkt. No. 6 at ¶ 2.) There is no indication that Mr. Stern is an attorney licensed to practice in the United States District Court for the Northern District of New York, and a review of the attorney database does not indicate that he is. [7]

7 https://www.nynd.uscourts.gov/attorney-information-lookup last visited December 8, 2021.

In addition, a review of the issues in dispute are not overly complex. This case is early in the litigation process, but it appears to the Court as though, to date, Plaintiff has been able to effectively litigate this action.

While it is possible that there will be conflicting evidence implicating the need for cross-examination at the time of the trial of this matter, as is the case in many actions brought by *pro se* litigants, "this factor alone is not determinative of a motion for appointment of counsel." *Velasquez*, 899 F. Supp. at 974. The Court is unaware of any special reason why appointment of counsel *at this time* would be more likely to lead to a just determination of this litigation. Furthermore, it is highly probable that this Court will appoint trial counsel at the final pretrial conference if this case survives any dispositive motions. The Court therefore finds that, based upon the existing record in this case, appointment of counsel is unwarranted. Plaintiff may only file another motion for appointment of counsel in the event he can demonstrate in light of specific changed circumstances, consideration of the above factors warrants granting the application.

***10 ACCORDINGLY**, it is

**ORDERED** that Plaintiff's motion for appointment of counsel (Dkt. No. 6) is **DENIED** without prejudice; and it is further respectfully

**RECOMMENDED** that Plaintiff's Amended Complaint (Dkt. No. 5) be **ACCEPTED FOR FILING** with respect to Plaintiff's claims

(1) That his right to free speech/religion was violated pursuant to the First Amendment and 42 U.S.C. § 1983, against Defendants Sisley and Wolfe regarding the incident at Destiny USA on July 17, 2020;

(2) Of false arrest pursuant to the Fourth Amendment and 42 U.S.C. § 1983, against Defendants Sisley and Wolfe regarding the incident at Destiny USA on July 17, 2020;

(3) Of unreasonable search and seizure pursuant to the Fourth Amendment and 42 U.S.C. § 1983, against Defendants Sisley and Wolfe regarding the incident at Destiny USA on July 17, 2020;

(4) Of unreasonable search and seizure pursuant to the Fourth Amendment and 42 U.S.C. § 1983, against Defendant Kimpel regarding the incident on December 13, 2020;

(5) Of false arrest pursuant to the Fourth Amendment and 42 U.S.C. § 1983, against Defendant DeBottis regarding the incident on April 23, 2021;

(6) Of unreasonable search and seizure pursuant to the Fourth Amendment and 42 U.S.C. § 1983, against Defendant DeBottis regarding the incident on April 23, 2021; and

(7) Of Negligence pursuant to New York common law against Defendants Carleo and Releford;

and it is further respectfully

**RECOMMENDED** that Plaintiff's Amended Complaint (Dkt. No. 5) be **DISMISSED WITHOUT LEAVE TO REPLEAD** with respect to Plaintiff's claims

(1) Pursuant to RICO, against Defendants;

(2) Dereliction of duty pursuant to 10 U.S.C. § 892, against Defendants;

(3) Law enforcement misconduct pursuant to 42 U.S.C. § 14141(a) or 34 U.S.C. § 12601, against Defendants;

(4) That his right to equal protection was violated pursuant to the Fourteenth Amendment and 42 U.S.C. § 1983, against Defendants;

(5) Of failure to protect against Defendant Kimpel;

(6) Of defamation, slander, and libel;

(7) Against Defendant City of Syracuse and the individual Defendants in their official capacities;

pursuant to 28 U.S.C. § 1915(e)(2)(B) for failure to state a claim; and it is further

**ORDERED** that the Clerk of the Court shall file a copy of this order, report, and recommendation on the docket of this case and serve a copy upon the parties in accordance with the local rules. [8]

8 The Clerk shall also provide Plaintiff with copies of all unreported decisions cited herein in accordance with *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

**NOTICE:** Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report. [9] Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**. 28 U.S.C. § 636(b)(1) (Supp. 2013); Fed. R.

Civ. P. 6(a), 6(d), 72; *Roldan v. Racette*, 9.84 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)).

9 If you are proceeding *pro se* and served with this report, recommendation, and order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date that the report, recommendation, and order was mailed to you to serve and file objections. Fed. R. Civ. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. Fed. R. Civ. P. 6(a)(1)(C).

**All Citations**

Not Reported in Fed. Supp., 2021 WL 7161914

**End of Document**

© 2026 Thomson Reuters. No claim to original U.S. Government Works.

2025 WL 542587
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Patrick LAWRENCE, Plaintiff,
v.
Detective SHATTICK, et al., Defendants.

8:24-CV-656 (MAD/DJS)
|
Signed February 19, 2025

**Attorneys and Law Firms**

PATRICK LAWRENCE, 24-B-3717, Cape Vincent Correctional Facility, Route 12E, PO Box 739, Cape Vincent, New York 13618, Plaintiff, Pro se.

## MEMORANDUM-DECISION AND ORDER

Mae A. D'Agostino, United States District Judge:

## I. INTRODUCTION

***1** On May 14, 2024, *pro se* Plaintiff Patrick Lawrence commenced this action against Defendants Detective Shattick, St. Lawrence County Correctional Facility ("St. Lawrence C.C.F."), St. Lawrence County Sheriff's Department (the "Sheriff's Department"), Deputy Yerdon, Deputy Tate, Deputy Merria, Deputy Bundette, Sgt. G. Anderson, James Mcgahan, Bradford Reindeau, Thomas Farrell, Greg Storie, Brooks Bigwarfe, Peggy Harper, Tim Amos, Nurse Kerrigan, Chief Nurse Mayo, Chief Nurse Anita Scott, Sgt. Clary, Nurse 1-100, Correctional Officer 1-100, Kim Richards, K. Hillbourne, Yolanda Thompson, Sara Charpentier, Allison Applebe, and Deputy 1-100 (collectively, "Defendants"), bringing claims for violations of his constitutional rights pursuant to 42 U.S.C. §§ 1983, 1985, and 1986, violation of the Americans with Disabilities Act [1] ("ADA") and Rehabilitation Act [2] ("RA"), as well as state law claims. *See* Dkt. No. 1.

1 *See* 42 U.S.C. §§ 12101-213.

2 *See* 29 U.S.C. § 794.

On September 23, 2024, Magistrate Judge Daniel Stewart issued a Report-Recommendation and Order ("R&R"), recommending that (1) "Plaintiff's Complaint be DISMISSED with prejudice as to Plaintiff's fourth, fifth, seventh, fourteenth, fifteenth, and seventeenth causes of action, as well as, all Eighth Amendment claims, and Defendants Storie, Charpentier, Reindeau, Farrell, Mcgahan, and [St. Lawrence C.C.F.]"; (2) "Plaintiff's sixth, eighth, ninth, tenth, eleventh, [twelfth], and thirteenth causes of action be DISMISSED with leave to amend"; and (3) "Plaintiff's first, second, third, and sixteenth causes of action be permitted to proceed and Defendants be directed to respond." Dkt. No. 11 at 14 (emphasis omitted). Magistrate Judge Stewart also denied Plaintiff's motion for appointment of counsel. *See id.* at 12-14. On December 13, 2024, Plaintiff filed objections to the R&R, which he labels "Amendments and Objections." Dkt. No. 14.[3] On December 29, 2024, Plaintiff filed exhibits and medical records in support of his "Amendments and Objections." *See* Dkt. Nos. 15, 16. For the reasons that follow, the R&R is adopted as modified herein.

3 Plaintiff's objections are sixty pages. *See* Dkt. No. 14. Local Rule 71.2(c) instructs that "[o]bjections may not exceed twenty-five (25) pages without the Court's prior approval." N.D.N.Y. L.R. 72.1(c). The Court will consider the entirety of Plaintiff's objections because he is proceeding *pro se*. However, the Court warns Plaintiff that future compliance with the Federal Rules, the Court's Local Rules, and the undersigned's Individual Rules is required.

## II. BACKGROUND

For a recitation of the background, the parties are referred to the R&R. *See* Dkt. No. 11 at 4.

## III. DISCUSSION

### A. Standard of Review

When a party files specific objections to a magistrate judge's report-recommendation, the district court makes a "de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). However, when a party files "[g]eneral or conclusory objections or objections which merely recite the same arguments [that he presented] to the magistrate judge," the court reviews those recommendations for clear error. *O'Diah v. Mawhir*, No. 9:08-CV-322, 2011 WL 933846, *1 (N.D.N.Y. Mar. 16, 2011) (citations and footnote omitted). The district court may also, in its discretion, review recommendations *de novo* even when a party has failed to object or merely asserts general or conclusory objections. *See U.S. v. Male Juvenile (95-CR-1074)*, 121 F.3d 34, 39 (2d Cir. 1997) ("Although [the] defendant did not object to the magistrate judge's recommendation, ... [t]he record indicates that the district court made a *de novo* determination of the Report and Recommendation .... The court's review was well within its discretion") (citing *Grassia v. Scully*, 892 F.2d 16, 19 (2d Cir. 1989)). After the appropriate review, "the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1).

***2** "[I]n a *pro se* case, the court must view the submissions by a more lenient standard than that accorded to 'formal pleadings drafted by lawyers.' " *Govan v. Campbell*, 289 F. Supp. 2d 289, 295 (N.D.N.Y. 2007) (quoting *Haines v. Kerner*, 404 U.S. 519, 520 (1972)) (other citations omitted). The Court is obligated to "make reasonable allowances to protect *pro se* litigants from inadvertent forfeiture of important rights because of their lack of legal training." *Id.* (quoting *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983)).

In general, a court should not dismiss a *pro se* litigant's complaint without granting leave to amend at least once "when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Shomo v. City of New York*, 579 F.3d 176, 183 (2d Cir. 2009) (quotations and citation omitted). In addition, the court should exercise "extreme caution ... in ordering *sua sponte* dismissal of a *pro se* complaint *before* the adverse party has been served and both parties (but particularly the plaintiff) have had the opportunity to respond." *Anderson v. Coughlin*, 700 F.2d 37, 41 (2d Cir. 1983). An opportunity to amend, however, is not required where "the problem with plaintiff's cause of action is substantive such that better pleading will not cure it." *Townsend v. Pep Boys, Manny Moe and Jack*, No. 1:13-CV-293, 2014 WL 4826681, *2 (N.D.N.Y. Sept. 29, 2014) (quoting *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000)) (internal quotations marks omitted).

### B. Amendment

Magistrate Judge Stewart recommends granting Plaintiff leave to amend his complaint as to his sixth, eighth, ninth, tenth, eleventh, twelfth, and thirteenth causes of action. *See* Dkt. No. 11 at 14. Plaintiff asserts that, through his objections, he amends some or all of these causes of action. *See* Dkt. No. 14. A plaintiff may not amend his or her factual allegations though objections to an R&R. *See Lombardi v. Choices Women's Med. Ctr., Inc.*, No. 15-CV-05542, 2017 WL 1102678, *3 (E.D.N.Y. Mar. 23, 2017) ("Plaintiff cannot assert a new argument or amend her factual allegations through objections to an R & R") (citing *Yao Wu v. BDK DSD*, 2015 WL 5664534, *1 (E.D.N.Y. Sept. 22, 2015)). Therefore, although Plaintiff will be granted leave amend his


© 2026 Thomson Reuters. No claim to original U.S. Government Works.

complaint for the reasons discussed below, the Court declines to consider the proposed amendments contained within Plaintiff's objections.

**C. Plaintiff's Objections**

Plaintiff does not object to Magistrate Judge Stewart's recitation of the allegations set forth in Plaintiff's complaint. *See* Dkt. No. 14. The Court finds no clear error in the factual background set forth in Magistrate Judge Stewart's R&R and will rely on it throughout this Order. *See* Dkt. No. 11 at 4.

Throughout his objections, Plaintiff reiterates and expands upon his factual allegations, however, he fails to specifically object to many of the procedural deficiencies identified by Magistrate Judge Stewart. *See* Dkt. No. 14. Thus, the majority of the R&R is subject to review for clear error because Plaintiff's objections are conclusory and general. *See Brown v. Peters*, No. 95-CV-1641, 1997 WL 599355, *2 (N.D.N.Y. Sept. 22, 1997), *aff'd*, 175 F.3d 1007 (2d Cir. 1999) ("Even affording the objections the liberal reading required for *pro se* pleadings, I find that these objections fail to state any basis whatsoever, much less a specific one, for the court not to adopt the magistrate judge's rulings. They simply re-state the relief sought and the facts on which [the plaintiff] grounds his complaint and conclude that the magistrate judge's conclusions are wrong. When the parties make only frivolous, conclusive, or general objections, the court reviews the report-recommendation for clear error") (collecting cases). The Court, however, will exercise its discretion to review the R&R *de novo. See Nicosia v. Amazon.com, Inc.*, 384 F. Supp. 3d 254, 263 (E.D.N.Y. 2019), *aff'd*, 815 Fed. Appx. 612 (2d Cir. 2020) ("[T]he Court, in its discretion, may also review [sections of an R&R not objected to] *de novo*") (citing *Mathews v. Weber*, 423 U.S. 261, 270-71 (1976)).

**D. Eighth Amendment Claims**

***3** Magistrate Judge Stewart first recommends dismissing, with prejudice, Plaintiff's claims purportedly brought pursuant to the Eighth Amendment because Plaintiff's allegations pertain to his detention without a conviction and, therefore, do not implicate the Eighth Amendment. *See* Dkt. No. 11 at 5. Plaintiff does not raise specific objections to this recommendation. *See* Dkt. No. 14. Nevertheless, even reviewing the recommendation *de novo*, the Court finds no error.

Indeed, "the Eighth Amendment does not apply 'until after conviction and sentence.' " *Wright v. N.Y. City*, No. 09-CV-2452, 2012 WL 4057958, *3 (E.D.N.Y. Sept. 14, 2012) (quoting *United States v. Walsh*, 194 F.3d 37, 47 (2d Cir. 1999)). Plaintiff's claims are premised on allegations related to a traffic stop, arrest, detainment, and pre-conviction court proceedings, *see* Dkt. No. 11 at 4, and, therefore, to the extent Plaintiff states claims pursuant to the Eighth Amendment, the Court adopts Magistrate Judge Stewart's recommendation that such claims be dismissed with prejudice, *see id.* at 5.

**E. Immunity and State Action**

***1. Judicial Immunity***

Magistrate Judge Stewart recommends dismissing all claims asserted against Defendant Storie because he is immune from suit for actions taken in the performance of his judicial duties. *See id.* Plaintiff objects to the application of judicial immunity to his claims against Defendant Storie, arguing that Defendant Storie violated the constitution throughout Plaintiff's criminal court proceedings. *See* Dkt. No. 14 at 54-57 (asserting that Defendant Storie, among other things, "lied on the 730 order" and "silenced [Plaintiff] in his court room in violation of the [First] Amendment"). Plaintiff's arguments merely rehash the allegations in his complaint. *See* Dkt. No. 1 at 19-20.

Exercising its discretion to review this section of the R&R *de novo*, the Court finds no error. " '[J]udges generally have absolute immunity from suits for money damages for their judicial actions' and 'even allegations of bad faith or malice cannot overcome judicial immunity.' " *Tewari v. Sattler*, No. 23-36-CV, 2024 WL 177445, *1 (2d Cir. Jan. 17, 2024) (quoting *Bliven v. Hunt*, 579 F.3d 204, 209 (2d Cir. 2009)). "Judges enjoy absolute immunity from personal liability for acts committed within their judicial jurisdiction .... The absolute immunity of a judge applies however erroneous the act may have been, and however injurious in

its consequences it may have proved to the plaintiff." *Young v. Selsky*, 41 F.3d 47, 51 (2d Cir. 1994) (quotations and internal quotation marks omitted).

Here, Defendant Storie's alleged actions fall squarely within acts undertaken within his judicial jurisdiction and Plaintiff's claims are, thus, barred by judicial immunity. *See Tewari*, 2024 WL 177445, at *1 (affirming application of judicial immunity to claims against a defendant state court judge for alleged violation of the plaintiff's "constitutional rights in connection with various rulings she made during the course of the proceedings"). Accordingly, the Court adopts Magistrate Judge Stewart's recommendation that the claims against Defendant Storie be dismissed with prejudice. *See* Dkt. No. 11 at 5-6, 14.

***2. Prosecutorial Immunity***

Magistrate Judge Stewart recommends dismissal of the claims against Defendant Charpentier, on the basis of prosecutorial immunity, because "Plaintiff alleges that Defendant Charpentier violated his rights during the presentation of [Plaintiff's criminal] case to the grand jury and in court proceedings." *Id.* at 6 (citing Dkt. No. 1 at 12-15). Plaintiff asserts objections to Defendant Charpentier's dismissal at various points in his sixty-page filing, including, as to his fourth cause of action for "conspiracy," that Defendant Charpentier should not be dismissed because she "attempted to take advantage of [Plaintiff's] mental health disorders and poverty when [she] did conspire to deprive [Plaintiff] of his right to freedom, travel, life, liberty, property, equal protection of the law, and due process," and because Defendant Charpentier lied to, and fabricated evidence presented to, the grand jury. Dkt. No. 14 at 35-39.[4] Despite Plaintiff's policy arguments regarding the doctrine of prosecutorial immunity, all of Defendant Charpentier's alleged conduct occurred while she performed her duties as a prosecutor. *See, e.g.*, Dkt. No. 1 at 12-15.

4 Plaintiff also "urges the Honorable Court to remember that[,] due to the overwhelming evidence[,] 18 U.S.C. § 242 does not allow unconstitutional conduct to go unchecked." Dkt. No. 14 at 35. Plaintiff mentions 18 U.S.C. § 242 at other points in his objections, including in his objection to the dismissal of Defendant Storie. *See id.* at 54-57. However, 18 U.S.C. § 242 is a federal criminal statute that does not create a private right of action. *See Robinson v. Overseas Military Sales Corp.*, 21 F.3d 502, 511 (2d Cir. 1994). Therefore, Plaintiff is advised that he cannot bring a claim pursuant to 18 U.S.C. § 242. Plaintiff also mentions other criminal statutes throughout his objections, such as New York State Penal Law § 20.20. *See* Dkt. No. 14 at 3. Plaintiff is advised that he cannot bring civil causes of action pursuant to federal or state criminal statutes and that, if he includes such claims in any amended pleading, they will be subject to dismissal. *See Ming v. Brouillete*, No. 6:23-CV-0086, 2023 WL 5779558, *3 (N.D.N.Y. Apr. 7, 2023*), report and recommendation adopted*, 2023 WL 5444485 (N.D.N.Y. Aug. 24, 2023) ("There is no private right of action to enforce state or federal criminal statutes") (collecting cases).

***4** The Court agrees with Magistrate Judge Stewart that the claims against Defendant Charpentier are barred by prosecutorial immunity because this immunity extends to "prosecutors performing prosecutorial activities that are 'intimately associated with the judicial phase of the criminal process.' " *Ying Jing Gan v. City of N.Y.*, 996 F.2d 522, 530 (2d Cir. 1993) (quoting *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976)). "A plaintiff's allegations that a prosecutor violated speedy trial rights, withheld exculpatory evidence, charged a defendant without probable cause, and engaged in prosecutorial misconduct have all been found to be actions that fall within the scope of prosecutorial immunity." *Ramsey v. Smith*, No. 1:19-CV-54, 2020 WL 4053728, *3 (S.D. Miss. July 20, 2020) (citations omitted). Moreover, "[t]he presentation of a case to a grand jury falls squarely within the prosecutor's traditional function and is thus subject to absolute immunity." *Maglione v. Briggs*, 748 F.2d 116, 118 (2d Cir. 1984). Plaintiff's allegations regarding conspiracy between Defendant Charpentier and other defendants does not overcome Defendant Charpentier's prosecutorial immunity, as "a conspiracy claim also falls within the ambit of absolute prosecutorial immunity." *Soley v. Cnty. of Nassau*, No. 18-CV-377, 2022 WL 2954055, *7 (E.D.N.Y. July 26, 2022); *see Hill v. City of N.Y.*, 45 F.3d 653, 661 (2d Cir. 1995) (holding that a prosecutor was absolutely immune from suit for "conspiring to present falsified evidence to ... a grand jury").

For these reasons, the Court finds no error in, and adopts, Magistrate Judge Stewart's recommendation that the claims against Defendant Charpentier be dismissed with prejudice.

**F. Section 1983**

***1. State Action***

Magistrate Judge Stewart recommends dismissal of Plaintiff's claims against Defendants Reindeau, Farrell, Mcgahan and Applebe (hereinafter the "Defense Counsel Defendants"), who acted as counsel for Plaintiff during his criminal proceedings, because the Defense Counsel Defendants are not state actors. *See id.* at 6-7.[5] Plaintiff argues that the Defense Counsel Defendants should not be dismissed because "[h]ad it not been for a proceeding brought by the 'People of the State of New York' [he] never would have come across these individuals[, t]hey are licensed to 'practice' by the State Bar Association[, t]hey draw their funds and fees from State backed support[, and t]hey are regulated by the State 'Rules of Professional Conduct.' " Dkt. No. 14 at 53. Plaintiff argues that, for these reasons, "how anyone can come up with [']Public Defenders are not state actors['] is far reaching for a man of reasonable understanding." Dkt. No. 14 at 53 (quotation marks omitted).

5 Magistrate Judge Stewart also recommends dismissal of the fourteenth cause of action, brought against the Defense Counsel Defendants, because 42 U.S.C. § 1983 is not the appropriate vehicle to bring a claim for ineffective assistance of counsel. *See* Dkt. No. 11 at 7. The Court agrees. *See Welch v. Schenectady Cnty.*, No. 1:22-CV-9, 2022 WL 3904113, *2 (N.D.N.Y. Aug. 10, 2022), *report and recommendation adopted*, 2022 WL 3908798 (N.D.N.Y. Aug. 30, 2022) ("In addition, a section 1983 action 'is not the appropriate vehicle to raise a claim of ineffective assistance of counsel' ") (quotation omitted).

Courts routinely dismiss claims against public defenders and public defenders' offices because they are not state actors or persons under Section 1983. *See Tapp v. Champagne*, 164 Fed. Appx. 106, 108 (2d Cir. 2006) ("A 'public defender does not act under color of state law when performing a lawyer's traditional functions as counsel to a defendant in a criminal proceeding' ") (quoting *Polk Cnty. v. Dodson*, 454 U.S. 312, 325 (1981)); *Shorter v. Rice*, No. 12-CV-0111, 2012 WL 1340088, *4 (E.D.N.Y. Apr. 10, 2012) ("[I]t is axiomatic that neither public defenders, such as Legal Aid Attorneys, nor court-appointed counsel, nor private attorneys, act under the color of state law merely by virtue of their position").

Plaintiff alleges that that the Defense Counsel Defendants violated the Sixth Amendment because they failed to provide him with adequate representation and violated the Fourteenth Amendment by conspiring to present fabricated evidence to the grand jury in his criminal proceeding. *See* Dkt. No. 1 at 12-15, 22. The Defense Counsel Defendants are not state actors and, thus, the Court adopts Magistrate Judge Stewart's recommendation that the claims against these defendants, brought pursuant to Section 1983, be dismissed with prejudice.[6]

6 Specifically, the fourteenth cause of action is dismissed, as it alleges Sixth Amendment violations by the Defense Counsel Defendants. *See* Dkt. No. 1 at 22. Additionally, Defendants Charpentier, Reindeau, Farrell, Mcgahan and Applebe are the only defendants named in the fourth and fifth causes of action. *See* Dkt. No. 1 at 12-15. Because the claims against all of these attorney defendants are dismissed, as Defendant Charpentier is entitled to prosecutorial immunity and the Defense Counsel Defendants are not state actors, the fourth and fifth causes of action, which allege conspiracy to present false evidence to the grand jury, are also dismissed.

***2. False Arrest and False Imprisonment***

***5** Plaintiff's first and second causes of action allege that Defendants Shattick, Yerdon, Tate, Merria, Burdette, Anderson, and Bigwarfe violated his Fourth Amendment right to be free from unreasonable search and seizure, and that such defendants failed to intervene in the Fourth Amendment violations. *See* Dkt. No. 1 at 7-10. Magistrate Judge Stewart recommends that Plaintiff's first and second causes of action survive initial review and should be permitted to proceed. *See* Dkt. No. 11 at 7-8. The parties do not object to this recommendation and the Court, finding no error, adopts Magistrate Judge Stewart's recommendation that the first and second causes of action survive initial review.

***3. Deliberate Indifference***

Plaintiff's third and sixteenth causes of action allege that Defendants Shattick, Yerdon, Tate, Merria, Burdette, Anderson, Bigwarfe, Harper, Amos, Mayo, Scott, Clancy, Kerrigan, and Nurse 1-100 were deliberately indifferent to his medical needs. *See* Dkt. No. 1 at 10-11, 22-23. Magistrate Judge Stewart recommends that Plaintiff's third and sixteenth causes of action survive initial review and should be permitted to proceed. *See* Dkt. No. 11 at 8. The parties do not object to this recommendation and the Court, finding no error, adopts it.

***4. Municipal Liability***

Plaintiff alleges, through what is labelled his sixth cause of action, that the Sheriff's Department and St. Lawrence C.C.F. are subject to municipal liability, pursuant to *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978). *See* Dkt. No. 1 at 15. Magistrate Judge Stewart recommends that: (1) St. Lawrence C.C.F. be dismissed with prejudice, as the correctional facility is not a distinct entity from the County, and, thus, is not a proper party to a Section 1983 claim; and (2) because Plaintiff has not identified a purported policy, practice, or custom which caused his alleged constitutional violations, that the sixth cause of action be dismissed with leave to replead against St. Lawrence County. *See* Dkt. No. 11 at 9, n.5. Through his objections, Plaintiff seeks to amend his sixth cause of action. *See* Dkt. No. 14 at 1-14.

For the reasons previously discussed, Plaintiff cannot amend his complaint through his objections to the R&R. *See Lombardi*, 2017 WL 1102678, at *3. As for Magistrate Judge Stewart's recommendation that the sixth cause of action be dismissed with leave to replead as against St. Lawrence County, the Court reviews the recommendation *de novo* and adopts it as modified as follows.

To hold a municipality liable, a plaintiff "must show the following: '(1) actions taken under color of law; (2) deprivation of a constitutional or statutory right; (3) causation; (4) damages; and (5) that an official policy of the municipality caused the constitutional injury.' " *Maddox v. City of Syracuse*, No. 5:14-CV-1068, 2017 WL 680439, *3 (N.D.N.Y. Feb. 21, 2017) (quoting *Roe v. City of Waterbury*, 542 F.3d 31, 36 (2d Cir. 2008)) (additional citation omitted). However, absent an independent constitutional violation, a municipality cannot be held liable under § 1983. *See Monell*, 436 U.S. at 694 ("A local government may not be sued under § 1983 ... [unless the] official policy [is] ... the moving force of the constitutional violation"); *City of Canton v. Harris*, 489 U.S. 378, 385 (1989) ("Thus, our first inquiry in any case alleging municipal liability under § 1983 is the question whether there is a direct causal link between a municipal policy or custom and the alleged constitutional deprivation").

Federal courts apply state law to determine whether an entity has capacity to be sued. *See* Fed. R. Civ. P. 17(b). "Under New York law, a county is a municipal corporation capable of bringing suit and being sued." *Baker v. Willett*, 42 F. Supp. 2d 192, 198 (N.D.N.Y. 1999) (citing N.Y. Gen. Mun. Law § 2). However, a sheriff's department or a police department is an administrative arm of the municipal corporation and does not have a separate identity from the municipality. *See id.*; *Long v. City of Orleans*, 540 F. Supp. 3d 344, 350 (W.D.N.Y. 2021). Because a sheriff's department "does not exist separate and apart from the municipality and does not have its own legal identity," it cannot sue or be sued. *Baker*, 42 F. Supp. 2d at 198; *see Jenkins v. Onondaga Cnty. Sheriff's Dep't*, No. 5:12-CV-855, 2012 WL 4491134, *2 (N.D.N.Y. June 28, 2012) ("[U]nder New York law, departments, like the Onondaga County Sheriff's Department, that are merely administrative arms of a municipality, do not have a legal identity separate from the municipality and may not sue or be sued"). For these same reasons, a county correctional facility cannot be sued under Section 1983. *See Miles v. Albany Corr. Facility*, No. 9:09-CV-1279, 2010 WL 3946956, *1 (N.D.N.Y. Sept. 16, 2010), *report and recommendation adopted*, 2010 WL 3940956 (N.D.N.Y. Oct. 6, 2010) (finding that "the Albany Correctional Facility cannot be sued under 42 U.S.C. § 1983"). Therefore, the causes of action brought against the Sheriff's Department and St. Lawrence C.C.F. are dismissed with prejudice.

***6** Furthermore, the Court agrees with Magistrate Judge Stewart that, in his complaint, Plaintiff fails to clearly identify an unconstitutional policy that would support a claim for municipal liability. *See* Dkt. No. 11 at 9; Dkt. No. 1. Now, in his objections, Plaintiff raises various conditions that he believes constitute unconstitutional policies, practices, or customs of St. Lawrence County. *See* Dkt. No. 14 at 8-14 (alleging unconstitutional use of certain restraints, unlawful administration of controlled

 © 2026 Thomson Reuters. No claim to original U.S. Government Works. 

substances to incarcerated individuals, deprivation of outdoor recreation for pre-trial detainees, "toxic gas" emanating from shower drains at the correctional facility, and arbitrary and extended periods of segregated confinement). Plaintiff argues that these alleged policies violate New York Correction Law §§ 500-c and 137, Article 1 § 6 and § 11 of the New York State Constitution, and the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution. *See id.* However, Plaintiff's new and re-hashed allegations do not present cognizable objections to the R&R. *See Ross v. Dempsey Unif. & Linen Supply*, No. 3:16-CV-1208, 2017 WL 1207832, *1 (N.D.N.Y. Mar. 31, 2017), *aff'd*, 739 Fed. Appx. 59 (2d Cir. 2018) (finding objections insufficient to alter report and recommendation because the "plaintiff simply states general legal principles, and repeats his allegations against the named defendants"). Accordingly, the Court adopts Magistrate Judge Stewart's recommendation that the sixth cause of action be dismissed without prejudice, that St. Lawrence C.C.F. and the Sheriff's Department be dismissed with prejudice, and that Plaintiff be granted leave to amend his municipal liability allegations as against St. Lawrence County. *See* Dkt. No. 11 at 9.

***5. Supervisory Liability***

The seventh cause of action in Plaintiff's complaint seeks to hold Defendants Brook, Bigwarfe, Anderson, Harper, and Amos liable because "holding and acting in their respective positions as supervisors[, they] were aware of each constitutional violation and chose not to act." Dkt. No. 1 at 16. Magistrate Judge Stewart recommends that the seventh cause of action be dismissed because these Defendants "cannot be held liable simply by virtue of their supervisory position ... [and] each is named as a Defendant with respect to their own involvement in individual events." Dkt. No. 11 at 10. Plaintiff objects to the dismissal of and "re-pleads and seeks reinstatement" of his seventh cause of action. Dkt. No. 14 at 15. After conducting its own *de novo* review of this section of the R&R, the Court agrees with Magistrate Judge Stewart.

"It is well settled in this Circuit that 'personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under [Section] 1983.' " *Moffitt v. Town of Brookfield*, 950 F.2d 880, 885 (2d Cir. 1991) (quoting *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994)). " 'To establish a violation of [Section] 1983 by a supervisor, as with everyone else, ... the plaintiff must establish a deliberate, intentional act on the part of the defendant to violate the plaintiff's legal rights.' " *Tangreti v. Bachmann*, 983 F.3d 609, 618 (2d Cir. 2020) (quoting *Porro v. Barnes*, 624 F.3d 1322, 1327-28 (10th Cir. 2010)). "[T]here is no special rule for supervisory liability. Instead, a plaintiff must plead and prove 'that each Government-official defendant, through the official's own individual actions, has violated the Constitution.' " *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009)).

With this well-established legal principle in mind, the Court adopts Magistrate Judge Stewart's recommendation that Plaintiff's seventh cause of action, which alleges only that the named Defendants should be held liable by virtue of their positions as supervisors, should be dismissed with prejudice. Plaintiff may include allegations regarding any of the Defendant's *own individual violations* of his constitutional rights in his amended pleading.

**G. The ADA and RA**

Plaintiff alleges, in his eighth cause of action, that seventeen individual Defendants acted in violation of the ADA and RA. *See* Dkt. No. 1 at 17-18. Magistrate Judge Stewart recommends that this cause of action "be dismissed with prejudice as to the individual Defendants, but that Plaintiff be permitted to replead those claims against a proper party." Dkt. No. 11 at 10-11. Plaintiff "seeks the Court's help in identifying the appropriate defendant for this claim." Dkt. No. 14 at 43. [7]

7 Plaintiff also requests that the Court subpoena evidence from "the Global Tel Link messaging app" and recorded phone calls. Dkt. No. 14 at 41. Now is not the appropriate time to exercise the Court's subpoena powers. Plaintiff will have the opportunity to engage in the discovery process in due course.

***7** Neither the ADA nor the RA "provides for individual liability." *Dees v. Zurlo*, No. 1:24-CV-1, 2024 WL 2291701, *16 (N.D.N.Y. May 21, 2024) (quotation and quotation marks omitted). Indeed, " '[i]t is well-established that there is no individual

liability under the ADA or the [RA], whether the individual is sued in their official or individual capacity.' " *Goe v. Zucker*, 43 F.4th 19, 35 (2d Cir. 2022) (quoting *Perros v. Cnty. of Nassau*, 238 F. Supp. 3d 395, 402 n.3 (E.D.N.Y. 2017)).

"Title II of the ADA prohibits a 'public entity' from discrimination against a 'qualified individual with a disability.' " *Pascual v. N.Y. State*, No. 2:24-CV-6723, 2024 WL 5046675, *5 (E.D.N.Y. Dec. 9, 2024) (quoting 42 U.S.C. § 12132). "A 'public entity' includes 'any State or local government.' " *Id.* (quoting 42 U.S.C. § 12131(1)(A)). Accordingly, counties have been found to be public entities capable of being sued under the ADA. *See id.* (finding Suffolk County to be a public entity as defined by the ADA).

For these reasons, the Court adopts Magistrate Judge Stewart's recommendation that the seventh cause of action be dismissed as against the individual Defendants and Plaintiff is granted leave to replead his ADA and RA claims as against a proper party.

**H. Sections 1985 and 1986**

Plaintiff brings his ninth and tenth causes of action pursuant to 42 U.S.C. §§ 1985 and 1986, alleging that certain Defendants engaged in a conspiracy to deprive him of his constitutional rights. *See* Dkt. No. 1 at 19-21. Magistrate Judge Stewart recommends dismissal of the ninth and tenth causes of action, with leave to amend, because Plaintiff has failed to state a claim. *See* Dkt. No. 11 at 11. Specifically, Magistrate Judge Stewart recommends dismissal because Plaintiff does not allege that the conduct by Defendants was motivated by racial or other class-based animus, as required to state a claim under Section 1985 and, as a result, Plaintiff has also failed to state a claim pursuant to Section 1986 because such claim must be predicated on a valid Section 1985 claim. *See id.* Plaintiff asserts no specific objection this recommendation and merely states that his tenth cause of action "should not be dismissed" because he "needs attorney to assist him in prosecuting" his fourth (as well as his tenth) cause of action. Dkt. No. 14 at 39. Exercising its discretion to review this section of the R&R *de novo*, the Court adopts the recommendation that the ninth and tenth causes of action be dismissed with leave to amend.

To state a valid conspiracy claim under 42 U.S.C. § 1985(3), a plaintiff must show:

> (1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States.

*Cine SK8, Inc. v. Town of Henrietta*, 507 F.3d 778, 791 (2d Cir. 2007) (citing *Britt v. Garcia,* 457 F.3d 264, 270 n.4 (2d Cir. 2006)). "Further, a plaintiff must allege ... that the conspiracy was motivated by some class-based animus." *L.K. v. Sewanhaka Cent. High Sch. Dist.*, 641 Fed. Appx. 56, 59 (2d Cir. 2016) (citing *Cine SK8, Inc.*, 507 F.3d at 791). And, because Section 1986 claims are predicated on a valid Section 1985 claim, courts evaluate these claims together. *See id.* (citing *Brown v. City of Oneonta*, 221 F.3d 329, 341 (2d Cir. 2000)).

***8** There are no allegations in Plaintiff's complaint that Defendants' alleged conduct was motivated by some class-based animus. *See* Dkt. No. 14. Therefore, the Court adopts Magistrate Judge Stewarts recommendation that the ninth and tenth causes of action, brought pursuant to Sections 1985 and 1986, be dismissed with leave to amend. *See* Dkt. No. 11 at 11.

**I. State Law Claims**

Plaintiff asserts, against all Defendants, claims under New York law for negligent infliction of emotional distress, intentional infliction of emotional distress, and negligence—his eleventh, twelfth, and thirteenth causes of action. *See* Dkt. No. 1 at 21. Magistrate Judge Stewart recommends dismissal of these causes of action, with leave to replead, because Plaintiff has not

made the proper showing, pursuant to Rule 8(a)(2) of the Federal Rules of Civil Procedure. *See* Dkt. No. 11 at 12. Specifically, Magistrate Judge Stewart recommends dismissal because “the broad assertion that all [Defendants] are liable for these state law torts without any explanation of how each is alleged to have committed the torts is not permissible.” *Id.* Plaintiff objects to the dismissal of his state law claims, requests the appointment of *pro bono* counsel, and seeks to amend his eleventh, twelfth, and thirteenth causes of action through his objections to the R&R. *See* Dkt. No. 14 at 46-53.

Rule 8 of the Federal Rules of Civil Procedure provides that a pleading which sets forth a clam for relief shall contain, *inter alia*, “a short and plain statement of the claim showing that the pleader is entitled to relief.” *See* Fed. R. Civ. P. 8(a)(2). “The purpose of this Rule ‘is to give fair notice of the claim being asserted so as to permit the adverse party the opportunity to file a responsive answer [and] prepare an adequate defense.’ ” *Hudson v. Artuz*, No. 95 CIV. 4768, 1998 WL 832708, *1 (S.D.N.Y. Nov. 30, 1998) (quoting *Powell v. Marine Midland Bank*, 162 F.R.D. 15, 16 (N.D.N.Y. 1995)) (other citations omitted).

Plaintiff has failed to show how each Defendant is liable for the state law claims alleged. *See* Dkt. No. 1 at 22. As Magistrate Judge Stewart notes, “[t]he various Defendants are accused of a variety of misconduct over a span of time elsewhere in the Complaint and the broad assertion that all are liable for these state law torts without any explanation of how each is alleged to have committed the torts is not permissible.” Dkt. No. 11 at 12. For these reasons, the Court adopts the recommendation that the eleventh, twelfth, and thirteenth causes of action be dismissed with leave to replead. *See id.*

**J. Motion for Appointment of Counsel**

Magistrate Judge Stewart denied Plaintiff's motion for the appointment of counsel, with leave to renew at a later stage of this action. *See id.* at 12-14. Throughout Plaintiff's objections, he requests that the Court alter Magistrate Judge Stewart's denial of his motion and appoint him counsel. *See, e.g.*, Dkt. No. 14 at 39, 46.

“Unlike criminal defendants, IFP plaintiffs bringing civil actions have no constitutional right to the appointment of counsel.” *Brown v. Utica Police Dep't*, No. 6:17-CV-1190, 2017 WL 5514518, *4 (N.D.N.Y. Nov. 16, 2017) (citing *Wali v. One Source Co.*, No. 07-7550, 2009 WL 3170110, *1 (S.D.N.Y. Sept. 30, 2009)). “ ‘Appointment’ of counsel in a civil action involves the court requesting an attorney to represent an IFP party pro bono under 28 U.S.C. § 1915(a)(1).” *Id.* (citation omitted). In determining whether to make such a request for the indigent party, courts carefully consider a number of factors. *See id.* (citing *Terminate Control Corp. v. Horowitz*, 28 F.3d 1335, 1341 (2d Cir. 1994)).

***9** The Court agrees with Magistrate Judge Stewart's denial of Plaintiff's motion to appoint counsel, particularly in light of the early stage of this action. *See* Dkt. No. 11 at 12-14; *see also Gervasio v. Diaz*, No. 9:20-CV-0346, 2020 WL 3496423, *2 (N.D.N.Y. June 29, 2020) (“The Court is still not aware of any special reason why appointment of counsel at this early stage of the proceeding would be more likely to lead to a just determination of this litigation”).

**K. Leave to Amend**

Finally, Magistrate Judge Stewart recommends dismissing, with prejudice, the claims against Defendants Storie, Charpentier, Reindeau, Farrell, Mcgahan, and St. Lawrence C.C.F., as well as Plaintiff's fourth, fifth, seventh, fourteenth, fifteenth, and seventeenth causes of action, and all Eighth Amendment claims. *See* Dkt. No. 11 at 14. However, Magistrate Judge Stewart recommends dismissing Plaintiff's sixth, eighth, ninth, tenth, eleventh, twelfth, and thirteenth causes of action with leave to amend. *See id.* The Court finds no error with this portion of the R&R.

In Plaintiff's objections, he specifically asks the Court to allow him leave to amend his complaint. *See* Dkt. No. 14 at 1, 58. It is true that “[w]hen a *pro se* complaint fails to state a cause of action, the court generally ‘should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated.’ ” *Robinson v. Hallett*, No. 5:19-CV-406, 2020 WL 1227142, *4 (N.D.N.Y. Mar. 13, 2020) (quoting *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000)). However, courts routinely deny an opportunity to amend where a claim is barred on immunity grounds because amendment would be futile. *See Humphrey v. Ct. Clerk ex rel. U.S. Sup. Ct.*, No. 5:11-CV-938, 2011 WL 7112904, *4

(N.D.N.Y. Aug. 12, 2011) ("Because the defendant would be entitled to absolute immunity, this court recommends dismissal with prejudice of plaintiff's action"). Similarly, where an entity is not a person acting under the color of law, a Section 1983 claim cannot be stated. *Guillory v. Bishop Nursing Home*, No. 5:21-CV-410, 2021 WL 2431259, *3 (N.D.N.Y. June 15, 2021) ("Because Plaintiff failed to plausibly allege that the named Defendants acted under color of state law, Magistrate Judge Baxter correctly determined that the complaint fails to state any claims for relief under Section 1983 .... Moreover, Magistrate Judge Baxter correctly determined that leave to re-plead should be denied").

As such, the Court agrees with Magistrate Judge Stewart that the claims against Defendants Storie, Charpentier, Reindeau, Farrell, Mcgahan, and St. Lawrence C.C.F., along with Plaintiff's fourth, fifth, seventh, fourteenth, fifteenth, and seventeenth causes of action, and all Eighth Amendment claims, should be dismissed with prejudice and without leave to amend. *See* Dkt. No. 11 at 14. Additionally, the Court modifies the R&R, dismissing the claims against Defendant Sheriff's Department, with prejudice and without leave to amend, for the reasons previously stated. The Court also agrees that Plaintiff should have the opportunity to amend his sixth, eighth, ninth, tenth, eleventh, twelfth, and thirteenth causes of action because it is possible that Plaintiff could cure deficiencies in his pleading. *See id.*

If Plaintiff decides to amend his complaint, he must clearly set forth the facts that give rise to the claims, including, when possible, the dates, times, and places of the alleged underlying acts, as well as each individual who committed each alleged wrongful act. The revised pleading should allege facts demonstrating the personal involvement of any named Defendant. *See Wright*, 21 F.3d at 501. Finally, Plaintiff is informed that any amended complaint will replace the existing complaint and must be a wholly integrated and complete pleading that does not rely upon or incorporate by reference any pleading or document previously filed with the Court. *See Jeanty v. Sciortino*, 669 F. Supp. 3d 96, 118-19 (N.D.N.Y. 2023).

## IV. CONCLUSION

***10** After carefully considering the R&R, the entire record in this matter, and the applicable law, the Court hereby

**ORDERS** that Magistrate Judge Stewart's R&R (Dkt. No. 11) is **ADOPTED as modified** herein; and the Court further

**ORDERS** that Plaintiff's amended complaint (Dkt. No. 1) is **DISMISSED without prejudice and with leave to amend** as to Plaintiff's sixth, eighth, ninth, tenth, eleventh, twelfth, and thirteenth causes of action; and the Court further

**ORDERS** that Plaintiff's claims against Defendants Storie, Charpentier, Reindeau, Farrell, Mcgahan, St. Lawrence C.C.F., and the Sheriff's Department are **DISMISSED with prejudice and without leave to amend**; and the Court further

**ORDERS** that Plaintiff's fourth, fifth, seventh, fourteenth, fifteenth, and seventeenth causes of action, as well as, all Eighth Amendment claims, are **DISMISSED with prejudice and without leave to amend**; and the Court further

**ORDERS** that Plaintiff's first, second, third, and sixteenth causes of action survive initial review and are permitted to proceed; and the Court further

**ORDERS** that Plaintiff shall file his amended complaint within **thirty (30) days** of the date of this Order; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**


© 2026 Thomson Reuters. No claim to original U.S. Government Works.

**All Citations**

Not Reported in Fed. Supp., 2025 WL 542587

**End of Document**

© 2026 Thomson Reuters. No claim to original U.S. Government Works.

2020 WL 3496423
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Kevin GERVASIO, Plaintiff,
v.
Ricardo DIAZ, et al., Defendants.

9:20-CV-0346 (TJM/DJS)
|
Signed 06/29/2020

**Attorneys and Law Firms**

KEVIN GERVASIO, 18-A-2536, Plaintiff, pro se, Downstate Correctional Facility, Box F, Fishkill, NY 12524.

**DECISION and ORDER**

THOMAS J. McAVOY, Senior United States District Judge

## I. INTRODUCTION

***1** Pro se plaintiff Kevin Gervasio commenced this action by filing a civil rights complaint pursuant to 42 U.S.C. § 1983, together with an application to proceed in forma pauperis and a motion for appointment of counsel. Dkt. No. 1 ("Compl."); Dkt. No. 6 ("IFP Application");[1] Dkt. No. 3 ("Motion for Counsel").

1 Plaintiff's initial application to proceed in forma pauperis was denied as incomplete and this action was administratively closed. Dkt. No. 4. Plaintiff then filed his IFP Application, and the action was re-opened. Dkt. Nos. 6, 7.

By Decision and Order dated April 29, 2020, plaintiff's IFP Application was granted, and following review of the complaint pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b), the New York State Parole Office, and plaintiff's claims against this agency, were dismissed, and the Court directed service and a response for the claims against defendants Diaz and Rosa that survived sua sponte review. Dkt. No. 9 ("April 2020 Order"). The Court also denied plaintiff's Motion for Counsel without prejudice to renew at a later stage of the proceeding. *Id.* at 10, 12.

Presently before the Court is plaintiff's motion for reconsideration of the April 2020 Order insofar as that Order denied plaintiff's motion for appointment of counsel. Dkt. No. 15 ("Motion for Reconsideration").

## II. MOTION FOR RECONSIDERATION

A court may justifiably reconsider its previous ruling if: (1) there is an intervening change in the controlling law; (2) new evidence not previously available comes to light; or (3) it becomes necessary to remedy a clear error of law or to prevent manifest injustice. *Delaney v. Selsky*, 899 F. Supp. 923, 925 (N.D.N.Y. 1995) (McAvoy, C.J.) (citing *Doe v. New York City Dep't of Soc. Servs.*, 709 F.2d 782, 789 (2d Cir. 1983)). The standard for granting a motion for reconsideration is strict. *Shrader v. CSX Transportation, Inc.*, 70 F.3d 255, 257 (2d Cir. 1995). A motion for reconsideration "should not be granted where the moving party seeks solely to relitigate an issue already decided." *Id.*[2] Thus, a motion for reconsideration is not to be used for "presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a 'second bite at the apple.' " *Sequa Corp. v. GBJ Corp.*, 156 F.3d 136, 144 (2d Cir. 1998).

2 Generally, motions for reconsideration are not granted unless "the moving party can point to controlling decisions or data that the court overlooked - matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Shrader*, 70 F.3d at 257.

Plaintiff does not suggest that there has been an intervening change in the controlling law. Rather, liberally construed, plaintiff seeks reconsideration based on new information not previously considered by the Court, and to prevent manifest injustice.

More specifically, plaintiff argues that reconsideration is appropriate because (1) he has attempted to independently obtain counsel on his own, to no avail, (2) he "believe[s] [his] claim is of substance, and is very complex[,]" and (3) he has a learning disability that will hinder his ability to present his case. *See* Motion for Reconsideration. Plaintiff has also attached documents to his Motion for Reconsideration showing his efforts to obtain counsel, as well as documents that he believes support the merits of his claim. *See* Dkt. Nos 15-1, 15-2, 15-3.

***2** Upon a review of the relevant law and its application to the facts of this case, and taking the new information submitted by plaintiff into consideration, the Court concludes that its previous decision remains correct and did not work a manifest injustice.

As noted in the April 2020 Order, even if the Court were to assume that this case may be of substance, at this stage of the proceeding, the dispute is limited to plaintiff's Fourth Amendment claim arising out of discrete events that occurred on or about December 3, 2019. *See* April 2020 Order at 10. While plaintiff argues that the dispute involves complex issues and that he will have difficulty presenting his case in light of his learning disability, the Court has no basis to reach the same conclusions at this time.

Moreover, should one or more defendants answer the complaint, a Mandatory Pretrial Scheduling Order shall issue, which will direct the exchange of initial disclosures and likely help plaintiff frame the issues in the case and investigate the "crucial facts" without the need for counsel. Additionally, if this case proceeds to trial, it is highly probable that this Court will appoint trial counsel at the final pretrial conference. The Court is still not aware of any special reason why appointment of counsel at this early stage of the proceeding would be more likely to lead to a just determination of this litigation.

Accordingly, plaintiff's motion for partial reconsideration of the April 2020 Order is denied.[3]

3 As noted in the April 2020 Order, plaintiff may file another motion for appointment of counsel in the event he can demonstrate that, in light of specific changed circumstances, consideration of the relevant factors governing appointment of counsel warrants granting the application.

**III. CONCLUSION**

**WHEREFORE**, it is hereby

**ORDERED** that plaintiff's motion for partial reconsideration of the April 2020 Order (Dkt. No. 15) is **DENIED**; and it is further

**ORDERED** that the Clerk shall serve a copy of this Decision and Order on plaintiff and counsel for the defendants.

**IT IS SO ORDERED.**

**All Citations**

Not Reported in Fed. Supp., 2020 WL 3496423

**End of Document** © 2026 Thomson Reuters. No claim to original U.S. Government Works.

KeyCite Blue-Striped Flag
Appeal Filed by Adams v. City of Syracuse, 2nd Cir., October 17, 2025

2025 WL 2772081
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Robert ADAMS, Jr., Plaintiff,
v.
CITY OF SYRACUSE et al., Defendants.

5:21-cv-00650 (AMN/MJK)
|
Signed September 29, 2025

**Attorneys and Law Firms**

A. CABRAL BONNER, ESQ., CHARLES A. BONNER, ESQ., LAW OFFICES OF BONNER & BONNER, 3060 Kerner Boulevard – Suite A, San Rafael, California 94901, Attorneys for Plaintiff.

JESSE P. RYDER, ESQ., RYDER LAW FIRM, 6739 Myers Road, East Syracuse, New York 13257, Attorneys for Plaintiff.

DANIELLE R. SMITH, ESQ., TODD M. LONG, ESQ., CITY OF SYRACUSE, CORPORATION COUNSEL, 233 East Washington Street, Room 300 City Hall, Syracuse, New York 13202, Attorneys for Defendants.

## MEMORANDUM-DECISION AND ORDER

Anne M. Nardacci, United States District Judge:

### I. INTRODUCTION

***1** On June 3, 2021, Robert Adams, Jr. ("Plaintiff"), commenced this civil rights action against Police Officers Joseph Tolone, [1] Aaron Cecile, and Lashonda Russell (the "Responding Officers"); Detectives Ryan Brimmer and Jeffrey Beauchine (the "Detectives" and together with the Responding Officers, the "Individual Defendants"); the City of Syracuse ("Defendant City," and, together with the Individual Defendants, "Defendants"); Does 1-100 (the "Doe Defendants"); and others, alleging violations of federal and state law arising from his arrest and subsequent monthslong detention during a since-dismissed criminal prosecution. Dkt. No. 1 ("Complaint").

1 The Complaint incorrectly spells Officer Tolone's last name as "Toltone." Dkt. No. 77-55 at 1 n.1. Citations to docket entries utilize the pagination generated by CM/ECF, the Court's electronic filing system, and not the document's internal pagination.

Presently before the Court [2] is Defendants' motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure, Dkt. No. 77 ("Motion"), Plaintiff's opposition, Dkt. No. 85, and Defendants' reply in further support, Dkt. No. 90. For the reasons set forth below, the Motion is granted in part and denied in part.

2 This case was reassigned to the undersigned on January 19, 2023. Dkt. No. 34.

### II. BACKGROUND [3]

3 Unless otherwise indicated, the following facts have been asserted by the parties in their statements of material facts with accurate record citations, and expressly admitted or not denied with a supporting record citation in response. *See* N.D.N.Y. L.R. 56.1. The Court has also considered the parties' other submissions and attached exhibits. *See generally* Dkt. Nos. 77, 85-86, 90.

**A. The Parties**

Plaintiff is a black man who has lived in Syracuse for most of his life. *See, e.g.,* Dkt. No. 77-44 at 16:5-17:4. In May 2019, he was 55 years old, approximately 5'7" in height and 160 pounds in weight, and lived in an apartment building located at 941 James Street. Dkt. No. 90-1 at ¶ 515; Dkt. No. 77-23. At that time, Plaintiff's medical diagnoses included, *inter alia*, alcoholism, depression, and schizophrenia. Dkt. No. 77-42 at 2-3; Dkt. No. 77-55 at ¶ 454.

Defendant City is a large municipality in New York State with a police department that employs the Individual Defendants. As of May 2019, Officer Cecile had been a patrol officer for approximately two years, Dkt. No. 77-47 at 21:24-22:15; Officer Russell had been a patrol officer for approximately three years, Dkt. No. 77-46 at 9:17-25; Officer Tolone had been a patrol officer for approximately three years, Dkt. No. 77-48 at 9:24-10:2; Detective Brimmer had been a detective for less than three years, Dkt. No. 77-49 at 12:11-13:8; and Detective Beauchine had been a detective for approximately nine years, Dkt. No. 77-51 at 16:21-17:17.

**B. Relevant Events**

**1. May 1, 2016**

Shortly after 7:30 p.m. on May 1, 2019, police (apparently including Officer Russell) and emergency medical services found Plaintiff intoxicated and lying on the side of a road in Syracuse. Dkt. No. 77-42 at 2, 50-51; Dkt. No. 77-46 at 104:15-25. Plaintiff was covered in feces and urine and reported drinking six to seven "Na[tt]y Daddy beverages," a brand of malt liquor. Dkt. No. 77-42 at 2, 51; Dkt. No. 77-43 at 49:11-13. Plaintiff was transported to a local hospital emergency room for treatment, where his blood alcohol level ("BAC") was measured at 0.422 percent later that night. [4] Dkt. No. 77-55 at ¶ 311; Dkt. No. 77-42 at 25.

4 A person with a BAC of 0.08 percent is considered intoxicated *per se* under New York's Vehicle and Traffic Law ("VTL"). *See* N.Y. Veh. & Traf. Law § 1192(2); *see also Dalmasi v. City of Mount Vernon*, No. 13-cv-8672, 2014 WL 6645827, at *1 n.3 (S.D.N.Y. Nov. 24, 2014) (noting that a court may "take judicial notice of the VTL in deciding" summary judgment) (citations omitted).

**2. May 6, 2016**

**a. 941 James Street**

***2** At around 3:00 p.m. on May 6, 2019, Plaintiff began drinking in and in front of his apartment building at 941 James Street. Dkt. No. 77-55 at ¶¶ 407, 410. By 4:00 or 5:00 p.m., he had consumed three or four 24-ounce cans of Natty Daddy. *Id.* at ¶ 411. Around that time, a younger man, Charles Jones, came over to socialize with Plaintiff. *Id.* The two had known each for several years and, while they were not actually related, Plaintiff referred to Mr. Jones as his nephew and Mr. Jones called Plaintiff uncle. Dkt. No. 77-43 at 71:8-15; Dkt. No. 77-44 at 59:1-7, 98:16-23. Plaintiff and Mr. Jones walked to a store to purchase four of five more 24-ounce cans of Natty Daddy that they could share. Dkt. No. 77-55 at ¶¶ 414, 416. Plaintiff paid for the alcohol because Mr. Jones had no money. *Id.* at ¶ 415. The two returned to 941 James Street, where a woman (Vanessa Goldych) and an unnamed man were outside the building. *Id.* at ¶¶ 417, 419, 421-22, 424. Plaintiff continued drinking Natty Daddy and joined Mr. Jones, Ms. Goldych, and the unnamed man in front of 941 James Street. *Id.* at ¶¶ 419-20. At some point, Mr. Jones and the unnamed man got into a verbal altercation, which then turned physical. *Id.* at ¶¶ 421, 424.

**i. 911 call**

Shortly before 7:30 p.m., a young woman (Arianna Jordan Bailey) was walking down James Street with her siblings. *Id.* at ¶¶ 1, 339. At that time, Ms. Bailey observed the physical altercation between Mr. Jones and the unnamed man. *Id.* at ¶ 340. Mr. Jones swung a stick at the unnamed man; that man grabbed the stick and proceeded to knock Mr. Jones to the ground. *Id.* The unnamed man then discarded the stick, smashed Mr. Jones' cell phone on the ground, and took off running down the sidewalk. Dkt. No. 85-10 at 4. Mr. Jones was not moving and did not get up, and Plaintiff went to check on him. *Id.* at 5. Plaintiff asked Ms. Bailey to call 911. *Id.* At approximately 7:25 p.m., Ms. Bailey did so. Dkt. No. 77-55 at ¶ 1.

The roughly three and a half minute recording of that 911 call reflects that Ms. Bailey informed the dispatcher that two people had been fighting; one was unconscious on the ground; and "a big type log looking thing" had been involved as a weapon. *Id.* at ¶¶ 2-4; *see also* Dkt. No. 77-5. When the dispatcher asked whether the assailant was still there, Ms. Bailey said "no" and explained that "he got up out of here." Dkt. No. 77-55 at ¶ 5.

When the dispatcher asked for a description of the assailant, Ms. Bailey said "he was African-American" and she had "just seen him running off." *Id.* at ¶¶ 6-7. Ms. Bailey then switched to providing a description of Mr. Jones, whom she described as approximately 25 years old and 5'7". *Id.* at ¶¶ 8-9. When the dispatcher clarified that he needed the description of the assailant, Ms. Bailey stated that he was "kind of bigger, he's gotta be like 6'3", like medium build[.]" *Id.* at ¶ 10.

When the dispatcher asked what the assailant was wearing, Ms. Bailey said "a green lookin' sweatsuit thing" and then explained that "officers [a]re right here on site and I'm just gonna tell them what happened." *Id.* at ¶¶ 10-11. Ms. Bailey can then be heard saying "he got in a fight with somebody, the other dude ran off but he got knocked out... he was, he was hit too in the whole altercation, you see that stick he was hit with that ... he was." *Id.* at ¶ 12; *see also* Dkt. No. 77-16 at 0:05.

**ii. Police response**

Officers Russell, Cecile, and Tolone were the officers who initially responded to 941 James Street between approximately 7:27 and 7:28 p.m. *Id.* at ¶¶ 14-15. The 911 call notes indicated "2 PEOPLE FIGHTING – ONE PERSON NOW UNC[ONSCIOUS] ON THE GROUND – COMPL[AINANT] SAW A VERY LG STICK." Dkt. No. 77-4 at 3; Dkt. No. 77-55 at ¶¶ 16-17. The 911 call notes also reported that the assailant was " 'a black male,' 25-35 years old, six feet 3 inches, last seen wearing a green sweat[suit]." Dkt. No. 90-1 at ¶ 18. Soon after 7:30 p.m., four other officers arrived at the scene. *See, e.g.,* Dkt. No. 77-4 at 1-2.

After arriving, each of the Responding Officers activated and de-activated their body worn cameras ("BWC") at different times. *See* Dkt. Nos. 77-15, 77-16, 77-17. Officer Russell's BWC footage initially shows her standing over Mr. Jones, next to Plaintiff (who is also on the ground) and Ms. Bailey, as Officer Cecile exits his police vehicle and walks over. Dkt. No. 77-16 at 0:00. Ms. Bailey, who was still on the phone with 911 at this time, is visible pointing down at Mr. Jones and saying "he got into a fight with somebody" and "the other dude run off." *Id.*; Dkt. No. 77-55 at ¶ 21. Plaintiff says words to the same effect. Dkt. No. 77-16 at 0:00.

***3** Officer Russell proceeded to ask Plaintiff, who had some blood on his lip, "what happened to you, why you bleeding?" Dkt. No. 77-55 at ¶ 29. Ms. Bailey explained "he was hit too" and "you see that stick he was hit with that." Dkt. No. 77-55 at ¶ 12; Dkt. No. 77-16 at 0:05. Ms. Bailey subsequently slowly walked down the sidewalk, as Officer Tolone walked past her to join Officers Russell and Cecile by Mr. Jones. Dkt. No. 77-16 at 0:15; Dkt. No. 77-55 at ¶ 32. Officer Tolone tended to Mr. Jones, who remained unconscious, with labored, gasping breaths and blood coming from the left side of his head. Dkt. No. 77-55 at ¶¶ 40-42.

Plaintiff remained near the Responding Officers during this time. *See generally* Dkt. Nos. 77-16, 77-17. In response to Officer Cecile's question about who had hit Mr. Jones, Plaintiff said "some motherfucker." Dkt. No. 77-16 at 1:10. In response to Officer Russell's question about what that person looked like, Plaintiff pointed down James Street and said it was a "black guy" whom he did not know. Dkt. No. 77-16 at 1:15. Following further questions, Plaintiff stated words to the effect of "y'all acting like we did something wrong." *Id.* at 1:58. Officer Russell responded "no, no, we just trying to get that information, so that way we can put out a point of information regarding the guy who did it." *Id.* at 2:03. Officer Russell again asked about Plaintiff's lip;

Plaintiff responded that it was "a long story" and unrelated to Mr. Jones. *Id.* at 2:28. In response to Officer Russell's question, Plaintiff confirmed that he, Mr. Jones, and Ms. Goldych had been drinking with a fourth person. *Id.* at 2:54. Plaintiff also stated that the fourth person hit Mr. Jones, and that this person's name was "Pete." *Id.* Officer Russell then confirmed this version of events with Ms. Goldych. *Id.* at 3:00. In response to further questioning from Officer Russell, Plaintiff provided his name, address, and birthdate. *Id.* at 3:47, 4:10. Plaintiff again stated words to the effect "y'all acting like we done something," to which Officer Russell responded "no, we just need your info so that way you can help us, that's all." *Id.* Soon after, Officer Russell again asked "were you two fighting each other," to which Plaintiff responded "no." *Id.* at 5:45.

Approximately thirty seconds later, at 7:34 p.m., Officer Tolone directed Plaintiff to stand up and turn around, quickly patted him down, and informed Ms. Goldych "you're gonna get detained too dear." Dkt. No. 77-17 at 4:34. Officer Tolone then told Plaintiff "you're being detained right now" and placed Plaintiff in handcuffs. *Id.* at 4:53. Officer Tolone walked Plaintiff over to a police vehicle and said "stand right here; don't move," before unlocking the vehicle and directing Plaintiff into the backseat. *Id.* at 5:10.

The Responding Officers proceeded to put up police tape around the scene. *See, e.g.,* Dkt. No. 77-16 at 7:43. At approximately 7:38 p.m., Officer Russell remarked to Officers Tolone and Cecile that "we don't have anything to put out a point for, except for it was a black man." *Id.* at 9:54. Officer Tolone responded, "it's the guy we have in the car, I can almost guarantee it," Dkt. No. 77-17 at 8:27, and Officer Cecile agreed, saying "it's definitely him."[5] Dkt. No. 77-15 at 1:41.

5 During his deposition, Office Cecile characterized this statement as "police banter." Dkt. No. 77-47 at 74:13-17 ("Q. So, it's definitely him doesn't mean -- it doesn't mean that you were sure it was him? A. Right. That's police banter. I wasn't sure.").

At approximately 7:39 p.m., Officer Tolone asked various officers "have we started a canvas yet guys?" Dkt. No. 77-17 at 9:54. Officer Russell responded "yeah, we'll do that right now. I wish we would have got those people that were ..." and gestured down the sidewalk in the direction Ms. Bailey and her siblings had walked. Dkt. No. 77-16 at 11:27. At approximately 7:40 p.m., the Responding Officers spoke with two non-party officers who arrived after they did. *See, e.g.,* Dkt. No. 77-17 at 10:14. One of the non-party officers asked "what's up with the guy with the busted lip," to which Officer Tolone responded "yeah, I'm thinking that's gonna, like you said, that's gonna be our guy." *Id.*

***4** At approximately 7:41 p.m., Officer Cecile called the Criminal Investigations Division of the Syracuse Police Department ("CID"). Dkt. No. 77-15 at 4:55. Officer Cecile reported that "we've got possible suspects, I don't know, they're totally drunk, I don't know if someone wants to show up down here or not." *Id.* at 5:35. During the course of this call, Officer Cecile asked Officer Russell for the name of "the guy, the suspect ... the guy that we got detained right now," and then provided Plaintiff's name as "the possible suspect." *Id.* at 8:19.

At approximately 7:45 p.m., Officer Russell asked Officer Tolone, "did anyone contact those people back," Dkt. No. 77-16 at 17:21, presumably again in reference to Ms. Bailey and her siblings, to which Officer Tolone responded that he tried but they did not want to meet, Dkt. No. 77-17 at 15:51. Officers Tolone and Russell then canvased the area for additional eyewitnesses, without success. *See, e.g.,* Dkt. No. 77-55 at ¶ 76; Dkt. No. 77-17 at 18:30.

At approximately 7:47 p.m., seemingly while on hold with CID, Officer Cecile stated to other officers on the scene that "I'm just going to call back the [911] caller, because they obviously saw it, and see if they want to talk and give us the, uh, a statement of what happened, once I'm done with CID." Dkt. No. 77-15 at 10:57. After the call with CID resumed, Officer Cecile reiterated to the person with whom he was speaking that "he's totally, he's totally wasted, so how much that would do, I don't know" before saying words to the effect that he would "try and give the [911 caller] a call" and "see if she witnessed who did it ... and maybe she'll give us a statement." *Id.* at 12:39.

At approximately 7:50 p.m., Officer Cecile again informed one of the other officers at the scene that he was going to contact the 911 caller "to see if they could give us a statement since they're all wasted, and then, you know, to [see] who hit him with

 © 2026 Thomson Reuters. No claim to original U.S. Government Works. 

it, because obviously they saw the whole thing." *Id.* at 14:16. Officer Cecile then spoke with Ms. Bailey and asked if she could provide "an ID of who the suspect is, because right now all we've got is three people that are intoxicated, nobody's owning up to hit, hitting this, uh, gentlemen with a stick." *Id.* at 14:50. Officer Cecile went on to ask "do you remember what the, uh, what the guy that hit him with a stick was wearing," before repeating "a green shirt." *Id.* at 16:01. Officer Cecile then clarified "the guy that got knocked out was, like, in his mid to late 20s, and it was, like, an older guy, like 35 to 40, that hit him?" *Id.* at 16:43. After the call ended, Officer Cecile shared with other officers on the scene that he had spoken with Ms. Bailey, and said that Mr. Bailey had said the assailant "was wearing a green shirt, he's got a green vest on," to which another officer responded "yeah, it's this guy," presumably in reference to Plaintiff. *Id.* at 17:20. Officer Cecile then tried to call Ms. Bailey again, and asked if she would come back to identify the person she had seen fighting with Mr. Jones. *Id.* at 18:30. Ms. Bailey did not agree to do so, in part because she had just "seen a fight, I don't want nobody looking for me or anything." *Id.* at 18:45.

While officers identified numerous video cameras that could contain footage of the incident, no such footage was retrieved. *See, e.g.,* Dkt. No. 77-16 at 24:15; Dkt. No. 77-55 at ¶¶ 86, 134, 316, 383-84.

Shortly before 8:00 p.m., Plaintiff was removed from the police vehicle to be photographed by a non-party officer. Dkt. No. 77-16 at 31:11; Dkt. No. 77-55 at ¶ 113. During this process, Officer Russell walked over and asked Plaintiff "you being good Robert" and "how'd that thing go the other day when you shit your pants?" [6] *Id.* at 31:22. Plaintiff appears to have mumbled that he "got drunk." *Id.* at 31:29. The non-party officer photographing Plaintiff directed him to ball his hands up behind his back. *Id.* at 31:38. After leaning down to examine Plaintiff's hands and knuckles—presumably for blood or injuries—this officer did not photograph them. *Id.*

6 Officer Russell testified during her deposition that she already knew Plaintiff from "[p]rior incidents," none involving violence. Dkt. No. 77-46 at 104:16-25.

***5** Plaintiff then exclaimed "I want to know what I did," to which Officer Russell responded "we're trying to figure that out too." *Id.* at 31:50. As the non-party officer placed Plaintiff back in the vehicle, Officer Russell asked Plaintiff "you nervous," to which he responded "yeah." *Id.* at 32:00.

### 3. Criminal Investigations Division

Officers Tolone and Cecile transported Plaintiff and Ms. Goldych from 941 James Street to CID. Dkt. No. 77-6 at 5. Officer Tolone placed Plaintiff in a holding room, where he remained detained for several hours. Dkt. No. 77-8 at 3.

At some point during the hours that Plaintiff was detained at CID, Detective Brimmer and a non-party detective appear to have traveled to 941 James Street to investigate the scene. *See* Dkt. Nos. 77-13, 77-19. Detective Brimmer's police report indicates that he also reviewed the 911 call notes at this time. Dkt. No. 77-19 at 2. The non-party detective assisting Detective Brimmer in canvassing the apartment building documented that one of the witnesses "stated that he did not know the men who drank in the parking lot, but stated that he observed three men and one woman drinking beer in the lot this afternoon." Dkt. No. 77-13 at 2. Once back at CID, Detective Brimmer tried to speak with Ms. Goldych, but determined that she "appeared extremely intoxicated" and "was unable to speak due to apparent intoxication." [7] Dkt. No. 77-19 at 2. Detective Brimmer's police report states that "[b]ased on the 911 caller[']s description of the incident" and Plaintiff's presence at the crime scene, "he was being considered a likely suspect." *Id.* at 3.

7 Seemingly in the early morning of May 7, 2019, Detective Brimmer again tried to speak with Ms. Goldych, who "still seemed too intoxicated" and "could speak a little but was talking about outlandish things not related to this incident." Dkt. No. 77-19 at 3. When Detective Brimmer spoke with Ms. Goldych a third time, at some point later on May 7, 2019, she "seemed much less intoxicated." *Id.* While in that state, Ms. Goldych apparently told Detective Brimmer, *inter alia*, that she was "drunk[ ] at the time of the incident and does not remember all of the details" and that "she was unaware that Jones had been injured." *Id.* Detective Brimmer did not take a written statement from Ms. Goldych. *Id.*; *see also* Dkt. No.

77-30 at 2 (non-party detective's report stating that when he subsequently spoke with Ms. Goldych "[i]t should be noted throughout our conversation V. Goldych referred to 'spiritual incidents' as well as being visited by 'higher powers' on several different occasions. She often had a difficult time organizing her thoughts and at times did not directly answer questions. Based upon her actions and statements her mental health status is unknown to me at this time.").

Once Detective Brimmer returned to CID, he and Detective Beauchine moved Plaintiff into a small interrogation room at approximately 10:30 p.m. Dkt. No. 77-55 at ¶ 141; Dkt. No. 77-21 at 0:00. Plaintiff remained in this room until he was placed back in handcuffs at approximately 1:00 a.m. *See generally* Dkt. No. 77-21. Shortly after 10:30 p.m., Detective Brimmer read Plaintiff his *Miranda* rights. Dkt. No. 77-55 at ¶ 154. Plaintiff proceeded to speak with the Detectives. In response to Detective Brimmer's initial question about "[w]hat happened over there, man," Plaintiff stated "[w]ell, what happened -- my nephew got into it with some guy. You know, and - - you know, they was fighting and stuff, you know. And I'm drunk. You know what, hey, here I am. That's what happened." Dkt. No. 77-22 at 6:18-23.

***6** The parties dispute the extent of Plaintiff's intoxication during the approximately two and half hours that he remained in the interrogation room. Sometime after approximately 1:00 a.m. on May 7, 2019, when Plaintiff's booking process began, his BAC was measured at 0.15 percent, or nearly twice the legal limit to operate a motor vehicle. Dkt. No. 77-24; *see also supra* n.4. According to one of Defendants' retained experts (Robert L. Weisman, D.O.), the physiological effects of such a BAC are that "[m]otor function, speech, and judgment are all severely affected at this height of blood alcohol. Staggering, and slurred speech, may be observed." [8] Dkt. No. 77-52 at 10.

8 Dr. Weisman further opined that "[t]o help determine typical reductions in human BAC, clinical services often utilize a declination rate of 0.015% per hour." Dkt. No. 77-52 at 11. This suggests that Plaintiff had a higher BAC several hours prior, when Detective Brimmer read Plaintiff his *Miranda* rights. Dkt. No. 77-55 at ¶ 154. Presumably, the corresponding physiological effects identified by Dr. Weisman would have been more severe at that time and during the interrogation.

Based on Dr. Weisman's review of numerous record materials and his examination of Plaintiff in June 2024, his expert psychiatric report contains several other findings that are relevant for purposes of summary judgment. *See generally id.* First, Dr. Weisman determined that—when sober—"Mr. Adams has deficits in his *Miranda* understanding, particularly regarding legally acceptable deceptive police practices as well as other specific aspects of remaining silent versus talking to the police." *Id.* at 7, 9. Based on certain of Mr. Adams' test scores—again, when sober—Dr. Weisman also concluded that Plaintiff's "basic understanding of *Miranda*" ranked in the eighteenth percentile of pretrial defendants. *Id.* at 8-9. Defendants take the position in the Motion that "Dr. Weisman's opinions are unrebutted." Dkt. No. 77-56 at 20.

Beyond the extent of Plaintiff's intoxication, the parties also dispute the voluntariness and significance of various statements Plaintiff made during his interrogation by the Detectives. In sum, the Detectives refused to accept Plaintiff's version of events, and instead told Plaintiff that video evidence, forensic evidence, and numerous witnesses all established that he had fought Mr. Jones; Plaintiff just needed to provide the details. *See generally* Dkt. No. 77-22. For example:

Det. Beauchine: Okay. Hit the reset button. All right, okay.

Det. Brimmer: Why don't we start at the beginning and tell the truth?

Plaintiff: That's the truth.

Det. Brimmer: No.

Det. Beauchine: No, it's not. Listen, listen. It's not. We can do this over --

Plaintiff: Okay. Then you tell the truth, then. Okay?

Det. Beauchine: I don't need to tell the truth. You're the one that needs to --

Plaintiff: Well, well, I'm telling you what I -- I'm telling you what as far as I know.

Det. Brimmer: You were there. You were part of this.

Det. Beauchine: Yes.

Det. Brimmer: So you should --

Plaintiff: That's what I'm saying.

Det. Brimmer: -- you should know, then.

Plaintiff: Okay. That's what I'm saying. Okay, I'm trying to tell y'all what happened. You telling me I'm lying.

Det. Beauchine: Well, let me put it to you like this. Okay?

Plaintiff: Oh, man. That --

Det. Beauchine: We got several people saying that you, all right, got into an argument with this guy, and that you hit him with a stick. All right? Just hear me out. Hear me out. Okay? And that you hit him with a stick, and that you hit him so hard that he got knocked out and went to the ground.

Plaintiff: No.

Det. Beauchine: And so we're trying to verify whether or not you intentionally hit him --

***7** Plaintiff: No. No, no, no, no, no.

Det. Beauchine: -- because you're a predatory person who wants to go out there and hurt people and do bad things to people, or if this is just a family argument that went awry and --

Plaintiff: No.

Det. Beauchine: Okay.

Det. Brimmer: He ended up falling and hitting his head or something.

Det. Beauchine: Right. And that's exact --

Plaintiff: Oh, no.

Det. Beauchine: -- that's (indiscernible).

Plaintiff: No.

Det. Beauchine: Okay. That's what we're facing, so did -- was this something where you are a predator? You intentionally attack people with things --

Plaintiff: No.

Det. Beauchine: -- or whatever -- whatever you have available to you? Or is this just something that just --

Plaintiff: I don't hurt nobody.

Det. Beauchine: -- listen, listen. Or is this something where you, a couple guys are having a couple drinks and some shit is said, and it's a family matter and shit went south, and it was more of an accident than anything else, or are you intentionally going around doing stuff like this? This is --

Plaintiff: No.

Det. Beauchine: Okay. Which of the --

Plaintiff: No.

Det. Beauchine: -- which of the two is it?

Plaintiff: Nothing. Not one.

Det. Beauchine: No, no. Which -- no, no, no. I'm --

Plaintiff: I just happened to be there.

Det. Beauchine: You didn't just happen to be there. Okay?

Plaintiff: I didn't even hit the guy.

Det. Beauchine: Not with your hand.

Plaintiff: I hit nobody.

Det. Beauchine: You say not with your hands, because you're showing us your hands. We know that. All right? We know that.

Det. Brimmer: Listen, it was a mistake, and you didn't mean for him to get hurt like that, that's a big difference than if you go out there trying to hurt people.

Plaintiff: I ain't hit him.

Det. Brimmer: It's a huge difference.

Plaintiff: I didn't. Man, I swear to God I didn't. I didn't.

Det. Brimmer: It's a huge difference.

Plaintiff: I just happened to be there.

Det. Brimmer: No.

Plaintiff: I witnessed the thing.

Det. Brimmer: That story is not going to fly.

Det. Beauchine: Right. When people --

Det. Brimmer: It's not going to hold up.

Det. Beauchine: -- when people see the video and they talk to someone --

....

They're going to see you in a certain fashion. And that's without you saying anything, right? So if you give your side of the story, and give your thoughts, and what was going through your head at the time, listen, it puts people in your perspective and in your shoes. Now, it doesn't -- and here's what I would say. It --

Plaintiff: I didn't do nothing.

Det. Beauchine: Hold on, listen to me. It doesn't always make it right.

Plaintiff: I'm telling you. I didn't do this.

Det. Beauchine: People will understand if you put them in your shoes, and you can only do that by talking.

Plaintiff: I don't give a --

Det. Beauchine: By telling us.

Plaintiff: Well, I'm telling you.

Det. Beauchine: Yeah.

Plaintiff: I'm telling you how it happened. Okay? I didn't --

Det. Beauchine: Were you shooing him away with the stick, or did you mean to hurt him with the stick?

Plaintiff: No. No.

Det. Beauchine: What were you doing?

***8** Plaintiff: Wait a minute. You put -- you put words --

Det. Beauchine: No, no, no. I'm asking you. It's a question.

Det. Brimmer: We're trying to get to the --

Plaintiff: -- you're putting words in my mouth.

Det. Brimmer: -- we're trying to get to the bottom of this.

Plaintiff: I'm telling you. Charles was fighting this guy. Okay? Next thing I know --

Det. Beauchine: We're past that. We're past that. Alright? We're past that. We know.

Plaintiff: And --

Det. Beauchine: We're past that. All right? Listen, relax.

Det. Brimmer: Just help us understand.

Det. Beauchine: Help us understand what happened. All right? Between you and Charles.

Det. Brimmer: I mean, you got a wound on your face. That could be a defensive wound, you know. It could --

Plaintiff: No. I ran into a tree being drunk.

Det. Beauchine: Okay. So is it safe -- how often do you drink?

Plaintiff: Hmm? Every day.

Det. Beauchine: Okay. Could this be --

Plaintiff: All day. (laughs)

Det. Beauchine: -- could this -- listen, could this be a mistake between you and Charles --

Plaintiff: No.

Det. Beauchine: -- because you were intoxicated and --

Plaintiff: No, no, no no.

Det. Beauchine: -- he was intoxicated?

Plaintiff: No, no, no, no, no, no, no. No, no, no, no. Really, me and Charles ain't got no problem at all.

Det. Beauchine: Well, you did tonight.

Plaintiff: No. Hmm-mm.

Det. Beauchine: You did.

Plaintiff: No. No. No. Huh-uh.

Det. Beauchine: You might not want to think that you might have had a problem, but --

Plaintiff: No, man.

Det. Beauchine: -- you get -- you had a problem with him tonight.

Plaintiff: No.

Det. Beauchine: Or he had a problem with you, and you were defending yourself, tell us.

Plaintiff: No, no, no, no.

Det. Brimmer: Did he start talking about Vanessa and upset you?

Plaintiff: No.

Det. Brimmer: No?

Det. Beauchine: You had a problem with him tonight.

Plaintiff: Me and Vanessa had walked up. They happen to over sitting -- sitting down, drinking. And still we was drinking. Okay, next thing I know, they fighting. Really. Really, man. Period.

Det. Beauchine: Was this an accident or did you mean to hurt him?

Plaintiff: Man -- I didn't hurt him.

Det. Beauchine: You meant to hurt him?

Plaintiff: I never hurt him at all.

Det. Beauchine: It was an accident?

Plaintiff: Why do you -- why are you trying to put words in my mouth? Okay? Huh?

Det. Brimmer: We're not trying to. We just want to get to the bottom of this.

Plaintiff: Man, where -- well, where the bottom -- we're at the bottom of [sic]. I was telling you.

Det. Brimmer: We're just going in circles.

Plaintiff: I didn't do nothing. I was a witness. That don't -- this they got --

Det. Brimmer We're just going in circles here....

*Id.* at 51:2-59:19.

During the interrogation, Plaintiff's cellular phone rang. The Detectives instructed Plaintiff not to answer the phone, to turn it off, and to place it on the table. *Id.* at 27:6-20. At approximately 11:14 p.m., just prior to the first break taken during the interrogation, Detective Brimmer said that he was going to take Plaintiff's phone outside the room. *Id.* at 60:24-25; *see also* Dkt. No. 77-21b at 13:50. Plaintiff responded, "[m]an, give me my phone," to which Detective Brimmer replied "[n]o, it's going to sit out here." Dkt. No. 77-22 at 61:1-3. During this break, Plaintiff is visible talking to himself and unsuccessfully trying to open the interrogation room's door, which appears to have been deadbolted from the outside. Dkt. No. 77-21b at 14:00-17:00. Plaintiff subsequently informed the Detectives that he was not currently working because he had a "dual diagnosis" and that his psychiatrist, counselor, and primary care doctor were all at the same local healthcare provider. *Id.* at 102:16-103:16; *see also* *United States v. Moran*, 778 F.3d 942, 951 (11th Cir. 2015) ("[D]ual diagnosis patients are those suffering from both substance abuse *and* acute mental disorders.").

***9** Plaintiff contends that he denied assaulting Mr. Jones nearly 200 times before the Detectives coerced him into providing a false confession around midnight. Dkt. No. 85-2 at ¶¶ 570-71. During the subsequent break, Plaintiff can be heard saying "I'm going to jail for something I didn't do,"[9] Dkt. No. 77-21c at 8:49, and further talking to himself, *see, e.g., id.* at 9:10, 11:23.

9 The transcript Defendants provided inaccurately characterizes Plaintiff's statement as "[m]umbles incoherently." Dkt. No. 77-22 at 105:7.

Defendants contend that Plaintiff's eventual confession was not coerced and not false. Dkt. No. 77-56 at 9, 25. Presumably to support this position, Defendants requested that Dr. Weisman opine on Plaintiff's capacity during the May 2019 interrogation. Dkt. No. 77-52 at 11, 12. As relevant here, Defendants requested that Dr. Weisman determine whether Plaintiff had the "proper requisite intellectual capacity and base intelligence level" and the "proper requisite psychological state and mental health capacity" to have:

....

(c) understood the significance and context of the questions being asked regarding the assault of Charles Jones; ...

....

(f) understood [the] significance and context of his answers to those questions with respect to the assault of Charles Jones; ....

(g) observed the events for which he was being questioned, illustrated the ability to recall those same observations, and provided answers based upon those observations and recollections (even if, under certain circumstances, Plaintiff was deceptive in his response); ....

(h) [had] the ability (or exhibited the ability) to communicate his answers truthfully, effectively, clearly and coherently; ..... and

(i) provided the answers of his own accord.

*Id.* at 11-12, 12-13. In response to every one of these items, Dr. Weisman concluded:

> Initially, yes, but towards the latter part of the ~1.5-hour interview, Mr. Adams being under the combination of duress, fatigue, limitations of his legal knowledge, and some level of alcohol intoxication, became emotionally and cognitively distressed, resigned, and compelled to offer the narrative of the crime being demanded of him.

*Id.* at 11-12, 12-13.

**4. Police Reports**

**a. Detective Brimmer**

According to the arrest report prepared by Detective Brimmer, he and Detective Beauchine arrested Plaintiff at 12:00 a.m. on May 7, 2019. Dkt. No. 77-23. The arrest report listed Plaintiff as 55 years old, 5’7” tall, 160 pounds, and described his apparent condition as “Appeared Normal.” *Id.* The arrest report included criminal charges against Plaintiff. *Id.*

Detective Brimmer also prepared a police report regarding events on May 6 and 7, 2019, including his telephone conversation with Ms. Bailey. Dkt. No. 77-19. The parties dispute what was said during this conversation on May 7, 2019.

According to Detective Brimmer's report, Ms. Bailey corroborated certain key details of Plaintiff's confession during this conversation, including that the day before “she observed 2 unknown black males yelling at each other[;]” “one male punched the other, and the one that got punched was hitting the other with a stick[;]” and “one of the subjects went down to the ground unresponsive and the other male was saying something about his nephew[.]” *Id.* at 3. Detective Brimmer also wrote that Ms. Bailey stated that “she called 911 but walked away prior to EMS and Police arrival.” *Id.*

***10** According to a sworn affidavit provided by Ms. Bailey, she never said many of the statements Detective Brimmer attributed to her, including that she “never used the word ‘punch’ because I did not see either of the two individuals punching[;]” “never told Detective Brimmer that the man helping the victim was the who hit the victim. The person who hit the victim ran away. The victim was unresponsive and the older man told me the victim was his nephew. The older man asked me to call 911[;]” “never told Detective Brimmer that the older man was involved in this fight[;]” and “[t]he police arrived while I was on the phone with 911 and I spoke to a lady officer. I did not tell Detective Brimmer that I left before the police arrived.” Dkt. No. 85-10 at ¶¶ 6-9. Ms. Bailey further stated that Detective Brimmer's report “contains false statements. I never told him that I witnessed anyone punching. I never told him that the older man who called the victim his nephew was involved in the fight. I never told him that I left before the police arrived.” *Id.* at ¶ 10.

**b. Officer Cecile**

Officer Cecile's police report, dated May 6, 2019, listed Plaintiff as 55 years old, 5’7” tall, 160 pounds, and described his apparent condition as “Impaired Alcohol.” Dkt. No. 77-6 at 2.

In the narrative portion of his report, Officer Cecile stated that “while in route, dispatch notes read that there was a fight in progress between two people with one person [ ] unconscious on the ground, the other person was wearing a green sweat suit and there is a very large stick involved.” *Id.* at 5. With respect to Plaintiff's detention, Officer Cecile wrote “[b]ased on the

notes from dispatch and lack of cooperation for Goldych and Adams, both were detained at this time.” *Id.* As for his call with Ms. Bailey, Officer Cecile wrote:

> Bailey stated that she witnessed the fight between the victim and suspect ... Bailey stated that the suspect was an old black male wearing a green jump suit. Bailey stated that she saw the male in the jump suit dodge a punch from the victim and then swing the large stick at [t]he victim's head which connected and knocked him to the ground.

*Id.* As for Plaintiff's appearance, Officer Cecile described him as “an older black male in a grayish/teal puffy jacket and green pants[.]” *Id.*

**c. Officer Tolone**

Officer Tolone's police report, dated May 6, 2019, listed Plaintiff as 55 years old, provided no height or weight, and described his apparent condition as “Normal.” Dkt. No. 77-8 at 4.

In the narrative portion of his report, Officer Tolone wrote that “[p]rior to our arrival dispatch advised us that our caller, Jordan Bailey who refused to speak with us regarding this incident, stated to the call taker that she saw two males fighting, one wearing a green jump suit, and then saw someone get struck with a stick and then saw the man on the ground.” *Id.* at 2. With respect to Plaintiff's detention, Officer Tolone wrote that “Adams was detained at this time for suspicion that he was in deed [sic] the suspect in this incident however, when we initially arrived on scene Adams stated there was another male that started a fight with Jones.” *Id.* As for Plaintiff's appearance, Officer Tolone wrote that “Adams, at the time contact was made, was wearing green pants and a grey / green vest.” *Id.*

**d. Other Police Reports**

Officer Russell prepared a short report, also dated May 6, 2019, with a brief narrative that does not mention Ms. Bailey or Plaintiff, or Officer Russell's interactions with either of them. Dkt. No. 77-7 at 2.

Following Plaintiff's interrogation at CID, a non-party officer photographed Plaintiff in the interrogation room and collected his clothing early in the morning of May 7, 2019. Dkt. No. 77-10. This officer catalogued Plaintiff's clothing as consisting of a “Black winter coat[,]” “Grey pants with belt[,]” “Blue/green/white striped shirt[,]” “Blue Puma sneakers[,]” and a “Baseball Hat (Grey, green Bird Game logo)[.]” *Id.* at 3.

**5. Criminal Prosecution**

In the weeks after the events of May 6, 2019, Officer Cecile, Detective Brimmer, and Ms. Bailey testified before a grand jury in Onondaga County. Dkt. No. 77-25. The grand jury subsequently indicted Plaintiff[10] for (i) assault in the first degree in violation of N.Y. Penal Law § 120.10(1); (ii) assault in the second degree in violation of N.Y. Penal Law § 120.05(2); and (iii) criminal possession of a weapon in the third degree in violation of N.Y. Penal Law § 265.02(1). Dkt. No. 77-26 at 1. Plaintiff remained detained in jail pending trial. Dkt. No. 77-55 at ¶¶ 309, 382.

10 Members of the Onondaga County District Attorney's Office (“DA's Office”) have since identified deficiencies with the process that led to this result. Dkt. No. 85-7 at 1 (“ ‘While it seems counterintuitive that someone would confess to something they did not do, it happens,’ [Onondaga County District Attorney (“DA”) William] Fitzpatrick said. ‘And in this case, I hope all involved analyze the root causes of why this happened. We have done that in my office.’ .... ‘I have discussed the case with the prosecutor initially assigned and pointed out mistakes that were made,’ Fitzpatrick

said. 'The prosecutor who presented it to the grand jury and missed several red flags is no longer with the office.' "); Dkt. No. 85-11 at 9 (Syracuse Police Department report stating that, according to Onondaga County Assistant District Attorney ("ADA") Joe Coolican, "when the grand jury proceeding occurred, there was no identification process done by the Assistant District Attorney overseeing the case. Therefore, the witness [Ms. Bailey] was unaware Mr. Adams was the one who was in custody and accused of these crimes.").

***11** Mr. Jones died in the hospital on August 18, 2019. Dkt. No. 85-15. A medical examiner ruled Mr. Jones' death a homicide as a result of complications from being struck in the head "with a large stick containing imbedded nails." *Id.* at 1, 2. After Mr. Jones' death, it appears that the criminal charges against Plaintiff could have been increased from assault to manslaughter. [11] Dkt. No. 77-55 at ¶¶ 372-74.

11 From the record before the Court, it is not clear whether these charges were ever increased. *Compare* Dkt. No. 77-33, *with* Dkt. No. 77-38.

On August 19 and 20, 2019, ADA Michael Manfredi offered Plaintiff, through his court-appointed counsel, "a plea to Manslaughter in the first with a sentence of 12 years Determinate." Dkt. No. 77-28 at 2, 1. On October 8, 2019, ADA Manfredi reiterated to Plaintiff's court-appointed counsel that the "[o]ffer remains Man 1 st with 12 years determinate." *Id.* at 1.

On January 9, 2020, Plaintiff's court-appointed counsel made a bail application on behalf on Plaintiff, in part on the basis that:

> We have had an opportunity to review much of the evidence against [Plaintiff] and the defense believes there is significant evidence that the People have the wrong man in jail. Despite what the People have presented as a "confession", the defense believes that the evidence will show that it is a psychologically coerced false confession. There is no indication there are any witnesses identifying him at the scene. In fact the opposite. The People's case is weak.

Dkt. No. 77-39 at ¶ 22.

Soon after, an investigator from the DA's Office contacted Ms. Bailey. Dkt. No. 77-34 at 1. On January 16, 2020, Ms. Bailey provided a voluntary affidavit that stated in relevant part:

> [Investigator Tim Galanaugh] asked if I would be willing to come down to his office and meet with Mr. Coolican, the prosecutor, and see if I would watch some video footage that they had. He also made me aware that the police had made an arrest of an individual the day of the [May 6, 2019] incident. I told him that I would be willing to come down and speak to them, and help in any way because I was unaware that the victim had died.
>
> Back in May, when everything had happened, I initially called 911 for a man that was trying to assist the victim. That man that I am speaking about was African American and told me that the victim was his nephew. I stayed on the scene with my siblings until the police officers arrived. I gave information to the 911 person telling them that the suspect that was responsible had run down James Street towards downtown. I told the dispatch person that the suspect was African American and over 6 foot tall and was wearing dark green. As the officers showed up they started talking to the older guy that was kneeling next to his nephew. They wanted him to step back from the victim. I told the female officer that he had nothing to do with it. There was a[ ]lot going on at the time and I didn't want to get more involved so I walked away with my siblings. At the time, I felt that I had cooperated enough by reporting it and I didn't want to involve myself or my siblings in what appeared to me at the time to be a fight between two guys that ended with one being knocked out with a stick. When the police officers contacted me 30 minutes or so later to see if I would come back to the scene to try to identify someone, I didn't want to get involved. I was scared that it would jeopardize my safety and my siblings['] safety so I told the police officers that I didn't want to do anymore than what I had done to help already.

> ***12** ....
>
> This is what I remember about the incident today: That I had been leaving Bryant and Stratton on James Street and observed two African American men that appeared to be about to fight. Me and my siblings w[ ]ere almost walking right through where this was occurring. The victim had a long branch in his hand and starts to run up on the suspect. As the victim tries to swing on the suspect, the suspect grabs the stick and snatches the stick from the victim. The suspect then swings the stick at the victim with one hand towards his upper body. I couldn't tell where it connected or if he followed up with an elbow. All I seen is the victim stumble and drop to the ground. Suspect then tosses the stick. The suspect then goes to the pa[ ]nts pocket of the victim, takes a cell phone out and smashes it onto the pavement. Then the suspect takes off running down the sidewalk on James Street towards downtown.
>
> I didn't see where the suspect had run to because I then focused my attention on the victim on the ground. That's the same time when I noticed the older man get off the stones by the Chestnut Apartments sign and walk over to his nephew to check on him. I remember telling him that he should help get him up off the ground. The victim wasn't moving and looked like he had been knocked out, but after a few moments of looking at him more closely I told the older man that he, the victim, didn't look so good. That[']s when the uncle asked me to call 911, so I did. I stayed with the uncle until the police arrived, but like I said, I walked off shortly after with my siblings because we didn't want to get more involved.
>
> Today, at around 1045 AM, I met Mr. Coolican and Investigator Galanaugh at the D.A.'s Office. They had me watch some video footage from one of the officer's body cameras when they showed up at the scene. In the video I saw the victim on the ground and the African American man, who told me the victim was his nephew, kneeling next to him wearing a gray baseball hat. You can hear me talking in the video telling the female officer that the victim was hit with the stick.
>
> I showed Mr. Coolican w[here] the victim's cell phone can be seen in the video laying on the pavement, smashed. I was told by Mr. Coolican and Investigator Galanaugh that the person that was arrested in this incident, was the man that told me that the victim was his nephew. The person that the police arrested was not the suspect that I saw fighting with the victim, and causing the victim to be hurt with the stick. I saw that suspect run from the scene after smashing the victim's phone on the ground.

*Id.* at 1-2; *see also* Dkt. No. 77-55 at ¶¶ 380-81.

Plaintiff was not released from jail until February 12, 2020, more than nine months after his arrest on May 6, 2019. Dkt. No. 77-55 at ¶ 382. The charges against Plaintiff were not dismissed until September 15, 2020. *Id.* at ¶ 404.

**a. Plaintiff's Capacity**

On February 13, 2020, the judge presiding over Plaintiff's criminal prosecution ordered Plaintiff's capacity evaluated pursuant to New York Criminal Procedure Law § 730. Dkt. No. 77-35 at 1 (stating that "the Court being of the opinion that the defendant may be an incapacitated person" an examination is ordered "to determine whether said defendant, as a result of mental disease or defect, lacks capacity to understand the proceedings against him or to assist in his own defense").

***13** Two physicians subsequently examined Plaintiff and issued their reports on August 27, 2020. Dkt. No. 77-55 at ¶¶ 391-92, 395. As relevant here, the first physician concluded that "although suffering from Alcohol Use Disorder," Plaintiff "at the time of this evaluation, did not as a result of mental disease or defect lack the capacity to understand the proceedings against him or to assist in his own defense." *Id.* at ¶ 394. The second physician similarly concluded that Plaintiff "is not currently suffering from a mental illness which would cause him to lack the capacity to understand the proceedings against him or to assist his counsel in his own defense" and that Plaintiff, "at the time of this evaluation, did not as a result of mental disease o[r] defect lack the capacity to understand the proceedings against him or to assist in his own defense." *Id.* at ¶ 398.

**6. Additional Investigation by CID**

On January 29, 2020, prior to Plaintiff's release from jail, two non-party detectives returned to 941 James Street to obtain video footage of the incident that had occurred nearly nine months earlier. *Id.* at ¶ 383. Their investigation obtained no such footage, *id.* at ¶ 384, and determined that none of a dozen nearby businesses retained such footage for longer than three months, Dkt. No. 77-31 at 2. The two detectives also made efforts at this time to locate individuals previously mentioned by Plaintiff and Ms. Goldych, including "the 'Pete' mentioned in BWC [footage from the Responding Officers], but without success." Dkt. No. 77-55 at ¶¶ 385-86.

Forensic evidence recovered from items collected at 941 James Street—apparently including multiple drink containers as well as Mr. Jones' smashed phone—was linked to an individual whose first name is Pierre. Dkt. No. 85-1 at ¶ 56; Dkt. No. 85-4; Dkt. No. 85-14 at 9, 28; Dkt. No. 85-11 at 28. A non-party detective testified during his deposition that "[w]e do have forensic evidence indicating that he may have been present at the time of the incident or in the hours preceding it." Dkt. No. 77-50 at 123:24-124:9.

A September 2020 internal memorandum from the Syracuse Police Department ("Memo") states that such evidence "strongly suggests, at a minimum, Pierre [ ] was onscene at some point that day [May 6, 2019], and drinking with the group" and notes that Pierre "is listed as much bigger than Adams ([ ] - 6'00", 220 lbs.), and closer resembles that of the suspect description initially provided to 911 by Jordan Bailey." Dkt. No. 85-11 at 28. When provided with the opportunity to speak with CID, Pierre apparently declined to do so. *Id.* Another internal document from the Syracuse Police Department indicates that while Pierre had been identified as "a person of interest," "there is no proof beyond a reasonable doubt suggesting [Pierre] is the primary suspect at this time." *Id.* at 7-8. The Memo notes that the investigation of Mr. Jones' death "will now be considered 'unsolved'." *Id.* at 30.

### C. Prior Proceedings

#### 1. Citizen Review Board

In April 2021, Plaintiff filed a complaint with Defendant City's Citizen Review Board in connection with his arrest and interrogation. Dkt. No. 85-11 at 14-21. The Syracuse Police Department's Internal Affairs Division assigned a sergeant to investigate Plaintiff's complaint and prepare a case report. *Id.* at 1-13 ("Report"). The sergeant's investigation included an interview with a deputy police chief. *Id.* at 8-9. The sergeant included the following information from that conversation in the Report:

> I addressed the complaints made by Mr. Adams of the false arrest as well as being interviewed while intoxicated. Deputy Chief [ ] was able to explain there is case law which supports interviewing a person who is intoxicated. The only limitation to this is if the person being interviewed is intoxicated to the point of being in a manic state. Deputy Chief [ ] also informed me it is a matter of training that detectives are trained on the fact that interviewing an intoxicated person is lawful, unless in this manic state.... Therefore, the actions by [the D]etectives during that interview were lawful and proper.

***14** *Id.* at 9. The Report ultimately concluded that:

> Mr. Adams['] claim that he was arrested and charge[d] for a crime he did not commit is true. However, after reviewing this case and based on the evidence shown, there is no evidence to show wrong doing on behalf of any of the Syracuse Police Officers involved. The interview conducted by Det. Beauchine and then Det. Brimmer was lawful and proper. There was no violation of any rules and regulations by Det. Beauchine or Det. Sgt. Brimmer, or any officer. The basis for Mr. Adams being charged with this crime

> was due to his own admission and the lack of cooperation from the original eye witness. Therefore, this complaint is unsubstantiated.

*Id.* at 12.

In the course of reaching these conclusions, the sergeant also briefly spoke with the Detectives. *Id.* at 11-12. According to Detective Brimmer, "Mr. Adams did not appear excessively intoxicated during the interview" that began on May 6, 2019. *Id.* at 11. Detective Beauchine similarly "stated [that] he did not feel Mr. Adams was excessively intoxicated" during the interview. *Id.* at 12. Detective Brimmer also shared that "Mr. Adams would not have been under arrest without the confession." *Id.* at 11.

The sergeant, the sergeant's supervisor, a bureau chief, the first deputy chief, and the chief of police are all listed as March 2022 signatories to the Report. *Id.* at 13.

**2. New York Court of Claims**

Plaintiff previously filed a notice of claim in the New York Court of Claims. Dkt. No. 63-1. Defendants examined Plaintiff on January 22, 2021. Dkt. No. 77-43.

**D. Procedural History**

Plaintiff commenced this action in June 2021. Dkt. No. 1. Defendants moved to dismiss the Complaint in July 2021. Dkt. No. 7. Plaintiff voluntarily dismissed his claims against one individual defendant and otherwise opposed the motion. Dkt. Nos. 9, 16.

In March 2022, United States Senior District Judge Lawrence E. Kahn partially granted and partially denied Defendants' motion to dismiss. Dkt. No. 19. Judge Kahn observed that "[i]f the facts alleged by Plaintiff are true, Plaintiff's detainment amounts to a substantial miscarriage of justice." *Id.* at 1. Judge Kahn dismissed Plaintiff's second, sixth, seventh, and ninth claims, as well as another individual defendant, and denied the balance of Defendants' motion. *Id.* at 1-18. Discovery proceeded, with the parties requesting and receiving numerous extensions. *See generally* Docket Sheet.

In January 2024, United States Magistrate Judge Mitchell J. Katz denied Plaintiff's motion to amend the Complaint to add two individual defendants, but granted Plaintiff's request to dismiss his claims against three other individual defendants. Dkt. No. 64.

The Motion was fully submitted in April 2025. Dkt. Nos. 77, 85, 90.

**E. Plaintiff's Claims**

Plaintiff's remaining claims, [12] *see* Dkt. No. 19, are as follows: pursuant to Section 1983, (i) false arrest against the Individual Defendants, Dkt. No. 1 at ¶¶ 41-47; (ii) malicious prosecution against Defendants, *id.* at ¶¶ 63-71; (iii) fabricated evidence against Defendants, *id.* at ¶¶ 72-80; (iv) a *Monell* claim against Defendant City, *id.* at ¶¶ 52-62; and, pursuant to New York law, (v) false arrest against Defendants, *id.* at ¶¶ 91-93; and (vi) negligent supervision, etc., against Defendants, *id.* at ¶¶ 97-100.

12 The Complaint also contains various requests for relief. *See, e.g.,* Dkt. No. 1 at ¶¶ 105-114; Dkt. No. 77-56 at 9 n.2.

**III. STANDARD OF REVIEW**

***15** Summary judgment is properly granted only if, upon reviewing the evidence in the light most favorable to the nonmovant, there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Richardson v. Selsky*, 5 F.3d 616, 621 (2d Cir. 1993). A court first determines "whether the evidence presents a sufficient disagreement to require submission

to a [factfinder] or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). "When analyzing a summary judgment motion, the court 'cannot try issues of fact; it can only determine whether there are issues to be tried.' " *Galeotti v. Cianbro Corp.*, No. 12-cv-00900, 2013 WL 3207312, at *4 (N.D.N.Y. June 24, 2013) (quoting *Chambers v. TRM Copy Ctrs. Corp.*, 43 F.3d 29, 36-37 (2d Cir. 1994)).

Defendant, in seeking summary judgment, "bears the burden of establishing that no genuine issue of material fact exists and that the undisputed facts establish [its] right to judgment as a matter of law." *Rodriguez v. City of New York*, 72 F.3d 1051, 1060-61 (2d Cir. 1995) (citation omitted). To determine whether a genuine issue of material fact exists, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *accord Gibbs-Alfano v. Burton*, 281 F.3d 12, 18 (2d Cir. 2002). A "material" fact is one that would "affect the outcome of the suit under the governing law," and a dispute about a genuine issue of material fact occurs if the evidence is such that "a reasonable [factfinder] could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505; *accord R.B. Ventures, Ltd. v. Shane*, 112 F.3d 54, 57 (2d Cir. 1997). The Court should "grant summary judgment where the nonmovant's evidence is merely colorable, conclusory, speculative or not significantly probative." *Schwimmer v. Kaladjian*, 988 F. Supp. 631, 638 (S.D.N.Y. 1997) (citing, *inter alia, Anderson*, 477 U.S. at 249-50, 106 S.Ct. 2505).

## IV. DISCUSSION

The Court addresses the parties' specific arguments with respect to the remaining claims below. Given the disputed factual record as to many aspects of Plaintiff's claims, the Court finds it appropriate to reiterate the Second Circuit's guidance in another case involving Section 1983 claims for false arrest, malicious prosecution, fabricated evidence, and related *Monell* liability:

> We write because the district court improperly granted summary judgment to defendants. The record before us reveals evidence from which a jury could find that certain of the individual police officers prepared a false report and initiated a prosecution of plaintiff[ ] predicated on this manufactured evidence. We also write to emphasize a larger issue raised by this case. Plaintiff[ ] allege[s] that the defendant police officers lied and fabricated evidence. While we do not know whether the accusations can be sustained, we do know that such accusations must be carefully reviewed. Lying is wrong, and if the police lie while acting in their official capacity, they also violate the public trust. Courts must ensure that such serious accusations receive appropriate scrutiny lest our Court appears to endorse such official misconduct, which would weaken the public's respect for the administration of justice. In making these remarks, we emphasize that we have reached no conclusions about whether the plaintiff['s] accusations can be substantiated. It will be for a jury to determine at trial whether plaintiff[ ] ha[s] proved [his] very serious charges.

***16** *Ricciuti v. N.Y.C. Transit Auth.*, 124 F.3d 123, 125 (2d Cir. 1997). While the Court addresses the parties' significant factual disputes in detail below, it similarly reaches no conclusions at this stage regarding whether Plaintiff will ultimately be able to prove his surviving claims.

### A. False Arrest under Section 1983 and New York law

"A § 1983 claim for false arrest, resting on the Fourth Amendment right of an individual to be free from unreasonable seizures[,] is substantially the same as a claim for false arrest under New York law." *Alexander v. City of Syracuse*, 132 F.4th 129, 156 (2d Cir. 2025) (alteration in original) (quoting *Kee v. City of New York*, 12 F.4th 150, 158 (2d Cir. 2021)). And "[u]nder New York law, to prevail on a claim for false arrest, a plaintiff must show that (1) the defendant intended to confine the plaintiff, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement, and (4) the confinement

was not otherwise privileged." *Id.* (quoting *Ashley v. City of New York*, 992 F.3d 128, 136 (2d Cir. 2021)). "Under both federal and New York state law, probable cause is a complete defense to a false arrest claim." *Carruthers v. Colton*, 153 F.4th 169, 179 (2d Cir. 2025) (quoting *Triolo v. Nassau Cnty.*, 24 F.4th 98, 106 (2d Cir. 2022)); *see also Grice v. McVeigh*, 873 F.3d 162, 166 (2d Cir. 2017) ("[Plaintiff]'s unlawful arrest claim fails because his handcuffing was an 'investigatory detention' (otherwise known as a '*Terry* stop') that never ripened into an arrest and was supported by reasonable suspicion."). "Probable cause to arrest a person exists if the law enforcement official, on the basis of the totality of the circumstances, has sufficient knowledge or reasonably trustworthy information to justify a person of reasonable caution in believing that an offense has been or is being committed by the person to be arrested." *United States v. Hawkins*, 37 F.4th 854, 858 (2d Cir. 2022) (quoting *United States v. Patrick*, 899 F.2d 169, 171 (2d Cir. 1990)).

As detailed earlier, after several minutes of questioning by numerous officers, Plaintiff was handcuffed and put into the back of a police vehicle in front of 941 James Street at approximately 7:34 p.m. on May 6, 2019. *See supra* Section II.B.2. Plaintiff was eventually transported to CID shortly after 8:00 p.m., where he remained detained until his custodial interrogation began at approximately 10:30 p.m. *See supra* Section II.B.3. Plaintiff was held in the interrogation room until approximately 1:00 a.m. on May 7, 2019, when he was placed back in handcuffs and his booking process began. *Id.* Plaintiff was then detained for more than nine months, until his eventual release on February 12, 2020. *See supra* Section II.B.5.

Plaintiff's opposition to the Motion does not challenge his detention and questioning by officers prior to being handcuffed at approximately 7:34 p.m.[13] *See, e.g.,* Dkt. No. 85 at 10; *see also* Dkt. No. 77-56 at 12-13. And Defendants only seek summary judgment on the portions of Plaintiff's false arrest claims that relate to his "pre-confession detainment" and "post-confession arrest," not his subsequent months-long detention. *Compare* Dkt. No. 77-56 at 12, *with* Dkt. No. 1 at ¶¶ 43, 92-93; *see also* Dkt. No. 7-2 at 13-14; Dkt. No. 19 at 9-10. The Court thus focuses its analysis on Plaintiff's detention at 941 James Street on May 6, 2019, his formal arrest at CID on May 7, 2019, and the five or so hours that he remained detained in between.

13 To the extent that the Complaint states a claim for false arrest prior to this time, any such claim is dismissed as abandoned, as is any claim for declaratory judgment. *See Jackson v. Fed. Exp.*, 766 F.3d 189, 195 (2d Cir. 2014) ("[A] partial response arguing that summary judgment should be denied as to some claims while not mentioning others may be deemed an abandonment of the unmentioned claims."); *see also* Dkt. No. 1 at ¶¶ 101-04; Dkt. No. 77-56 at 9 n.2.

**1. Plaintiff's Detention at 941 James Street**

***17** Defendants first contend that Plaintiff's false arrest claims should fail because—although Plaintiff was handcuffed, placed in the back of a police vehicle, transported from his home to a police station approximately 30 minutes later, and detained for hours—he was not actually under arrest during this time. Instead, Defendants argue, the approximately five-hour seizure of Plaintiff prior to his formal arrest merely constituted an investigative stop and only required reasonable suspicion. Dkt. No. 77-56 at 13, 16 (stating that "only reasonable suspicion was required" to detain Plaintiff at 941 Adams Street and Defendants "had ample reasonable suspicion to detain Plaintiff"); *id.* at 17, 18 (stating that "Plaintiff's pre-confession detainment at CID was merely a continuation of his on-scene detainment" and "the detainment was supported by reasonable suspicion"); Dkt. No. 90 at 6 (stating that, as to Plaintiff's interrogation, "Defendants maintain that Plaintiff was being *detained* requiring only reasonable suspicion").

This is a particularly weak argument given applicable law and the facts of this case.[14] *See, e.g., United States v. Lefebvre*, 117 F.4th 471, 475 (2d Cir. 2024) ("There were several factors present during th[is] seizure that, in many situations, this Court would consider to be evidence that a seizure had indeed become a de facto arrest. [Plaintiff]'s 'freedom of movement was restrained' and 'handcuffs were used.' ... [T]he encounter lasted roughly 20 minutes.... [Plaintiff]'s transportation to a police station, instead of some of other reasonable third location, would in many situations clearly establish that the seizure had ripened into a de facto arrest.") (citations omitted) (collecting cases). The Court agrees with Plaintiff, Dkt. No. 85 at 8-9, that Defendants' maximalist position regarding their multi-hour detention of Plaintiff is unsupported by Fourth Amendment jurisprudence, *see, e.g., United States v. Candelario*, 486 F. App'x 907, 908 (2d Cir. 2012) ("It is well established that 'a police officer may *briefly detain* an

individual for questioning if the officer has a reasonable suspicion that the individual is, has been, or is about to be engaged in criminal activity.' ") (emphasis added) (quoting *United States v. Padilla*, 548 F.3d 179, 186 (2d Cir. 2008)). *See also Grice*, 873 F.3d at 167 ("In general, to determine whether a *Terry* stop is so intrusive as to become an arrest, we look to: [']the amount of force used by police, the need for such force, and the extent to which the individual's freedom of movement was restrained, and in particular such factors as the number of agents involved, whether the target of the stop was suspected of being armed, the duration of the stop, and the physical treatment of the suspect, including whether or not handcuffs were used.[']") (quoting *United States v. Perea*, 986 F.2d 633, 645 (2d Cir. 1993)).

14 It also contradicts a position that Defendants took in support of their prior dispositive motion, wherein they argued that Plaintiff's "alleged drunken confession – insofar as it could possibly be construed as 'false' – did not result in Plaintiff's loss of liberty as he had already been arrested and confined." Dkt. No. 7-2 at 16.

By approximately 7:34 p.m., Plaintiff had already been questioned for several minutes by multiple officers at the scene. *See supra* Section II.B.2.a.ii. Plaintiff had informed officers that he did not assault Mr. Jones (which Ms. Bailey had also said); that the person who assaulted Mr. Jones had run down James Street (which Ms. Bailey had said as well); that the assailant was a black man named "Pete" (which Ms. Goldych had also said); and that Plaintiff lived in one of the apartments at 941 James Street. *Id.* Defendants acknowledge that "the entire interaction was peaceful" prior to Plaintiff's handcuffing, Dkt. No. 77-56 at 15, and Officer Tolone testified that he did not feel his safety was at issue, Dkt. No. 90-1 at ¶ 510. Throughout this time, Plaintiff did not interfere with the investigation, continued answering questions from officers, and made no effort to leave the scene. *See supra* Section II.B.2.a.ii. Indeed, BWC footage shows Plaintiff sitting down and speaking with Officer Russell seconds before Officer Tolone directed him to stand up and turn around. Dkt. No. 77-17 at 4:34. Officer Tolone then handcuffed Plaintiff and informed Plaintiff that he was being detained. *Id.* Officer Tolone proceeded to place Plaintiff into the back of one of the multiple police vehicles parked in front of Plaintiff's home. *Id.* at 5:08.

***18** Given this factual record, a reasonable juror could conclude that Plaintiff was arrested at this time. *Grice*, 873 F.3d at 167. As the authority upon which Defendants rely, Dkt. No. 77-56 at 15, makes clear, "[h]andcuffing is ordinarily not incident to a *Terry* stop, and tends to show that a stop has ripened into an arrest," *Grice*, 873 F.3d at 167. *See also United States v. Newton*, 369 F.3d 659, 676 (2d Cir. 2004) ("Handcuffs are generally recognized as a hallmark of a formal arrest.") (collecting cases). Moreover, Defendants have failed to demonstrate the applicability of any of the "certain unusual circumstances" when "handcuffing a suspect to investigate a reasonable suspicion does not transform a *Terry* stop into an arrest." *Grice*, 873 F.3d at 168 (collecting cases); *see also* Dkt. No. 77-56 at 15-16. As just discussed, nothing in the record indicates concern about officer safety. The balance of Defendants' cursory arguments about why Plaintiff purportedly needed to be handcuffed and placed in the back of a police vehicle are unpersuasive. *United States v. Fiseku*, 915 F.3d 863, 870 (2d Cir. 2018) ("[T]o satisfy the reasonableness standard, officers conducting stops on less than probable cause must employ the least intrusive means reasonably available to effect their legitimate investigative purposes.") (quoting *Newton*, 369 F.3d at 674).

### 2. Probable Cause

Defendants next argue that, regardless of when Plaintiff was arrested, they had probable cause to arrest him for assault [15] within moments of arriving at 941 James Street. Dkt. No. 77-56 at 12-18.

15 Defendants do not contend that they had probable cause to arrest Plaintiff for any other offense. Dkt. No. 77-56 at 14.

This argument is also unconvincing, again given applicable law and the facts of this case. "To assess probable cause, a court considers only the facts 'available to the officer at the time of the arrest and immediately before it.' " *Ashley*, 992 F.3d at 136 (quoting *Stansbury v. Wertman*, 721 F.3d 84, 89 (2d Cir. 2013)). The parties largely agree on the basic information known to the Responding Officers at the time Plaintiff was handcuffed: [16] the 911 call notes, Plaintiff's presence at the scene, and some blood on Plaintiff's lip. Dkt. No. 77-56 at 13-14; Dkt. No. 85 at 14-15. The parties dispute the factual contours of much of that information, however, as well as its legal significance.

16 The parties further agree that the "collective or imputed knowledge doctrine" applies. *See, e.g.*, Dkt. No. 77-56 at 12 ("[T]he relevant inquiry is whether the collective knowledge of the Syracuse Police Department ('SPD') constituted probable cause, not whether a specific arresting officer had probable cause."); Dkt. No. 85 at 14. Under that doctrine, an arrest "is permissible where the actual arresting ... officer lacks the specific information to form the basis for probable cause ... but sufficient information to justify the arrest ... was known by other law enforcement officials initiating ... the investigation" and "the other officers 'have communicated the information they possess individually, thereby pooling their collective knowledge to meet the probable cause threshold.' " *Brown v. City of New York*, 798 F.3d 94, 99 (2d Cir. 2015) (alterations in original) (first quoting *Zellner v. Summerlin*, 494 F.3d 344, 369 (2d Cir. 2007); and then quoting *United States v. Chavez*, 534 F.3d 1338, 1345 (10th Cir. 2008)).

Defendants' arguments regarding probable cause miss the forest for the trees. When evaluating probable cause, the Second Circuit has "consistently held, as relevant here, that 'an officer may not disregard plainly exculpatory evidence.' " *Washington v. Napolitano*, 29 F.4th 93, 107 (2d Cir. 2022) (quoting *Panetta v. Crowley*, 460 F.3d 388, 395 (2d Cir. 2006)). Defendants were repeatedly informed that the black man who assaulted Mr. Jones was no longer present at the scene. *See supra* Section II.B.2.a. Ms. Bailey told the 911 dispatcher that this third man had assaulted the victim and had run off, but that the victim and his uncle were still there. *Id.* The 911 call notes indicated that the suspect was "last seen wearing" a green sweatsuit. Dkt. No. 90-1 at ¶ 18. Ms. Bailey again told Officer Russell—as Officer Russell stood next to Plaintiff, possibly within earshot of Officer Cecile as he approached—that the assailant who hit Mr. Jones was someone other than Plaintiff and had run off. *See supra* Section II.B.2.a. Plaintiff separately told Responding Officers that the assailant had run off, that his name was Pete, and that he was a black man. *Id.* Ms. Goldych also indicated that the man's name was Pete. *Id.* Defendants simply ignore the existence of this third man, identified by multiple eyewitnesses at the scene (and subsequently confirmed by forensic evidence). *See* Dkt. No. 77-56 at 12-18; *see also* Dkt. No. 77-50 at 123:24-124:9; Dkt. No. 85-11 at 28.

***19** Instead, Defendants argue that Plaintiff "was the only individual on scene that matched Ms. Bailey's description." Dkt. No. 77-56 at 14. But a reasonable juror could readily conclude that Plaintiff did not match Ms. Bailey's description. As the parties agree, the 911 call notes described the assailant as 25 to 35 years old, 6'3" tall, with a "med[ium] build," and "black male." Dkt. No. 90-1 at ¶ 18; Dkt. No. 77-4 at 3. At the time, Plaintiff was 55 years old, 5'7" tall, and weighed approximately 160 pounds. *See, e.g.,* Dkt. No. 90-1 at ¶ 515. Defendants' own observations and descriptions of Plaintiff are consistent with these attributes. *See, e.g.,* Dkt. No. 77-6 at 2 (Officer Cecile's police report listing Plaintiff's age as 55, height as 5'7," and weight as 160); Dkt. No. 77-23 (Detective Brimmer's arrest report listing the same); Dkt. No. 77-8 at 4 (Officer Tolone's police report listing Plaintiff's age as 55); Dkt. No. 77-16 at 4:11 (Officer Russell's BWC footage showing her asking Plaintiff for his birthdate, prior to his arrest, and being told the date in 1964), 18:26 (Officer Russell's BWC footage showing her providing Plaintiff's birthdate to another officer); Dkt. No. 77-25 at 7:5-11 (Officer Cecile testifying that he thought Plaintiff was in his "[l]ate 50s or early 60s" "just going by looking at [him]").

The only portion of Plaintiff's physical attributes that "matched" Ms. Bailey's description of the suspect is that Plaintiff was also "a black male." Dkt. No. 90-1 at ¶ 18. A reasonable juror could conclude that this fails to provide reasonable suspicion to briefly detain Plaintiff, let alone probable cause to arrest him. *See, e.g., United States v. Walker*, 965 F.3d 180, 186 (2d Cir. 2020) ("As we have repeatedly said, 'race, when considered by itself and sometimes even in tandem with other factors, does not generate reasonable suspicion for a stop.' ") (quoting *United States v. Swindle*, 407 F.3d 562, 569-70 (2d Cir. 2005)); *Zuniga-Perez v. Sessions*, 897 F.3d 114, 124 (2d Cir. 2018) ("As the Supreme Court has made abundantly clear, stopping and interrogating people based solely on race or ethnicity violates the Fourth Amendment.") (citing *United States v. Brignoni-Ponce*, 422 U.S. 873, 885-86, 95 S.Ct. 2574, 45 L.Ed.2d 607 (1975)); *Dancy v. McGinley*, 843 F.3d 93, 109 (2d Cir. 2016) ("[A] description of race and gender alone will rarely provide reasonable suspicion justifying a police search or seizure.") (quoting *Brown v. City of Oneonta*, 221 F.3d 329, 334 (2d Cir. 2000)); *Jenkins*, 478 F.3d at 90 ("It has long been established, however, that when that description could have applied to any number of persons and does not single out the person arrested, probable cause does not exist.") (collecting cases); *see also supra* n.13.

Defendants also claim that Plaintiff's clothing "matched" the description Ms. Bailey had provided, in that "his hat, shirt, and pants all appeared to be different shades of green." Dkt. No. 77-56 at 13-14. This characterization is unsupported by the BWC footage

from the Responding Officers, which a reasonable juror could conclude shows Plaintiff wearing a grey hat, a white striped shirt, grey pants, and a puffy black patterned jacket, none matching. *See generally* Dkt. Nos. 77-15, 77-16, 77-17. Defendants' claim is also contradicted by the assessment from the non-party officer who cataloged Plaintiff's clothing as consisting of a "Baseball Hat (Grey, green Bird Game logo)[,]" "Blue/green/white striped shirt[,]" "Grey pants with belt[,]" and a "Black winter coat[.]" Dkt. No. 77-10 at 3. In any event, the varied articles of clothing Plaintiff wore on May 6, 2019 are not indisputably a "green sweatsuit," like Ms. Bailey had described. Dkt. No. 90-1 at ¶ 18. And Ms. Bailey never described the suspect wearing any hat at all, Dkt. No. 77-5, let alone a hat with prominent neon lettering, like the one Plaintiff had on his head when Officer Russell arrived, walked over to Plaintiff and Ms. Bailey, and began speaking with them, Dkt. No. 77-16 at 0:00. Given this factual record, Defendants have not established that Plaintiff's clothing "matched" the description of the suspect such that they are entitled to judgment as a matter of law.

***20** At best, Defendants' argument is that they had probable cause to arrest Plaintiff because some of his clothing may have had some green. The Court finds this argument unpersuasive given the Second Circuit's analysis in *Dancy v. McGinley*. In that Section 1983 case, police officers received a description of a robbery suspect as simply "[t]hin black male, brown jacket." 843 F.3d at 99. Minutes later, officers stopped, and ultimately arrested, two teenagers near the crime scene, one of whom was wearing a "camouflage-patterned coat, with green, light green, and brown patches." *Id.* at 100, 101. As relevant here, the panel reasoned that there was not even reasonable suspicion to stop this teenager, who "was indeed thin, black, and male. But, unlike the description, he was wearing a camouflage-patterned coat." *Id.* at 109. The Circuit went on to explain that "[w]hile such a discrepancy does not necessarily defeat a finding of reasonable suspicion ... the remaining description—thin, black, and male —is too vague in the circumstances here to justify a stop of anyone meeting it[.]" *Id.* (citations omitted) (collecting cases).

A reasonable juror could reach a similar conclusion here. Plaintiff's age, height, and build were nothing like the physical description Defendants received for the suspect. Further, Plaintiff's clothes, in color and type, did not constitute a "green sweatsuit," and thus did not provide Defendants reasonable suspicion to detain him, let alone probable cause to arrest him. *See Dufort v. City of New York*, 874 F.3d 338, 350 (2d Cir. 2017) ("Viewing the evidence in the light most favorable to the plaintiff, a reasonable jury could find that the police arrested [plaintiff] based on little more than a witness's statement that he wore a similar shirt to that of one of [the victims'] attackers. Although a jury could also interpret the evidence differently, the record presents genuine issues of material fact that preclude the conclusion that there was probable cause as a matter of law and that, instead, require a trial on the merits."); *see also supra* n.13.

Defendants' argument regarding Plaintiff's presence at the scene fares no better. *See, e.g., United States v. Delossantos*, 536 F.3d 155, 160 n.4 (2d Cir. 2008) ("[A] person's presence at a crime scene or association with criminal suspects do not, without more, amount to probable cause to arrest."); *Dufort*, 874 F.3d at 350 ("Police do not have particularized probable cause to make an arrest simply because a suspect has suspicious acquaintances, or happens to be at the scene of a crime[.]") (citation omitted); *Curry v. City of Syracuse*, 316 F.3d 324, 335 (2d Cir. 2003) ("[A]n individual's presence in an area of expected criminal activity, standing alone, is not enough to support a reasonable, particularized suspicion that the person is committing a crime.") (quoting *Illinois v. Wardlow*, 528 U.S. 119, 124, 120 S.Ct. 673, 145 L.Ed.2d 570 (2000)). Plaintiff was present in front of the apartment building where he lived and, as detailed earlier, Defendants were repeatedly informed that the assailant was another man who had already left the scene. *Mitchell v. City of New* York, 841 F.3d 72, 78 (2d Cir. 2016) ("[T]he failure to make a further inquiry when a reasonable person would have done so may be evidence of lack of probable cause.") (quoting *Colon v. City of New York*, 60 N.Y.2d 78, 468 N.Y.S.2d 453, 455 N.E.2d 1248, 1250 (1983)).

As to the blood on Plaintiff's lip, in response to Officer Russell's question, Ms. Bailey can be heard explaining that "he was hit too in the whole altercation, you see that stick he was hit with that." Dkt. No. 77-55 at ¶ 12; *see also* Dkt. No. 77-16 at 0:05.

In sum, the totality of the circumstances proffered by Defendants fails to establish an undisputed factual record on which to grant summary judgment. *Delossantos*, 536 F.3d at 161. A reasonable juror could find that Defendants lacked probable cause to arrest Plaintiff at approximately 7:34 p.m. on May 6, 2019.

**3. Subsequent Information**

Defendants go on to argue that, between handcuffing Plaintiff and formally arresting him approximately five hours later, they obtained additional information that provided them probable cause to arrest Plaintiff. Dkt. No. 77-56 at 15-21. Because a reasonable juror could conclude that Plaintiff had been arrested at approximately 7:34 p.m., however, this subsequent information is not relevant to analyzing probable cause. *See, e.g., Carruthers*, 153 F.4th at 179 ("To assess probable cause, a court considers only the facts 'available to the officer at the time of the arrest and immediately before it.' ") (quoting *Ashley*, 992 F.3d at 136); *Gonzalez v. City of Schenectady*, 728 F.3d 149, 155 (2d Cir. 2013) ("The inquiry is limited to 'whether the facts known by the arresting officer at the time of the arrest objectively provided probable cause to arrest.' ") (quoting *Jaegly v. Couch*, 439 F.3d 149, 153 (2d Cir. 2006)). Nonetheless, for the avoidance of doubt, a reasonable juror could conclude that none of the subsequent information identified by Defendants, in combination with the earlier information discussed above, provided probable cause to formally arrest Plaintiff at approximately 1:00 a.m. on May 7, 2019.

**a. Plaintiff's Continued Detention Prior to His Interrogation**

***21** Defendants first argue that the Responding Officers "performed many investigative tasks" after handcuffing Plaintiff at approximately 7:34 p.m., and that Detective Brimmer "performed several investigative tasks" prior to interrogating Plaintiff at approximately 10:30 p.m. Dkt. No. 77-56 at 15, 17.

With respect to the Responding Officers, however, the only additional information Defendants identify is Officer Cecile's subsequent call with Ms. Bailey. *Id.* at 15-16. During that call, Ms. Bailey appears to have again stated that the man who hit Mr. Jones was "wearing a green jump suit," Dkt. No. 77-55 at ¶ 100, and was "like 35 to 40" years old, Dkt. No. 77-15 at 16:43, not the "[l]ate 50s or early 60s" that Officer Cecile perceived Plaintiff to be, Dkt. No. 77-25 at 7:5-11. Such information is largely consistent with—and duplicative of—the information Responding Officers already had. *See supra* Section IV.A.2. Thus, a reasonable juror could conclude that Plaintiff still did not match the description that Ms. Bailey provided.

Defendants further contend that the Responding Officers undertook various investigative efforts at 941 James Street after handcuffing Plaintiff. Dkt. No. 77-56 at 15-16. But Defendants identify no relevant additional information from these efforts. *Id.* Instead, Defendants take the position that the Responding Officers had "ample" probable cause to arrest Plaintiff because "[a]t the conclusion of th[eir] investigation, nothing excluded Plaintiff as the assailant. In other words, no eye-witness exonerated Plaintiff ... and there was no available surveillance evidence." *Id.* at 16. Defendants cite no legal authority for the proposition that unless a person is "exonerated" by an eyewitness or video evidence at the scene of a crime, there is probable cause to arrest them. *Cf. Ricciuti*, 124 F.3d at 130 ("This argument—an ill-conceived attempt to erect a legal barricade to shield police officials from liability—is built on the most fragile of foundations; it is based on an incorrect analysis of the law and at the same time betrays a grave misunderstanding of those responsibilities which the police must have toward the citizenry in an open and free society."). Defendants identify nothing from these investigative efforts that even suggested that Plaintiff had committed a crime. *Hawkins*, 37 F.4th at 858.

With respect to Detective Brimmer's investigation prior to Plaintiff's interrogation, Defendants similarly contend that Detective "Brimmer did not discover any evidence that suggested Plaintiff *was not* the assailant." Dkt. No. 77-56 at 17. More importantly, Defendants again fail to identify any additional information developed by Detective Brimmer that indicated Plaintiff *was* the assailant. *Id.* Moreover, a reasonable juror could conclude that the factual record belies Defendants' claim. The results of the canvas conducted by Detective Brimmer and his colleague further indicated that there had been three men drinking at the scene of the assault, not just Plaintiff and Mr. Jones, and thus further supported the possibility that Plaintiff was not the assailant. Dkt. No. 77-13 at 2; *see also* Dkt. No. 77-56 at 12.

**b. Plaintiff's Interrogation**

Defendants next argue that Plaintiff's statements during his interrogation by the Detectives provided probable cause for his arrest, and that "Plaintiff voluntarily waived his rights and was not coerced into a confession." Dkt. No. 77-56 at 18-21.[17]

17 Defendants do not dispute that *Miranda* warnings were necessary. *See id.*; *Jackson v. Conway*, 763 F.3d 115, 136 (2d Cir. 2014) ("The *Miranda* safeguards apply only to 'custodial interrogations.' ").

***22** "Challenges to the voluntariness of a confession are based on two overlapping constitutional provisions: (1) due process protections under the Fifth (or Fourteenth) Amendment, and (2) the Fifth Amendment privilege against self-incrimination." *United States v. Mendonca*, 88 F.4th 144, 163 (2d Cir. 2023) (citing *Dickerson v. United States*, 530 U.S. 428, 433, 120 S.Ct. 2326, 147 L.Ed.2d 405 (2000)). "As a general matter, courts' descriptions of statements as 'compelled' (invoking the text of the Self-Incrimination Clause) and/or 'involuntary' (invoking, arguably, the Due Process Clause) are often used interchangeably and the words often treated synonymously." *United States v. Allen*, 864 F.3d 63, 82 n.84 (2d Cir. 2017) (collecting cases). As a practical matter, courts "look at the totality of circumstances surrounding a *Miranda* waiver and any subsequent statements to determine knowledge and voluntariness." *United States v. Taylor*, 745 F.3d 15, 23 (2d Cir. 2014) (citation omitted). "To be effective, a waiver of a defendant's *Miranda* rights must be both knowing and voluntary." *United States v. LaPorte*, 779 F. App'x 63, 65 (2d Cir. 2019) (citing *United States v. Plugh*, 648 F.3d 118, 127 (2d Cir. 2011)). In the *Miranda* context, " 'knowing' means with full awareness of the nature of the right being abandoned and the consequences of abandoning it, and 'voluntary' means by deliberate choice free from intimidation, coercion, or deception." *Taylor*, 745 F.3d at 23 (quoting *Plugh*, 648 F.3d at 127). Even if a waiver is knowing and voluntary, courts "must nonetheless determine whether the [subsequent] inculpatory statements themselves were voluntary." *Id.* (citing *Dickerson*, 530 U.S. at 444, 120 S.Ct. 2326).

Defendants make various factual arguments as to why "there is no evidence that Plaintiff was not of sound mind or so intoxicated as to render his confession involuntary." Dkt. No. 77-56 at 19-20. Given the present factual record, however, Defendants are not entitled to summary judgment on this issue.

As an initial matter, Defendants' own expert contradicts Defendants' position. *Id.* at 20. Dr. Weisman has repeatedly opined that, over the course of the interrogation, "Mr. Adams being under the combination of duress, fatigue, limitations of his legal knowledge, and some level of alcohol intoxication, became emotionally and cognitively distressed, resigned, and compelled to offer the narrative of the crime being demanded of him." Dkt. No. 77-52 at 11-13.

Further, the parties agree that Plaintiff consumed in excess of one hundred ounces of malt liquor in the hours before his interrogation. Dkt. No. 77-55 at ¶¶ 410-11, 414, 420. Plaintiff stated "I'm drunk" shortly after the interrogation began, Dkt. No. 77-22 at 6:22, and repeatedly referenced his drunkenness thereafter, Dkt. No. 90-1 at ¶ 522. Nearly three hours after the interrogation began, Plaintiff's BAC, as measured by Defendants, was still almost twice the legal limit. Dkt. No. 77-24; *see also supra* n.4. Dr. Weisman opined that, even at this lower BAC, "[m]otor function, speech, and judgment are all severely affected" and that "[s]taggering, and slurred speech, may be observed." Dkt. No. 77-52 at 10. A reasonable juror could conclude that Plaintiff's body movements, speech, and demeanor during the videotaped interrogation demonstrate a significant level of intoxication, and also that they are consistent with Dr. Weisman's opinion. *See generally* Dkt. No. 77-21.

Defendants' suggestion that Plaintiff's mental health during the interrogation was not at issue because he did not share any hallucinations with the Detectives proves too much. Dkt. No. 77-56 at 20 ("[A]t no point during the interview did Plaintiff indicate that he was hearing voices.... Similarly, at no point during the interview did Plaintiff indicate that he could see things that the Defendant Detectives could not see."). Plaintiff's medical diagnoses at the time included schizophrenia, depression, and alcoholism. Dkt. No. 77-42 at 2-3; Dkt. No. 77-55 at ¶ 454. During the interrogation, Plaintiff explained that he was not currently working because he had a dual diagnosis and that his primary care doctor, psychiatrist, and counselor were at the same local healthcare provider. Dkt. No. 77-22 at 102:16-103:16. As for Defendants' argument that Plaintiff was determined not to be incapacitated more than a year after the interrogation, that does little to establish the voluntariness of Plaintiff's waiver on May 6, 2019. Dkt. No. 77-55 at ¶¶ 390-98.

***23** Given this record, a reasonable juror could determine that Plaintiff's *Miranda* waiver was not voluntary.

Even if Defendants had established that Plaintiff's waiver was voluntary, they have not demonstrated that it was also knowing. *LaPorte*, 779 F. App'x at 65. Defendants do not appear to make any express arguments on this second requirement for waiver. *See, e.g.,* Dkt. No. 77-56 at 18 ("[A]s discussed below, Plaintiff voluntarily waived his rights and was not coerced into a confession."); *id.* at 25 ("[F]or the reasons stated above, Plaintiff voluntarily waived his *Miranda* rights and his confession was freely given."). In any event, Dr. Weisman's opinions also include his assessment that—when sober—Plaintiff's "basic understanding of *Miranda*" ranks in the eighteenth percentile of pretrial defendants and that Plaintiff "has deficits in his *Miranda* understanding, particularly regarding legally acceptable deceptive police practices as well as other specific aspects of remaining silent versus talking to the police." Dkt. No. 77-52 at 7, 8-9. Because "knowing" for purposes of *Miranda* means "made *with a full awareness of both the nature of the right being abandoned* and the consequences of the decision to abandon it," a reasonable juror could find that Plaintiff's waiver was not knowing. *United States v. O'Brien*, 926 F.3d 57, 73 (2d Cir. 2019) (quoting *Berghuis v. Thompkins*, 560 U.S. 370, 382-83, 130 S.Ct. 2250, 176 L.Ed.2d 1098 (2010)).

A reasonable juror could also find Plaintiff's subsequent confession, after extensive interrogation by the Detectives, involuntary for similar reasons. *See, e.g., Taylor*, 745 F.3d at 24 ("An individual's mental state should be considered in the voluntariness inquiry to the extent it allowed law enforcement to coerce the individual.... It is clear, however, that when 'a person is unconscious or drugged or otherwise lacks capacity for conscious choice,' a confession cannot be voluntary.") (first citing *Colorado v. Connelly*, 479 U.S. 157, 164-65, 107 S.Ct. 515, 93 L.Ed.2d 473 (1986); then citing *United States v. Salameh*, 152 F.3d 88, 117 (2d Cir. 1998) (*per curiam*); and then quoting *Schneckloth v. Bustamonte*, 412 U.S. 218, 224, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973)). Again, Defendants' expert has repeatedly opined that, during the interrogation, "Mr. Adams being under the combination of duress, fatigue, limitations of his legal knowledge, and some level of alcohol intoxication, became emotionally and cognitively distressed, resigned, and compelled to offer the narrative of the crime being demanded of him." Dkt. No. 77-52 at 11-13. The Court also notes that, prior to Plaintiff's confession, the Detectives removed Plaintiff's phone from his person and then from the room. Dkt. No. 77-22 at 27:6-20, 60:24-61:3. During the subsequent break, and prior to Plaintiff's confession, Plaintiff is visible in the video talking to himself and trying to open the locked door keeping him in the interrogation room. Dkt. No. 77-21b at 14:00-17:00; *cf. Poventud v. City of New York*, 750 F.3d 121, 145 & n.6 (2d Cir. 2014) (Lynch. J., concurring) ("[W]e know that false confessions have been obtained by pressures much less imposing than those to which [plaintiff] was subjected.") (collecting authorities).

***24** Because a reasonable juror could determine that Plaintiff's confession was involuntary, based in part on his intoxication, capacity, and the length and nature of his detention and interrogation, the Court finds Defendants' argument that the Detectives permissibly used "falsehoods" during the interrogation to be somewhat beside the point. Dkt. No. 90 at 7 (citing *Frazier v. Cupp*, 394 U.S. 731, 739, 89 S.Ct. 1420, 22 L.Ed.2d 684 (1969) ("The fact that the police misrepresented statements that [a witness] had made is, while relevant, insufficient in our view to make this otherwise voluntary confession inadmissible.")); *see also United States v. Caraballo*, 282 F. App'x 910, 914 (2d Cir. 2008) ("We have held that '[w]hether a confession is a product of coercion may only be determined after a careful evaluation of the totality of all the surrounding circumstances, including the accused's characteristics, the conditions of the interrogation, and the conduct of law enforcement officials.' ") (alteration in original) (quoting *United States v. Anderson*, 929 F.2d 96, 99 (2d Cir. 1991)).

For all of these reasons, [18] the Motion is denied as to Plaintiff's federal and state claims for false arrest following his handcuffing at approximately 7:34 p.m. on May 6, 2019.

18 Defendants' argument that no Individual Defendants was personally involved in all of the events resulting in Plaintiff's arrest and monthslong detention is unpersuasive. Dkt. No. 77-56 at 13, 21 n.6. As detailed above, Plaintiff has sufficiently established the personal involvement of every Individual Defendant in the events giving rise to his false arrest claims. *See, e.g., Legree v. City of Waterbury*, No. 22-cv-00659, 2024 WL 3964944, at *7 (D. Conn. Aug. 28, 2024) ("However, 'personal involvement' in an arrest is not limited to officers who were physically involved in taking someone into custody. Courts in this Circuit have upheld false arrest liability for non-arresting officers.") (collecting cases).

**B. Malicious Prosecution under Section 1983**

"To prevail on a malicious prosecution claim under New York law, a plaintiff must show '(1) the commencement or continuation of a criminal proceeding by the defendant against the plaintiff, (2) the termination of the proceeding in favor of the accused, (3) the absence of probable cause for the criminal proceeding[,] and (4) actual malice.' " *Alexander*, 132 F.4th at 158 (alteration in original) (quoting *Kee*, 12 F.4th at 161-62). Section 1983 requires these same four elements, "but it also imposes an additional one: '(5) a sufficient post-arraignment liberty restraint to implicate the plaintiff's Fourth Amendment rights.' " *Id.* (first quoting *Rohman v. N.Y.C. Transit Auth.*, 215 F.3d 208, 215 (2d Cir. 2000); and then citing *Chiaverini v. City of Napoleon*, 602 U.S. 556, 562, 144 S.Ct. 1745, 219 L.Ed.2d 262 (2024)).

Defendants challenge only the probable cause element of Plaintiff's Section 1983 claim for malicious prosecution. Defendants argue that this claim fails because (i) "the probable cause supporting Plaintiff's arrest was overwhelming;" (ii) "[t]hat probable cause only increased in the day following Plaintiff's arrest;" and (iii) the DA's Office sought and obtained Plaintiff's indictment. Dkt. No. 77-56 at 21-24.

Defendants' first argument is unpersuasive for the reasons detailed previously. *See supra* Section IV.A. Given the current record, a reasonable juror could find that Defendants did not have probable cause to either arrest or prosecute Plaintiff based on the events that transpired between approximately 7:30 p.m. on May 6, 2019, and 1:00 a.m. on May 7, 2019. *See, e.g., Walsh v. City of New York*, 742 F. App'x 557, 562 (2d Cir. 2018) (" 'Probable cause, in the context of a malicious prosecution, has ... been described as such facts and circumstances as would lead a reasonably prudent person to believe the plaintiff guilty.' ... Because a reasonable juror could believe that probable cause did not exist for [plaintiff]'s arrest, as noted above, we conclude that it follows that a reasonable juror could also believe that probable cause did not exist for [plaintiff]'s prosecution.") (first alteration in original) (citing *Stansbury*, 721 F.3d at 95). Summary judgment is thus not appropriate on this ground.

***25** Defendants' second argument relies on disputed facts that are also not appropriately resolved at summary judgment. Defendants contend that, later on May 7, 2019, Detective Brimmer received additional information from Ms. Bailey and Ms. Goldych. Dkt. No. 77-56 at 22-23. But, as detailed earlier, the parties dispute what Ms. Bailey actually said to Detective Brimmer. *See supra* Section II.B.4.a. Moreover, Ms. Bailey's sworn statement suggests that she provided significant exculpatory information to Detective Brimmer. *See, e.g.,* Dkt. No. 85-10 at ¶¶ 7-8, 10; *Napolitano*, 29 F.4th at 107 ("[W]e have also consistently held, as relevant here, that 'an officer may not disregard plainly exculpatory evidence.' ") (quoting *Panetta*, 460 F.3d at 395). Because there is a genuine dispute of material fact as to what information Ms. Bailey provided Detective Brimmer—including whether it was exculpatory—such information is not an appropriate basis on which to find the existence of probable cause as a matter of law. Nor is the information that Ms. Goldych apparently provided Detective Brimmer on May 7, 2019, during his third attempt to speak with her. Dkt. No. 77-19 at 2-3. Given Ms. Goldych's intoxication, memory, and the absence of a written statement from her, the information attributed to her does not establish probable cause entitling Defendants to judgment as a matter of law. *See supra* n.7.

Defendants' third argument rests on the presumption of probable cause created by a grand jury indictment. *See, e.g., Werkheiser v. Cnty. of Broome*, 655 F. Supp. 3d 88, 103 (N.D.N.Y. 2023) ("[I]ndictment by a grand jury creates a presumption of probable cause that may *only* be rebutted by evidence that the indictment was procured by 'fraud, perjury, the suppression of evidence or other police conduct undertaken in bad faith.") (quoting *Savino v. City of New York*, 331 F.3d 63, 72 (2d Cir. 2003)). The parties agree that such a presumption applies in this case, but dispute whether the factual record rebuts it. Dkt. No. 77-56 at 23; Dkt. No. 85 at 28-29.

A reasonable juror could conclude that the current factual record rebuts such a presumption. Not only was the prosecution against Plaintiff dismissed, senior prosecutors in the DA's Office have indicated that the basis for the prosecution was deeply flawed. Dkt. No. 85-7 at 1; Dkt. No. 85-11 at 9. A reasonable juror could find, for example, that Plaintiff's prosecution was initiated by (i) the arrest report charging Plaintiff that Detective Brimmer prepared; (ii) the allegedly false confession obtained by Detectives Brimmer and Beauchine, *see, e.g., Ekukpe v. Santiago*, 823 F. App'x 25, 32 (2d Cir. 2020) ("A jury 'may permissibly find that a defendant initiated a prosecution where he filed the charges or prepared an alleged false confession and forwarded it to prosecutors.' ") (quoting *Manganiello v. City of New York*, 612 F.3d 149, 163 (2d Cir. 2010)); *Dufort*, 874 F.3d at 353

("The 'initiation' requirement is met when the plaintiff can establish that police officers forwarded statements to a prosecutor without sharing that the statements were suspect.") (citing *Manganiello*, 612 F.3d at 163); and/or (iii) the purportedly false statements in the police reports prepared by Detective Brimmer, Officer Cecile, Officer Tolone, and Officer Russell,[19] *see, e.g., Cameron v. City of New York*, 598 F.3d 50, 63 (2d Cir. 2010) ("[G]enerally in malicious prosecution actions alleging that a police officer provided false information to a prosecutor, what prosecutors do subsequently has no effect whatsoever on the police officer's initial, potentially tortious behavior.") (collecting cases); *Werkheiser*, 655 F. Supp. 3d at 103 ("A defendant could have initiated a prosecution 'by creating material, false information and forwarding that information to a prosecutor or by withholding material information from a prosecutor.' ") (first quoting *Ying Li v. City of New York*, 246 F. Supp. 3d 578, 605 (E.D.N.Y. 2017); additional citations omitted).

19 Each report was affirmed under penalty of perjury. *See, e.g.,* Dkt. No. 77-19 at 2-3; Dkt. No. 77-6 at 5; Dkt. No. 77-8 at 2; Dkt. No. 77-7 at 2.

Moreover, Plaintiff is correct that a "jury examining Detective Brimmer's police report alongside Ms. Bailey's statements could conclude that Det. Brimmer fabricated what [Ms.] Bailey told him to support, rather than contradict, Mr. Adams' false confession." Dkt. No. 85 at 27; *see also Manganiello*, 612 F.3d at 162 ("Like a prosecutor's knowing use of false evidence to obtain a tainted conviction, a police officer's fabrication and forwarding to prosecutors of known false evidence works an unacceptable 'corruption of the truth-seeking function of the trial process.") (quoting *Ricciuti*, 124 F.3d at 130); N.Y. Crim. Proc. Law § 60.50 ("A person may not be convicted of any offense solely upon evidence of a confession or admission made by him without additional proof that the offense charged has been committed."); N.Y. Crim. Proc. Law § 70.10(1) ("[E]vidence is not legally sufficient when corroboration required by law is absent.").

***26** The Court also agrees with Plaintiff that a reasonable juror could conclude that the police reports from the Responding Officers contained "false or misleading information that wrongfully inculpated Mr. Adams and failed to include key exculpatory information." Dkt. No. 85 at 28; *see also Manganiello*, 612 F.3d at 162 ("Where there is some indication in the police records that, as to a fact crucial to the existence of probable cause, the arresting officers may have 'lied in order to secure an indictment' and 'a jury could reasonably find that the indictment was secured through bad faith or perjury,' the presumption of probable cause created by the indictment may be overcome.") (quoting *Boyd v. City of New York*, 336 F.3d 72, 77 (2d Cir. 2003)); *Werkheiser*, 655 F. Supp. 3d at 104 ("Alternatively, the presumption 'can be overcome by a showing by claimant that the conduct of the police deviated so egregiously from acceptable police activity as to demonstrate an intentional or reckless disregard for proper procedures.' ") (quoting *Hill v. Melvin*, No. 05-cv-6645, 2006 WL 1749520, at *13 (S.D.N.Y. June 27, 2006)).

For instance, Officer Cecile's report states that Ms. "Bailey stated that the suspect was an old black man." Dkt. No. 77-6 at 5. But this assertion is contrary to the actual description of the suspect contained in the 911 call notes, Dkt. No. 90-1 at ¶ 18 (indicating that Ms. Bailey stated the suspect was only 25 to 35 years old) and the similar description Ms. Bailey appears to have provided to Officer Cecile during their subsequent phone conversation, Dkt. No. 77-15 at 16:43 (Officer Cecile clarifying "the guy who got knocked out was, like, in his mid to late 20s, and it was, like, an older guy, like 35 to 40, that hit him?"). Officer Cecile also noted in his report that the suspect had been described as wearing "a green sweat suit," while Plaintiff was wearing "a grayish/teal puffy jacket and green pants[.]" Dkt. No. 77-6 at 5. As detailed earlier, while there is presently a factual dispute as to whether Plaintiff's pants were green, Defendants do not contend that Plaintiff's jacket was green. *See supra* Section IV.A.2 (Defendants arguing that Plaintiff's "hat, shirt and pants all appeared to be different shades of green") (quoting Dkt. No. 77-56 at 14); *see also* Dkt. No. 77-10 at 3 (report from non-party officer stating that Plaintiff had a "Black winter coat"). Similarly, Officer Tolone's report states that the suspect was wearing "a green jump suit," while Plaintiff "was wearing green pants and a grey / green vest." Dkt. No. 77-8 at 2. As also detailed earlier, Defendants do not contend that Plaintiff was wearing a vest at all. *See supra* Section IV.A.2; *see also* Dkt. No. 77-10 (report from non-party officer listing Plaintiff's items of clothing, none of which are a vest). Given all this, a reasonable juror could find that Officers Cecile and Tolone fabricated portions of their reports to align their descriptions of Plaintiff with that of the suspect.

 © 2026 Thomson Reuters. No claim to original U.S. Government Works. 

Additionally, Officers Cecile and Russell omitted any mention of the exculpatory facts that Ms. Bailey,[20] Ms. Goldych, and Plaintiff all indicated that a third man had assaulted Mr. Jones and left the scene. Dkt. Nos. 77-6, 77-7; *see also Werkheiser*, 655 F. Supp. 3d at 103; *Napolitano*, 29 F.4th at 107. For his part, Officer Tolone's report states only that "when we initially arrived on scene Adams stated there was another male that started a fight with Jones." Dkt. No. 77-8 at 2.

20 Defendants contend that Officer Russell was "unaware of the fact" that Ms. Bailey was still on the scene when Officer Russell arrived. Dkt. No. 77-56 at 14. This assertion is contradicted by Officer Russell's BWC footage. *See* Dkt. No. 77-16 at 0:01 (Officer Russell responding to Ms. Bailey's statement that "he got into a fight with somebody, the other dude ran off, but he got knocked out" with "the other dude knocked out?"); *id.* at 11:27 (Officer Russell stating "I wish we would have got those people that were ..." and gesturing towards the sidewalk in the direction Ms. Bailey and her siblings had walked); *id.* at 17:21 (Officer Russell stating "did anyone contact those people back," presumably again in reference to Ms. Bailey and her siblings).

***27** With respect to each Individual Defendant, then, a reasonable juror could find that the indictment "was procured by 'fraud, perjury, the suppression of evidence or other police conduct undertaken in bad faith,' " or "that the conduct of the police deviated so egregiously from acceptable police activity as to demonstrate an intentional or reckless disregard for proper procedures," *Werkheiser*, 655 F. Supp. 3d at 104 (first quoting *Savino*, 331 F.3d at 72; and then quoting *Hill*, 2006 WL 1749520, at *13). Given the current factual record, a reasonable juror could find that the presumption of probable cause is rebutted. *Hicks v. Marchman*, 719 F. App'x 61, 65 (2d Cir. 2018) ("[T]he presumption can be rebutted by showing 'that the police witnesses have not made a complete and full statement of facts either to the Grand Jury or the District Attorney, that they have misrepresented or falsified evidence, that they have withheld evidence or otherwise acted in bad faith[.]' ") (second alteration in original) (quoting *Colon*, 468 N.Y.S.2d 453, 455 N.E.2d at 1250-51). Accordingly, the Court denies the Motion as to Plaintiff's Section 1983 claim for malicious prosecution against the Individual Defendants.[21]

21 To the extent that the Complaint states a distinct claim for malicious prosecution against Defendant City individually, or pursuant to New York law, any such clam is dismissed as abandoned. *Compare* Dkt. No. 77-56 at 22 & n.7, 24, *with* Dkt. No. 85 at 23-30; *see also Jackson*, 766 F.3d at 195. Plaintiff's separate *Monell* claim against Defendant City is addressed further below. *See infra* Section IV.D.

### C. Fabricated Evidence under Section 1983

In order to prevail on "a Section 1983 fabrication of evidence claim, a plaintiff must demonstrate that '(1) [an] investigating official (2) fabricat[ed] information (3) that is likely to influence a jury's verdict, (4) forward[ed] that information to prosecutors, and (5) the plaintiff suffer[ed] a deprivation of life, liberty, or property as a result." *Ortiz v. Stambach*, 137 F.4th 48, 67 (2d Cir. 2025) (alterations in original) (quoting *Garnett v. Undercover Officer C0039*, 838 F.3d 265, 279 (2d Cir. 2016)).

Defendants first argue that Plaintiff's fabricated evidence claim is limited to his allegedly false confession and should thus be dismissed against the Responding Officers, "who were not present for Plaintiff's interview and were not involved in his confession." Dkt. No. 77-56 at 25, Dkt. No. 90 at 8. The Court agrees with Plaintiff that this claim is not so limited, and that "there are disputed issues of fact from which a reasonable juror could find that" each of the Responding Officers "fabricated inculpatory evidence [or] suppressed exculpatory evidence to implicate [Plaintiff] wrongly." Dkt. No. 85 at 30; *see also supra* Section IV.B.

As to the confession, Defendants' renewed argument that Plaintiff voluntarily waived his *Miranda* rights and voluntarily confessed remains unpersuasive for the reasons previously set forth. Dkt. No. 77-56 at 25; *see also supra* Section IV.A.3.b.

Defendants' final argument that the Detectives did not know Plaintiff's confession was false is similarly insufficient to grant summary judgment on this claim. Dkt. No. 77-56 at 25-26. A reasonable juror could view the videotaped interrogation of Plaintiff and conclude that the Detectives knew Plaintiff's eventual confession was false because, for example, Plaintiff was visibly intoxicated; Plaintiff denied assaulting Mr. Jones nearly 200 times, Dkt. No. 85-2 at ¶ 570; Plaintiff "became emotionally

and cognitively distressed, resigned, and compelled to offer the narrative of the crime being demanded of him," as Defendants' expert opined after viewing the videotaped interrogation, Dkt. No. 77-52 at 11-13; or, as Detective Brimmer noted in his police report, because Plaintiff "provided several different versions about what occurred," Dkt. No. 77-19 at 2, some of which were implausible, *see, e.g.,* Dkt. No. 77-22 at 86:22-87:22 (Plaintiff stating that he was able to hit Mr. Jones in the head three of four times with a stick before Mr. Jones fell down); *id.* at 100:8-21 (Plaintiff stating that Mr. Jones punched him twice over the course of the day, both times on the "same place" on his lip and Detective Brimmer responding "[y]eah, he knows where to get you, man. He's got aim on that thing, huh"). *See also Ortiz*, 137 F.4th at 62, 67-68 ("[T]he law does not require a plaintiff to prove that police officers fabricated evidence or engaged in bad faith through any particular type of evidence and, thus, a plaintiff may do so entirely through circumstantial evidence.... 'The jury, of course, was not required to believe [the defendant's] testimony denying knowledge. Issues relating to state of mind, such as knowledge and intent, may be influenced by assessments of credibility and often must be established by circumstantial evidence.' ") (last alteration in original) (quoting *United States v. Ocampo-Guarin*, 968 F.2d 1406, 1410 (1st Cir. 1992)). Moreover, if a jury were to believe Ms. Bailey that Detective Brimmer fabricated various statements he attributed to her in his police report, they could also conclude that he did so knowingly.

***28** Accordingly, the Court denies the Motion as to Plaintiff's Section 1983 claim for fabricated evidence against the Individual Defendants. [22]

22 To the extent that the Complaint states a distinct claim for fabricated evidence against Defendant City individually, any such clam is dismissed as abandoned. *Compare* Dkt. No. 77-56 at 26, *with* Dkt. No. 85 at 30; *see also Jackson*, 766 F.3d at 195. Plaintiff's separate *Monell* claim against Defendant City is addressed next. *See infra* Section IV.D.

**D. *Monell* Claim**

Section 1983 "does not impose vicarious liability on a municipality for the actions of its employees." *Alexander*, 132 F.4th at 160 (citing *Friend v. Gasparino*, 61 F.4th 77, 93 (2d Cir. 2023)). Instead, "[t]o hold a [municipality] liable under § 1983 for the unconstitutional actions of its employees, a plaintiff is required to plead and prove three elements: (1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right." *Lucente v. Cnty. of Suffolk*, 980 F.3d 284, 297 (2d Cir. 2020) (second alteration in original) (first quoting *Wray v. City of New York*, 490 F.3d 189, 195 (2d Cir. 2007); and then citing *Monell v. Dep't. of Soc. Servs. of the City of New York*, 436 U.S. 658, 690-91, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978)). As to the first element, a plaintiff can establish the existence of an official policy or custom in four ways:

> (1) a formal policy endorsed by the municipality, ...; (2) actions directed by the government's "authorized decisionmakers" or "those who establish governmental policy," ...; (3) a persistent and widespread practice that amounts to a custom of which policymakers must have been aware, ...; or (4) a "constitutional violation[ ] resulting from [policymakers'] failure to train municipal employees[.]"

*Deferio v. City of Syracuse*, 770 F. App'x 587, 589-90 (2d Cir. 2019) (final alteration added) (first citing *Turpin v. Mailet*, 619 F.2d 196, 199 (2d Cir. 1980); then quoting *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986); then citing *Turpin*, 619 F.2d at 199; and then quoting *City of Canton v. Harris*, 489 U.S. 378, 380, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989)).

Defendants first argue that Plaintiff's *Monell* claim should be dismissed because there is no underlying constitutional violation. Dkt. No. 77-56 at 26. Given that Plaintiff's constitutional claims survive summary judgment, this argument is unavailing. *See supra* Section IV.A-C.

Defendants next argue that the purportedly similar arrests referenced in one paragraph of the Complaint do not establish a *Monell* claim. Dkt. No. 77-56 at 27-28. Those alleged instances appear to relate to excessive force and racial profiling claims against

 © 2026 Thomson Reuters. No claim to original U.S. Government Works. 

non-party officers in the Syracuse Police Department over a span of some years. Dkt. No. 1 at ¶ 61. In part because Plaintiff has not brought an excessive force claim, the Court agrees with Defendants that these alleged instances are insufficiently similar to the constitutional deprivations Plaintiff allegedly suffered. *See Campo v. City of New York*, No. 19-cv-04364, 2022 WL 970730, at *12 (E.D.N.Y. Mar. 31, 2022) ("A plaintiff may also plead the existence of *de facto* customs or policies 'by citing to complaints in other cases that contain similar allegations.' ") (quoting *Gaston v. Ruiz*, No. 17-cv-1252, 2018 WL 3336448, at *6 (E.D.N.Y. July 6, 2018)). As Defendants correctly point out in reply, Plaintiff also has not opposed the Motion on this narrow issue. Dkt. No. 90 at 8-9; *see also Jackson*, 766 F.3d at 195. Accordingly, any *Monell* claim based on these dissimilar cases or racial profiling is dismissed.

***29** For whatever reason, Defendants do not squarely address the core of Plaintiff's *Monell* claim. *Compare* Dkt. Nos. 77-56, 90, *with* Dkt. No. 1 at ¶¶ 52-60 (alleging, *inter alia*, that Defendant City "has a policy, custom, practice and pattern of conduct in place that enables its agents and employee[ ] police officers to act with deliberate indifference to the constitutional rights of individuals[,]" including "inadequate guidelines for conducting interrogations, obtaining false confessions and corroborating false confessions with eye witness accounts"). Plaintiff's opposition to the Motion argues that Defendant City was deliberately indifferent to his constitutional rights by failing "to supervise and/or train its officers to undertake constitutionally lawful detentions, interrogations, and practices to forego the fabrication of evidence." Dkt. No. 85 at 31-33 (citing Dkt. No. 1 ¶¶ 53, 54, 58).

"A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Connick v. Thompson*, 563 U.S. 51, 61, 131 S.Ct. 1350, 179 L.Ed.2d 417 (2011) (citing *Oklahoma City v. Tuttle*, 471 U.S. 808, 822-23, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985) (plurality opinion)). The Second Circuit has set forth the following requirements before a municipality's failure to train or supervise constitutes deliberate indifference:

> "First, the plaintiff must show that a policymaker knows 'to a moral certainty' that her employees will confront a given situation." ... "Second, the plaintiff must show that the situation either presents the employee with a difficult choice of the sort that training or supervision will make less difficult or that there is a history of employees mishandling the situation." ... "Finally, the plaintiff must show that the wrong choice by the city employee will frequently cause the deprivation of a citizen's constitutional rights." ... "In addition, at the summary judgment stage, plaintiffs must 'identify a specific deficiency in the city's training program and establish that that deficiency is closely related to the ultimate injury, such that it actually caused the constitutional deprivation.' "

*Jenkins*, 478 F.3d at 94 (first quoting *Walker v. City of New York*, 974 F.2d 293, 297, 298 (2d Cir. 1992); and then quoting *Green v. City of New York*, 465 F.3d 65, 81 (2d Cir. 2006)).

Regardless of whether Plaintiff has satisfied the first three of these requirements, his assertions with respect to the Responding Officers' training lack the necessary factual detail and are too conclusory. Dkt. No. 85 at 31. He fails to identify any "specific deficiency in the city's training program and establish that that deficiency is closely related to the ultimate injury[,]" *Green*, 465 F.3d at 81. Accordingly, any *Monell* claim based on the training of the Responding Officers is dismissed. For similar reasons, any *Monell* claim based on training related to fabricated evidence generally is also dismissed.

Plaintiff's arguments as to the training the Detectives received warrant a different outcome however. Plaintiff contends that the Detectives received inadequate "training on how to avoid false confessions" and "improperly interrogated" Plaintiff, leading to his allegedly false confession. Dkt. No. 85 at 33. Unlike with the Responding Officers and fabricated evidence more generally, Plaintiff also sets forth various facts regarding the Detectives' interrogation training, facts which Defendants largely do not deny. Dkt. No. 90-1 at ¶¶ 523-28, 531-33, 587-88.

Additionally, the Report that Plaintiff includes in his opposition to the Motion states that a deputy police chief at the Syracuse Police Department "was able to explain there is case law which supports interviewing a person who is intoxicated. The only limitation to this is if the person being interviewed is intoxicated to the point of being in a manic state." Dkt. No. 85-11 at 9. The Report further states that "it is a matter of training that detectives are trained on the fact that interviewing an intoxicated

person is lawful, unless in this manic state." *Id.* The Report indicates that neither Detective thought Plaintiff was "excessively intoxicated" during the interview on May 6, 2019. *Id.* at 11, 12. Seemingly because of such training, the Report determined that "[t]herefore, the actions by [the D]etectives during that interview were lawful and proper." *Id.* 9.

***30** The Report went on to conclude that Plaintiff's "claim that he was arrested and charge[d] for a crime he did not commit is true[,]" and that while Plaintiff was charged "due to his own admission[,]" "[t]he interview conducted by Det. Beauchine and then Det. Brimmer was lawful and proper. There was no violation of any rules and regulations by Det. Beauchine or Det. Sgt. Brimmer, or any officer." *Id.* at 12.[23] Following that conclusion are signatures for the chief of police, the first deputy chief, a bureau chief, a supervisor, and the investigating sergeant. *Id.* at 13. *Jones v. Town of East Haven*, 691 F.3d 72, 81 (2d Cir. 2012) ("To establish deliberate indifference a plaintiff must show that a policymaking official was aware of constitutional injury, or the risk of constitutional injury, but failed to take appropriate action to prevent or sanction violations of constitutional rights."); *Donovan v. Norwich City Sch. Dist.*, No. 19-cv-1638, 2022 WL 623904, at *11 (N.D.N.Y. Mar. 3, 2022) ("An official's title, though not dispositive of his authority to make policy, is relevant for the interferences fairly to be drawn therefrom.") (quoting *Rookard v. Health & Hosps. Corp.*, 710 F.2d 41, 45 (2d Cir. 1983)).

23 This portion of the Report makes clear that Detective Brimmer was subsequently promoted to Detective Sergeant, a position in which he supervises other detectives. *See also* Dkt. No. 77-49 at 12:20-13:1.

Drawing all reasonable inferences in Plaintiff's favor for purposes of summary judgment, a reasonable juror could find the requirements for deliberate indifference satisfied with respect to the Detectives' training for interrogating intoxicated individuals. First, the apparent existence of this very training reflects "a moral certainty" that detectives will need to interview such individuals. *Jenkins*, 478 F.3d at 94 (citation omitted). Second, Detective Brimmer's own testimony suggests that interviewing intoxicated individuals presents a "difficult choice." *Id.* (citation omitted); Dkt. No. 77-49 at 25:16-24 (Detective Brimmer testifying with respect to intoxication and mental capacity during custodial interviews that "I can't think of any exact incident where that has occurred but I do understand how, you know, severe intoxication or, you know, severe mental health where someone's having a schizophrenic outbreak, or something to that effect, is certainly going to affect what they're telling us. *And it would be a judgment call and we likely would not interview that person if they're under extreme intoxication or having an emotional and/or mental health crisis*.") (emphasis added). Third, Defendants' own expert indicates that the "wrong choice" can result in a false confession, and thus a deprivation of constitutional rights. *Jenkins*, 478 F.3d at 94 (citation omitted); Dkt. No. 77-52 at 11-13; *see also* Dkt. No. 85-7 at 1 ("The district attorney said the case shows police and prosecutors need better training in identifying the dynamics of false confessions. 'While it seems counterintuitive that someone would confess to something they did not do, it happens,' [DA] Fitzpatrick said. 'And in this case, I hope all involved analyze the root causes of why this happened.[']"). Finally, the Report identifies a "specific deficiency in the city's training program," *Jenkins*, 478 F.3d at 94 (citation omitted), in that the only limitation on interrogating intoxicated individuals appears to be when they are "in a manic state,"[24] Dkt. No. 85-11 at 9.

24 It is unclear from the current record how this limitation operates in practice, given that alcohol is a depressant while "[m]ania is a condition in which you have a period of abnormally elevated, extreme changes in your mood or emotions, energy level or activity level. This highly energized level of physical and mental activity and behavior must be a change from your usual self and be noticeable by others." *Mania*, CLEVELAND CLINIC, https://my.clevelandclinic.org/health/diseases/21603-mania (last visited September 29, 2025). Neither the Report nor the Motion identify the referenced caselaw. *See generally* Dkt. Nos. 77, 85-11, 90.

***31** At bottom, Plaintiff contends that the Detectives' training caused them to violate his constitutional rights, by interrogating him while he was intoxicated and coercing him into providing a false confession. Plaintiff may well ultimately fail to prove such a claim. *See, e.g., Outlaw v. City of Hartford*, 884 F.3d 351, 373 (2d Cir. 2018) ("[D]eliberate indifference is a stringent standard of fault.") (alteration in original) (quoting *Connick*, 563 U.S. at 61, 131 S.Ct. 1350). But he has done enough to survive summary judgment—particularly in the absence of more specific argument from Defendants regarding deliberate indifference. According, the Motion is denied as to Plaintiff's *Monell* claim based on the Detectives' interrogation training.

**E. Negligent Supervision and Retention under New York law**

In general, "[t]o state a claim for negligent supervision or retention under New York law, in addition to the standard elements of negligence, a plaintiff must show[, *inter alia*,] (1) that the tort-feasor and the defendant were in an employee-employer relationship ...; [and] (2) that the employer 'knew or should have known of the employee's propensity for the conduct which caused the injury' prior to the injury's occurrence[.]" *Ehrens v. Lutheran Church*, 385 F.3d 232, 235 (2d Cir. 2004) (first citing *D'Amico v. Christie*, 71 N.Y.2d 76, 524 N.Y.S.2d 1, 518 N.E.2d 896, 901-02 (1987); and then quoting *Kenneth R. v. Roman Catholic Diocese of Brooklyn*, 229 A.D.2d 159, 654 N.Y.S.2d 791, 793 (N.Y. App. Div. 1997)). Additionally, "[w]hen a negligence claim is asserted against a municipality or its employees, the threshold inquiry is 'whether the municipal entity was engaged in a proprietary function or acted in a governmental capacity at the time the claim arose.' " *Velez v. City of New York*, 730 F.3d 128, 134 (2d Cir. 2013) (quoting *Applewhite v. Accuhealth, Inc.*, 21 N.Y.3d 420, 972 N.Y.S.2d 169, 995 N.E.2d 131, 134 (2013)). "Providing police protection has long been recognized as a quintessential governmental function" and when "a municipality undoubtedly acts in a governmental capacity, a plaintiff may not recover without proving that the municipality owed a 'special duty' to the injured party." *Id.*, 972 N.Y.S.2d 169, 995 N.E.2d at 135 (citing *Valdez v. City of New York*, 18 N.Y.3d 69, 936 N.Y.S.2d 587, 592, 960 N.E.2d 356 (2011)).

Defendants argue, *inter alia*, that this negligence claim should be dismissed (i) against the Individual Defendants because they were all employees and cannot be held liable as an employer; and (ii) against Defendant City because its employees were acting in the scope of their employment as police officers. Dkt. No. 77-56 at 28-30. Plaintiff provides no persuasive response. Dkt. No. 85 at 33-34. The Court also notes that Plaintiff offers no evidence regarding any of the Individual Defendants' "propensity for the conduct which caused the injury," *Ehrens*, 385 F.3d at 235 (citation omitted), nor any evidence that Defendant City owed him "a special relationship beyond the duty that is owed to the public generally," *Velez*, 730 F.3d at 135. Accordingly, the Court grants the Motion as to Plaintiff's tenth claim.

**F. Qualified Immunity for the Individual Defendants**

Defendants argue that (i) the Individual Defendants are entitled to qualified immunity on Plaintiff's false arrest and malicious prosecution claims because of the collective knowledge doctrine and because of "plausible instructions from a superior officer;" (ii) the Individuals Defendants are entitled to qualified immunity on Plaintiff's pre-interrogation detention because the multi-hour detention was "objectively reasonable;" (iii) the Individual Defendants are entitled to qualified immunity because they had arguable probable cause to arrest Plaintiff; and (iv) the Detectives are entitled to qualified immunity with respect to Plaintiff's confession because "there is no evidence that Plaintiff was not of sound mind or so intoxicated as to render his confession involuntary[.]" Dkt. No. 77-56 at 30-38. Defendants do not appear to contend that they are entitled to qualified immunity as to the balance of Plaintiff's fabricated evidence claim. *See id.*

***32** "Qualified immunity attaches when an official's conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *White v. Pauly*, 580 U.S. 73, 78-79, 137 S.Ct. 548, 196 L.Ed.2d 463 (2017) (*per curiam*) (citation modified). The application of qualified immunity requires the Court to undertake a two-pronged inquiry: whether "(1) ... the official violated a statutory or constitutional right, and (2) ... the right was 'clearly established' at the time of the challenged conduct." *Jones v. Treubig*, 963 F.3d 214, 224 (2d Cir. 2020) (alterations in original) (quoting *Ricciuti v. Gyzenis*, 834 F.3d 162, 167 (2d Cir. 2016)). Under the "clearly established" prong, the law does not require "a case directly on point," but "existing precedent must have placed the statutory or constitutional question beyond debate." *Id.* (citing *Ashcroft v. al-Kidd*, 563 U.S. 731, 741, 131 S.Ct. 2074, 179 L.Ed.2d 1149 (2011)); *see, e.g., Golino v. City of New Haven*, 950 F.2d 864, 870 (2d Cir. 1991) ("The right not to be arrested or prosecuted without probable cause has, of course, long been a clearly established constitutional right."); *Ricciuti*, 124 F.3d at 128, ("The right to be free from arrest or prosecution in the absence of probable cause is a long established constitutional right."); *Weaver v. Brenner*, 40 F.3d 527, 533-34 (2d Cir. 1994) ("It is clear that [in 1989] ... a criminal suspect could not lawfully be compelled to be a witness against himself.... It was also clearly established in 1989 that police could not lawfully coerce incriminating statements from an in-custody criminal suspect."); *Zahrey v. Coffey*, 221 F.3d 342, 345 (2d Cir. 2000) ("We hold that there is a constitutional right not to be deprived of liberty

as a result of the fabrication of evidence by a government officer acting in an investigatory capacity .... [and] that this right was clearly established in 1996[.]"); *Morse v. Fusto*, 804 F.3d 538, 541 (2d Cir. 2015) ("[T]he actions of the defendants upon which [plaintiff] bases his claims were the knowing creation of false or misleading evidence by a government officer acting in an investigative capacity. We have held that such activity by a government official qualifies as an unconstitutional deprivation of the victim's rights. This right was, moreover, clearly established at the time of the defendants' conduct."); *Horn v. Adger*, Nos. 24-1034, 24-1038, 2025 WL 1618761, at *3 (2d Cir. June 9, 2025) (summary order) ("On appeal, the Detectives do not contest our clearly established caselaw holding that police officers are liable under § 1983 for 'creat[ing] false information likely to influence a jury's decision and forward[ing] that information to prosecutors.' ") (alterations in original) (citation omitted). "Courts have discretion to decide the order in which to engage these two prongs." *Tolan v. Cotton*, 572 U.S. 650, 656, 134 S.Ct. 1861, 188 L.Ed.2d 895 (2014) (citation omitted).

At this stage, the Court need only address the "constitutional violation" prong. As detailed above, whether any Defendant violated Plaintiff's constitutional rights depends on numerous disputed issues of material fact. The parties dispute, for example, when Plaintiff's detention ripened into an arrest, *see supra* Section IV.A.1; whether the Individual Defendants had probable cause to arrest Plaintiff prior to his interrogation, *see supra* Section IV.A.2-3.a; the extent of Plaintiff's intoxication during the interrogation, as well as the voluntariness and veracity of his statements, *see supra* Section IV.A.3.b; and whether the Individual Defendants improperly initiated Plaintiff's prosecution, *see supra* Section IV.B. Such factual disputes preclude a finding of qualified immunity at this stage. *See, e.g., Dufort*, 874 F.3d at 343 ("We conclude that the district court's grant of summary judgment as to [plaintiff]'s false arrest and malicious prosecution claims was premature, because disputed questions of material fact remain regarding key aspects of the criminal investigation and subsequent prosecution. We further conclude that those same questions of material fact preclude a grant of qualified immunity at the summary judgment stage.").

The Court reaches the same conclusion with respect to Defendants' arguments regarding reliance on "plausible instructions" from a superior officer and arguable probable cause. As to the former, the limited record evidence cited by Defendants is insufficient to establish, as a matter of law, that such instructions were given. Dkt. No. 77-55 at 34-35. In any event, as the authority on which Defendants rely makes clear, *id.* at 35, even if such instructions were given, that does not end the inquiry. *See Anthony v. City of New York*, 339 F.3d 129, 138 (2d Cir. 2003) ("Plausible instructions from a superior or fellow officer support qualified immunity where, viewed objectively in light of the surrounding circumstances, they could lead a reasonable officer to conclude that the necessary legal justification for his actions exists (*e.g.*[,] a warrant, probable cause, exigent circumstances).") (first quoting *Bilida v. McCleod*, 211 F.3d 166, 174-75 (1st Cir. 2000); additional citations omitted). And the disputed factual record precludes reaching a determination with respect to this inquiry.

As to arguable probable cause, the current factual record also precludes summary judgment. *See, e.g., Napolitano*, 29 F.4th at 105 ("A police officer has arguable probable cause 'if either (a) it was objectively reasonable for the officer to believe that probable cause existed, or (b) officers of reasonable competence could disagree on whether the probable cause test was met.' ") (quoting *Figueroa v. Mazza*, 825 F.3d 89, 100 (2d Cir. 2016)); *Jenkins*, 478 F.3d at 88 ("[U]nder both New York and federal law, summary judgment dismissing a plaintiff's false arrest claim is appropriate if the undisputed facts indicate that the arresting officer's probable cause determination was objectively reasonable.... If, however, on the undisputed facts the officer would be unreasonable in concluding that probable cause existed, or if the officer's reasonableness depends on material issues of fact, then summary judgment is inappropriate for both New York and federal false arrest claims.") (first citing *Cerrone v. Brown*, 246 F.3d 194, 199 (2d Cir. 2001); and then citing *Dillard v. City of Syracuse*, 51 A.D.2d 432, 381 N.Y.S.2d 913, 915 (N.Y. App. Div. 1976)).

***33** In sum, the disputed factual record precludes summary judgment based on qualified immunity. *See, e.g., Eaton v. Estabrook*, 144 F.4th 80, 89 (2d Cir. 2025) ("In the qualified immunity context, '[p]re-trial resolution of the defense [of qualified immunity] ... may be thwarted by a factual dispute.' ... 'Any disputed questions of material fact—such as the acts of the defendant and their effects on the plaintiff—are to be determined by the factfinder.' ") (final alteration added) (first quoting *Warren v. Dwyer*, 906 F.2d 70, 74 (2d Cir. 1990); and then quoting *Walker v. Schult*, 45 F.4th 598, 617 (2d Cir. 2022)). Given the current factual record, Defendants have not carried their burden to demonstrate that no rational juror could conclude that they violated

Plaintiff's constitutional rights. *Coollick v. Hughes*, 699 F.3d 211, 219 (2d Cir. 2012) ("Thus, a decision dismissing a claim based on qualified immunity at the summary judgment stage may only be granted when a court finds that an official has met his or her burden demonstrating that no rational jury could conclude '(1) that the official violated a statutory or constitutional right, and (2) that the right was clearly established at the time of the challenged conduct.' ") (quoting *al-Kidd*, 563 U.S. at 735, 131 S.Ct. 2074).[25]

25 Because factual disputes preclude summary judgment on the first prong of the qualified immunity inquiry, the Court makes no determination as to the second prong, as noted earlier. *Id.* at 219-220; *see also Linton v. Zorn*, 135 F.4th 19, 32 (2d Cir. 2025) ("But under either prong, courts may not resolve genuine disputes of fact in favor of the party seeking summary judgment.") (quoting *Tolan*, 572 U.S. at 656, 134 S.Ct. 1861). For similar reasons, the Court also does not address the parties' competing expert reports. Dkt. Nos. 77-53, 77-54, 85-14.

### G. John Does 1-100

Defendants also argue that because Plaintiff has not amended his Complaint, the Doe Defendants should be dismissed without prejudice. Dkt. No. 77-56 at 30. Plaintiff responds with a single sentence "reassert[ing] his request to amend the complaint to include additional defendants" and no authority in support of such a request. Dkt. No. 85 at 34.

Almost two years ago, Magistrate Judge Katz considered and denied Plaintiff's request to amend the Complaint to include two additional defendants. Dkt. No. 64. Since that time, Plaintiff has not sought a review of that decision and has not undertaken any further efforts to amend the Complaint. Plaintiff now offers no authority and no new arguments in support of his cursory request. Plaintiff's renewed request is denied for the reasons set forth by Magistrate Judge Katz, Dkt. No. 64, and all claims against the Doe Defendants are dismissed, *see, e.g., Kaczmarek v. City of Schenectady*, No. 10-cv-1193, 2013 WL 5506276, at *2 (N.D.N.Y. Oct. 4, 2013) ("Because plaintiffs have failed to timely identify and serve the John Doe defendants, plaintiffs' claims against both John Doe defendants are dismissed.").

## V. CONCLUSION

Accordingly, the Court hereby

**ORDERS** that Defendants' motion for summary judgment, Dkt. No. 77, is **GRANTED in part and DENIED in part**, as set forth in Section IV of this Memorandum-Decision and Order; and the Court further

**ORDERS** that the Clerk serve a copy of this Memorandum-Decision and Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

### All Citations

Slip Copy, 2025 WL 2772081

End of Document

© 2026 Thomson Reuters. No claim to original U.S. Government Works.